# **APPENDIX A**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| IN RE: |
| |
| EX PARTE APPLICATION OF IRAQ TELECOM LIMITED FOR AN EXPEDITED ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782 |
| |
| Applicant. |

Case No. _____

## <u>DECLARATION OF KRISTIN N. TAHLER</u>

Pursuant to 28 U.S.C. § 1746, I, Kristin N. Tahler, declare under penalty of perjury as follows:

1. I am an attorney admitted to practice in New York and California. I am a partner in the law firm Quinn Emanuel Urquhart & Sullivan, LLP, and serve as counsel for Iraq Telecom Limited ("Iraq Telecom") in this matter.

2. I submit this declaration in support of the application submitted by Iraq Telecom for an order under 28 U.S.C. § 1782 permitting Iraq Telecom to take discovery from Citibank, N.A. ("Citibank"); HSBC Bank (USA), N.A. ("HSBC"); Standard Chartered International (USA), Ltd. ("Standard Chartered"); the Bank of New York Mellon, N.A. (the "Bank of New York Mellon"); and Wells Fargo Bank, N.A. ("Wells Fargo") (collectively, the "Correspondent Banks") in the Southern District of New York (the "Application").

3. As counsel for Iraq Telecom in this matter, I am familiar with the information set forth in this declaration from (1) personal knowledge; and (2) documents I have prepared and/or reviewed. Because I submit this declaration specifically in support of the Application, it does not contain each and every fact within my knowledge regarding the topics discussed herein.

1

4.      I understand that Iraq Telecom seeks documents from the Correspondent Banks relating to, among other things: (1) the relationship between (a) Korek, and (b) IBL Bank SAL ("IBL Bank"); (2) U.S. dollar ("USD") loan payments by Korek to IBL (the "IBL Loan"); and (3) other USD payments relating to Korek's business (collectively, the "Requested Discovery").  I further understand that the Requested Discovery relates to (1) two pending complaints before the Dubai International Financial Center ("DIFC") Courts (the "DIFC Litigation"); (2) a pending arbitration administered by the Lebanese Arbitration and Mediation Center ("LAMC") (the "LAMC Arbitration"); and (3) one pending and one contemplated arbitration administrated by the International Chamber of Commerce ("ICC") (the "ICC Arbitrations") (collectively, the "Foreign Proceedings").

5.      Attached as Exhibit A is a draft subpoena *deuces tecum* to Citibank.

6.      Attached as Exhibit B is a draft subpoena *deuces tecum* to HSBC.

7.      Attached as Exhibit C is a draft subpoena *deuces tecum* to Standard Chartered.

8.      Attached as Exhibit D is a draft subpoena *deuces tecum* to The Bank of New York Mellon.

9.      Attached as Exhibit E is a draft subpoena *deuces tecum* to Wells Fargo.

10.     Attached as Exhibit F is a proposed order granting Iraq Telecom's Application.

* * * * *

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge and belief.

Executed in Fort Collins, Colorado on this the 4th of October, 2018.

_____

Kristin N. Tahler

# Exhibit A

AO 88B  (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of New York

| | |
|---|---|
| In re Ex Parte Application of Iraq Telecom Limited | ) |
| _____ | ) |
| *Plaintiff* | ) |
| v. | )    Civil Action No. |
| | ) |
| _____ | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:
Citibank, N.A.

388 Greenwich Street, New York, New York 10013
_____
*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

See Rider (attached)

| Place: Quinn Emanuel Urquhart & Sullivan, LLP | Date and Time: |
|---|---|
| 51 Madison Avenue, 22nd Floor, New York, NY 10010 | 10/15/2018 10:00 am |

❒ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  _____

| CLERK OF COURT | | |
|---|---|---|
| | | OR |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Iraq Telecom Limited _____ , who issues or requests this subpoena, are:
Kristin N. Tahler, Quinn Emanuel Urquhart & Sullivan, LLP, 865 S. Figueroa St., 10th Floor, Los Angeles, California 90017, Tel: (213) 443-3000 Fax: (213) 443-3100

**Notice to the person who issues or requests this subpoena**
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❒  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1) For a Trial, Hearing, or Deposition.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2) For Other Discovery.** A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1) Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2) Command to Produce Materials or Permit Inspection.**
    **(A)** Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3) Quashing or Modifying a Subpoena.**
    **(A)** When Required. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** When Permitted. To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** Specifying Conditions as an Alternative. In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1) Producing Documents or Electronically Stored Information.** These procedures apply to producing documents or electronically stored information:
    **(A)** Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
    **(D)** Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2) Claiming Privilege or Protection.**
    **(A)** Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## RIDER

Iraq Telecom Limited ("Iraq Telecom") serves this subpoena on Citibank, N.A. ("Citibank") pursuant to 28 U.S.C. § 1782(a) and Fed. R. Civ. P. 45.  Please produce the following documents, as set forth in the Requests for Production (the "Requests") in accordance with the definitions and instructions that appear below.

## DEFINITIONS

Unless otherwise defined, all words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common, ordinary sense.  As used in these Requests, the words set forth below shall be defined as follows:

1.      "Agreement" is used in its broadest ordinary sense and shall mean any oral or written act or arrangement regarding a course of action, including but not limited to Contracts (as defined below).

2.      "BPC" shall mean Banque Pharaon & Chiha, which was acquired by Byblos (defined below) in 2016, and any present or former (1) affiliates, subsidiaries, and branches of BPC; and (2) officers, directors, employees, agents or consultants of BPC.

3.      "Byblos" shall mean Byblos Bank, which acquired BPC in 2016, and any present or former (1) affiliates, subsidiaries, and branches of Byblos; and (2) officers, directors, employees, agents or consultants of Byblos.

4.      "Communication(s)" is used in its broadest ordinary sense and shall mean any manner or means of disclosure, transfer or exchange of facts, information, ideas, opinions, inquiries or thoughts, whether by written, oral, mechanical, telephonic, electronic or some other means of communication, and shall include the information transmitted.  For the avoidance of

doubt, the term "Communication" shall encompass pictures, photographs, recordings, text messages or any other means of capturing information.

5.      "Concerning," is used in its broadest usual and customary meaning, and, in addition, shall mean directly or indirectly, in whole or in part, alluding to, analyzing, assessing, characterizing, commenting on, connected with, constituting, containing an implicit reference to, describing, disclosing, discussing, evidencing, explaining, identifying, memorializing, mentioning, noting, pertaining to, recording, referring to, reflecting, regarding, relating to, representing, showing, stating, suggesting, summarizing, supporting, touching upon, underlying, or otherwise involving the subject matter of the specified Request.

6.      "Contract" is used in its broadest ordinary sense and shall mean a legally binding Agreement between two or more persons.

7.      "Correspondent Account(s)" shall mean all *vostro* accounts (*i.e.*, account(s) held by a correspondent bank on behalf of another bank) maintained or held by Citibank on behalf of IBL Bank (defined below), BPC, and/or Byblos.

8.      "CS Ltd" shall mean Korek International (Management) Ltd, a Cayman Islands company that holds a 56% share in International Holdings Limited ("IHL"), the parent company of Korek (defined below).

9.      "CS Ltd Director" shall mean the directors nominated by CS Ltd to serve on the Board of Directors of IHL, which includes Messrs. Aqrawi, Barzani and Jundi (each of whom is defined below).

10.     "Document(s)" shall mean all Electronically Stored Information, data, images, and system information (*e.g.*, logs or "metadata" created by a computer system detailing and tracking events on the system, including changes to documents), and all written, printed, typed,

photographed, or graphic matter of every type or description, whether comprised of letters, words, numbers, pictures, sounds or symbols, or any combination thereof, and whether in paper form or stored on audiotape, videotape, computer, electronic, magnetic or other media (including, for example, correspondence, electronic mail, text messages, instant message dialogues, calendars, drawings, spreadsheets, databases, notes, invoices, contracts, facsimiles, voicemail messages, telephone messages and presentations).  The term "Document(s)" specifically includes all drafts, versions, revisions, amendments, modifications, changes or notes related thereto, including all non-identical copies such as those that include marginalia, deletions or alterations, or other printed, stamped, post-it or handwritten revisions or notations.  This definition also includes any attachments, enclosures, or other matter affixed to or incorporated by reference within any other Documents responsive to these Requests.

11.     "Due Diligence Investigation" shall mean the investigation of a foreign bank undertaken by a U.S. bank prior to entering into a banking relationship with said foreign bank, including the opening of a correspondent account.  Such investigations include any actions taken pursuant to the obligations set forth in 31 U.S.C. § 5318(i) and 31 C.F.R. § 1010.610.

12.     "IBL Bank" shall mean IBL Bank SAL, and any present or former (1) affiliates, subsidiaries, and branches of IBL Bank SAL; and (2) officers, directors, employees, agents or consultants of IBL Bank SAL.

13.     "IBL Loan" shall mean the USD 150 million loan made by IBL Bank to Korek (defined below) pursuant to the Term Loan Agreement, dated December 21, 2011, and any supplemental agreements thereto.

14.     "IC4LC" shall mean International Company for Legal Consulting, an unregistered and unincorporated Lebanese business entity that purportedly acts as a law firm.

15.     "Invoice" is used in its broadest ordinary sense and shall mean a list of goods shipped or services provided and amounts owed for same.

16.     "Iraq Telecom" shall mean Iraq Telecom Limited and any present or former officers, directors, employees, agents or consultants of Iraq Telecom Limited.

17.     "Korek" shall mean Korek Telecom Company LLC and (1) its parent IHL; (2) any present or former officers, directors, employees, agents or consultants of Korek Telecom Company LLC. or IHL; and (3) any accounts held by Korek at IBL Bank, including but not limited to account number 007 002 244 0700 716 016.

18.     "Korek S.A.L." shall mean Korek Telecom S.A.L. and any present or former officers, directors, employees, agents or consultants of Korek Telecom S.A.L.  Korek S.A.L. is a separate and distinct entity from Korek.

19.     "Mr. Aqrawi" shall mean Abdulhameed Abdullah Mohammed Salih Aqrawi (also referred to as Mr. Akrawi and/or Mr. Akravi, etc.), one of the CS Ltd. Directors.

20.     "Mr. Azar" shall mean Michel Azar, who conducts business under the name of IC4LC.

21.     "Mr. Barzani" shall mean Sirwan Saber Mustafa and/or Sirwan Saber Mustafa Barzani, one of the CS Ltd Directors and the Statutory Manager of Korek under Iraqi law.

22.     "Mr. Jundi" shall mean Nozad Hussein Jundi, one of the CS Ltd Directors.

23.     "Mr. Rahmeh" means Raymond Samir Zina Rahmeh (also sometimes referred to as Mr. Rimon Rahmeh and/or Mr. Rahme), the Independent Director of IHL nominated by CS Ltd.

24.     "Suppliers" shall mean (a) any and all of the following entities: (i) Darin Group, (ii) D&A Offshore SAL, (iii) DoubleU, (iv) K-Energy, (v) Halabja Group, (vi) ZR Collection, (vii) ZR Group, (viii) IC4LC, and/or (ix) any other entities which, based on information available to

Citibank, Korek made payments for goods and/or services; (b) any parents, subsidiaries, affiliates, segments, or divisions both presently existing and those that previously existed of the entities set forth in sub-part (a) of this paragraph, and/or (c) any present or former officers, directors, employees, consultants, contractors, agents or members of board of directors or board of trustees of the entities set forth in sub-part (a) of this paragraph.

25.      "Transaction(s)" shall mean all deposits, withdrawals, incoming wire transfers, outgoing wire transfers, charges, payments, purchases, returns, bank fees, checks, travelers checks, letters of credit and drafts typically made between a customer of a bank (including a foreign bank) and the bank itself.

26.      "You," "Your" and/or "Citibank" shall mean Citibank, N.A. and any parents, subsidiaries, affiliates, segments, or divisions both presently existing and those that previously existed, and any present or former officers, directors, employees, consultants, contractors, agents or members of the board of directors or board of trustees for Citibank, N.A.

27.      The terms "any" and "each" should be understood to include and encompass "all."

28.      Where appropriate, the singular form of a word should be interpreted in the plural and vice versa, to acquire the broadest possible meeting.

## INSTRUCTIONS

1.      The obligations and rules of construction set forth in Rule 45 of the Federal Rules of Civil Procedure are incorporated in these Requests.  A copy of Rule 45 sections (c), (d), (e) and (g) is attached to the subpoena.

2.      Unless otherwise stated in a specific Request, these Requests seek responsive information and Documents authored, generated, disseminated, drafted, produced, reproduced or otherwise created or distributed or relating to the period January 1, 2011 through the present.

3.      With respect to the documents produced, You shall produce them as they are kept in Your usual course of business, including, if applicable, in their native format.  A draft of a Document is unique and separate from the final version of that Document.  All drafts of each Document are to be produced, without abbreviation or redaction.

4.      Each Request seeks production of each Document in its entirety, without abbreviation or redaction, including, without limitation, all attachments, transmittal sheets, notes, cover letters, exhibits, enclosures, and all drafts and non-identical copies of each Document.

5.      Documents attached to each other shall not be separated and shall be produced together.

6.      A Document with handwritten, typewritten or other recorded notes, editing marks, etc., is a separate, unique Document and is not, and shall not be deemed to be, identical to one without such modifications, additions, or deletions.

7.      Each Request shall be construed independently, and no Request shall be viewed as limiting the scope of any other Request.

8.      If no Documents are responsive to a particular Request, You are to state that no responsive Documents exist for that particular Request.

9.      If any Document or any part of a Document responsive to a Request is withheld from production on the basis of any claim of privilege, You shall submit, in lieu of such Document, a written statement identifying: (a) the nature of the privilege (including attorney work product) which is being claimed; (b) the general subject matter of the Document and a description of the file or other location where it was found; (c) the type or general nature of the Document (*i.e.,* whether it is a letter, memorandum, invoice, email, etc.) and the number of pages of which it consists; (d) the date of the Document; (e) the author(s) and recipient(s) of the Document; and (f) the addresses of the Document and any other recipients.

10.      You are further requested to provide all non-privileged portions of Documents containing material over which a claim of privilege has been asserted by excising, concealing, or otherwise protecting the portions for which a privilege is asserted, but only to the extent that such excise, concealment, or other protection is strictly necessary for the purposes of the claim of privilege.

11.      The Requests in this Rider are continuing in nature.  If, after producing the requested Documents, You obtain or become aware of any further responsive Documents, You must produce to Defendant such additional Documents.  Such additional Documents are to be promptly produced at the offices of Quinn Emanuel Urquhart & Sullivan, LLP, 51 Madison Avenue, 22nd Floor, New York, NY 10010.

12.      Unless otherwise indicated, the Documents requested include all Documents in Your possession, custody or control.  Without limitation of the terms "possession, custody or control," as used in the preceding sentence, a Document is in Your possession, custody or control if You have actual possession or custody or the right or practical ability to obtain the Document or a copy thereof upon demand from one or more of Your affiliates, parents, subsidiaries, divisions,

related companies or predecessors-in-interest, officers, directors, employees, agents, consultants, representatives, independent contractors, advisors, attorneys and any other person or public or private entity that has actual physical possession thereof.

13.      If a Document is partially responsive, the whole Document shall be produced with no redactions for responsiveness.

## CATEGORIES OF DOCUMENTS TO BE PRODUCED

**I.   DOCUMENT REQUESTS RELATING TO IBL BANK**

    **A.  Relationship between Citibank and IBL Bank**

1.    Documents and Communications sufficient to show **the nature and terms of IBL Bank's relationship with Citibank**, including but not limited to any Agreements or Contracts relating to correspondent banking services provided by Citibank to IBL Bank, either directly or through a third party.

2.    Documents and Communications sufficient to show **the identifying information, including account number(s) and ultimate beneficial owner(s)**, of each of IBL Bank's past and current Correspondent Accounts with Citibank.

3.    Documents and Communications sufficient to show **the identities of each individual, corporation or other entity authorized to access or control, either directly or indirectly**, each of IBL Bank's past and current Correspondent Accounts with Citibank.

4.    All Documents and Communications Concerning **Citibank's Due Diligence Investigation(s) of IBL Bank** to the extent such Investigations concerned, related to, or referenced Korek, Korek S.A.L., the CS Ltd Directors, Mr. Rahmeh, the Suppliers, and/or Mr. Azar.

    **B.  Transactions Relating to the IBL Loan**

5.    All Documents and Communications Concerning the IBL Loan, including but not limited to **IBL Bank's instructions to Citibank** as to how it should maintain, dispense or transfer funds associated with the IBL Loan once received in IBL's Correspondent Account(s) with Citibank.

6.    All Documents and Communications Concerning **Transactions between Korek and IBL Bank** which (1) were processed through or otherwise involved IBL Bank's

Correspondent Account(s) with Citibank, and (2) relate to, reference or otherwise involve the IBL Loan, including but not limited to:

(a)      Copies of SWIFT Message Types (MT) 100's, 200's, 900's relating to the Transactions;

(b)      Documents and Communications sufficient to show the (i) amount of each Transaction; (ii) date of the Transaction; (iii) originating account of the Transaction (*e.g.,* Korek's IBL Bank account); (iv) beneficial owner of the originating account; (v) the intermediary bank(s) involved in the Transaction, if any; (vi) receiving account of the Transaction (*e.g*., the IBL Bank account into which IBL Bank received loan payments); (vii) beneficial owner of the receiving account; (viii) stated purpose or reason for each Transaction; (ix) special instructions relating to the Transaction, if any; (x) notify party for the Transaction, if any; and (xi) other details of the Transaction, if any;

(c)      Any Agreements, Contracts or other Documents Concerning the terms of the IBL Loan, including but not limited to any Agreements or Contracts between (i) IBL Bank and Korek; (ii) IBL Bank and Korek S.A.L.; (iii) IBL Bank and Mr. Barzani; and (iv) IBL Bank and Mr. Rahmeh;

(d)      Any Documents and Communications Concerning the identity of the individuals or entities that approved and/or authorized the Transactions; and

(e)      Any Documents or Communications Concerning divergent, errant or otherwise suspicious Transactions relating to the IBL Loan, including but not limited to IBL Bank's explanations in connection with the same.

7.      All Documents and Communications Concerning Transactions involving **IBL Bank Account Number 007 002 244 0700 716 016**, which (1) were processed through or otherwise involved IBL Bank's Correspondent Accounts with Citibank, and (2) relate to, reference or otherwise involve the IBL Loan, including but not limited to:

(a)      Copies of SWIFT Message Types (MT) 100's, 200's, 900's relating to the Transactions;

(b)      Documents and Communications sufficient to show the (i) amount of each Transaction; (ii) date of the Transaction; (iii) originating account of the Transaction; (iv) beneficial owner of the originating account; (v) the intermediary bank(s) involved in the Transaction, if any; (vi) receiving account of the Transaction; (vii) beneficial owner of the receiving account; (viii)

stated purpose or reason for each Transaction; (ix) special instructions relating to the Transaction, if any; (x) notify party for the Transaction, if any; and (xi) other details of the Transaction, if any;

(c)     Any Agreements, Contracts or other Documents concerning the terms of the IBL Loan, including but not limited to any Documents relating to or referencing (i) the collateral securing repayment of the IBL Loan; or (ii) the interest payments made by Korek pursuant to the IBL Loan;

(d)     Any Documents and Communications Concerning the identity of the individuals or entities that approved and/or authorized the Transactions; and

(e)     any Documents or Communications Concerning divergent, errant or otherwise suspicious Transactions relating to (i) IBL Bank account number 007 002 244 0700 716 016; and (ii) the IBL Loan, including but not limited to IBL Bank's explanations in connection with the same.

8.     All Documents and Communications Concerning Transactions involving **Mr. Barzani's IBL Bank Account**, which (1) were processed through or otherwise involved IBL Bank's Correspondent Accounts with Citibank, and (2) relate to, reference or otherwise involve the IBL Loan, including but not limited to:

(a)     Copies of SWIFT Message Types (MT) 100's, 200's, 900's relating to the Transactions;

(b)     Documents and Communications sufficient to show the (i) amount of each Transaction; (ii) date of the Transaction; (iii) originating account of the Transaction (*e.g.*, the IBL Bank account into which IBL Bank received loan payments); (iv) beneficial owner of the originating account; (v) the intermediary bank(s) involved in the Transaction, if any; (vi) receiving account of the Transaction (*e.g.*, Mr. Barzani's IBL Bank account); (vii) beneficial owner of the receiving account; (viii) stated purpose or reason for each Transaction; (ix) special instructions relating to the Transaction, if any; (x) notify party for the Transaction, if any; and (xi) other details of the Transaction, if any;

(c)     Any Agreements, Contracts or other Documents concerning the terms of the IBL Loan, including but not limited to any Documents relating to or referencing (i) the collateral securing repayment of the IBL Loan; or (ii) the interest payments made by Korek pursuant to the IBL Loan;

(d)     Any Documents and Communications Concerning the identity of the individuals or entities that approved and/or authorized the Transactions; and

(e)     Any Documents or Communications Concerning divergent, errant or otherwise suspicious Transactions relating to (i) Mr. Barzani's IBL Bank Account and (ii) the IBL Loan, including but not limited to IBL Bank's explanations in connection with the same.

9.     All Documents and Communications Concerning **Transactions between HSBC Bank Middle East Limited UAE Branch ("HSBC UAE") Account Number 022 2525 22 100 and IBL Bank, either directly or indirectly,** which (1) were processed through IBL Bank's Correspondent Account(s) with Citibank, and (2) relate to, reference or otherwise involve the IBL Loan, including but not limited to:

(a)     Copies of all SWIFT Message Types (MT) 100's, 200's, 900's relating to the Transactions;

(b)     Any Documents and Communications Concerning the (i) amount of each Transaction; (ii) the date of the Transaction; (iii) the originating account(s) of each Transaction; (iv) beneficial owner(s) of the originating account(s); (v) identity of any intermediary banks; (vi) receiving account(s) of each Transaction; (vii) beneficial owner(s) of the receiving account(s); (viii) stated purpose or reason for each Transaction; (ix) special instructions relating to the Transaction, if any; (x) notify party for the Transaction, if any; and (xi) other details of the Transaction, if any;

(c)     Any Contracts, Agreements or Invoices relating to, supporting or purporting to justify the Transactions;

(d)     Any Documents and Communications Concerning the identity of the individuals or entities that approved and/or authorized the Transactions; and

(e)     Any Documents and Communications Concerning divergent, errant or otherwise suspicious Transactions between HSBC UAE Account Number 022 2525 22 100 and IBL Bank.

### C. Transactions Relating to Korek's Supplier Payments

10.     All Documents and Communications Concerning **Transactions Between Korek and the Suppliers**, which were processed through or otherwise involved IBL Bank's Correspondent Accounts with Citibank, including but not limited to:

(a)     Copies of all SWIFT Message Types (MT) 100's, 200's, 900's relating to the Transactions;

(b)     Any Documents and Communications Concerning the (i) amount of each Transaction; (ii) the date of the Transaction; (iii) the originating account(s) of each Transaction; (iv) beneficial owner(s) of the originating account(s); (v) identity of any intermediary banks; (vi) receiving account(s) of each Transaction; (vii) beneficial owner(s) of the receiving account(s); (viii) stated purpose or reason for each Transaction; (ix) special instructions relating to the Transaction, if any; (x) notify party for the Transaction, if any; and (xi) other details of the Transaction, if any;

(c)     Any Contracts, Agreements or Invoices relating to, supporting or purporting to justify the Transactions;

(d)     Any Documents and Communications Concerning the identity of the individuals or entities that approved and/or authorized the Transactions; and

(e)     Any Documents and Communications Concerning divergent, errant or otherwise suspicious Transactions between Korek and the Suppliers.

11.     All Documents and Communications Concerning **Transactions Between Korek and IBL Bank account number 169160** (IBAN Number LB 800052000700230201691600014 or LB800052000700211001691600013), which were processed or otherwise involved IBL Bank's Correspondent Accounts with Citibank, including but not limited to:

(a)     Copies of all SWIFT Message Types (MT) 100's, 200's, 900's relating to the Transactions;

(b)     Any Documents and Communications Concerning the (i) amount of each Transaction; (ii) date of the Transaction; (iii) the originating account(s) of each Transaction; (iv) beneficial owner(s) of the originating account(s); (v) identity of any intermediary banks; (vi) receiving account(s) of each Transaction; (vii) beneficial owner(s) of the receiving account(s); (viii) stated purpose or reason for each Transaction; (ix) special instructions relating to the Transaction, if any; (x) notify party for the Transaction, if any; and (xi) other details of the Transaction, if any;

(c)     Any Contracts, Agreements, or Invoices relating to, supporting or purporting to justify the Transactions;

(d)     Any Documents and Communications Concerning the identity of the individuals or entities that approved and/or authorized the Transactions; and

(e)     Any Documents and Communications Concerning divergent, errant or otherwise suspicious Transactions between Korek and IBL Bank account number 169160 (IBAN Number LB 800052000700230201691600014 or LB800052000700211001691600013).

13

12.     All Documents and Communications Concerning **Transactions Between Korek and the IBL Bank account associated with IBAN Number LB 82005200070023010704371010**, which were processed or otherwise involved IBL Bank's Correspondent Accounts with Citibank, including but not limited to:

(a)     Copies of all SWIFT Message Types (MT) 100's, 200's, 900's relating to the Transactions;

(b)     Any Documents and Communications Concerning the (i) amount of each Transaction; (ii) date of the Transaction; (iii) the originating account(s) of each Transaction; (iv) beneficial owner(s) of the originating account(s); (v) identity of any intermediary banks; (vi) receiving account(s) of each Transaction; (vii) beneficial owner(s) of the receiving account(s); (viii) stated purpose or reason for each Transaction; (ix) special instructions relating to the Transaction, if any; (x) notify party for the Transaction, if any; and (xi) other details of the Transaction, if any;

(c)     Any Contracts, Agreements, or Invoices relating to, supporting or purporting to justify the Transactions;

(d)     Any Documents and Communications Concerning the identity of the individuals or entities that approved and/or authorized the Transactions; and

(e)     Any Documents and Communications Concerning divergent, errant or otherwise suspicious Transactions between Korek and IBL Bank account associated with IBAN Number LB 82005200070023010704371010.

13.     All Documents and Communications Concerning **Transactions between Korek and IBL Bank Account number 700675** (IBAN Number LB 50005200070023010700675013), which were processed through or otherwise involved IBL Bank's Correspondent Account(s) with Citibank, including but not limited to:

(a)     Copies of all SWIFT Message Types (MT) 100's, 200's, 900's relating to the Transactions;

(b)     Any Documents and Communications Concerning the (i) amount of each Transaction; (ii) the date of each Transaction; (iii) the originating account(s) of each Transaction (*e.g.*, Korek's IBL Bank account); (iv) beneficial owner(s) of the originating account(s); (v) identity of any intermediary banks; (vi) receiving account(s) of each Transaction (*e.g.*, the Supplier's bank accounts); (vii) beneficial owner(s) of the receiving account(s); (viii) stated

14

purpose or reason for each Transaction; (ix) special instructions relating to the Transaction, if any; (x) notify party for the Transaction, if any; and (xi) other details of the Transaction, if any;

(c)     Any Contracts, agreements, or Invoices relating to, supporting or purporting to justify the Transactions;

(d)     Any Documents and Communications Concerning the identity of the individuals or entities that approved and/or authorized the Transactions; and

(e)     Any Documents and Communications Concerning divergent, errant or otherwise suspicious Transactions between Korek and IBL Bank account number 700675 (IBAN Number LB 50005200070023010700675013).

14.     All Documents and Communications Concerning **Transactions between Korek and IBL Bank Account number 403599 (IBAN number LB45 0052 0004 0023 0104 0359 9015),** which were processed through or otherwise involved IBL Bank's Correspondent Account(s) with Citibank, including but not limited to:

(a)     Copies of all SWIFT Message Types (MT) 100's, 200's, 900's relating to the Transactions;

(b)     Any Documents and Communications Concerning the (i) amount of each Transaction; (ii) the date of each Transaction; (iii) the originating account(s) of each Transaction (*e.g.*, Korek's IBL Bank account); (iv) beneficial owner(s) of the originating account(s); (v) identity of any intermediary banks; (vi) receiving account(s) of each Transaction (*e.g.*, the Supplier's bank accounts); (vii) beneficial owner(s) of the receiving account(s); (viii) stated purpose or reason for each Transaction; (ix) special instructions relating to the Transaction, if any; (x) notify party for the Transaction, if any; and (xi) other details of the Transaction, if any;

(c)     Any Contracts, Agreements, or Invoices relating to, supporting or purporting to justify the Transactions;

(d)     Any Documents and Communications Concerning the identity of the individuals or entities that approved and/or authorized the Transactions; and

(e)     Any Documents and Communications Concerning divergent, errant or otherwise suspicious Transactions between Korek and IBL Bank account number 403599 (IBAN Number LB45 0052 0004 0023 0104 0359 9015).

### D. Transactions Involving or Relating to Korek S.A.L.

15.     All Documents and Communications relating to IBL Bank's relationship, if any, with Korek S.A.L., including but not limited to:

(a)     Transactions between IBL Bank and Korek S.A.L., which were processed through or otherwise involved IBL Bank's Correspondent Accounts with Citibank;

(b)     Agreements, Contracts or other Documents relating to, supporting, or purporting to justify the Transactions discussed in sub-part (a) of this paragraph; and

(c)     Documents and Communications sufficient to identify Korek S.A.L.'s bank accounts, including but not limited to: (1) the name of the bank(s) and account number(s); (2) beneficial owners of such account(s); and (3) any other details relating to Korek S.A.L.'s bank accounts.

## II.  DOCUMENT REQUESTS RELATING TO BPC AND BYBLOS

### A. Relationship between Citibank and Byblos/BPC

16.     Documents and Communications Concerning **the nature and terms of the relationship between Citibank and Byblos and/or BP**C, including any Contracts, Agreements or other Documents relating to any correspondent banking services provided by Citibank to Byblos and/or BPC, either directly or through a third party.

17.     Documents and Communications sufficient to **show the identifying information, including account number(s) and ultimate beneficial owner(s)**, of each past and current Correspondent Account held by Citibank on behalf of Byblos and/or BPC.

18.     Documents and Communications sufficient **to show the identities of each individual, corporation or other entity authorized to access or control, either directly or indirectly**, each of Byblos's and/or BPC's Correspondent Accounts with Citibank.

19.     All Documents and Communications Concerning Citibank's **Due Diligence Investigation(s) of Byblos and/or BPC**, if any, to the extent such Investigation(s) concerned,

related to, involved and/or mentioned Korek, Korek S.A.L., the CS Ltd Directors, Mr. Rahmeh, Mr. Azar, or the Suppliers.

### B. Transactions between Korek and Byblos/BPC

20.     All Documents and Communications Concerning Transactions **between Korek and BPC account number 033180** (IBAN Number LB81 0035 0004 0000 0000 0003 3180), which were processed through or otherwise involved Byblos's and/or BPC's Correspondent Accounts with Citibank, including but not limited to:

(a)     Copies of all SWIFT Message Types (MT) 100's, 200's, 900's relating to the Transactions;

(b)     Any Documents and Communications Concerning the (i) amount of each Transaction; (ii) the date of each Transaction; (iii) the originating account(s) of each Transaction; (iv) beneficial owner(s) of the originating account(s); (v) identity of any intermediary banks; (vi) receiving account(s) of each Transaction; (vii) beneficial owner(s) of the receiving account(s); (viii) stated purpose or reason for each Transaction; (ix) special instructions relating to the Transaction, if any; (x) notify party for the Transaction, if any; and (xi) other details of the Transaction, if any;

(c)     Any Contracts, Agreements, or Invoices relating to, supporting or purporting to justify the Transactions;

(d)     Any Documents and Communications Concerning the identity of the individuals or entities that approved and/or authorized the Transactions; and

(e)     Any Documents and Communications Concerning divergent, errant or otherwise suspicious Transactions between Korek and BPC account number 033180 (IBAN Number LB81 0035 0004 0000 0000 0003 3180).

# Exhibit B

AO 88B  (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of New York

| | |
|---|---|
| In re Ex Parte Application of Iraq Telecom Limited | ) |
| _____ | ) |
| *Plaintiff* | ) |
| v. | )   Civil Action No. |
| | ) |
| _____ | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:
HSBC (USA), N.A.

452 Fifth Avenue, New York, New York 10005
_____
*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

See Rider (attached)

| Place:  Quinn Emanuel Urquhart & Sullivan, LLP | Date and Time: |
|---|---|
| 51 Madison Avenue, 22nd Floor, New York, NY 10010 | 10/15/2018 10:00 am |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  _____

CLERK OF COURT

OR

_____               _____
*Signature of Clerk or Deputy Clerk*                        *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____

Iraq Telecom Limited
_____ , who issues or requests this subpoena, are:

Kristin N. Tahler, Quinn Emanuel Urquhart & Sullivan, LLP, 865 S. Figueroa St., 10th Floor, Los Angeles, California 90017, Tel: (213) 443-3000 Fax: (213) 443-3100

## Notice to the person who issues or requests this subpoena
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## RIDER

Iraq Telecom Limited ("Iraq Telecom") serves this subpoena on HSBC Bank (USA), N.A. ("HSBC") pursuant to 28 U.S.C. § 1782(a) and Fed. R. Civ. P. 45.  Please produce the following documents, as set forth in the Requests for Production (the "Requests") in accordance with the definitions and instructions that appear below.

## DEFINITIONS

Unless otherwise defined, all words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common, ordinary sense.  As used in these Requests, the words set forth below shall be defined as follows:

1.      "Agreement" is used in its broadest ordinary sense and shall mean any oral or written act or arrangement regarding a course of action, including but not limited to Contracts (as defined below).

2.      "Communication(s)" is used in its broadest ordinary sense and shall mean any manner or means of disclosure, transfer or exchange of facts, information, ideas, opinions, inquiries or thoughts, whether by written, oral, mechanical, telephonic, electronic or some other means of communication, and shall include the information transmitted.  For the avoidance of doubt, the term "Communication" shall encompass pictures, photographs, recordings, text messages or any other means of capturing information.

3.      "Concerning," is used in its broadest usual and customary meaning, and, in addition, shall mean directly or indirectly, in whole or in part, alluding to, analyzing, assessing, characterizing, commenting on, connected with, constituting, containing an implicit reference to, describing, disclosing, discussing, evidencing, explaining, identifying, memorializing, mentioning, noting, pertaining to, recording, referring to, reflecting, regarding, relating to,

1

representing, showing, stating, suggesting, summarizing, supporting, touching upon, underlying, or otherwise involving the subject matter of the specified Request.

4.      "Contract" is used in its broadest ordinary sense and shall mean a legally binding Agreement between two or more persons.

5.      "Correspondent Account(s)" shall mean all *vostro* accounts (*i.e.*, account(s) held by a correspondent bank on behalf of another bank) maintained or held by HSBC on behalf of HSBC UAE (defined below).

6.      "CS Ltd" shall mean Korek International (Management) Ltd, a Cayman Islands company that holds a 56% share in International Holdings Limited ("IHL"), the parent company of Korek (defined below).

7.      "CS Ltd Director" shall mean the directors nominated by CS Ltd to serve on the Board of Directors of IHL, which includes Messrs. Aqrawi, Barzani and Jundi (each of whom is defined below).

8.      "Document(s)" shall mean all Electronically Stored Information, data, images, and system information (*e.g.*, logs or "metadata" created by a computer system detailing and tracking events on the system, including changes to documents), and all written, printed, typed, photographed, or graphic matter of every type or description, whether comprised of letters, words, numbers, pictures, sounds or symbols, or any combination thereof, and whether in paper form or stored on audiotape, videotape, computer, electronic, magnetic or other media (including, for example, correspondence, electronic mail, text messages, instant message dialogues, calendars, drawings, spreadsheets, databases, notes, invoices, contracts, facsimiles, voicemail messages, telephone messages and presentations).  The term "Document(s)" specifically includes all drafts, versions, revisions, amendments, modifications, changes or notes related thereto, including all

2

non-identical copies such as those that include marginalia, deletions or alterations, or other printed, stamped, post-it or handwritten revisions or notations.  This definition also includes any attachments, enclosures, or other matter affixed to or incorporated by reference within any other Documents responsive to these Requests.

9.      "Due Diligence Investigation" shall mean the investigation of a foreign bank undertaken by a U.S. bank prior to entering into a banking relationship with said foreign bank, including the opening of a correspondent account.  Such investigations include any actions taken pursuant to the obligations set forth in 31 U.S.C. § 5318(i) and 31 C.F.R. § 1010.610.

10.     "HSBC UAE" shall mean HSBC Bank Middle East Limited UAE Branch, and any present or former (1) affiliates, subsidiaries, and branches of IBL Bank SAL; and (2) officers, directors, employees, agents or consultants of HSBC UAE.

11.     "IBL Bank" shall mean IBL Bank SAL, and any present or former (1) affiliates, subsidiaries, and branches of IBL Bank SAL; and (2) officers, directors, employees, agents or consultants of IBL Bank SAL.

12.     "IBL Loan" shall mean the USD 150 million loan made by IBL Bank to Korek (defined below) pursuant to the Term Loan Agreement, dated December 21, 2011, and any supplemental agreements thereto.

13.     "IC4LC" shall mean International Company for Legal Consulting, an unregistered and unincorporated Lebanese business entity that purportedly acts as a law firm.

14.     "Invoice" is used in its broadest ordinary sense and shall mean a list of goods shipped or services provided and amounts owed for same.

15.     "Iraq Telecom" shall mean Iraq Telecom Limited and any present or former officers, directors, employees, agents or consultants of Iraq Telecom Limited.

16.     "Korek" shall mean (1) Korek Telecom Company LLC and its parent IHL; (2) any present or former officers, directors, employees, agents or consultants of Korek Telecom Company LLC. or IHL; and (3) any accounts held by Korek at HSBC UAE, including but not limited to account number 02 225 224 14 35.

17.     "Korek S.A.L." shall mean Korek Telecom S.A.L. and any present or former officers, directors, employees, agents or consultants of Korek Telecom S.A.L.  Korek S.A.L. is a separate and distinct entity from Korek.

18.     "Mr. Aqrawi" shall mean Abdulhameed Abdullah Mohammed Salih Aqrawi, one of the CS Ltd. Directors.

19.     "Mr. Aqrawi" shall mean Abdulhameed Abdullah Mohammed Salih Aqrawi (also referred to as Mr. Akrawi and/or Mr. Akravi, etc.), one of the CS Ltd. Directors.

20.     "Mr. Azar" shall mean Michel Azar, who conducts business under the name of IC4LC.

21.     "Mr. Barzani" shall mean Sirwan Saber Mustafa and/or Sirwan Saber Mustafa Barzani, one of the CS Ltd Directors and the Statutory Manager of Korek under Iraqi law.

22.     "Mr. Jundi" shall mean Nozad Hussein Jundi, one of the CS Ltd Directors.

23.     "Mr. Rahmeh" means Raymond Samir Zina Rahmeh (also sometimes referred to as Mr. Rimon Rahmeh and/or Mr. Rahme), the Independent Director of IHL nominated by CS Ltd.

23.     "Suppliers" shall mean (a) any and all of the following entities: (i) Darin Group; (ii) D&A Offshore SAL; (iii) DoubleU; (iv) K-Energy; (iv) Halabja Group; (v) ZR Collection; (vi) ZR Group; (vii) IC4LC; and/or (viii) any other entities which, based on information available to HSBC, Korek made payments for goods and/or services; (b) any parents, subsidiaries, affiliates, segments, or divisions both presently existing and those that previously existed of the entities set

forth in sub-part (a) of this paragraph, and/or (c) any present or former officers, directors, employees, consultants, contractors, agents or members of board of directors or board of trustees of the entities set forth in sub-part (a) of this paragraph.

24.     "Transaction(s)" shall mean all deposits, withdrawals, incoming wire transfers, outgoing wire transfers, charges, payments, purchases, returns, bank fees, checks, travelers checks, letters of credit and drafts typically made between a customer of a bank (including a foreign bank) and the bank itself.

25.     "You," "Your" and/or "HSBC" shall mean HSBC, N.A. and any parents, subsidiaries, affiliates, segments, or divisions both presently existing and those that previously existed, and any present or former officers, directors, employees, consultants, contractors, agents or members of the board of directors or board of trustees for HSBC, N.A.

26.     The terms "any" and "each" should be understood to include and encompass "all."

27.     Where appropriate, the singular form of a word should be interpreted in the plural and vice versa, to acquire the broadest possible meeting.

## INSTRUCTIONS

1.        The obligations and rules of construction set forth in Rule 45 of the Federal Rules of Civil Procedure are incorporated in these Requests.  A copy of Rule 45 sections (c), (d), (e) and (g) is attached to the subpoena.

2.        Unless otherwise stated in a specific Request, these Requests seek responsive information and Documents authored, generated, disseminated, drafted, produced, reproduced or otherwise created or distributed or relating to the period January 1, 2011 through the present.

3.        With respect to the documents produced, You shall produce them as they are kept in Your usual course of business, including, if applicable, in their native format.  A draft of a Document is unique and separate from the final version of that Document.  All drafts of each Document are to be produced, without abbreviation or redaction.

4.        Each Request seeks production of each Document in its entirety, without abbreviation or redaction, including, without limitation, all attachments, transmittal sheets, notes, cover letters, exhibits, enclosures, and all drafts and non-identical copies of each Document.

5.        Documents attached to each other shall not be separated and shall be produced together.

6.        A Document with handwritten, typewritten or other recorded notes, editing marks, etc., is a separate, unique Document and is not, and shall not be deemed to be, identical to one without such modifications, additions, or deletions.

7.        Each Request shall be construed independently, and no Request shall be viewed as limiting the scope of any other Request.

8.        If no Documents are responsive to a particular Request, You are to state that no responsive Documents exist for that particular Request.

9.     If any Document or any part of a Document responsive to a Request is withheld from production on the basis of any claim of privilege, You shall submit, in lieu of such Document, a written statement identifying: (a) the nature of the privilege (including attorney work product) which is being claimed; (b) the general subject matter of the Document and a description of the file or other location where it was found; (c) the type or general nature of the Document (*i.e.,* whether it is a letter, memorandum, invoice, email, etc.) and the number of pages of which it consists; (d) the date of the Document; (e) the author(s) and recipient(s) of the Document; and (f) the addresses of the Document and any other recipients.

10.     You are further requested to provide all non-privileged portions of Documents containing material over which a claim of privilege has been asserted by excising, concealing, or otherwise protecting the portions for which a privilege is asserted, but only to the extent that such excise, concealment, or other protection is strictly necessary for the purposes of the claim of privilege.

11.     The Requests in this Rider are continuing in nature.  If, after producing the requested Documents, You obtain or become aware of any further responsive Documents, You must produce to Defendant such additional Documents.  Such additional Documents are to be promptly produced at the offices of Quinn Emanuel Urquhart & Sullivan, LLP, 51 Madison Avenue, 22nd Floor, New York, NY 10010.

12.     Unless otherwise indicated, the Documents requested include all Documents in Your possession, custody or control.  Without limitation of the terms "possession, custody or control," as used in the preceding sentence, a Document is in Your possession, custody or control if You have actual possession or custody or the right or practical ability to obtain the Document or a copy thereof upon demand from one or more of Your affiliates, parents, subsidiaries, divisions,

related companies or predecessors-in-interest, officers, directors, employees, agents, consultants, representatives, independent contractors, advisors, attorneys and any other person or public or private entity that has actual physical possession thereof.

13.     If a Document is partially responsive, the whole Document shall be produced with no redactions for responsiveness.

## CATEGORIES OF DOCUMENTS TO BE PRODUCED

**I.   TRANSACTIONS RELATING TO IBL BANK AND THE IBL LOAN**

1.      All Documents and Communications between **January 1, 2011 and December 31, 2011** Concerning **Transactions between Korek's HSBC Account Number 022 2522 41 435 and HSBC UAE Account Number 022 2525 22 100** which (1) were processed through HSBC UAE's Correspondent Account(s) with HSBC, or (2) otherwise involved HSBC , including but not limited to:

(a)     Copies of all SWIFT Message Types (MT) 100's, 200's, 900's relating to the Transactions;

(b)     Any Documents and Communications Concerning the (i) amount of each Transaction; (ii) the date of the Transaction; (iii) the originating account(s) of each Transaction; (iv) beneficial owner(s) of the originating account(s); (v) identity of any intermediary banks; (vi) receiving account(s) of each Transaction; (vii) beneficial owner(s) of the receiving account(s); (viii) stated purpose or reason for each Transaction; (ix) special instructions relating to the Transaction, if any; (x) notify party for the Transaction, if any; and (xi) other details of the Transaction, if any;

(c)     Any Contracts, Agreements or Invoices relating to, supporting or purporting to justify the Transactions;

(d)     Any Documents and Communications Concerning the identity of the individuals or entities that approved and/or authorized the Transactions; and

(e)     Any Documents and Communications Concerning divergent, errant or otherwise suspicious Transactions between Korek's HSBC Account Number 022 2522 41 435 and HSBC UAE Account Number 022 2525 22 100.

2.      All Documents and Communications Concerning **Transactions between HSBC UAE Account Number 022 2525 22 100 and IBL Bank, either directly or indirectly,** which (1) were processed through HSBC UAE's Correspondent Account(s) with HSBC, or (2) otherwise involved HSBC, including but not limited to:

(a)     Copies of all SWIFT Message Types (MT) 100's, 200's, 900's relating to the Transactions;

(b) Any Documents and Communications Concerning the (i) amount of each Transaction; (ii) the date of the Transaction; (iii) the originating account(s) of each Transaction; (iv) beneficial owner(s) of the originating account(s); (v) identity of any intermediary banks; (vi) receiving account(s) of each Transaction; (vii) beneficial owner(s) of the receiving account(s); (viii) stated purpose or reason for each Transaction; (ix) special instructions relating to the Transaction, if any; (x) notify party for the Transaction, if any; and (xi) other details of the Transaction, if any;

(c) Any Contracts, Agreements or Invoices relating to, supporting or purporting to justify the Transactions;

(d) Any Documents and Communications Concerning the identity of the individuals or entities that approved and/or authorized the Transactions; and

(e) Any Documents and Communications Concerning divergent, errant or otherwise suspicious Transactions between HSBC UAE Account Number 022 2525 22 100 and IBL Bank**.**

## II. TRANSACTIONS RELATING TO KOREK'S SUPPLIER PAYMENTS

3. All Documents and Communications Concerning **Transactions Between Korek and the Suppliers**, which (1) were processed through HSBC UAE's Correspondent Account(s) with HSBC, or (2) otherwise involved HSBC, including but not limited to:

(a) Copies of all SWIFT Message Types (MT) 100's, 200's, 900's relating to the Transactions;

(b) Any Documents and Communications Concerning the (i) amount of each Transaction; (ii) the date of the Transaction; (iii) the originating account(s) of each Transaction; (iv) beneficial owner(s) of the originating account(s); (v) identity of any intermediary banks; (vi) receiving account(s) of each Transaction; (vii) beneficial owner(s) of the receiving account(s); (viii) stated purpose or reason for each Transaction; (ix) special instructions relating to the Transaction, if any; (x) notify party for the Transaction, if any; and (xi) other details of the Transaction, if any;

(c) Any Contracts, Agreements or Invoices relating to, supporting or purporting to justify the Transactions;

(d) Any Documents and Communications Concerning the identity of the individuals or entities that approved and/or authorized the Transactions; and

(e) Any Documents and Communications Concerning divergent, errant or otherwise suspicious Transactions between Korek and the Suppliers.

4. All Documents and Communications Concerning **Transactions Between Korek and IBL Bank account number 169160** (IBAN Number LB 800052000700230201691 60014 or LB 800052000700211001691 60013), which (1) were processed through HSBC UAE's Correspondent Account(s) with HSBC, or (2) otherwise involved HSBC, including but not limited to:

(a)     Copies of all SWIFT Message Types (MT) 100's, 200's, 900's relating to the Transactions;

(b)     Any Documents and Communications Concerning the (i) amount of each Transaction; (ii) the date of the Transaction; (iii) the originating account(s) of each Transaction; (iv) beneficial owner(s) of the originating account(s); (v) identity of any intermediary banks; (vi) receiving account(s) of each Transaction; (vii) beneficial owner(s) of the receiving account(s); (viii) stated purpose or reason for each Transaction; (ix) special instructions relating to the Transaction, if any; (x) notify party for the Transaction, if any; and (xi) other details of the Transaction, if any;

(c)     Any Contracts, Agreements, or Invoices relating to, supporting or purporting to justify the Transactions;

(d)     Any Documents and Communications Concerning the identity of the individuals or entities that approved and/or authorized the Transactions; and

(e)     Any Documents and Communications Concerning divergent, errant or otherwise suspicious Transactions between Korek and IBL Bank account number 169160 (IBAN Number LB 800052000700230201 69160014 or LB800052000700211001 69160013).

11

# Exhibit C

AO 88B  (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of New York

| | |
|---|---|
| In re Ex Parte Application of Iraq Telecom Limited | ) |
| _____ | ) |
| *Plaintiff* | ) |
| v. | )   Civil Action No. |
| | ) |
| _____ | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:           Standard Chartered International (USA) Ltd.
           1095 Avenue of the Americas, New York, New York 10036

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

           See Rider (attached)

| Place:  Quinn Emanuel Urquhart & Sullivan, LLP 51 Madison Avenue, 22nd Floor, New York, NY 10010 | Date and Time: 10/15/2018 10:00 am |
|---|---|

❏ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  _____

|  CLERK OF COURT | |
|---|---|
| | OR |
| _____ | _____ |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Iraq Telecom Limited_____ , who issues or requests this subpoena, are:
Kristin N. Tahler, Quinn Emanuel Urquhart & Sullivan, LLP, 865 S. Figueroa St., 10th Floor, Los Angeles, California 90017, Tel: (213) 443-3000 Fax: (213) 443-3100

**Notice to the person who issues or requests this subpoena**
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) For a Trial, Hearing, or Deposition.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
  **(i)** is a party or a party's officer; or
  **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) For Other Discovery.** A subpoena may command:
 **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) Command to Produce Materials or Permit Inspection.**
 **(A)** Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 **(B)** Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) Quashing or Modifying a Subpoena.**
 **(A)** When Required. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  **(i)** fails to allow a reasonable time to comply;
  **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
  **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  **(iv)** subjects a person to undue burden.
 **(B)** When Permitted. To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
  **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

 **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 **(C)** Specifying Conditions as an Alternative. In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) Producing Documents or Electronically Stored Information.** These procedures apply to producing documents or electronically stored information:
 **(A)** Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 **(B)** Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 **(C)** Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
 **(D)** Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) Claiming Privilege or Protection.**
 **(A)** Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  **(i)** expressly make the claim; and
  **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 **(B)** Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## RIDER

Iraq Telecom Limited ("Iraq Telecom") serves this subpoena on Standard Chartered International (USA) Ltd. ("Standard Chartered") pursuant to 28 U.S.C. § 1782(a) and Fed. R. Civ. P. 45.  Please produce the following documents, as set forth in the Requests for Production (the "Requests") in accordance with the definitions and instructions that appear below.

## DEFINITIONS

Unless otherwise defined, all words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common, ordinary sense.  As used in these Requests, the words set forth below shall be defined as follows:

1.      "Agreement" is used in its broadest ordinary sense and shall mean any oral or written act or arrangement regarding a course of action, including but not limited to Contracts (as defined below).

2.      "BPC" shall mean Banque Pharaon & Chiha, which was acquired by Byblos (defined below) in 2016, and any present or former (1) affiliates, subsidiaries, and branches of BPC; and (2) officers, directors, employees, agents or consultants of BPC.

3.      "Byblos" shall mean Byblos Bank, which acquired BPC in 2016, and any present or former (1) affiliates, subsidiaries, and branches of Byblos; and (2) officers, directors, employees, agents or consultants of Byblos.

4.      "Communication(s)" is used in its broadest ordinary sense and shall mean any manner or means of disclosure, transfer or exchange of facts, information, ideas, opinions, inquiries or thoughts, whether by written, oral, mechanical, telephonic, electronic or some other means of communication, and shall include the information transmitted.  For the avoidance of

1

doubt, the term "Communication" shall encompass pictures, photographs, recordings, text messages or any other means of capturing information.

5.      "Concerning," is used in its broadest usual and customary meaning, and, in addition, shall mean directly or indirectly, in whole or in part, alluding to, analyzing, assessing, characterizing, commenting on, connected with, constituting, containing an implicit reference to, describing, disclosing, discussing, evidencing, explaining, identifying, memorializing, mentioning, noting, pertaining to, recording, referring to, reflecting, regarding, relating to, representing, showing, stating, suggesting, summarizing, supporting, touching upon, underlying, or otherwise involving the subject matter of the specified Request.

6.      "Contract" is used in its broadest ordinary sense and shall mean a legally binding Agreement between two or more persons.

7.      "Correspondent Account(s)" shall mean all *vostro* accounts (*i.e.*, account(s) held by a correspondent bank on behalf of another bank) maintained or held by Standard Chartered on behalf of BPC and/or Byblos.

8.      "CS Ltd" shall mean Korek International (Management) Ltd, a Cayman Islands company that holds a 56% share in International Holdings Limited ("IHL"), the parent company of Korek (defined below).

9.      "CS Ltd Director" shall mean the directors nominated by CS Ltd to serve on the Board of Directors of IHL, which includes Messrs. Aqrawi, Barzani and Jundi (each of whom is defined below).

10.      "Document(s)" shall mean all Electronically Stored Information, data, images, and system information (*e.g.*, logs or "metadata" created by a computer system detailing and tracking events on the system, including changes to documents), and all written, printed, typed,

photographed, or graphic matter of every type or description, whether comprised of letters, words, numbers, pictures, sounds or symbols, or any combination thereof, and whether in paper form or stored on audiotape, videotape, computer, electronic, magnetic or other media (including, for example, correspondence, electronic mail, text messages, instant message dialogues, calendars, drawings, spreadsheets, databases, notes, invoices, contracts, facsimiles, voicemail messages, telephone messages and presentations).  The term "Document(s)" specifically includes all drafts, versions, revisions, amendments, modifications, changes or notes related thereto, including all non-identical copies such as those that include marginalia, deletions or alterations, or other printed, stamped, post-it or handwritten revisions or notations.   This definition also includes any attachments, enclosures, or other matter affixed to or incorporated by reference within any other Documents responsive to these Requests.

11.     "Due Diligence Investigation" shall mean the investigation of a foreign bank undertaken by a U.S. bank prior to entering into a banking relationship with said foreign bank, including the opening of a correspondent account.  Such investigations include any actions taken pursuant to the obligations set forth in 31 U.S.C. § 5318(i) and 31 C.F.R. § 1010.610.

12.     "IC4LC" shall mean International Company for Legal Consulting, an unregistered and unincorporated Lebanese business entity that purportedly acts as a law firm.

13.     "Invoice" is used in its broadest ordinary sense and shall mean a list of goods shipped or services provided and amounts owed for same.

14.     "Iraq Telecom" shall mean Iraq Telecom Limited and any present or former officers, directors, employees, agents or consultants of Iraq Telecom Limited.

15.     "Korek" shall mean Korek Telecom Company LLC and (1) its parent IHL; (2) any present or former officers, directors, employees, agents or consultants of Korek Telecom Company

LLC. or IHL; and (3) any accounts held by Korek at (a) IBL Bank SAL, including but not limited to account number 007 002 244 0700 716 016; and/or (b) HSBC Bank Middle East Limited UAE Branch, including but not limited to account number 02 225 224 14 35.

16.    "Korek S.A.L." shall mean Korek Telecom S.A.L. and any present or former officers, directors, employees, agents or consultants of Korek Telecom S.A.L.  Korek S.A.L. is a separate and distinct entity from Korek.

17.    "Mr. Aqrawi" shall mean Abdulhameed Abdullah Mohammed Salih Aqrawi (also referred to as Mr. Akrawi and/or Mr. Akravi, etc.), one of the CS Ltd. Directors.

18.    "Mr. Azar" shall mean Michel Azar, who conducts business under the name of IC4LC.

19.    "Mr. Barzani" shall mean Sirwan Saber Mustafa and/or Sirwan Saber Mustafa Barzani, one of the CS Ltd Directors and the Statutory Manager of Korek under Iraqi law.

20.    "Mr. Jundi" shall mean Nozad Hussein Jundi, one of the CS Ltd Directors.

21.    "Mr. Rahmeh" means Raymond Samir Zina Rahmeh (also sometimes referred to as Mr. Rimon Rahmeh and/or Mr. Rahme), the Independent Director of IHL nominated by CS Ltd.

22.    "Transaction(s)" shall mean all deposits, withdrawals, incoming wire transfers, outgoing wire transfers, charges, payments, purchases, returns, bank fees, checks, travelers checks, letters of credit and drafts typically made between a customer of a bank (including a foreign bank) and the bank itself.

23.    "You," "Your" and/or "Standard Chartered" shall mean Standard Chartered, N.A. and any parents, subsidiaries, affiliates, segments, or divisions both presently existing and those that previously existed, and any present or former officers, directors, employees, consultants,

contractors, agents or members of the board of directors or board of trustees for Standard Chartered, N.A.

24.     The terms "any" and "each" should be understood to include and encompass "all."

25.     Where appropriate, the singular form of a word should be interpreted in the plural and vice versa, to acquire the broadest possible meeting.

## <u>INSTRUCTIONS</u>

1.     The obligations and rules of construction set forth in Rule 45 of the Federal Rules of Civil Procedure are incorporated in these Requests.  A copy of Rule 45 sections (c), (d), (e) and (g) is attached to the subpoena.

2.     Unless otherwise stated in a specific Request, these Requests seek responsive information and Documents authored, generated, disseminated, drafted, produced, reproduced or otherwise created or distributed or relating to the period January 1, 2011 through the present.

3.     With respect to the documents produced, You shall produce them as they are kept in Your usual course of business, including, if applicable, in their native format.  A draft of a Document is unique and separate from the final version of that Document.  All drafts of each Document are to be produced, without abbreviation or redaction.

4.     Each Request seeks production of each Document in its entirety, without abbreviation or redaction, including, without limitation, all attachments, transmittal sheets, notes, cover letters, exhibits, enclosures, and all drafts and non-identical copies of each Document.

5.     Documents attached to each other shall not be separated and shall be produced together.

6.     A Document with handwritten, typewritten or other recorded notes, editing marks, etc., is a separate, unique Document and is not, and shall not be deemed to be, identical to one without such modifications, additions, or deletions.

7.     Each Request shall be construed independently, and no Request shall be viewed as limiting the scope of any other Request.

8.     If no Documents are responsive to a particular Request, You are to state that no responsive Documents exist for that particular Request.

9.      If any Document or any part of a Document responsive to a Request is withheld from production on the basis of any claim of privilege, You shall submit, in lieu of such Document, a written statement identifying: (a) the nature of the privilege (including attorney work product) which is being claimed; (b) the general subject matter of the Document and a description of the file or other location where it was found; (c) the type or general nature of the Document (*i.e.,* whether it is a letter, memorandum, invoice, email, etc.) and the number of pages of which it consists; (d) the date of the Document; (e) the author(s) and recipient(s) of the Document; and (f) the addresses of the Document and any other recipients.

10.     You are further requested to provide all non-privileged portions of Documents containing material over which a claim of privilege has been asserted by excising, concealing, or otherwise protecting the portions for which a privilege is asserted, but only to the extent that such excise, concealment, or other protection is strictly necessary for the purposes of the claim of privilege.

11.     The Requests in this Rider are continuing in nature.  If, after producing the requested Documents, You obtain or become aware of any further responsive Documents, You must produce to Defendant such additional Documents.  Such additional Documents are to be promptly produced at the offices of Quinn Emanuel Urquhart & Sullivan, LLP, 51 Madison Avenue, 22nd Floor, New York, NY 10010.

12.     Unless otherwise indicated, the Documents requested include all Documents in Your possession, custody or control.  Without limitation of the terms "possession, custody or control," as used in the preceding sentence, a Document is in Your possession, custody or control if You have actual possession or custody or the right or practical ability to obtain the Document or a copy thereof upon demand from one or more of Your affiliates, parents, subsidiaries, divisions,

related companies or predecessors-in-interest, officers, directors, employees, agents, consultants, representatives, independent contractors, advisors, attorneys and any other person or public or private entity that has actual physical possession thereof.

13.    If a Document is partially responsive, the whole Document shall be produced with no redactions for responsiveness.

## CATEGORIES OF DOCUMENTS TO BE PRODUCED

### I.   RELATIONSHIP BETWEEN STANDARD CHARTERED AND BYBLOS/BPC

1.      Documents and Communications Concerning **the nature and terms of the relationship between Standard Chartered and Byblos and/or BP**C, including any Contracts, Agreements or other Documents relating to any correspondent banking services provided by Standard Chartered to Byblos and/or BPC, either directly or through a third party.

2.      Documents and Communications sufficient to **show the identifying information, including account number(s) and ultimate beneficial owner(s)**, of each past and current Correspondent Account held by Standard Chartered on behalf of Byblos and/or BPC.

3.      Documents and Communications sufficient **to show the identities of each individual, corporation or other entity authorized to access or control, either directly or indirectly**, each of Byblos's and/or BPC's Correspondent Accounts with Standard Chartered.

4.      All Documents and Communications Concerning Standard Chartered's **Due Diligence Investigation(s) of Byblos and/or BPC**, if any, to the extent such Investigation(s) concerned, related to, involved and/or mentioned Korek, Korek S.A.L., the CS Ltd Directors, Mr. Rahmeh, and/or Mr. Azar.

### II.  TRANSACTIONS BETWEEN KOREK AND BYBLOS/BPC

5.      All Documents and Communications Concerning Transactions **between Korek and BPC account number 033180** (IBAN Number LB81 0035 0004 0000 0000 0003 3180), which were processed through or otherwise involved the Correspondent Accounts of Byblos or BPC with Standard Chartered, including but not limited to:

(a)      Copies of all SWIFT Message Types (MT) 100's, 200's, 900's relating to the Transactions;

(b)     Any Documents and Communications Concerning the (i) amount of each Transaction; (ii) the date of the Transaction; (iii) the originating account(s) of each Transaction; (iv) beneficial owner(s) of the originating account(s); (v) identity of any intermediary banks; (vi) receiving account(s) of each Transaction; (vii) beneficial owner(s) of the receiving account(s); (viii) stated purpose or reason for each Transaction; (ix) special instructions relating to the Transaction, if any; (x) notify party for the Transaction, if any; and (xi) other details of the Transaction, if any;

(c)     Any Contracts, Agreements, or Invoices relating to, supporting or purporting to justify the Transactions;

(d)     Any Documents and Communications Concerning the identity of the individuals or entities that approved and/or authorized the Transactions; and

(e)     Any Documents and Communications Concerning divergent, errant or otherwise suspicious Transactions between Korek and BPC account number 033180 (IBAN Number LB81 0035 0004 0000 0000 0003 3180).

# Exhibit D

AO 88B  (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Southern District of New York

| | |
|---|---|
| In re Ex Parte Application of Iraq Telecom Limited | ) |
| _____ | ) |
| *Plaintiff* | ) |
| v. | )     Civil Action No. |
| | ) |
| _____ | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:          The Bank of New York Mellon, N.A.
             225 Liberty Street, New York, New York 10286
_____
*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:
             See Rider (attached)

| Place: Quinn Emanuel Urquhart & Sullivan, LLP<br>        51 Madison Avenue, 22nd Floor, New York, NY 10010 | Date and Time:<br><br>        10/15/2018 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

        The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  _____

          *CLERK OF COURT*
                                                      OR
          _____        _____
             *Signature of Clerk or Deputy Clerk*                 *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Iraq Telecom Limited                                              , who issues or requests this subpoena, are:
Kristin N. Tahler, Quinn Emanuel Urquhart & Sullivan, LLP, 865 S. Figueroa St., 10th Floor, Los Angeles, California 90017, Tel: (213) 443-3000 Fax: (213) 443-3100

## Notice to the person who issues or requests this subpoena
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## RIDER

Iraq Telecom Limited ("Iraq Telecom") serves this subpoena on The Bank of New York Mellon, N.A. ("The Bank of New York Mellon") pursuant to 28 U.S.C. § 1782(a) and Fed. R. Civ. P. 45. Please produce the following documents, as set forth in the Requests for Production (the "Requests") in accordance with the definitions and instructions that appear below.

## DEFINITIONS

Unless otherwise defined, all words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common, ordinary sense. As used in these Requests, the words set forth below shall be defined as follows:

1.      "Agreement" is used in its broadest ordinary sense and shall mean any oral or written act or arrangement regarding a course of action, including but not limited to Contracts (as defined below).

2.      "BPC" shall mean Banque Pharaon & Chiha, which was acquired by Byblos (defined below) in 2016, and any present or former (1) affiliates, subsidiaries, and branches of BPC; and (2) officers, directors, employees, agents or consultants of BPC.

3.      "Byblos" shall mean Byblos Bank, which acquired BPC in 2016, and any present or former (1) affiliates, subsidiaries, and branches of Byblos; and (2) officers, directors, employees, agents or consultants of Byblos.

4.      "Communication(s)" is used in its broadest ordinary sense and shall mean any manner or means of disclosure, transfer or exchange of facts, information, ideas, opinions, inquiries or thoughts, whether by written, oral, mechanical, telephonic, electronic or some other means of communication, and shall include the information transmitted. For the avoidance of

doubt, the term "Communication" shall encompass pictures, photographs, recordings, text messages or any other means of capturing information.

5.     "Concerning," is used in its broadest usual and customary meaning, and, in addition, shall mean directly or indirectly, in whole or in part, alluding to, analyzing, assessing, characterizing, commenting on, connected with, constituting, containing an implicit reference to, describing, disclosing, discussing, evidencing, explaining, identifying, memorializing, mentioning, noting, pertaining to, recording, referring to, reflecting, regarding, relating to, representing, showing, stating, suggesting, summarizing, supporting, touching upon, underlying, or otherwise involving the subject matter of the specified Request.

6.     "Contract" is used in its broadest ordinary sense and shall mean a legally binding Agreement between two or more persons.

7.     "Correspondent Account(s)" shall mean all *vostro* accounts (*i.e.*, account(s) held by a correspondent bank on behalf of another bank) maintained or held by The Bank of New York Mellon on behalf of IBL Bank (defined below), BPC or Byblos.

8.     "CS Ltd" shall mean Korek International (Management) Ltd, a Cayman Islands company that holds a 56% share in International Holdings Limited ("IHL"), the parent company of Korek (defined below).

9.     "CS Ltd Director" shall mean the directors nominated by CS Ltd to serve on the Board of Directors of IHL, which includes Messrs. Aqrawi, Barzani and Jundi (each of whom is defined below).

10.     "Document(s)" shall mean all Electronically Stored Information, data, images, and system information (*e.g.*, logs or "metadata" created by a computer system detailing and tracking events on the system, including changes to documents), and all written, printed, typed,

photographed, or graphic matter of every type or description, whether comprised of letters, words, numbers, pictures, sounds or symbols, or any combination thereof, and whether in paper form or stored on audiotape, videotape, computer, electronic, magnetic or other media (including, for example, correspondence, electronic mail, text messages, instant message dialogues, calendars, drawings, spreadsheets, databases, notes, invoices, contracts, facsimiles, voicemail messages, telephone messages and presentations). The term "Document(s)" specifically includes all drafts, versions, revisions, amendments, modifications, changes or notes related thereto, including all non-identical copies such as those that include marginalia, deletions or alterations, or other printed, stamped, post-it or handwritten revisions or notations. This definition also includes any attachments, enclosures, or other matter affixed to or incorporated by reference within any other Documents responsive to these Requests.

11. "Due Diligence Investigation" shall mean the investigation of a foreign bank undertaken by a U.S. bank prior to entering into a banking relationship with said foreign bank, including the opening of a correspondent account. Such investigations include any actions taken pursuant to the obligations set forth in 31 U.S.C. § 5318(i) and 31 C.F.R. § 1010.610.

12. "IBL Bank" shall mean IBL Bank SAL, and any present or former (1) affiliates, subsidiaries, and branches of IBL Bank SAL; and (2) officers, directors, employees, agents or consultants of IBL Bank SAL.

13. "IBL Loan" shall mean the USD 150 million loan made by IBL Bank to Korek (defined below) pursuant to the Term Loan Agreement, dated December 21, 2011, and any supplemental agreements thereto.

14. "IC4LC" shall mean International Company for Legal Consulting, an unregistered and unincorporated Lebanese business entity that purportedly acts as a law firm.

15.     "Invoice" is used in its broadest ordinary sense and shall mean a list of goods shipped or services provided and amounts owed for same.

16.     "Iraq Telecom" shall mean Iraq Telecom Limited and any present or former officers, directors, employees, agents or consultants of Iraq Telecom Limited.

17.     "Korek" shall mean Korek Telecom Company LLC and (1) its parent IHL; (2) any present or former officers, directors, employees, agents or consultants of Korek Telecom Company LLC. or IHL; and (3) any accounts held by Korek at IBL Bank, including but not limited to account number 007 002 244 0700 716 016.

18.     "Korek S.A.L." shall mean Korek Telecom S.A.L. and any present or former officers, directors, employees, agents or consultants of Korek Telecom S.A.L.  Korek S.A.L. is a separate and distinct entity from Korek.

19.     "Mr. Aqrawi" shall mean Abdulhameed Abdullah Mohammed Salih Aqrawi (also referred to as Mr. Akrawi and/or Mr. Akravi, etc.), one of the CS Ltd. Directors.

20.     "Mr. Azar" shall mean Michel Azar, who conducts business under the name of IC4LC.

21.     "Mr. Barzani" shall mean Sirwan Saber Mustafa and/or Sirwan Saber Mustafa Barzani, one of the CS Ltd Directors and the Statutory Manager of Korek under Iraqi law.

22.     "Mr. Jundi" shall mean Nozad Hussein Jundi, one of the CS Ltd Directors.

23.     "Mr. Rahmeh" means Raymond Samir Zina Rahmeh (also sometimes referred to as Mr. Rimon Rahmeh and/or Mr. Rahme), the Independent Director of IHL nominated by CS Ltd.

24.     "Suppliers" shall mean (a) any and all of the following entities: (i) Darin Group, (ii) D&A Offshore SAL, (iii) DoubleU, (iv) K-Energy, (v) Halabja Group, (vi) ZR Collection, (vii) ZR Group, (viii) IC4LC, and/or (ix) any other entities which, based on information available to

The Bank of New York Mellon, Korek made payments for goods and/or services; (b) any parents, subsidiaries, affiliates, segments, or divisions both presently existing and those that previously existed of the entities set forth in sub-part (a) of this paragraph, and/or (c) any present or former officers, directors, employees, consultants, contractors, agents or members of board of directors or board of trustees of the entities set forth in sub-part (a) of this paragraph.

25.    "Transaction(s)" shall mean all deposits, withdrawals, incoming wire transfers, outgoing wire transfers, charges, payments, purchases, returns, bank fees, checks, travelers checks, letters of credit and drafts typically made between a customer of a bank (including a foreign bank) and the bank itself.

26.    "You," "Your" and/or "The Bank of New York Mellon" shall mean The Bank of New York Mellon, N.A. and any parents, subsidiaries, affiliates, segments, or divisions both presently existing and those that previously existed, and any present or former officers, directors, employees, consultants, contractors, agents or members of the board of directors or board of trustees for The Bank of New York Mellon, N.A.

27.    The terms "any" and "each" should be understood to include and encompass "all."

28.    Where appropriate, the singular form of a word should be interpreted in the plural and vice versa, to acquire the broadest possible meeting.

## <u>INSTRUCTIONS</u>

1.      The obligations and rules of construction set forth in Rule 45 of the Federal Rules of Civil Procedure are incorporated in these Requests.  A copy of Rule 45 sections (c), (d), (e) and (g) is attached to the subpoena.

2.      Unless otherwise stated in a specific Request, these Requests seek responsive information and Documents authored, generated, disseminated, drafted, produced, reproduced or otherwise created or distributed or relating to the period January 1, 2011 through December 31, 2012.

3.      With respect to the documents produced, You shall produce them as they are kept in Your usual course of business, including, if applicable, in their native format.  A draft of a Document is unique and separate from the final version of that Document.  All drafts of each Document are to be produced, without abbreviation or redaction.

4.      Each Request seeks production of each Document in its entirety, without abbreviation or redaction, including, without limitation, all attachments, transmittal sheets, notes, cover letters, exhibits, enclosures, and all drafts and non-identical copies of each Document.

5.      Documents attached to each other shall not be separated and shall be produced together.

6.      A Document with handwritten, typewritten or other recorded notes, editing marks, etc., is a separate, unique Document and is not, and shall not be deemed to be, identical to one without such modifications, additions, or deletions.

7.      Each Request shall be construed independently, and no Request shall be viewed as limiting the scope of any other Request.

8.     If no Documents are responsive to a particular Request, You are to state that no responsive Documents exist for that particular Request.

9.     If any Document or any part of a Document responsive to a Request is withheld from production on the basis of any claim of privilege, You shall submit, in lieu of such Document, a written statement identifying: (a) the nature of the privilege (including attorney work product) which is being claimed; (b) the general subject matter of the Document and a description of the file or other location where it was found; (c) the type or general nature of the Document (*i.e.,* whether it is a letter, memorandum, invoice, email, etc.) and the number of pages of which it consists; (d) the date of the Document; (e) the author(s) and recipient(s) of the Document; and (f) the addresses of the Document and any other recipients.

10.    You are further requested to provide all non-privileged portions of Documents containing material over which a claim of privilege has been asserted by excising, concealing, or otherwise protecting the portions for which a privilege is asserted, but only to the extent that such excise, concealment, or other protection is strictly necessary for the purposes of the claim of privilege.

11.    The Requests in this Rider are continuing in nature.  If, after producing the requested Documents, You obtain or become aware of any further responsive Documents, You must produce to Defendant such additional Documents.  Such additional Documents are to be promptly produced at the offices of Quinn Emanuel Urquhart & Sullivan, LLP, 51 Madison Avenue, 22nd Floor, New York, NY 10010.

12.    Unless otherwise indicated, the Documents requested include all Documents in Your possession, custody or control.  Without limitation of the terms "possession, custody or control," as used in the preceding sentence, a Document is in Your possession, custody or control

if You have actual possession or custody or the right or practical ability to obtain the Document or a copy thereof upon demand from one or more of Your affiliates, parents, subsidiaries, divisions, related companies or predecessors-in-interest, officers, directors, employees, agents, consultants, representatives, independent contractors, advisors, attorneys and any other person or public or private entity that has actual physical possession thereof.

13.     If a Document is partially responsive, the whole Document shall be produced with no redactions for responsiveness.

## CATEGORIES OF DOCUMENTS TO BE PRODUCED

**I.   DOCUMENT REQUESTS RELATING TO IBL BANK**

### A.  Relationship between The Bank of New York Mellon and IBL Bank

1.      Documents and Communications sufficient to show **the nature and terms of IBL Bank's relationship with The Bank of New York Mellon**, including but not limited to any Agreements or Contracts relating to correspondent banking services provided by The Bank of New York Mellon to IBL Bank, either directly or through a third party.

2.      Documents and Communications sufficient to show **the identifying information, including account number(s) and ultimate beneficial owner(s)**, of each of IBL Bank's past and current Correspondent Accounts with The Bank of New York Mellon.

3.      Documents and Communications sufficient to show **the identities of each individual, corporation or other entity authorized to access or control, either directly or indirectly**, each of IBL Bank's past and current Correspondent Accounts with The Bank of New York Mellon.

4.      All Documents and Communications Concerning **The Bank of New York Mellon's Due Diligence Investigation(s) of IBL Bank** to the extent such Investigations concerned, related to, or referenced Korek, Korek S.A.L., the CS Ltd Directors, Mr. Rahmeh, the Suppliers, and/or Mr. Azar.

### B.  Transactions Relating to the IBL Loan

5.      All Documents and Communications Concerning the IBL Loan, including but not limited to **IBL Bank's instructions to The Bank of New York Mellon** as to how it should maintain, dispense or transfer funds associated with the IBL Loan once received in IBL's Correspondent Account(s) with The Bank of New York Mellon.

6.      All Documents and Communications Concerning **Transactions between Korek and IBL Bank** which (1) were processed through or otherwise involved IBL Bank's Correspondent Account(s) with The Bank of New York Mellon, and (2) relate to, reference or otherwise involve the IBL Loan, including but not limited to:

(a)      Copies of SWIFT Message Types (MT) 100's, 200's, 900's relating to the Transactions;

(b)      Any Documents and Communications sufficient to show the (i) amount of each Transaction; (ii) date of the Transaction; (iii) originating account of the Transaction (*e.g.,* Korek's IBL Bank account); (iv) beneficial owner of the originating account; (v) the intermediary bank(s) involved in the Transaction, if any; (vi) receiving account of the Transaction (*e.g.*, the IBL Bank account into which IBL Bank received loan payments); (vii) beneficial owner of the receiving account; (viii) stated purpose or reason for each Transaction; (ix) special instructions relating to the Transaction, if any; (x) notify party for the Transaction, if any; and (xi) other details of the Transaction, if any;

(c)      Any Agreements, Contracts or other Documents Concerning the terms of the IBL Loan, including but not limited to any Agreements or Contracts between (i) IBL Bank and Korek; (ii) IBL Bank and Korek S.A.L.; (iii) IBL Bank and Mr. Barzani; and (iv) IBL Bank and Mr. Rahmeh;

(d)      Any Documents and Communications Concerning the identity of the individuals or entities that approved and/or authorized the Transactions; and

(e)      Any Documents or Communications Concerning divergent, errant or otherwise suspicious Transactions relating to the IBL Loan, including but not limited to IBL Bank's explanations in connection with the same.

7.      All Documents and Communications Concerning Transactions involving **IBL Bank Account Number 007 002 244 0700 716 016**, which (1) were processed through or otherwise involved IBL Bank's Correspondent Accounts with The Bank of New York Mellon, and (2) relate to, reference or otherwise involve the IBL Loan, including but not limited to:

(a)      Copies of SWIFT Message Types (MT) 100's, 200's, 900's relating to the Transactions;

(b)     Documents and Communications sufficient to show the (i) amount of each Transaction; (ii) date of the Transaction; (iii) originating account of the Transaction (*e.g.*, the IBL Bank account into which IBL Bank received loan payments); (iv) beneficial owner of the originating account; (v) the intermediary bank(s) involved in the Transaction, if any; (vi) receiving account of the Transaction (*e.g.*, IBL Bank's own accounts); (vii) beneficial owner of the receiving account; (viii) stated purpose or reason for each Transaction; (ix) special instructions relating to the Transaction, if any; (ix) notify party for the Transaction, if any; and (xi) other details of the Transaction, if any;

(c)     any Agreements, Contracts or other Documents concerning the terms of the IBL Loan, including but not limited to any Documents relating to or referencing (i) the collateral securing repayment of the IBL Loan; or (ii) the interest payments made by Korek pursuant to the IBL Loan;

(d)     Any Documents and Communications Concerning the identity of the individuals or entities that approved and/or authorized the Transactions; and

(e)     any Documents or Communications Concerning divergent, errant or otherwise suspicious Transactions relating to (i) IBL Bank Account Number 007 002 244 0700 716 016 and (ii) the IBL Loan, including but not limited to IBL Bank's explanations in connection with the same.

8.     All Documents and Communications Concerning Transactions involving **Mr. Barzani's IBL Bank Account**, which (1) were processed through or otherwise involved IBL Bank's Correspondent Accounts with The Bank of New York Mellon, and (2) relate to, reference or otherwise involve the IBL Loan, including but not limited to:

(a)     Copies of SWIFT Message Types (MT) 100's, 200's, 900's relating to the Transactions;

(b)     Documents and Communications sufficient to show the (i) amount of each Transaction; (ii) date of the Transaction; (iii) originating account of the Transaction (*e.g.*, the IBL Bank account into which IBL Bank received loan payments); (iv) beneficial owner of the originating account; (v) the intermediary bank(s) involved in the Transaction, if any; (vi) receiving account of the Transaction (*e.g.*, Mr. Barzani's IBL Bank account); (vii) beneficial owner of the receiving account; (viii) stated purpose or reason for each Transaction; (ix) special instructions relating to the Transaction, if any; (x) notify party for the Transaction, if any; and (xi) other details of the Transaction, if any;

(c)     any Agreements, Contracts or other Documents concerning the terms of the IBL Loan, including but not limited to any Documents relating to or referencing (i) the collateral

securing repayment of the IBL Loan; or (ii) the interest payments made by Korek pursuant to the IBL Loan;

(d)     Any Documents and Communications Concerning the identity of the individuals or entities that approved and/or authorized the Transactions; and

(e)     any Documents or Communications Concerning divergent, errant or otherwise suspicious Transactions relating to (i) Mr. Barzani's IBL Bank Account and (ii) the IBL Loan, including but not limited to IBL Bank's explanations in connection with the same.

9.     All Documents and Communications Concerning **Transactions between HSBC Bank Middle East Limited UAE Branch ("HSBC UAE") Account Number 022 2525 22 100 and IBL Bank, either directly or indirectly,** which (1) were processed through IBL Bank's Correspondent Account(s) with the Bank of New York Mellon, and (2) relate to, reference or otherwise involve the IBL Loan, including but not limited to:

(a)     Copies of all SWIFT Message Types (MT) 100's, 200's, 900's relating to the Transactions;

(b)     Any Documents and Communications Concerning the (i) amount of each Transaction; (ii) the date of the Transaction; (iii) the originating account(s) of each Transaction; (iv) beneficial owner(s) of the originating account(s); (v) identity of any intermediary banks; (vi) receiving account(s) of each Transaction; (vii) beneficial owner(s) of the receiving account(s); (viii) stated purpose or reason for each Transaction; (ix) special instructions relating to the Transaction, if any; (x) notify party for the Transaction, if any; and (xi) other details of the Transaction, if any;

(c)     Any Contracts, Agreements or Invoices relating to, supporting or purporting to justify the Transactions;

(d)     Any Documents and Communications Concerning the identity of the individuals or entities that approved and/or authorized the Transactions; and

(e)     Any Documents and Communications Concerning divergent, errant or otherwise suspicious Transactions between HSBC UAE Account Number 022 2525 22 100 and IBL Bank.

### C. Transactions Relating to Korek's Supplier Payments

10.     All Documents and Communications Concerning **Transactions Between Korek and the Suppliers**, which were processed through or otherwise involved IBL Bank's Correspondent Accounts with The Bank of New York Mellon, including but not limited to:

(a)     Copies of all SWIFT Message Types (MT) 100's, 200's, 900's relating to the Transactions;

(b)     Any Documents and Communications Concerning the (i) amount of each Transaction; (ii) the date of the Transaction; (iii) the originating account(s) of each Transaction; (iii) beneficial owner(s) of the originating account(s); (iv) identity of any intermediary banks; (v) receiving account(s) of each Transaction; (vi) beneficial owner(s) of the receiving account(s); (vii) stated purpose or reason for each Transaction; (viii) special instructions relating to the Transaction, if any; (ix) notify party for the Transaction, if any; and (ix) other details of the Transaction, if any;

(c)     Any Contracts, Agreements or Invoices relating to, supporting or purporting to justify the Transactions;

(d)     Any Documents and Communications Concerning the identity of the individuals or entities that approved and/or authorized the Transactions; and

(e)     Any Documents and Communications Concerning divergent, errant or otherwise suspicious Transactions between Korek and the Suppliers.

11.     All Documents and Communications Concerning **Transactions Between Korek and IBL Bank account number 169160** (IBAN Number LB 80005200070023020169160014 or LB80005200070021100169160013), which were processed or otherwise involved IBL Bank's Correspondent Accounts with The Bank of New York Mellon, including but not limited to:

(a)     Copies of all SWIFT Message Types (MT) 100's, 200's, 900's relating to the Transactions;

(b)     Any Documents and Communications Concerning the (i) amount of each Transaction; (ii) date of the Transaction; (iii) the originating account(s) of each Transaction; (iv) beneficial owner(s) of the originating account(s); (v) identity of any intermediary banks; (vi) receiving account(s) of each Transaction; (vii) beneficial owner(s) of the receiving account(s); (viii) stated purpose or reason for each Transaction; (ix) special instructions relating to the Transaction, if any; (x) notify party for the Transaction, if any; and (xi) other details of the Transaction, if any;

13

(c)     Any Contracts, Agreements, or Invoices relating to, supporting or purporting to justify the Transactions;

(d)     Any Documents and Communications Concerning the identity of the individuals or entities that approved and/or authorized the Transactions; and

(e)     Any Documents and Communications Concerning divergent, errant or otherwise suspicious Transactions between Korek and IBL Bank account number 169160 (IBAN Number LB 80005200070023020169160014 or LB80005200070021100169160013).

12.     All Documents and Communications Concerning **Transactions Between Korek and the IBL Bank account associated with IBAN Number LB 82005200070023010704371010**, which were processed or otherwise involved IBL Bank's Correspondent Accounts with The Bank of New York Mellon, including but not limited to:

(a)     Copies of all SWIFT Message Types (MT) 100's, 200's, 900's relating to the Transactions;

(b)     Any Documents and Communications Concerning the (i) amount of each Transaction; (ii) the date of the Transaction; (iii) the originating account(s) of each Transaction; (iv) beneficial owner(s) of the originating account(s); (v) identity of any intermediary banks; (vi) receiving account(s) of each Transaction; (vii) beneficial owner(s) of the receiving account(s); (viii) stated purpose or reason for each Transaction; (ix) special instructions relating to the Transaction, if any; (x) notify party for the Transaction, if any; and (xi) other details of the Transaction, if any;

(c)     Any Contracts, Agreements, or Invoices relating to, supporting or purporting to justify the Transactions;

(d)     Any Documents and Communications Concerning the identity of the individuals or entities that approved and/or authorized the Transactions; and

(e)     Any Documents and Communications Concerning divergent, errant or otherwise suspicious Transactions between Korek and IBL Bank account associated with IBAN Number LB 82005200070023010704371010.

13.     All Documents and Communications Concerning **Transactions between Korek and IBL Bank Account number 700675** (IBAN Number LB 50005200070023010700675013), which were processed through or otherwise involved IBL Bank's Correspondent Account(s) with The Bank of New York Mellon, including but not limited to:

(a)      Copies of all SWIFT Message Types (MT) 100's, 200's, 900's relating to the Transactions;

(b)      Any Documents and Communications Concerning the (i) amount of each Transaction; (ii) the date of each Transaction; (iii) the originating account(s) of each Transaction (*e.g.*, Korek's IBL Bank account); (iv) beneficial owner(s) of the originating account(s); (v) identity of any intermediary banks; (vi) receiving account(s) of each Transaction (*e.g.*, the Supplier's bank accounts); (vii) beneficial owner(s) of the receiving account(s); (viii) stated purpose or reason for each Transaction; (ix) special instructions relating to the Transaction, if any; (x) notify party for the Transaction, if any; and (xi) other details of the Transaction, if any;

(c)      Any Contracts, Agreements, or Invoices relating to, supporting or purporting to justify the Transactions;

(d)      Any Documents and Communications Concerning the identity of the individuals or entities that approved and/or authorized the Transactions; and

(e)      Any Documents and Communications Concerning divergent, errant or otherwise suspicious Transactions between Korek and IBL Bank account number 700675 (IBAN Number LB 50005200070023010700675013).

14.      All Documents and Communications Concerning **Transactions between Korek and IBL Bank Account number 403599 (IBAN number LB45 0052 0004 0023 0104 0359 9015),** which were processed through or otherwise involved IBL Bank's Correspondent Account(s) with The Bank of New York Mellon, including but not limited to:

(a)      Copies of all SWIFT Message Types (MT) 100's, 200's, 900's relating to the Transactions;

(b)      Any Documents and Communications Concerning the (i) amount of each Transaction; (ii) the date of each Transaction; (iii) the originating account(s) of each Transaction (*e.g.*, Korek's IBL Bank account); (iv) beneficial owner(s) of the originating account(s); (v) identity of any intermediary banks; (vi) receiving account(s) of each Transaction (*e.g.*, the Supplier's bank accounts); (vii) beneficial owner(s) of the receiving account(s); (viii) stated purpose or reason for each Transaction; (ix) special instructions relating to the Transaction, if any; (x) notify party for the Transaction, if any; and (xi) other details of the Transaction, if any;

(c)      Any Contracts, Agreements, or Invoices relating to, supporting or purporting to justify the Transactions;

(d)      Any Documents and Communications Concerning the identity of the individuals or entities that approved and/or authorized the Transactions; and

(e)     Any Documents and Communications Concerning divergent, errant or otherwise suspicious Transactions between Korek and IBL Bank account number 403599 (IBAN Number LB45 0052 0004 0023 0104 0359 9015).

### D.  Transactions Involving or Relating to Korek S.A.L.

15.     All Documents and Communications relating to **IBL Bank's relationship, if any, with Korek S.A.L.**, including but not limited to:

(a)     Transactions between IBL Bank and Korek S.A.L., which were processed through or otherwise involved IBL Bank's Correspondent Accounts with The Bank of New York Mellon;

(b)     Agreements, Contracts or other Documents relating to, supporting, or purporting to justify the Transactions discussed in sub-part (a) of this paragraph; and

(c)     Documents and Communications sufficient to identity Korek S.A.L.'s bank accounts, including but not limited to: (1) the name of the bank(s) and account number(s); (2) beneficial owners of such account(s); and (3) any other details relating to Korek S.A.L.'s bank accounts.

## II.  DOCUMENT REQUESTS RELATING TO BPC AND BYBLOS

### A.  Relationship between the Bank of New York Mellon and Byblos/BPC

16.     Documents and Communications Concerning the **nature and terms of the relationship between the Bank of New York Mellon and Byblos and/or BPC**, including any Contracts, Agreements or other Documents relating to any correspondent banking services provided by The Bank of New York Mellon to Byblos and/or BPC, either directly or through a third party.

17.     Documents and Communications sufficient to show the **identifying information, including account number(s) and ultimate beneficial owner(s)**, of each past and current Correspondent Account held by The Bank of New York Mellon on behalf of Byblos and/or BPC.

18.     Documents and Communications sufficient to **show the identities of each individual, corporation or other entity authorized to access or control, either directly or**

**indirectly**, each of Byblos's and/or BPC's Correspondent Accounts with The Bank of New York Mellon.

19.    All Documents and Communications Concerning **The Bank of New York Mellon's Due Diligence Investigation(s) of Byblos and/or BPC**, if any, to the extent such Investigation(s) concerned, related to, involved and/or mentioned Korek, Korek S.A.L., the CS Ltd Directors, Mr. Rahmeh, Mr. Azar, or the Suppliers.

### B.    Transactions between Korek and Byblos/BPC

20.    All Documents and Communications Concerning Transactions **between Korek and BPC account number 033180** (IBAN Number LB81 0035 0004 0000 0000 0003 3180), which were processed through or otherwise involved Byblos's or BPC's Correspondent Accounts with The Bank of New York Mellon, including but not limited to:

(a)    Copies of all SWIFT Message Types (MT) 100's, 200's, 900's relating to the Transactions;

(b)    Any Documents and Communications Concerning the (i) amount of each Transaction; (ii) the date of each Transaction; (iii) the originating account(s) of each Transaction; (iv) beneficial owner(s) of the originating account(s); (v) identity of any intermediary banks; (vi) receiving account(s) of each Transaction; (vii) beneficial owner(s) of the receiving account(s); (viii) stated purpose or reason for each Transaction; (ix) special instructions relating to the Transaction, if any; (x) notify party for the Transaction, if any; and (xi) other details of the Transaction, if any;

(c)    Any Contracts, Agreements, or Invoices relating to, supporting or purporting to justify the Transactions;

(d)    Any Documents and Communications Concerning the identity of the individuals or entities that approved and/or authorized the Transactions; and

(e)    Any Documents and Communications Concerning divergent, errant or otherwise suspicious Transactions between Korek and BPC account number 033180 (IBAN Number LB81 0035 0004 0000 0000 0003 3180).

# Exhibit E

AO 88B  (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of New York

| | |
|---|---|
| In re Ex Parte Application of Iraq Telecom Limited <br> _____ <br> *Plaintiff* <br> v. <br> _____ <br> *Defendant* | ) <br> ) <br> ) <br> ) <br> ) <br> ) |

Civil Action No.

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:
Wells Fargo Bank, N.A.

375 Park Avenue, New York, New York 10152

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

See Rider (attached)

| Place: Quinn Emanuel Urquhart & Sullivan, LLP <br> 51 Madison Avenue, 22nd Floor, New York, NY 10010 | Date and Time: <br> 10/15/2018 10:00 am |
|---|---|

❑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  _____

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Iraq Telecom Limited _____ , who issues or requests this subpoena, are:
Kristin N. Tahler, Quinn Emanuel Urquhart & Sullivan, LLP, 865 S. Figueroa St., 10th Floor, Los Angeles, California 90017, Tel: (213) 443-3000 Fax: (213) 443-3100

## Notice to the person who issues or requests this subpoena
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❑ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $      0.00      .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## RIDER

Iraq Telecom Limited ("Iraq Telecom") serves this subpoena on Wells Fargo Bank, N.A. ("Wells Fargo") pursuant to 28 U.S.C. § 1782(a) and Fed. R. Civ. P. 45.  Please produce the following documents, as set forth in the Requests for Production (the "Requests") in accordance with the definitions and instructions that appear below.

## DEFINITIONS

Unless otherwise defined, all words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common, ordinary sense.  As used in these Requests, the words set forth below shall be defined as follows:

1.      "Agreement" is used in its broadest ordinary sense and shall mean any oral or written act or arrangement regarding a course of action, including but not limited to Contracts (as defined below).

2.      "Communication(s)" is used in its broadest ordinary sense and shall mean any manner or means of disclosure, transfer or exchange of facts, information, ideas, opinions, inquiries or thoughts, whether by written, oral, mechanical, telephonic, electronic or some other means of communication, and shall include the information transmitted.  For the avoidance of doubt, the term "Communication" shall encompass pictures, photographs, recordings, text messages or any other means of capturing information.

3.      "Concerning," is used in its broadest usual and customary meaning, and, in addition, shall mean directly or indirectly, in whole or in part, alluding to, analyzing, assessing, characterizing, commenting on, connected with, constituting, containing an implicit reference to, describing, disclosing, discussing, evidencing, explaining, identifying, memorializing, mentioning, noting, pertaining to, recording, referring to, reflecting, regarding, relating to,

representing, showing, stating, suggesting, summarizing, supporting, touching upon, underlying, or otherwise involving the subject matter of the specified Request.

4.      "Contract" is used in its broadest ordinary sense and shall mean a legally binding Agreement between two or more persons.

5.      "Correspondent Account(s)" shall mean all *vostro* accounts (*i.e.*, account(s) held by a correspondent bank on behalf of another bank) maintained or held by Wells Fargo on behalf of IBL Bank (defined below).

6.      "CS Ltd" shall mean Korek International (Management) Ltd, a Cayman Islands company that holds a 56% share in International Holdings Limited ("IHL"), the parent company of Korek (defined below).

7.      "CS Ltd Director" shall mean the directors nominated by CS Ltd to serve on the Board of Directors of IHL, which includes Messrs. Aqrawi, Barzani and Jundi (each of whom is defined below).

8.      "Document(s)" shall mean all Electronically Stored Information, data, images, and system information (*e.g.*, logs or "metadata" created by a computer system detailing and tracking events on the system, including changes to documents), and all written, printed, typed, photographed, or graphic matter of every type or description, whether comprised of letters, words, numbers, pictures, sounds or symbols, or any combination thereof, and whether in paper form or stored on audiotape, videotape, computer, electronic, magnetic or other media (including, for example, correspondence, electronic mail, text messages, instant message dialogues, calendars, drawings, spreadsheets, databases, notes, invoices, contracts, facsimiles, voicemail messages, telephone messages and presentations).  The term "Document(s)" specifically includes all drafts, versions, revisions, amendments, modifications, changes or notes related thereto, including all

non-identical copies such as those that include marginalia, deletions or alterations, or other printed, stamped, post-it or handwritten revisions or notations.   This definition also includes any attachments, enclosures, or other matter affixed to or incorporated by reference within any other Documents responsive to these Requests.

9.     "Due Diligence Investigation" shall mean the investigation of a foreign bank undertaken by a U.S. bank prior to entering into a banking relationship with said foreign bank, including the opening of a correspondent account.  Such investigations include any actions taken pursuant to the obligations set forth in 31 U.S.C. § 5318(i) and 31 C.F.R. § 1010.610.

10.     "IBL Bank" shall mean IBL Bank SAL, and any present or former (1) affiliates, subsidiaries, and branches of IBL Bank SAL; and (2) officers, directors, employees, agents or consultants of IBL Bank SAL.

11.     "IBL Loan" shall mean the USD 150 million loan made by IBL Bank to Korek (defined below) pursuant to the Term Loan Agreement, dated December 21, 2011, and any supplemental agreements thereto.

12.     "IC4LC" shall mean International Company for Legal Consulting, an unregistered and unincorporated Lebanese business entity that purportedly acts as a law firm.

13.     "Invoice" is used in its broadest ordinary sense and shall mean a list of goods shipped or services provided and amounts owed for same.

14.     "Iraq Telecom" shall mean Iraq Telecom Limited and any present or former officers, directors, employees, agents or consultants of Iraq Telecom Limited.

15.     "Korek" shall mean Korek Telecom Company LLC and its parent IHL and any present or former officers, directors, employees, agents or consultants of Korek Telecom Company LLC. or IHL.

16.    "Korek" shall mean Korek Telecom Company LLC and (1) its parent IHL; (2) any present or former officers, directors, employees, agents or consultants of Korek Telecom Company LLC. or IHL; and (3) any accounts held by Korek at IBL Bank, including but not limited to account number 007 002 244 0700 716 016.

17.    "Mr. Aqrawi" shall mean Abdulhameed Abdullah Mohammed Salih Aqrawi (also referred to as Mr. Akrawi and/or Mr. Akravi, etc.), one of the CS Ltd. Directors.

18.    "Mr. Azar" shall mean Michel Azar, who conducts business under the name of IC4LC.

19.    "Mr. Barzani" shall mean Sirwan Saber Mustafa and/or Sirwan Saber Mustafa Barzani, one of the CS Ltd Directors and the Statutory Manager of Korek under Iraqi law.

20.    "Mr. Jundi" shall mean Nozad Hussein Jundi, one of the CS Ltd Directors.

21.    "Mr. Rahmeh" means Raymond Samir Zina Rahmeh (also sometimes referred to as Mr. Rimon Rahmeh and/or Mr. Rahme), the Independent Director of IHL nominated by CS Ltd.

22.    "Suppliers" shall mean (a) any and all of the following entities: (i) Darin Group, (ii) D&A Offshore SAL; (iii) DoubleU, (iv) K-Energy, (v) Halabja Group, (vi) ZR Collection, (vii) ZR Group, (viii) IC4LC, and/or (ix) any other entities which, based on information available to Wells Fargo, Korek made payments for goods and/or services; (b) any parents, subsidiaries, affiliates, segments, or divisions both presently existing and those that previously existed of the entities set forth in sub-part (a) of this paragraph, and/or (c) any present or former officers, directors, employees, consultants, contractors, agents or members of board of directors or board of trustees of the entities set forth in sub-part (a) of this paragraph.

23.    "Transaction(s)" shall mean all deposits, withdrawals, incoming wire transfers, outgoing wire transfers, charges, payments, purchases, returns, bank fees, checks, travelers checks,

letters of credit and drafts typically made between a customer of a bank (including a foreign bank) and the bank itself.

24.     "You," "Your" and/or "Wells Fargo" shall mean Wells Fargo Bank, N.A. and any parents, subsidiaries, affiliates, segments, or divisions both presently existing and those that previously existed, and any present or former officers, directors, employees, consultants, contractors, agents or members of the board of directors or board of trustees for Wells Fargo Bank, N.A.

25.     The terms "any" and "each" should be understood to include and encompass "all."

26.     Where appropriate, the singular form of a word should be interpreted in the plural and vice versa, to acquire the broadest possible meeting.

## INSTRUCTIONS

1.       The obligations and rules of construction set forth in Rule 45 of the Federal Rules of Civil Procedure are incorporated in these Requests.  A copy of Rule 45 sections (c), (d), (e) and (g) is attached to the subpoena.

2.       Unless otherwise stated in a specific Request, these Requests seek responsive information and Documents authored, generated, disseminated, drafted, produced, reproduced or otherwise created or distributed or relating to the period January 1, 2011 through December 31, 2012.

3.       With respect to the documents produced, You shall produce them as they are kept in Your usual course of business, including, if applicable, in their native format.  A draft of a Document is unique and separate from the final version of that Document.  All drafts of each Document are to be produced, without abbreviation or redaction.

4.       Each Request seeks production of each Document in its entirety, without abbreviation or redaction, including, without limitation, all attachments, transmittal sheets, notes, cover letters, exhibits, enclosures, and all drafts and non-identical copies of each Document.

5.       Documents attached to each other shall not be separated and shall be produced together.

6.       A Document with handwritten, typewritten or other recorded notes, editing marks, etc., is a separate, unique Document and is not, and shall not be deemed to be, identical to one without such modifications, additions, or deletions.

7.       Each Request shall be construed independently, and no Request shall be viewed as limiting the scope of any other Request.

8.      If no Documents are responsive to a particular Request, You are to state that no responsive Documents exist for that particular Request.

9.      If any Document or any part of a Document responsive to a Request is withheld from production on the basis of any claim of privilege, You shall submit, in lieu of such Document, a written statement identifying: (a) the nature of the privilege (including attorney work product) which is being claimed; (b) the general subject matter of the Document and a description of the file or other location where it was found; (c) the type or general nature of the Document (*i.e.,* whether it is a letter, memorandum, invoice, email, etc.) and the number of pages of which it consists; (d) the date of the Document; (e) the author(s) and recipient(s) of the Document; and (f) the addresses of the Document and any other recipients.

10.      You are further requested to provide all non-privileged portions of Documents containing material over which a claim of privilege has been asserted by excising, concealing, or otherwise protecting the portions for which a privilege is asserted, but only to the extent that such excise, concealment, or other protection is strictly necessary for the purposes of the claim of privilege.

11.      The Requests in this Rider are continuing in nature.  If, after producing the requested Documents, You obtain or become aware of any further responsive Documents, You must produce to Defendant such additional Documents.  Such additional Documents are to be promptly produced at the offices of Quinn Emanuel Urquhart & Sullivan, LLP, 51 Madison Avenue, 22nd Floor, New York, NY 10010.

12.      Unless otherwise indicated, the Documents requested include all Documents in Your possession, custody or control.  Without limitation of the terms "possession, custody or control," as used in the preceding sentence, a Document is in Your possession, custody or control

if You have actual possession or custody or the right or practical ability to obtain the Document or a copy thereof upon demand from one or more of Your affiliates, parents, subsidiaries, divisions, related companies or predecessors-in-interest, officers, directors, employees, agents, consultants, representatives, independent contractors, advisors, attorneys and any other person or public or private entity that has actual physical possession thereof.

13.     If a Document is partially responsive, the whole Document shall be produced with no redactions for responsiveness.

## CATEGORIES OF DOCUMENTS TO BE PRODUCED

I.   **DOCUMENT REQUESTS RELATING TO IBL BANK AND THE IBL LOAN**

    **A.  Relationship between Wells Fargo and IBL Bank**

1.   Documents and Communications sufficient to show **the nature and terms of IBL Bank's relationship with Wells Fargo**, including but not limited to any Agreements or Contracts relating to correspondent banking services provided by Wells Fargo to IBL Bank, either directly or through a third party.

2.   Documents and Communications sufficient to show **the identifying information, including account number(s) and ultimate beneficial owner(s)**, of each of IBL Bank's past and current Correspondent Accounts with Wells Fargo.

3.   Documents and Communications sufficient to show **the identities of each individual, corporation or other entity authorized to access or control, either directly or indirectly**, each of IBL Bank's past and current Correspondent Accounts with Wells Fargo.

4.   All Documents and Communications Concerning **Wells Fargo's Due Diligence Investigation(s) of IBL Bank** to the extent such Investigations concerned, related to, or referenced Korek, Korek S.A.L., the CS Ltd Directors, Mr. Rahmeh, the Suppliers, and/or Mr. Azar.

    **B.  Transactions Relating to the IBL Loan**

5.   All Documents and Communications Concerning the IBL Loan, including but not limited to **IBL Bank's instructions to Wells Fargo** as to how it should maintain, dispense or transfer funds associated with the IBL Loan once received in IBL's Correspondent Account(s) with Wells Fargo.

6.   All Documents and Communications Concerning **Transactions between Korek and IBL Bank** which (1) were processed through or otherwise involved IBL Bank's

Correspondent Account(s) with Wells Fargo, and (2) relate to, reference or otherwise involve the IBL Loan, including but not limited to:

     (a)     Copies of SWIFT Message Types (MT) 100's, 200's, 900's relating to the Transactions;

     (b)     Documents and Communications sufficient to show the (i) amount of each Transaction; (ii) date of the Transaction;  (iii) originating account of the Transaction (*e.g.,* Korek's IBL Bank account); (iv) beneficial owner of the originating account; (v) the intermediary bank(s) involved in the Transaction, if any; (vi) receiving account of the Transaction (*e.g.*, the IBL Bank account into which IBL Bank received loan payments); (vii) beneficial owner of the receiving account; (viii) stated purpose or reason for each Transaction; (ix) special instructions relating to the Transaction, if any; (x) notify party for the Transaction, if any; and (xi) other details of the Transaction, if any;

     (c)     Any Agreements, Contracts or other Documents Concerning the terms of the IBL Loan, including but not limited to any Agreements or Contracts between (i) IBL Bank and Korek; (ii) IBL Bank and Korek S.A.L.; (iii) IBL Bank and Mr. Barzani; and (iv) IBL Bank and Mr. Rahmeh;

     (d)     Any Documents and Communications Concerning the identity of the individuals or entities that approved and/or authorized the Transactions; and

     (e)     Any Documents or Communications Concerning divergent, errant or otherwise suspicious Transactions relating to the IBL Loan, including but not limited to IBL Bank's explanations in connection with the same.

     7.     All Documents and Communications Concerning Transactions involving **IBL Bank Account Number 007 002 244 0700 716 016**, which (1) were processed through or otherwise involved IBL Bank's Correspondent Accounts with Wells Fargo, and (2) relate to, reference or otherwise involve the IBL Loan, including but not limited to:

     (a)     Copies of SWIFT Message Types (MT) 100's, 200's, 900's relating to the Transactions;

     (b)     Documents and Communications sufficient to show the (i) amount of each Transaction; (ii) date of the Transaction; (iii) originating account of the Transaction (*e.g.*, the IBL Bank account into which IBL Bank received loan payments); (iv) beneficial owner of the

originating account; (v) the intermediary bank(s) involved in the Transaction, if any; (vi) receiving account of the Transaction (*e.g.*, IBL Bank's own accounts); (vii) beneficial owner of the receiving account; (viii) stated purpose or reason for each Transaction; (viii) special instructions relating to the Transaction, if any; (x) notify party for the Transaction, if any; and (xi) other details of the Transaction, if any;

(c)     any Agreements, Contracts or other Documents concerning the terms of the IBL Loan, including but not limited to any Documents relating to or referencing (i) the collateral securing repayment of the IBL Loan; or (ii) the interest payments made by Korek pursuant to the IBL Loan;

(d)     Any Documents and Communications Concerning the identity of the individuals or entities that approved and/or authorized the Transactions; and

(e)     any Documents or Communications Concerning divergent, errant or otherwise suspicious Transactions relating to (i) IBL Bank Account Number 007 002 244 0700 716 016 and (ii) the IBL Loan, including but not limited to IBL Bank's explanations in connection with the same.

8.     All Documents and Communications Concerning Transactions involving **Mr. Barzani's IBL Bank Account**, which (1) were processed through or otherwise involved IBL Bank's Correspondent Accounts with Wells Fargo, and (2) relate to, reference or otherwise involve the IBL Loan, including but not limited to:

(a)     Copies of SWIFT Message Types (MT) 100's, 200's, 900's relating to the Transactions;

(b)     Documents and Communications sufficient to show the (i) amount of each Transaction; (ii) date of the Transaction; (iii) originating account of the Transaction (*e.g.*, the IBL Bank account into which IBL Bank received loan payments); (iv) beneficial owner of the originating account; (v) the intermediary bank(s) involved in the Transaction, if any; (vi) receiving account of the Transaction (*e.g.*, Mr. Barzani's IBL Bank account); (vii) beneficial owner of the receiving account; (viii) stated purpose or reason for each Transaction; (ix) special instructions relating to the Transaction, if any; (x) notify party for the Transaction, if any; and (xi) other details of the Transaction, if any;

(c)     any Agreements, Contracts or other Documents concerning the terms of the IBL Loan, including but not limited to any Documents relating to or referencing (i) the collateral securing repayment of the IBL Loan; or (ii) the interest payments made by Korek pursuant to the IBL Loan;

(d)    Any Documents and Communications Concerning the identity of the individuals or entities that approved and/or authorized the Transactions; and

(e)    any Documents or Communications Concerning divergent, errant or otherwise suspicious Transactions relating to (i) Mr. Barzani's IBL Bank Account and (ii) the IBL Loan, including but not limited to IBL Bank's explanations in connection with the same.

9.    All Documents and Communications Concerning **Transactions Between HSBC Middle East Limited UAE Branch ("HSBC UAE") Account Number 022 2525 22 100 and IBL Bank, either directly or indirectly,** which (1) were processed through IBL Bank's Correspondent Account(s) with Wells Fargo, and (2) relate to, reference or otherwise involve the IBL Loan, including but not limited to:

(a)    Copies of all SWIFT Message Types (MT) 100's, 200's, 900's relating to the Transactions;

(b)    Any Documents and Communications Concerning the (i) amount of each Transaction; (ii) the date of the Transaction; (iii) the originating account(s) of each Transaction; (iv) beneficial owner(s) of the originating account(s); (v) identity of any intermediary banks; (vi) receiving account(s) of each Transaction; (vii) beneficial owner(s) of the receiving account(s); (viii) stated purpose or reason for each Transaction; (ix) special instructions relating to the Transaction, if any; (x) notify party for the Transaction, if any; and (xi) other details of the Transaction, if any;

(c)    Any Contracts, Agreements or Invoices relating to, supporting or purporting to justify the Transactions;

(d)    Any Documents and Communications Concerning the identity of the individuals or entities that approved and/or authorized the Transactions; and

(e)    Any Documents and Communications Concerning divergent, errant or otherwise suspicious Transactions between HSBC UAE Account Number 022 2525 22 100 and IBL Bank.

## II.    DOCUMENT REQUESTS RELATING TO TRANSACTIONS WITH KOREK'S SUPPLIERS

10.    All Documents and Communications Concerning **Transactions Between Korek and the Suppliers**, which were processed through or otherwise involved IBL Bank's Correspondent Accounts with Wells Fargo, including but not limited to:

(a)      Copies of all SWIFT Message Types (MT) 100's, 200's, 900's relating to the Transactions;

(b)      Any Documents and Communications Concerning the (i) amount of each Transaction; (ii) the date of the Transaction; (iii) the originating account(s) of each Transaction; (iv) beneficial owner(s) of the originating account(s); (v) identity of any intermediary banks; (vi) receiving account(s) of each Transaction; (vii) beneficial owner(s) of the receiving account(s); (viii) stated purpose or reason for each Transaction; (ix) special instructions relating to the Transaction, if any; (x) notify party for the Transaction, if any; and (xi) other details of the Transaction, if any;

(c)      Any Contracts, Agreements or Invoices relating to, supporting or purporting to justify the Transactions;

(d)      Any Documents and Communications Concerning the identity of the individuals or entities that approved and/or authorized the Transactions; and

(e)      Any Documents and Communications Concerning divergent, errant or otherwise suspicious Transactions between Korek and the Suppliers.

11.      All Documents and Communications Concerning **Transactions Between Korek and IBL Bank account number 169160** (IBAN Number LB 80005200070023020169160014 or LB80005200070021100169160013), which were processed or otherwise involved IBL Bank's Correspondent Accounts with Wells Fargo, including but not limited to:

(a)      Copies of all SWIFT Message Types (MT) 100's, 200's, 900's relating to the Transactions;

(b)      Any Documents and Communications Concerning the (i) amount of each Transaction; (ii) the originating account(s) of each Transaction; (iii) beneficial owner(s) of the originating account(s); (iv) identity of any intermediary banks; (v) receiving account(s) of each Transaction; (vi) beneficial owner(s) of the receiving account(s); (vii) stated purpose or reason for each Transaction; (viii) special instructions relating to the Transaction, if any; (ix) notify party for the Transaction, if any; and (ix) any other details of the Transaction, if any;

(c)      Any Contracts, Agreements, or Invoices relating to, supporting or purporting to justify the Transactions;

(d)      Any Documents and Communications Concerning the identity of the individuals or entities that approved and/or authorized the Transactions; and

(e)      Any Documents and Communications Concerning divergent, errant or otherwise suspicious Transactions between Korek and IBL Bank account number 169160 (IBAN Number LB 8000520007002302016916014 or LB8000520007002110016916013).

12.      All Documents and Communications Concerning **Transactions Between Korek and the IBL Bank account associated with IBAN Number LB 8200520007002301070437010**, which were processed or otherwise involved IBL Bank's Correspondent Accounts with Wells Fargo, including but not limited to:

(a)      Copies of all SWIFT Message Types (MT) 100's, 200's, 900's relating to the Transactions;

(b)      Any Documents and Communications Concerning the (i) amount of each Transaction; (ii) the originating account(s) of each Transaction; (iii) beneficial owner(s) of the originating account(s); (iv) identity of any intermediary banks; (v) receiving account(s) of each Transaction; (vi) beneficial owner(s) of the receiving account(s); (vii) stated purpose or reason for each Transaction; (viii) special instructions relating to the Transaction, if any; (ix) notify party for the Transaction, if any; and (ix) other details of the Transaction, if any;

(c)      Any Contracts, Agreements, or Invoices relating to, supporting or purporting to justify the Transactions;

(d)      Any Documents and Communications Concerning the identity of the individuals or entities that approved and/or authorized the Transactions; and

(e)      Any Documents and Communications Concerning divergent, errant or otherwise suspicious Transactions between Korek and IBL Bank account associated with IBAN Number LB 8200520007002301070437010.

13.      All Documents and Communications Concerning **Transactions between Korek and IBL Bank Account number 700675** (IBAN Number LB 5000520007002301070067013), which were processed through or otherwise involved IBL Bank's Correspondent Account(s) with Wells Fargo, including but not limited to:

(a)      Copies of all SWIFT Message Types (MT) 100's, 200's, 900's relating to the Transactions;

(b)      Any Documents and Communications Concerning the (i) amount of each Transaction; (ii) the date of each Transaction; (iii) the originating account(s) of each Transaction (*e.g.*, Korek's IBL Bank account); (iv) beneficial owner(s) of the originating account(s); (v)

14

identity of any intermediary banks; (vi) receiving account(s) of each Transaction (*e.g.*, the Supplier's bank accounts); (vii) beneficial owner(s) of the receiving account(s); (viii) stated purpose or reason for each Transaction; (ix) special instructions relating to the Transaction, if any; (x) notify party for the Transaction, if any; and (xi) other details of the Transaction, if any;

(c)     Any Contracts, Agreements, or Invoices relating to, supporting or purporting to justify the Transactions;

(d)     Any Documents and Communications Concerning the identity of the individuals or entities that approved and/or authorized the Transactions; and

(e)     Any Documents and Communications Concerning divergent, errant or otherwise suspicious Transactions between Korek and IBL Bank account number 700675 (IBAN Number LB 50005200070023010700675013).

14.     All Documents and Communications Concerning **Transactions between Korek and IBL Bank Account number 403599 (IBAN number LB45 0052 0004 0023 0104 0359 9015),** which were processed through or otherwise involved IBL Bank's Correspondent Account(s) with Wells Fargo, including but not limited to:

(a)     Copies of all SWIFT Message Types (MT) 100's, 200's, 900's relating to the Transactions;

(b)     Any Documents and Communications Concerning the (i) amount of each Transaction; (ii) the date of each Transaction; (iii) the originating account(s) of each Transaction (*e.g.*, Korek's IBL Bank account); (iv) beneficial owner(s) of the originating account(s); (v) identity of any intermediary banks; (vi) receiving account(s) of each Transaction (*e.g.*, the Supplier's bank accounts); (vii) beneficial owner(s) of the receiving account(s); (viii) stated purpose or reason for each Transaction; (ix) any special instructions relating to the Transaction; (x) notify party for the Transaction, if any; and (xi) other details of the Transaction, if any;

(c)     Any Contracts, Agreements, or Invoices relating to, supporting or purporting to justify the Transactions;

(d)     Any Documents and Communications Concerning the identity of the individuals or entities that approved and/or authorized the Transactions; and

(e)     Any Documents and Communications Concerning divergent, errant or otherwise suspicious Transactions between Korek and IBL Bank account number 403599 (IBAN Number LB45 0052 0004 0023 0104 0359 9015).

### III. DOCUMENT REQUESTS RELATING TO IBL BANK'S RELATIONSHIP WITH KOREK S.A.L.

15.     All Documents and Communications relating to **IBL Bank's relationship, if any,**

**with Korek S.A.L**., including but not limited to:

(a)     Transactions between IBL Bank and Korek S.A.L., which were processed through or otherwise involved IBL Bank's Correspondent Accounts with Wells Fargo;

(b)     Agreements, Contracts or other Documents relating to, supporting, or purporting to justify the Transactions discussed in sub-part (a) of this paragraph; and

(c)     Documents and Communications sufficient to identity Korek S.A.L.'s bank accounts, including but not limited to: (1) the name of the bank(s) and account number(s); (2) beneficial owners of such account(s); and (3) any other details relating to Korek S.A.L.'s bank accounts.

# Exhibit F

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE:<br><br>EX PARTE APPLICATION OF IRAQ TELECOM LIMITED FOR AN EXPEDITED ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782<br><br>Applicant. | Case No. _____ |

## [PROPOSED] ORDER

Upon consideration of the Ex Parte Application of Iraq Telecom Limited for Expedited Judicial Assistance Pursuant to 28 U.S.C. § 1782 (the "Application") and all papers submitted in support thereof, the Court finds that (1) the statutory requirements of 28 U.S.C. § 1782 are satisfied; and (2) the factors identified by the United States Supreme Court in *Intel Corp v. Advanced Micro Devices, Inc.,* 542 U.S. 241 (2004), weigh in favor of granting the Application.

It is therefore ORDERED that the Application is GRANTED.  Iraq Telecom Limited is authorized to serve the draft subpoenas annexed as Exhibits A through E to the Declaration of Kristin Tahler upon Citibank, N.A., HSBC Bank (USA), N.A., Standard Chartered International (USA) Ltd., The Bank of New York Mellon, N.A., and Wells Fargo Bank, N.A.  These entities are directed to respond to such subpoenas pursuant to the Federal Rules of Civil Procedure and the Local Rules of this Court.

**SO ORDERED.**

Dated:

_____
United States District Judge