**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE:<br><br>EX PARTE APPLICATION OF IRAQ TELECOM LIMITED FOR AN EXPEDITED ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C § 1782<br><br>      Applicant. | Case No. 18-mc-00458-LGS-OTW |

**MEMORANDUM OF LAW IN OPPOSITION TO IRAQ TELECOM'S APPLICATION**
**FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782**

BOIES SCHILLER FLEXNER LLP
Duane L. Loft
575 Lexington Avenue
New York, New York 10022
Telephone: 212.446.2300
Facsimile: 212.446.2350

*Attorneys for Sirwan Saber Mustafa*

**<u>TABLE OF CONTENTS</u>**

**PAGE**

I.      PRELIMINARY STATEMENT ........................................................................1

II.     BACKGROUND ............................................................................................3

    A.  Origin of the Disputes................................................................................3

    B.  The Foreign Proceedings .........................................................................4

    C.  Petitioner's Private "Investigation" .........................................................7

    D.  The Proposed Subpoenas .........................................................................9

III.    ARGUMENT ................................................................................................9

    A.  The Petition Does Not Seek Discovery "For Use" in a Foreign "Tribunal" or "Proceeding." .....................................................................................11

    B.  The *Intel* Factors Weigh Against Discovery Under Section 1782........................15

        1.  The Requested Discovery Is Duplicative of Evidence that Could Be Obtained from the Participants in the Foreign Proceeding..............................................16

        2.  The Character and Nature of the Foreign Proceedings Weigh Against the Requested Discovery. .......................................................................16

        3.  The Petition Conceals an Attempt to Circumvent the Proof-Gathering Procedures of the Foreign Tribunals...................................................19

        4.  The Requests are Overbroad. ...........................................................21

    C.  Petitioner's Claim of "Urgency" Is Unfounded.................................................23

IV.   CONCLUSION............................................................................................24

ii

## TABLE OF AUTHORITIES

CASES                                                                    PAGE

*Application of Malev Hungarian Airlines*,
    964 F.2d 97 (2d Cir. 1992)............................................................................... 11

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
    673 F.3d 76 (2d Cir. 2012).............................................................................. 23

*Certain Funds, Accounts and/or Investment Vehicles v. KPMG, LLP*,
    798 F.3d 113 (2d Cir. 2015)........................................................................... 10

*Chevron Corp. v. Berlinger*,
    629 F.3d 297 (2d Cir. 2011)........................................................................... 12

*El Paso Corp. v. La Comision Ejecutiva Hidroelectrica Del Rio Lempa*,
    341 F. App'x 31 (5th Cir. 2009) .................................................................... 12

*Euromepa S.A. v. R. Esmerian, Inc.*,
    51 F.3d 1095 (2d Cir. 1995)........................................................................... 18

*Euromepa, S.A. v. R. Esmerian, Inc.*,
    154 F.3d 24 (2d Cir. 1998)............................................................................. 23

*Heraeus Kulzer GmbH v. Biomet, Inc.*,
    633 F.3d 591 (7th Cir. 2011) .................................................................... 18, 21

*In Matter of Application of Leret*,
    51 F. Supp. 3d 66 (D.D.C. 2014) .................................................................. 16

*In re Application of Caratube Int'l Oil Co., LLP*,
    730 F. Supp. 2d 101 (D.D.C. 2010) .................................................. 12, 17, 20

*In re Application of FG Wilson (Engineering) Limited*,
    2009 WL 10671837 (N.D. Ga. Dec. 17, 2009).............................................. 14

*In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*,
    No. Civ. M19-88 (BSJ), 2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006)............................ 22

*In re Asia Maritime Pacific Ltd.*,
    253 F. Supp. 3d 701 (S.D.N.Y. 2015)...................................................... 12, 15

*In re Degitechnic*,
    No. C07–414–JCC, 2007 WL 1367697 (W.D. Wash. May 8, 2007) ................... 19

*In re Dubey*,
    949 F. Supp. 2d 990 (C.D. Cal. 2013) .......................................................... 19

iii

*In re Ex Parte Application of Kleimar N.V.*,
   220 F. Supp. 3d 517 (S.D.N.Y. 2016).................................................................................. 13

*In re Ex Parte Application of Qualcomm Inc.*,
   2016 WL 641700 (C.D. Cal. Feb 18, 2016)........................................................................ 18

*In re Harbour Victoria Inv. Holdings Ltd.*,
   No. 15-MC-127, 2015 WL 4040420 (S.D.N.Y. June 29, 2015)........................................ 15

*In re Kreke Immobilien KG*,
   No. 13 Misc. 110, 2013 WL 5966916 (S.D.N.Y. Nov. 8, 2013) .............................. 16, 21, 22

*In re Mare Shipping Inc.*,
   No 13 MISC. 238, 2013 WL 5761104 (S.D.N.Y. Oct. 23, 2013) ...................................... 19

*In re Metallgesellschaft*,
   121 F.3d 77 (2d Cir. 1997)...................................................................................... 10, 11, 22

*In re Microsoft Corp.*,
   428 F. Supp. 2d 188 (S.D.N.Y. 2006).................................................................................. 18

In re Operadora DB Mexico,
   No. 6:09-cv-383-Orl-22GJK, 2009 WL 2423138 (M.D. Fla. Aug. 4, 2009) ...................... 12

*In re Schlich*,
   893 F.3d 40 (1st Cir. 2018).................................................................................................. 14

*In re Servicio Pan Americano de Proteccion, C.A.*,
   354 F. Supp. 2d 269 (S.D.N.Y. 2004).................................................................................. 22

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004)....................................................................................................... passim

*Jiangsu Steamship Co., Ltd. v. Success Superior Ltd.*,
   No. 14-CV-9997 (CM), 2015 WL 3439220 (S.D.N.Y. Jan. 6, 2015) ................................ 15

*Kiobel v. Cravath Swaine & Moore LLP*,
   895 F.3d 238 (2d Cir. 2018)...................................................................................... 10, 20, 21

*Mare Shipping Inc. v. Squire Sanders (US) LLP*,
   574 F. App'x 6 (2d Cir. 2014) ............................................................................................. 19

*Mees v. Buiter,* 793 F.3d 291, 296 (2d Cir. 2015) ...................................................................... 14

*National Broadcasting Co., Inc. v. Bear Stearns & Co., Inc.*,
   165 F.3d 184 (1999)...................................................................................................... 11, 17

*Norfolk S. Corp. v. Gen. Sec. Ins. Co.*,

iv

626 F. Supp. 2d 882 (N.D. Ill. 2009) ............................................................................... 12, 14

*Republic of Kazakhstan v. Biedermann Int'l*,
    168 F.3d 880 (5th Cir. 1999) ................................................................................. 17

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*,
    376 F.3d 79 (2d Cir. 2004)................................................................................. 10, 18

*United Paperworkers Int'l Union v. Misco, Inc.*,
    484 U.S. 29 (1987).............................................................................................. 17

## **STATUTES**

28 U.S.C. § 1782...................................................................................................... 9, 13

Sirwan Saber Mustafa ("Mr. Mustafa"), by and through his counsel, respectfully submits this Memorandum of Law in opposition to Iraq Telecom Limited's Application to take discovery pursuant to 28 U.S.C. § 1782 (the "Petition").

## I.      PRELIMINARY STATEMENT

If this Petition were granted, it would transform the Section 1782 statute into a limitless grant of roving subpoena power for foreign litigants searching for evidence that they *hope* might exist, all before there has been any formation of the foreign "tribunal" or "proceeding" required by the statute.  Congress did not intend to grant this level of subpoena power in passing Section 1782.  This Petition violates the "for use" requirement of the statute and each of the discretionary factors under *Intel*.

*First*, the Petition fails to satisfy the minimum statutory requirements of 28 U.S.C. § 1782. In the foreign arbitrations cited by Petitioner, the requested discovery cannot be "for use in a proceeding in a foreign or international tribunal" for the simple reason that there is no "tribunal" in any of those proceedings.  Petitioner admits that it has filed only *requests* for arbitration and that no panel of arbitrators has been formed to adjudicate any dispute.  This does not satisfy the requirement of a foreign "tribunal" under Section 1782.  And in the DIFC Litigation cited by Petitioner, there is no "proceeding" for purposes of the statute.  By its own admission, Petitioner is months away from service of the defendants; service requires complying with an international treaty; and the "proceedings" would commence only *if* such service were successful.  Contingent attempts at initiating litigation in a foreign court are not "proceedings" under Section 1782.

*Second*, each *Intel* factor weighs against discovery in this situation.  Although the Respondent Banks may not be parties to the foreign proceedings, the evidence being sought in

1

this Petition is duplicative of records available from the actual parties, including IBL Bank. Such discovery is not an appropriate use of Section 1782 where, as here, the evidence is within the jurisdiction of the potential tribunals abroad.

*Third*, under *Intel*, the "character and nature" of the potential foreign proceedings weigh against discovery.  Petitioner expressly consented to resolve disputes with Mr. Mustafa through private commercial arbitration, and the character of such arbitration is inconsistent with discovery under the Federal Rules of Civil Procedure.

*Fourth*, the Petition reveals an effort to circumvent the arbitral process and the restrictions that would be imposed by any DIFC court.  Petitioner has yet to bring a foreign tribunal or proceeding into existence, let alone make any attempt to obtain this discovery in a foreign tribunal from the proper parties.  The Subpoenas are an improper attempt to search for evidence that *might* exist and that *might* support a claim, before there has been any meaningful attempt to prosecute any foreign proceeding.

*Fifth*, the discovery requests are burdensome and overbroad.  They include sweeping, "all documents" requests on broad topics, without any attempt to explain why these "correspondent banks" – which are alleged simply to clear U.S. dollar transactions – might have any such documents.  This type of open-ended fishing expedition is improper under Section 1782.

*Finally*, there is no urgency to this Petition.  Petitioner has suggested that there are imminent deadlines, but any such suggestion is demonstrably false.  Even if a proceeding were to move forward, there would be no use for any of the requested discovery for at least another six months to a year.

Accordingly, Petitioner respectfully requests that the Court deny the Petition in its entirety.

## II.    **BACKGROUND**

The Petition offers a distorted and self-serving narrative of both the underlying merits and the procedural status of the relevant foreign disputes.  While this is not the forum to litigate the merits, some context is necessary.

### A.    **Origin of the Disputes**

Korek Telecom Company LLC ("Korek") was founded in 2000 by Mr. Mustafa and various other founding shareholders, whose interests are now represented through Korek International (Management) Limited ("CS Limited").  Declaration of Ken Beale ("Beale Decl.") ¶ 7.  Over the ensuing seven years, Mr. Mustafa and the other founding shareholders of CS Limited made substantial investments in Korek, which developed into a thriving business.  *Id.* ¶ 8.

In 2007, Korek obtained a license from the Communications and Media Commission of Iraq (the "CMC") to provide telecommunications services throughout Iraq.  *Id.*  To take advantage of this opportunity, Korek required additional sources of funding to meet its financing and technical needs, including its legal, financial, and technical obligations to the CMC.  *Id.* ¶ 9. Korek agreed to enter into a financing transaction (the "2011 Transaction") with Agility and Orange S.A. (formerly France Telecom S.A.) to help cover its installment payments towards the $1.25 billion licensing fee.  *Id.* ¶ 10.  To structure the 2011 Transaction, Agility and Orange S.A. created Iraq Telecom—the Petitioner in this action—which in turn established a joint venture with the founding shareholders through the newly created vehicle International Holdings Limited ("IH Limited").  *Id.* ¶ 11.  Under that venture, CS Limited retained control of 56% of IH Limited, and Petitioner held the remaining 44%.  *Id.* ¶ 12.  Relations between the parties to the 2011

Transaction are governed by two agreements: the Shareholder's Agreement ("SHA") and the Subscription Agreement ("SSA"). *Id.* ¶ 13.

Since the 2011 Transaction, Petitioner has seen its investment deteriorate largely as a result of two major setbacks, neither of which had anything to do with Mr. Mustafa.

*First*, in 2014, the CMC issued a decision declaring the joint venture between CS Limited and IT Limited null and void (the "CMC Decision"). Specifically, the CMC determined that Petitioner "did not provide extensive technical help as necessary to improve the quality, extent and coverage of services throughout Iraq;" nor did it "provide the necessary financing to enable Korek company to commit to settle the dues payable thereby, which constituted a threat to the license granted to the company." *Id.* ¶ 16. The CMC Decision has subsequently been upheld by the Iraqi courts, including the Iraq Supreme Administrative Court, which finally and unalterably upheld the CMC Decision on January 18, 2018. *Id.* ¶ 18.

*Second*, IT Limited was unsuccessful in its attempts to take majority control of IH Limited. Under the SHA, IT Limited had a call option that potentially allowed it to acquire a further 7% stake in IH Limited, thus increasing its stake to 51%. *Id.* ¶ 20. However, pursuant to the terms of the license (as amended), any share transfer would require the approval of the CMC. *Id.* In November 2014, IT Limited purported to exercise the call option without adhering to the terms of the license and soliciting approval from the CMC. *Id.* ¶ 21. To date, the CMC has not rendered its approval and is unlikely to ever do so. *Id.*

### B.     The Foreign Proceedings

Desperate in the face of these setbacks, Petitioner and its investors have since attempted to initiate litigation and arbitration across multiple fora in the hopes of extracting some payment from Korek's majority investors to help cover Petitioner's investment losses. *Id.* ¶¶ 19, 23.

The Petition cites four alleged "foreign proceedings," in addition to one other possible proceeding that Petitioner claims it intends to commence (Petition at 24):

The LAMC Arbitration.  Petitioner has attempted to commence an arbitration in the Lebanese Arbitration and Mediation Center, a private arbitral body established under the auspices of the Lebanese Chamber of Commerce (the "LAMC Arbitration"), against IBL Bank SAL ("IBL Bank"), IH Limited, and Korek.  In attempting to commence this arbitration, Petitioner relies on an arbitration clause in the IBL Bank Subordination Agreement in which Petitioner agreed that:  "Any dispute, claim, question or disagreement arising out of or relating to this Agreement or the transactions contemplated herein (a "Dispute"), shall be settled by binding arbitration in accordance with the Rules of Conciliation and Arbitration of the Beirut Chamber of Commerce and Industry by one or more arbitrators, and the procedures set forth" under those entities.  Petition, Appendix D, Declaration of Nabil Abdel Malek ("Malek Decl.") ¶ 49.

In its Request for Arbitration, Petitioner alleges that it was fraudulently induced to enter into an agreement to subordinate debts owed to it by IH Limited and Korek in favor of a loan from IBL Bank.  Petition at 23.

The ICC Arbitration.  Petitioner has also attempted to commence a private commercial arbitration under the rules of the International Chamber of Commerce (the "ICC"), against CS Limited and Mr. Mustafa.  In its Request for Arbitration before the ICC, Petitioner alleges breaches of the SHA and SSA, including that CS Limited and Mr. Mustafa mismanaged Korek, failed to provide its partner investors with information about Korek's finances and operations, and fraudulently obtained IT Limited's approval of the IBL Bank loan.  Petition at 23-24; Petition Appendix C ¶ 15.  Petitioner also claims to be planning a second related ICC arbitration, but has not yet issued any request for arbitration.

5

The DIFC Litigation.  Petitioner has brought two complaints against IH Limited and its various officers before the Dubai International Financial Center ("DIFC") Courts (the "DIFC Litigation") for breach of directors' duties and fiduciary duties under DIFC corporate law. Petition at 21.  As relevant here, the complaints allege that certain officers of IH Limited failed to address the allegations regarding the IBL Loan and undisclosed self-dealing, including by allegedly failing to appoint third party experts to analyze the books and records of Korek; to mitigate further harm to Korek by Mr. Mustafa's wrongdoing; and to suspend or remove Mr. Mustafa from his position at Korek.  *Id*. at 21-22.

Not one of these proceedings has advanced materially beyond the filing of basic case-initiating documents.  As the Petition concedes, no tribunal has been appointed in either the LAMC or the ICC arbitrations, *see* Petition at 24, and this is not expected to happen for another several months.  Beale Decl. ¶¶ 40-42, 52; Bassi Decl. ¶ 20, 23.  Prior to the appointment of a tribunal, nothing of consequence is likely to happen in these arbitrations and certainly no discovery is likely to take place.  Beale Decl. ¶¶ 42-44, 51-53.  All Petitioner has done is lodge Requests for Arbitration ("RFAs") with private arbitral bodies.  The RFA does not constitute a tribunal in those proceedings; only at some later point would tribunals be constituted in these arbitrations, at which point the parties and the tribunal would set the Terms of Reference, which would define the basic conduct of the proceedings, including scheduling, manner of pleadings and hearings, and what if any document disclosure might be permitted.  *Id*. ¶¶ 41, 52d; Bassi Decl. ¶ 8-9, 21-22.

In the DIFC Litigation, as Petitioner's foreign counsel admits, none of the defendants (with the exception – it asserts – of IH Limited) have been served, this service "will take a number of months," and the DIFC Litigation will not "proceed" until such service is effected.

Lovett Decl. ¶ 24.  Service is far from straightforward.  It can be effected only pursuant to the

Riyadh Convention, an international treaty governing service.  *Id.*; Declaration of Michael Black

QC ("Black Decl.") ¶ 11.  In recognition of these complexities, IT Limited has applied to the

DIFC Court for an extension in effecting service to March 12, 2019.  Beale Decl. ¶ 33.  Aside

from the treaty requirements, DIFC Court procedure requires that the claimant serve upon all the

defendants a claim form and particulars of claim, setting out in concise form the legal and factual

basis of its case.  Black Decl. ¶¶ 12, 15.  Once those papers have been served (which they have

not), the defendants will file a response, after which the DIFC Court will set a procedural

timetable, including to establish discovery measures.  *Id.* ¶ 16; Beale Decl. ¶¶ 32-34; Lovett

Decl. ¶ 24.  Only *if* IT Limited were to satisfy all service requirements (which they have not) and

only *if* defendants were to file a response would any actual proceeding commence in the DIFC.

Black Decl. ¶¶ 11, 13.

### C.     Petitioner's Private "Investigation"

Desperate to find some evidence that might support its attempts to initiate foreign

proceedings, Petitioner apparently has hired Raedas Consulting Limited, private investigators

based in London that, according to their website, specialize in "placing investigation at the heart

of the litigation process."[1]  Based on the Raedas declaration submitted in support of the Petition,

this investigation apparently has come up empty.  *See* Petition, Appendix F, Declaration of

Nicholas Bortman ("Raedas Decl.").  The Raedas Declaration is heavy on conjecture but offers

little in the way of actual evidence.  It identifies an account that Korek holds with IBL Bank per

the terms of the IBL Loan Agreement, and states the uncontroversial proposition that Korek may

have paid its suppliers from time to time from this account.  *Id.* ¶ 6.  By pure speculation, Raedas

---

[1] Raedas, https://www.raedas.com/ (last visited Nov. 20, 2018).

then purports to have "uncovered" "self-dealing" from those payments, but admits that the alleged counterparties only "*may* have received payments", or were "likely" to receive them. *See, e.g., id.* ¶ 7 & Figure 1 (emphasis added).  No evidence is presented.

Raedas focuses on a bank transfer from Korek to Mr. Mustafa, *id*. ¶ 10, but fails to mention that this transfer was part of the 2011 Transaction and had been agreed in full with the Petitioner.  Beale Decl. ¶ 55.  Further, Raedas suggests that Mr. Rahmeh, one of the defendants in the DIFC Litigations, purchased a London property as a means of exercising improper influence over a government official, but can only speculate that this "*may* have" happened. Raedas Decl. ¶ 5 (emphasis added).  Raedas also claims to "have information" regarding the beneficial ownership of an entity the Petitioner alleges to have participated in the fraudulent IBL loan, but fails to provide any such "information."  *Id*. ¶ 13; *see also* Beale Decl. ¶ 55.

The Petition simply repeats this conjecture.  For example, with respect to the alleged "kickbacks," the Petition states that "it *appears* that Mr. [Mustafa] has received at least some of these 'kickbacks'" and cites to the Raedas declaration, which itself offers no factual support for these theories and merely repeats the same speculation.  Petition at 12-13 (emphasis added); *see also* Raedas Decl. ¶ 12.

These omissions are critical.  Arbitrations do not give claimants the ability to "plead first, discover later"; claimants must come forward at the outset with a description of the nature and circumstances of the dispute and a basis upon which its claims are made.  Beale Decl. ¶ 54 (citing ICC Rules, art. 4(3)(c)).  Without any evidence from its "investigation" to provide such basis, Petitioner's attempted foreign proceedings will be doomed from the start.

### D.        The Proposed Subpoenas

Without evidence from its private investigators, Petitioner now seeks to invoke this Court's subpoena power, in the hopes that trawling through the records of major U.S. banks might unearth some evidence.  However, the actual banks that theoretically would have relevant evidence based on Petitioner's allegations -- IBL Bank, HSBC UAE, or BPC/Byblos (*see* Petition at 16) -- are not found in any U.S. district.  So Petitioner is left seeking U.S. discovery from so-called "Correspondent Banks" alleged to "process USD transactions for several of the foreign banks involved in the relevant transactions."  *Id.* & n. 31.

The Subpoenas contain sweeping, "all documents" requests on topics as broad as "the nature and the purpose of the IBL Loan, the kickbacks, and the cash collateral;" "agreements relating to the same;" "transfers from Korek to IBL Bank in connection with the IBL Loan," "beneficial ownership information about various IBL Bank account numbers," and "any other transfers relating to or referencing the IBL Loan."  Petition at 18.  There is no evidence that "correspondent banks" would have any materials responsive to these requests.  Even on Petitioner's own description, such "correspondent banks" would have nothing more than the basic details of whatever U.S. dollar transaction flowed through their systems.  *Id.* at 16.

## III.    <u>ARGUMENT</u>

Section 1782 provides that the "district court of the district in which a person resides or is found may order him to … produce a document … for use in a proceeding in a foreign or international tribunal … upon the application of any interested person."  28 U.S.C. § 1782.  Thus, to satisfy the statute:

(1) the person from whom discovery must reside (or be found) in the district;

(2) the discovery must be for use in a proceeding before a foreign tribunal; and

(3) the application must be made by a an interested person.

*Certain Funds, Accounts and/or Investment Vehicles v. KPMG, LLP*, 798 F.3d 113, 117 (2d Cir. 2015) (citation omitted).

Even if this Court determines that the Petition meets the minimum statutory requirements, the decision to grant Section 1782 is discretionary. *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84 (2d Cir. 2004) (Section 1782 "authorizes but does not require" judicial assistance). Assuming the statutory requirements are satisfied (which they are not), "a district court may order discovery under § 1782 in its discretion, taking into consideration the 'twin aims' of the statute, namely, 'providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.'" *Certain Funds*, 798 F.3d at 117 (citing *In re Metallgesellschaft*, 121 F.3d 77, 79 (2d Cir. 1997)).

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) ("*Intel*") offered four non-exclusive factors to guide a district court's discretionary analysis:

> (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which event "the need for § 1782**Error! Bookmark not defined.**(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad";
>
> (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance";
>
> (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and
>
> (4) "whether the request is 'unduly intrusive or burdensome.'"

*Intel*, 542 U.S. at 264-65.  "The *Intel* factors are not to be applied mechanically," and "[a] district court should also take into account any other pertinent issues arising from the facts of the particular dispute."  *Kiobel v. Cravath Swaine & Moore LLP*, 895 F.3d 238, 245 (2d Cir. 2018).

As set forth below, the Petition fails to meet the statutory requirement that discovery must be "for use in a proceeding before a foreign tribunal," and the Petition is otherwise inappropriate under the *Intel* factors.  *Id.*

### A.     The Petition Does Not Seek Discovery "For Use" in a Foreign "Tribunal" or "Proceeding."

A number of courts, including the Second Circuit, have been reluctant to permit Section 1782 discovery for use in *any* private commercial arbitration.  In *National Broadcasting Co., Inc. v. Bear Stearns & Co., Inc.*, 165 F.3d 184 (1999), the Second Circuit denied Section 1782 discovery in aid of an ICC arbitration, holding that "Congress did not intend for [Section 1782] to apply to an arbitral body established by private parties."  *Id.* at 191.

The Second Circuit concluded that "when Congress in 1964 enacted the modern version of § 1782, it intended to cover governmental or intergovernmental arbitral tribunals and conventional courts and other state-sponsored adjudicatory bodies," not private arbitrations. *Nat'l Broadcasting Co.*, 165 F.3d at 190.  Indeed, "[t]he absence of any reference to private dispute resolution proceedings such as arbitration strongly suggests that Congress did not consider them in drafting the statute."  *Id.* at 189.  Furthermore, removing private arbitration from the ambit of Section 1782 comports with the "twin aims" of the statute: "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *In re Metallgesellschaft*, 121 F.3d at 79 (quoting *Application of Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992)); *see also Nat'l Broadcasting Co.*, 165 F.3d at 190 (emphasizing that

11

Congress intended to expand Section 1782 specifically to *public* international arbitrations as "the interest of the United States in peaceful settlement of international disputes…").

Petitioner argues that *Nat'l Broadcasting Co.* no longer controls in light of the Supreme Court's decision in *Intel*, but the Second Circuit has expressly declined to disturb the holding of *Nat'l Broadcasting Co*. following *Intel*.  *See Chevron Corp. v. Berlinger*, 629 F.3d 297, 310-11 (2d Cir. 2011) (declining to "reach the argument" of whether a treaty arbitration constitutes "a proceeding in a foreign or international tribunal" within the meaning of § 1782); *In re Asia Maritime Pacific Ltd.*, 253 F. Supp. 3d 701, 707 n. 8 (S.D.N.Y. 2015) (acknowledging that the "Second Circuit has not weighed in on the issue" of whether private foreign arbitration proceedings qualify for Section 1782 discovery).

To the contrary, in evaluating Section 1782 discovery, courts remain "reluctant … to interfere with the bargained-for expectations concerning the arbitration process."  *In re Application of Caratube Int'l Oil Co., LLP*, 730 F. Supp. 2d 101, 106 (D.D.C. 2010).  For example, in a post-*Intel* case, the Fifth Circuit affirmed denial of Section 1782 discovery for use in an arbitration, on the grounds that "empowering parties in international arbitrations to seek ancillary discovery through federal courts could destroy arbitration's principal advantage as 'a speedy, economical, and effective means of dispute resolution' if the parties 'succumb to fighting over burdensome discovery requests far from the place of arbitration.'"  *El Paso Corp. v. La Comision Ejecutiva Hidroelectrica Del Rio Lempa*, 341 F. App'x 31, 34 (5th Cir. 2009) (concluding that *Intel* did not disturb the judgment that Section 1782 discovery is inappropriate for use in private arbitration because "[t]he question of whether a private international arbitration tribunal also qualifies as a 'tribunal' under § 1782 was not before the Court").[2]

_____

[2] Other courts have reached the same conclusion.  *See Norfolk S. Corp. v. Gen. Sec. Ins*. Co., 626

In any event, here there is a much more fundamental problem:  Not only is the discovery sought for use in a private commercial arbitration, it is being sought at a stage where no arbitral "tribunal" has even been constituted in the foreign arbitrations.  This violates the statute.  The foreign arbitrations are months from the formation of the actual arbitral tribunal that will set terms of reference and decide threshold matters such as whether there is jurisdiction over the dispute, what claims can be pursued, and what abilities the parties will have, if any, to obtain document disclosure from each other.  Beale Decl. ¶¶ 41-44, 51-53; Bassi Decl. ¶¶ 21, 23.  In the absence of such an arbitral tribunal, the Section 1782 discovery is not "for use in a proceeding in a foreign or international tribunal."  28 U.S.C. § 1782(a).

Petitioner offers no authority to the contrary.  It cites one case from this Circuit in which Section 1782 discovery was permitted for use in a commercial arbitration.  *See* Petition at 30 (citing *In re Ex Parte Application of Kleimar N.V.*, 220 F. Supp. 3d 517 (S.D.N.Y. 2016)).  But that case, which ruled that an arbitral tribunal constituted under the rules of the London Maritime Arbitration Association could be considered a "tribunal" for the purposes of Section 1782, does not purport to address the question of whether the statute can be satisfied when, as here, no tribunal even exists.

As to the DIFC Litigation, by Petitioner's own admission, no defendants have been served, save (it says) IH Limited.  Petitioner also admits that the DIFC Litigation could "proceed" only *if* service were effected through the Riyadh Convention, an international treaty.  Lovett Decl. ¶ 24; *see also* Black Decl. ¶ 11-12.  The Petition has not explained how it intends to

---

F. Supp. 2d 882, 885 (N.D. Ill. 2009) (concluding that "the Intel Court's language did not endorse such a broad definition of 'tribunal'" so as to include private arbitrations); *In re Operadora DB Mexico*, No. 6:09-cv-383-Orl-22GJK, 2009 WL 2423138, at *37 (M.D. Fla. Aug. 4, 2009) (arbitration administered by the ICC is not a qualified proceeding under Section 1782 post-*Intel*).

satisfy this treaty or what that may entail.  Demonstrating the complexity of these service issues, Petitioner's foreign solicitor admits that the process will "take a number of months."  Lovett Decl. ¶ 24.  Service may be successful under the treaty; but it may not be.  Even then, the defendants remain free to challenge the jurisdiction of the court.  Black Decl. ¶ 13.  Possible, contingent proceedings not reasonably likely to generate a dispositive ruling from a court fail to satisfy the "foreign proceeding" requirement of Section 1782.[3]  *See Intel*, 542 U.S. at 255, 259; *cf. In re Application of FG Wilson (Engineering) Limited*, 2009 WL 10671837, at *2 (N.D. Ga. Dec. 17, 2009); *Norfolk Southern Corp.*, 626 F. Supp. 2d at 886 (denying discovery under Section 1782 in part because *Intel* requires that the foreign proceeding lead to a dispositive ruling reviewable by courts).

These problems are made even worse by the speculative nature of Petitioner's requests. The Petition seeks records of financial transactions on the theory that the Respondent Banks, simply in their capacity as "Correspondent Banks" processing U.S. dollar transactions, somehow might have deep information on topics as broad as the "the nature and purpose of …

---

[3] In *Mees v. Buiter*, the court permitted a litigant who had yet to commence a foreign proceeding in Dutch court to obtain Section 1782 relief so long as the proceeding was within "reasonable contemplation."  793 F.3d 291, 296 (2d Cir. 2015) (holding that discovery is "for use" in the foreign proceeding if it could be used "at any point in the proceeding").  However, *Mees* does not control when the attempt to initiate a foreign proceeding may not result in a "dispositive ruling," either because the parties cannot satisfy jurisdictional or procedural hurdles to reach such a ruling, or because the foreign tribunal is incapable of rendering it.  *See Intel*, 542 U.S. at 255 (authorizing district courts to provide assistance to proceedings "that lead[] to a dispositive ruling, *i.e.*, a final administrative action both responsive to the complaint and reviewable in court."); *In re Application of FG Wilson (Engineering) Limited*, 2009 WL 10671837, at *2 (N.D. Ga. Dec. 17, 2009) (noting that *Intel* "required that a dispositive ruling be within reasonable contemplation").  At the time of the ruling in *Mees*, a defamation proceeding was underway in the Dutch courts between individuals based in the Netherlands; *Mees* thus presented none of the challenges particular to the DIFC Court regime, including the complex, treaty-based process for obtaining jurisdiction and effecting service.  In such circumstances where it is questionable that the foreign tribunal may ever be able to render a dispositive ruling, courts are reluctant to permit discovery.  *See In re Schlich*, 893 F.3d 40, 52 (1st Cir. 2018) (affirming the denial of Section 1782 relief given the disputed limitations on the foreign tribunal's powers).

'kickbacks,'" beneficial ownership information about various accounts, "any agreements between IBL Bank and Messrs. [Mustafa] or Rahmeh," and other inquiries.  Petition at 18.  But the so-called "Correspondent Banks" were not directly involved in the alleged transactions at issue, and the Petition does not explain why any particular one of them would ever have had— much less, have retained and be able to produce—responsive documents in respect of these requests.  On top of this, the only substantiation Petitioner provides for the existence of the alleged bank transfers is the Raedas declaration, which itself is simply speculation, not evidence.

In *Asia Maritime Pacific*, the court declined a similar request for Section 1782 discovery against sixteen major New York banks, purportedly for use in a London-seated arbitration.  *In re Asia Maritime Pac. Ltd*., 253 F. Supp. 3d at 703, 707.  The court determined that the discovery could not be "for use" in that arbitration because the Petitioner had not shown that the respondent banks were likely to have responsive information that might support the foreign claims:

> Petitioner apparently believes that if enough large banks search their electronically-stored information, the identity and location of assets belonging to [the target] are bound to surface. The Court declines to lend its subpoena power to this fishing expedition.

*In re Asia Maritime Pac. Ltd*., 253 F. Supp. 3d at 703 (emphasis added).

Here, similarly, it is entirely speculative that any particular Respondent Bank will possess information that could be "for use" in any potential foreign proceeding.  As in *Asia Maritime* and in the many other cases rejecting such "fishing expeditions," the discovery here is improper.  *See In re Harbour Victoria Inv. Holdings Ltd.*, No. 15-MC-127, 2015 WL 4040420, at *5 (S.D.N.Y. June 29, 2015); *Jiangsu Steamship Co., Ltd. v. Success Superior Ltd.*, No. 14-CV-9997 (CM), 2015 WL 3439220, at *5 (S.D.N.Y. Jan. 6, 2015).

15

**B.     The *Intel* Factors Weigh Against Discovery Under Section 1782.**

Even if the Court were to find the minimum statutory requirements met, the discretionary

*Intel* factors all weigh against granting the Petition.

> *1.     The Requested Discovery Is Duplicative of Evidence that Could Be
> Obtained from the Participants in the Foreign Proceeding.*

As the Supreme Court made clear in *Intel*, "when the person from whom discovery is

sought is a participant in the foreign proceeding . . . , the need for § 1782(a) aid generally is not

as apparent."  542 U.S. at 264.  That is because a "foreign tribunal has jurisdiction over those

appearing before it, and can itself order them to produce evidence."  *Id.*

Here, although the Respondent Banks are not parties to the foreign proceedings, the

*evidence* being sought from them is entirely duplicative of records equally available from the

actual parties.  The Subpoenas request bank records for Mr. Mustafa, IBL Bank, Korek, and

other officers of Korek and IH Limited, all of whom are named foreign parties.  Named parties to

the foreign proceeding are not the proper subjects of discovery under Section 1782.  *See In

Matter of Application of Leret*, 51 F. Supp. 3d 66, 71 (D.D.C. 2014) ("The substantive basis for

denying the application was a finding . . . that [respondent] was a party to two of the three

foreign proceedings for which discovery was sought . . . .").  The same is true of their evidence.

Because such evidence is within the foreign tribunal's "jurisdictional reach," discovery should be

pursued in the foreign court, where Petitioner chose to attempt those proceedings.  *In re Kreke

Immobilien KG*, No. 13 Misc. 110, 2013 WL 5966916, at *5 (S.D.N.Y. Nov. 8, 2013).

> *2.     The Character and Nature of the Foreign Proceedings Weigh Against the
> Requested Discovery.*

Section 1782 discovery is also improper under the second *Intel* factor, which examines

"the nature of the foreign tribunal, the character of the proceedings underway abroad, and the

receptivity of the foreign government or court agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264.

Petitioner expressly agreed to the resolution of its contractual disputes by way of private commercial arbitration. Petition, Appendix D, Declaration of Nabil Abdel Malek ("Malek Decl.") ¶ 49; Bassi Decl. ¶¶ 83-84. The character and nature of private arbitration are inconsistent with discovery under Section 1782. "The popularity of arbitration rests in considerable part on its asserted efficiency and cost-effectiveness—characteristics said to be at odds with full-scale litigation in the courts, and especially at odds with the broad-ranging discovery made possible by the Federal Rules of Civil Procedure." *Nat'l Broad. Co.*, 165 F.3d at 190-91. Petitioner's agreement to arbitrate disputes was designed to be exclusive and to vest an arbitration panel with the full power to decide all matters related to their dispute, including whatever rights the parties may have to seek document disclosure from each other or from any third parties. Parties must be "free to set the procedural rules for arbitrators to follow." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 39 (1987). Accordingly, in evaluating Section 1782 discovery, courts are "reluctant . . . to interfere with the bargained-for expectations concerning the arbitration process." *In re Application of Caratube Int'l Oil Co., LLP*, 730 F. Supp. 2d at 106.

Here, Petitioner agreed to submit contractual disputes to arbitration, but now refuses to even allow the terms and basic structures of that arbitration (such as a tribunal) to take shape before soliciting external assistance. It would be utterly contrary to the character and policies of private international arbitration to permit Petitioner to avoid this agreement and pursue discovery in the U.S., free from the ICC or LAMC Rules and the document disclosure regimes that the parties agreed would govern resolution of their dispute. *Republic of Kazakhstan v. Biedermann*

17

*Int'l*, 168 F.3d 880, 883 (5th Cir. 1999) ("Arbitration is intended as a speedy, economical, and effective means of dispute resolution … [A]rbitration's principal advantages may be destroyed if the parties succumb to fighting over burdensome discovery requests far from the place of arbitration.").

Furthermore, private arbitration is meant to be speedy and cost-efficient, and therefore seeks to avoid the burdens of typical, U.S.-style discovery.  Beale Decl. ¶ 62.  Many arbitration panels do not permit any document discovery at all, and if it is permitted it is usually limited to requests for specific documents that are known to exist.  *Id*. ¶ 60.  Petitioner's sweeping, "all documents" requests on general topics are contrary to these standards and therefore inappropriate under *Intel*.  *See Heraeus Kulzer GmbH v. Biomet, Inc.*, 633 F.3d 591, 595 (7th Cir. 2011) (noting abuses of the Section 1782 discovery mechanism including "try[ing] to overwhelm the [foreign tribunal] with documentation the [tribunal] might not be well equipped by its procedures to stem the flow"); *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1105 (2d Cir. 1995) (Jacobs, dissenting) (warning against "clog[ging] the French appeals court with the random harvest of the American discovery"); *see also In re Ex Parte Application of Qualcomm Inc.*, 2016 WL 641700, at *7 (C.D. Cal. Feb 18, 2016) (denying Section 1782 application in reliance in part on the principle of comity).; *cf. In re Microsoft Corp.*, 428 F. Supp. 2d 188, 194 (S.D.N.Y. 2006) (quashing Section 1782 subpoenas where the foreign proceeding indicated that the discovery sought was "totally at odds with the European rules on access to files").

As to the DIFC Litigation, Petitioner gave no notice to the parties or to any tribunal in the DIFC prior to commencing proceedings before this Court under Section 1782.  Nor has the Petitioner taken the most elemental steps towards initiating a proceeding in the DIFC, including effecting service pursuant to the Riyadh Convention.  It is therefore premature and impossible to

gauge the "receptivity of the foreign government or the court."  *Intel*, 542 U.S. at 264; *see*

*Schmitz*, 376 F.3d at 84; *In re Dubey*, 949 F. Supp. 2d 990, 996 (C.D. Cal. 2013) (discouraging

the grant of Section 1782 discovery in foreign disputes on discretionary grounds where it

remains unclear where the final proceedings will lie or how the tribunals will be constituted).

> 3. *The Petition Conceals an Attempt to Circumvent the Proof-Gathering Procedures of the Foreign Tribunals.*

Section 1782 discovery is improper under the third *Intel* factor because the request

"conceals an attempt to circumvent foreign proof-gathering restrictions."  *Id.* at 265

*First*, none of the discovery requested here has been sought in the foreign proceedings.

Although there is no "foreign exhaustion" requirement in the Second Circuit, courts routinely

deny "section 1782 requests when a party had not first sought production in the foreign forum."

*In re Mare Shipping Inc.*, No 13 MISC. 238, 2013 WL 5761104, at *5 (S.D.N.Y. Oct. 23, 2013),

*aff'd sub nom Mare Shipping Inc. v. Squire Sanders (US) LLP*, 574 F. App'x 6 (2d Cir. 2014);

*see also In re Degitechnic*, No. C07–414–JCC, 2007 WL 1367697, at *5 (W.D. Wash. May 8,

2007) (Section 1782 "application seeking discovery never sought in France certainly appears to

be a circumvention attempt").  Indeed, here the requests are premature as the Petitioner has not

even seen or determined *what the discovery procedures in the foreign proceedings will be*, let

alone sought to negotiate with the other parties regarding an appropriate scope of document

production.

*Second*, the broad, "all documents" style discovery requested here is a circumvention of

the limited scope of document production accepted by the parties when they agreed to

international arbitration.  There is a strong presumption in international arbitration that document

production will be significantly more limited than US-style discovery; arbitral tribunals, which

often look for guidance to the IBA Rules, generally do not permit indefinite "all documents"

searches for emails of the type being requested here.  Instead, parties are typically limited to requesting documents that they know to be in the possession of the other side, or otherwise very specific categories of documents.  Beale Decl. ¶¶ 60-61.

DIFC courts' rules are similar in this respect.  The DIFC approach to disclosure and production resembles the IBA Rules for the taking of evidence that typically apply in arbitration, which are much more limited than Anglo-American litigation.  Black Decl. ¶¶ 17-18.  Further, the obligations incumbent upon parties under the DIFC rules are narrower, and typically require specific document requests that include "a description in sufficient detail (including subject matter) of a narrow and specific requested category of documents that are reasonably believed to exist."  Black Decl. ¶ 17 (citing DIFC Rules Art. 28).   Where, as here, a party has "side-stepped these guidelines, and has thus undermined the Tribunal's control over the discovery process," Section 1782 discovery is inappropriate.  *In re Application of Caratube*, 730 F. Supp. 2d at 108 (denying § 1782 discovery as inconsistent with the character of international arbitration).

The Petition argues that because the DIFC Court and arbitral rules do not explicitly prohibit or restrict the parties from gathering the evidence, there is no circumvention.  Petition at 34-35.  However, this same type of argument was rejected by the Second Circuit in *Kiobel v. Cravath Swaine & Moore LLP*, 895 F.3d 238 (2d Cir. 2018).  There, the petitioner sought U.S. discovery of Shell's records held by its law firm, Cravath Swaine & Moore.  The district court had determined that the *Intel* factors favored discovery because "the Netherlands does not prohibit or restrict parties from gathering" this type of evidence.  *Id*. at 244-45.  The Second Circuit reversed, reasoning instead that the much more limited scope of discovery in the Netherlands gave rise to the inference that Dutch courts would be less receptive to American discovery.  *Id*. at 245.  The petitioner had further argued that Section 1782 discovery was

necessary because Dutch procedural law was much more restrictive in relation to pretrial

discovery.  *Id.* at 245 n.3.  The Second Circuit Court held that this was a reason to reject Section

1782 discovery, not to grant it:

> "[U]nder the third *Intel* factor, statements made by Kiobel's counsel demonstrate that
> Kiobel is trying to circumvent the Netherlands' more restrictive discovery practices,
> which is why they are seeking to gather discovery from Cravath in the U.S."

*Id.* at 245; *see also Heraeus Kulzer* GmbH, 633 F.3d at 594 ("[D]istrict courts must be alert for

potential abuses that would warrant a denial of an application to be allowed to take such

discovery," including "seek[ing] discovery of documents or other materials that the foreign court

would not admit into evidence.").  Here, Petitioner cites similar foreign restrictions.  *See, e.g.*,

Bassi Decl. ¶ 22 (describing restrictions to evidence gathering in the ICC); Malek Decl. ¶¶ 12-14

(describing restrictions to evidence gathering in the LAMC); Lovett Decl. ¶¶ 8-9 (describing

limitations on categories of discovery and ability to entertain evidence in the DIFC courts).  But

as *Kiobel* makes clear, these very facts weigh against Section 1782 discovery because they risk

an end-run around local proof-gathering restrictions and practices.

### 4.     The Requests are Overbroad.

The fourth and final *Intel* factor also weighs against the requested discovery because the

Subpoenas are "unduly intrusive [and] burdensome."  *Intel*, 542 U.S. at 265.

Section 1782 is not meant to allow ranging searches for documents that *may* exist; it is a

tool to seek targeted discovery of known evidence or narrow categories of evidence.  As the

courts in this Circuit make clear:  "courts should be more inclined to grant [§ 1782] applications

that seek either a single document or only those documents relating to a particular event."  *In re*

*Kreke Immobilien*, 2013 WL 5966916, at *7.  Thus, courts will permit Section 1782 subpoenas

that seek, for example, documents relating to a single consulting report, *In re Application of*

*Gemeinshcaftspraxis Dr. Med. Schottdorf*, No. Civ. M19-88 (BSJ), 2006 WL 3844464, at *8 (S.D.N.Y. Dec. 29, 2006), or "documents related to … insurance coverage for a single loss on a single day," *In re Servicio Pan Americano de Proteccion, C.A.*, 354 F. Supp. 2d 269, 275 (S.D.N.Y. 2004).  But Section 1782 does not permit parties to engage in a "fishing expedition." *In re Metallgesellschaft AG*, 121 F.3d at 79.

The Subpoenas are incurably overbroad under these standards.  Section 1782 subpoenas must "bear on, or … reasonably … lead to other matter that could bear on" issues in the foreign proceeding.  Yet, the Subpoenas are not limited to the events or issues in dispute.  Instead, they seek "all documents" that in any way relate to the Banks' KYC procedures for IBL Bank; transactions between Korek and IBL Bank; the identity of individuals that approved or authorized the transactions; any "divergent, errant or otherwise suspicious transactions relating to the IBL Loan;" the relationship between the Respondent Bank and the Byblos/BPC; and the due diligence investigations, if any, involving individuals associated with CS Limited, among other areas.

The Subpoenas thus seek the same types of "all documents" discovery that courts find overbroad under Section 1782.  For example, in *Kreke*, the court rejected a similar attempt to require "Deutsche Bank to gather all of its documents relating to the acquisition of Oppenheim, a 1 billion purchase."  *In re Kreke Immobilien*, 2013 WL 5966916, at *7.  Similarly, in *Application of OOO Promnefstroy*, the court denied Section 1782 discovery seeking "a wide array of documents related to tens of business entities and to all of their affairs."  Misc. No. M 19-99 (RJS), 2009 WL 3335608, at *9 (S.D.N.Y. Oct. 15, 2009).

In such situations, the proper remedy is to deny the subpoenas, not tailor them.  If a court determines that a party's subpoena under section 1782 "unreasonably seeks cumulative or

irrelevant materials, the court is free to deny the application in toto, just as it can if discovery was

sought in bad faith in domestic litigation." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*,

673 F.3d 76, 81 (2d Cir. 2012).

###### C.      Petitioner's Claim of "Urgency" Is Unfounded.

Even if the Court were inclined to order some discovery, there is no basis to expedite that

discovery in any way.  As explained above, in the arbitrations, there are no tribunals, and in the

DIFC Litigation, the defendants have not been served.  In all events, nothing of any substance

could even hypothetically occur in the next six months.  *See generally* Beale Decl. ¶¶ 44, 51, 53.

Petitioner has made various assertions to justify urgency, but none of them is supportable.

*First*, at the Scheduling Conference of November 7, 2018, counsel suggested that:

> "*In the Dubai proceeding, your Honor, I note that there are certain deadlines coming up
> in that proceeding as well, again, under the same timetable of the end of
> December/beginning of January…*"

Hearing Tr. 7:19-23.  It is unclear what "deadlines" counsel was referencing.  Given Petitioner's

own admissions about service in the DIFC taking "months," this could not be a reference to the

DIFC Litigation discussed in the Petition.  Lovett Decl. ¶ 24; *see also* Beale Decl. ¶¶ 34-35

(explaining that no discovery could be relied upon in the DIFC Litigation for at least six

months).  The reference to these deadlines may relate to an appeal in a different DIFC case, but

that case is nowhere discussed in Petitioner's submissions.  Beale Decl. ¶ 36. In any event, this

other case is at an appeal stage, where no evidence can be admitted, and it therefore could not

serve as the proper basis for a Section 1782 discovery request.  *See Euromepa, S.A. v. R.*

*Esmerian, Inc.*, 154 F.3d 24, 29 (2d Cir. 1998) (holding that neither the reopening of a French

Court of Appeal action nor a pending French bankruptcy proceeding in which the merits of the

dispute were resolved constitute a "proceeding before a foreign tribunal"); *see id.* ("the discovery

certainly could not be 'for use' in [the] appeal if that court does not take and hear new evidence").

*Second*, in reference to the ICC Arbitration, Petitioner's accompanying declaration asserts:  "*it is envisioned that Iraq Telecom's statement of case will be required to be filed within the next three months.*"  Bassi Decl. ¶ 22.  This is misleading.  No ICC tribunal has been constituted, and only once a tribunal is constituted can there be any agreement on procedural timetables.  Beale Decl. ¶¶ 46, 52-53.  Further, the present ICC arbitration faces procedural problems that may require Petitioner to withdraw the current request and file a new request for arbitration (hence the reference to the other "contemplated" arbitration).  *See id*. ¶¶ 48-51, 57.  Under no set of circumstances would a statement of case realistically be filed in the next three months.

## IV.    CONCLUSION

For the foregoing reasons, Mr. Mustafa respectfully requests that the Petition be denied in its entirety.

DATED:  November 21, 2018                                BOIES SCHILLER FLEXNER LLP


/s/ Duane Loft_____
Duane Loft
dloft@bsfllp.com
575 Lexington Avenue
New York, New York 10022
Telephone:     212.446.2300
Facsimile:     212.446.2350

*Attorneys for Mr. Mustafa*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 21st day of November, 2018, a copy of the foregoing Memorandum in Support of Sirwan Saber Mustafa's Motion to Intervene was filed electronically by using the CM/ECF system, and that notification of this filing is to be provided to all counsel of record who have registered to receive notices from the court under the CM/ECF system.

/s/ Duane Loft
Duane Loft