

# WILBERFORCE CHAMBERS

# RULES OF THE DIFC COURTS 2018

JOANNA SMITH QC
TOM ROSCOE
JONATHAN CHEW
SIMON ATKINSON



## CONTENTS

| | | |
|---|---|---|
| PART 1 | Citation, commencement, application and the overriding objective | 06 |
| PART 2 | Interpretation | 10 |
| PART 3 | Organisation of the Court | 18 |
| PART 4 | The Court's case management powers | 25 |
| PART 5 | Forms | 39 |
| PART 6 | Court documents | 40 |
| PART 7 | How to start proceedings — the claim form | 46 |
| PART 8 | Alternative procedure for claims | 52 |
| PART 9 | Service | 58 |
| PART 10 | Responding to particulars of claim — General | 75 |
| PART 11 | Acknowledgment of service | 75 |
| PART 12 | Disputing the Court's jurisdiction | 78 |
| PART 13 | Default judgment | 81 |
| PART 14 | Setting aside or varying default judgment | 86 |
| PART 15 | Admissions | 88 |
| PART 16 | Defence and reply | 95 |
| PART 17 | Statements of case | 98 |
| PART 18 | Amendments to statements of case | 107 |
| PART 19 | Further information | 112 |
| PART 20 | Addition and substitution of parties | 117 |
| PART 21 | Counterclaims and other additional claims | 132 |
| PART 22 | Statements of truth | 140 |
| PART 23 | General Rules about applications for Court orders | 146 |
| PART 24 | Immediate judgment | 166 |
| PART 25 | Interim remedies and security for costs | 172 |
| PART 26 | Case Management | 208 |
| PART 27 | Alternative Dispute Resolution | 224 |
| PART 28 | Production of documents | 226 |
| PART 29 | Evidence | 241 |










| PART 30 | Witnesses, depositions and evidence for other Courts | 263 |
|---------|------|-----|
| PART 31 | Experts and assessors | 275 |
| PART 32 | Offers to settle | 302 |
| PART 33 | Payments into Court | 310 |
| PART 34 | Discontinuance | 312 |
| PART 35 | Miscellaneous provisions relating to hearings | 315 |
| PART 36 | Judgments and Orders | 330 |
| PART 37 | Change of Legal Representative | 342 |
| PART 38 | General Rules about costs | 345 |
| PART 39 | Fixed costs | 366 |
| PART 40 | Procedure for detailed assessment of costs | 370 |
| PART 41 | Proceedings by or against the Centre, its Bodies and the Government | 378 |
| PART 42 | Judicial Review | 382 |
| PART 43 | Arbitration Claims | 392 |
| PART 44 | Amended Appeals | 405 |
| PART 44x | Appeals (Rules Applying To Judgments And Orders Issued Before 25 May 2017) | 435 |
| PART 45 | General Rules about enforcement of judgments and orders | 463 |
| PART 46 | Charging orders, stop orders and stop notices | 468 |
| PART 47 | Attachment of future assets and earnings | 481 |
| PART 48 | Execution against assets | 496 |
| PART 49 | Court's power to appoint a receiver | 506 |
| PART 50 | Orders to obtain information from judgment debtors | 515 |
| PART 51 | Interpleader | 520 |
| PART 52 | Contempt of Court | 524 |
| PART 53 | Small Claims Tribunal | 531 |
| PART 54 | Insolvency Proceedings | 543 |
| PART 55 | Probate Rules | 581 |
| PART 56 | Technology and Construction Division | 592 |
| PRACTICE DIRECTIONS | | 600 |



## FOREWORD

This is the 2018 edition of the Wilberforce Chambers "Green Book" commentary on the Rules of the DIFC Courts.

The brevity of this Foreword marks the success of the DIFC Courts as an established common law jurisdiction. Historically, the Green Book has (at least) attempted to survey the key developments not only of the procedural law and rules contained in this commentary, but also such developments in the law of jurisdiction and enforcement, and in some areas of substantive law. Such has been the development in the DIFC Courts that to attempt to summarise the law in the few pages allowed by a foreword is no longer sustainable.

In our view the most interesting development since the last edition of the Green Book is the establishment of the Joint Judicial Tribunal between the Dubai Courts and the DIFC Courts (the "JT"). The JT was established in June 2016 by Decree 19 of 2016. The substantial number of split decisions handed down by the JT to date, particularly those with dissents from the DIFC judges, suggest that the proper scope of the DIFC Courts within the broader Dubai Courts system is still to be worked through.



The happy corollary for DIFC Court practitioners is that the position on jurisdiction is relatively settled. Article 5 of the Judicial Authorities Law means what it says, and if that seems unfair then the proper recourse is to *forum non conveniens* arguments before the DIFC Courts (for countries outside the UAE), the Union Supreme Court (for inter-Emirate conflicts), or the JT (for intra-Dubai conflicts) (see e.g. the summary in *Tavira Securities v Point Ventures* [2017] DIFC CFI 026 (17 December 2017) at [41] *per* Field J). While discussion and argument will no doubt continue in respect of the decisions of the JT, the DIFC practitioner knows the structure and rules of the game, and it is testament to the development in the DIFC Courts that the position can now be put so pithily.

In this edition, we include practice directions for the first time. The number of practice directions continues to increase, and they have a real impact on practitioners. We highlight two traps for the unwary. First, Practice Direction 2 of 2016 imposes page limits for applications (paragraphs 2 and 3) and a procedure for applying by letter with reasons to the Registry for longer skeletons (paragraph 7). Secondly, Practice Direction 1 of 2016 directs that the Court may give limited weight to purported evidence given by a solicitor's witness statement (paragraphs 3 and 4).








Whilst we are pleased to see the introduction of the neutral citation of DIFC Court Judgments (Practice Direction 4 of 2016) (something previous editions of the Green Book have wished for), it appears that the system provided for by that practice direction is not always being consistently applied in practice. The current practice seems to be that many 'final' judgments are given a citation derived from the claim number. For example, the 4 March 2018 judgment in *Amlak Finance PJSC v Nigel Herbert & Ors* (claim no. CFI-041-2017) has been given neutral citation number "[2017] DIFC CFI 041". The neutral citation system is also not being applied to interim judgments, or reasons given in support of orders. In respect of those sources, we give the date of issue and the claim number by way of reference.

For this edition, Joanna Smith QC and Tom Roscoe have joined two existing contributors. All the authors have direct recent experience of working in and with those based in the DIFC. Joanna's construction expertise is an example of the wide-ranging client service that Wilberforce Chambers can offer its clients and instructing solicitors in the DIFC and in the wider area, whether in litigation or arbitration.

That client service would not be possible without the continued efforts of our Practice Director, Nick Luckman, and Fraser Geddes, team leader and clerk with responsibility for Dubai and Middle East work.

The authors are particularly grateful to Cara Goldthorpe, currently a pupil at Wilberforce Chambers, for her hard work and effort on the materials upon which this book is based.

Our final and greatest thanks go to our instructing solicitors in Dubai and the Middle East and their clients, for providing us with interesting work, and the Judges, Registrar General, Chief Executive and Registrar, and staff of the DIFC Courts, for providing us with an efficient and responsive forum in which to carry it out.

We should be pleased to hear from users of this guide with any comments or observations on its content, or suggestions for future editions. Please contact the authors at: greenbook@wilberforce.co.uk.

The procedural law is stated as at 28 February 2018.
Joanna Smith QC, Tom Roscoe, Jonathan Chew and Simon Atkinson
Wilberforce Chambers
9 March 2018





# RULES OF THE DIFC COURT
# RDC AMENDMENTS 2014

## PART 1
### CITATION, COMMENCEMENT, APPLICATION AND THE OVERRIDING OBJECTIVE

**1.1**

These Rules may be cited as The Rules of the Dubai International Financial Centre Courts 2014 and may be abbreviated to "RDC 2014".

**Commencement**
**1.2**

These Rules are made by the President of the Dubai International Financial Centre on the date specified in the Enactment Notice in respect of these Rules.

**1.3**

These Rules come into force on the date specified in the Enactment Notice in respect of these Rules.

**1.4**

Any rule amendments subsequent to the enactment of law No. 7 of Year 2011 on 10 July 2011 are made by the Chief Justice of the DIFC Courts.



**Application**
**1.5**

These Rules apply to all proceedings in:

(1) the Court of First Instance; and

(2) the Court of Appeal

established in accordance with Article 3 of the Law of the Judicial Authority at Dubai International Financial Centre, Law No.12 of 2004, and

(3) tribunals established in accordance with Article 14(3) of the DIFC Courts Law of 2004

which are collectively called the DIFC Courts.

**The Overriding Objective**
**1.6**

These Rules have the overriding objective of enabling the Courts to deal with cases justly. Dealing with a case justly includes, so far as is practicable:

(1) ensuring that the parties are on an equal footing;

(2) saving expense;





(3) dealing with the case in ways which are proportionate—

    (a) to the amount of money involved;

    (b) to the importance of the case;

    (c) to the complexity of the issues; and (d) to the financial position of each party;

(4) ensuring that it is dealt with expeditiously and fairly; and (5) allotting to it an appropriate share of the Courts' resources, while taking into account the need to allot resources to other cases.

**The overriding objective**

**1.6.1**

On matters of procedure not governed by provisions of the RDC, the Court is free to adopt the procedures it considers are appropriate which are consonant with the law of the DIFC and the overriding objective: see *Pearl Petroleum Company Limited & Ors v The Kurdistan Regional Government of Iraq* [2017] DIFC ARB 003 (20 August 2017) at [20]. See also the commentary at 2.10.1.

**1.6.2**



In *Taaleem PJSC v (1) National Bonds Corporation PJSC (2) Deyaar Development PJSC* [2010] DIFC CFI 014 (19 February 2014), although RDC 1.6 was not expressly referred to, the Court made a number of observations regarding the appropriate use of skeleton arguments: [109]–[112]. The first defendant's initial skeleton argument ran to over 170 pages, four times longer than the claimant's and twenty times longer than the second defendant's, despite the fact that the first defendant was described as having *"somewhat of a back seat role"* in the litigation: [109].

The Court noted that it is of the utmost importance to the efficient and economic conduct of litigation that skeleton arguments, pleadings and witness statements are kept within manageable bounds. Skeleton arguments should concentrate on the issues without quoting extensively from the documentation; they should identify the essential elements of the party's submissions so as to help the Court understand the arguments; long and complex skeletons impose an unacceptable burden on the Court; and in any event, the Court observed, the shorter the skeleton the more persuasive it was likely to be: [112]. This postscript was endorsed and reiterated by the Court of Appeal in *Al Khorafi v Bank Sarasin-Alpen* at [2015] DIFC CA 003 (3 March 2016), [3].

On the use and length of skeleton arguments generally, see also Practice Direction No. 2 of 2016.

**1.6.3**

In *Ibrahim Saad v Rasmala Investments Limited* [2009] DIFC CFI 007 (22 November 2009) at [54] the Court considered the importance of the overriding objective where the claimant had simply ignored CMC directions for the exchange of witness statements; the Court penalised the claimant in costs. See further the commentary at 1.8.1 and 1.9.1 below.





**1.6.4**

In *Allianz Risk Transfer AG Dubai Branch v Al Ain Ahlia Insurance Company PJSC* [2012] DIFC CFI 012, the defendant attempted to have service of a claim form set aside on the basis that the claimant had not followed proper procedures provided under RDC 9.52, 9.53 and 9.55. The claimant claimed to have effected service through the Abu Dhabi Courts. The only documents, however, exhibited in support of that contention in the DIFC Courts were in Arabic. The defendant said that there was no evidence in the claimant's witness evidence that service was effected by a method permitted by Abu Dhabi Law. Al Madhani J dismissed the defendant's application. He noted that, being a native Arabic speaker, he could see that service was effected in the Abu Dhabi Courts. He also held that the DIFC Court would rely on the official service documents issued by the Abu Dhabi Court in Arabic, bearing in mind the overriding objective.

Although no mention was made of the requirement under RDC 2.3 (that all documents served in accordance with the RDC are to be in the English language), the principal problem for the defendant in this case appears to have been that it acknowledged service and submitted to the DIFC Court in its acknowledgment of service and did not at that time raise any issue concerning service. The Court considered it was unfair and unreasonable to set aside the claim form just because the defendant wished to see official documents served on it in another jurisdiction translated in the DIFC proceedings. The Court considered this to be a desperate effort to make the proceedings appear more complicated than they were: [18] – [21].

**1.6.5**

In *Carol v Chris* [2012] DIFC CFI 016 (9 September 2012) the CFI had to consider an appeal against a decision of the SCT that it had no jurisdiction to determine a claim by Carol for the payment of the third instalment of a discretionary incentive bonus. The defendants had contested the jurisdiction of the DIFC Courts to entertain the claim before the SCT and the Judge in the SCT held that the matter did not fall within Article 5A of the Judicial Authority Law and in any event was governed by Article 6 of the UAE Labour Law. The appeal was allowed and the order dismissing the proceedings for lack of jurisdiction was set aside. The Court then had to consider whether the proceedings should continue to a trial before the SCT or be determined summarily by the CFI: [20]. The Court considered that in accordance with the overriding objective the matter should be dealt with by the CFI (no reason of substance having been put before the Court as to why Carol had not been paid) and ordered that the third instalment of the bonus sum be paid: [25]–[29].

### Application By The Courts Of The Overriding Objective

**1.7**

The Courts must seek to give effect to the overriding objective when it—

    (1) exercises any power given to it by the Rules; or

    (2) interprets any Rule or Practice Direction subject only to the public interest.

### Duty Of The Parties

**1.8**

The parties are required to help the Courts to further the overriding objective.



**1.8.1**

In *Ibrahim Saad v Rasmala Investments Limited* [2009] DIFC CFI 007 (22 November 2009) the Court considered the duty of parties to assist the Court in furthering the overriding objective: [54]. The Court penalised the claimant in costs where he had simply ignored CMC directions for the exchange of witness statements. See further the commentary at 1.9.1.

Courts' Duty To Manage Cases
Duty of the parties to further the overriding objective

**1.9**

The Courts must further the overriding objective by actively managing cases including:

(1) encouraging the parties to co-operate with each other in the conduct of the proceedings;

(2) identifying the issues at an early stage;

(3) deciding promptly which issues need full investigation and trial and accordingly disposing summarily of the others;

(4) deciding the order in which issues are to be resolved;

(5) encouraging the parties to use an alternative dispute resolution procedure if the Courts considers that appropriate and facilitating the use of such procedure;

(6) helping the parties to settle the whole or part of the case;

(7) fixing timetables or otherwise controlling the progress of the case;

(8) considering whether the likely benefits of taking a particular step justify the cost of taking it;

(9) dealing with as many aspects of the case as it can on the same occasion;

(10) dealing with the case without the parties needing to attend at the Courts;

(11) making use of technology; and

(12) giving directions to ensure that the trial of a case proceeds quickly and efficiently.

**Court's duty to manage cases**
**1.9.1**

In *Ibrahim Saad v Rasmala Investments Limited* [2009] DIFC CFI 007 (22 November 2007) the Court had to consider a number of interim applications, including an application by the claimant to exclude the evidence of one of the defendant's witnesses on the grounds that the defendant was in breach of court rules to inform the court by a

specified date of its intention to rely on that witness's evidence. The claimant, however, had not observed previous orders; he was not ready and willing to exchange witness statements by the ordered date (or indeed an agreed extended date) and the claimant had made no application to the Court for an extension of time. The Court dismissed the claimant's application and considered that it was bound to fail: [43]. The defendant itself applied for an order that unless the claimant exchanged witness statements by a specified date the claimant would be debarred from adducing evidence at trial; this was subsequently amended so as to invite the Court to deal only with the costs consequences of that application: [20].

It was held that as at the date the defendant's application was filed there was no question that it was entitled to the order; the claimant was not in a position to exchange and had not applied for an extension; he had simply ignored the CMC direction: [50]. The Court observed that case management is a central feature of the RDC, under what was then RDC 1.8 (now RDC 1.9): [51]. The Court further held it must indicate as clearly as possible that the cavalier disregard of timetable orders will not be tolerated, since to do so would undermine the aims of case management and defeat the statutory objectives of the RDC, including RDC 1.6 (the Overriding Objective): [54].

The Court also noted that the parties have a duty to assist the Court under RDC 1.8 (then RDC 1.7) and that lawyers are under a separate professional duty to behave co-operatively: [54]. The Court must also take into account the claims of other litigants and the public interest in achieving the most efficient use of resources; the Court must avoid the waste of public resources and the inefficiency occasioned by the need to revisit interlocutory processes: [54]. The Judge made an order for disclosure of statements by 27 September 2009 and ordered that the claimant pay costs as a contribution towards the defendant's costs in bringing the unless order application: [58].

## PART 2
INTERPRETATION

### Authentic Text And Language Of Proceedings
**2.1**
The English text is the authentic text of these Rules.

**2.2**
All proceedings before the Courts shall be conducted in the English language.

**2.3**
All proceedings before the Courts shall be conducted in the English language.

**2.4**
Where any judgment, order or direction is to be served outside the DIFC in the UAE, unless the Courts otherwise direct:

(1) in proceedings on notice the parties must agree and lodge with the Courts an Arabic translation of the judgment, order or direction within 2 days of same being given, made or handed down as the case may be, in default of which the

Courts may accept one party's translation or suspend or revoke the judgment, order or direction on such terms as it thinks fit;

(2) in without notice proceedings the party seeking relief must provide an Arabic translation of the order sought and made;

(3) in the event of any inconsistency between the Arabic and English versions of any judgment, order or direction the English version shall prevail.

**Definitions**
**2.5**
Unless the context otherwise requires, the words and expressions set out in the Schedule to this Rule shall have the respective meanings assigned to each of them for all purposes in connection with these Rules.

**Rules Of Interpretation**
**2.6**
In these Rules, a reference to:

(1) a person includes any natural person, body corporate or body unincorporate, including a company, partnership, unincorporated association, government or state;

(2) the masculine gender includes the feminine;



(3) an obligation to publish or cause to be published a particular document shall, unless expressly provided otherwise in these Rules, includes publishing or causing to be published in printed or electronic form.

**2.7**
The headings in these Rules shall not affect their interpretation.

**2.8**
References to legislation in these Rules shall be construed in accordance with the following provisions:

(1) Federal Law is law made by the federal government of the State;

(2) Dubai Law is law made by the Ruler, as applicable in the Emirate;

(3) DIFC Law is law made by the Ruler as applicable in the DIFC;

(4) DIFC Regulations include any rules, regulations, bylaws, or orders relating to the Centre issued by the President or the Centre Bodies.

(5) these Rules are made by the Chief Justice of the DIFC Courts;

(6) legislation includes rules or regulations made under legislation;

(7) reference to a statutory provision includes a reference to the statutory provision as amended or re-enacted from time to time.





**2.9**

Pending the enactment of a DIFC Interpretation Act and subject to the express provisions of these Rules and any other DIFC legislation, the English Interpretation Act 1978 shall apply as far as necessary for the interpretation of these Rules as it applies to English subordinate legislation made after the commencement of that Act.

**Application Of The CPR And The Guide**
**2.10**

If no provision is made or no appropriate form is provided by the Rules or any law in force in the DIFC, the following rules of practice and procedure shall be followed and adopted:

(1) Such Rules as shall have been enacted;

(2) To the extent that no Rule or Practice Direction dealing with the matter shall have been enacted, with regard to the Court of First Instance, the Guide together with any prescribed forms with such changes as the Court considers appropriate to be applied in the circumstances;

(3) Insofar as the Guide does not deal with the matter or makes reference to the CPR, the CPR together with any prescribed forms with such changes as the Court considers appropriate to be applied in the circumstances;

(4) With regard to the Court of Appeal, Part 52 of the CPR and any associated practice directions, as therein defined, together with any prescribed forms with such changes as the Court considers appropriate to be applied in the circumstances.

(5) With regard to insolvency proceedings, the English Insolvency Rules 1986.

**Default rules of practice and procedure**
**2.10.1**

In *International Electromechanical Services Co. LLC v (1) Al Fattan Engineering LLC and (2) Al Fattan Properties LLC* [2012] DIFC CFI 004 (14 October 2012) the Court considered the scope of its inherent jurisdiction to grant a stay of a claim or breach of contract which contained an arbitration clause for a non-DIFC seated arbitration. Williams J, in reviewing RDC 2.10 (as well as Article 8(2) of the Application of Civil and Commercial Laws, Law No. 3 of 2004), held that it was permissible to refer to English law to determine the nature of the DIFC Court's inherent jurisdiction: [100]–[101].

The Court referred to the commentary in the White Book regarding the inherent jurisdiction of the High Court, which noted that the English Court's power to stay proceedings was an important practical illustration of the Court's inherent jurisdiction: [101]. It was held that the DIFC Court possesses an inherent jurisdiction to stay proceedings, codified in various provisions, including RDC 4.2(6) and RDC 12.7 as well as under Article 13 of the DIFC Court Law No. 10 of 2004: [98]–[99]. It was held, contrary to the 6 March 2012 judgment in *Injazat* (CFI 019/2010), that Article 7 of the Arbitration Law No. 1 of 2008 did not regulate the Court's jurisdiction to grant a stay of proceedings brought in breach of an agreement to arbitrate outside the DIFC: [104]–[111]. In the circumstances, the Court exercised its power to grant a stay of proceedings: [127]–[137].



**Time**
**2.11**
All dates shall be ascertained in accordance with the Gregorian calendar.

**2.12**
A period of time expressed as a number of days shall be computed as clear days. "Clear days" means that in computing the number of days—

(1) the day on which the period begins; and

(2) If the end of the period is defined by reference to an event, the day on which that event occurs are not included.

**2.13**
Where the specified period—

(1) is 5 days or less; and

(2) includes a day which is not a business day that day does not count.

**2.14**
Where the specified period is 6 days or more, both normal working days in the DIFC and non-working days in the DIFC shall be counted.

**2.15**
When the period specified—



(1) by these Rules; or

(2) by any judgment or Courts order,

for doing any act at the Registry ends on a day on which the Registry is closed, that act shall be in time if done on the next day on which the Registry is open.

**Dates For Compliance To Be Calendar Dates And To Include Time Of Day**
**2.16**
Where the Courts give a judgment, order or direction which imposes a time limit for doing any act, the last date for compliance must, wherever practicable

(1) be expressed as a calendar date; and

(2) include the time of day by which the act must be done.

**2.17**
Where a party is required by a Rule, Practice Direction, Judgment or Order to do any act on or before a particular date, the act must be done by 4pm on that date.

**2.18**
Where the date by which an act must be done is inserted in any document, the date must, wherever practicable, be expressed as a calendar date.







**Meaning Of 'Month' In Judgments, Etc.**
2.19
Where 'month' occurs in any judgment, order, direction or other document, it means a calendar month.

**Time Limits May Be Varied By Parties**
2.20
Unless these Rules provide otherwise or the Court orders otherwise, the time specified by a Rule or Practice Direction or by the Court for a person to do any act may be varied by the written agreement of the parties and the Court.

**Schedule to Part 2**

| Terms | Definitions |
|---|---|
| Affidavit | A written, sworn statement of evidence. |
| Arbitral Award | An award made in Arbitration proceedings under the DIFC Arbitration Law No.8 of 2004, DIFC Dispute Resolution Scheme, foreign awards, or any awards that satisfy the requirements of the Centre's laws. |
| Assessor | A person appointed under Article 18 of the Court Law. |
| Attorney General | The Attorney General of the Government of the Emirate of Dubai |
| Base Rate | The 1 month Emirates Interbank Offer Rate (EIBOR) |
| Business Day | A normal working day at the |
| DIFC Courts | Dubai International Financial Centre. |
| The Centre | Dubai International Financial Centre. |
| Centre Authority | Dubai International Financial Centre Authority. |
| Centre Bodies | Has the meaning given in Dubai Law No.9 of 2004. |
| Centre Establishments | Any entity or business duly established or carrying on activity in the Centre, including any Licensed Centre Establishment. |
| Chief Justice | The person appointed by the Ruler as Chief Justice of the DIFC Courts. |
| Claim for personal injuries | Proceedings in which there is a claim for damages in respect of personal injuries to the claimant or any other person or in respect of a person's death, and 'personal injuries' includes any disease and any impairment of a person's physical or mental condition. |
| Claimant | A person who makes a claim. |
| Contribution | A right of someone to recover from a third person all or part of the amount which he himself is liable to pay. |
| Counterclaim | A claim brought by a defendant in response to the claim-ant's claim, which is included in the same proceedings as the claimant's claim. |










| | |
|---|---|
| Courts or Court | The courts established in the DIFC, that is the Court of First Instance and/or the Court of Appeal. |
| Court Law or the Law | The DIFC Court Law No.10 of 2004. |
| Court Officer | A member of the Court staff. |
| CPR | English Civil Procedure Rules as up-dated from time to time. The full text of the CPR may be found at www.dca.gov.uk/civil/procrules_fin/index.htm |
| Cross-examination | Questioning of a witness by a party other than the party who called the witness. |
| Damages | A sum of money awarded by the Court as compensation to the claimant. |
| Defence of tender before claim | A defence that, before the claimant started proceedings, the defendant unconditionally offered to the claimant the amount due or, if no specified amount is claimed, an amount sufficient to satisfy the claim. |
| Defendant | A person against whom a claim is made. |
| Deputy Registrar | Deputy Registrar appointed under Article 16 of the Court Law. |
| DFSA | The Dubai Financial Services Authority. |
| DIFC | The Dubai International Financial Centre. |
| DIFCA | Dubai International Financial Centre Authority. |
| DIFC Court or the Court | The Court of First Instance (including any circuit or division), the Court of Appeal and Tribunals established in accordance Article 14(3) of the Court Law. |
| DIFC Courts Academy | The department of the DIFC Courts activities which deals, inter alia, with the provision of training programmes, both in English and in Arabic, on DIFC Court Law, procedure, advocacy training and other relevant topics. |
| Dubai Courts | The Emirate of Dubai Courts established pursuant to Dubai Law No.3 of 1992 in respect of the Formation of the Courts in Dubai. |
| Dubai Law No.7 | Dubai Law No.7 of 2011 in respect of the Dubai International Financial Centre. |
| Dubai Law No.9 | Dubai Law No.9 of 2004 in respect of the Dubai International Financial Centre. |
| The Emirate | The Emirate of Dubai. |
| Evidence in chief | The evidence given by a witness for the party who called him. |
| E-Filing | The Electronic Filing facility available on the DIFC Courts website used for the electronic submission of documents to the Registry. |

| | |
|---|---|
| Filing | In relation to a document, means delivering it, by post or otherwise, to the Registry. |
| The Financial Services Authority | Dubai Financial Services Authority. |
| The Government | The Government of the Emirate of Dubai. |
| The Governor | The Governor of the Dubai International Financial Centre |
| The Guide | The English Admiralty and Commercial Courts Guide 2006, as updated from time to time. The full text of the Guide may be found at: www.hmcourts-service.gov.uk/ publications/guidance/admiralcomm/index.htm |
| Indemnity | A right of someone to recover from a third party the whole amount which he himself is liable to pay. |
| Injunction | A Court order prohibiting a person from doing something or requiring a person to do something. |
| Joint liability | Parties who are jointly liable share a single liability and each party can be held liable for the whole of it. |
| Judge or Judges | Chief Justice and any Judges appointed under Article 9 of the DIFC Courts Law 2004. |
| Judge of the DIFC Courts | Chief Justice or any other Judge. |
| Judicial Authority Law | The Law of the Judicial Authority at Dubai International Financial Centre, Law No.12 of 2004. |
| Jurat | The jurat of an affidavit is a statement set out at the end of the document which authenticates the affidavit. The general form of jurat is set out in the Schedule to Part 29. |
| Jurisdiction | Unless the context requires otherwise, means the Dubai International Financial Centre. |
| Alternative Dispute Resolution | Collective description of methods of resolving disputes otherwise than through the normal trial process. |
| Limitation period | The period within which a person who has a right to claim against another person must start court proceedings to establish that right. The expiry of the period may be a defence to the claim. |
| Legal Representative | A person authorised to issue and conduct proceedings or to appear before the Court on behalf of others (as the context requires) who has been instructed to act for a party in relation to a claim. |
| Licensed Centre Establishments | Any entity licensed, registered or otherwise authorised to carry on financial and banking business including those activities and business referred to in Article 9 of Dubai Law No.9 or Dubai Law No.7 of 2011 in respect of the Dubai International Financial Centre. |




| | |
|---|---|
| **Official copy** | A copy of an official document supplied and marked as such by the Registry. |
| **The President** | The President of the DIFC. |
| **Privilege** | The right of a party to refuse to disclose a document or produce a document or to refuse to answer questions on the ground of some special interest recognised by law. |
| **Recognised Company** | A company that satisfies the requirements listed in Article 116 of the Companies Law, DIFC Law No.2 of 2009. |
| **Registrar** | Registrar appointed under Article 16 of the Court Law and includes, where the context requires, Senior Registrar(s), Deputy Registrar(s), Assistant Registrar(s), and whichever other Registrars the Chief Justice may deem appropriate to appoint in future. |
| **Registry** | The Registry of the DIFC Court established in accordance with Article 17(1) of the Court Law. |
| **Ruler** | H.H. Ruler of the Emirate of Dubai. |
| **Rules or Rules of Court** | The Rules of the Dubai International Financial Centre Courts 2007 or any re-enactment or modification thereof. |
| **Seal** | A seal is a mark which the Courts put on a document to indicate that the document has been issued by the Courts. |
| **Service** | Steps required by Rules of Courts to bring documents used in court proceedings to a person's attention. |
| **Set aside** | Cancelling a judgment or order or a step taken by a party in the proceedings. |
| **Several liability** | A person who is severally liable with others may remain liable for the whole claim even where judgment has been obtained against the others. |
| **The State or UAE** | The United Arab Emirates. |
| **Statement of Case** | (1) A claim form, particulars of claim where these are not included in a claim form, defence, additional claim notice, or reply to defence; and (2) Any formal written further in-formation given in relation to a statement of case, whether given voluntarily or by court order. |
| **Stay** | A stay imposes a halt on proceedings, apart from taking any steps allowed by the Rules or the terms of the stay. Proceedings can be continued if a stay is lifted. |
| **Strike out** | Striking out means the Courts ordering written material to be deleted so that it may no longer be relied upon. |
| **Tribunal** | Tribunal established by the Chief Justice of the DIFC Courts under Article 14(3) of the Court Law. |



# PART 3
## ORGANISATION OF THE COURT

**Power Of Judge Or Registrar To Perform Functions Of The Court**
**3.1**
Where these Rules provide for the Court to perform any act then, except where an enactment, Rule or Practice Direction provides otherwise, that act may be performed by any Judge or Registrar.

**Allocation Of Cases To Levels Of Judiciary**
**3.2**
Only the Registrar may make the orders specified in Rules 3.6 to 3.13. Wherever the Registrar has jurisdiction, he may refer the matter to a Judge instead of dealing with it himself.

**3.3**
Subject to Rules 3.6 and 3.7 search orders (Rule 25.1(8)), freezing orders (Rule 25.1(6)), an ancillary order under Rule 25.1(7) and orders authorising a person to enter land to recover, inspect or sample property (Rule 25.1(4)) may only be made by a Judge.

**3.4**
Where the Court has made a freezing order under Rule 25.1(6) and has ordered a person to make a witness statement or affidavit about his assets and to be cross-examined on its contents, unless the Judge directs otherwise, the cross-examination may take place before the Registrar, or if a Judge or the Registrar directs, before an examiner of the Court.

**3.5**
Except where paragraphs 3.6, 3.7 or 3.9 apply, injunctions and orders relating to injunctions, including orders for specific performance where these involve an injunction must be made by a Judge.

**3.6**
Except where paragraph 3.9 applies, the Registrar may only make an injunction

(1) in cases of urgency where no Judge can be made available within the timescale requested by the applicant and then only:

(a) if the Registrar considers it necessary in the interests of justice; and

(b) to the extent necessary to preserve the status quo until such time as a judge can made available;

(2) in terms agreed by the parties;

(3) in connection with or ancillary to a charging order;

(4) in connection with or ancillary to an order appointing a receiver by way of equitable execution.






**3.7**

The Registrar may make an order varying or discharging an injunction or undertaking given to the Court if all parties to the proceedings have consented to the variation or discharge.

**3.8**

The Registrar may not make orders or grant interim remedies:

    (1) relating to a claim for judicial review, except for interim applications;

    (2) relating to any appeal, except as provided in FRDC 44.148 / ARDC 44.123

**3.9**

The Registrar may, subject to any Practice Direction, try a case with the consent of the parties. Restrictions on the trial jurisdiction of the Registrar do not prevent him from hearing applications for immediate judgment or, if the parties consent, for the determination of a preliminary issue.

**3.10**

The Registrar may assess the damages or sum due to a party under a judgment without limit as to the amount.

**3.11**

With the consent of the Chief Justice, the Registrar may:



    (1) approve compromises on behalf of a person under a disability and on behalf of absent, unborn and unascertained persons;

    (2) make declarations;

    (3) make final orders under article 28(3) or article 30(6) of the Trust Law, DIFC Law 11 of 2005, except for the removal of protective trusts where the interest of the principal beneficiary has not failed or determined;

    (4) where the proceedings are brought by a Part 8 claim form, determine any question of law or as to the construction of a document which is raised by the claim form;

    (5) give permission to executors, administrators and trustees to bring or defend proceedings or to continue the prosecution or defence of proceedings, and grant an indemnity for costs out of the trust estate, in straightforward cases;

    (6) grant an indemnity for costs out of the assets of a company on the application of minority shareholders bringing a derivative action, in straightforward cases.

**3.12**

Where a winding-up order has been made against a company, any proceedings against the company by or on behalf of debenture holders may be dealt with by the Registrar.






**3.13**

Subject to Rules 3.3 to 3.12 and to any other Rule or Practice Direction, the Registrar may exercise the chambers jurisdiction of the Court.

**Court Staff**
**3.14**

Where these Rules require or permit the Court to perform an act of a formal or administrative character, that act may be performed by a Court Officer.

**3.15**

A requirement that a Court Officer carry out any act at the request of a party is subject to the payment of any fee required by a fees order for the carrying out of that act.

**II PRACTICE DIRECTIONS**
**3.16**

Directions as to the practice and procedure of the Court may be made by the Chief Justice.

**3.17**

These Rules may, instead of providing for any matter, refer to provision made or to be made about that matter by directions.

**3.18**

The power of the Chief Justice to make directions under **Rule 3.16** includes power to vary or revoke directions made by him or any other person, and to make different provision for different cases or different areas, including different provision for a specific court, circuit or tribunal, or for specific proceedings, or a specific jurisdiction, specified in the directions.

**3.19**

References in **Rules 3.16** and **3.18** to the Chief Justice include any person authorised by him to act on his behalf.

**III COURT DOCUMENTS**
**Court Documents To Be Sealed**
**3.20**

The Court must seal the following documents on issue:

    (1) all process issued by the Court;

    (2) any order issued by the Court; and

    (3) any other document which a Rule or Practice Direction requires it to seal.

**3.21**

The Court may place the seal on the document:

    (1) by hand; or

    (2) by printing a facsimile of the seal on the document whether electronically or otherwise.



**3.22**

A document purporting to bear the Court's seal shall be admissible in evidence without further proof.

**Court Documents To Be Signed**
**3.23**

The following documents must be signed on issue by a Judge or the Registrar or by a Court Officer acting with the authority of the Registrar:

(1) all process issued by the Court;

(2) any order issued by the Court; and

(3) any other document which is required by a Rule or Practice Direction to be so signed.

**IV VENUE AND SITTINGS**
**Court's Discretion As To Where It Deals With Cases**
**3.24**

The Court may, with the consent of the parties, deal with a case at any place that it considers appropriate and may at any stage of the proceedings direct that:

(1) the proceedings or a part of the proceedings be conducted or continued at a place specified in the order, subject to such conditions as the DIFC Court may impose;

(2) the Court Law shall continue to apply to the proceedings in that venue; and

(3) these Rules shall continue to apply.

**Court Registry**
**3.25**

The Court Registry is located at the Ground Floor, Building 4, Gate District, Dubai, UAE.

**Sittings Of The Court**
**3.26**

Sittings of the Court will take place on dates to be published on the Court's website (www.difccourts.ae) and on such other dates as may be specified by the Chief Justice or the Registrar on his behalf.

**3.27**

In the interest of justice, the Court may hear an application by video link, telephone, electronic device or other appropriate means. Attention is drawn to the Video-conferencing Protocol and the guidance on telephone hearings at Schedules B and C to Part 23.

**3.28**

Sittings of the Court will generally take place in the courtroom located at the Ground Floor, Building 4, The Gate District, Dubai, UAE.



**V COMMUNICATING WITH THE COURT BY E-MAIL**
**3.29**
Guidance on communicating with the Court by e-mail is set out in the Schedule to this Part.

**Schedule to Part 3**
**Communicating with the Court by E-mail**

**Documents For Which E-Mail May Be Used**
1. Where possible, parties should file documents online using the Courts' e-filing system. Where that is not possible, save as set out in paragraphs 3 and 4 below, e-mail may be used to communicate with the Registry in relation to any matter.

1A. Should E-mail be used for the submission of inter alia, documents, materials and information that require the payment of an accompanying fee, the submitted email's contents and attachments will be considered incomplete and thus unprocessed by the Registry until the requisite fee has been paid and received by the Courts in full.

**Restrictions**
2. A party should not use e-mail to issue a claim unless the procedure set out at RDC 9.64 applies, although parties are encouraged to use the e-filing facilities available using www.difccourts.ae.




2A. A party should not use email to file bundles prepared for hearings. Email may be used to make minor additions (of 20 pages or less) to any bundles already lodged with the Court, but they must be accompanied by clear instructions as to where such additions are to be inserted.

3. A large document may not be sent by email. A large document is

    (a) any document which, when scanned as a PDF file, exceeds 10MB in size; or,

    (b) any document which is incapable of being scanned in accordance with paragraph 16 below.

4. Where a party sends or lodges a document by e-mail he should still comply with any Rule or Practice Direction requiring the document to be served on any other person.

5. Nothing in this Schedule shall affect or otherwise alter any obligation on a party or his legal representative to file any document or bundle of documents with the Court or to serve any document or bundle of documents on any other party, but only the manner in which documents are filed with the Court.

6. Nothing in this Section requires any person to accept service of a document by email.





**Sending E-Mails To The Court**

7. For all correspondence for the Registry, the address is: registry@difccourts.ae

**The Subject Line**

8. The subject line of the e-mail should contain only the following information which should be in the following order:

    (a) First, the claim number;

    (b) Second, the proper title of the claim (abbreviated as necessary) with the claimant named first and the defendant named second.

**Form And Content Of The E-Mail**

9. Any e-mail filing with the Court must include the following information in the covering e-mail itself:

    (a) the name of the individual who has sent the e-mail and his firm;

    (b) the fullest possible contact details for the individual and the firm of which he is a member, ordinarily to including—

        (i) the full postal address;

        (ii) a landline telephone number (and a direct number if possible);

        (iii) a fax number (if applicable);

        (iv) a professional e-mail address;

        (v) a business mobile or cellular telephone number (if applicable);

        (vi) the name of an alternative person who may be contacted if the originator of the e-mail is unavailable;

    (c) a short description of each document which is being filed with the Court as an attachment to the e-mail;

    (d) if appropriate, the name of the Judge before whom the e-mail and any attachment is intended to be placed.

10. Any e-mail message sent to the Court must be in plain text and not in rich text or HTML format.

11. Where a party files a document by e-mail, he should not send a hard copy in addition, unless there are good reasons for so doing or a Rule or the Court requires it.

12. Where a time limit applies, it remains the responsibility of the party to ensure that the document is filed in time. Parties are advised to allow for delays or downtime on their server or the servers used by the Court.







**Attachments**

13. Any attachment must comply with the following technical requirements:

  (a) in order to preserve the legibility and original pagination of documents filed by e-mail all documents filed electronically with the Court must be sent as a PDF file attachment (unless otherwise directed). Any document purporting to be filed by e-mail in any other format shall be treated by the Court as not having been received or filed; and

  (b) all documents e-mailed to the Court must be scanned as A4 pages with margins of at least 1 inch. All documents prepared by the parties for filing with the Court electronically should be paginated. Documents prepared using Word, WordPerfect or other software packages should be converted to PDF format either by scanning a physical copy of the document, or by using a PDF printer driver.

**Receipt Of E-Mail By The Court**

14. A document is not filed until the e-mail is received by the Court at the addressee's computer terminal, whatever time it is shown to have been sent.

15. The time of receipt of an e-mail at the addressee's computer terminal will be recorded.

16. If an e-mail is received after 4 p.m. it will be treated as having been received on the next day the Court office is open.

17. Where a party makes an application by filing an application notice by email and that application attracts a fee, save in cases of extreme urgency, the application will not be considered filed until the fee is paid.

18. The Registry will ackowledge receipt of emails. If a response to the subject matter of the e-mail is not received within a reasonable period, the sender should assume that the Court has not received it and should send the e-mail again, or file the document by another means.

19. Parties should not telephone to enquire as to the receipt of an e-mail. They should observe the procedure set out in paragraph 18.

20. Exceptionally, if a document which is filed with the Court by email requires urgent attention, a party may contact the Court by telephone, but such contact should be rare.

**Replies To E-Mails Sent To The Court**

21. The Court will normally send any reply by e-mail to documents or correspondence sent by e-mail.

  (a) All replies will be sent to the e-mail address from which the e-mail has been sent. If the sender wishes the reply to be copied to other parties or to another e-mail address used by the sender of the message, such e-mail addresses must be specified in the copy line.



(b) The Court will not send copies to clients or others not on the record; the copy line must therefore not contain the addresses of such persons.

(c) The e-mail should also contain in the body of the e-mail the name and telephone number of the sender.

22. It is important that legal representatives consider putting in place a system to deal with the absence of the individual who has sent the e-mail and to whom the Court will ordinarily reply. Two possible solutions are:

(a) a central mail box within each firm, either from which the e-mail is sent to the Court (and which will therefore receive the reply) or to which it is copied by the individual sender who sends it direct to the Court (and who will receive a copy of the reply);

(b) a second individual e-mail address within the firm to which the reply will be copied so that any reply can be monitored.

## PART 4
### THE COURT'S CASE MANAGEMENT POWERS

**The Court's Case Management Powers**
**4.1**

The list of powers set out below is in addition to any powers given to the Court by any other Rule or Practice Direction or by any other enactment or any powers it may otherwise have.

**4.2**
Except where these Rules provide otherwise, the Court may:

(1) extend or shorten the time for compliance with any Rule, Practice Direction or Court order (even if an application for extension is made after the time for compliance has expired);

(2) adjourn or bring forward a hearing;

(3) require a party or a party's legal representative to attend the Court;

(4) hold a hearing and receive evidence by telephone or by using any other method of direct oral communication;

(5) direct that part of any proceedings (such as a counterclaim) be dealt with as separate proceedings;

(6) stay the whole or part of any proceedings or judgment either generally or until a specified date or event;

(7) consolidate proceedings;






(8) try two or more claims on the same occasion;

(9) direct a separate trial of any issue;

(10) decide the order in which issues are to be tried;

(11) exclude an issue from consideration;

(12) dismiss or give judgment on a claim after a decision on a preliminary issue;

(13) order any party to file and serve an estimate of costs; or

(14) take any other step or make any other order for the purpose of managing the case and furthering the overriding objective.

**General powers of management**
**4.2.1**
The Court has power to extend or shorten, prospectively or retrospectively, time limits set by rules, practice directions or orders of the Court: RDC 4.2(1). In *Dr. Lothar Ludwig Hardt and Hardt Trading FZE v DAMAC (DIFC) Company Limited et al* [2009] DIFC CFI 036 (4 April 2010) the Court exercised this power retrospectively in respect of the defendants' application to dispute the Court's jurisdiction. RDC 12.4 requires an application disputing the Court's jurisdiction to be made within 14 days after filing an acknowledgment of service. RDC 23.20 (at the time RDC 23.21) requires that where an application is to be made within a specified time, it is so made if the application notice is received by the Court within that time. In this case, the acknowledgment of service was filed on 7 January 2010. Accordingly, an application for a declaration of no jurisdiction had to be received by the Court by 17:00 on 21 January 2010. Although the defendants' solicitors had transmitted on 21 January 2010 at 15:59 to the DIFC Court Registry by email an application notice and draft order, that email did not arrive on the Registry's apparatus until 08:00 on 22 January 2010. Accordingly, the application had not been received in the period required by RDC 12.4: [25]. The Court, however, concluded that in the circumstances it would be unacceptably disproportionate not to extend time and the Court ordered a retrospective extension of time to 17:30 on 24 January 2010: [30]–[31].



An application to extend time for appealing by some four months was refused by Evans CJ in written reasons dated 10 June 2010 in *Anna Dadic v Orion Holdings Overseas Limited* (CFI 007/2008) as the explanations for the delay were "*clearly inadequate*" and a considerable amount of activity had taken place in the meantime, which would be undermined by the grant of permission out of time.

**4.2.2**
The Court has power to adjourn hearings and trials under RDC 4.2(2). Courts will approach an application for an adjournment with a considerable degree or caution, if not scepticism, where a case is largely ready for trial, counsel is instructed and have flown into the jurisdiction and skeleton arguments have been exchanged: *Corinth Pipeworks SA v Barclays PLC v (1) Afras Limited and (2) Radhakrishnan Nanda Kumar* [2010] DIFC CFI 024 (23 April 2014) at [9]. In that case Steel J noted that the expenses of an adjournment would be very substantial in the circumstances and the Court should





only contemplate it if it was really necessary to achieve justice between the parties. It was held that this was not a case in which an adjournment was necessary to achieve justice between the parties: see [24] – [29].

### 4.2.6

The Court has power to grant a stay of proceedings under RDC 4.2(6). In *Allianz Risk Transfer AG Dubai Branch v Al Ain Ahlia Insurance Company PJSC* [2012] DIFC CFI 012 (30 April 2013) the Court dismissed an application by the defendant to stay proceedings on the basis that a foreign court might accept jurisdiction in relation to a dispute: [30]. The Court considered it premature to take a jurisdictional conflict to the Union Supreme Court pending a determination by an Abu Dhabi Court as to whether it had jurisdiction to deal with the substantial dispute. To the extent that to allow both proceedings to continue would result in increased costs, the Court noted that it was not in a position to review the legal system in the UAE or suggest a better way of dealing with the matter; this was, however a risk which both parties had brought onto themselves by failing to agree on a jurisdiction clause in their contract: [31]–[32].

A similar result was reached in *Investment Group Private Limited v Standard Chartered Bank* [2015] DIFC CA 004 (19 November 2015). In that case the Court of Appeal considered IGPL's application for a stay of proceedings on the basis that there were proceedings pending before the Union Supreme Court. It was common ground that a stay would be granted on case management rounds only in rare and compelling cases and that the burden of providing that this was such a case fell on the applicant. The Court of Appeal held that the existence of parallel proceedings in both the DIFC and Sharjah was only the starting point; the relative maturity of the foreign proceedings is a decisive consideration in considering whether to grant a stay: [76]–[77]. In the circumstances the Court held that a stay would not be appropriate.



There is conflicting first instance authority as to the circumstances in which the Courts may exercise a residual jurisdiction under RDC 4.2 to grant a stay in support of arbitration proceedings. In the case of *Injazat Capital Limited and Injazat Technology Fund B.S.C. v Denton Wilde Sapte & Co (a firm)* [2010] DIFC CFI 019 (7 March 2012) Steel J had to decide whether the Court could grant a stay of proceedings pursuant to RDC 4.2 on the grounds that the claim was subject to an arbitration clause invoked at the defendant's option for arbitration in London under the auspices of the LCIA. A mandatory stay of proceedings provided for by Article 13 of the DIFC Arbitration Law No. 1 of 2008 was not applicable as this was a non-DIFC seated arbitration. The Judge held, as Law No. 1 stated in terms which provisions applied to non-domestic arbitrations (Article 7) and declared that the Court's powers were in those cases restricted to the powers stated in the Law (Article 10), the "detailed and precise" legislation precluded applications for a discretionary grant of a stay under the RDC: [38].



*International Electromechanical Services Co. LLC v (1) Al Fattan Engineering LLC and (2) Al Fattan Properties LLC* [2012] DIFC CFI 004 (14 October 2012) did not, however, follow the *Injazat* case. Williams J held that the DIFC Court possesses an inherent jurisdiction to stay proceedings, codified in various provisions, including RDC 4.2(6) and RDC 12.7 as well as under Article 13 of the DIFC Court Law No. 10 of 2004: [98]–[99]. The Judge held, contrary to *Injazat*, that Article 7 of the Arbitration Law No. 1 of 2008 did not regulate the Court's jurisdiction to grant a stay of proceedings brought in breach of an agreement to arbitrate outside the DIFC: [104]–[111]. In the circumstances, the Court exercised its power to grant a stay of proceedings: [127]–[137].



In *Georgia Corporation v Gavino Supplies* [2016] DIFC ARB 005 (11 October 2016) Giles J considered an application made by the defendant for a stay of proceedings pending a second arbitration. The claimant had obtained an arbitral award in its favour and brought an application for recognition and enforcement. The defendant has triggered second arbitration proceedings seeking an account and other remedies from the claimant. The Court refused to grant a stay. The award from the first arbitration was not being challenged and the outcome of the second arbitration was distant and speculative: [64]-[74].

**4.3**

When the Court makes an order, it may:

(1) make it subject to conditions, including a condition to pay a sum of money into Court; and

(2) specify the consequence of failure to comply with the order or a condition.

**4.4**

The Court may order a party to pay a sum of money into Court if that party has, without good reason, failed to comply with a Rule or Practice Direction.

**4.5**

When exercising its power under **Rule 4.4** the Court must have regard to:

(1) the amount in dispute; and

(2) the costs which the parties have incurred or which they may incur.

**4.6**

Where a party pays money into Court following an order under Rules 4.3 or 4.4 the money shall be security for any sum payable by that party to any other party in the proceedings.

**4.7**

A power of the Court under these Rules to make an order includes a power to vary or revoke the order.

**Varying and revoking orders**
**4.7.1**

Where an interim decision has been made, a party cannot *"fight to vary an order which has already been fought unless there has been some significant change in circumstances"*: reasons in support of the 11 February 2016 order in V*annin Capital PCC PLC v Rafed Al Khorafi & Ors* (CFI 036/2014) at [40]-][42], following the English procedural approach in *Chanel v Woolworth* [1981] 1 WLR 485.

**Court Officer's Power To Refer To A Judge**
**4.8**

Where a step is to be taken by a Court Officer:

(1) the Court Officer may consult a Judge before taking that step;

(2) the step may be taken by a Judge instead of the Court Officer.

**Court's Power To Make Order Of Its Own Initiative**
**4.9**
Except where a Rule, Practice Direction or some other enactment provides otherwise, the Court may exercise its powers on an application or of its own initiative.

**4.10**
Where the Court proposes to make an order of its own initiative:

(1) it may give any person likely to be affected by the order an opportunity to make representations; and

(2) where it does so it must specify the time by and the manner in which the representations must be made.

**4.11**
Where the Court proposes:

(1) to make an order of its own initiative; and

(2) to hold a hearing to decide whether to make the,

it must give each party likely to be affected by the order at least 3 days' notice of the hearing.

**4.12**
The Court may make an order of its own initiative, without hearing the parties or giving them an opportunity to make representations.

**4.13**
Where the Court has made an order under **Rule 4.12**—

(1) a party affected by the order may apply to have it set aside, varied or stayed; and

(2) the order must contain a statement of the right to make such an application.

**4.14**
An application under **Rule 4.13(1)** must be made:

(1) within such period as may be specified by the Court; or

(2) if the Court does not specify a period, not more than 7 days after the date on which the order was served on the party making the application.

**Power To Strike Out A Statement Of Case**
**4.15**
In **Rules 4.16** to **4.24**, reference to a statement of case includes reference to part of a statement of case.



**4.16**

The Court may strike out a statement of case if it appears to the Court:

(1) that the statement of case discloses no reasonable grounds for bringing or
defending the claim;

(2) that the statement of case is an abuse of the Court's process or is otherwise
likely to obstruct the just disposal of the proceedings; or

(3) that there has been a failure to comply with a Rule, Practice Direction
or Court order.

**Striking out a statement of case**
**4.16.1**
The degree of overlap between RDC 4.16(1) and RDC 24.1 (immediate judgment) was
noted in the 12 February 2018 judgment of Giles J in *Nest Investment Holding Lebanon
SAL & Ors v Deloille & Touche M.E. & Joseph El Fadl* (CFI-027-2016). There is a
common approach under either rule, subject to questions of fact in an evidence-based
application under RDC 24.1, and to the additional requirement in RDC 24.1(2).

In *Ahmed Mohamed Abdel Aziz Saleh v Chartis Memsa Insurance Company* [2011] DIFC
CFI 021 (5 July 2012) the claimant claimed damages and other monetary sums due under
a contract of employment of which it was alleged that the defendant was in breach by
its unlawful termination. A claim in tort based on the manner in which the defendant
conducted the claimant's employment was also pleaded. Save for the claim for wrongful
dismissal and the monetary remedies based on it, the defendant succeeded in having
all heads of claim struck out as either founding no cause of action (e.g. in relation to a
claim for unfair dismissal: [48]; and in relation to the claimant's claim for a "fine" as a
remedy: [51]) or as having no realistic prospect for success (e.g. the claim for overtime
payments: [53]; the claim for certain out of pocket expenses: [59]): [65].



Even if a statement of case is struck out for disclosing no reasonable grounds (or
because there has been a failure to comply with a rule), the exercise of that jurisdiction
is not a holding that the Court has no jurisdiction. Even if the pleading of a case is
defective, there is a claim or action; the claim is not a fiction and it exists as such in
the Court in which its fate is to be debated and ruled upon: *Kischanchand Gangaram
Bhatia v ICICI Bank Limited* [2014] DIFC CFI 018 (30 October 2014) at [25]–[26].



In *Shihab Khalil v Shuaa Capital PSC* [2009] DIFC CFI 017 (7 December 2009) the Court
struck out a claim for breach of the defendant's alleged duty of care on the basis that
it had no realistic prospect of success. Whilst not expressly decided under RDC 4.16 or
RDC 24, it appears that the outcome would have been the same on either approach. The
claimant, a minority shareholder in a company known as Orion Holding Overseas Ltd,
alleged (inter alia) that the defendant, a 20% shareholder in OHO with management
control of OHO, owed him a duty of care in tort. The Court observed that the claimant
was inviting it to extent the application of the law of negligence so as to invite a well-
established remedial principle of company law in circumstances where the claimant put
forward no explanation for his failure to take the normal course of action of a derivative
action: [39]. The Court held that, while claims involving difficult issues of law should not
be struck out, particularly where those issues are fact-sensitive, the fact that a claim

attempts to extend the law of negligence into an area far outside anything previously contemplated by common law courts does not provide a licence for pursuing litigation where the Court concludes that the attempt has no realistic chance of success: [40].

**4.16.2**
The circumstances in which a case may be struck out or stayed as an abuse of process are many and varied. Equally, however, there are many examples of strike out applications for abuse of process which fail on the facts of the case.

It is sometimes argued that the bringing of separate proceedings to claim separate remedies in relation to the same underlying dispute amounts, or may in future proceedings amount, to an abuse of process. In *Theron Entertainment LLC v MAG Financial Services LLC* [2015] DIFC CFI 021 (11 May 2017) the claimant sought a declaration of termination of a tenancy agreement, return of cheques and damages. The defendant argued that the Court should refuse to accept the claim for damages as this could have been brought in previous proceedings which the claimant had brought for specific performance of the defendant's obligations under the tenancy pertaining to change of use. The Court dismissed the defendant's challenge to the damages claim on the grounds of abuse of process. The Court considered a denial of the claimant's right to access the Court, especially taking into account that the defendant had failed to establish that the present claim involved unjust harassment or oppression: [96].

On the issue of collateral attack, reference was made to the commentary in the English White Book, and the decision of the Privy Council in *Crawford Adjusters (Cayman) Limited v Sagicor General Insurance (Cayman) Limited* [2013] UKPC 17, [2014] AC 366 at [62]-[62], in the *ex tempore* reasons given by Sir Jeremy Cooke on 13 December 2017, and issued on 7 February 2018, in support of orders made in *GFH Capital Limited v David Lawrence Haigh* (CFI-020-2014): [55]-[71]. Various amendments to his defence and counterclaim proposed by Mr Haigh were also disallowed (at [105] on the basis that they amounted to a collateral attack on the decision-making processes of a competent court – namely, the onshore Dubai courts – following *Hunter v Chief Constable* [1981] AC 529.

The reasons given by Hwang CJ on 15 August 2010 in *Anna Dadic v Orion Holdings Overseas Limited (in liquidation)* (DFI 007/2008) contain a discussion of the English authorities at [10]-[13] on *Henderson v Henderson* abuse of process, in the context of a new application for permission to appeal which raised grounds which could have been raised in the earlier application. See further paragraph 44.5.1 below.

In *DNB Bank ASA v (1) Gulf Edyadah Corporation and (2) Gulf Navigation Holdings PJSC* [2015] DIFC CA 007 (25 February 2016) DNB had obtained judgment in England against the Gulf parties for the sum of USD8.7m plus costs. DNB sought to enforce the English court's order in the DIFC. It was the Gulf parties' case that the DIFC Courts lacked jurisdiction. They also asserted that the DIFC claim was an abuse of process, relying both on uncontested evidence that they had no assets in the DIFC nor any intention of bringing any into the DIFC and on DNB's acknowledgment that the DIFC Court was being used as a conduit jurisdiction. The Court of Appeal dismissed Gulf's abuse of process submissions. The Court held that they had not demonstrated that the enforcement of the English order would be manifestly unfair to them nor that the recognition and enforcement of the English order would bring the administration of

justice into disrepute. DNB had not brought vexatious proceedings by concurrently pursuing several enforcements of the same order in different jurisdictions; but rather, there was a benefit attainable by DNB once it obtained a local judgment upon recognition and enforcement of the English order. The use of the DIFC Courts as a conduit jurisdiction was thus not an abuse of process: [130]–[133].

In *DIFC Investments LLC v Mohammed Akbar Mohammed Zia* [2017] DIFC CFI 001 (15 May 2017) the claimant brought a part 8 claim seeking a declaration that contracts between the parties relating to the intended sale of various apartments had been or were to be terminated. The defendant argued that the use of the part 8 procedure was an abuse of process and sought dismissal of the claim. The claimant had only claimed declaratory relief; it had not claimed damages or the security deposit payable by the defendant under the contracts, but had reserved the right to claim compensation for the defendant's breaches of contract. The defendant argued that the claimant had brought a claim for declaratory relief only in order to avoid paying a higher court fee and that the claimant intended to use any declaration received to bring subsequent claims against him. The Court rejected the submission that the proceedings were an abuse of process. The Court held that any application of *res judicata* to findings made in the present case was an issue to be addressed in any subsequent proceedings; the defendant's case on abuse of process in this regard was hypothetical: [75].




In *Ahmed Zaki Beydoun v (1) Daman Real Estate Capital Partners Limited and (2) Asteco Property Management LLC* [2012] DIFC CFI 032 (10 July 2014) the Court had to consider an application made by the first defendant to strike out a claim in very unusual circumstances. The claimant had already obtained judgment against the first defendant, which decision was upheld on appeal; the first defendant had, however, applied successfully to re-open the appeal hearing. The first defendant asserted that the claimant had never had any title to sue under the sale and purchase agreement following an alleged assignment by the claimant of the SPA. The hearing of the first defendant's strike out application took place a few days before the Court of Appeal heard argument in the re-opened appeal. Colman J considered that the first defendant had to establish (i) that the claim is and had always been hopeless on grounds that had never previously been argued and (ii) that the claimant put forward the claim in the first place knowing it to be hopeless or, possibly, reckless as to whether it was hopeless or not: [34]. The Court dismissed the strike out application, holding that it was only in very rare cases that a trial court would entertain applications to strike out a claim after the commencement of the trial. Given the delay in bringing the application, this was not one of those very rare cases where the Court should depart from its normal practice on striking out: [45].

In *Gavin v Gaynor* [2015] DIFC CFI 017 (3 April 2016) the claimant's claim for the appointment of an arbitrator was stayed, pending the outcome of an appeal in California, on the grounds that the claim in the DIFC was an abuse of process. A Californian court had granted an order compelling arbitration of the claims between the parties in California. The claimant in the DIFC proceedings, however, was appealing that decision of the Californian court and arbitrators had not yet been appointed in California. The DIFC Court considered that the subject matter in both proceedings were strongly connected and hard to separate. Accordingly, it was appropriate to dismiss the claimant's claim in the DIFC based on an abuse of process; however, the DIFC Court instead ordered a stay of the DIFC claim pending the determination of the appeal in California.



In *Tavira Securities Limited v (1) Re Point Ventures Fzco (2) Jai Narain Gupta (3) Mayank Kumar (4) Saroj Gupta* [2017] CFI 026 (17 December 2017) the defendants challenged the jurisdiction of the DIFC Courts to hear and determine the claimant's claim for damages for breach of contract. The basis of this challenge was two-fold: first, that on a proper construction of gateway (a) there was no jurisdiction; secondly, in the alternative, that the Court should decline jurisdiction on *forum non conveniens grounds*. The defendants applied to strike out the claim as an abuse of process under the Court's inherent jurisdiction. The application challenging jurisdiction was dismissed. The Judge doubted that in the circumstances there was room for the operation of the Court's inherent jurisdiction to protect its process where the Court finds that it has jurisdiction under Article 5(A)(1) of the Judicial Authority Law: [44]. In any case, even if the Court had power to strike out a claim over which it had jurisdiction, the Court would not exercise that power in this case; there was nothing abusive about the claim being tried in the DIFC Courts, assuming that there are no good reasons to stay the proceedings pursuant to the *forum non conveniens* doctrine: [44].

In *Ziad Azzam v Deyaar Development PJSC* [2015] DIFC CFI 024 (9 December 2015) the Court dismissed the Claimant's claim for an injunction restraining the defendant from pursuing proceedings in a Dubai Court and for a declaration that the DIFC Court had exclusive jurisdiction and that the claim in the Dubai Court was an abuse of process. The DIFC Court accepted that it had exclusive jurisdiction over the present claim and the claim sought to be brought in the Dubai Court; there was no material difference between the subject matter of a previous claim adjudicated by the DIFC Courts in *Taaleem PJSC v (1) National Bonds Corporation PJSC and (2) Deyaar Developments PJSC* [2010] CFI 014. Nevertheless, to grant an injunction and to seek to decide questions of jurisdiction to the exclusion of the Dubai Court was unlikely to be helpful; nor was it appropriate to make a declaration asserting abuse of process: [25]–[29].

In *TVM Capital Healthcare Partners Limited v Ali Akbar Hashemi* [2012] DIFC CFI 045 (22 May 2014) a substantive defence of abuse of process (rather than an application to strike out under RDC 4.16) was considered in relation to a claim for breach of a confidentiality agreement. The defendant submitted that the claimant sought to relitigate issued which had been decided against it in Abu Dhabi criminal proceedings and that by doing so it further wasted the defendant's limited resources, discredited him and his partners which had been brought for the purposes of unlawfully limiting competition and maintaining market share in the field of long-term medical care: [131]. Those allegations were not, however, put to the claimant's witnesses; nor did the defendant give evidence to support the suggested ill-effects of the proceedings: [132]. The Judge rejected those submissions and the defence of abuse of process failed: [133]–[136]. The Judge observed that it was not easy to see how a civil claim for breach of contract or of the Law of Obligations could have been included in the criminal proceedings.

### 4.16.3

In *(1) Roberto's Club and (2) Emain Kadrie v Paolo Roberto Rella* [2013] DIFC CFI 019 (3 March 2014) the defendant made an application for an order requiring that unless the claimants provided information and documents previously requested, then the claimants' claim and defence to counterclaim be struck out without further notice. Chadwick DCJ noted that strike out is a draconian sanction a claim or defence for failure to comply with an order and the power to strike out a statement of case is

not to be exercised lightly: [19]. The Judge also noted that the unless order was itself draconian. He held that in those circumstances it was necessary for the Court, before making an unless order which would lead to strike out of pleadings, to be satisfied that there had been a contumacious failure to comply with a court order sufficient to justify the sanction of strike out: [20]. The Judge refused to make the order given that the information requested was either unreasonably extensive, unnecessary for the resolution of the proceedings (or at least premature) or irrelevant: [23]–[31].

In *Amjad Hafeez v Damac Park Towers Company Limited* [2014] DIFC CFI 002 (30 June 2014) the defendant applied to strike out the claimant's particulars of claim and/or for immediate judgment pursuant to RDC 24.1. The basis on which the defendant applied to strike out the particulars was that the claimant had failed to give details of the allegations of misrepresentation and deceit upon which its claim was based, as required by RDC 17.43. The Judge held that the claimant's particulars failed to comply with the requirements of that rule; indeed, the Judge said that the *"deficiency is more fundamental than an absence of requisite details; the case to be made is wholly obscure"*: [9]. The Judge struck out the particulars of claim but granted the claimant leave to file amended particulars within 28 days.

**4.17**
When the Court strikes out a statement of case it may make any consequential order it considers appropriate.

**4.18**
Where:

    (1) the Court has struck out a claimant's statement of case;

    (2) the claimant has been ordered to pay costs to the defendant; and

    (3) before the claimant pays those costs, he starts another claim against the same defendant, arising out of facts which are the same or substantially the same as those relating to the claim in which the statement of case was struck out,

the Court may, on the application of the defendant, stay that other claim until the costs of the first claim have been paid.

**4.19**
Rule 4.16 does not limit any other power of the Court to strike out a statement of case.

**Judgment Without Trial After Striking Out**
**4.20**
Rules 4.21 to 4.24 apply where:

    (1) the Court makes an order which includes a term that the statement of case of a party shall be struck out if the party does not comply with the order; and

    (2) the party against whom the order was made does not comply with it.



**4.21**

A party may obtain judgment with costs by filing a request for judgment if:

(1) the order referred to in Rule 4.20(1) relates to the whole of a statement of case; and

(2) where the party wishing to obtain judgment is the claimant, the claim is for

(a) a specified amount of money;

(b) an amount of money to be decided by the Court;

(c) delivery of goods where the claim form gives the defendant the alternative of paying their value; or

(d) any combination of these remedies.

**4.22**

Where judgment is obtained in a case to which Rule 4.21(2)(c) applies, it will be judgment requiring the defendant to deliver goods, or (if he does not do so) pay the value of the goods as decided by the Court (less any payments made).

**4.23**

The request must state that the right to enter judgment has arisen because the Court's order has not been complied with.



**4.24**

A party must make an application in accordance with Part 23 if he wishes to obtain judgment in a case to which Rule 4.21 does not apply.

**Setting Aside Judgment Entered After Striking Out**
**4.25**

A party against whom the Court has entered judgment under Rule 4.21 may apply to the Court to set the judgment aside.

**4.26**

An application under Rule 4.25 must be made not more than 14 days after the judgment has been served on the party making the application.

**4.27**

If the right to enter judgment had not arisen at the time when judgment was entered, the Court must set aside the judgment.

**4.28**

If the application to set aside is made for any other reason, Rule 4.49 (relief from sanctions) shall apply.

**Sanctions For Non–Payment Of Fees**
**4.29**

The Court will serve a notice on the claimant requiring payment of a Court fee if, at the time the fee is due, the claimant has not paid it.







**4.30**

The notice will specify the date by which the claimant must pay the fee.

**4.31**

If the claimant does not pay the fee by the date specified in the notice:

    (1) the claim may be struck out without further order of the Court; and

    (2) the claimant shall be liable for the costs which the defendant has incurred unless the Court orders otherwise.

**4.32**

If:

    (1) a claimant applies to have the claim reinstated; and

    (2) the Court grants relief,

the relief shall be conditional on the claimant paying the fee within the period specified in **Rule 4.33**.

**4.33**

The period referred to in **Rule 4.32** is:

    (1) if the order granting relief is made at a hearing at which the claimant is present or represented, 2 days from the date of the order;

    (2) in any other case, 7 days from the date of service of the order on the claimant.

**4.34**

**Rules 4.35** to **4.39** apply where a defendant files a counterclaim without payment of any fee specified.

**4.35**

The Court will serve a notice on the defendant requiring payment of the fee if, at the time the fee is due, the defendant has not paid it.

**4.36**

The notice will specify the date by which the defendant must pay the fee.

**4.37**

If the defendant does not pay the fee by the date specified in the notice, the counterclaim will automatically be struck out without further order of the Court.

**4.38**

If:

    (1) the defendant applies to have the counterclaim reinstated; and

    (2) the Court grants relief,







the relief will be conditional on the defendant paying the fee within the period specified in **Rule 4.39**.

**4.39**
The period referred to in **Rule 4.38** is:

    (1) if the order granting relief is made at a hearing at which the defendant is present or represented, 2 days from the date of the order;

    (2) in any other case, 7 days from the date of service of the order on the defendant.

**Sanctions For Dishonoured Cheque**
**4.40**
Rules 4.41 to 4.44 apply where any fee is paid by cheque and that cheque is subsequently dishonoured.

**4.41**
The Court will serve a notice on the paying party requiring payment of the fee which will specify the date by which the fee must be paid.

**4.42**
If the fee is not paid by the date specified in the notice:

    (1) where the fee is payable by the claimant, the claim will automatically be struck out without further order of the Court;

    (2) where the fee is payable by the defendant, the defence will automatically be struck out without further order of the Court,

and the paying party shall be liable for the costs which any other party has incurred unless the Court orders otherwise.

**4.43**
If:

    (1) the paying party applies to have the claim or defence reinstated; and

    (2) the Court grants relief,

the relief shall be conditional on that party paying the fee within the period specified in **Rule 4.44**.

**4.44**
The period referred to in **Rule 4.43** is:

    (1) if the order granting relief is made at a hearing at which the paying party is present or represented, 2 days from the date of the order;

    (2) in any other case, 7 days from the date of service of the order on the paying party.





**4.45**

For the purposes of Rules 4.41 to 4.44, "claimant" includes a party making an additional claim.

**Sanctions Have Effect Unless Defaulting Party Obtains Relief**
**4.46**

Where a party has failed to comply with a Rule, Practice Direction or Court order, any sanction for failure to comply imposed by the Rule, Practice Direction or Court order has effect unless the party in default applies for and obtains relief from the sanction.

**4.47**

Where the sanction is the payment of costs, the party in default may only obtain relief by appealing against the order for costs.

**4.48**

Where a Rule, Practice Direction or Court order:

   (1) requires a party to do something within a specified time, and

   (2) specifies the consequence of failure to comply,

the time for doing the act in question may not be extended by agreement between the parties.

**Relief From Sanctions**
**4.49**

On an application for relief from any sanction imposed for a failure to comply with any Rule, Practice Direction or Court order the Court will consider all the circumstances including:

   (1) the interests of the administration of justice;

   (2) whether the application for relief has been made promptly;

   (3) whether the failure to comply was intentional;

   (4) whether there is a good explanation for the failure;

   (5) the extent to which the party in default has complied with other Rules, Practice Directions and Court orders;

   (6) whether the failure to comply was caused by the party or his legal representative;

   (7) whether the trial date or the likely trial date can still be met if relief is granted;

   (8) the effect which the failure to comply had on each party; and

   (9) the effect which the granting of relief would have on each party.





**Relief from sanctions**
**4.49.1**
In *(1) Hormuzd Mana (2) Shireen Mana v Clariden Leu Asset Management (Dubai) Ltd*
[2011] DIFC CFI 030 (29 August 2014) the Court considered whether it was appropriate
to grant relief from sanctions for failing to commence detailed assessment proceedings
within the time period stipulated by a Court order, which provided that unless the
proceedings were commenced by a set day, the proceedings would be dismissed with
no order as to costs. The Court upheld the Registrar's refusal to grant relief from
sanctions. The Court held that regard must be had to all the circumstances of the case
including the factors specified in RDC 4.49: [27]. While the appellants argued that
they had to seek legal advice to pursue their claim for costs, the Court considered that
failure to commence assessment proceedings within the three months required by
the Rules and the failure to commence such proceedings when ordered to do so by the
Court were just two examples where the appellants had been dragging their feet in total
disregard of due process: [28]. The Court agreed with the Registrar that there had been
no acceptable explanation for the appellants' dilatoriness: [29].

**4.50**
An application for relief must be supported by evidence.

**General Power Of The Court To Rectify Matters Where There Has Been An Error Of
Procedure**
**4.51**
Where there has been an error of procedure such as a failure to comply with a Rule or
Practice Direction:

(1) the error does not invalidate any step taken in the proceedings unless the Court
so orders; and

(2) the Court may make an order to remedy the error.

## PART 5
FORMS

**5.1**
The Chief Justice may by Practice Direction prescribe the forms to be used in
proceedings before the Court.

**5.2**
A form may be varied by the Court or a party if the variation is required by the
circumstances of a particular case.

**5.3**
A form must not be varied so as to leave out any information or guidance which the
form gives to the recipient.







**5.4**
Where these Rules require a form to be sent by the Court or by a party for another party to use, it must be sent without any variation except such as is required by the circumstances of the particular case.

## PART 6
### COURT DOCUMENTS

**Preparation Of Documents**
**6.1**
Where under these Rules, a document is to be prepared by the Court, the document may be prepared by the party whose document it is, unless a Court Officer otherwise directs.

**6.2**
Nothing in these Rules shall require a Court Officer to accept a document which is illegible, has not been duly authorised, or is unsatisfactory for some other similar reason.

**Signature Of Documents By Mechanical Means**
**6.3**
Where these Rules require a document to be signed, that requirement shall be satisfied if the signature is printed by computer or other mechanical means.



**6.4**
Where a replica signature is printed electronically or by other mechanical means on any document, the name of the person whose signature is printed must also be printed so that the person may be identified.

**Form Of Documents**
**6.5**
Statements of case and other documents drafted by a legal representative should bear his signature and if they are drafted by a legal representative as a member or employee of a firm they should be signed in the name of the firm.

**6.6**
Every document prepared by a party for filing or use at the Court must—

(1) unless the nature of the document renders it impracticable, be on A4 paper,

(2) be fully legible and should normally be typed,

(3) where possible be bound securely in a manner which would not hamper filing or otherwise each page should be endorsed with the case number,

(4) have the pages numbered consecutively,

(5) be divided into numbered paragraphs,





**6.9**

A party to proceedings may, if the Court gives permission, obtain from the records of the Court a copy of any other document filed by a party or communication between the Court and a party or another person.

**Supply Of Documents To A Non-Party From Court Records**

**6.10**

Save where **Rule 6.11** applies, the general rule is that a person who is not a party to proceedings may obtain from the Court records a copy of:

(1) a statement of case, but not any documents filed with or attached to the statement of case, or intended by the party whose statement it is to be served with it;

(2) a judgment or order given or made in public (whether made at a hearing or without a hearing).

**6.11**

Unless the Court orders otherwise, a non-party may not obtain information or documents from the Court records relating to insolvency proceedings before a winding-up petition has been advertised.

**6.12**

A non-party may, if the Court gives permission, obtain from the records of the Court a copy of any other document filed by a party, or communication between the Court and a party or another person.







**6.13**

A non-party may obtain a copy of a statement of case or judgment or order under **Rule 6.11** only if:

(1) where there is one defendant, the defendant has filed an acknowledgment of service or a defence;
(2) where there is more than one defendant:

(a) all the defendants have filed an acknowledgment of service or a defence; or

(b) at least one defendant has filed an acknowledgment of service or a defence, and the Court gives permission;

(3) the claim has been listed for a hearing; or

(4) judgment has been entered in the claim.

**6.14**

The Court may, on the application of a party or of any person identified in a statement of case:

(1) order that a non-party may not obtain a copy of that statement of case under **Rule 6.11**;



(2) restrict the persons or classes of persons who may obtain a copy of that statement of case;

(3) order that persons or classes of persons may only obtain a copy of that statement of case if it is edited in accordance with the directions of the Court; or

(4) make such other order as it thinks fit.

**6.15**
A person wishing to apply for an order under **Rule 6.14** must file an application notice in accordance with Part 23.

**6.16**
Where the Court makes an order under **Rule 6.14**, a non-party who wishes to obtain a copy of the statement of case, or to obtain an unedited copy of the statement of case, may apply on notice to the party or person identified in the statement of case who requested the order, for permission.

**Supply Of Documents From Court Records — General**
**6.17**
A person wishing to obtain a copy of a document under **Rules 6.9** to **6.12** must pay any prescribed fee and if the Court's permission is required, file an application notice in accordance with Part 23.



**6.18**
An application for an order under **Rule 6.14** or for permission to obtain a copy of a document under **Rules 6.9** to **6.12** may be made without notice, but the Court may direct notice to be given to any person who would be affected by its decision.



**6.19**
**Rules 6.7** to **6.16** do not apply in relation to any proceedings in respect of which a rule or practice direction makes different provision.

**Filing Documents**
**6.20**
All documents to be filed in the DIFC Courts should be submitted to the Court in electronic form only preferably through the E-Filing facility available on the DIFC Courts website, with the following exception:

1) Bundles prepared for hearings.

**6.21**
Electronic documents may be filed with the Courts by:



(1) The E-Filing facility — this should be used unless it is impossible in the circumstances; or

(2) Emailing the documents to the Registry email account at registry@difccourts. ae; or





(3) Delivering any form of data storage media containing the electronic files to the Registry.

**6.22**

Where documents are filed by email:

(1) Each email must be no larger than 10MB in size;

(2) The body of the email must contain a list of all the documents attached to the email;

(3) The Registry will acknowledge receipt of the email.

**6.23**

Where documents are filed by delivering any form of data storage media to the Court:

(1) The data storage media must be accompanied by a covering letter listing all of the documents contained in the disk;

(2) The Registry will acknowledge the covering letter as received once the contents of the data storage media have been checked to confirm the presence of all of the documents listed in the covering letter.

**6.24**

Where a document is filed in hard copy, the date on which the document was filed at Court must be recorded on the document. This may be done by a seal or a receipt stamp.

**6.25**

A surcharge may be imposed by the Court for documents not submitted using the E-Filing facility as per the fee schedule as amended from time to time.

**6.26**

Particulars of the date of delivery at Court of any document for filing and the title of the proceedings in which the document is filed shall be entered in Court records, on the Court file or on a computer record kept for the purpose. Except where a document has been delivered at the Registry through the mail, the time of delivery should also be recorded.

**6.27**

Applications may be made by filing an application notice by email. Save in cases of extreme urgency, where the application attracts a fee, the application will not be considered filed until the fee is paid.

**6.28**

Where the Court orders any document to be lodged in Court, the document must, unless otherwise directed, be deposited in the Registry.



## Sending Documents

**6.29**

A document filed, lodged or held in the Registry shall not be taken out of the office without the permission of the Court except in accordance with Rules 6.30 to 6.35 below.

**6.30**

Where a document filed, lodged or held in the Registry is required to be produced to any court, tribunal or arbitrator, the document may be produced by sending it by courier (together with a Certificate as set out below) to the court, tribunal or arbitrator.

**6.31**

On receipt of the request the Court Officer will submit the same to the Registrar who may direct that the request be complied with. Before giving a direction the Registrar may require to be satisfied that the request is made in good faith and that the document is required to be produced for the reasons stated. The Registrar may also direct that, before the document is sent, an official copy of it is made and filed in the Registry at the expense of the party requiring the document to be produced.

**6.32**

On the direction of the Registrar the Court Officer shall send the document by courier addressed to the court, tribunal or arbitrator, with:

 

(1) an envelope stamped and addressed for use in returning the document to the Court;

(2) a Certificate as set out below;

(3) a covering letter describing the document, stating at whose request and for what purpose it is sent and containing a request that the document be returned to the Court in the enclosed envelope as soon as the court, tribunal or arbitrator no longer requires it.

**6.33**

It shall be the duty of the court, tribunal or arbitrator to whom the document was sent to keep it in safe custody, and to return it by courier to the Court as soon as the court, tribunal or arbitrator no longer requires it.

**6.34**

A record shall be kept of each document sent and the date on which it was sent and the court, tribunal or arbitrator to whom it was sent and the date of its return. It shall be the duty of the Court Officer who has signed the certificate as set out below to ensure that the document is returned within a reasonable time and to make inquiries and report to the Registrar if the document is not returned, so that steps may be taken to secure its return.

**6.35**

Notwithstanding the above, the Registrar may direct a Court Officer to attend the court, tribunal or arbitrator for the purpose of producing the document.





**Form Of Request**

I, of, an officer of the court/tribunal at   /an arbitrator of   /the Claimant/Defendant/ Legal Representative of the Claimant/Defendant [describing the Applicant so as to show that he is a proper person to make the request] in the case of v.

REQUEST that the following document [or documents] be produced to the court/ tribunal/arbitrator on the day of 20xx [and following days] and I request that the said document [or documents] be sent by courier to the proper officer of the court/ tribunal/arbitrator for production to that court/tribunal/arbitrator on that day.

(Signed)

Dated the day of 20xx

**Form Of Certificate**

I, A.B., an officer of the DIFC Court certify that the document sent herewith for production to the court/tribunal/arbitrator on the day of 20xx in the case of v. and marked 'A.B.' is the document requested on the day of 20xx and I FURTHER CERTIFY that the said document has been filed in and is produced from the custody of the Court.

(Signed)

Dated the day of 20xx



## PART 7
HOW TO START PROCEEDINGS — THE CLAIM FORM



**How To Start Proceedings**

**7.1**
Except as provided by a Practice Direction proceedings must be started by a claim form under Part 7 or Part 8 using Form P7/01 or Form P8/01 respectively.

**7.2**
If a claimant wishes his claim to proceed under Part 8, or if the claim is required to proceed under Part 8, the claim form should so state. Otherwise the claim will proceed under Part 7.

**7.3**
Proceedings are started when the Court issues a claim form at the request of the claimant.

**7.4**
A claim form is issued on the date entered on the form by the Court.

**Date Of Start Of Proceedings**

**7.5**
Where the claim form as issued was received in the Registry on a date earlier than the date on which it was issued by the Court, the claim is 'brought' for the purposes of limitation on that earlier date.



**Persons Carrying On Business In Another Name**
7.15
Rule 7.16 applies where:

(1) a claim is brought against an individual;

(2) that individual carries on a business within the DIFC or Dubai (but need not himself be within the DIFC or Dubai); and

(3) that business is carried on in a name other than his own name ("the business name").

7.16
Where this Rule applies, the claim may be brought against the business name as if it were the name of a partnership.

**Right To Use One Claim Form To Start Two Or More Claims**
7.17
A claimant may use a single claim form to start all claims which can be conveniently disposed of in the same proceedings.

**Title Of Proceedings**
7.18
The claim form and every other statement of case must be headed with the title of the proceedings. The title should state:

(1) the number of proceedings,
(2) the circuit or division of the Court (if any) or Tribunal in which they are proceeding,

(3) the full name of each party,

(4) his status in the proceedings (i.e. claimant /defendant).



7.19
Where there is more than one claimant and/or more than one defendant, the parties should be described in the title as follows:

(1) AB

(2) CD

(3) EF Claimants

and

(1) GH

(2) IJ

(3) KL Defendants







**Service Of Claim Form**
**7.20**
After a claim form has been issued, it must be served on the defendant by the claimant:

(1) within 4 months after the date of issue where the claim form is to be served within the DIFC or Dubai; and

(2) within 6 months after the date of issue where the claim form is to be served out of the DIFC or Dubai.

**Extension Of Time For Serving A Claim Form**
**7.21**
The claimant may apply for an order extending the period within which the claim form may be served.

**7.22**
The general rule is that an application to extend the time for service must be made:

(1) within the period for serving the claim form specified by Rule 7.20; or

(2) where an order has been made extending the period within which the claim form may be served, within the period for service specified by that order.

**7.23**
If the claimant applies for an order to extend the time for service of the claim form after the end of the periods specified by Rule 7.22 the Court may make such an order only if:

(1) the Court has been unable to serve the claim form; or

(2) the claimant has taken all reasonable steps to serve the claim form but has been unable to do so; and

(3) in either case, the claimant has acted promptly in making the application.

**7.24**
An application for an order extending the time for service must be made in accordance with Part 23 and supported by evidence stating:

(1) all the circumstances relied on,

(2) the date of issue of the claim,

(3) the expiry date of any Rule 7.21 extension, and

(4) a full explanation as to why the claim has not been served.

**7.25**
The application may be made without notice.







**Application By Defendant For Service Of Claim Form**
**7.26**
Where a claim form has been issued against a defendant, but has not yet been served on him, the defendant may serve a notice on the claimant requiring him to serve the claim form or discontinue the claim within a period specified in the notice.

**7.27**
The period specified in a notice served under **Rule 7.26** must be at least 14 days after service of the notice.

**7.28**
If the claimant fails to comply with the notice, the Court may, on the application of the defendant:

    (1) dismiss the claim; or

    (2) make any other order it thinks just.

**Statement Of Truth**
**7.29**
The claim form and, where they are not included in the claim form, the particulars of claim, must be verified by a statement of truth in accordance with Part 22.

**7.30**
The form of the statement of truth is as follows:

'[I believe][the claimant believes] that the facts stated in [this claim form] [these particulars of claim] are true.'

**Particulars Of Claim**
**7.31**
If particulars of claim are not contained in or served with the claim form:

    (1) the claim form must state that, if an acknowledgment of service is filed which indicates an intention to defend the claim, particulars of claim will follow;

    (2) the claimant must serve particulars of claim within 28 days of the filing of an acknowledgment of service which indicates an intention to defend.

**7.31.1**
Note Practice Direction No. 2 of 2014 requiring a claimant to identify the applicable law its claim applies.

**7.32**
If the claimant is claiming interest, he must:

    (1) include a statement to that effect; and

    (2) give the details set out in **Rule 17.18**,

in both the claim form and the particulars of claim.



**7.33**

Where the claimant serves particulars of claim separately from the claim form in accordance with **Rule 7.31(2)** he must within 7 days of service on the defendant, file a copy of the particulars together with a certificate of service.

**7.34**

All claim forms and counterclaims must state:

> (a) the law which the claimant maintains governs the dispute. The defendant must expressly agree or disagree with that assertion (in the acknowledgment of service form); and
>
> (b) the law which the claimant maintains gives rise to the jurisdiction of the DIFC Courts in respect of their claim. The defendant must expressly agree or disagree with that assertion (in the acknowledgment of service form).

**7.35**

When the claim form is served on a defendant, it must be accompanied by a cover letter indicating that: (a) a form for defending the claim; (b) a form for admitting the claim or; (c) a form for acknowledging service must be filed by the defendant using the Court's e-filing system.

**7.36**

Where the claimant is using the procedure set out in Part 8 (alternative procedure for claims), the claimant must serve with the claim form a cover letter indicating that a form for defending the claim, a form for admitting the claim or a form for acknowledging service must subsequently be filed by the defendant using the Court's e-filing system.

**Fixed Date And Other Claims**

**7.37**

A Practice Direction:

> (1) may set out the circumstances in which the Court may give a fixed date for a hearing when it issues a claim;
>
> (2) may list claims in respect of which there is a specific claim form for use and set out the claim form in question; and
>
> (3) may disapply or modify these Rules as appropriate in relation to the claims referred to in sub-paragraphs (1) and (2) above.








## PART 8
ALTERNATIVE PROCEDURE FOR CLAIMS

**Alternative procedure for claims**
**8.0.1**
In *DIFC Investments LLC v Mohammed Akbar Mohammed Zia* [2017] DIFC CFI 001 the claimant brought a Part 8 claim seeking a declaration that contracts between the parties relating to the intended sale of various apartments had been or were to be terminated. The defendant argued that the use of the Part 8 procedure was an abuse of process and sought dismissal of the claim. The claimant had only claimed declaratory relief; it had not claimed damages or the security deposit payable by the defendant under the contracts, but had reserved the right to claim compensation for the defendant's breaches of contract. The defendant argued that the claimant had brought a claim for declaratory relief only in order to avoid paying a higher court fee and that the claimant intended to use any declaration received to bring subsequent claims against him. The Court rejected the submission that the proceedings were an abuse of process. The Court held that any application of res *judicata* to findings made in the present case was an issue to be addressed in any subsequent proceedings; the defendant's case on abuse of process in this regard was hypothetical: [75].

### Types Of Claim In Which Part 8 Procedure May Be Followed
**8.1**
A claimant may use Part 8 procedure where:

(1) he seeks the Court's decision on a question which is unlikely to involve a substantial dispute of fact; or

(2) a Rule or Practice Direction in relation to a specified type of proceedings requires or permits the use of the Part 8 procedure.

**Where the Part 8 procedure may be used**
**8.1.1**
An application under Part 8 was refused in *Lutfi Kabbara v EFG-Hermes* (CFI 011/2017)) on the grounds of substantial dispute of fact, at [13] of the Schedule of Reasons to Order of 12 April 2016.

**8.2**
Rule 8.1 does not apply if a Rule or Practice Direction provides that the Part 8 procedure may not be used in relation to the type of claim in question.

**8.3**
Where it appears to a Court Officer that a claimant is using the Part 8 procedure inappropriately, he may refer the claim to a Judge for the Judge to consider the point.

**8.4**
The Court may at any stage order the claim to continue as if the claimant had not used the Part 8 procedure and, if it does so, the Court may give any directions it considers appropriate.



**Application Of Part 8 And Other Rules And Practice Directions**
**8.5**
Part 8 contains Rules applicable to all claims, including those to which Part 8 applies. Those rules and directions should be applied where appropriate.

**8.6**
Where Part 8 procedure is followed:

(1) provision is made in this Part for the matters which must be stated in the claim form and the defendant is not required to file a defence and therefore:

(a) Part 16 (defence and reply) does not apply;

(b) Part 17 (statements of case) does not apply;

(c) any time limit in these Rules which prevents the parties from taking a step before a defence is filed does not apply;

(d) the requirement under **Rule 7.35** to serve on the defendant a form for defending the claim does not apply;

(2) the claimant may not obtain default judgment under Part 13.

(3) the claimant may not obtain judgment by request on an admission and therefore:



(a) **Rules 15.14** to **15.31** do not apply; and



(b) the requirement under **Rule 7.35** to serve on the defendant a form for admitting the claim does not apply.

**No requirement to file a defence**
**8.6.1**
In *DIFC Investments LLC v Mohammed Akbar Mohammed Zia* [2017] DIFC CFI 001 the claimant brought a Part 8 claim seeking a declaration that contracts between the parties relating to the intended sale of various apartments had been or were to be terminated. The defendant argued that the use of the Part 8 procedure was an abuse of process and sought dismissal of the claim. One argument advanced by the defendant regarding the alleged inappropriateness of the Part 8 process was that he would not be able to file a defence or counterclaim. The Court observed at [72] that RDC 8.6(1) states that the defendant *"is not required to file a defence"*. The rule does not, however, prohibit the filing of a defence. The Court was not asked to resolve whether a defence could in fact be filed in a Part 8 claim; but neither had the defendant attempted to file one.

**8.7**
A Rule or Practice Direction may, in relation to a specified type of proceedings:

(1) require or permit the use of the Part 8 procedure; and





(2) disapply or modify any of the rules set out in this Part as they apply to those proceedings.

**Contents Of The Claim Form**
**8.8**
Where the claimant uses Part 8 procedure the claim form (Form P8/01) should be used and must state:

(1) that this Part applies;

(2) the question which the claimant wants the Court to decide; or the remedy which the claimant is seeking and the legal basis for the claim to that remedy;

(3) if the claim is being made under an enactment, what that enactment is;

(4) if the claimant is claiming in a representative capacity, what that capacity is; and

(5) if the defendant is sued in a representative capacity, what that capacity is.

**Issue Of Claim Form Without Naming Defendants**
**8.9**
A Practice Direction may set out circumstances in which a claim form may be issued under this Part without naming a defendant.



**8.10**
The Practice Direction may set out those cases in which an application for permission must be made by application notice before the claim form is issued.

**8.11**
The application notice for permission:

(1) need not be served on any other person; and

(2) must be accompanied by a copy of the claim form that the applicant proposes to issue.

**8.12**
Where the Court gives permission it will give directions about the future management of the claim.

**Acknowledgment Of Service**
**8.13**
The defendant must:

(1) file an acknowledgment of service in Form P8/02 not more than 14 days after service of the claim form; and

(2) serve the acknowledgment of service on the claimant and any other party.



**8.14**

The acknowledgment of service must state:

(1) whether the defendant contests the claim; and

(2) if the defendant seeks a different remedy from that set out in the claim form, what that remedy is.

**8.15**

The following rules of Part 11 (acknowledgment of service) apply:

(1) Rule 11.6 (exceptions to the period for filing an acknowledgment of service); and

(2) Rule 11.8 (contents of acknowledgment of service).

**Consequence Of Not Filing An Acknowledgment Of Service**
**8.16**
Where:

(1) the defendant has failed to file an acknowledgment of service; and

(2) the time period for doing so has expired;

the defendant may attend the hearing of the claim but may not take part in the hearing unless the Court gives permission.



**Procedure Where Defendant Objects To Use Of The Part 8 Procedure**
**8.17**
Where the defendant contends that the Part 8 procedure should not be used because:

(1) there is a substantial dispute of fact; and

(2) the use of the Part 8 procedure is not required or permitted by a Rule or Practice Direction;



he must state his reasons when he files his acknowledgment of service. If the statement of reasons includes matters of evidence, it should be verified by a statement of truth.

**8.18**
When the Court receives the acknowledgment of service and any written evidence it will give directions as to the future management of the case.

**Managing The Claim**
**8.19**
The Court may give directions immediately after a Part 8 claim form is issued, either on the application of a party or on its own initiative.

**8.20**
Where the Court does not fix a hearing date when the claim form is issued, it will give directions for the disposal of the claim as soon as practicable after the defendant has

acknowledged service of the claim form or, as the case may be, after the period for acknowledging service has expired.

**8.21**
Certain applications may not require a hearing.

**8.22**
The Court may convene a directions hearing before giving directions.

**Filing And Serving Written Evidence**
**8.23**
The claimant must file any written evidence on which he intends to rely when he files his claim form.

**8.24**
The claimant's evidence must be served on the defendant with the claim form (unless the evidence is contained in the claim form itself).

**8.25**
Evidence will normally be in the form of a witness statement or an affidavit but a claimant may rely on the matters set out in his claim form provided that it has been verified by a statement of truth.

**8.26**
A defendant who wishes to rely on written evidence must file it when he files his acknowledgment of service.

**8.27**
If he does so, he must also, at the same time, serve a copy of his evidence on the other parties.

**8.28**
The claimant may, within 14 days of service of the defendant's evidence on him, file further written evidence in reply.

**8.29**
If he does so, he must also, within the same time limit, serve a copy of his evidence on the other parties.

**8.30**
A party may apply to the court for an extension of time to serve and file evidence or for permission to serve and file additional evidence.

**8.31**
The parties may, subject to the following provisions, agree in writing on an extension of time for serving and filing evidence.

**8.32**
An agreement extending time for a defendant to file evidence:






(1) must be filed by the defendant at the same time as he files his acknowledgement of service; and

(2) must not extend time by more than 14 days after the defendant files his acknowledgement of service.

**8.33**
An agreement extending time for a claimant to file evidence in reply must not extend time to more than 28 days after service of the defendant's evidence on the claimant.

**Evidence — General**
**8.34**
No written evidence may be relied on at the hearing of the claim unless:

(1) it has been served in accordance with Rules 8.23 to 8.31; or

(2) the Court gives permission.

**8.35**
The Court may require or permit a party to give oral evidence at the hearing.

**8.36**
The Court may give directions requiring the attendance for cross-examination of a witness who has given written evidence.

**Additional Claims**
**8.37**
Where Part 8 procedure is used, Part 21 (counterclaims and other additional claims) applies except that a party may not make an additional claim (as defined by **Rule 21.2**) without the Court's permission.

**Application of Part 21 (counterclaims and other additional claims)**
**8.37.1**
In *DIFC Investments LLC v Mohammed Akbar Mohammed Zia* [2017] DIFC CFI 001 (15 May 2017) the claimant brought a part 8 claim seeking a declaration that contracts between the parties relating to the intended sale of various apartments had been or were to be terminated. The defendant argued that the use of the part 8 procedure was an abuse of process and sought dismissal of the claim. One argument advanced by the defendant regarding the alleged inappropriateness of the Part 8 process was that he would not be able to file a defence or counterclaim. The Court observed at [73] that RDC 8.37 provides that Part 21 (counterclaims and other additional claims) applies to the Part 78 procedure, except that a party may not make an additional claim (as defined by RDC 21.2) without the Court's permission. Accordingly, the defendant was not prevented from bringing a counterclaim; he had not, however, attempted to do so.

**Pre-Action Applications**
**8.38**
All applications made before a claim is commenced should be made under this Part, unless the Court orders otherwise.





**Pre-action applications**

In *Vannin Capital PCC PLC v (1) Rafed Abdel Mohsen Bader Al Khorafi & Ors* [2014] DIFC CFI 036 (18 February 2015) the claimant, who provided commercial litigation funding, entered into a funding agreement with the first through third defendants. Those defendants discharged the fourth defendant of legal representation and a replacement payment receipt mechanism was not finalised. The Claimant filed a Part 8 claim under RDC 8.38 and RDC 23.15 seeking an order under RDC 25.12 that c. USD 10m plus interest be paid into Court by the fifth and sixth defendants pending further order of the Court. The Court ordered that c. USD 11m plus interest be paid into Court pending further order of the Court.

**8.39**

The written evidence in support of such an application must state that the claimant intends to bring proceedings.


# PART 9
## SERVICE

**I GENERAL RULES ABOUT SERVICE**
**Part 9 Rules About Service Apply Generally**
**9.1**
The Rules in this Section of this Part apply to the service of documents in the DIFC and Dubai, except where:



   (1) any other enactment, a Rule in another Part, or a Practice Direction makes a different provision; or

   (2) the Court orders otherwise.

**Methods Of Service – General**
**9.2**
A document may be served by any of the following methods:

   (1) personal service, in accordance with Rules 9.8 to 9.13;

   (2) courier (or an alternative service which provides for delivery on the same or next working day);

   (3) leaving the document at a place specified in Rules 9.15 to 9.21;

   (4) by means of electronic communication.

**9.3**
Where a document is to be served by electronic means:

   (1) the party who is to be served or his legal representative must previously have expressly indicated in writing to the party serving:

      (a) that he is willing to accept service by electronic means; and





(b) the fax number, e-mail address or electronic identification to which it should be sent;

(2) the following shall be taken as sufficient written indication for the purposes of sub-paragraph (1) above:

(a) a fax number set out on the writing paper of the legal representative of the party who is to be served; or

(b) a fax number, e-mail address or electronic identification set out on a statement of case or a response to a claim filed with the Court;

(3) the party seeking to serve the document should first seek to clarify with the party who is to be served whether there are any limitations to the recipient's agreement to accept service by such means including the format in which documents are to be sent and the maximum size of attachments that may be received;

(4) the address for service given by a party must be within the DIFC or Dubai and any fax number must be at the address for service. Where an e-mail address or electronic identification is given in conjunction with an address for service, the e-mail address or electronic identification will be considered to be at the address for service;

(5) the party serving the document need not in addition send a hard copy by mail.



**9.4**
A company may be served by any method permitted under this Part as an alternative to:
(1) service by leaving a document at or mailing it to the registered office of a company (Article 20(3) of the Companies Law (Amended and Restated), Law 3 of 2006);

(2) service upon a Recognised Company by a person appointed to accept service on the behalf of that Company pursuant to Article 116(1) of the Companies Law (Amended and Restated), Law 3 of 2006.



**Who Is To Serve**
**9.5**
The party on whose behalf a document is to be served shall serve a document which it has issued or prepared except where:

(1) a Rule or Practice Direction provides that the Court must serve the document in question;

(2) the Court orders otherwise; or

(3) the Court has failed to serve and has sent a notice of non-service to the party on whose behalf the document is to be served in accordance with **Rule 9.37**.





**9.6**

Where the Court is to serve a document, it is for the Court to decide which of the methods of service specified in **Rule 9.2** is to be used.

**9.7**

Where a party prepares a document which is to be served by the Court, that party must file a copy for the Court, and for each party to be served.

**Personal Service**
**9.8**

A document to be served may be served personally, except as provided in **Rules 9.9** and **9.10**.

**9.9**

Where a legal representative:

    (1) is authorised to accept service on behalf of a party; and

    (2) has notified the party serving the document in writing that he is so authorised;

a document must be served on the legal representative, unless personal service is required by an enactment, Rule, Practice Direction or Court order.

**9.10**

In civil proceedings brought before the Court to which the Centre, any of the Centre's Bodies or the Government is a party, documents required to be served before the Court may not be served personally.

**9.11**

A document is served personally on an individual by leaving it with that individual.

**9.12**

A document is served personally on a company or other corporation by leaving it with a person holding a senior position within the company or corporation. Each of the following persons is a person holding a senior position:

    (1) in respect of a registered company or corporation, a director, the treasurer, secretary, chief executive, manager or other officer of the company or corporation, and

    (2) in respect of a corporation which is not a registered company, in addition to those persons set out in sub-paragraph (1), the mayor, chairman, president, town clerk or similar officer of the corporation.

**Personal service on a company**
**9.12.1**

In *Flavian v (1) Flowella (2) Fleta* [2015] DIFC SCT 016 (21 October 2015) a question was raised during the hearing as to whether the first defendant, who was the general manager of the second defendant, could accept service on its behalf. The second defendant was incorporated under the laws of Quebec, while the first defendant's work







address (as stated on his business card) was in Dubai. The Court held that, pursuant to RDC 9.12 the claim form had been validly served on the second defendant.

**9.13**
A document is served personally on a partnership where partners are being sued in the name of their firm by leaving it with:

(1) a partner; or

(2) a person who, at the time of service, has the control or management of the partnership business at its principal place of business.

**Address For Service**
**9.14**
Except as provided by Section III of this Part, a document must be served within the DIFC or Dubai.

**9.15**
A party must give an address for service within the DIFC or Dubai. A physical address in Dubai or the UAE will not be required if an email address is given.

**9.16**
Where a party:

(1) does not give the business address of his legal representative as his address for service; and

(2) resides or carries on business within the DIFC or Dubai;

he must give his residence or place of business as his address for service.

**9.17**
Any document to be served:

(1) by courier (or an alternative service which provides for delivery on the same or next working day);

(2) by leaving it at the place of service; or

(3) by means of electronic communication;

must be sent or transmitted to, or left at, the address for service given by the party to be served.

**9.18**
Where:

(1) a legal representative is acting for the party to be served; and

(2) the document to be served is not the claim form;





the party's address for service is the business address of his legal representative.

**9.19**
Where:

(1) no legal representative is acting for the party to be served; and

(2) the party has not given an address for service,

the document must be sent or transmitted to, or left at, the place shown in the following table.

| Nature of party to be served | Place of service |
|---|---|
| Individual | Usual or last known residence. |
| Proprietor of a business | Usual or last known residence; or<br>Place of business or last known place of business. |
| Individual who is suing or being sued in the name of a firm | Usual or last known residence; or<br>Principal or last known place of business of the firm. |
| Corporation incorporated in the DIFC other than a company | Principal office of the corporation; or<br>Any place within the DIFC or Dubai where the corporation carries on its activities and which has a real connection with the claim. |
| Company registered in the DIFC | Principal office of the company; or<br>Any place of business of the company within the DIFC or Dubai which has a real connection with the claim. |
| Any other company or corporation | Any place within the DIFC or Dubai where the corporation carries on its activities; or<br>Any place of business of the company within the DIFC or Dubai. |

**9.20**
Rules 9.14 to 9.19 do not apply where an order made by the Court under Rule 9.31 (service by an alternative method) specifies where the document in question may be served.

**9.21**
A party or his legal representative who changes his address for service shall give notice in writing of the change as soon as it has taken place to the Court and every other party.

**Service Of Documents Brought Before The Court To Which The Centre Or Any Of The Centre's Bodies Or The Government Is A Party**
**9.22**
In proceedings brought before the Court to which the Centre, or any of the Centre's

Bodies or the Government is a party, service must be effected in accordance with Part 41.

**Service Of Documents On Children And Patients**
**9.23**
The following table shows the person on whom a document must be served if it is a document which would otherwise be served on a child or a patient—

| Type of document | Nature of party | Person to be served |
|---|---|---|
| Claim form | Child who is not also a patient | One of the child's parents or guardians; or If there is no parent or guardian, the person with whom the child resides or in whose care the child is. |
| Claim form | Patient | The person authorised to conduct the proceedings in the name of the patient or on his behalf; or If there is no person so authorised, the person with whom the patient resides or in whose care the patient is. |

**9.24**
The Court may make an order permitting a document to be served on the child or patient, or on some person other than the person specified in the table in **Rule 9.23**.

**9.25**
An application for an order under **Rule 9.24** may be made without notice.

**9.26**
The Court may order that, although a document has been served on someone other than the person specified in the table in **Rule 9.23**, the document is to be treated as if it had been properly served.Considered date of service

**9.27**
A document which is served in accordance with these Rules or any relevant Practice Direction shall be considered to be served on the day shown in the following table

| Method of service | Considered day of service |
|---|---|
| Courier (or an alternative service which provides for delivery on the same or next working day) | The second business day after the date it was sent. |
| Delivering the document to or leaving it at a permitted address Fax<br><br>Other electronic method | If it is delivered, left or transmitted on a business day before 4pm., on that day; or In any other case, on the business day after the day on which it is delivered, left or transmitted. |



**9.28**

If a document is served personally:

   (1) after 4 p.m., on a business day; or

   (2) at any time on a day which is not a business day;

it will be treated as being served on the next business day.

**Translation Of Claim Form**
**9.29**

Where the claim form is to be served in the United Arab Emirates outside the DIFC, it must be accompanied by a certified Arabic translation of the claim form.

**9.30**

Every translation to be served under **Rule 9.29** must be accompanied by a statement by the person making it that it is a correct translation, and the statement must include:

   (1) the name of the person making the translation;

   (2) his address; and

   (3) his qualifications for making a translation.

**Service By An Alternative Method**
**9.31**



Where it appears to the Court that there is a good reason to authorise service by a method not permitted by these Rules, the Court may make an order permitting service by an alternative method.



**Service by an alternative method**
**9.31.1**

In *Pearl Petroleum Company Limited & others v The Kurdistan Regional Government of Iraq* [2017] DIFC ARB 003 (20 August 2017 Cooke J set aside an order made *ex parte* for alternative service as incompatible with the treaty obligations of the UAE. The Judge held at [57] that if the DIFC is bound by the terms of treaties which form part of the law of the UAE it is bound to adhere to the terms of the Riyadh Convention if it is mandatory in its terms requiring service under Article 6; there was no room for circumvention of its terms by alternative service under RDC 9.31 or RDC 43.11 nor for dispensing with service under RDC 9.34. The Judge held that, by virtue of the terms of Article 5 of the Federal Law No 8 of 2004, although the civil and commercial laws of the UAE are not applicable in the DIFC, the DIFC Court remains bound by the terms of the treaties which do form part of the law of the UAW: [55]. The Judge further held that Article 6 of the Riyadh Convention governed service and was mandatory in nature; that article required that documents were to be delivered or notified or served on the KRG by a prescribed method and there: [59]. Accordingly, the order for alternative service had to be set aside as incompatible with the treaty obligations of the UAE which form part of DIFC law.





**9.32**

An application for an order permitting service by an alternative method—

(1) must be supported by evidence stating

(a) the reason an order for an alternative method of service is sought; and

(b) what steps have been taken to serve by other permitted means; and

(2) may be made without notice.

**9.33**

An order permitting service by an alternative method must specify:

(1) the method of service; and

(2) the date when the document will be considered to be served.

**Power Of Court To Dispense With Service**
**9.34**

The Court may dispense with service of a document.

**Power of Court to dispense with service**

9.34.1 – See the commentary at paragraph 9.31.1 above on the issue of compatibility between this power and the treaty objections of the UAE.



**9.35**

An application for an order to dispense with service may be made without notice.

**Certificate Of Service**
**9.36**

Where a Rule, Practice Direction or Court order requires a certificate of service, the certificate must state the details set out in the following table:

| Method of service | Details to be certified |
|---|---|
| Courier | Date of delivery |
| Personal | Date and time of personal service |
| Delivery of document to or leaving it at a permitted place | Date and time when the document was delivered to or left at the permitted place |
| Fax | Date and time of transmission |
| Other electronic means | Date and time of transmission and the means used |
| Alternative method permitted by the Court | As required by the Court |





**Notification Of Outcome Of Service By Courier By The Court**
**9.37**
Where

    (1) a document to be served by the Court is served by courier; and

    (2) such document is returned to the Court,

the Court must send notification to the party who requested service stating that the document has been returned.

**Notice Of Non-Service By Court Bailiff**
**9.38**
Where:

    (1) the Court Bailiff is to serve a document; and

    (2) the Court Bailiff is unable to serve it;

the Court must send notification to the party who requested service.

**II SPECIAL PROVISIONS ABOUT SERVICE OF THE CLAIM FORM**
**General Rules About Service Subject To Special Rules About Service Of Claim Form**
**9.39**
The general rules about service are subject to the special rules about service contained in **Rules 9.40** to **9.50**.




**Service Of Claim Form By The Court – Defendant's Address For Service**
**9.40**
Where a claim form is to be served by the Court, the claim form must include the defendant's address for service.

**9.41**
For the purposes of **Rule 9.40**, the defendant's address for service may be the business address of the defendant's legal representative if he is authorised to accept service on the defendant's behalf but not otherwise.

**Certificate Of Service Relating To The Claim Form**
**9.42**
Where a claim form is served by the Court, the Court must send the claimant a notice which will include the date when the claim form is considered to be served under **Rule 9.27**.

**9.43**
Where the claim form is served by the claimant:

    (1) he must file a certificate of service not later than 7 days after the date for the filing by the defendant of the acknowledgment of service, unless by that date the acknowledgment of service has been filed; and



(2) he may not obtain judgment in default under Part 13 unless he has filed the certificate of service.

**Service Of Claim Form By Contractually Agreed Method**
**9.44**
Where:

(1) a contract contains a term providing that, in the event of a claim being issued in relation to the contract, the claim form may be served by a method specified in the contract; and

(2) a claim form containing only a claim in respect of that contract is issued;

the claim form shall be considered to be served on the defendant if it is served by a method specified in the contract.

**9.45**
Should parties wish to agree in writing on an alternative address for service, such as a chosen domicile service (CDS) provider, at which to serve their claim form in the event of any future dispute, as well as any further documents in the course of the proceedings, they may do so. The chosen address for service may be located in the DIFC, Dubai or another location, provided that the parties' intention to opt for such an agreed method for service is evident in the applicable contract, or subsequent written agreement. This in no way limits parties' prerogative to nominate a lawyer to accept service of court documents on their behalf (see in this regard **Rules 9.9**, **9.16** and **9.18** above).

**Service Of Claim Form On Agent Of Principal Who Is Outside The DIFC**
**9.46**
Where:

(1) the defendant is outside the DIFC or Dubai; and

(2) the conditions specified in **Rule 9.47** are satisfied;

the Court may, on an application only, permit a claim form relating to a contract to be served on a defendant's agent.

**9.47**
The Court may not make an order under the preceding Rule unless it is satisfied that:

(1) the contract to which the claim relates was entered into within the DIFC or Dubai with or through the defendant's agent; and

(2) at the time of the application either the agent's authority has not been terminated or he is still in business relations with his principal.

**9.48**
An application under **Rule 9.46**:

(1) must be supported by evidence setting out:





(a) full details of the contract and that it was entered into within the DIFC or Dubai with or through an agent who is either an individual residing or carrying on business within the DIFC or Dubai, or a registered company or corporation having a registered office or a place of business within the DIFC or Dubai;

(b) that the principal for whom the agent is acting was, at the time the contract was entered into and is at the time of making the application, neither an individual, registered company or corporation as described in sub-paragraph (a) above; and

(c) why service out of the DIFC or Dubai cannot be effected; and

(2) may be made without notice.

**9.49**
An order under Rule 9.47 must state a period within which the defendant must respond to the claim.

**9.50**
The power conferred by this rule is additional to the power conferred by Rule 9.31 (service by an alternative method).

**9.51**
Where the Court makes an order under this rule, the claimant must send to the defendant copies of:

(1) the order; and

(2) the claim form.

**III SPECIAL PROVISIONS ABOUT SERVICE OUT OF THE DIFC OR DUBAI**
**Scope Of This Section**
**9.52**
This Section contains rules about—

(1) service out of the DIFC or Dubai; and

(2) the procedure for serving out of the DIFC or Dubai.

**Special provisions about service out of the DIFC or Dubai - scope of the section**
**9.52.1**
In *Allianz Risk Transfer AG Dubai Branch v Al Ain Ahlia Insurance Company PJSC* [2012] DIFC CFI 012 (30 April 2013) the defendant attempted to have service of a claim form set aside on the basis that the claimant had not followed proper procedures provided under RDC 9.52, 9.53 and 9.55. The claimant claimed to have effected service through the Abu Dhabi Courts; the only documents, however, exhibited in support of that contention in the DIFC Courts were in Arabic. The defendant said that there was no evidence in the claimant's witness evidence that service was effected by a method permitted by Abu Dhabi Law. Al Madhani J dismissed the defendant's application. He noted that, being a native Arabic speaker, he could see that service was effected in the






Abu Dhabi Courts; he also held that the DIFC Court would rely on the official service documents issued by the Abu Dhabi Court in Arabic, bearing in mind the overriding objective.

Although no mention was made of the requirement under RDC 2.3 that requires all documents served in accordance with the RDC should be in the English language, the principal problem for the defendant in this case appears to have been that it acknowledged service and submitted to the DIFC Court in its acknowledgment of service and did not at that time raise any issue concerning service. The Court considered it was unfair and unreasonable to set aside the claim form just because the defendant wished to see official documents served on it in another jurisdiction translated in the DIFC proceedings. The Court considered this to be a desperate effort to make the proceedings appear more complicated than they were: [18] – [21].

### Service Out Of The DIFC Or Dubai
**9.53**
Given the international nature of the DIFC, permission to serve process outside the DIFC is not required, but it is the responsibility of the party serving process to ensure he complies with the rules regarding service of the place where he is seeking to effect service.

**Service out of the DIFC or Dubai**
**9.53.1** – See the commentary at paragraph 9.52.1 above.

**9.54**
Where a claim form is to be served out of the DIFC or Dubai, it may be served by any method permitted by the law of the place in which it is to be served.

**9.55**
Nothing in these Rules or in any Court order shall authorise or require any person to do anything in the place where the claim form is to be served which is against the law of that place.

**9.55.1** – See the commentary at paragraph 9.52.1 above.

**9.56**
A defendant who wishes to dispute the Court's jurisdiction may make an application to have service set aside under Part 12.

### Period For Acknowledging Service Or Admitting The Claim Where The Claim Form Is Served Out Of The DIFC Or Dubai
**9.57**
The period for filing an acknowledgment of service or filing or serving an admission where a claim form has been served out of the DIFC or Dubai is 28 days after the service of the claim form.

### Period For Filing A Defence Where The Claim Form Is Served Out Of The DIFC Or Dubai
**9.58**
The period for filing a defence where a claim form has been served out of the DIFC or Dubai is:





(1) Where particulars of claim were included in or accompanied the claim form the period for serving and filing a defence is 45 days; or

(2) Where particulars of claim were not included in and did not accompany the claim form, the period for serving and filing a defence is 28 days from service of the particulars of claim.

**Translation Of Claim Form**
**9.59**
Except where Rule 9.62 applies, every copy of the claim form to be served out of the DIFC or Dubai must be accompanied by a translation of the claim form.
**9.60**
The translation must be:

(1) in the official language of the place in which it is to be served; or

(2) if there is more than one official language of that place, in any official language which is appropriate to the place where the claim form is to be served.

**9.61**
Every translation to be served under Rule 9.59 must be accompanied by a statement by the person making it that it is a correct translation, and the statement must include:

(1) the name of the person making the translation;

(2) his address; and

(3) his qualifications for making a translation.

**9.62**
The claimant is not required to provide a translation of a claim form under Rule 9.59 where the claim form is to be served:

(1) in a place where English is an official language; or

(2) on a State where English is an official language of the State where the claim form is to be served.

**Undertaking To Be Responsible For Expenses Of The Registrar**
**9.63**
Every request for service out of the DIFC and Dubai through the Registrar must contain an undertaking by the person making the request:

(1) to be responsible for all expenses incurred by the Registrar or foreign judicial authority; and

(2) to pay those expenses to the Registrar or foreign judicial authority on being informed of the amount.





**Service Of Documents Other Than The Claim Form**
**9.64**
Where an application notice is to be served out of the DIFC and Dubai under this Section of this Part:

    (1) Rules 9.57 and 9.58 do not apply; and

    (2) where the person on whom the application notice has been served is not a party to proceedings, that person may make an application to the Court under Rule 12.1 as if he were a defendant and Rule 12.2 does not apply.

**Proof Of Service**
**9.65**
Where:

    (1) a hearing is fixed when the claim is issued;

    (2) the claim form is served on a defendant out of the DIFC and Dubai; and

    (3) that defendant does not appear at the hearing;

the claimant may take no further steps against that defendant until the claimant files written evidence showing that the claim form has been duly served.

**IV SERVICE OF PROCESS OF OTHER COURTS**

**Scope And Definitions**
**9.66**
This Section of this Part applies to the service in the DIFC of any court process in connection with civil or commercial proceedings in another court or tribunal.

**Request For Service**
**9.67**
Process will be served where the Registrar receives:

    (1) a written request for service:

        (a) from a consular or other authority; or

        (b) from the Governor with a recommendation that service should be effected;

    (2) a translation of that request into English;

    (3) two copies of the process to be served; and

    (4) unless the other court or tribunal certifies that the person to be served understands the language of the process, two copies of a translation of it into English.







**Method Of Service**
**9.68**
The process will be served by the Court Bailiff unless the Registrar otherwise directs.

**After Service**
**9.69**
The Court Bailiff must:

(1) send the Registrar a copy of the process, and:

(a) proof of service; or

(b) a statement why the process could not be served; and

(c) if the Registrar directs, specify the costs incurred in serving or attempting to serve the process.

**9.70**
The Registrar will send the following documents to the person who requested service:

(1) a certificate, sealed with the seal of the Court, stating:

(a) when and how the process was served or the reason why it has not been served; and



(b) where appropriate, an amount certified to be the costs of serving or attempting to serve the process; and

(c) a copy of the process.

**V PROCEDURE FOR ISSUE OF CLAIM FORM WHEN REGISTRY CLOSED**

**Procedure**
**9.71**
The procedure is as follows:

(1) The claim form must be signed by the legal representative acting on behalf of the claimant, and must not require the permission of the Court for its issue (unless such permission has already been given)

(2) The legal representative causing the claim form to be issued ("the issuing legal representative") must

(a) endorse on the claim form the endorsement shown below and sign that endorsement;

(b) send a copy of the claim form so endorsed to the Registry by email for issue under this Section; and

(c) complete and sign the certificate shown below.






(3) When the Registry is next open to the public after the issue of a claim form in accordance with this procedure, the issuing legal representative or his agent shall attend and deliver to the Registry the document which was transmitted by email (including the endorsement and the certificate), or if that document has been served, a true and certified copy of it, together with as many copies as the Registry shall require and pay any required Court fees.

(4) When the proper officer at the Registry has checked and is satisfied that the document delivered under sub-paragraph (3) fully accords with the document received under sub-paragraph (2), and that all proper fees for issue have been paid, he shall allocate a number to the case, and seal, mark as "original" and date the claim form with the date on which it was issued (being, as indicated below, the date when the email is recorded at the Registry as having been received).

(5) As soon as practicable thereafter, the issuing legal representative shall inform any person served with the unsealed claim form of the case number, and (on request) shall serve any such person with a copy of the claim form sealed and dated under sub-paragraph (4) above and the person may, without paying a fee, inspect and take copies of the documents lodged at the Registry under sub-paragraphs (2) and (3) above.

**Effect Of Issue Following Request By Email**
**9.72**
The issue of a claim form in accordance with this procedure takes place when the email is recorded at the Registry as having been received, and the claim form bearing the endorsement shall have the same effect for all purposes as a claim form issued under RDC Part 7 or 8, as the case may be. Unless otherwise ordered the sealed version of the claim form retained by the Registry shall be conclusive proof that the claim form was issued at the time and on the date stated. If the procedure set out in this Section is not complied with, the Court may declare (on its own initiative or on application) that the claim form shall be treated as not having been issued.

**Endorsement**
**9.73**
A claim form issued pursuant to a request by email must be endorsed as follows:

1. This claim form is issued under RDC **Rule 9.71** and may be served notwithstanding that it does not bear the seal of the Court.

2. A true copy of this claim form and endorsement has been transmitted to the Registry, DIFC Court, Level 4, The Gate, Dubai, UAE at the time and date certified below by the undersigned legal representative.

3. It is the duty of the undersigned legal representative or his agent to attend at the Registry when it is next open to the public for the claim form to be sealed.

4. Any person upon whom this unsealed claim form is served will be notified by the undersigned legal representative of the number of the case and may require the undersigned legal representative to serve a copy of the sealed claim form and may inspect without charge the documents which have been lodged at the Registry by the undersigned legal representative.






5. I, the undersigned legal representative, undertake to the Court, to the defendants named in this claim form, and to any other person upon whom this claim form may be served:

(i) that the statement in paragraph 2 above is correct;

(ii) that the time and date given in the certificate at the foot of this endorsement are correct;

(iii) that this claim form is a claim form which may be issued under RDC **Rule 9.71**;

(iv) that I will comply in all respects with the requirements of RDC **Rule 9.71**;

(v) that I will indemnify any person served with the claim form before it is sealed against any loss suffered as a result of the claim form being or becoming invalid in accordance with RDC **Rule 9.71**.

(Signed)

Legal Representative for the claimant" [Note: the endorsement may be signed in the name of the firm rather than an individual legal representative, or by agents in their capacity as agents acting on behalf of their professional clients.]

**Certificate**
**9.74**
A legal representative who causes a claim form to be issued pursuant to a request sent by email must sign a certificate in the following form:

I, the undersigned legal representative, certify that I have sent a copy of this claim form to the Registry by email on [enter the time and date when the email was sent].

Dated

(Signed)

Legal Representative for the claimant.

[Note: the certificate may be signed in the name of the firm rather than an individual legal representative, or by agents in their capacity as agents acting on behalf of their professional clients]








# PART 10
## RESPONDING TO PARTICULARS OF CLAIM – GENERAL

**10.1**

When a defendant is served with a claim form that is not accompanied by Particulars of Claim, he may—

(1) file or serve an admission in accordance with Part 15 admitting the whole of the claim;

(2) where he admits only part of the claim, serve an admission in accordance with Part 15 admitting that part of the claim and file an acknowledgment of service in accordance with Part 11 in relation to the balance of the claim; or

(3) where he does not admit any part of the claim, file an acknowledgment of service in accordance with Part 11.

**10.2**

When particulars of claim are served on a defendant, the defendant may:

(1) file or serve an admission in accordance with Part 15;

(2) file a defence in accordance with Part 16;

(or do both, if he admits only part of the claim); or



(3) where particulars of claim are served with the claim form, file an acknowledgment of service in accordance with Part 11.

# PART 11
## ACKNOWLEDGMENT OF SERVICE

**11.1**

Where the claimant uses the procedure set out in Part 8 (alternative procedure for claims) this Part applies subject to the modifications set out in Rules 8.13 to 8.15.

**11.2**

A defendant shall file an acknowledgment of service if:

(1) the claimant serves a claim form without serving particulars of claim;

(2) the defendant is unable to file a defence within the period specified in Rule 16.9; or

(3) the defendant wishes to dispute the Court's jurisdiction.





**11.3**
A defendant who wishes to acknowledge service of a claim should do so by using Form P11/01.

**Consequence Of Not Filing An Acknowledgment Of Service**
**11.4**
If:

    (1) a defendant fails to file an acknowledgment of service within the period specified in Rule 11.5; and

    (2) does not within that period file a defence in accordance with Part 16 or serve or file an admission in accordance with Part 15,

the claimant may obtain default judgmentG if Part 13 allows it.

**The Period For Filing An Acknowledgment Of Service**
**11.5**
The general rule is that the period for filing an acknowledgment of service is 14 days after service of the claim form.

**The Overriding Objective**
**11.6**
The general rule is subject to the following rules:



    (1) Rule 9.56 (which specifies how the period for filing an acknowledgment of service is calculated where the claim form is served out of the DIFC and Dubai); and

    (2) Rule 9.48 (which requires the Court to specify the period for responding to the particulars of claim when it makes an order under that Rule).



**Notice To Claimant That Defendant Has Filed An Acknowledgment Of Service**
**11.7**
On filing an acknowledgement of service, the defendant must provide a copy to the claimant.

**Contents Of Acknowledgment Of Service**
**11.8**
An acknowledgment of service must:

    (1) be signed by the defendant or his legal representative; and

    (2) include the defendants' address for service.

**11.9**
Where the defendant is represented by a legal representative and the legal representative has signed the acknowledgment of service form, the address must be the legal representative's business address; otherwise the address for service that is given should be as set out in Rules 9.15 and 9.16.





**11.10**

Where the defendant is a company or other corporation, a person holding a senior position in the company or corporation may sign the acknowledgment of service on the defendant's behalf, but must state the position he holds.

**11.11**

Each of the following persons is a person holding a senior position:

(1) in respect of a registered company or corporation, a director, the treasurer, secretary, chief executive, manager or other officer of the company or corporation, and

(2) in respect of a corporation which is not a registered company, in addition to those persons set out in (1), the mayor, chairman, president, town clerk or similar officer of the corporation.

**11.12**

**Where a claim is brought against a partnership:**

(1) service must be acknowledged in the name of the partnership on behalf of all persons who were partners at the time when the cause of action accrued; and

(2) the acknowledgment of service may be signed by any of those partners, or by any person authorised by any of those partners to sign it.



**General**

**11.13**

The defendant's name should be set out in full on the acknowledgment of service.

**11.14**

Where the defendant's name has been incorrectly set out in the claim form, it should be correctly set out on the acknowledgment of service followed by the words' described as' and the incorrect name.

**11.15**

If two or more defendants to a claim acknowledge service of a claim through the same legal representative at the same time, only one acknowledgment of service need be used.

**11.16**

An acknowledgment of service may be amended or withdrawn only with the permission of the Court. The application must be made in accordance with Part 23 and supported by evidence.







## PART 12
DISPUTING THE COURT'S JURISDICTION

**12.1**
**A defendant who wishes to:**

> (1) dispute the Court's jurisdiction to try the claim; or

> (2) argue that the Court should not exercise its jurisdiction;

may apply to the Court for an order declaring that it has no such jurisdiction or should not exercise any jurisdiction which it may have.

**Application for a declaration of no jurisdiction**
**12.1.1**
In *Protiviti Member Firm (Middle East) Limited v (1) Mohammad Bin Hamad Abdul-Karim Al-Mojil (2) Adel Bil Mohammad Bin Hamad Al-Mojil* [2016] DIFC CA 003 (23 August 2016) the appellant had contested the jurisdiction of the DIFC Courts. The appellant disputed the jurisdiction of the DIFC Courts under RDC 12.1 on several bases, including that the Courts of Saudi Arabia were the more appropriate forum and that the particulars of claim disclosed no reasonable grounds for bringing the claim. At first instance the Court had dismissed the appellant's application, holding that the DIFC Courts would be the more convenient forum under the *forum non conveniens* doctrine. On appeal the Court of Appeal affirmed the judgment of the CFI. The Court of Appeal went on to consider (*obiter*) the appellant's alternative basis for disputing the DIFC Court's jurisdiction under RDC 12.1(2), *viz.* that the particulars of claim disclosed no reasonable grounds for bringing the claim. The Court held that it is not open to a defendant to mount a jurisdiction challenge on the grounds that the claim is not reasonably arguable: [74].




**12.2**
A defendant who wishes to make such an application must first file an acknowledgment of service in accordance with Part 11.

**12.3**
A defendant who files an acknowledgment of service does not, by doing so, lose any right that he may have to dispute the Court's jurisdiction.

**12.4**
An application under this Part must:

> (1) be made within 14 days after filing an acknowledgment of service; and

> (2) be supported by evidence.

**Requirements for the application**
**12.4.1**
In *Dr. Lothar Ludwig Hardt and Hardt Trading FZE. v DAMAC (DIFC) Company Limited et al* [2009] DIFC CFI 036 (4 April 2010) the court retrospectively extended time for

the making of an application under this Part: see the commentary at paragraph 4.2.1. above.

If, following an *ex parte* application, the respondent wishes to challenge jurisdiction then the appropriate course is to make an application contesting jurisdiction, rather than making the arguments in a skeleton argument for the return date: *Sunteck Lifestyles Limited v Al Tamimi and Company Limited* [2017] DIFC CFI 48 (23 November 2017) at [4].

**12.5**

If the defendant files an acknowledgment of service and does not make an application disputing the Court's jurisdiction within the period specified in **Rule 12.4**:

(1) he is to be treated as having accepted that the Court has jurisdiction to try the claim; and

(2) if his acknowledgment of service indicates an intention to dispute jurisdiction, he will be treated as if he has not filed an acknowledgment of service for the purposes of any application for judgment in default under Part 13.

**Acceptance of jurisdiction**
**12.5.1**

In *Dr. Lothar Ludwig Hardt and Hardt Trading F.Z.E. v DAMAC (DIFC) Company Limited et al* [2009] DIFC CFI 036 (4 April 2010) the Court held that the effect of RDC 12.5 is analogous to that of a submission to the jurisdiction; it is in substance a deemed submission: [32]–[33]. The Court considered, however, that the effect of the deeming provision only removed objections to the Court's jurisdiction which were purely personal to the party submitting (e.g. by precluding a defence that the claim form had not been properly served). Submission to the jurisdiction (whether actual or deemed) could not give the Court jurisdiction to entertain proceedings which lay beyond the competence or authority of the Court: [33]–[39].

**12.6**

If the defendant files an acknowledgment of service indicating an intention to dispute the Court's jurisdiction, the claimant need not serve particulars of claim before the hearing of the application.

**12.7**

An order containing a declaration that the Court has no jurisdiction or will not exercise its jurisdiction may also make further provision including:

(1) setting aside the claim form;

(2) setting aside service of the claim form;

(3) discharging any order made before the claim was commenced or before the claim form was served; or

(4) staying the proceedings.



**Further provisions on a declaration of a lack of jurisdiction**
**12.7.1**
In *International Electromechanical Services Co. LLC v (1) Al Fattan Engineering LLC and (2) Al Fattan Properties LLC* [2012] DIFC CFI 004 (14 October 2012) the Court held that the DIFC Court possesses an inherent jurisdiction to stay proceedings, codified in various provisions, including RDC 4.2(6) and RDC 12.7 as well as under Article 13 of the DIFC Court Law No. 10 of 2004, but noted that these provisions do not detail the scope or content of the jurisdiction: [98]–[99]. The Judge noted that under RDC 12.7(4) the Court has an express power, within a declaration declining to exercise jurisdiction, to include an order staying the proceedings: [98].

**12.8**
If on an application under this Part the Court does not make a declaration:

(1) the acknowledgment of service shall cease to have effect;

(2) the defendant may file a further acknowledgment of service within 14 days or such other period as the Court may direct; and

(3) the Court shall give directions as to the filing and service of the defence in a claim under Part 7 or the filing of evidence in a claim under Part 8 in the event that a further acknowledgment of service is filed.

**Further provisions where no declaration is made**
**12.8.1**



In *King and Wood Mallesons (MENA) LLP and Meydan Group LLC and Banyan Tree Corporate Pte Limited* [2017] DIFC CA 001 (20 March 2017) the Court had to consider the position of a party's legal representatives following a failed challenge to jurisdiction. In this case Banyan Tree (the claimant) had filed an arbitration claim form for the recognition and enforcement of an arbitration award. An acknowledgement of service was filed by the defendant, Meydan, which gave as the address for future service the details of the appellant, KWM. Meydan disputed the Court's jurisdiction by its acknowledgment of service. That jurisdictional challenge failed and so RDC 12.8 was engaged. The Court held that the whole point of this rule is that, having made its jurisdictional challenge, the defendant can then decide whether or not to participate in the proceedings thereafter: [10]. KWM and Meydan indicated to the Court following the failure of the jurisdictional challenge that Meydan would take no further part in the proceedings and that KWM were no longer instructed in the matter. The defendant filed no further acknowledgment of service, the effect of which was that the defendant did not submit to the jurisdiction: [13]. Both the claimant and the Courts proceeded on the erroneous basis, however, that KWM remained on the record until an alternative address for service was provided: [17]. It was held that the provisions of RDC Part 37 dealing with the changes of legal representatives have no application to the position which arises under RDC 12.8; neither KWM nor the defendant was obliged to provide an address for service in the claim where there had been a challenge to jurisdiction which failed and when the decision was taken both that KWM should cease to act and that the defendant would not participate in the proceedings: [17]. It was held that once the time for the filing of the new acknowledgment of service and acceptance of the Court's jurisdiction had expired there was no lawyer on the record for the claim at that stage and KWM had no authority to accept service or act for defendant once the jurisdiction challenge was over: [46]–[47].





**12.9**

If the defendant files a further acknowledgment of service in accordance with **Rule 12.8(2)** he shall be treated as having accepted that the Court has jurisdiction to try the claim.

**12.10**

If a defendant makes an application under this Part, he must file and serve his written evidence in support with the application notice, but he need not before the hearing of the application file:

(1) in a **Part 7** claim, a defence; or

(2) in a **Part 8** claim, any other written evidence.

## PART 13
DEFAULT JUDGMENT

**13.1**

In these Rules, 'default judgment' means judgment without trial where a defendant.

(1) has failed to file an acknowledgment of service; or (2) has failed to file a defence.



**13.2**

For the purposes of this Part, a defence includes any document purporting to be a defence.



Claims In Which Default Judgment May Not Be Obtained

**13.3**

A claimant may not obtain a default judgment —

(1) where he uses the procedure set out in Part 8 (alternative procedure for claims); or

(2) in any other case where a Rule or Practice Direction provides that the claimant may not obtain default judgment.

**CONDITIONS TO BE SATISFIED**

**13.4**

The claimant may obtain judgment in default of an acknowledgment of service only if—

(1) the defendant has not filed an acknowledgment of service or a defence to the claim (or any part of the claim); and

(2) the relevant time for doing so has expired.





**13.5**

Judgment in default of defence may be obtained only—

(1) where an acknowledgement of service has been filed but a defence has not been filed;

(2) in a counterclaim made under **Rule 21.7**, where a defence has not been filed,

and, in either case, the relevant time limit for doing so has expired.

**13.6**

The claimant may not obtain a default judgment:

(1) if the defendant has applied:

    (a) to have the claimant's statement of case struck out under **Rule 4.16**; or
    (b) for immediate judgment under Part 24; and, in either case, that application has not been disposed of;

(2) if the defendant has satisfied the whole claim (including any claim for costs) on which the claimant is seeking judgment;

(3) if the claimant is seeking judgment on a claim for money and the defendant has filed or served on the claimant an admission under **Rule 15.14** or **15.24** (admission of liability to pay all of the money claimed) together with a request for time to pay;

(4) unless he has either filed a certificate of service under **Rule 9.43** or the Defendant has filed an acknowledgment of service.

**Procedure For Obtaining Default Judgment**
**13.7**

A claimant may obtain a default judgment by filing a request in Form P13/01 or Form P13/02.

**13.8**

Requests for default judgment:

(1) in respect of a claim for a specified amount of money or for the delivery of goods where the defendant will be given the alternative of paying a specified sum representing their value, or for fixed costs only, must be in Form P13/01,

(2) in respect of a claim where an amount of money (including an amount representing the value of goods) is to be decided by the Court, must be in Form P13/02 and

(3) in every other case, must be in Form P13/02 amended as necessary to describe the judgment requested.



**Nature Of Judgment Where Default Judgment Obtained By Filing A Request**
**13.9**
Where the claim is for a specified sum of money, the claimant may specify in a request filed under **Rule 13.7**—

(1) the date by which the whole of the judgment debt is to be paid; or

(2) the times and rate at which it is to be paid by instalments.

**13.10**
Except where **Rule 13.12** applies, a default judgment on a claim for a specified amount of money obtained on the filing of a request, will be judgment for the amount of the claim (less any payments made) and costs—

(1) to be paid by the date or at the rate specified in the request for judgment; or

(2) if none is specified, immediately.

**13.11**
Where the claim is for an unspecified amount of money a default judgment obtained on the filing of a request will be for an amount to be decided by the Court and costs.

**13.12**
Where the claim is for delivery of goods and the claim form gives the defendant the alternative of paying their value, a default judgment obtained on the filing of a request will be judgment requiring the defendant to—

(1) deliver the goods or (if he does not do so) pay the value of the goods as decided by the Court (less any payments made); and

(2) pay costs.

**13.13**
The claimant's right to enter judgment requiring the defendant to deliver goods is subject to **Rule 36.50** (judgment in favour of certain part owners relating to the detention of goods).

**Interest**
**13.14**
A default judgment on a claim for a specified amount of money obtained on the filing of a request may include the amount of interest claimed to the date of judgment if—

(1) the claim form includes the details required by **Rule 17.18**;

(2) where interest is claimed under

(a) Articles 118 or 119 of the Contract Law 2004;

(b) Articles 17, 18 or 32 of the Law of Damages and Remedies 2005;



(c) Article 121(b) of the Law of Obligations 2005;

(d) Article 80 of the DIFC Employment Law 2005; the rate is no higher than the rate of interest fixed by these Rules under Article 39(2)(a) of the Court Law payable on judgment debts at the date when the claim form was issued; and

(3) the claimant's request for judgment includes a calculation of the interest claimed for the period from the date up to which interest was stated to be calculated in the claim form to the date of the request for judgment.

**13.15**
In any case where Rule 13.14 does not apply, judgment will be for an amount of interest to be decided by the Court.

**Procedure For Deciding An Amount Or Value**
**13.16**
Where the claimant obtains a default judgment on the filing of a request and judgment is for—

(1) an amount of money to be decided by the Court;

(2) the value of goods to be decided by the Court; or

(3) an amount of interest to be decided by the Court



when the Court enters judgment it will give any directions it considers appropriate.

**Claim Against More Than One Defendant**
**13.17**
A claimant may obtain a default judgment on request under this Part against one of two or more defendants, and proceed with his claim against the other defendants.

**13.18**
Where a claimant applies for a default judgment against one of two or more defendants —

(1) if the claim can be dealt with separately from the claim against the other defendants

(a) the Court may enter a default judgment against that defendant; and

(b) the claimant may continue the proceedings against the other defendants;

(2) if the claim cannot be dealt with separately from the claim against the other defendants

(a) the Court will not enter default judgment against that defendant; and

(b) the Court must deal with the application at the same time as it disposes of the claim against the other defendants.





**13.19**

A claimant may not enforce against one of two or more defendants any judgment obtained under this Part for delivery of goods unless—

(1) he has obtained a judgment for delivery (whether or not obtained under this Part) against all the defendants to the claim; or

(2) the Court gives permission.

**Procedure For Obtaining A Default Judgment For Costs Only**
**13.20**

Where a claimant wishes to obtain a default judgment for costs only—

(1) if the claim is for fixed costs, he may obtain it by filing a request in the relevant practice form;

(2) if the claim is for any other type of costs, he must make an application in accordance with Part 23.

**13.21**

Where an application is made under Rule 13.20 for costs only, judgment shall be for an amount to be decided by the Court.

**Evidence**
**13.22**



On a request for default judgment the Court must be satisfied that:

(1) the claim form has been served on the defendant (a certificate of service on the Court file will be sufficient evidence);

(2) either the defendant has not filed an acknowledgment of service or has not filed a defence and that in either case the relevant period for doing so has expired;

(3) the defendant has not satisfied the claim; and

(4) the defendant has not returned an admission to the claimant under Rule 15.14 or filed an admission with the Court under Rule 15.24.

**13.23**

On a request where the defendant was served with the claim outside the jurisdiction and the defendant has not acknowledged service, the evidence must establish that:

(1) the claim is one that the Court has power to hear and decide,

(2) no other court has exclusive jurisdiction to hear and decide the claim, and

(3) the claim has been properly served.

**13.24**

Evidence referred to in Rule 13.23 above must be by affidavit.





**13.25**

On an application for judgment for delivery up of goods where the defendant will not be given the alternative of paying their value, the evidence must identify the goods and state where the claimant believes the goods to be situated and why their specific delivery up is sought.

**Currency**
**13.26**

Where default judgment is given on a claim for a sum of money expressed in a currency other than US Dollars, the judgment should be for the amount of that currency with the addition of 'or the US Dollar equivalent at the time of payment'.

## PART 14
SETTING ASIDE OR VARYING DEFAULT JUDGMENT

**CASES WHERE THE COURT MUST SET ASIDE JUDGMENT ENTERED UNDER PART 13**
**14.1**

The Court must set aside a judgment entered under Part 13 if judgment was wrongly entered because.

> (1) in the case of a judgment in default of an acknowledgment of service, any of the conditions in Rules 13.4 and 13.6 was not satisfied;

> (2) in the case of a judgment in default of a defence, any of the conditions in Rules 13.5 and 13.6 was not satisfied; or

> (3) the whole of the claim was satisfied before judgment was entered.

**Where the court *must* set aside default judgment**
**14.1.1**

RDC 14.1 concerns the mandatory grounds for setting aside default judgment. The discretionary grounds are set out in the next rule.

In *Anna Dadic v Orion Holding Overseas Limited* [2008] DIFC CFI 007 the defendant successfully applied to have judgment in default set aside on the basis that it had been prematurely obtained. The Court held that the requisite 14 day period set out in RDC 11.5 had not been met for the purposes of obtaining judgment in default of filing an acknowledgment of service under RDC 13.4. The claim had been mailed to the defendant on 17 December 2008. The second day under RDC 9.27 fell on 19 December 2008. That was a Friday. Accordingly, the deemed date of service was 21 December 2008, from which date time started to run. By RDC 2.12, a day refers to a business day being a normal working day in the DIFC. Taking into account non-business days, the 14th clear day from 21 December 2008 fell on 12 January 2009. Since the default judgment was dated 11 January 2008, it had been entered prior to the expiry of the 14th day and therefore the judgment had to be set aside. Permission to appeal was refused: [2008] DIFC CFI 007 per Sir Anthony Evans CJ (14 Jun 2009).







**Cases Where The Court May Set Aside Or Vary Judgment Entered Under Part 13**
**14.2**
In any other case, the Court may, on such conditions as it sees fit, set aside or vary a judgment entered under Part 13 if:

(1) the defendant has a real prospect of successfully defending the claim; or

(2) it appears to the Court that there is some other good reason why:

(a) the judgment should be set aside or varied; or

(b) the defendant should be allowed to defend the claim.

**Where the court *may* set aside default judgment**
**14.2.1**
In *Essam Al Tamimi v Jorum Limited* CFI 028/2016 (Schedule of Reasons issued 16 July 2017), Shamlan al Sawalehi J confirmed that the test of *"real prospect of success"* in RDC 14.2(1) means realistic rather than fanciful, applying *Swain v Hillman* [1999] EWCA Civ 3053. This is the familiar test for immediate judgment in the DIFC and summary judgment in England.

The case of (1) *Ebi Sa, France (2) Ecobank Nigeria Limited (3) Ecobank Senegal v (1) Lal Mahal Dmcc (2) Little Rose General Trading LLC (3) Prem Chand Garg* [2016] DIFC CFI 024 (14 November 2016) highlights the importance of giving complete evidence when seeking to set aside default judgment. In this case each of the defendants (who had not filed acknowledgments of service) sought to have default judgment given on claims for monies due from a borrower and from guarantors set aside on various grounds. One of the grounds on which the defendants relied was that the defendants could not file a defence in time since the investor of the companies was *"out of the country due to some personal, unavoidable reasons"*. Giles J noted that the affidavit given in support of the application gave no explanation for the failure to file an acknowledgment of service nor any evidence to support the ground advanced: [10]. The Court held that the defendants did not have a real prospect of successfully defending the claims, although the default judgment was varied in several respects.

**14.3**
In considering whether to set aside or vary a judgment entered under Part 13, the matters to which the Court must have regard include whether the person seeking to set aside the judgment made an application to do so promptly.

**Application To Set Aside Or Vary Judgment — Procedure**
**14.4**
An application under **Rule 14.2** (cases where the Court may set aside or vary judgment) must be supported by evidence.





# PART 15
## ADMISSIONS

**Making An Admission**
**15.1**
A party may admit the truth of the whole or any part of another party's case by giving notice in writing (such as in a statement of case or by letter).

**15.2**
Where the only remedy which the claimant is seeking is the payment of money, the defendant may also make an admission in accordance with:

(1) Rule 15.14 (admission of whole claim for specified amount of money);

(2) Rule 15.18 (admission of part of claim for specified amount of money);

(3) Rule 15.19 (admission of liability to pay whole of claim for unspecified amount of money); or

(4) Rule 15.24 (admission of liability to pay claim for unspecified amount of money where defendant offers a sum in satisfaction of the claim).



**15.3**
Where the defendant makes an admission as mentioned in Rule 15.2, the claimant has a right to enter judgment.

**15.4**
The permission of the Court is required to amend or withdraw an admission.

**How To Make An Admission**
**15.5**
When the claim form is served on a defendant, the forms for responding to the claim that will accompany them will include a form for making an admission.

**15.6**
If the defendant wishes to make an admission in respect of the whole of a claim for a specified amount of money, the admission form or other written notice of the admission should be completed and returned to the claimant within the period set out in Rule 15.8.

**15.7**
If the defendant wishes to make an admission in respect of a part of a claim for a specified amount of money, or in respect of a claim for an unspecified amount of money:

(1) the admission form or other written notice of admission should be completed and filed with the Court within the period set out in Rule 15.8; and

(2) the defendant may also file a defence under Rule 16.3.





**Period For Making An Admission**

**15.8**

The period for returning an admission under **Rule 15.14** or for filing it under **Rules 15.18**, **15.19** or **15.24** is:

(1) where the defendant is served with a claim form which states that particulars of claim will follow, 14 days after service of the particulars; and

(2) in any other case, 14 days after service of the claim form.

**15.9**

Rule 15.8 is subject to the following rules:

(1) **Rule 9.56** (which specifies how the period for filing or returning an admission is calculated where the claim form is served out of the jurisdiction); and

(2) **Rule 9.48** (which requires the Court to specify the period for responding to the particulars of claim when it makes an order under that rule).

**15.10**

A defendant may return an admission under **Rule 15.14** or file it under **Rules 15.18**, **15.19** or **15.24** after the end of the period for returning or filing it specified in **Rule 15.8** if the claimant has not obtained default judgment under Part 13.

**15.11**

If he does so, this Part shall apply as if he had made the admission within that period.

**Admission By Notice In Writing — Application For Judgment**

**15.12**

Where a party makes an admission under **Rule 15.1** (admission by notice in writing), any other party may apply for judgment on the admission.

**15.13**

Judgment shall be such as it appears to the Court that the applicant is entitled to on the admission.

**Admission Of Whole Of Claim For Specified Amount Of Money**

**15.14**

Where:

(1) the only remedy which the claimant is seeking is the payment of a specified amount of money; and

(2) the defendant admits the whole of the claim

the defendant may admit the claim by returning to the claimant an admission in Form 15/01 or Form 15/02.

**15.15**

The claimant may obtain judgment by filing a request in Form 13/01, and, if he does so:






(1) if the defendant has not requested time to pay, the procedure in Rules 15.16 to 15.17 will apply;

(2) if the defendant has requested time to pay, the procedure in Rules 15.33 to 15.38 will apply.

**15.16**

The claimant may specify in his request for judgment:

(1) the date by which the whole of the judgment debt is to be paid; or

(2) the times and rate at which it is to be paid by instalments.

**15.17**

On receipt of the request for judgment the Court will enter judgment for the amount of the claim (less any payments made) and costs:

(1) to be paid by the date or at the rate specified in the request for judgment; or

(2) if none is specified, immediately.

**Admission Of Part Of A Claim For A Specified Amount Of Money**
**15.18**

If the defendant admits part of a claim for a specified amount of money, the claimant may apply under **Rule 15.12** for judgment on the admission.



**Admission Of Liability To Pay Whole Of Claim For Unspecified Amount Of Money**
**15.19**

Where:

(1) the only remedy which the claimant is seeking is the payment of money;

(2) the amount of the claim is not specified; and

(3) the defendant admits liability but does not offer to pay a specified amount of money in satisfaction of the claim,

the defendant may admit the claim by filing an admission in the relevant Form P15/03.

**15.20**

On receipt of the admission, the Court will serve a copy on the claimant.

**15.21**

The claimant may obtain judgment by filing a request in Form P15/03.

**15.22**

If the claimant does not file a request for judgment within 14 days after service of the admission on him, the claim is stayed until he files the request.





**15.23**

On receipt of the request for judgment the Court will enter judgment for an amount to be decided by the Court and costs.

**Admission Of Liability To Pay Claim For Unspecified Amount Of Money Where Defendant Offers A Sum In Satisfaction Of The Claim**
**15.24**
Where:

(1) the only remedy which the claimant is seeking is the payment of money;

(2) the amount of the claim is not specified; and

(3) the defendant

(a) admits liability; and

(b) offers to pay a specified amount of money in satisfaction of the claim

the defendant may admit the claim by filing an admission in Form P15/01.

**15.25**

On receipt of the admission, the Court will serve a notice on the claimant requiring him to return the notice stating whether or not he accepts the amount in satisfaction of the claim.

**15.26**

If the claimant does not file the notice within 14 days after it is served on him, the claim is stayed until he files the notice.

**15.27**

If the claimant accepts the offer he may obtain judgment by filing a request in Form P13/01 and if he does so:

(1) if the defendant has not requested time to pay, the procedure in Rules 15.28 to 15.31 will apply;

(2) if the defendant has requested time to pay, the procedure in Rules 15.33 to 15.38 will apply.

**15.28**

The claimant may specify in his request for judgment:

(1) the date by which the whole of the judgment debt is to be paid; or

(2) the times and rate at which it is to be paid by instalments.

**15.29**

On receipt of the request for judgment, the Court will enter judgment for the amount offered by the defendant (less any payments made) and costs:








(1) to be paid on the date or at the rate specified in the request for judgment; or

(2) if no such date or rate is specified, to be paid immediately.

**15.30**
If the claimant does not accept the amount offered by the defendant, he may obtain judgment by filing a request in Form P15/03.

**15.31**
Judgment under **Rule 15.30** will be for an amount to be decided by the Court and costs.

**Directions In Relation To Outstanding Matters**
**15.32**
Where the Court enters judgment under **Rules 15.23** or **15.30** for an amount to be decided by the Court, it will give any directions it considers appropriate.

**Request For Time To Pay**
**15.33**
A defendant who makes an admission under **Rules 15.14**, **15.18** or **15.24** (admission relating to a claim for a specified amount of money or offering to pay a specified amount of money) may make a request for time to pay.

**15.34**
A request for time to pay is a proposal about the date of payment or a proposal to pay by instalments at the times and rate specified in the request.



**15.36**
If the defendant is requesting time to pay he should complete as fully as possible the statement of means contained in the admission form, or otherwise give in writing the same details of his means as could have been given in the admission form.

**15.37**
If the claimant accepts the defendant's request, he may obtain judgment by filing a request in Form P13/01.

**15.38**
On receipt of the request for judgment, the Court will enter judgment:

(1) where **Rule 15.14** applies, for the amount of the claim (less any payments made) and costs;

(2) where **Rule 15.18** applies, for the amount admitted (less any payments made) and costs; or

(3) where **Rule 15.24** applies, for the amount offered by the defendant (less any payments made) and costs; and

(4) (in all cases) for payment at the time and rate specified in the defendant's request for time to pay.





**Determination Of Rate Of Payment**

**15.39**
Where the defendant has made a request for time to pay under **Rule 15.33** if the claimant does not accept the defendant's proposals for payment, he must file a notice in Form P13/01.

**15.40**
Where the defendant's admission was served direct on the claimant, a copy of the admission and the request for time to pay must be filed with the claimant's notice.

**15.41**
When the Court receives the claimant's notice, it will enter judgment for the amount admitted (less any payments made) to be paid at the time and rate of payment determined by the Registrar.

**15.42**
Where the Registrar is to determine the time and rate of payment, he may do so without a hearing.

**15.43**
If there is to be a hearing to determine the time and rate of payment, the Court must give each party at least 7 days' notice of the hearing.

**15.44**
Where the Registrar has determined the time and rate of payment under **Rule 15.42**, either party may apply for the decision to be re-determined by a Judge.

**15.45**
An application for re-determination must be made within 14 days after service of the determination on the applicant.

**15.46**
In deciding the time and rate of payment the Court will take into account:

    (1) the defendant's statement of means set out in the admission form or in any other written notice of the admission filed,

    (2) the claimant's objections to the defendant's request set out in the claimant's notice, and

    (3) any other relevant factors.

**15.47**
Either party may, on account of a change in circumstances since the date of the decision (or re-determination as the case may be) apply to vary the time and rate of payment of instalments still remaining unpaid.

**15.48**
An application to vary under **Rule 15.47** above should be made in accordance with Part 23.






**Interest**
**15.49**
Judgment under **Rule 15.14** (admission of whole of claim for specified amount of money) shall include the amount of interest claimed to the date of judgment if:

(1) the claim form includes the details required by **Rule 17.18**;

(2) where interest is claimed under

(a) Articles 118 or 119 of the Contract Law 2004;

(b) Articles 17, 18 or 32 of the Law of Damages and Remedies 2005;

(c) Article 121(b) of the Law of Obligations 2005; or

(d) Article 80 of the DIFC Employment Law 2005;

the rate is no higher than the rate of interest fixed by these Rules under Article 39(2)(a) of the Court Law payable on judgment debts at the date when the claim form was issued; and

(3) the claimant's request for judgment includes a calculation of the interest claimed for the period from the date up to which interest was stated to be calculated in the claim form to the date of the request for judgment.



**15.50**
In any case where judgment is entered under **Rule 15.14** and the conditions in **Rule 15.49** are not satisfied judgment shall be for an amount of interest to be decided by the Court.

**15.51**
Where judgment is entered for an amount of interest to be decided by the Court, the Court will give directions for the management of the case.

**Withdrawing An Admission**
**15.52**
An admission made under this Part may be withdrawn with the Court's permission.

**15.53**
In deciding whether to give permission for an admission to be withdrawn, the Court will have regard to all the circumstances of the case, including:

(1) the grounds upon which the applicant seeks to withdraw the admission including whether or not new evidence has come to light which was not available at the time the admission was made;

(2) the conduct of the parties, including any conduct which led the party making the admission to do so;

(3) the prejudice that may be caused to any person if the admission is withdrawn;





(4) the prejudice that may be caused to any person if the application is refused;

(5) the stage in the proceedings at which the application to withdraw is made, in particular in relation to the date or period fixed for trial;

(6) the prospects of success (if the admission is withdrawn) of the claim or part of the claim in relation to which the offer was made; and

(7) the interests of the administration of justice.


## PART 16
### DEFENCE AND REPLY

**Exceptions To This Part**
**DEFENCE AND REPLY**
**16.1**
This Part does not apply where the claimant uses the procedure set out in Part 8 (alternative procedure for claims).

**16.2**
In relation to specialist proceedings in respect of which special provisions for defence and reply are made by these Rules and Practice Directions applicable to those claims, the provisions of this Part apply only to the extent that they are not inconsistent with those Rules and Practice Directions.




**Filing A Defence**
**16.3**
A defendant who wishes to defend all or part of a claim must file a defence.

**Consequence Of Not Filing A Defence**
**16.4**
If a defendant fails to file a defence, the claimant may obtain default judgment if Part 13 allows it.

**Form Of Defence**
**16.5**
A party may file a defence by submitting it electronically using the Court's e-filing system.

**Statement Of Truth**
**16.6**
Part 22 requires a defence to be verified by a statement of truth.

**16.7**
The form of the statement of truth is as follows:

'[I believe][the defendant believes] that the facts stated in this defence are true.'



**16.8**

Attention is drawn to Section VI of Part 29 which sets out the consequences of verifying a statement of case containing a false statement without an honest belief in its truth.

**The Period For Filing A Defence**
**16.9**

The general rule is that the period for filing a defence is:

(1) 14 days after service of the particulars of claim; or

(2) if the defendant files an acknowledgment of service under Part 11, 28 days after service of the particulars of claim.

**16.10**

The general rule is subject to the following rules:

(1) Rule 9.57 (which specifies how the period for filing a defence is calculated where the claim form is served out of the jurisdiction);

(2) Rule 12.10 (which provides that, where the defendant makes an application disputing the Court's jurisdiction, he need not file a defence before the hearing);

(3) Rule 24.5 (which provides that, if the claimant applies for immediate judgment before the defendant has filed a defence, the defendant need not file a defence before the immediate judgment hearing); and

(4) Rule 9.48 (which requires the Court to specify the period for responding to the particulars of claim when it makes an order under Rule 9.45).

**Agreement Extending The Period For Filing A Defence**
**16.11**

The defendant and the claimant may agree that the period for filing a defence specified in Rules 16.9 and 16.10 shall be extended by up to 28 days.

**16.12**

Where the defendant and the claimant agree to extend the period for filing a defence, the defendant must notify the Court in writing.

**Service Of Copy Of Defence**
**16.13**

A copy of the defence must be served on every other party.

**Making A Counterclaim**
**16.14**

Part 21 applies to a defendant who wishes to make a counterclaim.

**16.15**

Where a defendant to a claim serves a counterclaim under Part 21, the defence and counterclaim should normally form one document, with the counterclaim following on from the defence.






**Reply To Defence**
**16.16**
If a claimant files a reply to the defence, he must:

    (1) file his reply within 21 days after service of the defence; and

    (2) serve it on all other parties at the same time.

**16.17**
The reply should be served before case management information sheets are provided to the Court. In the normal case, this will allow the parties to consider any reply before completing the case management information sheet, and allow time for the preparation of the case memorandum and the list of issues each of which is required for the case management conference.

**16.18**
In some cases, more than 21 days may be needed for the preparation, service and filing of a reply. In such cases an application should be made on paper for an extension of time and for a postponement of the case management conference.

**16.19**
Where a claimant serves a reply and a defence to counterclaim, the reply and defence to counterclaim should normally form one document, with the defence to counterclaim following on from the reply.



**No Statement Of Case After A Reply To Be Filed Without Court's Permission**
**16.20**
A party may not file or serve any statement of case after a reply without the permission of the Court.



**Claimant's Notice Where Defence Is That Money Claimed Has Been Paid**
**16.21**
Where:

    (1) the only claim (apart from a claim for costs and interest) is for a specified amount of money; and

    (2) the defendant states in his defence that he has paid to the claimant the amount claimed,

the Court will send notice to the claimant requiring him to state in writing whether he wishes the proceedings to continue.

**16.22**
The claimant must respond to a notice issued by the Court under **Rule 16.21** within 28 days after service of the notice on him. When the claimant responds, he must serve a copy of his response on the defendant.

**16.23**
If the claimant fails to respond under **Rule 16.22** within 28 days after service of the Court's notice on him, the claim shall be stayed.





**16.24**
Where a claim is stayed under this Rule, any party may apply for the stay to be lifted.

**Claim Stayed If It Is Not Defended Or Admitted**
**16.25**
Where:

    (1) at least 6 months have expired since the end of the period for filing a defence specified in Rules 16.9 and 16.10;

    (2) no defendant has served or filed an admission or filed a defence or counterclaim; and

    (3) the claimant has not entered or applied for judgment under Part 13 (default judgment), or Part 24 (immediate judgment);

the claim shall be stayed.

**16.26**
Where a claim is stayed under Rule 16.25, any party may apply for the stay to be lifted.

**Application To Lift Stay**
**16.27**
Any application made under Rule 16.24 or Rule 16.26 should be made in accordance with Part 23 and should give the reason for the applicant's delay in proceeding with or responding to the claim.



## PART 17
STATEMENTS OF CASE

**Statements of Case**
**17.0.1**
In *Asif Hakim Adil v Frontline Development Partners Limited* [2014] DIFC CFI 015 (3 April 2016) the Court noted the *"utmost importance that practitioners plead only that which can reasonably be supported"*: [288]. In that case Frontline had pleaded a raft of allegations as conduct justifying termination for cause, many of which were abandoned before trial. The Court noted that the *"extent of the discrepancy between Frontline's pleaded defence and counterclaim and the case it maintained"* might serve as a reminder of the professional obligations regarding statements of case.

**Exceptions To This Part**
**17.1**
This Part does not apply where the claimant uses the procedure set out in Part 8 (alternative procedure for claims).

**17.2**
Where special provisions about statements of case are made by the Rules and Practice Directions applying to particular types of proceedings, the provisions of this Part apply only to the extent that they are not inconsistent with those Rules and Practice Directions.





**17.3**

The Court may at any time before or after the issue of the claim form order a claim to proceed without the filing or service of statements of case.

**Heading Of Claim Form**
**17.4**

The claim form must be headed with the title of the proceedings, including the full name of each party. The full name means, in each case where it is known:

(1) in the case of an individual, his full unabbreviated name and title by which he is known;

(2) in the case of an individual carrying on business in a name other than his own name, the full unabbreviated name of the individual, together with the title by which he is known, and the full trading name;

(3) in the case of a partnership (other than a limited liability partnership (LLP))—

(a) where partners are being sued in the name of the partnership, the full name by which the partnership is known, together with the words '(A Firm)'; or

(b) where partners are being sued as individuals, the full unabbreviated name of each partner and the title by which he is known;

(4) in the case of a company or limited liability partnership registered in the DIFC, the full registered name, including suffix (LLC, limited, LLP, etc) if any;

(5) in the case of any other company or corporation, the full name by which it is known, including suffix where appropriate.

**Claimant's Address To Be Included In The Claim Form**
**17.5**

The claim form must include the claimant's mailing address or an address at which the claimant resides or carries on business. This Rule applies even though the claimant's address for service is the business address of his legal representative.

**17.6**

Where the defendant is an individual, the claimant should (if he is able to do so) include in the claim form the defendant's mailing address or an address at which the defendant resides or carries on business. This Rule applies even though the defendant's legal representative has agreed to accept service on the defendant's behalf.

**17.7**

If the claim form does not show an address as required by Rule 17.5, the claim form will not be issued. The Court will notify the claimant.

**Contents Of The Claim Form**
**17.8**

The claim form must:





(1) contain a concise statement of the nature of the claim;

(2) specify the remedy which the claimant seeks;

(3) where the claimant's only claim is for a specified sum, contain a statement of the interest accrued on that sum; and

(4) contain such other matters as may be set out in a Practice Direction.

**17.9**
In proceedings against the Government, the Centre Authority or any of the Centre's Bodies, the claim form must comply with the requirements of Part 41.

**17.10**
If the particulars of claim are not contained in, or are not served with the claim form, the claimant must state on the claim form that the particulars of claim will follow if an acknowledgement of service is filed which indicates an intention to defend the claim.

**17.11**
If the claimant is claiming in a representative capacity, the claim form must state what that capacity is.

**17.12**
If the defendant is sued in a representative capacity, the claim form must state what that capacity is.



**17.13**
The Court may grant any remedy to which the claimant is entitled even if that remedy is not specified in the claim form.

**Contents Of The Particulars Of Claim — General**
**17.14**
A claimant is not required to serve particulars of claim unless and until the defendant serves an acknowledgment of service in response to the claim form.

**17.15**
Where the claimant does not include the particulars of claim in the claim form, particulars of claim may be served separately:

(1) either at the same time as the claim form, or

(2) within 28 days of the filing of an acknowledgment of service which indicates an intention to defend.

**17.16**
Particulars of claim served separately from the claim form must also contain:

(1) [deleted],

(2) the claim number,





    (3) the title of the proceedings, and

    (4) the claimant's address for service.

**17.17**
Particulars of claim must include:

    (1) a concise statement of the facts on which the claimant relies;

    (2) if the claimant is seeking interest, a statement to that effect and the details set out in paragraph 17.18;

    (3) if the claimant is seeking multiple damages under Article 40(2) of the Law of Damages and Remedies 2005, a statement to that effect and his grounds for claiming them;

    (4) such other matters as may be set out in a Practice Direction.

**Requirements of particulars of claim**
**17.17.1**
The RDC require the particulars of claim to include, amongst other things, a concise statement of the facts on which the claimant relies. What this means in practice has been considered in several cases, albeit without expressly referencing this rule.




In *Mr Rafed Abdel Mohsen Bader Al Khorafi and others v Bank Sarasin-Alpen* (ME) *Limited and another* [2010] DIFC CA 001 (9 November 2010) the claimants appealed orders (made by the CFI in [2009] DIFC CFI 026 (7 July 2010) ) by which their claims for misrepresentation and negligence had been struck out as being insufficiently particularised and also sought permission to re-amend their pleadings. The first defendant appealed against a refusal of the first instance judge to strike out the claimants' claim for breach of contract on the basis that the claim was insufficiently particularised. The claimants' proposed amendments involved the deletion of very many paragraphs from and the addition of a considerable body of text to the pleading that was before the first instance judge. Each of the claims consisted largely of cross-referencing facts set out in detail in the first 95 paragraphs of the pleading. The Court held that the pleading technique of reference back to the factual narrative is an entirely legitimate method of expressing the factual basis of a cause of action, whether in deceit, negligence or breach of contract; there was no need to repeat all those factual details for each separate cause of action: [12]. The Court also held that the allegations of fact cross-referred to would, if proved, be capable of founding the causes of action relied upon; the essential factual foundation had been set out: [13]. The Court granted permission to the claimants to re-amend their particulars in the terms of that draft.

Following trial of the above proceedings, at which the first defendant was held liable for failure to comply with the DFSA Rules and the second defendant was held liable for dealing with the claimants in breach of the Financial Service Prohibition under Article 41 of the Regulatory Law No 1 of 2004, the defendants were ordered to pay compensation. Further pleading arguments were raised by the defendants which were determined by Chadwick DCJ: see case reference [2009] DIFC CFI 026 (7 October 2015). It was submitted by the defendants that various heads of losses claimed could




not be recovered since these had not been pleaded, nor sought at the trial on liability. The Judge held that the purpose of pleadings is to mark out the parameters of the case advanced by each party so that the issues in dispute are clear prior to trial and the parties can decide what evidence to place before the Court at trial; where the failure of a party to plead his case in a manner which enables the other party to obtain and put before the Court the necessary evidence would give rise to injustice, the Court may be expected to take the view that the appropriate response is to strike out that case or that part of the case: [32]. In this case the Judge held that no injustice had been caused by the failure to plead in advance of trial the losses claimed; the defendants had known from the contents of the claimants' expert report and the way in which the case had been opened at trial, that these losses would be claimed and witnesses were available for cross-examination at the hearing of the quantum determination: [33].

In *Deyaar Development PJSC v Taaleem PJSC & National Bonds Corporation PJSC* [2015] DIFC CA 010 (18 August 2016), although RDC 17.17 was not expressly mentioned, the Court considered the principles relevant to determining whether pleadings are sufficiently particularised. Before the Court of Appeal Deyaar appealed a finding of the trial judge that it was liable to pay NBC profit charges; Deyaar argued this this was a new issue of liability which had never been pleaded or advanced during the hearings on liability and quantum before the trial judge. The Court of Appeal, in considering the principles relevant to the particularity of pleadings, referred to the judgment of Lord Hope in *Three Rivers District Counsel v Bank of England (No 3)* [2003] 2 AC 1. The Court of Appeal described this case as being useful in guiding the Court as to the balance which needs to be struck between the need for fair notice to be given on the one hand and excessive demands for detail on the other; what is important is that the pleadings should make clear the general nature of the case of the pleader. The Court in *Deyaar* held that sufficient notice of NBC's claim in relation to recurring profit charges had been given; accordingly, the Court dismissed Deyaar's appeal against the order that it pay profit charges.

**17.18**
If the claimant is seeking interest he must:

(1) state whether he is doing so:

(a) under the terms of a contract;

(b) under an enactment and if so which; or

(c) on some other basis and if so what that basis is; and

(2) if the claim is for a specified amount of money, state:

(a) the percentage rate at which interest is claimed;

(b) the date from which it is claimed;

(c) the date to which it is calculated, which must not be later than the date on which the claim form is issued;



(d) the total amount of interest claimed to the date of calculation; and

(e) the daily rate at which interest accrues after that date.

**Contents Of The Particulars Of Claim — Specific**
**17.19**
Where a claim is made for an injunction or declaration in respect of or relating to any land the particulars of claim must:

(1) state whether or not the injunction or declaration relates to residential premises, and

(2) identify the land (by reference to a plan where necessary).

**17.20**
Where a claim is brought to enforce a right to recover possession of goods the particulars of claim must contain a statement showing the value of the goods.

**17.21**
Where a claim is brought for personal injury:

(1) the particulars of claim must contain:

(a) the claimant's date of birth, and

(b) brief details of the claimant's personal injuries;

(2) the claimant must attach to his particulars of claim a schedule of details of any past and future expenses and losses which he claims; and

(3) where the claimant is relying on the evidence of a medical practitioner the claimant must attach to or serve with his particulars of claim a report from a medical practitioner about the personal injuries which he alleges in his claim.

**Matters Which Must Be Specifically Set Out In The Particulars Of Claim If Relied On**
**17.22**
A claimant who wishes to rely on:

(1) a Certificate of Contravention under Article 55 of the Markets Law 2004; or

(2) a Certificate setting out a decision of the Financial Markets Tribunal under Article 34(6) of the Regulatory Law 2004;

must include in his particulars of claim a statement to that effect and give the following details:

(a) the type of finding and its date;

(b) the issue in the claim to which it relates.



**Contents Of Defence**

**17.23**

If the defendant has not filed an acknowledgment of service under Part 11, he must give an address for service.

**17.24**

Where the defendant is an individual, and the claim form does not contain an address for the defendant in accordance with **Rule 17.6**, or contains an incorrect address, the defendant must provide such an address in the defence.

**17.25**

Where the defendant's address for service is not the defendant's mailing address or the address where he resides or carries on business, the defendant must still provide the address required by **Rule 17.24**.

**17.26**

In his defence, the defendant must state:

(1) which of the allegations in the particulars of claim he denies;

(2) which allegations he is unable to admit or deny, but which he requires the claimant to prove; and

(3) which allegations he admits.

**17.27**



Where the defendant denies an allegation:

(1) he must state his reasons for doing so; and

(2) if he intends to put forward a different version of events from that given by the claimant, he must state his own version.

**17.28**

A defendant who:

(1) fails to deal with an allegation; but

(2) has set out in his defence the nature of his case in relation to the issue to which that allegation is relevant,

shall be taken to require that allegation to be proved.

**17.29**

Where the claim includes a money claim, a defendant shall be taken to require that any allegation relating to the amount of money claimed be proved unless he expressly admits the allegation.

**17.30**

Subject to Rules 17.28 and 17.29, a defendant who fails to deal with an allegation shall be taken to admit that allegation.

**17.31**





If the defendant is defending in a representative capacity, he must state what that capacity is.

**17.32**
The defendant must give details of the expiry of any relevant limitation period relied on.

**Defence Of Set–Off**
**17.33**
Where a defendant:

(1) contends he is entitled to money from the claimant; and

(2) relies on this as a defence to the whole or part of the claim,

the contention may be included in the defence and set off against the claim, whether or not it is also a counterclaim.

**Reply To Defence**
**17.34**
A claimant who does not file a reply to the defence shall not be taken to admit the matters raised in the defence.

**17.35**
A claimant who:



(1) files a reply to a defence; but

(2) fails to deal with a matter raised in the defence,

shall be taken to require that matter to be proved.

**General Rules About Statements Of Case**
**17.36**
Particulars of claim, the defence and any reply must be set out in separate consecutively numbered paragraphs and be as brief and concise as possible.

**17.37**
A party may:

(1) refer in his statement of case to any point of law on which his claim or defence, as the case may be, is based;

(2) give in his statement of case the name of any witness he proposes to call; and

(3) serve with his statement of case a copy of any document which he considers is necessary to his claim or defence, as the case may be.

**17.38**



If it is necessary for the proper understanding of the statement of case to include substantial parts of a lengthy document the passages in question may be set out in a schedule rather than in the body of the statement of case.

**17.39**
Only the relevant parts of those documents which are obviously of critical importance and necessary for a proper understanding of the statement of case should be attached to or served with it. The statement of case must itself refer to the fact that documents are attached to or served with it.

**17.40**
If documents are to be served at the same time as a statement of case they should normally be served separately from rather than attached to the statement of case.

**17.41**
Where a party relies on an oral agreement, the statement of case should set out the contractual words used and state by whom, to whom, when and where they were spoken.

**17.42**
Where a party relies on an agreement by conduct, the statement of case must specify the conduct relied on and state by whom, when and where the acts constituting the conduct were done.

**17.43**
A party must specifically set out the following matters in his statement of case where he wishes to rely on them in support of his case:

(1) full and specific details of any allegation of fraud, dishonesty, malice or illegality;

(2) details of any misrepresentation;

(3) details of all breaches of trust;

(4) notice or knowledge of a fact;

(5) details of unsoundness of mind or undue influence;

(6) details of wilful default; and

(7) any facts relating to mitigation of loss or damage.

**17.44**
Any legislative provision on which an allegation is based must be clearly identified and the basis of its application explained.

**17.45**
Any principle of foreign law or foreign legislative provision on which a party's case is based must be clearly identified and the basis of its application explained.

**17.46**



An expert's report should not be attached to the statement of case and should not be filed with the statement of case at the Registry. A party must obtain permission from the Court in order to adduce expert evidence at trial and therefore any party which serves an expert's report without obtaining such permission does so at his own risk as to costs.

**17.47**

If a statement of case exceeds 25 pages (excluding schedules), a summary, not exceeding 4 pages, must also be filed and served at the same time as the statement of case. The summary should cross-refer to the paragraph numbering of the full statement of case. The summary is to be included in the case management bundle.

**17.48**

A statement of case must be signed by the individual person(s) who drafted it or bear the name of the lawyer by whom it was settled.

**17.49**

A statement of case must be verified by a statement of truth, the form of which is as follows:

[I believe][the claimant/defendant believes] that the facts stated in this claim form/ these particulars of claim/this defence [and counterclaim/this reply and defence to counterclaim] are true.'



**17.50**

A subsequent statement of case must not contradict or be inconsistent with an earlier one; for example a reply to a defence must not bring in a new claim. Where new matters have come to light the appropriate course is to seek the Court's permission to amend the statement of case.



# PART 18
## AMENDMENTS TO STATEMENTS OF CASE

**Amendments To Statements Of Case**
**18.1**
A party may amend his statement of case at any time before it has been served on any other party.

**18.2**
If his statement of case has been served, a party may amend it only:

(1) with the written consent of all the other parties; or

(2) with the permission of the Court.

**Where permission is required**





### 18.2.1 – The applicable test

It was said in the reasons given by Shamlan Al Sawalehi J in support of the 8 February 2018 order in *Orion Holdings & Ors v Mohammed Abu Al Haj & Ors* (CFI 033/2015) at [22] that the test for whether the Court should grant permissions under RDC 18.2(2) is that the amendment be properly pleaded and have a real prospect of success. In allowing permissions it was emphasised that the application to amend had been made at an early stage in the proceedings and that the Defendants were not prejudiced procedurally as a result: [25]

### 18.2.2 – Costs consequences

In *Tavira Securities v Re Point Ventures FZCO* CFI 026 2017 (Schedule of Reasons to Order of 29 January 2018), Field J noted at [4] that the normal rule is for the party obtaining permission to amend a pleading must pay the costs of the application and responsive amendments. In circumstances where the respondents made no submissions and had not served a defence, the Judge made no order in that case.

### 18.3

If a statement of case has been served, an application to amend it by removing, adding or substituting a party must be made in accordance with Part 20.

### Power Of Court To Disallow Amendments Made Without Permission
### 18.4

If a party has amended his statement of case where permission of the Court was not required, the Court may disallow the amendment.

### 18.5

A party may apply to the Court for an order under Rule 18.4 within 14 days of service of a copy of the amended statement of case on him.

### Amendments To Statements Of Case With The Permission Of The Court
### 18.6

Where the Court gives permission for a party to amend his statement of case, it may give directions as to:

    (1) amendments to be made to any other statement of case; and

    (2) service of any amended statement of case.

### 18.7

The power of the Court to give permission under Rule 18.6 is subject to:

    (1) Rules 20.6 to 20.9 (change of parties – general);

    (2) Rules 20.27 to 20.29 (special provisions about adding or substituting parties after the end of a relevant limitation period); and

    (3) Rule 18.8 (amendments of statement of case after the end of a relevant limitation period).

### Amendments To Statements Of Case After The End Of A Relevant Limitation Period





**18.8**

Rules **18.9** to **18.11** apply where:

   (1) a party applies to amend his statement of case in one of the ways mentioned in **Rule 18**; and

   (2) a period of limitation has expired under:

      (a) the Court Law;

      (b) the Contract Law 2004;

      (c) the Law of Damages and Remedies 2005;

      (d) the Law of Obligations 2005;

      (e) the Trust Law 2005; or

      (f) any other enactment which allows such an amendment, or under which such an amendment is allowed.

**18.9**

The Court may allow an amendment whose effect will be to add or substitute a new claim, but only if the new claim arises out of the same facts or substantially the same facts as a claim in respect of which the party applying for permission has already claimed a remedy in the proceedings.



**18.10**

The Court may allow an amendment to correct a mistake as to the name of a party, but only where the mistake was genuine and not one which would cause reasonable doubt as to the identity of the party in question.



**Amending the name of a party**

**18.10.1**

In the case of *Howard Norman Leedham v Oxford Investment Managers Limited* [2008] DIFC CFI 006 (22 June 2010) the Court considered at trial an application by the claimant under RDC 18.12 to amend the name of the defendant so as to remove the words "(DIFC Registered No. 0393)" and to add the words "Limited (an Exempted Company) incorporated in the Cayman Islands (17 July 2006) Certificate of Incorporation dated 17 July 2006, Certificate Number MC-170960". The defendant did not appear at the trial, notwithstanding that a defence had been filed. Williams J noted that the relevant RDC followed very closely the English CPR rules in relation to the grant of permission to amend the name of a party. The Judge referred at [18] to the case of *Cobbold v Greenwich LBC* (August 9, 1999) (unrep.) Court of Appeal, in which Peter Gibson LJ observed that the overriding objective of the CPR is that the Court should deal with cases justly and that amendments of the name of parties ought generally to be allowed so that the real dispute between the parties could be adjudicated upon. The Court held that in the present case the failure to specify the correct name of the company was understandable in view of the way in which the chairman of the group of companies of which the defendant was a part used letterhead containing only the words "Oxford Investment Managers" and also because of the frequent use by the chairman of



different companies with the group for different purposes. The Court held that the inadequacy of detail in the name of the defendant was a genuine mistake and ought to be remedied: [19]. The Court also considered that it was appropriate for the application to be granted without the need to serve it on the defendant; the defendant had in its defence specifically addressed the issue of the proper identity of the defendant and had had every opportunity to attend the hearing; even if it had been present it could not have successfully resisted the application: [20].

**18.11**
The Court may allow an amendment to alter the capacity in which a party claims if the new capacity is one which that party had when the proceedings started or has since acquired.

**Applications To Amend Where The Permission Of The Court Is Required**
**18.12**
Questions of amendment, and consequential amendment, should wherever possible be dealt with by consent. A party should consent to a proposed amendment unless he has substantial grounds for objecting to it.

**18.13**
The application may be dealt with at a hearing or, if **Rule 23.68** applies, without a hearing.

**18.14**
When making an application to amend a statement of case, the applicant should file with the Court:

    (1) the application notice;

    (2) a copy of the statement of case with the proposed amendments; and

    (3) any evidence submitted in support of the application.

**18.15**
Late amendments should be avoided and may be disallowed.

**General**
**18.16**
Where permission to amend has been given, the applicant should within 14 days of the date of the order, or within such other period as the Court may direct, file with the Court the amended statement of case.

**18.17**
A copy of the order and the amended statement of case should be served on every party to the proceedings, unless the Court orders otherwise.

**18.18**
Where the Court's permission is not required the amended statement of case must be filed with the Court and served on every party to the proceedings.

**18.19**

The amended statement of case and the Court copy of it should be endorsed as follows:

(1) where the Court's permission was required:

"Amended [Particulars of Claim or as may be] by Order of [The Honourable Chief Justice, the Honourable Mr. Justice X, Mr. Registrar X, Deputy Registrar X or as may be] dated.......;

(2) Where the Court's permission was not required:

Amended [Particulars of Claim or as may be] under RDC [Rule 18.1 or 18.2(1)] dated......

**18.20**
The statement of case in its amended form must show the original text, unless the Court orders otherwise.

**18.21**
Amendments may be shown by using footnotes or marginal notes, provided they identify precisely where and when an amendment has been made.

**18.22**
However, the Court may direct that the amendments should be shown either:

(1) by coloured amendments, either manuscript or computer generated, or

(2) by use of a numerical code in a monochrome computer generated document.

**18.23**
Where colour is used, the text to be deleted should be struck through in colour and any text replacing it should be inserted or underlined in the same colour.

**18.24**
The order of colours to be used for successive amendments is: (1) red, (2) green, (3) blue and (4) brown.

**18.25**
If there have been extensive amendments, it may be desirable to prepare a fresh version of the statement of case as amended. However, a copy of the statement of case showing where and when amendments have been made must also be made available.

**18.26**
All amendments to any statement of case must be verified by a statement of truth unless the Court orders otherwise.

**18.27**



A party applying for an amendment will usually be responsible for the costs of and arising from the amendment, but the Court will have regard to any failure of a party to consent to an amendment in accordance with **Rule 18.12**.

# PART 19
## FURTHER INFORMATION

### Obtaining Further Information
**19.1**
The Court may at any time order a party to:

    (1) clarify any matter which is in dispute in the proceedings; or

    (2) give additional information in relation to any such matter;

whether or not the matter is contained or referred to in a statement of case.

### Power to order further information
**19.1.1**
In *Mustafa Al-Hendi v Dubai Aerospace Enterprise (DAE) Limited* [2012] DIFC CFI 026 (12 March 2013) the claimant served a request for further information under RDC Part 19. The claimant then made an application for an order that the defendant provide responses, which order was made by Williams J on 13 November 2012. The defendant provided a response with which the claimant was dissatisfied and the claimant applied for an order that unless the defendant complied with the order of Williams J within seven days then certain paragraphs of the defence would be struck out.

Some 25 requests were made but Chadwick DCJ refused to make an unless order, other than in respect of four requests. In respect of most of the requests the Court found that, although the responses had not in every case been as clear as they could be and in some instances the defendant was required to give certain additional confirmations, adequate responses had been given and/or it was unnecessary to make an unless order. In relation to three of the requests in respect of which orders were made, the Court was unclear whether the defendant's plea that certain allegations in the particulars were *"embarrassing and inherently or mutually inconsistent"* was intended to add anything to the defence and the defendant was required either to give confirmation that it was not intended to add anything or to spell out what the words were intended to add: [35], [39]. In relation to the final request, the defendant, having pleaded that the claimant's calculations of losses contained erroneous, was required to identify those errors: [36]–[38].

**19.2**
Rule 19.1 is subject to any rule of law to the contrary.

**19.3**
Where the Court makes an order under **Rule 19.1**, the party against whom it is made must:

    (1) file his response; and





(2) serve it on the other parties;

within the time specified by the Court.

**Restriction On The Use Of Further Information**
**19.4**
The Court may direct that information provided by a party to another party (whether given voluntarily or following an order made under Rule 19.1) must not be used for any purpose except for that of the proceedings in which it is given.

**Preliminary Request For Further Information Or Clarification**
**19.5**
Before making an application to the Court for an order under Rule 19.1, the party seeking clarification or information should first serve on the party from whom it is sought a written request for that clarification or information ("a Request"), stating a date by which the response to the Request should be served. The date must allow the party providing clarification or further information a reasonable time to respond.

**19.6**
A Request should be concise and strictly confined to matters which are reasonably necessary and proportionate to enable the first party to prepare his own case or to understand the case he has to meet.

**Form of request**
**19.6.1**

 

In *Georgia Corporation v Gavino Supplies* [2016] DIFC ARB 005 (11 October 2016) the claimant had obtained an arbitral award in its favour. It applied for recognition and enforcement of the award. In response the defendant applied for a stay together with an application for an order that the claimant provide information pursuant to RDC Part 19, which the defendant said it needed in order to prepare for its application for a stay. In August 2016 the defendant served on the claimant a written request for information. On 23 August 2016 the claimant responded objecting to the Part 19 request on the basis, *inter alia*, that the information was not strictly confined to matters which were reasonable necessary and proportionate to enable the defendant to prepare his own case or to understand the case he has to meet.

The Court noted that Part 19 of the RDC is materially the same as Part 18 of the English Civil Procedure Rules and its accompanying Practice Direction. In referring to the case of *National Grid Electricity Transmission Plc v ABB Ltd* [2012] EWHC 869 (Ch), Giles J held that RDC 19.6 calls for a stringent approach: necessity and proportionality are required, both with strictness: [55]. The Judge held that "case" does not mean "Statement of Case" as defined in the RDC; a request for information can be made in relation to an interlocutory application; but the power to order that information be provided should be exercised sparingly in relation to such an application: [57]. The Judge was not satisfied that the requested information was reasonably necessary and proportionate to enable the defendant to prepare its case on the stay application: [61].

**19.7**



Requests must be made as far as possible in a single comprehensive document and not piecemeal.

**19.8**
A Request may be made by letter if the text of the Request is brief and the reply is likely to be brief; otherwise the Request should be made in a separate document.

**19.9**
If a Request is made in a letter, the letter should, in order to distinguish it from any other that might routinely be written in the course of a case:

> (1) state that it contains a Request made under Part 19, and

> (2) deal with no matters other than the Request.

**19.10**
A Request (whether made by letter or in a separate document) must:

> (1) be headed with the title and number of the claim;

> (2) in its heading state that it is a Request made under Part 19, identify the party seeking clarification or information and the party from whom it is sought and state the date on which it is made;

> (3) set out in a separate numbered paragraph each request for information or clarification;

> (4) where a Request relates to a document, identify that document and (if relevant) the paragraph or words to which it relates; and

> (5) state the date by which the party seeking clarification or information expects a response to the Request.




**19.11**
A Request which is not in the form of a letter may, if convenient, be prepared in such a way that the response may be given on the same document:

> (1) to do this, the numbered paragraphs of the Request should appear on the left hand half of each sheet so that the paragraphs of the response may then appear on the right;

> (2) where a Request is prepared in this form an extra copy should be served for the use of the second party.

**19.12**
Subject to Rules 9.3(1) to (4) a Request should be served by e-mail if reasonably practicable.

**Responding To A Request**





**19.13**
A response to a Request must be in writing, dated and signed by the party providing clarification or further information or his legal representative.

**19.14**
Where the Request is made in a letter:

(1) the party providing clarification or further information may give his response in a letter or in a formal reply;

(2) such a letter should identify itself as a response to the Request and deal with no other matters than the response.

**19.15**
Unless the Request is in the format described in **Rule 19.11** and the party providing clarification or further information uses the document supplied for the purpose, a response must:

(1) be headed with the title and number of the claim;

(2) in its heading identify itself as a response to that Request;

(3) repeat the text of each separate paragraph of the Request and set out under each paragraph the response to it; and

(4) refer to and have attached to it a copy of any document not already in the possession of the first party which forms part of the response.

**19.16**
A second or supplementary response to a Request must identify itself as such in its heading.

**19.17**
The party providing clarification or further information must when he serves his response on the party seeking it serve on every other party and file with the Court a copy of the Request and of his response.

**Statements Of Truth**
**19.18**
A response to a Part 19 Request must be verified by a statement of truth in the following form:

[I believe] [the claimant/ defendant believes] that the facts stated in this response to the claimant's/ defendant's Part 19 Request for further information are true".

**General Matters**
**19.19**
If the party providing clarification or further information objects to complying with the Request or part of it or is unable to do so at all or within the time stated in the Request:

(1) he must inform the party seeking clarification or information promptly and in any



event within that time; and

(2) he may do so in a letter or in a separate document (a formal response), but in either case he must give reasons and, where relevant, give a date by which he expects to be able to comply.

**19.20**

There is no need for a party providing clarification or further information to apply to the Court if he objects to a Request or is unable to comply with it at all or within the stated time. He need only comply with **Rule 19.19**.

**19.21**

Where a party providing clarification or further information considers that a Request can only be complied with at disproportionate expense and objects to comply for that reason he should say so in his reply and explain briefly why he has taken that view.

**Applications For Orders Under Part 19**

**19.22**

An application notice for an order under Part 19 should set out or have attached to it the text of the order sought and in particular should specify the matter or matters in respect of which the clarification or information is sought.

**19.23**

If a Request under **Rule 19.5** for the information or clarification has not been made, the application notice should, in addition, explain why not.

**19.24**

If a Request for clarification or information has been made, the application notice or the evidence in support should describe the response, if any.

**19.25**

Both the party seeking clarification or information and the party from whom it is sought should consider whether evidence in support of or in opposition to the application is required.

**19.26**

Where the party from whom clarification or information is sought has made no response to a Request served on him:

(1) the party seeking the clarification or information need not serve the application notice on that party, and the Court may deal with the application without a hearing; and

(2) sub-paragraph (1) above only applies if at least 14 days have passed since the Request was served and the time stated in it for a response has expired.

**19.27**

Unless **Rule 19.26** applies the application notice must be served on the second party and on all other parties to the claim.

**19.28**





An order made under **Part 19** must be served on all parties to the claim.

## PART 20
ADDITION AND SUBSTITUTION OF PARTIES

**Parties — General**
**20.1**
Any number of claimants or defendants may be joined as parties to a claim.

**20.2**
Parties may be removed, added or substituted in existing proceedings either on the Court's own initiative or on the application of either an existing party or a person who wishes to become a party.

**20.3**
The application may be dealt with without a hearing where all the existing parties and the proposed new party are in agreement.

**20.4**
The application to add or substitute a new party should be supported by evidence setting out the proposed new party's interest in or connection with the claim.



**20.5**
The application notice should be filed in accordance with **Rule 23.2** and, unless the application is made under **Rule 20.9**, be served in accordance with **Rule 23.25**.



**I ADDITION AND SUBSTITUTION OF PARTIES**
**Change Of Parties — General**
**20.6**
Rules **20.6** to **20.9** apply where a party is to be added or substituted except where the case falls within **Rules 20.27** to **20.29** (special provisions about changing parties after the end of a relevant limitation period).

**20.7**
The Court may order a person to be added as a new party if:

    (1) it is desirable to add the new party so that the Court can resolve all the matters in dispute in the proceedings; or

    (2) there is an issue involving the new party and an existing party which is connected to the matters in dispute in the proceedings, and it is desirable to add the new party so that the Court can resolve that issue.

**Where a new party may be added**
**20.7.1**
The possibility that an existing party to a claim who was challenging jurisdiction might, on a subsequent application, be susceptible to an order adding him as a party under RDC 20.7 does not mean that the Court has present jurisdiction and reliance on the rule

in that context was misplaced. A prospective decision on an application for joinder was also inappropriate as being *inter alia* hypothetical: *Nest Investments & Ors v Deloitte & Touche (M.E.)* [2016] DIFC CFI 27 (24 August 2017) at [17]-[20].

**20.7.2**
In the 12 February 2018 judgment of Giles J in *Nest Investment Holding Lebanon SAL & Ors v Deloitte & Touche M.E. & Joseph El Fadl* (CFI-027-2016) it was noted (at [94]) that, although RDC 20.7(2) reproduces the English CPR 19.9(2), there was no *"overriding jurisdictional fetter"* in England, whereas the CFI was a court of limited jurisdiction, with the jurisdiction being relevantly prescribed in Article 5(A)(1) of the Law in respect of the Judicial Authority at Dubai International Financial Centre, Dubai Law No 12 of 2004. It was held (at [106]) that RDC 20.7(2) does not enable the joinder of a new party where the issue involving that party and an existing party is a claim which the Court does not have jurisdiction to hear and determine.

**20.8**
The Court may order any person to cease to be a party if it is not desirable for that person to be a party to the proceedings.

**20.9**
The Court may order a new party to be substituted for an existing one if:

(1) the existing party's interest or liability has passed to the new party; and

(2) it is desirable to substitute the new party so that the Court can resolve the matters in dispute in the proceedings.

**20.10**
Where a claimant claims a remedy to which some other person is jointly entitled with him, all persons jointly entitled to the remedy must be parties unless the Court orders otherwise.

**Procedure For Adding And Substituting Parties**
**20.11**
The Court's permission is required to remove, add or substitute a party, unless the claim form has not been served.

**20.12**
An application for permission under **Rule 20.11** may be made by:

(1) an existing party; or

(2) a person who wishes to become a party.

**20.13**
An application for an order under **Rule 20.9** (substitution of a new party where existing party's interest or liability has passed):

(1) may be made without notice; and

(2) must be supported by evidence setting out the proposed new party's interest in,






or connection with, the claim.

**20.14**

An order for the removal, addition or substitution of a party must be served on:

(1) all parties to the proceedings; and

(2) any other person affected by the order.

**20.15**

When the Court makes an order for the removal, addition or substitution of a party, it may give consequential directions about:

(1) filing and serving the claim form on any new defendant;

(2) serving relevant documents on the new party; and

(3) the management of the proceedings.

**Addition Or Substitution Of Claimant**
**20.16**

Nobody may be added or substituted as a claimant unless:

(1) he has given his consent in writing; and

(2) that consent has been filed with the Court.

**20.17**

If any person does not agree to be a claimant, he must be made a defendant, unless the Court orders otherwise.

**20.18**

Where an application is made to the Court to add or to substitute a new party to the proceedings as claimant, the party applying must file:

(1) the application notice;

(2) the proposed amended claim form and particulars of claim; and

(3) the signed, written consent of the new claimant to be so added or substituted.

**20.19**

Where the Court makes an order adding or substituting a party as claimant but the signed, written consent of the new claimant has not been filed:

(1) the order; and

(2) the addition or substitution of the new party as claimant;

will not take effect until the signed, written consent of the new claimant is filed.

**20.20**



Where the Court has made an order adding or substituting a new claimant, the Court may direct:

(1) a copy of the order to be served on every party to the proceedings and any other person affected by the order;

(2) copies of the statements of case and of documents referred to in any statement of case to be served on the new party; and

(3) the party who made the application to file within 14 days an amended claim form and particulars of claim.

**Addition Or Substitution Of Defendant**
**20.21**
These Rules apply to a new defendant who has been added or substituted as they apply to any other defendant.

**20.22**
Where the Court has made an order adding or substituting a defendant whether on its own initiative or on an application, the Court may direct:

(1) the claimant to file with the Court within 14 days (or as ordered) an amended claim form and particulars of claim for the Court file;



(2) a copy of the order to be served on all parties to the proceedings and any other person affected by it;

(3) the amended claim form and particulars of claim, forms for admitting, defending and acknowledging the claim and copies of the statements of case and any other documents referred to in any statement of case to be served on the new defendant; and

(4) unless the Court orders otherwise, the amended claim form and particulars of claim to be served on any other defendants.

**20.23**
A new defendant does not become a party to the proceedings until the amended claim form has been served on him.

**Removal Of Party**
**20.24**
Where the Court makes an order for the removal of a party from the proceedings:

(1) the claimant must file with the Court an amended claim form and particulars of claim; and

(2) a copy of the order must be served on every party to the proceedings and on any other person affected by the order.

**Transfer Of Interest Or Liability**





**20.25**

Where the interest or liability of an existing party has passed to some other person, application should be made to the Court to add or substitute that person.

**20.26**

The application must be supported by evidence showing the stage the proceedings have reached and what change has occurred to cause the transfer of interest or liability.

**Special Provisions About Adding Or Substituting Parties After The End Of A Relevant Limitation Period**

**20.27**

Rules 20.28 to 20.29 apply to a change of parties after the end of a period of limitation under:

(1) the Court Law

(2) the Contract Law 2004;

(3) the Law of Damages and Remedies 2005;

(4) the Law of Obligations 2005;

(5) the Trust Law 2005; or

(6) any other enactment which allows such an amendment, or under which such an amendment is allowed.

**20.28**

The Court may add or substitute a party only if:

(1) the relevant limitation period was current when the proceedings were started; and

(2) the addition or substitution is necessary.

**20.29**

The addition or substitution of a party is necessary only if the Court is satisfied that:

(1) the new party is to be substituted for a party who was named in the claim form in mistake for the new party;

(2) the claim cannot properly be carried on by or against the original party unless the new party is added or substituted as claimant or defendant; or

(3) the original party has died or had a bankruptcy order made against him and his interest or liability has passed to the new party.

**Special Rules About Parties In Claims For Wrongful Interference With Property**





**20.30**

A claimant in a claim for wrongful interference with property must, in the particulars of claim, state the name and address of every person who, to his knowledge, has or claims an interest in the property and who is not a party to the claim.

**20.31**

A defendant to a claim for wrongful interference with property may apply for a direction that another person be made a party to the claim to establish whether the other person:

    (1) has a better right to the goods than the claimant; or

    (2) has a claim which might render the defendant with double liability.

**20.32**

In Rule 20.31 "double liability" means the double liability of the wrongdoer which can arise:

    (1) where one of two or more rights of action for wrongful interference is founded on a possessory title; or

    (2) where the measure of damages in an action for wrongful interference founded on a proprietary title is or includes the entire value of the goods, although the interest is one of two or more interests in the goods.



**20.33**

Where the person referred to in Rule 20.31 fails to attend the hearing of the application, or comply with any directions, the Court may order that he is deprived of any claim against the defendant in respect of the goods.

**20.34**

The application notice must be served on all parties and on the person referred to in Rule 20.31.

**II REPRESENTATIVE PARTIES**
**Representative Parties With Same Interest**
**20.35**

Where more than one person has the same interest in a claim:

    (1) the claim may be begun; or

    (2) the Court may order that the claim be continued;

by or against one or more of the persons who have the same interest as representatives of any other persons who have that interest.

**20.36**

The Court may direct that a person may not act as a representative.

**20.37**



Any party may apply to the Court for an order under **Rule 20.36**.

**20.38**
Unless the Court otherwise directs any judgment or order given in a claim in which a party is acting as a representative under this rule:

> (1) is binding on all persons represented in the claim; but

> (2) may only be enforced by or against a person who is not a party to the claim with the permission of the Court.

**20.39**
This rule does not apply to a claim to which **Rules 20.41** to **20.46** apply.

**Representation Of Interested Persons Who Cannot Be Ascertained Etc.**
**20.40**
Rules 20.41 to 20.46 apply to claims about:

> (1) the estate of a deceased person

> (2) property subject to a trust; or

> (3) the meaning of a document, including a Law.

**20.41**
The Court may make an order appointing a person to represent any other person or persons in the claim where the person or persons to be represented:

> (1) are unborn;

> (2) cannot be found;

> (3) cannot easily be ascertained; or

> (4) are a class of persons who have the same interest in a claim and;

>> (a) one or more members of that class are within sub-paragraphs (1), (2) or (3); or

>> (b) to appoint a representative would further the overriding objective.

**20.42**
An application for an order under **Rule 20.41**:

> (1) may be made by:

>> (a) any person who seeks to be appointed under the order; or

>> (b) any party to the claim; and

> (2) may be made at any time before or after the claim has started.



**20.43**

An application notice for an order under **Rule 20.41** must be served on:

(1) all parties to the claim, if the claim has started;

(2) the person sought to be appointed, if that person is not the applicant or a party to the claim; and

(3) any other person as directed by the Court.

**20.44**

The Court's approval is required to settle a claim in which a party is acting as a representative under Rules 20.41 to 20.46.

**20.45**

The Court may approve a settlement where it is satisfied that the settlement is for the benefit of all the represented persons.

**20.46**

Unless the Court otherwise directs, any judgment or order given in a claim in which a party is acting as a representative under Rules 20.41 to 20.46:

(1) is binding on all persons represented in the claim; but



(2) may only be enforced by or against a person who is not a party to the claim with the permission of the Court.

**Representation Of Beneficiaries By Trustees Etc.**
**20.47**

A claim may be brought by or against trustees, executors or administrators in that capacity without adding as parties any persons who have a beneficial interest in the trust or estate (the 'beneficiaries').

**20.48**

Any judgment or order given or made in the claim is binding on the beneficiaries unless the Court orders otherwise in the same or other proceedings.

**Death**
**20.49**

Where a person who had an interest in a claim has died and that person has no personal representative ("person representing his estate") the Court may order:

(1) the claim to proceed in the absence of a person representing the estate of the deceased; or

(2) a person to be appointed to represent the estate of the deceased.

**20.50**





Where a defendant against whom a claim could have been brought has died and:

(1) a grant of representation has been made, the claim must be brought against the persons who are the personal representatives of the deceased;

(2) a grant of representation has not been made:

(a) the claim must be brought against 'the estate of' the deceased; and

(b) the claimant must apply to the Court for an order appointing a person to represent the estate of the deceased in the claim.

**20.51**
A claim shall be treated as having been brought against 'the estate of' the deceased in accordance with **Rule 20.50(2)(a)** where:

(1) the claim is brought against the 'personal representatives' of the deceased but a grant of probate or administration has not been made; or

(2) the person against whom the claim was brought was dead when the claim was started.

**20.52**
Before making an order under **Rule 20.49** or **20.50(2)(b)**, the Court may direct notice of the application to be given to any other person with an interest in the claim.

**20.53**
Where an order has been made under **Rule 20.49** or **20.50(2)(b)** any judgment or order made or given in the claim is binding on the estate of the deceased.

**Power To Make Judgments Binding On Non-Parties**
**20.54**
Rules **20.55** to **20.62** apply to any claim relating to:

(1) the estate of a deceased person;

(2) property subject to a trust; or

(3) the sale of any property.

**20.55**
The Court may at any time direct that notice of:

(1) the claim; or

(2) any judgment or order given in the claim;

be served on any person who is not a party but who is or may be affected by it.

**20.56**





An application under **Rule 20.55**:

    (1) may be made without notice; and

    (2) must be supported by written evidence which includes the reasons why the person to be served should be bound by the judgment in the claim.

**20.57**
Unless the Court orders otherwise:

    (1) a notice of a claim or of a judgment or order under **Rule 20.55** must be:

        (a) in Form P20/01 (claim) or Form P20/02 (judgment);

        (b) issued by the Court; and

        (c) accompanied by a form of acknowledgment of service with any necessary modifications;

        (d) a notice of a judgment or order must also be accompanied by a copy of the judgment or order.

    (2) a notice of a claim must also be accompanied by:

        (a) a copy of the claim form:

        (b) such other statements of case, witness statements or affidavits as the Court may direct.

        (c) [deleted]

**20.58**
If a person served with notice of a claim files an acknowledgment of service of the notice within 14 days he will become a party to the claim.

**20.59**
If a person served with notice of a claim does not acknowledge service of the notice, he will be bound by any judgment given in the claim as if he were a party.

**20.60**
If, after service of a notice of a claim on a person, the claim form is amended so as substantially to alter the relief claimed, the Court may direct that a judgment shall not bind that person unless a further notice, together with a copy of the amended claim form, is served on him.

**20.61**
Any person served with a notice of a judgment or order under **Rule 20.55**:

    (1) shall be bound by the judgment or order as if he had been a party to the claim; but

    (2) may, provided he acknowledges service:





(a) within 28 days after the notice is served on him, apply to the Court to set aside or vary the judgment or order; and

(b) take part in any proceedings relating to the judgment or order.

(3) The following rules of Part 11 (acknowledgment of service) apply:

(a) Rule 11.7; and

(b) Rule 11.8, subject to the modification that references to the defendant are to be read as references to the person served with the notice.

**20.62**
A notice under Rule 20.55 is issued on the date entered on the notice by the Court.

**Derivative Claims**
**20.63**
Rules 20.64 to 20.69 apply where a company or other incorporated body is alleged to be entitled to claim a remedy and a claim is made by one or more members of the company or body for it to be given that remedy (a 'derivative claim').

**20.64**
The company or body for whose benefit a remedy is sought must be a defendant to the claim.



**20.65**
After the claim form has been issued the claimant must apply to the Court for permission to continue the claim and may not take any other step in the proceedings except:

(1) as provided by Rule 20.67; or

(2) where the Court gives permission.

**20.66**
An application in accordance with Rule 20.65 must be supported by written evidence.

**20.67**
The:

(1) claim form;

(2) application notice; and

(3) written evidence in support of the application;

must be served on the defendant within the period within which the claim form must be served and, in any event, at least 14 days before the Court is to deal with the application.

**20.68**





If the Court gives the claimant permission to continue the claim, the Court will give directions for the management of the claim.

**20.69**
The Court may order the company or body to indemnify the claimant against any liability in respect of costs incurred in the claim.

**III GROUP LITIGATION**
**Definition**
**20.70**
A Group Litigation Order ('GLO') means an order made under **Rule 20.72** to provide for the case management of claims which give rise to common or related issues of fact or law (the 'GLO issues').

**20.71**
This Section III of Part 20 (group litigation orders) also applies where the multiple parties are defendants. The Court will give such directions in such a case as are appropriate.

**Group Litigation Order (GLO)**
**20.72**
The Court may make a GLO where there are or are likely to be a number of claims giving rise to the GLO issues.

**20.73**
An application for a GLO must be made in accordance with Part 23, may be made at any time before or after any relevant claims have been issued and may be made either by a claimant or by a defendant.

**20.74**
The following information should be included in the application notice or in written evidence filed in support of the application:

  (1) a summary of the nature of the litigation;

  (2) the number and nature of claims already issued;

  (3) the number of parties likely to be involved;

  (4) the common issues of fact or law (the GLO issues) that are likely to arise in the litigation; and

  (5) whether there are any matters that distinguish smaller groups of claims within the wider group.

**20.75**
A GLO may not be made without the consent of the Chief Justice.

**20.76**
Subject to obtaining the appropriate consent referred to in **Rule 20.75** the Court may make a GLO of its own initiative.

**20.77**







A GLO must:

> (1) contain directions about the establishment of a register (the 'group register') on which the claims managed under the GLO will be entered; and

> (2) specify the GLO issues which will identify the claims to be managed as a group under the GLO.

**20.78**
A GLO may:

> (1) in relation to claims which raise one or more of the GLO issues:

>> (a) order their stay until further order; and

>> (b) direct their entry on the group register;

> (2) direct that from a specified date claims which raise one or more of the GLO issues should be entered on the group register; and

> (3) give directions for publicising the GLO.

**The Group Register**
**20.79**
A claim must be issued before it can be entered on a group register.

**20.80**
An application for details of a case to be entered on a group register may be made by any party to the case.

**20.81**
An order for details of the case to be entered on the group register will not be made unless the case gives rise to at least one of the GLO issues.

**20.82**
The Court, if it is not satisfied that a case can be conveniently case managed with the other cases on the group register, or if it is satisfied that the entry of the case on the group register would adversely affect the case management of the other cases, may refuse to allow details of the case to be entered on the group register, or order their removal from the register if already entered, although the case gives rise to one or more of the GLO issues.

**20.83**
The group register will normally be maintained by and kept at the Court but the Court may direct this to be done by the legal representative of one of the parties to a case entered on the register.

**20.84**
Rules 6.9 to 6.19 (supply of documents from Court records) apply where the register is maintained by the Court. A party to a claim on the group register may request documents relating to any other claim on the group register in accordance with **Rule**




6.9 as if he were a party to those proceedings.

**20.85**
Where the register is maintained by a legal representative, any person may inspect the group register during normal business hours and upon giving reasonable notice to the legal representative; the legal representatives may charge a fee not exceeding the fee prescribed for a search at the Court office.

**Effect Of The GLO**
**20.86**
Where a judgment or order is given or made in a claim on the group register in relation to one or more GLO issues:

> (1) that judgment or order is binding on the parties to all other claims that are on the group register at the time the judgment is given or the order is made unless the Court orders otherwise; and

> (2) the Court may give directions as to the extent to which that judgment or order is binding on the parties to any claim which is subsequently entered on the group register.

**20.87**
Unless Rule 20.88 applies, any party who is adversely affected by a judgment or order which is binding on him may seek permission to appeal the order.

**20.88**
A party to a claim which was entered on the group register after a judgment or order which is binding on him was given or made may not:

> (1) apply for the judgment or order to be set aside, varied or stayed; or

> (2) appeal the judgment or order;

but may apply to the Court for an order that the judgment or order is not binding on him.

**20.89**
Unless the Court orders otherwise, production of any document relating to the GLO issues by a party to a claim on the group register is production of that document to all parties to claims:

> (1) on the group register; and

> (2) which are subsequently entered on the group register.

**Case Management**
**20.90**
Directions may include directions:

> (1) varying the GLO issues;

> (2) providing for one or more claims on the group register to proceed as test claims;



(3) appointing the legal representative of one or more parties to be the lead legal representative for the claimants or defendants;

(4) specifying the details to be included in a statement of case in order to show that the criteria for entry of the claim on the group register have been met;

(5) specifying a date after which no claim may be added to the group register unless the Court gives permission;

(6) for the entry of any particular claim which meets one or more of the GLO issues on the group register;

(7) for the trial of common issues; and

(8) for the trial of individual issues.

**Statements Of Case**
**20.91**
The Court may direct that the GLO claimants serve 'Group Particulars of Claim' which set out the various claims of all the claimants on the group register at the time the particulars are filed. Such particulars of claim will usually contain:

(1) general allegations relating to all claims; and



(2) a schedule containing entries relating to each individual claim specifying which of the general allegations are relied on and any specific facts relevant to the claimant.

**20.92**
The directions given under **Rule 20.91** should include directions as to whether the Group Particulars of Claim should be verified by a statement or statements of truth and, if so, by whom.

**20.93**
The specific facts relating to each claimant on the group register may be obtained by the use of a questionnaire. Where this is proposed, the Court should be asked to approve the questionnaire. The Court may direct that the questionnaires completed by individual claimants take the place of the schedule referred to in **Rule 20.91(2)**.

**20.94**
The Court may also give directions about the form that particulars of claim relating to claims which are to be entered on the group register should take.

**Removal From The Register**
**20.95**
A party to a claim entered on the group register may apply to the Court for the claim to be removed from the register.

**20.96**





If the Court orders the claim to be removed from the group register it may give directions about the future management of the claim.

**Test Claims**
**20.97**
Where a direction has been given for a claim on the group register to proceed as a test claim and that claim is settled, the Court may order that another claim on the group register be substituted as the test claim.

**20.98**
Where an order is made under **Rule 20.97**, any order made in the test claim before the date of substitution is binding on the substituted claim unless the Court orders otherwise.

# PART 21
## COUNTERCLAIMS AND OTHER ADDITIONAL CLAIMS

**Scope And Interpretation**
**21.1**
This Part applies to:

(1) a counterclaim by a defendant against the claimant or against the claimant and some other person;

(2) an additional claim by a defendant against any person (whether or not a party) for contribution or indemnity or some other remedy; and

(3) where an additional claim has been made against a person who is not already a party, any additional claim made by that person against any other person (whether or not already a party).

**21.2**
In these Rules:

(1) 'additional claim' means any claim other than the claim by the claimant against the defendant; and

(2) unless the context requires otherwise, references to a claimant or defendant include a party bringing or defending an additional claim.

**Application Of These Rules To Additional Claims**
**21.3**
An additional claim shall be treated as if it were a claim for the purposes of these Rules, except as provided by this Part.

**21.4**
Rules 7.20 to 7.25 (time within which a claim form may be served) do not apply to additional claims.

**21.5**





Part 13 (default judgment) applies to a counterclaim but not to other additional claims.

**21.6**
Part 15 (admissions) applies to a counterclaim, but only:

(1) Rule 15.1 (which provides that a party may admit the truth of another party's case in writing); and

(2) Rules 15.12 and 15.13 (admission by notice in writing – application for judgment):

apply to other additional claims.

**Defendant's Counterclaim Against The Claimant**
**21.7**
A defendant may make a counterclaim against a claimant by filing particulars of the counterclaim.

**21.8**
A defendant may make a counterclaim against a claimant:

(1) without the Court's permission if he files it with his defence. The defence and counterclaim should normally form one document, with the counterclaim following on from the defence; or

(2) at any other time with the Court's permission.

**21.9**
Part 11 (acknowledgment of service) does not apply to a claimant who wishes to defend a counterclaim.

**21.10**
Where a claimant serves a reply and a defence to counterclaim, the reply and the defence to counterclaim should normally form one document, with the defence to counterclaim following on from the reply.

**Counterclaim Against A Person Other Than The Claimant**
**21.11**
A defendant who wishes to counterclaim against a person who is not already a party must apply to the Court for an order that that person be added as an additional party.

**Counterclaim against a person other than the claimant**
**21.11.1**
In *Taaleem PJSC v (1) National Bonds Corporation PJSC and (2) Deyaar Development PJSC* [2010] DIFC CFI 014 (21 November 2010) the Court noted that it may be said that RDC 21.11 is not apt to apply to case where one defendant seeks to claim against a person who is already a defendant to the claim brought by the claimant in the proceedings: [36]. However, the Court noted that the second defendant had taken the view that the prudent course was to assume that permission was required. It was not necessary to decide whether permission was required in this case; it seemed plain to the Court that, if permission were required before Deyaar could bring a counterclaim against NBC, permission should be granted as Deyaar's claims against NBC were inextricably linked

with Taaleem's claims and with Deyaar's counterclaim against Taaleem: [36].

**21.12**

An application for an order under Rule 21.11 may be made without notice unless the Court directs otherwise.

**21.13**

Where the Court makes an order under Rule 21.11, it will give directions as to the management of the case.

**Defendant's Additional Claim For Contribution Or Indemnity From Another Party**
**21.14**

A defendant who has filed an acknowledgment of service or a defence may make an additional claim for contribution or indemnity against a person who is already a party to the proceedings by:

    (1) filing a notice containing a statement of the nature and grounds of his additional claim; and

    (2) serving the notice on that party.

**21.15**

A defendant may file and serve a notice under Rule 21.14:

    (1) without the Court's permission, if he files and serves it:

        (a) with his defence; or

        (b) if his additional claim for contribution or indemnity is against a party added to the claim later, within 28 days after that party files his defence; or

    (2) at any other time with the Court's permission.

**Procedure For Making Any Other Additional Claim**
**21.16**

Rules 21.17 to 21.24 apply to any additional claim except:

    (1) a counterclaim only against an existing party; and

    (2) a claim for contribution or indemnity made in accordance with Rule 21.14.

**21.17**

An additional claim is made when the Court issues the appropriate claim form.

**21.18**

A defendant may make an additional claim:

    (1) without the Court's permission if the additional claim is issued before or at the same time as he files his defence; and

    (2) at any other time with the Court's permission.



**21.19**

Particulars of an additional claim must be contained in or served with the additional claim.

**21.20**

An application for permission to make an additional claim may be made without notice, unless the Court directs otherwise.

**21.21**

Where an application is made for permission to make an additional claim, the application notice should be filed together with a copy of the proposed additional claim.

**21.22**

An application for permission to make an additional claim must be supported by evidence stating:

> (1) the stage which the proceedings have reached;

> (2) the nature of the additional claim to be made or details of the question or issue which needs to be decided;

> (3) a summary of the facts on which the additional claim is based; and

> (4) the name and address of any proposed additional party.



**21.23**

Where delay has been a factor contributing to the need to apply for permission to make an additional claim an explanation of the delay should be given in evidence.

**21.24**

Where possible the applicant should provide a timetable of the proceedings to date.

**Service Of Claim Form**
**21.25**

Where an additional claim may be made without the Court's permission, any claim form must:

> (1) in the case of a counterclaim against an additional party only, be served on every other party when a copy of the defence is served;

> (2) in the case of any other additional claim, be served on the person against whom it is made within 14 days after the date on which the additional claim is issued by the Court.

**21.26**

Rule 21.25 does not apply to a claim for contribution or indemnity made in accordance with Rule 21.14.

**21.27**





Where the Court gives permission to make an additional claim, it will at the same time give directions as to its service.

**Statement Of Truth**
**21.28**
The contents of an additional claim should be verified by a statement of truth.

**Matters Relevant To Question Of Whether An Additional Claim Should Be Separate From The Claim**
**21.29**
Rule 21.30 applies where the Court is considering whether to:

    (1) permit an additional claim to be made;

    (2) dismiss an additional claim; or

    (3) require an additional claim to be dealt with separately from the claim by the claimant against the defendant.

**21.30**
The matters to which the Court may have regard include:

    (1) the connection between the additional claim and the claim made by the claimant against the defendant;

    (2) whether the additional claimant is seeking substantially the same remedy which some other party is claiming from him; and

    (3) whether the additional claimant wants the Court to decide any question connected with the subject matter of the proceedings:

        (a) not only between existing parties but also between existing parties and a person not already a party; or

        (b) against an existing party not only in a capacity in which he is already a party but also in some further capacity.

**Effect Of Service Of An Additional Claim**
**21.31**
A person on whom an additional claim is served becomes a party to the proceedings if he is not a party already.

**21.32**
When an additional claim is served on an existing party for the purpose of requiring the Court to decide a question against that party in a further capacity, that party also becomes a party in the further capacity specified in the additional claim.

**Special Provisions Relating To Default Judgment On An Additional Claim Other Than A**








**Counterclaim Or A Contribution Or Indemnity Notice**
**21.33**
Rules 21.34 to 21.38 apply if:

    (1) the additional claim is not:

        (a) a counterclaim; or

        (b) a claim by a defendant for contribution or indemnity against another defendant under Rule 21.14; and

    (2) the party against whom an additional claim is made fails to file an acknowledgment of service or defence in respect of the additional claim.

**21.34**
The party against whom the additional claim is made is deemed to admit the additional claim, and is bound by any judgment or decision in the proceedings in so far as it is relevant to any matter arising in the additional claim.

**21.35**
Subject to Rule 21.36, if default judgment under Part 13 is given against the additional defendant, the additional claimant may obtain judgment in respect of the additional claim by filing a request in Form P13/01 or Form P13/02.

**21.36**
An additional claimant may not enter judgment under Rule 21.35 without the Court's permission if:

    (1) he has not satisfied the default judgment which has been given against him; or

    (2) he wishes to obtain judgment for any remedy other than a contribution or indemnity.

**21.37**
An application for the Court's permission under Rule 21.36 may be made without notice unless the Court directs otherwise.

**21.38**
The Court may at any time set aside or vary a judgment entered under Rule 21.35.

**Procedural Steps On Service Of An Additional Claim Form On A Non-Party**
**21.39**
Where an additional claim form is served on a person who is not already a party it must be accompanied by the following, which can be set out in one or more documents:

    (1) a form for defending the claim;

    (2) a form for admitting the claim;

    (3) a form for acknowledging service; and

    (4) a copy of:






(a) every statement of case which has already been served in the proceedings; and

(b) such other documents as the Court may direct.

**21.40**
A copy of the additional claim form must be served on every existing party.

**Case Management Where A Defence To An Additional Claim Is Filed**
**21.41**
Where a defence is filed to an additional claim the Court must consider the future conduct of the proceedings and give appropriate directions.

**21.42**
In giving directions under **Rule 21.41** the Court must ensure that, so far as practicable, the original claim and all additional claims are managed together.

**21.43**
Where the defendant to an additional claim files a defence, other than to a counterclaim, the Court will arrange a hearing to consider case management of the additional claim. This will normally be at the same time as a case management hearing for the original claim and any other additional claims.

**21.44**
The Court will give notice of the hearing to each party likely to be affected by any order made at the hearing.

**21.45**
At the hearing the Court may:

(1) treat the hearing as a immediate judgment hearing;

(2) order that the additional claim be dismissed;

(3) give directions about the way any claim, question or issue set out in or arising from the additional claim should be dealt with;

(4) give directions as to the part, if any, the additional defendant will take at the trial of the claim; and

(5) give directions about the extent to which the additional defendant is to be bound by any judgment or decision to be made in the claim.

**21.46**
The Court may make any of the orders in **Rule 21.45(1)** to **21.45(5)** either before or after any judgment in the claim has been entered by the claimant against the defendant.

**Titles Of Proceedings Where There Are Additional Claims**





**21.47**

Where there are additional claims which add parties, the title to the proceedings should comprise a list of all parties describing each by giving them a single identification. Subject to Rule 21.56, this identification should be used throughout.

**21.48**

Claimants and defendants in the original claim should always be referred to as such in the title to the proceedings, even if they subsequently acquire an additional procedural status.

**21.49**

Additional parties should be referred to in the title to the proceedings in accordance with the order in which they are joined to the proceedings, for example 'Third Party' or 'Fourth Party', whatever their actual procedural status.

Examples:

(1) If the defendant makes an additional claim against a single additional party, the additional party should be referred to in the title as 'Third Party'.

(2) If the defendant makes separate additional claims against two additional parties, the additional parties should be referred to in the title as 'Third Party' and 'Fourth Party'.



(3) If the defendant makes a counterclaim against the claimant and an additional party, the claimant should remain as 'Claimant' and the additional party should be referred to in the title as 'Third Party'.

(4) If the Third Party in example (2) makes an additional claim against a further additional party, that additional party should be referred to in the title as 'Fifth Party'.

**21.50**

If an additional claim is brought against more than one party jointly, they should be referred to in the title to the proceedings as, for example, 'First Named Third Party' and 'Second Named Third Party'.

**21.51**

In group litigation, the Court should give directions about the designation of parties.

**21.52**

All parties should co-operate to ensure that two parties each making additional claims do not attribute the same nominal status to more than one party.

**21.53**

In proceedings with numerous parties, the Court will if necessary give directions as to the preparation and updating of a list of parties giving their roles in the claim and each additional claim.

**21.54**





If an additional party ceases to be a party to the proceedings, for example because the claim against that party is discontinued or dismissed, all other additional parties should retain their existing nominal status.

**21.55**
In proceedings where there are additional parties, the description of all statements of case or other similar documents should clearly identify the nature of the document with reference to each relevant party.

Examples:

(1) In example 21.49(1), the defendant's additional claim should be headed 'Defendant's Additional Claim against Third Party' and the Third Party's defence to it should be headed 'Third Party's Defence to Defendant's Additional Claim'.

(2) In example 21.49(3), the Defendant's counterclaim should be headed 'Defendant's Counterclaim against Claimant and Third Party' and the Third Party's defence to it should be headed 'Third Party's defence to Defendant's Counterclaim'.

**21.56**
In proceedings where there are Fourth or subsequent parties, additional parties should be referred to in the text of statements of case or other similar documents by name, suitably abbreviated if appropriate. If parties have similar names, suitable distinguishing abbreviations should be used.



# PART 22
## STATEMENTS OF TRUTH

**Documents To Be Verified By A Statement Of Truth**
**22.1**
The following documents must be verified by a statement of truth:

(1) a statement of case;

(2) a response complying with an order under Rule 19.1 to provide further information;

(3) a witness statement;

(4) an acknowledgement of service in a claim begun by way of the Part 8 procedure;

(5) a certificate of service;

(6) any other document where a Rule or Practice Direction requires;

(7) an application notice for:





(a) a charging order under Article 43 of the Law of Damages and Remedies 2005;

(b) an order for attachment of future assets under Article 44 of the Law of Damages and Remedies 2005; and

(c) an order for execution against assets under Article 45 of the Law of Damages and Remedies 2005;

(8) a notice of objections to an account being taken by the Court, unless verified by an affidavit or witness statement; and

(9) a schedule or counter-schedule of expenses and losses in a personal injury claim, and any amendments to such a schedule or counter-schedule, whether or not they are contained in a statement of case.

**22.2**
An expert's report should also be verified by a statement of truth. For the form of the statement of truth verifying an expert's report (which differs from that set out below) see **Rule 31.55**.

**22.3**
The statement of truth may be contained in the document it verifies or it may be in a separate document served subsequently, in which case it must identify the document to which it relates.

**22.4**
Where the form to be used includes a jurat for the content to be verified by an affidavit then a statement of truth is not required in addition.

**22.5**
Where a statement of case is amended, the amendments must be verified by a statement of truth unless the Court orders otherwise.

**22.6**
If an applicant wishes to rely on matters set out in his application notice as evidence, the application notice must be verified by a statement of truth.

**22.7**
A statement of truth is a statement that:

(1) the party putting forward the document;

(2) in the case of a witness statement, the maker of the witness statement; or

(3) in the case of a certificate of service, the person who signs the certificate;

believes the facts stated in the document are true.

**22.8**





The statement of truth must be signed by:

> (1) in the case of a statement of case, a response or an application:

>> (a) the party; or

>> (b) the legal representative on behalf of the party; and

> (2) in the case of a witness statement, the maker of the statement.

**22.9**
A statement of truth in a statement of case may be made by:

> (1) a person who is not a party; or

> (2) by two parties jointly.

**Form Of The Statement Of Truth**
**22.10**
The form of the statement of truth verifying a statement of case, a response, an application notice or a notice of objections should be as follows:

[I believe] [The (claimant or as may be) believes] that the facts stated in this [name document being verified] are true.'



**22.11**
The form of the statement of truth verifying a witness statement should be as follows:

'I believe that the facts stated in this witness statement are true.'

**22.12**
Where the statement of truth is contained in a separate document, the document containing the statement of truth must be headed with the title of the proceedings and the claim number. The document being verified should be identified in the statement of truth as follows:

> (1) claim form: 'the claim form issued on [date]';

> (2) particulars of claim: 'the particulars of claim issued on [date]';

> (3) statement of case: 'the [defence or as may be] served on the [name of party] on [date]';

> (4) application notice: 'the application notice issued on [date] for [set out the remedy sought]'; or

> (5) witness statement: 'the witness statement filed on [date] or served on [party] on [date].

**Who May Sign The Statement Of Truth**





**22.13**

In a statement of case, a response or an application notice, the statement of truth must be signed by:

> (1) the party; or

> (2) the party's legal representative.

**22.14**

A statement of truth verifying a witness statement must be signed by the witness.

**22.15**

A statement of truth verifying a notice of objections to an account must be signed by the objecting party or his legal representative.

**22.16**

Where a document is to be verified on behalf of a company or other corporation, subject to Rule 22.21 below, the statement of truth must be signed by a person holding a senior position in the company or corporation. That person must state the office or position he holds.

**22.17**

Each of the following persons is a person holding a senior position:

> (1) in respect of a registered company or corporation, a director, the treasurer, secretary, chief executive, manager or other officer of the company or corporation; and

> (2) in respect of a corporation which is not a registered company, in addition to those persons set out in (1), the mayor, chairman, president or other similar officer of the corporation.

**22.18**

Where the document is to be verified on behalf of a partnership, those who may sign the statement of truth are:

> (1) any of the partners; or

> (2) a person having the control or management of the partnership business.

**22.19**

An insurer may sign a statement of truth in a statement of case on behalf of a party where the insurer has a financial interest in the result of proceedings brought wholly or partially by or against that party.

**22.20**

If insurers are conducting proceedings on behalf of many claimants or defendants, a statement of truth in a statement of case may be signed by a senior person responsible for the case at a lead insurer, but;

> (1) the person signing must specify the capacity in which he signs;





(2) the statement of truth must be a statement that the lead insurer believes that the facts stated in the document are true; and

(3) the Court may order that a statement of truth also be signed by one or more of the parties.

**22.21**

Where a party is legally represented, the legal representative may sign the statement of truth on his behalf. The statement signed by the legal representative will refer to the client's belief, not his own. In signing he must state the capacity in which he signs and the name of his firm where appropriate.

**22.22**

Where a legal representative has signed a statement of truth, his signature will be taken by the Court as his statement:

(1) that the client on whose behalf he has signed had authorised him to do so;

(2) that before signing he had explained to the client that in signing the statement of truth he would be confirming the client's belief that the facts stated in the document were true; and

(3) that before signing he had informed the client of the possible consequences to the client if it should subsequently appear that the client did not have an honest belief in the truth of those facts (see Section VI of Part 29).





**22.23**

The individual who signs a statement of truth must print his full name clearly beneath his signature.

**22.24**

A legal representative who signs a statement of truth must sign in his own name and not that of his firm or employer.

**22.25**

The following are examples of the possible application of this Part describing who may sign a statement of truth verifying statements in documents other than a witness statement. These are only examples and not an indication of how a Court might apply this Part to a specific situation.

Managing Agent An agent who manages property or investments for the party cannot sign a statement of truth. It must be signed by the party or by the legal representative of the party.

Trusts Where some or all of the trustees comprise a single party one, some or all of the trustees comprising the party may sign a statement of truth. The legal representative of the trustees may sign it.

Insurers If an insurer has a financial interest in a claim involving its insured then, if the



insured is the party, the insurer may sign a statement of truth in a statement of case for the insured party. Rules 22.16 and 22.17 apply to the insurer if it is a company. The claims manager employed by the insurer responsible for handling the insurance claim or managing the staff handling the claim may sign the statement of truth for the insurer (see next example).

Companies Rules 22.16 and 22.17. The word 'manager' will be construed in the context of the phrase 'a person holding a senior position' which it is used to define. The Court will consider the size of the company and the size and nature of the claim. It would expect the manager signing the statement of truth to have personal knowledge of the content of the document or to be responsible for managing those who have that knowledge of the content. A small company may not have a manager, apart from the directors, who holds a senior position. A large company will have many such managers. In a larger company with specialist claims, insurance or legal departments the statement may be signed by the manager of such a department if he or she is responsible for handling the claim or managing the staff handling it.

In-house legal representatives Legal representative is defined in the Schedule to Part 2. A legal representative employed by a party may sign a statement of truth. A person employed by the company who is not legally qualified cannot sign a statement of truth on behalf of the party.

**22.26**
A party may apply to the Court for permission that a statement of truth be signed by a person other than one of those required by the Part.

### Power Of The Court To Require A Document To Be Verified
**22.27**
The Court may order a person who has failed to verify a document in accordance with Rule 22.1 to verify the document.

**22.28**
Any party may apply to the Court for an order under Rule 22.27 that unless within such period as the Court may specify the statement of case is verified by the service of a statement of truth, the statement of case will be struck out.

**22.29**
The usual order for the costs of an application referred to in Rule 22.28 will be that the costs be paid by the party who had failed to verify in any event and forthwith.

### Failure To Verify A Statement Of Case
**22.30**
If a party fails to verify his statement of case by a statement of truth:

    (1) the statement of case shall remain effective unless struck out; but

    (2) the party may not rely on the statement of case as evidence of any of the matters set out in it.

**22.31**



The Court may strike out a statement of case which is not verified by a statement of truth.

**Penalty**
**22.32**
Attention is drawn to Section VI of Part 29 which sets out the consequences of verifying a statement of case containing a false statement without an honest belief in its truth.

## PART 23
GENERAL RULES ABOUT APPLICATIONS FOR COURT ORDERS

**Meaning of 'application notice' and 'respondent'**
**23.1**
In this Part:

(1) 'application notice' means a document in which the applicant states his intention to seek a Court order; and

(2) 'respondent' means:

(a) the person against whom the order is sought; and

(b) such other person as the Court may direct.

**I FILING AND SERVICE OF NOTICE OF AN APPLICATION**
**Application Notice To Be Filed**
**23.2**
The general rule is that an applicant must file an application notice.

**23.3**
An applicant may make an application without filing an application notice if:

(1) this is permitted by a Rule or Practice Direction; or

(2) the Court dispenses with the requirement for an application notice.

**Notice Of An Application**
**23.4**
The general rule is that a copy of the application notice must be served by the applicant on each respondent even if such service is on short notice.

**23.5**
An application may be made without serving a copy of the application notice if this is permitted by:

(1) a Rule; or

(2) a Court order.

**Applications Without Service Of Application Notice**





**23.6**
The Court's permission is required for an application to be made without serving an application notice. The Court's permission will be granted only:

    (1) where there is exceptional urgency;

    (2) where the overriding objective is best furthered by doing so;

    (3) by consent of all parties;

    (4) where **Rule 23.19** below applies;

    (5) where a Rule or Practice Direction permits; or

    (6) where there are good reasons for making the application without notice, for example, because notice would or might defeat the object of the application.

**23.7**
Where an application notice should be served but there is not sufficient time to do so, informal notification of the application should be given unless the circumstances of the application require secrecy.

**23.8**
Where an application without notice does not involve the giving of undertakings to the Court, it will normally be made and dealt with without a hearing, as, for example, applications for an extension of time in which to serve a claim form.

**23.9**
Any application for an interim injunction or similar remedy will require an oral hearing.

**23.10**
A party wishing to make an application without notice which requires an oral hearing before a Judge should contact the Court at the earliest opportunity.

**23.11**
On all applications without notice it is the duty of the applicant and those representing him to make full disclosure of all matters relevant to the application including, in particular, disclosure of any possible defences that may be available to the respondent in response to the application.

**23.12**
The papers lodged for the application should include two copies of a draft of the order sought. Save in exceptional circumstances where time does not permit, all the evidence relied upon in support of the application and any other relevant documents must be lodged in advance with the Registry. If the application is urgent, the Court should be informed in writing of the fact and of the reasons for the urgency.

**Expedited Applications**








**23.13**

The Court will expedite the hearing of an application on notice in cases of sufficient urgency and importance.

**23.14**

Where a party wishes to make an expedited application a request should be made to the Registrar on notice to all other parties.

**Pre-Action Applications**
**23.15**

All applications made before a claim is commenced should be made under Part 8 of the Rules, unless the Court orders otherwise.

**Pre-action Application**
**23.15.1**

In *Vannin Capital PCC PLC v (1) Rafed Abdel Mohsen Bader Al Khorafi & Ors* [2014] DIFC CFI 036 (18 February 2015) the claimant, who provided commercial litigation funding, entered into a funding agreement with the first through third defendants. Those defendants discharged the fourth defendant of legal representation and a replacement payment receipt mechanism was not finalised. The Claimant filed a Part 8 claim under RDC 8.38 and RDC 23.15 seeking an order under RDC 25.12 that c. USD$10m plus interest be paid into Court by the fifth and sixth defendants pending further order of the Court. The Court ordered that c. USD$11m plus interest be paid into Court pending further order of the Court.



**Time When An Application Is Made**
**23.16**

Every application should be made as soon as it becomes apparent that it is necessary or desirable to make it.

**23.17**

Applications should, wherever possible, be made so that they can be considered at any other hearing for which a date has already been fixed or for which a date is about to be fixed. This is particularly so in relation to Case Management Conferences, listing hearings and pre-trial reviews fixed by the Court.

**23.18**

Where a date for a hearing has been fixed and a party wishes to make an application at that hearing but he does not have sufficient time to serve an application notice he should inform the other party and the Court (if possible in writing) as soon as he can of the nature of the application and the reason for it. He should then make the application orally at the hearing..

**23.19**

The Court will only entertain applications at a hearing for which a date has been fixed if the proposed (additional) application will not increase the time estimate already given for the hearing.

**23.20**







Where an application must be made within a specified time, it is so made if the application notice is received by the Court within that time.

**When an application is made**
**23.20.1**
In *Dr. Lothar Ludwig Hardt and Hardt Trading F.Z.E. v DAMAC (DIFC) Company Limited et al* [2009] DIFC CFI 036 (4 April 2010) the Court exercised its power under RDC 4.2(1) retrospectively to extend deadlines for service. In doing so it considered the proper interpretation of RDC 23.20 (at the time RDC 23.21) in the context of the defendants' application pursuant to RDC Part 12 to dispute the Court's jurisdiction. RDC 23.21 provides that where an application must be made within a specified time, it is so made if the application notice is received by the Court within that time. The Court noted that this provision does not refer to filing of the application notice; accordingly, the notice could properly have been transmitted by email in this case: [23]. However, although the defendants' solicitors had transmitted on 21 January 2010 at 15:59 to the DIFC Court Registry by email an application notice and draft order (the deadline for receipt of which was 17:00 on 21 January 2010), the email did not arrive on the Registry's apparatus until 08:00 on 22 January 2010. Accordingly, the Court held that the application had not been received in the period required by RDC 12.4: [25]. The Court, however, concluded that in the circumstances it would be unacceptably disproportionate not to extend time and the Court ordered a retrospective extension of time to 17:30 on 24 January 2010: [30]–[31].

**What An Application Notice Must Include**
**23.21**
An application notice must state:

    (1) what order the applicant is seeking; and

    (2) briefly, why the applicant is seeking the order.

**23.22**
An application notice must be signed and include:

    (1) the title of the claim;

    (2) the reference number of the claim;

    (3) the full name of the applicant;

    (4) where the applicant is not already a party, his address for service; and

    (5) either a request for a hearing or a request that the application be dealt with without a hearing.

**23.23**
On receipt of an application notice containing a request for a hearing the Court will notify the applicant of the time and date for the hearing of the application.

**Service Of A Copy Of An Application Notice**






**23.24**

Unless the Court otherwise directs, or **Rule 23.5** applies a copy of the application notice:

(1) must be served as soon as practicable after it is filed; and

(2) except where another time limit is specified in these Rules, must in any event be served at least 3 days before the Court is to deal with the application.

**23.25**

When a copy of an application notice is served it must be accompanied by:

(1) a copy of any written evidence in support; and

(2) a copy of any draft order which the applicant has attached to his application.

**23.26**

If:

(1) an application notice is served; but

(2) the period of notice is shorter than the period required by these Rules;

the Court may direct that, in the circumstances of the case, sufficient notice has been given and hear the application.



**II EVIDENCE IN SUPPORT OF APPLICATIONS**
**Evidence Already Filed**
**23.27**

Rule 23.25(1) does not require written evidence:

(1) to be filed if it has already been filed; or

(2) to be served on a party on whom it has already been served.

**Filing And Service Of Evidence**
**23.28**

The requirement for evidence in certain types of applications is set out in some of the Rules. Where there is no specific requirement to provide evidence it should be borne in mind that, as a practical matter, the Court will often need to be satisfied by evidence of the facts that are relied on in support of or for opposing the application.

**23.29**

The Court may give directions for the filing of evidence in support of or opposing a particular application. The Court may also give directions for the filing of evidence in relation to any hearing that it fixes on its own initiative. The directions may specify the form that evidence is to take and when it is to be served.

**23.30**

Where it is intended to rely on evidence which is not contained in the application itself, the evidence, if it has not already been served, should be served with the application.

**23.31**





Where a respondent to an application wishes to rely on evidence which has not yet been served, he should serve it as soon as possible and in any event in accordance with any directions the Court may have given.

**23.32**

If it is necessary for the applicant to serve any evidence in reply, it should be served as soon as possible and in any event in accordance with any directions the Court may have given.

**23.33**

Evidence must be filed with the Court as well as served on the parties. Exhibits should not be filed unless the Court otherwise directs.

**Evidence Verified By Statement Of Truth**
**23.34**

Although evidence may be given by affidavit, the Court will generally exercise its discretion under Article 51(1) of the Court Law to permit evidence to be given by witness statement, except where Part 29 requires evidence to be given on affidavit (as, for example, in the case of an application for a freezing order or a search order). In other cases the Court may order that evidence be given by affidavit.

**23.35**

Witness statements and affidavits must comply with the requirements of Part 29, save that photocopy documents should be used unless the Court orders otherwise.



**23.36**

Witness statements must be verified by a statement of truth signed by the maker of the statement.



**23.37**

At hearings other than trial, an applicant may rely on the application notice itself, and a party may rely on his statement of case, if the application notice or statement of case (as the case may be) is verified by a statement of truth.

**23.38**

Proceedings for contempt of court may be brought against a person who makes, or causes to be made, a false statement in a witness statement (or any other document verified by a statement of truth) without an honest belief in its truth. Evidence in support of an application for contempt of court should generally be given by affidavit unless the Court orders otherwise.

**III PREPARATIONS FOR APPLICATIONS**
**Ordinary Applications**
**23.39**

Applications likely to require an oral hearing lasting 2 hours or less are regarded as "ordinary" applications.

**23.40**

Many ordinary applications are very short indeed (e.g. applications to extend time). Such applications can normally be heard without evidence and on short (i.e. a few days) notice.

**23.41**





Where evidence is necessary, the timetable for ordinary applications is as follows:

(1) evidence in support must be filed and served with the application;

(2) evidence in answer must be filed and served within 14 days thereafter;

(3) evidence in reply (if any) must be filed and served within 7 days thereafter.

**23.42**
The timetable may be abridged or extended by agreement between the parties provided that any date fixed for the hearing of the application is not affected. In appropriate cases, this timetable may be abridged by the Court.

**23.43**
If the date fixed for the hearing of an application means that the times in Rules 23.41(2) and 23.41(3) cannot both be achieved, the evidence must be filed and served:

(1) as soon as possible; and

(2) in sufficient time to ensure that the application may fairly proceed on the date fixed.

**Heavy Applications**
**23.44**
Applications likely to require an oral hearing lasting more than 2 hours are regarded as "heavy" applications.



**23.45**
Heavy applications normally involve a greater volume of evidence and other documents and more extensive issues. They accordingly require a longer leadtime for preparation and exchange of evidence.

**23.46**
The timetable for heavy applications is as follows:

(1) evidence in support must be filed and served with the application;

(2) evidence in answer must be filed and served within 28 days thereafter;

(3) evidence in reply (if any) must be filed and served as soon as possible, and in any event within 14 days of service of the evidence in answer.

**23.47**
The timetable may be abridged or extended by agreement between the parties provided that any date fixed for the hearing of the application is not affected. In appropriate cases, the timetable may be abridged by the Court.

**23.47.1**
See Practice Direction 1 of 2012 for rules on skeleton arguments in Heavy Applications.

**Liaison With The Registrar**





**23.48**

In all cases the parties must liaise with the Registrar:

(1) for directions as to the preparations for the hearing of the application;

(2) to fix a date for the hearing; and

(3) for directions as to the management of the hearing.

**Hearing Dates, Time Estimates And Time Limits**
**23.49**

Not later than 5 days before the date fixed for the hearing the applicant must provide the Registry with his current estimate of the time required to dispose of the application.

**23.50**

It is essential for the efficient conduct of the Court's business that the parties inform the Court of the reading required in order to enable the Judge to dispose of the application within the time allowed for the hearing and of the time likely to be required for that purpose. Accordingly:

(1) each party must lodge with the Registry a reading list with an estimate of the time required to complete the reading; and

(2) each party's reading list should identify the material on both sides which the Court needs to read.



**23.51**

All time estimates should be given on the assumption that the Judge will have read in advance the skeleton arguments and the documents identified in the reading list lodged in accordance with **Rule 23.50(1)**.



**23.52**

If at any time either party considers that there is a material risk that the hearing of the application will exceed the time currently allowed, it must inform the Registry immediately.

**23.53**

A time estimate for an ordinary application should allow time for judgment and consequential matters; a time estimate for a heavy application should not.

**23.54**

Save in the situation referred to in **Rule 23.55**, a separate estimate must be given for each application, including any application issued after, but to be heard at the same time as, another application.

**23.55**

A separate estimate need not be given for any application issued after, but to be heard at the same time as, another application where the legal representative in the case certifies in writing that:

(1) the determination of the application first issued will necessarily determine the




application issued subsequently; or

(2) the matters raised in the application issued subsequently are not contested.

**23.56**

If it is found at the hearing that the time required for the hearing has been significantly underestimated, the Judge hearing the application may adjourn the matter and may make any special costs orders (including orders for the immediate payment of costs) as may be appropriate.

**Applications – Preparation Of Documents**
**Application Bundles**
**23.57**

Bundles for use on applications may be compiled in any convenient manner but must contain the following documents (preferably in separate sections in the following order):

(1) a copy of the application notice;

(2) a draft of the order which the applicant seeks;

(3) a copy of the statements of case;

(4) copies of any previous orders which are relevant to the application; and

(5) copies of the witness statements and affidavits filed in support of, or in opposition to, the application, together with any exhibits.

**23.58**

Copies of the statements of case and of previous orders in the action should be provided in a separate section of the bundle. They should not be exhibited to witness statements.

**23.59**

Witness statements and affidavits previously filed in the same proceedings should be included in the bundle at a convenient location. They should not be exhibited to witness statements.

**23.60**

The applicant must, as a matter of course, provide all other parties to the application with a copy of the application bundle at the cost of the receiving party. Further copies should be supplied on request, again at the cost of the receiving party.

**Bundles of Legal Authorities**
**23.61**

On some applications there will be key legal authorities that it would be useful for the Judge to read before the oral hearing of the application. Copies of these authorities should be provided with the skeleton arguments.

**23.62**

It is also desirable for bundles of all of the legal authorities on which the parties wish to rely to be provided to the Judge hearing the application as soon as possible after skeleton arguments have been exchanged.

**Skeleton Arguments**
**23.63**
Skeleton arguments (with a chronology unless one is unnecessary, and with a list of persons if one is warranted) must be lodged with the Registry and served on the legal representativesfor all other parties to the application. Guidelines on the preparation of chronologies are set out in Schedule A to this Part.

**General**
**23.64**
(1) Where the hearing is fixed for a Sunday, or for a Monday where the Judge is hearing other matters on the Sunday, unless the Court orders otherwise:

    (a) All bundles to be submitted for the hearing of the Heavy Application must be received by the DIFC Courts Registry by 10am on the Wednesday prior to the hearing date.

    (b) Skeleton arguments shall be exchanged and filed with the DIFC Courts by no later than 2pm on the Thursday prior to the hearing.

(2) For all other applications or those to be heard by video conference, all bundles must be received by the DIFC Courts Registry by

    (a) 10am on the Wednesday prior to any hearing fixed for a Monday or Tuesday, with Skeleton arguments to be filed with the Courts by 2pm on the Thursday prior to the hearing and

    (b) 10am on the Sunday prior to any hearing fixed for a Wednesday or Thursday with Skeleton arguments to be filed with the Courts by 2pm on the day falling two working days prior to the hearing."

**23.65**
For each day that a submission or filing for a hearing as set out in 23.4 above is delayed, a charge of US$200 will be applied to the party responsible for making the filing.

**23.66**
Problems with the lodging of bundles or skeleton arguments should be notified to the Registrar as far in advance as possible. If the application bundle or skeleton argument is not lodged by the time specified, the application may be stood out of the list without further warning.

**23.67**
Failure to comply with the requirements for lodging bundles for the application will normally result in the application not being heard on the date fixed at the expense of the party in default. An order for immediate payment of costs may be made.

**23.68**



The parties must anticipate that at any hearing the Court may wish to review the conduct of the case as a whole and give any necessary case management directions. They should be ready to assist the Court in doing so and to answer questions the Court may ask for this purpose.

**IV HEARINGS**
**Applications Which May Be Dealt With Without A Hearing**
**23.69**
The Court may deal with an application without a hearing if:

(1) the parties agree as to the terms of the order sought;

(2) the parties agree that the Court should dispose of the application without a hearing; or

(3) the Court does not consider that a hearing would be appropriate.

**Agreed Orders**
**23.70**
Rule 36.28 sets out the circumstances where an agreed judgment or order may be entered and sealed.

**23.71**
Where an agreed order is to be made by a Judge the order must be drawn so that the Judge's name and judicial title can be inserted.



**23.72**
The parties to an application for an agreed order must ensure that they provide the Court with any material it needs to be satisfied that it is appropriate to make the order. Subject to any Rule or Practice Direction, a letter will generally be acceptable for this purpose.

**23.73**
Agreed orders may be submitted to the Court in draft for approval and initialling without the need for attendance.

(1) Two copies of the draft, one of which (or a counterpart) must be signed on behalf of all parties to whom it relates, should be lodged at the Registry. The copies should be undated. The order will be dated with the date on which the Judge initials it, but that does not prevent the parties acting on their agreement immediately if they wish.

(2) The parties should act promptly in lodging the copies at the Registry. If it is important that the orders are made by a particular date, that fact (and the reasons for it) should be notified in writing to the Registry.

**23.74**
Where a judgment or order has been agreed in respect of an application or claim where a hearing date has been fixed, the parties must inform the Court immediately.

**Parties Agree Hearing Unnecessary**






**23.75**

If the applicant considers that the application is suitable for determination on paper, he should ensure before lodging the papers with the Court:

    (1) that the application notice together with any supporting evidence has been served on the respondent;

    (2) that the respondent has been allowed the appropriate period of time in which to serve evidence in opposition;

    (3) that any evidence in reply has been served on the respondent; and

    (4) that there is included in the papers

        (a) the written consent of the respondent to the disposal of the application without a hearing; or

        (b) a statement by the applicant of the grounds on which he seeks to have the application disposed of without a hearing, together with confirmation that a copy has been served on the respondent.

**23.76**

The Court at its discretion may dispose of an application without a hearing in the absence of the respondent's consent.



**23.77**

Certain applications relating to the management of proceedings may conveniently be made in correspondence without issuing an application notice. It must be clearly understood that such applications are not applications without notice and the applicant must therefore ensure that a copy of the letter making the application is sent to all other parties to the proceedings. Accordingly, the following procedure should be followed when making an application of this kind:



    (1) the applicant should first ascertain whether the application is opposed by the other parties;

    (2) if it is, the applicant should apply to the Court by letter stating the nature of the order which it seeks and the grounds on which the application is made;

    (3) a copy of the letter should be sent (by fax or email where possible) to all other parties at the same time as it is sent to the Court;

    (4) any other party wishing to make representations should do so by letter within two days (i.e. two clear days) of the date of the applicant's letter of application. The representations should be sent (by fax or email where possible) to the applicant and all other parties at the same time as they are sent to the Court; and

    (5) the Court will advise its decision by letter to the applicant. The applicant must forthwith copy the Court's letter to all other parties, by email where possible.

**Court Does Not Consider Hearing Appropriate**





**23.78**
Where **Rule 23.69(3)** applies the Court will treat the application as if it were proposing to make an order on its own initiative.

**Hearings To Be In Public**
**23.79**
Applications (other than arbitration applications) will be heard in public in accordance with Article 13 of the Court Law, save where otherwise ordered.

**23.80**
With certain exceptions, arbitration applications will normally be heard in private.

**23.81**
An application without notice for a freezing order or a search order will normally be heard in private.

**Hearings By Video Link, Telephone, Electronic Device Or Other Appropriate Means**
**23.82**
Parties must consider whether hearings can conveniently take place by video link, telephone, electronic device or other appropriate means in accordance with Article 51 of the Court Law.

**23.83**
    (1) The general rule for all hearings before the DIFC Courts is that the advocate for each party should appear physically in the DIFC Courts

    (2) There may be exceptional situations in which an advocate is unable to appear, for example due to the urgency of the matter, or because the estimated cost of his appearance in person before the Court is wholly disproportionate to the matters to be addressed at the hearing. In such circumstances that advocate may, by application on notice under RDC Part 23.77, request permission from the Registrar to participate in a hearing by video or telephone conference.

**23.84**
Guidelines on the conduct of hearings by video link and telephone are set out Schedules B and C to this Part.

**Power Of The Court To Proceed In The Absence Of A Party**
**23.85**
Where the applicant or any respondent fails to attend the hearing of an application, the Court may proceed in his absence.

**23.86**
Where:

    (1) the applicant or any respondent fails to attend the hearing of an application; and

    (2) the Court makes an order at the hearing;

the Court may, on application or of its own initiative, re-list the application.

**23.87**






The power to re-list the application in **Rule 23.86** is in addition to any other powers of the Court with regard to the order (for example to set aside, vary, discharge or suspend the order).

**Note Of Proceedings**
**23.88**
The Court will keep, either by way of a note or a tape recording, brief details of all proceedings before it, including the dates of the proceedings and a short statement of the decision taken at each hearing.

**Schedule C to Part 23 Telephone hearings-1**

**V JUDGMENTS, ORDERS AND DIRECTIONS**
**Orders Generally Drawn Up By The Parties**
**23.89**
Except for orders made by the Court on its own initiative and unless the Court orders otherwise, every judgment, order or direction will be drawn up by the parties.

**Agreed Orders**
**23.90**
An application for an agreed order must include a draft of the proposed order signed on behalf of all the parties to whom it relates in accordance with **Rule 23.73(1)**.

**Arabic Translations**
**23.91**
Parties are reminded of the obligation to produce Arabic translations of any judgment, order or direction in accordance with **Rule 2.4**.

**Time For Compliance With Orders**
**23.92**
Where an order provides a time by which something is to be done, the order should wherever possible state the particular date by which the thing is to be done rather than specify a period of time from a particular date or event.

**Service Of Application Where Application Made Without Notice**
**23.93**
This Rule applies where the Court has disposed of an application which it permitted to be made without service of a copy of the application notice.

(1) Where the Court makes an order, whether granting or dismissing the application, a copy of the application notice and any evidence in support must, unless the Court orders otherwise, be served with the order on any party or other person:

(a) against whom the order was made; and

(b) against whom the order was sought.

(2) The order must contain a statement of the right to make an application to set aside or vary the order under **Rule 23.94**.

**23.94**





A person who was not served with a copy of the application notice before an order was made under **Rule 23.91**, may apply to have the order set aside or varied.

**23.95**
An application under this **Rule 23.94** must be made within 7 days after the date on which the order was served on the person making the application.

**VI COSTS**
**Immediate Assessment Of Costs**
**23.96**
Attention is drawn to Part 38 and, in particular, to the Court's power to make an immediate assessment of costs.

**23.97**
Attention is also drawn to **Rule 38.56** which provides that if an order makes no mention of costs, none are payable in respect of the proceedings to which it relates.

**23.98**
In carrying out an immediate assessment of costs, the Court may have regard amongst other matters to:

(1) advice from the Registrar on costs of legal representatives;

(2) any survey published showing the average hourly expense rate for legal representatives in the DIFC or Dubai;



(3) any information provided to the Court by a Bar Association (or similar body) on average charges by legal representatives.

**SCHEDULE A TO PART 23**
**SKELETON ARGUMENTS, CHRONOLOGIES AND INDICES**
**Skeleton Arguments**
1. A skeleton argument is intended to identify both for the parties and the Court those points which are, and are not, in issue and the nature of the argument in relation to those points that are in issue. It is not a substitute for oral argument.

2. Skeleton arguments must therefore:

(a) identify concisely:

(i) the nature of the case generally and the background facts insofar as they are relevant to the matter before the Court;

(ii) the propositions of law relied on with references to the relevant authorities;

(iii) the submissions of fact to be made with references to the evidence;

(b) be in numbered paragraphs and state the name of the legal representative(s) who prepared them; and

(c) should avoid arguing the case at length.





**Chronologies And Indices**

3. As far as possible chronologies and indices should be uncontroversial. The ideal is that the Court and the parties should have a single point of reference that all find useful and are happy to work with.

4. Where there is disagreement about a particular event or description, it is useful if that fact is indicated in neutral terms and the competing versions shortly stated.

5. If time and circumstances allow its preparation, a chronology or index to which all parties have contributed and agreed can be invaluable.

6. Chronologies and indices once prepared can be easily updated and are of continuing usefulness throughout the life of the case.

**SCHEDULE B TO PART 23**
**VIDEO-CONFERENCING PROTOCOL**
This protocol is for the use of video conferencing (VCF) in civil proceedings. It is in part based, with permission, upon the protocol of the Federal Court of Australia. It is intended to provide a guide to all persons involved in the use of VCF, although it does not attempt to cover all the practical questions which might arise.

**Video Conferencing Generally**



1. The protocol covers the use of VCF equipment both (a) in a courtroom, whether via equipment which is permanently placed there or via a mobile unit, and (b) in a separate studio or conference room. In either case, the location at which the Judge sits is referred to as the "local site". The other site or sites to and from which transmission is made are referred to as "the remote site" and in any particular case any such site may be another courtroom. The protocol applies to cases where VCF is used for the taking of evidence and also to its use for other parts of any legal proceeding (for example, interim applications, case management conferences, pre-trial reviews). 

2. VCF may be a convenient way of dealing with any part of proceedings: it can involve considerable savings in time and cost. Its use for the taking of evidence from overseas witnesses will, in particular, be likely to achieve a material saving of costs, and such savings may also be achieved by its use for taking domestic evidence. It is, however, inevitably not as ideal as having the witness physically present in court. Its convenience should not therefore be allowed to dictate its use. A judgment must be made in every case in which the use of VCF is being considered not only as to whether it will achieve an overall cost saving but as to whether its use will be likely to be beneficial to the efficient, fair and economic disposal of the litigation. In particular, it needs to be recognised that the degree of control a court can exercise over a witness at the remote site is or may be more limited than it can exercise over a witness physically before it.

3. When used for the taking of evidence, the objective should be to make the VCF setting as close as possible to the usual practice in a trial court where evidence is taken in open court. To gain the maximum benefit, several differences have to be taken into account. Some matters, which are taken for granted when evidence is



taken in the conventional way, take on a different dimension when it is taken by VCF: for example, the administration of the oath, ensuring that the witness understands who is at the local site and what their various roles are, the raising of any objections to the evidence and the use of documents.

4. It should not be presumed that all foreign governments are willing to allow their nationals or others within their jurisdiction to be examined before a court in the DIFC by means of VCF. If there is any doubt about this, enquiries should be directed to the Registry with a view to ensuring that the country from which the evidence is to be taken raises no objection to it at diplomatic level. The party who is directed to be responsible for arranging the VCF (see paragraph 8 below) will be required to make all necessary inquiries about this well in advance of the VCF and must be able to inform the Court what those inquiries were and of their outcome.

5. Time zone differences need to be considered when a witness abroad is to be examined in the DIFC by VCF. The convenience of the witness, the parties, their representatives and the Court must all be taken into account. The cost of the use of a commercial studio is usually greater outside normal business hours.

6. Those involved with VCF need to be aware that, even with the most advanced systems currently available, there are the briefest of delays between the receipt of the picture and that of the accompanying sound. If due allowance is not made for this, there will be a tendency to "speak over" the witness, whose voice will continue to be heard for a millisecond or so after he or she appears on the screen to have finished speaking.



7. With current technology, picture quality is good, but not as good as a television picture. The quality of the picture is enhanced if those appearing on VCF monitors keep their movements to a minimum.

**Preliminary Arrangements**

8. The Court's permission is required for any part of any proceedings to be dealt with by means of VCF. Before seeking a direction, the applicant should notify the Registrar or other appropriate Court Officer of the intention to seek it, and should enquire as to the availability of Court VCF equipment for the day or days of the proposed VCF. The application for a direction should be made to the Registrar or Judge, as may be appropriate. If all parties consent, permission can be sought by letter or e-mail, although the Court may still require an oral hearing. All parties are entitled to make submissions on whether or not such a direction should be given and as to its terms. If a witness at a remote site is to give evidence by an interpreter, consideration should be given at this stage as to whether the interpreter should be at the local site or the remote site. If a VCF direction is given, arrangements for the transmission will then need to be made. The Court will ordinarily direct that the party seeking permission to use VCF is to be responsible for this. That party is hereafter referred to as "the VCF arranging party".

9. Subject to any order to the contrary, all costs of the transmission, including the costs of hiring equipment and technical personnel to operate it, will initially be the responsibility of, and must be met by, the VCF arranging party. All reasonable efforts should be made to keep the transmission to a minimum and so keep the costs down.

All such costs will be considered to be part of the costs of the proceedings and the Court will determine at such subsequent time as is convenient or appropriate who, as between the parties, should be responsible for them and (if appropriate) in what proportions.

10. The local site will, if practicable, be a courtroom but it may instead be an appropriate studio or conference room. The VCF arranging party must contact the Registry and make arrangements for the VCF transmission. Details of the remote site, and of the equipment to be used both at the local site (if not being supplied by the Court) and the remote site (including the number of ISDN lines and connection speed), together with all necessary contact names and telephone numbers, will have to be provided to the Registry. The Court will need to be satisfied that any equipment provided by the parties for use at the local site and also that at the remote site is of sufficient quality for a satisfactory transmission. The VCF arranging party must ensure that a technical assistant will be present at the local site to supervise the operation of the VCF throughout the transmission in order to deal with any technical problems. That party must also arrange for a technical assistant to be similarly present at the remote site for like purposes.

11. It is recommended that the Judge, legal representatives and witness should arrive at their respective VCF sites about 20 minutes prior to the scheduled commencement of the transmission.

12. If the local site is not a courtroom, but a conference room or studio, the Judge will need to determine who is to sit where. The VCF arranging party must take care to ensure that the number of microphones is adequate for the speakers and that the panning of the camera for the practitioners' table encompasses all legal representatives so that the viewer can see everyone seated there.

13. The proceedings, wherever they may take place, form part of a trial to which the public is entitled to have access (unless only the Court has determined that they should be heard in private). If the local site is to be a studio or conference room, the VCF arranging party must ensure that it provides sufficient accommodation to enable a reasonable number of members of the public to attend.

14. In cases where the local site is a studio or conference room, the VCF arranging party should make arrangements, if practicable, for the insignia of the DIFC Court to be placed above the Judge's seat.

15. In cases in which the VCF is to be used for the taking of evidence, the VCF arranging party must arrange for recording equipment to be provided by the Court which made the VCF direction so that the evidence can be recorded. A Court Officer will normally be present to operate the recording equipment when the local site is a courtroom. The VCF arranging party should take steps to ensure that a Court Officer is present to do likewise when it is a studio or conference room. The equipment should be set up and tested before the VCF transmission. It will often be a valuable safeguard for the arranging party also to arrange for the provision of recording equipment at the remote site. This will provide a useful back-up if there is any reduction in sound quality during the transmission. A direction from the Court for the making of such a back-up recording must, however, be obtained first. This

is because the proceedings are court proceedings and, save as directed by the Court, no other recording of them must be made.

16. Some countries may require that any oath or affirmation to be taken by a witness accord with local custom. The VCF arranging party must make all appropriate prior inquiries and put in place all arrangements necessary to enable the oath or affirmation to be taken in accordance with any local custom. That party must be in a position to inform the Court what those inquiries were, what their outcome was and what arrangements have been made. If the oath or affirmation can be administered in the manner normal in the DIFC, the VCF arranging party must arrange in advance to have the appropriate holy book at the remote site. The Court Officer will normally administer the oath.

17. Consideration will need to be given in advance to the documents to which the witness is likely to be referred. The parties should endeavour to agree on this. It will usually be most convenient for a bundle of the copy documents to be prepared in advance, which the VCF arranging party should then send to the remote site.

18. Additional documents are sometimes quite properly introduced during the course of a witness's evidence. To cater for this, the VCF arranging party should ensure that equipment is available to enable documents to be transmitted between sites during the course of the VCF transmission. Consideration should be given to whether to use a document camera. If it is decided to use one, arrangements for its use will need to be established in advance. The panel operator will need to know the number and size of documents or objects if their images are to be sent by document camera. In many cases, a simpler and sufficient alternative will be to ensure that there are reception facilities at the participating sites.

**The Hearing**

19. The procedure for conducting the transmission will be determined by the Judge. He will determine who is to control the cameras. In cases where the VCF is being used for an application in the course of the proceedings, the Judge will ordinarily not enter the local site until both sites are on line. Similarly, at the conclusion of the hearing, he will ordinarily leave the local site while both sites are still on line. The following paragraphs apply primarily to cases where the VCF is being used for the taking of the evidence of a witness at a remote site. In all cases, the Judge will need to decide whether court dress is appropriate when using VCF facilities. It might be appropriate when transmitting from courtroom to courtroom. It might not be when a commercial facility is being used.

20. At the beginning of the transmission, the Judge will probably wish to introduce himself and the legal representatives to the witness. He will probably want to know who is at the remote site and will invite the witness to introduce himself and anyone else who is with him. He may wish to give directions as to the seating arrangements at the remote site so that those present are visible at the local site during the taking of the evidence. He will probably wish to explain to the witness the method of taking the oath or of affirming, the manner in which the evidence will be taken, and who will be conducting the examination and cross-examination. He will probably also wish to inform the witness of the matters referred to in paragraphs 6 and 7 above (coordination of picture with sound, and picture quality).

21. The examination of the witness at the remote site should follow as closely as possible

the practice adopted when a witness is in the courtroom. During examination, cross-examination and re-examination, the witness must be able to see the legal representative asking the question and also any other person (whether another legal representative or the Judge) making any statements in regard to the witness's evidence. It will in practice be most convenient if everyone remains seated throughout the transmission.

### SCHEDULE C TO PART 23
### TELEPHONE HEARINGS

1. The Court may order than an application or part of an application be dealt with by a telephone hearing.

2. The applicant should indicate on his application notice if he seeks a Court order under paragraph 1. Where he has not done so but nevertheless wishes to seek an order the request should be made as early as possible.

3. An order under paragraph 1 will not normally be made unless every party entitled to be given notice of the application and to be heard at the hearing has consented to the order.

4. No representative of a party to an application being heard by telephone may attend the Judge in person while the application is being heard unless the other party to the application has agreed that he may do so.

5. If an application is to be heard by telephone the following directions will apply, subject to any direction to the contrary:

   (a) The applicant's legal representative must arrange the telephone conference for precisely the time fixed by the Court. The telecommunications provider must be capable of connecting the parties and the Court.

   (b) He must tell the operator the telephone numbers of all those participating in the conference call and the sequence in which they are to be called.

   (c) It is the responsibility of the applicant's legal representative to ascertain from all the other parties whether their legal representatives will be on the same or different telephone numbers.

   (d) The sequence in which they are to be called will be:

      (i) the applicant's legal representatives;

      (ii) the legal representatives for all other parties; and

      (iii) the Judge.

   (e) The applicant's legal representatives must arrange for the conference to be recorded on tape by the telecommunications provider whose system is being used and must send the tape to the Court.

   (f) Each speaker is to remain on the line after being called by the operator setting



up the conference call. The call may be 2 or 3 minutes before the time fixed for the application.

(g) When the Judge has been connected the applicant's legal representative will introduce the parties in the usual way.

(h) If the use of a 'speakerphone' by any party causes the Judge or any other party any difficulty in hearing what is said the Judge may require that party to use a hand held telephone.

(i) The telephone charges debited to the account of the party initiating the conference call will be treated as part of the costs of the application.

## PART 24
IMMEDIATE JUDGMENT

**Grounds For Immediate Judgment**
**24.1**
The Court may give immediate judgment against a claimant or defendant on the whole of a claim, part of a claim or on a particular issue if:

(1) it considers that:

(a) that claimant has no real prospect of succeeding on the claim or issue; or

(b) that defendant has no real prospect of successfully defending the claim or issue; and

(2) there is no other compelling reason why the case or issue should be disposed of at a trial.

**Grounds for Immediate Judgment**
**24.1.1**
The applicable principles on an application under RDC 24.1 were summarised by Steel DCJ in *The Estate of Christos Papadopoulos v Standard Chartered Bank* [2017] DIFC DCI 004 (27 February 2018) at [16] as follows:

*"(a) An application for immediate judgment may be based on a point of law, the evidence which can reasonably be expected to be available at trial or the lack of it, or a combination of these, as provided by RDC 24.2;*

*(b) The Court must consider whether the respondent to an application for immediate judgment has a "realistic" as opposed to "fanciful" prospect of success; where a fanciful claim is one that is entirely without substance;*

*(c) A realistic prospect of success requires some degree of conviction and not one that is merely arguable;*

*(d) The Court should avoid conducting a mini-trial without disclosure or oral*

166



*evidence;*

*(e) The Court is not required to take everything that a party says in its witness evidence at face value and without analysis. Factual assertions may have no real substance, particularly where they are contradicted by contemporaneous documents;*

*(f) The Court should avoid being drawn into an attempt to resolve those conflicts of fact which are normally resolved by a trial process;*

*(g) The Court must take account of evidence actually placed before it on the application for immediate judgment and the evidence reasonably expected to be available at trial;*

*(h) Allegations of fraud may pose particular problems;*

*(i) The overall burden of proof remains on the claimant to establish that there are no real prospects of success and no compelling reason for trial;*

*(j) The Court should hesitate to make a final decision without a trial where reasonable grounds exist for believing that a fuller investigation into the facts of the case would add to or alter the evidence available to the trial judge and so affect the outcome of the case;*

*(k) There will be a compelling reason for trial where there are circumstances that ought to be investigated.*

That summary drew heavily on the previous statement of the principles in *GFH Capital Limited v David Lawrence Haigh* [2014] DIFC CFI 020 (10 November 2016), by reference to the English authorities as summarised and restated in *JSC VTB Bank v Skurikhin* [2014] EWHC 271 at [9].

**24.1.2**
It was emphasised in *GFH Capital* (by reference to *Doncaster Pharmaceuticals Group Ltd v Bolton Pharmaceutical Co 100 Ltd* [2006] EWCA Civ 661) that a court should hesitate about making a final decision without trial, even where there is no obvious conflict of fact at the time of the application, where reasonable grounds exist for believing that a fuller investigation into the facts of the case would add to or alter the evidence available to the trial judge and so affect the outcome of the case: [10]. That may particularly be the case where the defendant has not participated in the hearing: [44].

It was further emphasised that the seriousness of allegations was a factor relevant to whether immediate judgment should be granted, because: (i) the more serious the allegation, the less likely it is to have occurred: [12]; and (ii) prospect of a finding of a dishonesty may mean there is a compelling reason for proceeding to trial due to the severity of such a finding: [13]. Immediate judgment was granted at first instance by Miles J in *GFH Capital*, the Court having been persuaded by the claimant's *"full and detailed"* evidence that the defendant's position was not *"at all likely to be better at trial"*: [44]. There was no other compelling reason why the case should be disposed of at trial, and the delays caused to the claimant in obtaining a hearing of its application



tended in favour of immediate judgment: [45]. That decision was reversed on appeal ([2017] DIFC CA 002 (23 November 2017)), on the basis that Mr Haigh had filed some evidence responding to the claimant's evidence, and that Mr Haigh's financial and physical inability to respond in detail to the charges raised against him was a special circumstance which warranted giving Mr Haigh a further and final opportunity to adduce oral evidence in his defence at trial: [6]-[7]. The "*normal and appropriate consequences of a case where a defendant escapes Immediate Judgment on the basis of special circumstances*" was said (at [9]) to be an early trial. An early trial was therefore ordered.

**24.1.3**

An application for immediate judgment was dismissed in *Amit Dattani & Ors v Damac Park Towers Company Limited* [2012] DIFC CFI 034 (20 October 2013), particularly in light of the need for oral evidence to determine a crucial issue in dispute: [21]-[22].

24.1.4

The respondent's request in *Natixis SA v Fast Telcom General Trading LLC* [2016] CFI 047 (15 January 2018) for the appointment of an expert to determine the calculation of the claimed sums was not a compelling reason not to grant immediate judgment, in circumstances where the claimant had provided further clarifications of and revisions to its calculations which satisfied the judge: [28].

**24.2**

An application for immediate judgment under Rule 24.1 may be based on:

    (1) a point of law (including a question of construction of a document);



    (2) the evidence which can reasonably be expected to be available at trial or the lack of it; or

    (3) a combination of these.

**Types Of Proceedings In Which Immediate Judgment Is Available**
**24.3**
The Court may give immediate judgment against a claimant or defendant in any type of proceedings.

**Procedure**
**24.4**
A claimant may not apply for immediate judgment until the defendant against whom the application is made has filed:

    (1) an acknowledgement of service; or

    (2) a defence; unless

        (a) the Court gives permission; or

        (b) a Practice Direction provides otherwise.

**24.5**







If a claimant applies for immediate judgment before a defendant against whom the application is made has filed a defence, that defendant need not file a defence before the hearing.

**24.6**
Where an immediate judgment hearing is fixed, the respondent (or the parties where the hearing is fixed of the Court's own initiative) must be given at least 14 days' notice of:

(1) the date fixed for the hearing; and

(2) the issues which it is proposed that the Court will decide at the hearing.

**Procedure For Making An Application**
**24.7**
The application notice must include a statement that it is an application for immediate judgment made under Part 24.

**24.8**
The application notice or the evidence referred to in it or served with it must:

(1) identify concisely any point of law or provision in a document on which the applicant relies; and/or

(2) state that it is made because the applicant believes that on the evidence the respondent has no real prospect of succeeding on the claim or issue or (as the case may be) of successfully defending the claim or issue to which the application relates;



and in either case state that the applicant knows of no other compelling reason why the case or issue should be disposed of at a trial.

**Evidence For The Purposes Of An Immediate Judgment Hearing**
**24.9**
The parties are to comply with Part 23 but it is not necessary for written evidence:

(1) to be filed if it has already been filed; or

(2) to be served on a party on whom it has already been served.

**24.10**
Where an immediate judgment hearing is fixed by the Court of its own initiative:

(1) any party who wishes to rely on written evidence at the hearing must:

(a) file the written evidence; and

(b) unless the Court orders otherwise, serve copies on every other party to the proceedings;

at least 7 days before the date of the hearing;





(2) any party who wishes to rely on written evidence at the hearing in reply to any other party's written evidence must:

    (a) file the written evidence in reply; and

    (b) unless the Court orders otherwise serve copies on every other party to the proceedings;

at least 3 days before the date of the hearing.

**Orders The Court May Make**
**24.11**
The orders the Court may make on an application under Part 24 include:

    (1) judgment on the claim or any part of the claim;

    (2) the striking out or dismissal of the claim;

    (3) the dismissal of the application; and

    (4) a conditional order.

**24.12**
Where it appears to the Court possible that a claim or defence may succeed but improbable that it will do so, the Court may make a conditional order.

**Conditional Orders**
**24.12.1**
A conditional order under RDC 24.12 should not be made where it is reasonably clear that the party against whom the order is to be made would not have sufficient means to provide the security which would be a pre-requisite for a conditional permission: *David Lawrence Haigh v GFH Capital Limited* [2017] DIFC CA 02 (23 November 2017) at [8].

**24.13**
A conditional order is an order which requires a party:

    (1) to pay a sum of money into Court; or

    (2) to take a specified step in relation to his claim or defence, as the case may be, and provides that that party's claim will be dismissed or his statement of case will be struck out if he does not comply.

**Accounts And Inquiries**
**24.14**
If a remedy sought by a claimant in his claim form includes, or necessarily involves, taking an account or making an inquiry, an application can be made under Part 24 by any party to the proceedings for an order directing any necessary accounts or inquiries to be taken or made.

**Specific Performance**







**24.15**

If a remedy sought by a claimant in his claim form includes a claim:

(1) for specific performance of an agreement (whether in writing or not) for the sale, purchase, exchange, mortgage or charge of any property, or for the grant or assignment of a lease or tenancy of any property, with or without an alternative claim for damages; or

(2) for rescission of such an agreement; or

(3) for the forfeiture or return of any deposit made under such an agreement;

the claimant may apply under Part 24 for judgment.

**24.16**

The claimant may do so at any time after the claim form has been served, whether or not the defendant has acknowledged service of the claim form, whether or not the time for acknowledging service has expired and whether or not any particulars of claim have been served.

**24.17**

The application notice by which an application under **Rule 24.15** is made must have attached to it the text of the order sought by the claimant.

**24.18**



The application notice and a copy of every affidavit in support and of any exhibit referred to therein must be served on the defendant not less than 4 days before the hearing of the application.

**Case Management**

**24.19**

Where the Court dismisses the application or makes an order that does not completely dispose of the claim it may:

(1) give directions as to the filing and service of a defence; and

(2) give further directions about the management of the case.

**Costs**

**24.20**

Attention is drawn to Part 38 and, in particular, to the Court's power to make an immediate assessment of costs.

**24.21**

Attention is also drawn to **Rule 38.56** which provides that if an order makes no mention of costs, none are payable in respect of the proceedings to which it relates.

**Setting Aside Order For Immediate Judgment**






**24.22**

If an order for immediate judgment is made against a respondent who does not appear at the hearing of the application, the respondent may apply for the order to be set aside or varied (see also Rules **23.83** to **23.85**).

**24.23**

On the hearing of an application under **Rule 24.22**, the Court may make such order as it thinks just.

## PART 25
INTERIM REMEDIES AND SECURITY FOR COSTS

**Ex parte orders**
**25.0.1**

An applicant making an *ex parte* application is under a strict duty to disclose to the Court *"all material facts"* including expressly any defence which the defendant has asserted or which, on an objective assessment of the facts, may be open to him: *Ithmar Capital Ltd v 8 Investment INC and 8 Investment FZE* [2008] DIFC CA 001 at [25] (17 March 2008). That duty requires the applicant (and its lawyers) to form an objective view as to the defences which would have been available to be taken by the defendant had he been present, excluding only ones which could not reasonably be expected to be taken in due course or which can be dismissed as being without substance or importance. It is not sufficient to refer to a matter in an affidavit or exhibit without expressly drawing the Court's attention to it: [34]. The duty includes a duty to make proper inquiries before making the application: *Trustee in Bankruptcy and Liquidator of Cash Plus Limited and Receiver of Cash Plus' Subsidiaries and Affiliates v Carlos Hill, Bertram Hill, Hill Group Limited and Bank Julius Baer (Middle East) Limited* [2009] DIFC CFI 024 (11 November 2009) at [23]-[24], citing *Brink's Mat Ltd v Elcome* [1988] 1 WLR 1350 at 1358.

A breach of the duty will cause the order to be discharged; though the Court has power to order an injunction in whatever terms justified by the evidence, or to refuse the application regardless of the merits it otherwise would have had: *Ithmar Capital* at [37]. The appropriate course will depend *inter alia* on the significance of the non-disclosure: [40]. Notwithstanding the material non-disclosure in that case, the Court of Appeal permitted the grant of a new freezing order. The order was made only in respect of the respondent's assets in the jurisdiction as the need for a world-wide extension had not been demonstrated: [53].

If allegations of non-disclosure are to be made by a respondent at the return date, they must be detailed in advance of the hearing so that the points can be properly addressed at the hearing: *Sunteck Lifestyles Limited v Al Tamimi and Company Limited* [2017] DIFC CFI 48 (23 November 2017) at [4].

Orders For Interim Remedies



**25.1**

The Court may grant the following interim remedies:

(1) an interim injunction;

(2) an interim declaration;

(3) an order:

    (a) for the detention, custody or preservation of relevant property;

    (b) for the inspection of relevant property;

    (c) for the taking of a sample of relevant property;

    (d) for the carrying out of an experiment on or with relevant property;

    (e) for the sale of relevant property which is of a perishable nature or which for any other good reason is desirable to sell quickly; and

    (f) for the payment of income from relevant property until a claim is decided.

(4) an order authorising a person to enter any land or building in the possession of a party to the proceedings for the purposes of carrying out an order under sub-paragraph (3);



(5) an order providing for the delivery up of any goods which are or may become the subject matter of subsequent proceedings in the Court or as to which any question may arise in proceedings, to the claimant or to a person appointed by the Court for the purpose on such terms and conditions as may be specified in the order;



(6) an order (referred to as a 'freezing order'):

    (a) restraining a party from removing from the jurisdiction assets located there; or

    (b) restraining a party from dealing with any assets whether located within the jurisdiction or not;

(7) an order directing a party to provide information about the location of relevant property or assets or to provide information about relevant property or assets which are or may be the subject of an application for a freezing order;

(8) an order (referred to as a 'search order') requiring a party to admit another party to premises for the purpose of preserving evidence;

(9) an order for production of documents or inspection of property before a claim has been made;

(10) an order for production of documents or inspection of property against a non-party;

(11) an order (referred to as an order for interim payment) under Section II of this



Part for payment by a defendant on account of any damages, debt or other sum (except costs) which the Court may hold the defendant liable to pay;

(12) an order for a specified fund to be paid into Court or otherwise secured, where there is a dispute over a party's right to the fund;

(13) an order permitting a party seeking to recover personal property to pay money into Court pending the outcome of the proceedings and directing that, if he does so, the property shall be given up to him;

(14) an order directing a party to prepare and file accounts relating to the dispute;

(15) an order directing any account to be taken or inquiry to be made by the Court;

(16) an order appointing a receiver or receiver and manager, having such powers as the Court may see fit, of the property or any of the property of any body corporate;

(17) where the person against whom the order is to be made is a natural person:

(a) an order appointing a receiver or trustee, having such powers as the Court may see fit, of the property or any of the property of that person;

(b) an order requiring that person to deliver up to the Court his passport and such other documents as the Court sees fit; or




(c) an order prohibiting that person from leaving the DIFC, Dubai or the UAE without the consent of the Court; and

(18) any other remedy provided by any other law, whether enacted before or after these Rules.

**Interim remedies the Court may order**
**25.1.6(i)**
The Court of Appeal in *Ithmar Capital Ltd v 8 Investment INC and 8 Investment FZE* [2008] DIFC CA 001 (17 March 2008), having noted the common law's development of the power (now recorded in RDC, 25.1(6)) to grant a "freezing order" ([21]-[22]) summarised the four main requirements for such relief. The applicant's evidence must satisfy the Court that: (1) it has a *"good arguable case"*; (2) the defendant has or may have assets which will be available to satisfy the judgment against him, if judgment is given in the claimant's favour; (3) there is a real risk that the judgment will not be satisfied by reason of an *"unjustifiable"* disposal of those assets; and (4) in all of the circumstances it is *"just and convenient"* to make the order sought: [25].

The Court noted in *Bocimar International NV v Emirates Trading Agency LLC* [2015] DIFC CFI 008 (31 January 2016) that the actual test under RDC 25.1(6) was whether an order was *"appropriate"*, with *"just and convenient"* being the language under the equivalent English provisions. The Court held, however, that (at least in the circumstances of that case) there was no material difference between the tests: [7]. It

was further noted that where a freezing order was being sought in the context of the enforcement of a foreign judgment, the *"good arguable case"* element of the test was inapplicable: [8].

### 25.1.6(ii)
The order does not provide security for the claim: *Ithmar Capital* at [49]. There must be *"solid evidence"* of the risk of unjustified disposal of assets, and it is a *"cardinal principle"* that the Court should not interfere with the ordinary course of business as carried on by the party against whom it is made: *ibid*. Further guidance on the need to show sufficient risk of dissipation was set out in *Bocimar International* at [14]-[15], by reference *inter alia* to *Congentra AG v Sixteen Thirteen Marine SA ("the Nicholas M")* [2008] EWHC 1615 (Comm). An *"unacceptably low standard of commercial morality"* may be a relevant factor, as will demonstrating that the respondents are the sorts of people who will *"stop at nothing"* to frustrate enforcement of a judgment. A *"real risk"* of dissipation must be demonstrated at least to the standard of a *"good arguable case"*: [23].

### 25.1.6(iii)
The fact that a Claimant may have a good arguable case of a proprietary interest in funds, which become subject to a freezing injunction, does not constitute a bar to the use of those funds for meeting, for example, personal expenses and legal costs: *GFH Capital Limited v David Lawrence Haigh* [2014] DIFC CFI 020 (25 March 2015) at [18]. The relevant principles were set out in *David Nugent v Sarah Nugent* [2015] Ch 121; [2014] 3 WLR 59 and applied in GFH Capital at [19]. The issue requires *"careful and anxious judgment"* of where the *"balance of injustice"* lies, including of the injustice that will be caused by such a bar, and that the burden is on the enjoined party to show that they do not have access to any other available assets. It will also be incumbent upon the court to ensure so far as practicable that the parties are on an equal footing in order to comply with the overriding objective: [42]. The *"extravagant range of proceedings"* brought by the defendant in *GFH Capital* counted against him: [37].

### 25.1.6(iv)
Whilst a cross-undertaking as to damages is *"usual"*, the need for security to fortify the cross-undertaking is *"most unusual"* where the applicant is owed substantial sums on a judgment debt: *Bocimar International* at [24], citing *Nomihold Securities Inc v Mobile Telesystems Finance SA* [2011] EWHC 337 (Comm).

### 25.1.7
An order under RDC, 25.1(6) may be accompanied by an order under RDC 25.1(7), requiring the respondent to provide information about the location of relevant property or assets or to provide information about relevant property or assets which are or may be the subject of an application for a freezing order.

### 25.1.10(i)
An order may be made under RDC 25.1(10) against a non-party for the production of documents or inspection of property.

### 25.1.10(ii)

Where the non-parties are innocent outside parties, the jurisdiction must be exercised with some care: *Trustee in Bankruptcy and Liquidator of Cash Plus Limited and Receiver of Cash Plus' Subsidiaries and Affiliates v Carlos Hill, Bertram Hill, Hill Group Limited and Bank Julius Baer (Middle East) Limited* [2009] DIFC CFI 024 (11 November 2007) at [13], citing *Bankers Trust v Shapira* [1991] 1 WLR 1274. On such an application, there must be a more demanding standard of proof than that of a good arguable case: [14], citing *The Niedersachsen* [1983] 2 Lloyd's Rep 600 at 614-5. The correct test is whether, on the balance of probabilities, the defendant maintains accounts or keeps assets in the outside party. A less exacting test would not adequately protect banks and other financial institutions from invasive and ill-founded demands: *ibid*.

**25.1.10(iii)**
An application for an order against a party mixed up in or which has facilitated the wrongdoing or default, albeit innocently, is subject to the principles under *Norwich Pharmacal Co. v Customs & Excise Commissioners* [1974] QC 133: *Cash Plus* at [5], [14] & [19].

**25.1.10(iv)**
For the costs of such application, see the commentary at paragraph 38.65.1 below.

**25.1.17**
In *Christopher James McDuff v KBH Kaanuun Limited* [2012] DIFC CFI 027 (24 February 2013) the claimant (an Australian national), having had his contract of employment with the defendant terminated, applied to have his residence visa, sponsored by the DIFC pursuant to his employment with the defendant, immediately cancelled so that he could apply nor a new non-DIFC residence visa sponsored by his new employer. The Court granted that application: [26]. The defendant made an application seeking an order that, in the event the claimant's application was granted, the claimant be required to deposit his passport with the new residence visa with the DIFC Courts and be prevented from leaving the UAE without the permission of the Court pursuant to RDC 25.1(17). The Court dismissed the defendant's application. The Court took the view that being a foreigner does not in itself pose a risk of absconding, unless supported by reasonable grounds to demonstrate that intention: [33]. Not having money or assets currently is also not a risk either: [34]. The defendant had failed to show that the balance of convenience in maintaining the status quo lay with the defendant and no claim had been lodged by the defendant that would: [35]. The claimant's profession suggested that he was a Court Officer, which would minimise his risk of absconding if not discounting it completed: [36]. There was accordingly no real risk of the claimant absconding: [37].

**25.2**
In Rules 25.1(3) and 25.1(7), relevant property means property (including land) which is the subject of a claim or as to which any question may arise on a claim.

**25.3**
The Court may grant an interim remedy whether or not there has been a claim for a final remedy of that kind.

**Jurisdiction**



**25.4**

A Judge may make an order for any interim remedy.

**25.5**

The powers of the Registrar to make orders for interim remedies are set out in **Rules 3.4** to **3.14.**

**I INTERIM REMEDIES — GENERAL**
**Time When An Order For An Interim Remedy May Be Made**
**25.6**

An order for an interim remedy may be made at any time, including:

(1) before proceedings are started; and

(2) after judgment has been given.

**25.7**

However:

(1) **Rule 25.6** is subject to any Rule, Practice Direction or other enactment which provides otherwise;

(2) the Court may grant an interim remedy before a claim has been made only if:

(a) the matter is urgent; or

(b) it is otherwise desirable to do so in the interests of justice; and

(c) unless the Court otherwise orders, a defendant may not apply for any of the orders listed in **Rule 25.1** before he has filed either an acknowledgment of service or a defence.

(3) Where the Court grants an interim remedy before a claim has been commenced, it may give directions requiring a claim to be commenced.

(4) In particular, the Court need not direct that a claim be commenced where the application is made for production of documents or inspection of property before a claim is made.

**How To Apply For An Interim Remedy**
**25.8**

The Court may grant an interim remedy on an application made without notice if it appears to the Court that there are good reasons for not giving notice.

**25.9**

An application for an interim remedy must be supported by evidence, unless the Court orders otherwise.

**25.10**






If the applicant makes an application without giving notice, the evidence in support of the application must state the reasons why notice has not been given.

**Urgent Applications And Applications Without Notice**
**25.11**
Urgent applications and applications without notice fall into two categories:

(1) applications where a claim form has already been issued; and

(2) applications where a claim form has not yet been issued;

and, in both cases, where notice of the application has not been given to the respondent.

**25.12**
Where a party makes an urgent application:

(1) The party should telephone the Court between 10:00am and 5:00pm Sunday to Thursday on + 917 4427 3333 and ask to be put in touch with the Registrar or Deputy Registrar. The party should state that the call relates to an urgent application and provide an estimate of when they will be ready to present the application;



(2) Where the application is so urgent that it must be made outside these hours, the party should telephone the Court's emergency telephone number on + 971 4427 3331;

(3) The applications will normally be dealt with at a court hearing but cases of extreme urgency may be dealt with by telephone;

(4) At the hearing of the application, the Court may consist of a Judge and the Registrar sitting together;

(5) When acting under the procedure set out in this Part, the Court shall set a Return Date for the hearing of the application before a Judge sitting alone, which shall not be later than three days from the date upon which the interim order is issued.

**25.13**
Applications dealt with at a Court hearing after issue of a claim form:

(1) the application notice, evidence in support and a draft order should be filed with the Court two hours before the hearing wherever possible;

(2) if an application is made before the application notice has been issued, a draft order should be provided at the hearing, and the application notice and evidence in support must be filed with the Court on the same or next business day or as ordered by the Court; and

(3) except in cases where secrecy is essential, the applicant should take steps to notify the respondent informally of the application.

**25.14**







Applications made before the issue of a claim form:

(1) in addition to the provisions set out in **Rule 25.13**, unless the Court orders otherwise, either the applicant must undertake to the Court to issue a claim form immediately or the Court will give directions for the commencement of the claim;

(2) where possible the claim form should be served with the order for the injunction; and

(3) an order made before the issue of a claim form should state in the title after the names of the applicant and respondent 'the Claimant and Defendant in an Intended Action'.

**25.15**
Applications made by telephone:

(1) [deleted]

(2) [deleted]

(3) the Judge will require a draft order to be emailed to him;

(4) the application notice and evidence in support must be filed with the Court on the same or next working day or as ordered, together with two copies of the order for sealing;

(5) injunctions will be heard by telephone only where the applicant is acting by legal representative.

**Making An Application — General**
**25.16**
The application notice must state:

(1) the order sought; and

(2) the date, time and place of the hearing.

**25.17**
The application notice and evidence in support must be served as soon as practicable after issue and in any event not less than 3 days before the Court is due to hear the application.

**25.18**
A draft of the order sought should be filed with the application notice.

**25.19**
Unless the urgency means that this is not possible, the applicant should provide the Court at the earliest opportunity with a skeleton argument.

**Evidence**







**25.20**

Applications for search orders and freezing orders must be supported by affidavit evidence.

**25.21**

Applications for other interim injunctions must be supported by evidence set out in either:

(1) a witness statement; or

(2) a statement of case provided that it is verified by a statement of truth; or

(3) the application notice provided that it is verified by a statement of truth;

unless the Court, a Law, a Rule or a Practice Direction requires evidence by affidavit.

**25.22**

The evidence must set out the facts on which the applicant relies for the claim being made against the respondent, including all material facts of which the Court should be made aware.

**25.23**

Where an application is made without notice to the respondent, the evidence must also set out why notice was not given.



**Application For An Interim Remedy Where There Is No Related Claim**
**25.24**

Where a party wishes to apply for an interim remedy but:

(1) the remedy is sought in relation to proceedings which are taking place, or will take place, outside the DIFC; or

(2) the application is made for an order for production of documents or inspection of property before a claim is made;

any application must be made in accordance with Part 8.

**Orders For Injunctions**
**25.25**

Any order for an injunction, unless the Court orders otherwise, must contain:

(1) (save where the applicant is the DFSA or the Registrar of Companies) an undertaking by the applicant to the Court to pay any damages which the respondent sustains which the Court considers the applicant should pay. Where the applicant for an interim remedy is not able to show sufficient assets within the jurisdiction of the Court to provide substance to the undertakings given he may be required to reinforce his undertakings by providing security:

(a) Security will be ordered in such form as the Judge decides is appropriate but may, for example, take the form of a payment into Court, a bond issued by an insurance company or a first demand guarantee or standby credit issued



by a first-class bank;

   (b) In an appropriate case the Judge may order a payment to be made to the applicant's legal representatives to be held by them as officers of the Court pending further order. The undertaking of a parent company may be acceptable;

(2) if made without notice to any other party, an undertaking by the applicant to the Court to serve on the respondent the application notice, evidence in support and any order made as soon as practicable;

(3) if made without notice to any other party, a return date for a further hearing at which the other party can be present;

(4) if made before filing the application notice, an undertaking to file and pay the appropriate fee on the same or next working day; and

(5) if made before issue of a claim form:

   (a) an undertaking to issue a claim form and pay the appropriate fee on the same or next working day; or

   (b) directions for the commencement of the claim.

**25.26**
When the Court makes an order for an injunction, it should consider whether to require an undertaking by the applicant to pay any damages sustained by a person other than the respondent, including another party to the proceedings or any other person who may suffer loss as a consequence of the order.

**25.27**
Any order for an injunction must set out clearly what the respondent must do or not do.

**25.28**
An order for an interim remedy should normally include a proviso which permits acts which would otherwise be a breach of the order to be done with the written consent of the claimant's legal representatives. This enables the parties to agree in effect to variations (or the discharge) of the order without the necessity of coming back to the Court.

**25.29**
If the parties agree, the return date may be postponed to a later date on which all parties will be ready to deal with any substantive issues. In this event, an agreed form of order continuing the injunction to the postponed return date should be submitted for consideration by a Judge and if the order is made in the terms submitted there will be no need for the parties to attend on the day originally fixed as the return date. In such a case the defendant and any other interested party will continue to have liberty to apply to vary or set aside the order.

**25.30**





A provision for the defendant to give notice of any application to discharge or vary the order is usually included as a matter of convenience but will not fetter the right of the defendant to apply without notice or on short notice if need be.

**25.31**
An order for an injunction made in the presence of all parties to be bound by it or made at a hearing of which they have had notice, may state that it is effective until trial or further order.

**25.32**
A phrase indicating that an interim remedy is to remain in force until judgment or further order means that it remains in force until the delivery of a final judgment. If an interim remedy continuing after judgment is required, say until judgment has been satisfied, an application to that effect must be made.

**Freezing Orders**
**25.33**
An example of a freezing order is set out in Schedule A to this Part.

**25.34**
The example may be modified as appropriate in any particular case. In particular, the Court may, if it considers it appropriate, require the applicant's legal representatives, as well as the applicant, to give undertakings.



**25.35**
As regards freezing orders in respect of assets outside the jurisdiction, the standard wording in relation to effects on third parties should normally incorporate wording to enable overseas branches of banks or similar institutions which have offices within the jurisdiction to comply with what they reasonably believe to be their obligations under the laws of the country where the assets are located or under the proper law of the relevant banking or other contract relating to such assets.

**25.36**
Any bank or third party served with, notified of or affected by a freezing order may apply to the Court without notice to any party for directions, or notify the Court in writing without notice to any party, in the event that the order affects or may affect the position of the bank or third party under legislation, regulations or procedures aimed to prevent money laundering.

**Search Orders**
**25.37**
The following provisions apply to search orders in addition to those listed above.

**The Supervising Legal Representative**
**25.38**
The Supervising Legal Representative must be experienced in the operation of search orders.

**Evidence**





**25.39**

The affidavit must state the name, firm and its address, and experience of the Supervising Legal Representative, also the address of the premises and whether it is a private or business address.

**25.40**

The affidavit must set out very fully the reason the order is sought, including the probability that relevant material would disappear if the order were not made.

**Service**
**25.41**

The order must be served personally by the Supervising Legal Representative, unless the Court otherwise orders, and must be accompanied by the evidence in support and any documents capable of being copied.

**25.42**

Confidential exhibits need not be served but they must be made available for inspection by the respondent in the presence of the applicant's legal representatives while the order is carried out and afterwards be retained by the respondent's legal representatives on their undertaking not to permit the respondent:

  (1) to see them or copies of them except in their presence; and

  (2) to make or take away any note or record of them.



**25.43**

The Supervising Legal Representative may be accompanied only by the persons mentioned in the order.

**25.44**

The Supervising Legal Representative must explain the terms and effect of the order to the respondent in everyday language (with the assistance of an interpreter if necessary) and advise him:

  (1) of his right to take legal advice and to apply to vary or discharge the order; and

  (2) that he may be entitled to avail himself of:

    (a) legal professional privilege; and

    (b) the privilege against self–incrimination.

**25.45**

Where the Supervising Legal Representative is a man and the respondent is likely to be an unaccompanied woman, at least one other person named in the order must be a woman and must accompany the Supervising Legal Representative.

**25.46**

The order may only be served between 9.30 a.m. and 5.30 p.m. Sunday to Thursday unless the Court otherwise orders.

**Search And Custody Of Materials**





**25.47**

No material shall be removed unless clearly covered by the terms of the order.

**25.48**

The premises must not be searched and no items shall be removed from them except in the presence of the respondent or a person who appears to be a responsible employee of the respondent.

**25.49**

Where copies of documents are sought, the documents should be retained for no more than 2 days before return to the owner.

**25.50**

Where material in dispute is removed pending trial, the applicant's legal representatives should place it in the custody of the respondent's legal representatives on their undertaking to retain it in safekeeping and to produce it to the Court when required.

**25.51**

In appropriate cases the applicant should insure the material retained in the respondent's legal representatives' custody.

**25.52**

The Supervising Legal Representative must make a list of all material removed from the premises and supply a copy of the list to the respondent.



**25.53**

No material shall be removed from the premises until the respondent has had reasonable time to check the list.

**25.54**

If any of the listed items exists only in computer readable form, the respondent must immediately give the applicant's legal representatives effective access to the computers, with all necessary passwords, to enable them to be searched, and cause the listed items to be printed out.

**25.55**

The applicant must take all reasonable steps to ensure that no damage is done to any computer or data.

**25.56**

The applicant and his representatives may not themselves search the respondent's computers unless they have sufficient expertise to do so without damaging the respondent's system.

**25.57**

The Supervising Legal Representative shall provide a report on the carrying out of the order to the applicant's legal representatives.

**25.58**

As soon as the report is received the applicant's legal representatives shall:

> (1) serve a copy of it on the respondent; and







(2) file a copy of it with the Court.

**25.59**
Where the Supervising Legal Representative is satisfied that full compliance with Rules 25.53 and 25.54 above is impracticable, he may permit the search to proceed and items to be removed without compliance with the impracticable requirements.

**General**
**25.60**
The Supervising Legal Representative must not be an employee or member of the applicant's firm of legal representatives.

**25.61**
If the Court orders that the order need not be served by the Supervising Legal Representative, the reason for so ordering must be set out in the order.

**25.62**
The search order must not be carried out at the same time as a police search warrant.

**25.63**
An example of a Search Order is set out in Schedule B to this Part. The example may be modified as appropriate in any particular case.

**Applications To Discharge Or Vary Freezing Orders And Search Orders**
**25.64**
Applications to discharge or vary freezing orders and search orders are treated as matters of urgency for listing purposes. Those representing applicants for discharge or variation should ascertain before a date is fixed for the hearing whether, having regard to the evidence which they wish to adduce, the claimant would wish to adduce further evidence in opposition. If so, all reasonable steps must be taken by all parties to agree upon the earliest practicable date at which they can be ready for the hearing, so as to avoid the last minute need to vacate a fixed date. In cases of difficulty the matter should be referred to a Judge who may be able to suggest temporary solutions pending the hearing.

**25.65**
If a freezing order or search order is discharged on an application to discharge or vary, or on the return date, the Judge will consider whether it is appropriate that he should assess damages at once and direct immediate payment by the applicant.

**Interim Injunction To Cease If Claim Is Stayed**
**25.66**
If:

(1) the Court has granted an interim injunction other than a freezing order; and

(2) the claim is stayed other than by agreement between the parties;

the interim injunction shall be set aside unless the Court orders that it should continue



support on:

(a) the person against whom the order is sought; and

(b) in relation to an application under Rule 25.1(10), every party to the proceedings other than the applicant.

**Delivery–Up Orders**
**25.72**
Where orders, other than search orders, have been made for delivery up or preservation of evidence or property where it is likely that such an order will be executed at the premises of the respondent or a third party, the Court shall consider whether to include in the order for the benefit or protection of the parties similar provisions to those specified above in relation to injunctions and search orders.

**II INTERIM PAYMENTS**
**Interim Payments – General Procedure**
**25.73**
The claimant may not apply for an order for an interim payment before the end of the period for filing an acknowledgment of service applicable to the defendant against whom the application is made.

**25.74**
The claimant may make more than one application for an order for an interim payment.



**25.75**
An application for an interim payment must be supported by evidence.

**25.76**
The timetable for an application for an interim payment for is as follows:

(1) evidence in support must be filed and served with the application;

(2) evidence in answer must be filed and served within 14 days thereafter;

(3) evidence in reply (if any) must be filed and served within 7 days thereafter.

**25.77**
Rule 25.76 does not require written evidence:

(1) to be filed if it has already been filed; or

(2) to be served on a party on whom it has already been served.

**25.78**
The Court may order an interim payment in one sum or in instalments.

**Evidence**







**25.79**

An application for an interim payment of damages must be supported by evidence dealing with the following:

  (1) the sum of money sought by way of an interim payment;

  (2) the items or matters in respect of which the interim payment is sought;

  (3) the sum of money for which final judgment is likely to be given;

  (4) the reasons for believing that the conditions set out in **Rule 25.81** are satisfied;

  (5) any other relevant matters; and

  (6) in claims for personal injuries, details of special damages and past and future loss.

**25.80**

Any documents in support of the application should be exhibited, including, in personal injuries claims, the medical report(s).

**Interim Payments — Conditions To Be Satisfied And Matters To Be Taken Into Account**
**25.81**



The Court may only make an order for an interim payment where any of the following conditions are satisfied:

  (1) the defendant against whom the order is sought has admitted liability to pay damages or some other sum of money to the claimant;

  (2) the claimant has obtained judgment against that defendant for damages to be assessed or for a sum of money (other than costs) to be assessed;

  (3) it is satisfied that, if the claim went to trial, the claimant would obtain judgment for a substantial amount of money (other than costs) against the defendant from whom he is seeking an order for an interim payment whether or not that defendant is the only defendant or one of a number of defendants to the claim; or

  (4) in a claim in which there are two or more defendants and the order is sought against any one or more of those defendants, the following conditions are satisfied:

    (a) the Court is satisfied that, if the claim went to trial, the claimant would obtain judgment for a substantial amount of money (other than costs) against at least one of the defendants (but the Court cannot determine which); and

    (b) all the defendants are either:

      (i) a defendant that is insured in respect of the claim;



(ii) a defendant that is a Centre Body.

**25.82**
The Court must not order an interim payment of more than a reasonable proportion of the likely amount of the final judgment.

**25.83**
The Court must take into account:

(1) contributory negligence; and

(2) any relevant set-off or counterclaim.

**Interim Payment Where Account To Be Taken**
**25.84**
Where a party seeks an interim payment under **Rule 25.81(2)** where the Court has ordered an account to be taken, if the evidence on the application for interim payment shows that the account is bound to result in a payment to the applicant, the Court will, before making an order for interim payment, order that the liable party pay to the applicant 'the amount shown by the account to be due'.

**Instalments**
**25.85**
Where an interim payment is to be paid in instalments the order should set out:

(1) the total amount of the payment;

(2) the amount of each instalment;

(3) the number of instalments and the date on which each is to be paid; and

(4) to whom the payment should be made.

**Powers Of Court Where It Has Made An Order For Interim Payment**
**25.86**
Where a defendant has been ordered to make an interim payment, or has in fact made an interim payment (whether voluntarily or under an order), the Court may make an order to adjust the interim payment.

**25.87**
The Court may in particular:

(1) order all or part of the interim payment to be repaid;

(2) vary or discharge the order for the interim payment;

(3) order a defendant to reimburse, either wholly or partly, another defendant who has made an interim payment.

**25.88**



The Court may make an order under **Rule 25.87(3)** only if:

(1) the defendant to be reimbursed made the interim payment in relation to a claim in respect of which he has made a claim against the other defendant for a contribution, indemnity or other remedy; and

(2) where the claim or part to which the interim payment relates has not been discontinued or disposed of, the circumstances are such that the Court could make an order for interim payment under **Rule 25.81**.

**25.89**
The Court may make an order under **Rule 25.86** without an application by any party if it makes the order when it disposes of the claim or any part of it.

**25.90**
Where:

(1) a defendant has made an interim payment; and

(2) the amount of the payment is more than his total liability under the final judgment or order;

the Court may award him interest on the overpaid amount from the date when he made the interim payment.



**Adjustment Of Final Judgment Figure**
**25.91**
In Rules 25.92 to 25.95 'judgment' means:

(1) any order to pay a sum of money;

(2) a final award of damages;

(3) an assessment of damages.

**25.92**
In a final judgment where an interim payment has previously been made which is less than the total amount awarded by the Judge, the order should set out in a preamble:

(1) the total amount awarded by the Judge; and

(2) the amounts and dates of the interim payment(s).

**25.93**
The total amount awarded by the Judge should then be reduced by the total amount of any interim payments, and an order made for entry of judgment and payment of the balance.

**25.94**






In a final judgment where an interim payment has previously been made which is more than the total amount awarded by the Judge, the order should set out in a preamble:

(1) the total amount awarded by the Judge; and

(2) the amounts and dates of the interim payment(s).

**25.95**
An order should then be made for repayment, reimbursement, variation or discharge under **Rule 25.87** and for interest on an overpayment under **Rule 25.90**.

**Restriction On Disclosure Of An Interim Payment**
**25.96**
The fact that a defendant has made an interim payment, whether voluntarily or by Court order, shall not be disclosed to the trial Judge until all questions of liability and the amount of money to be awarded have been decided unless the defendant agrees.

**III SECURITY FOR COSTS**
**25.97**
A defendant to any claim may apply under this Section of this Part for security for his costs of the proceedings.

**25.98**
An order for security for costs may not be made against the DFSA or the Registrar of Companies in proceedings initiated by the DFSA or the Registrar of Companies under DIFC Law.

**25.99**
An application for security for costs must be supported by written evidence, setting out:

(1) the grounds on which security is sought;

(2) any factors relevant to the exercise of the Court's discretion, such as the location of the claimant's assets and any practical difficulties which may arise in enforcing any order for costs;

(3) a statement of costs already incurred, including the information required by RDC 38.35 and signed by the party or his legal representative; and

(4) An estimate of anticipated future costs calculated by reference to the elements set out at RDC 38.35 and signed by the party or his legal representative.

**25.99.1**
See Practice Direction 3 of 2010 at paragraph 2.

**25.100**
Where the Court makes an order for security for costs, it will:

(1) determine the amount of security; and

(2) direct:

(a) the manner in which; and

(b) the time within which;

the security must be given.

**Conditions To Be Satisfied**
**25.101**
The Court may make an order for security for costs under **Rule 25.100** if it is satisfied, having regard to all the circumstances of the case that it is just to make such an order; and

(1) one or more of the conditions in **Rule 25.102** applies; or

(2) an enactment permits the Court to require security for costs.

**Applications for security for costs**
**25.101.1**
It was emphasised by the Court of Appeal in *Frontline Development Partners Limited v Asif Hakim Adil* [2015] DIFC CA 005 (15 September 2015) at [5] that the satisfaction of a condition under RDC 25.102 (or the existence of some other enactment) was a necessary but not sufficient basis for the making of an order under RDC 25.100. The Court must also be satisfied that it is just and convenient to do so in all the circumstances of the case. The fact that an application for security did not come until after the trial, such that the only remaining step in proceedings was for the delivery of judgment, was a factor making it unjust to order security: [12]. Security could be sought separately on any subsequent appeal: *ibid*. Also relevant was the defendant's delay in appealing the original dismissal of its security for costs application: [13].



**25.101.2**
The discretion afforded to the Court is a wide one, but one that has to be exercised in accordance with established principles: *Mr Rafed Abdel Mohsen Bader Al Khorafi & Ors v Bank Sarasin-Alpen (ME) Limited & Ors* [2010] DIFC CA 001 (23 January 2011) at [46]. The Court of Appeal in that case continued to set out the underlying purpose of security for costs orders: [47], citing *De Bry v Fitzgerald* [1990] 1 WLR 352. In summary, the purpose is to protect a defendant from the injustice that would be caused where, having successfully defeated the claim against him and having recovered an order for costs against the claimant, he was left in the position of being unable to enforce that order: [48]. Difficulty of enforcement is therefore a material consideration: [49] (and see also the commentary at 25.109.1 below).



**25.101.3**
The respondent to an application for security for costs failed in *Vegie Bar LLC v Emirates National Bank of Dubai Properties* [2016] CA 013 (25 January 2018) at [8] *inter alia* on the basis that there was no evidence that the claim would be stifled by the imposition of an order for security, and that it was accepted that the respondent would be able to find such funds, through its alter ego / shareholder, by borrowing if necessary.

**25.101.4**



Applicants for security for costs should always provide a detailed schedule showing the breakdown of their total figure for security: *Mr Rafed Abdel Mohsen Bader Al Khorafi & Ors v Bank Sarasin-Alpen (ME) Limited & Ors* [2010] DIFC CA 001 (23 January 2011) at [54].

**25.102**
The conditions are:

(1) the claimant is resident out of the UAE;

(2) the claimant is a company or other body (whether incorporated inside or outside the DIFC) and there is reason to believe that it will be unable to pay the defendant's costs if ordered to do so;

(3) the claimant has changed his address since the claim was commenced with a view to evading the consequences of the litigation;

(4) the claimant failed to give his address in the claim form, or gave an incorrect address in that form;

(5) the claimant is acting as a nominal claimant, other than as a representative claimant under Part 20, and there is reason to believe that he will be unable to pay the defendant's costs if ordered to do so;

(6) the claimant has taken steps in relation to his assets that would make it difficult to enforce an order for costs against him.

**Conditions for security for costs**
**25.102.1**
Condition (1) is that the claimant is resident out of the UAE (and not, in terms, that he is not resident in the UAE). The fact that a claimant may have a visa permitting residence in the UAE is of little materiality in assessing whether condition (1) is met. A claimant may hold a residency visa permitting residence in the UAE, but choose to reside elsewhere: *Frontline Development Partners Limited v Asif Hakim Adil* [2015] DIFC CA 005 (15 September 2015) at [7].

**25.102.2**
The Court of Appeal declined in *Mr Rafed Abdel Mohsen Bader Al Khorafi & Ors v Bank Sarasin-Alpen (ME) Limited & Ors* [2010] DIFC CA 001 (23 January 2011) the important issue of whether the alleged impecuniosity of the claimants would, of itself, justify an order for security for costs. It noted that the reasoning in the English cases against such an approach (*Nasser v United Bank of Kuwait* [2002] 1 WLR 1868) relied upon the English Human Rights Act 1998, which had no equivalent in DIFC legislation: [53].

**25.102.6**
Condition (6) is to be assessed objectively. The claimant's intention in taking the step is irrelevant if the effect of the step would in fact be to make it difficult to enforce an order for costs against him: *Frontline Development* at [6].

**Security For Costs Other Than From The Claimant**





**25.103**

The defendant may seek an order against someone other than the claimant, and the Court may make an order for security for costs against that person if:

    (1) it is satisfied, having regard to all the circumstances of the case, that it is just to make such an order; and

    (2) one or more of the conditions in **Rule 25.104** applies.

**25.104**

The conditions are that the person:

    (1) has assigned the right to the claim to the claimant with a view to avoiding the possibility of a costs order being made against him; or

    (2) has contributed or agreed to contribute to the claimant's costs in return for a share of any money or property which the claimant may recover in the proceedings; and

is a person against whom a costs order may be made.

**Security For Costs Of An Appeal**
**25.105**

The Court may order security for costs of an appeal against:

    (1) an appellant;

    (2) a respondent who also appeals;

on the same grounds as it may order security for costs against a claimant under this Part.

**25.106**

The Court may also make an order under **Rule 25.105** where the appellant, or the respondent who also appeals, is a limited company and there is reason to believe it will be unable to pay the costs of the other parties to the appeal should its appeal be unsuccessful.

**First Applications**
**25.107**

First applications for security for costs should not be made later than at the Case Management Conference and in any event any application should not be left until close to the trial date. Delay to the prejudice of the other party or the administration of justice will probably cause the application to fail, as will any use of the application to harass the other party. Where it is intended to make an application for security at the Case Management Conference the procedure, and timetable for evidence, for an ordinary application must be followed.

**Successive Applications**






**25.108**
Successive applications for security can be granted where the circumstances warrant. If a claimant wishes to seek to preclude any further application, it is incumbent on him to make that clear.

**Evidence**
**25.109**
An affidavit or witness statement in support of an application for security for costs should deal not only with the residence of the claimant (or other respondent to the application) and the location of his assets but also with the practical difficulties (if any) of enforcing an order for costs against him.

**Evidence**
**25.109.1**
The requirements for the evidence in support of an application for security for costs set out in this rule were said in *Mr Rafed Abdel Mohsen Bader Al Khorafi & Ors v Bank Sarasin-Alpen (ME) Limited & Ors* [2010] DIFC CA 001 (23 January 2011) at [49] to reflect the underlying purpose of such an order; i.e. to prevent the injustice that would be caused to a successful defendant who was left unable to enforce a costs award in his favour. The Court there emphasised that the burden of establishing facts sufficient to justify an order for security lay with the applicant. If the burden is not discharged, no order can be made.

**Investigation Of The Merits Of The Case**
**25.110**
Investigation of the merits of the case on an application for security is strongly discouraged. Only in those cases where it can be shown without detailed investigation of evidence or law that the claim is certain or almost certain to succeed or fail will the merits be taken into consideration.

**Investigation of the merits of the case**
**25.110.1**
The provisions of this rule were emphasised in *Vegie Bar LLC v Emirates National Bank of Dubai Properties LLC* [2016] CA 013 (18 December 2017): [8]-[9].

**Undertaking By The Applicant**
**25.111**
In appropriate cases an order for security for costs may only be made on terms that the applicant gives an undertaking to comply with any order that the Court may make if the Court later finds that the order for security for costs has caused loss to the claimant and that the claimant should be compensated for such loss. Such undertakings are intended to compensate claimants in cases where no order for costs is ultimately made in favour of the applicant.

**Stay Of Proceedings**
**25.112**
It is not usually convenient or appropriate to order an automatic stay of the proceedings pending the provision of the security. It leads to delay and may disrupt the preparation of the case for trial, or other hearing. Experience has shown that it is usually better to give the claimant (or other relevant party) a reasonable time within which to provide







the security and the other party permission to apply to the Court in the event of default. This enables the Court to allow the claimant to choose if he wishes to provide the security and, if he does not, to dismiss the case.

**Amount Of Security**
**25.113**
Where the dispute on an application for security for costs relates to the correct evaluation of the amount of costs likely to be allowed to a successful defendant on an assessment of costs, parties should consider whether it would be advantageous for the Judge hearing the application to sit with a the Registrar as an informal assessor. The Judge himself may take such an initiative.

INTERIM REMEDIES AND SECURITY FOR COSTS
SCHEDULE A

FREEZING ORDER

DUBAI INTERNATIONAL FINANCIAL CENTRE COURT
COURT OF FIRST INSTANCE
[ ] DIVISION/CIRCUIT

Before The Honourable Mr. Justice



B E T W E E N: Claim No.

Dated

Claimant:
A person who makes a claim.

Defendant:
A person against whom a claim is made.

Seal:
A seal is a mark which the Courts put on a document to indicate that the document has been issued by the Courts.

Name, address and reference of Respondent

**PENAL NOTICE**
IF YOU [ ] DISOBEY THIS ORDER YOU MAY BE HELD TO BE IN CONTEMPT OF COURT AND MAY BE IMPRISONED, FINED OR HAVE YOUR ASSETS SEIZED.

ANY OTHER PERSON WHO KNOWS OF THIS ORDER AND DOES ANYTHIN WHICH HELPS OR PERMITS THE RESPONDENT TO BREACH THE TERMS OF THIS ORDER MAY ALSO BE HELD TO BE IN CONTEMPT OF COURT AND MAY BE IMPRISONED, FINED OR HAVE THEIR ASSETS SEIZED.

**THIS ORDER**





**[For injunction limited to assets in the DIFC]**
8 If the total value free of charges or other securities ('unencumbered value') of the Respondent's assets in the DIFC exceeds US$, the Respondent may remove any of those assets from the DIFC or may dispose of or deal with them so long as the total unencumbered value of his assets still in the DIFC remains above US$.

**[For worldwide injunction]**
8.

    (1) If the total value free of charges or other securities ('unencumbered value') of the Respondent's assets in the DIFC exceeds US$, the Respondent may remove any of those assets from the DIFC or may dispose of or deal with them so long as the total unencumbered value of the Respondent's assets still in the DIFC remains above US$.

    (2) If the total unencumbered value of the Respondent's assets in the DIFC does not exceed US$, the Respondent must not remove any of those assets from the DIFC and must not dispose of or deal with any of them. If the Respondent has other assets outside the DIFC, he may dispose of or deal with those assets outside the DIFC so long as the total unencumbered value of all his assets whether in or outside the remains above US$.

**PROVISION OF INFORMATION**
9.

    (1) Unless paragraph

    (2) applies, the Respondent must [immediately/within hours of service of this order] and to the best of his ability inform the Applicant's legal representatives of all his assets [in the DIFC/worldwide] [exceeding US$ in value] whether in his own name or not and whether solely or jointly owned, giving the value, location and details of all such assets.

    (2) If the provision of any of this information is likely to incriminate the Respondent, he may be entitled to refuse to provide it, but is recommended to take legal advice before refusing to provide the information. Wrongful refusal to provide the information is contempt of court and may render the Respondent liable to be imprisoned, fined or have his assets seized.

10. Within [ ] working days after being served with this order, the Respondent must swear and serve on the Applicant's legal representatives an affidavit setting out the above information.

**EXCEPTIONS TO THIS ORDER**
11.

    (1) This order does not prohibit the Respondent from spending US$ a week towards his ordinary living expenses and also US$ [or a reasonable sum] on legal advice and representation. [But before spending any money the Respondent must tell



the Applicant's legal representatives where the money is to come from.] [

(2) This order does not prohibit the Respondent from dealing with or disposing of any of his assets in the ordinary and proper course of business.]

(3) The Respondent may agree with the Applicant's legal representatives that the above spending limits should be increased or that this order should be varied in any other respect, but any agreement must be in writing.

(4) The order will cease to have effect if the Respondent:

(a) provides security by paying the sum of US$& into Court, to be held to the order of the Court; or

(b) makes provision for security in that sum by another method agreed with the Applicant's legal representatives.

**COSTS**

12. The costs of this application are reserved to the Judge hearing the application on the return date.

**VARIATION OR DISCHARGE OF THIS ORDER**

13. Anyone served with or notified of this order may apply to the Court at any time to vary or discharge this order (or so much of it as affects that person), but they must first inform the Applicant's legal representatives. If any evidence is to be relied upon in support of the application, the substance of it must be communicated in writing to the Applicant's legal representatives in advance.

**INTERPRETATION OF THIS ORDER**

14. A Respondent who is an individual who is ordered not to do something must not do it himself or in any other way. He must not do it through others acting on his behalf or on his instructions or with his encouragement.

15. A Respondent which is not an individual which is ordered not to do something must not do it itself or by its directors, officers, partners, employees or agents or in any other way.

**PARTIES OTHER THAN THE APPLICANT AND RESPONDENT**

16. Effect of this order

It is a contempt of court for any person notified of this order knowingly to assist in or permit a breach of this order. Any person doing so may be imprisoned, fined or have their assets seized.

17. Set off by banks

This injunction does not prevent any bank from exercising any right of set off it may have in respect of any facility which it gave to the respondent before it was notified of this order.

18. Withdrawals by the Respondent




No bank need enquire as to the application or proposed application of any money withdrawn by the Respondent if the withdrawal appears to be permitted by this order.

[For worldwide injunction]

19. Persons outside the DIFC

(1) Except as provided in paragraph (2) below, the terms of this order do not affect or concern anyone outside the jurisdiction of this court.

(2) The terms of this order will affect the following persons in a country or state outside the jurisdiction of this court:

(a) the Respondent or his officer or agent appointed by power of attorney;

(b) any person who:

(i) is subject to the jurisdiction of this court;

(ii) has been given written notice of this order at his residence or place of business within the jurisdiction of this court; and

(iii) is able to prevent acts or omissions outside the jurisdiction of this court which constitute or assist in a breach of the terms of this order; and

(c) any other person, only to the extent that this order is declared enforceable by or is enforced by a court in that country or state.

**SCHEDULE A**
**AFFIDAVITS**
The Applicant relied on the following affidavits— 
[name] [number of affidavit] [date sworn] [filed on behalf of]

**SCHEDULE B**
**UNDERTAKINGS GIVEN TO THE COURT BY THE APPLICANT**
(1) If the Court later finds that this order has caused loss to the Respondent, and decides that the Respondent should be compensated for that loss, the Applicant will comply with any order the Court may make.

(2) The Applicant will:

(a) on or before [date] cause a written guarantee in the sum of US$ to be issued from a bank with a place of business within the DIFC, in respect of any order the Court may make pursuant to paragraph (1) above; and

(b) immediately upon issue of the guarantee, cause a copy of it to be served on the Respondent.]

(3) As soon as practicable the Applicant will issue and serve a claim form [in the



form of the draft produced to the Court] [claiming the appropriate relief].

(4) The Applicant will [swear and file an affidavit/cause an affidavit to be sworn and filed] substantially in the terms of the draft affidavit produced to the Court confirming the substance of what was said to the Court by the Applicant's legal representatives.

(5) The Applicant will serve upon the Respondent [together with this order/as soon as practicable]:

    (i) copies of the affidavits and exhibits containing the evidence relied upon by the Applicant, and any other documents provided to the Court on the making of the application;

    (ii) the claim form; and

    (iii) an application notice for continuation of the order.

(6) Anyone notified of this order will be given a copy of it by the Applicant's legal representatives.

(7) The Applicant will pay the reasonable costs of anyone other than the Respondent which have been incurred as a result of this order including the costs of finding out whether that person holds any of the Respondent's assets and if the Court later finds that this order has caused such person loss, and decides that such person should be compensated for that loss, the Applicant will comply with any order the Court may make.

(8) If this order ceases to have effect (for example, if the Respondent provides security or the Applicant does not provide a bank guarantee as provided for above) the Applicant will immediately take all reasonable steps to inform in writing anyone to whom he has given notice of this order, or who he has reasonable grounds for supposing may act upon this order, that it has ceased to have effect.

(9) The Applicant will not without the permission of the Court use any information obtained as a result of this order for the purpose of any civil or criminal proceedings, either in the DIFC or in any other jurisdiction, other than this claim.

(10) The Applicant will not without the permission of the Court seek to enforce this order in any country outside the DIFC [or seek an order of a similar nature including orders conferring a charge or other security against the Respondent or the Respondent's assets].

**NAME AND ADDRESS OF APPLICANT'S LEGAL REPRESENTATIVES**

The Applicant's legal representatives are:

[Name, address, reference, fax and telephone numbers both in and out of office hours and e–mail]

**INTERIM REMEDIES AND SECURITY FOR COSTS**





**SCHEDULE B**

**SEARCH ORDER**

**DUBAI INTERNATIONAL FINANCIAL CENTRE COURT**
**COURT OF FIRST INSTANCE[ ] DIVISION/CIRCUIT**

Before The Honourable Mr. Justice

B E T W E E N: Claim No.

Dated

Claimant: A person who makes a claim.

Defendant: A person against whom a claim is made.

Seal: A seal is a mark which the Courts put on a document to indicate that the document has been issued by the Courts.

Name, address and reference of Respondent

**PENAL NOTICE**
IF YOU [ ] DISOBEY THIS ORDER YOU MAY BE HELD TO BE IN CONTEMPT OF COURT AND MAY BE IMPRISONED, FINED OR HAVE YOUR ASSETS SEIZED.



ANY OTHER PERSON WHO KNOWS OF THIS ORDER AND DOES ANYTHIN WHICH HELPS OR PERMITS THE RESPONDENT TO BREACH THE TERMS OF THIS ORDER MAY ALSO BE HELD TO BE IN CONTEMPT OF COURT AND MAY BE IMPRISONED, FINED OR HAVE THEIR ASSETS SEIZED.



**THIS ORDER**
1. This is a Search Order made against [ ] ('the Respondent') on [ ] by Mr Justice [ ] on the application of [ ] ('the Applicant'). The Judge read the Affidavits listed in Schedule F and accepted the undertakings set out in Schedules C, D and E at the end of this order.

2. This order was made at a hearing without notice to the Respondent. The Respondent has a right to apply to the Court to vary or discharge the order — see paragraph 27 below.

3. There will be a further hearing in respect of this order on [ ] ('the return date').

4. If there is more than one Respondent:

   (a) unless otherwise stated, references in this order to 'the Respondent' mean both or all of them; and

   (b) this order is effective against any Respondent on whom it is served or who is given notice of it.

5. This order must be complied with by:



202



(a) the Respondent;

(b) any director, officer, partner or responsible employee of the Respondent; and

(c) if the Respondent is an individual, any other person having responsible control of the premises to be searched.

**THE SEARCH**

6. The Respondent must permit the following persons:

(a) [ ] ('the Supervising Legal Representative');

(b) [ ], a legal representative in the firm of [ ], the Applicant's legal representatives; and

(c) up to [ ] other persons being [their identity or capacity] accompanying them,

(together 'the search party'), to enter the premises mentioned in Schedule A to this order and any other premises of the Respondent set out under paragraph 18 below and any vehicles under the Respondent's control on or around the premises ('the premises') so that they can search for, inspect, photograph or photocopy, and deliver into the safekeeping of the Applicant's legal representatives all the documents and articles which are listed in Schedule B to this order ('the listed items').

7. Having permitted the search party to enter the premises, the Respondent must allow the search party to remain on the premises until the search is complete. In the event that it becomes necessary for any of those persons to leave the premises before the search is complete, the Respondent must allow them to re-enter the premises immediately upon their seeking re-entry on the same or the following day in order to complete the search.

**RESTRICTIONS ON SEARCH**

8. This order may not be carried out at the same time as a police search warrant.

9. Before the Respondent allows anybody onto the premises to carry out this order, he is entitled to have the Supervising Legal Representative explain to him what it means in everyday language.

10. The Respondent is entitled to seek legal advice and to ask the Court to vary or discharge this order. Whilst doing so, he may ask the Supervising Legal Representative to delay starting the search for up to 2 hours or such other longer period as the Supervising Legal Representative may permit. However, the Respondent must:

(a) comply with the terms of paragraph 27 below;

(b) not disturb or remove any listed items; and

(c) permit the Supervising Legal Representative to enter, but not start to search.

11. Before permitting entry to the premises by any person other than the Supervising

Legal Representative, the Respondent may, for a short time (not to exceed two hours, unless the Supervising Legal Representative agrees to a longer period) gather together any documents he believes may [be incriminating or] privileged; and hand them to the Supervising Legal Representative for him to assess whether they are [incriminating or] privileged as claimed. If the Supervising Legal Representative decides that of any of the documents may be incriminating or privileged or is in any doubt as to their status, he will exclude them from the search and retain them in his possession pending further Order of the Court.

12. If the Respondent wishes to take legal advice and gather documents as permitted, he must first inform the Supervising Legal Representative and keep him informed of the steps being taken.

13. No item may be removed from the premises until a list of the items to be removed has been prepared, and a copy of the list has been supplied to the Respondent, and he has been given a reasonable opportunity to check the list.

14. The premises must not be searched, and items must not be removed from them, except in the presence of the Respondent.

15. If the Supervising Legal Representative is satisfied that full compliance with paragraphs 13 or 14 is not practicable, he may permit the search to proceed and items to be removed without fully complying with them.

**DELIVERY UP OF ARTICLES/DOCUMENTS**

16. The Respondent must immediately hand over to the Applicant's legal representatives any of the listed items, which are in his possession or under his control, save for any computer or hard disk integral to any computer. Any items the subject of a dispute as to whether they are listed items must immediately be handed over to the Supervising Legal Representative for safe keeping pending resolution of the dispute or further order of the Court.

17. The Respondent must immediately give the search party effective access to the computers on the premises, with all necessary passwords, to enable the computers to be searched. If they contain any listed items the Respondent must cause the listed items to be displayed so that they can be read and copied. The Respondent must provide the Applicant's legal representatives with copies of all listed items contained in the computers. All reasonable steps shall be taken by the Applicant and the Applicant's legal representatives to ensure that no damage is done to any computer or data. The Applicant and his representatives may not themselves search the Respondent's computers unless they have sufficient expertise to do so without damaging the Respondent's system.

PROVISION OF INFORMATION
18. The Respondent must immediately inform the Applicant's legal representatives (in the presence of the Supervising Legal Representative) so far as he is aware:

(a) where all the listed items are;

(b) the name and address of everyone who has supplied him, or offered to supply

him, with listed items;

(c) the name and address of everyone to whom he has supplied, or offered to supply, listed items; and

(d) full details of the dates and quantities of every such supply and offer.

19. Within [ ] working days after being served with this order the Respondent must swear and serve an affidavit setting out the above information.

PROHIBITED ACTS

20. Except for the purpose of obtaining legal advice, the Respondent must not directly or indirectly inform anyone of these proceedings or of the contents of this order, or warn anyone that proceedings have been or may be brought against him by the Applicant until 4.30 p.m. on the return date or further order of the Court.

21. Until 4.30 p.m. on the return date the Respondent must not destroy, tamper with, cancel or part with possession, power, custody or control of the listed items otherwise than in accordance with the terms of this order.

22. [Insert any negative injunctions.]

23. [Insert any further order.]

COSTS

24. The costs of this application are reserved to the Judge hearing the application on the return date.

RESTRICTIONS ON SERVICE

25. This order may only be served between [ ] am/pm and [ ] am/pm [and on a weekday].

26. This order must be served by the Supervising Legal Representative, and paragraph 6 of the order must be carried out in his presence and under his supervision.

VARIATION AND DISCHARGE OF THIS ORDER

27. Anyone served with or notified of this order may apply to the Court at any time to vary or discharge this order (or so much of it as affects that person), but they must first inform the Applicant's legal representatives. If any evidence is to be relied upon in support of the application, the substance of it must be communicated in writing to the Applicant's legal representatives in advance.

INTERPRETATION OF THIS ORDER

28. Any requirement that something shall be done to or in the presence of the Respondent means:

(a) if there is more than one Respondent, to or in the presence of any one of them; and

(b) if a Respondent is not an individual, to or in the presence of a director, officer,



partner or responsible employee.

29. A Respondent who is an individual who is ordered not to do something must not do it himself or in any other way. He must not do it through others acting on his behalf or on his instructions or with his encouragement.

30. A Respondent which is not an individual which is ordered not to do something must not do it itself or by its directors, officers, partners, employees or agents or in any other way.

**COMMUNICATIONS WITH THE COURT**
All communications to the Court about this order should be sent to:

Ground Floor, Building 4, Gate District, UAE

Telephone: + 971 4 427 3333

Fax: +971 4 427 3330

Email: registry@difccourts.ae

The offices are open between 10am to 5pm, Sunday to Thursday (excluding Public Holidays)

**SCHEDULE A**
**THE PREMISES**

**SCHEDULE B**
**THE LISTED ITEMS**

**SCHEDULE C**
**UNDERTAKINGS GIVEN TO THE COURT BY THE APPLICANT**

(1) If the Court later finds that this order or carrying it out has caused loss to the Respondent, and decides that the Respondent should be compensated for that loss, the Applicant will comply with any order the Court may make. Further if the carrying out of this order has been in breach of the terms of this order or otherwise in a manner inconsistent with the Applicant's legal representatives' duties as officers of the Court, the Applicant will comply with any order for damages the Court may make.[

(2) As soon as practicable the Applicant will issue a claim form [in the form of the draft produced to the Court] [claiming the appropriate relief].]

(3) The Applicant will [swear and file an affidavit] [cause an affidavit to be sworn and filed] [substantially in the terms of the draft affidavit produced to the Court] [confirming the substance of what was said to the Court by the Applicant's legal representatives].

(4) The Applicant will not, without the permission of the Court, use any information or documents obtained as a result of carrying out this order nor inform anyone else







of these proceedings except for the purposes of these proceedings (including adding further Respondents) or commencing civil proceedings in relation to the same or related subject matter to these proceedings until after the return date.[

(5) The Applicant will maintain pending further order the sum of US$[ ] in an account controlled by the Applicant's legal representatives.]

(6) [The Applicant will insure the items removed from the premises.]

**SCHEDULE D**
**UNDERTAKINGS GIVEN BY THE APPLICANT'S LEGAL REPRESENTATIVES**

(1) The Applicant's legal representatives will provide to the Supervising Legal Representative for service on the Respondent:

(i) a service copy of this order;

(ii) the claim form (with defendant's response pack) or, if not issued, the draft produced to the Court;

(iii) an application for hearing on the return date;

(iv) copies of the affidavits [or draft affidavits] and exhibits capable of being copied containing the evidence relied upon by the applicant;

(v) a note of any allegation of fact made orally to the Court where such allegation is not contained in the affidavits or draft affidavits read by the Judge; and

(vi) a copy of the skeleton argument produced to the Court by the Applicant's legal representatives.

(2) The Applicants' legal representatives will answer at once to the best of their ability any question whether a particular item is a listed item.

(3) Subject as provided below the Applicant's legal representatives will retain in their own safe keeping all items obtained as a result of this order until the Court directs otherwise.

(4) The Applicant's legal representatives will return the originals of all documents obtained as a result of this order (except original documents which belong to the Applicant) as soon as possible and in any event within [two] working days of their removal.

**SCHEDULE E**
**UNDERTAKINGS GIVEN BY THE SUPERVISING LEGAL REPRESENTATIVE**

(1) The Supervising Legal Representative will use his best endeavours to serve this order upon the Respondent and at the same time to serve upon the Respondent the other documents required to be served and referred to in paragraph (1) of Schedule D.

(2) The Supervising Legal Representative will offer to explain to the person served with






the order its meaning and effect fairly and in everyday language, and to inform him of his right to take legal advice (including an explanation that the Respondent may be entitled to avail himself of the privilege against self-incrimination and legal professional privilege) and to apply to vary or discharge this order as mentioned in paragraph 27 above.

(3) The Supervising Legal Representative will retain in the safe keeping of his firm all items retained by him as a result of this order until the Court directs otherwise.

(4) Unless and until the Court otherwise orders, or unless otherwise necessary to comply with any duty to the Court pursuant to this order, the Supervising Legal Representative shall not reveal to any person any information relating to those items, and shall keep the existence of such items confidential.

(5) Within 48 hours of completion of the search the Supervising Legal Representative will make and provide to the Applicant's legal representatives, the Respondent or his legal representatives and to the Judge who made this order (for the purposes of the Court file) a written report on the carrying out of the order.

**SCHEDULE F**
**AFFIDAVITS**
The Applicant relied on the following affidavits:[name] [number of affidavit] [date sworn] [filed on behalf of]:

**NAME AND ADDRESS OF APPLICANT'S LEGAL REPRESENTATIVES**
The Applicant's legal representatives are:

[Name, address, reference, fax and telephone numbers both in and out of office hours and e-mail]

# PART 26
## CASE MANAGEMENT

### FIXING A CASE MANAGEMENT CONFERENCE
**26.1**
(1) The Court may fix a Case Management Conference at any time on its own initiative. If it does so, the Court will give at least 14 days' notice to the parties, unless there are compelling reasons for a shorter period of notice.

(2) A party may apply in writing for a Case Management Conference at any time. Such application must, state the reasons why a case management conference is necessary.

**26.2**
A Case Management Conference may not be postponed or adjourned without an order of the Court.

**Requirements For A Case Management Conference**







**26.3**

Not less than 7 days before a Case Management Conference, each party must file and serve:

(1) a completed Case Management Information Sheet. A standard form of Case Management Information Sheet is set out in Schedule A to this Part; and

(2) an application notice for any order which that party intends to seek at the Case Management Conference, other than directions referred to in the Case Management Information Sheet.

**26.4**

Where a party wishes to obtain an order not routinely made at a Case Management Conference and believes that his application will be opposed, he should issue and serve the application in time for it to be heard at the Case Management Conference.

**26.5**

If the time allowed for the Case Management Conference is likely to be insufficient for the application to be heard, the applicant should inform the Court at once so that a fresh date can be fixed.

**26.6**

A costs sanction may be imposed on a party who fails to comply with **Rules 26.4** and **26.5.**

**26.7**

Unless the Court orders otherwise, the claimant, in consultation with the other parties, must produce:

(1) a Case Memorandum (see **Rules 26.8** to **26.14**);

(2) a list of issues (see **Rule 26.9**); and

(3) a Case Management Bundle (see **Rules 26.16** to **26.18**);

and provide copies of the Case Management Bundle for the Court and the other parties at least 7 days before the first Case Management Conference or any earlier hearing at which the Court may give case management directions.

**Case Memorandum**

**26.8**

In order that the Judge conducting the Case Management Conference may be informed of the general nature of the case and the issues which are expected to arise, after service of the defence and any reply, the legal representatives of each party shall agree a Case Memorandum.

**26.9**

The Case Memorandum should contain:

(1) a short and uncontroversial description of what the case is about;

(2) a very short and uncontroversial summary of the material procedural history of



(3) an agreed list of the important issues in the case. The list should include both issues of fact and issue of law. A separate section of the document should list what is common ground between the parties (or any of them, specifying which).

**26.10**

Unless otherwise ordered, the legal representatives of the claimant are to have responsibility for the production and revision of the list of issues.

**26.11**

Unless otherwise ordered, the legal representatives of the claimant are to be responsible for producing and filing the Case Memorandum.

**26.12**

The Case Memorandum should not refer to any application for an interim payment, to any order for an interim payment, to any voluntary interim payment, or to any payment or offer under Part 32 or Part 33.

**26.13**

It should be clearly understood that the only purpose of the Case Memorandum is to help the Judge understand broadly what the case is about. The Case Memorandum does not play any part in the trial. It is unnecessary, therefore, for parties to be unduly concerned about the precise terms in which it is drafted, provided it contains a reasonably fair and balanced description of the case.

**26.14**

Accordingly, in all but the most exceptional cases it should be possible for the parties to draft an agreed Case Memorandum. However, if it proves impossible to do so, the claimant must draft the Case Memorandum and send a copy to the defendant. The defendant may provide its comments to the Court (with a copy to the claimant) separately.

**26.15**

The failure of the parties to agree a Case Memorandum is a matter which the Court may wish to take into account when dealing with the costs of the Case Management Conference.

**CASE MANAGEMENT BUNDLE**
**Preparation**
**26.16**

Before the Case Management Conference, a Case Management Bundle should be prepared by the legal representatives of the claimant.

**Contents**
**26.17**

The Case Management Bundle should only contain the documents listed below (where the documents have been created by the relevant time):

(1) the claim form;



(2) all statements of case (excluding schedules), except that, if a summary has been prepared, the bundle should contain the summary, not the full statement of case;

(3) the Case Memorandum;

(4) the list of issues;

(5) the Case Management Information Sheets and the pre-trial timetable if one has already been established;

(6) the principal orders in the case; and

(7) any agreement in writing made by the parties to produce documents without making a list or any agreement in writing that production shall take place in stages.

**26.18**
The Case Management Bundle must not include a copy of any order for an interim payment.

**Lodging The Case Management Bundle**
**26.19**
The Case Management bundle should be lodged with the Registry at least 7 days before the (first) Case Management Conference (or earlier hearing at which the parties are represented and at which the business of the Case Management Conference may be transacted).

**Preparation And Upkeep**
**26.20**
The claimant (or other party responsible for the preparation and upkeep of the Case Management Bundle), in consultation with the other parties, must revise and update the Case Management Bundle as the case proceeds.

**CASE MANAGEMENT CONFERENCE**
**Application To Postpone The Case Management Conference**
**26.21**
An application to postpone the Case Management Conference must be made within 21 days after all defendants who intend to serve a defence have done so.

**26.22**
The application will be dealt with without a hearing unless the Court considers it appropriate to direct an oral hearing.

**Attendance At The Case Management Conference**
**26.23**
Clients need not attend a Case Management Conference unless the Court otherwise orders.

**26.24**



A legal representative who:

(1) is familiar with the case; and

(2) has sufficient authority to deal with any issues that are likely to arise; must attend on behalf of each of the parties.

**26.25**
That person should be someone who is personally involved in the conduct of the case, and who has the authority and information to deal with any matter which may reasonably be expected to be dealt with at such a hearing, including the fixing of the timetable, the identification of issues and matters of evidence.

**26.26**
Where the inadequacy of the person attending or of his instructions leads to the adjournment of a hearing, the Court will expect to make a costs order against the legal representative.

**Applications**
**26.27**
If by the time of the Case Management Conference a party wishes to apply for an order in respect of a matter not covered by Questions (1)–(14) in the Case Management Information Sheet, he should make that application at the Case Management Conference.



**26.28**
In some cases notice of such an application may be given in the Case Management Information Sheet itself. See Rule 26.32.

**26.29**
In all other cases the applicant should ensure that an application notice and any supporting evidence is filed and served in time to enable the application to be heard at the Case Management Conference.

**Materials: Case Management Information Sheet And Case Management Bundle**
**26.30**
All parties attending a Case Management Conference must complete a Case Management Information Sheet. The information sheet is intended to include reference to all applications which the parties would wish to make at a Case Management Conference.

**26.31**
A completed Case Management Information Sheet must be provided by each party to the Court (and copied to all other parties) at least 7 days before the Case Management Conference.

**26.32**
Applications not covered by the standard questions raised in the Case Management Information Sheet should be entered under Question (15). No other application notice is necessary if written evidence will not be involved and the 7 day notice given by entering the application on the information sheet will in all the circumstances be sufficient to



enable all other parties to deal with the application.

**26.33**
The Case Management Bundle must be provided to the Court at least 7 days before the Case Management Conference. Only where it is essential for the Court on the Case Management Conference to see the full version of a statement of case that has been summarised should a copy of that statement of case be lodged for the Case Management Conference.

**The Hearing**
**26.34**
At the Case Management Conference, the Judge will:

(1) discuss the issues in the case, and the requirements of the case, with the legal representatives retained in the case;

(2) review the steps which the parties have taken in the preparation of the case, and in particular their compliance with any directions that the Court may have given;

(3) decide and give directions about the steps which are to be taken to secure the progress of the claim in accordance with the overriding objective;

(4) ensure as far as it can that all agreements that can be reached between the parties about the matters in issue and the conduct of the claim are made and recorded; and

(5) fix the entire pre-trial timetable, or, if that is not practicable, fix as much of the pre-trial timetable as possible.

**26.35**
The topics the Court will consider at a Case Management Conference are likely to include:

(1) whether the claimant has made clear the claim he is bringing, in particular the amount he is claiming, so that the other party can understand the case he has to meet;

(2) whether any amendments are required to the claim, a statement of case or any other document;

(3) what production of documents, if any, is necessary;

(4) what expert evidence is reasonably required in accordance with Part 31 and how and when that evidence should be obtained and exchanged;

(5) what factual evidence should be exchanged;

(6) what arrangements should be made about the giving of clarification or further information and the putting of questions to experts; and

(7) whether it will be just and will save costs to order a split trial or the trial of one or



more preliminary issues.

**26.36**

In all cases the Court will set a timetable for the steps it decides are necessary to be taken. These steps may include the holding of a further Case Management Conference or a Pre–Trial Review, and the Court will be alert to perform its duty to fix a trial date or period as soon as it can.

**26.37**

The Court will not at this stage give permission to use expert evidence unless it can identify each expert by name or field in its order and say whether his evidence is to be given orally or by the use of his report.

**26.38**

A party who obtains expert evidence before obtaining a direction about it does so at his own risk as to costs.

**26.39**

To assist the Court, the parties and their legal representatives should:



    (1) ensure that all documents that the Court is likely to ask to see (including witness statements and experts' reports) are brought to the hearing;

    (2) consider whether the parties should attend; and

    (3) consider what orders each wishes to be made and give notice of them to the other parties.

**Order For Alternative Dispute Resolution**
**26.40**

In appropriate cases make an order for alternative dispute resolution in accordance with Part 27.

**26.41**

The Case Management Information Sheet requires the parties to indicate whether a stay for such purposes is sought.

**26.42**

In an appropriate case an order for alternative dispute resolution may be made without a stay of proceedings. The parties should consider carefully whether it may be possible to provide for alternative dispute resolution in the pre-trial timetable without affecting the date of trial.

**26.43**

Where a stay has been granted for a fixed period for the purposes of alternative dispute resolution the Court has power to extend it. If an extension of the stay is desired by all parties, the Court will normally be prepared to deal with an application for such an extension if it is made before the expiry of the stay by letter from the legal representatives of one of the parties. The letter should confirm that all parties consent to the application.

**26.44**





An extension will not normally be granted for more than four weeks unless clear reasons are given to justify a longer period, but more than one extension may be granted.

**The Pre-Trial Timetable**
**26.45**
The pre-trial timetable will normally include:

(1) a progress monitoring date (see **Rule 26.56** below); and

(2) a direction that the parties meet with the Registrar to obtain a fixed date for trial.

**Variations To The Pre-Trial Timetable**
**26.46**
The parties may agree minor variations to the time periods set out in the pre-trial timetable without the case needing to be brought back to the Court provided that the variation:

(1) will not jeopardise the date fixed for trial;

(2) does not relate to the progress monitoring date; and

(3) does not provide for the completion after the progress monitoring date of any step which was previously scheduled to have been completed by that date.



**26.47**
If in any case it becomes apparent that variations to the pre-trial timetable are required which do not fall within **Rule 26.46** above, the parties should apply to have the Case Management Conference reconvened immediately. The parties should not wait until the progress monitoring date.

**Case Management Conference: Part 8 Claims**
**26.48**
In a case commenced by the issue of a Part 8 claim form, a Case Management Conference will normally take place on the first available date 6 weeks after service and filing of the defendant's evidence. At that Case Management Conference the Court will make such pre-trial directions as are necessary, adapting (where useful in the context of the particular claim) those of the case management procedures used for a claim commenced by the issue of a Part 7 claim form.

**Case Management Conference: Additional Claims**
**26.49**
Wherever possible, any party who intends to make an additional claim should do so before the hearing of the Case Management Conference dealing with the main claim.

**26.50**
Where permission to make an additional claim is required it should be sought at the Case Management Conference in the main claim.

**26.51**






If the additional claim is a counterclaim by a defendant against a claimant alone, the Court will give directions in the additional claim at the Case Management Conference in the main claim.

**26.52**
If the additional claim is not a counterclaim by a defendant against a claimant alone, the Case Management Conference in the main claim will be reconvened on the first available date 6 weeks after service of the defence to the additional claim.

**26.53**
All parties to the proceedings (i.e. the parties to the main claim and the parties to the additional claim) must attend the reconvened Case Management Conference. There will not be a separate Case Management Conference for the additional claim alone.

**26.54**
In any case involving an additional claim the Court will give case management directions at the same Case Management Conferences as it gives directions for the main claim. The Court will therefore normally only give case management directions at hearings attended by all parties to the proceedings.

**Management Throughout The Case**
**26.55**
The Court will continue to take an active role in the management of the case throughout its progress to trial. Parties should be ready at all times to provide the Court with such information and assistance as it may require for that purpose.

**Progress Monitoring**
**Fixing The Progress Monitoring Date**
**26.56**
The progress monitoring date will be fixed at the Case Management Conference and will normally be after the date in the pre-trial timetable for exchange of witness statements and expert reports.

**Progress Monitoring Information Sheet**
**26.57**
At least 3 clear days before the progress monitoring date, the parties must each send to the Registrar (with a copy to all other parties) a progress monitoring information sheet to inform the Court:

    (1) whether they have complied with the pre-trial timetable, and if they have not, the respects in which they have not; and

    (2) whether they will be ready for a trial commencing on the fixed date specified in the pre-trial timetable, and if they will not be ready, why they will not be ready.

**26.58**
A standard form of progress monitoring information sheet is set out in Schedule B to this Part.

**Reconvening The Case Management Conference**





**26.59**

If in the view of the Court the information given in the progress monitoring sheets justifies this course, the Court may direct that the Case Management Conference be reconvened.

**26.60**

At a reconvened hearing of the Case Management Conference, the Court may make such orders and give such directions as it considers appropriate.

**Pre–Trial Checklist**
**26.61**

Not later than three days before the pre-trial review hearing each party must send to the Registrar (with a copy to all other parties) a completed checklist confirming final details for trial (a "Pre-Trial Checklist") in the form set out in Schedule C to this Part.

**Further Information**
**26.62**

If a party declines to provide further information requested under Part 19, the legal representatives of the parties concerned must communicate directly with each other in an attempt to reach agreement before any application is made to the Court.

**26.63**

No application for an order that a party provide further information will normally be listed for hearing without prior written confirmation from the applicant that the requirements of Rule 26.62 have been complied with.



**Fixed Trial Dates**
**26.64**

Most cases will be given fixed trial dates immediately after the pre-trial timetable has been set at the Case Management Conference.

**26.65**

A fixed date for trial is given on the understanding that if previous fixtures have been substantially underestimated or other urgent matters need to be heard, the trial may be delayed. Where such delay might cause particular inconvenience to witnesses or others involved in the trial, the Registrar should be informed well in advance of the fixed date.

**Estimates Of Length Of Trial**
**26.66**

At the Case Management Conference an estimate will be made of the minimum and maximum lengths of the trial. The estimate will appear in the pre–trial timetable and will be the basis on which a date for trial will be fixed.

**26.67**

If a party subsequently instructs new legal representatives to appear on his behalf at the trial, the Registrar should be notified of that fact within 14 days. Legal representatives newly instructed should review the estimate of the minimum and maximum lengths of the trial, and submit to the Registrar a signed note revising or confirming the estimate as appropriate.

**26.68**

217





A confirmed estimate of the minimum and maximum lengths of the trial, signed by the legal representatives who are to appear at the trial, should be attached to the pre-trial checklist.

**26.69**
It is the duty of all legal representatives who are to appear at the trial to seek agreement, if possible, on the estimated minimum and maximum lengths of trial.

**26.70**
The provisional estimate and (after it is given) the confirmed estimate must be kept under review by the legal representatives who are to appear at the trial. If at any stage an estimate needs to be revised, a signed revised estimate (whether agreed or not) must be submitted by the legal representatives to the Registrar.

**26.71**
Accurate estimation of trial length is of great importance to the efficient functioning of the Court. The Court will be guided by, but will not necessarily accept, the estimates given by the parties.

**Pre-Trial Review And Trial Timetable**
**26.72**
The Court will order a Pre-Trial Review in any case in which it considers it appropriate to do so.

**26.73**
A Pre-Trial Review will normally take place between 8 and 4 weeks before the date fixed for trial.

**26.74**
Whenever possible the Pre-Trial Review will be conducted by the trial Judge. It should be attended by the individual legal representatives who are to appear at the trial.

**26.75**
Before the Pre-Trial Review the parties must attempt to agree a timetable for the trial providing for oral submissions, witnesses of fact and expert evidence. The claimant must file a copy of the draft timetable at least two days before the date fixed for the Pre-Trial Review; any differences of view should be clearly identified. At the Pre-Trial Review the Judge may set a timetable for the trial and give such other directions for the conduct of the trial as he considers appropriate.

**Orders**
**26.76**
Except for orders made by the Court on its own initiative and unless the Court otherwise orders, every order will be drawn up by the parties.

**26.77**
Agreed orders are to be drawn up in accordance with the procedure described in Part 23.

**26.78**








All other orders are to be drawn up in draft by the parties and dated in the draft with the date of the Judge's decision. The claimant is to have responsibility for drafting the order, unless it was made on the application of another party in which case that other party is to have the responsibility.

**26.79**
Two copies of the draft, signed by the parties themselves, or by their legal representatives must be lodged with the Registry within five days of the decision of the Court reflected in the draft.

**26.80**
If the Court orders that an act be done by a certain date without specifying a time for compliance, the latest time for compliance is 4.00 p.m. on the day in question.

**26.81**
Orders that are required to be served must be served by the parties, unless the Court otherwise directs.

**Failure To Comply With Case Management Directions**
**26.82**
Where a party fails to comply with a direction given by the Court any other party may apply for an order that he must do so or for a sanction to be imposed or both of these.

**26.83**
The party entitled to apply for such an order must do so without delay but should first warn the other party of his intention to do so.

**26.84**
The Court may take any such delay into account when it decides whether to make an order imposing a sanction or to grant relief from a sanction imposed by the rules or any other practice direction.

**26.85**
The Court will not allow a failure to comply with directions to lead to the postponement of the trial unless the circumstances are exceptional.

**26.86**
If it is practical to do so the Court will exercise its powers in a manner that enables the case to come on for trial on the date or within the period previously set.

**26.87**
In particular the Court will assess what steps each party should take to prepare the case for trial, direct that those steps are taken in the shortest possible time and impose a sanction for non-compliance. Such a sanction may, for example, deprive a party of the right to raise or contest an issue or to rely on evidence to which the direction relates.

**26.88**
Where it appears that one or more issues are or can be made ready for trial at the time fixed while others cannot, the Court may direct that the trial will proceed on the issues which are then ready, and direct that no costs will be allowed for any later trial of the



remaining issues or that those costs will be paid by the party in default.

**26.89**
Where the Court has no option but to postpone the trial it will do so for the shortest possible time and will give directions for the taking of the necessary steps in the meantime as rapidly as possible.

**26.90**
Litigants and legal representatives must be in no doubt that the Court will regard the postponement of a trial as an order of last resort. Where it appears inevitable the Court may exercise its power to require a party as well as his legal representative to attend court at the hearing where such an order is to be sought.

**26.91**
The Court will not postpone any other hearing without a very good reason, and for that purpose the failure of a party to comply on time with directions previously given will not be treated as a good reason.

SCHEDULE A
**Case Management Information Sheet**

Party lodging information sheet:

Name(s) of legal representative(s):

Name(s) of individual legal representative(s) for trial:

(1) Approximately how many documents and how many pages of documents do you intend to produce on standard production of documents?

(2) How do you intend to produce documents to the other parties under RDC 28.6? (For example by hard copy or electronically.)

(3) By what date can you provide standard production of documents?

(4) Please estimate the legal costs associated with standard production of documents.

(5) Have the parties discussed standard production of documents?In particular, have the parties discussed the production of electronic documents? If so, please provide a summary of material areas of agreement and disagreement between the parties.

(6) Is production of specific documents likely to be required on any issue? If so, please as much detail as is currently available.

(7) Have the parties discussed likely or potential requests for production of specific documents? In particular, have the parties discussed requests to produce electronic documents? If so, please provide a summary of material areas of agreement and disagreement between the parties.

(8) Are amendments to or is information about any statement of case required? If



yes, please give brief details of what is required.

(9) Can you make any additional admissions? If yes, please give brief details of the additional admissions.

(10) Are any of the issues in the case suitable for trial as preliminary issues?

(11)

    (a) On the evidence of how many witnesses of fact do you intend to rely at trial (subject to the directions of the Court)? Please give their names, or explain why this is not being done.

    (b) By what date can you serve signed witness statements?

    (c) How many of these witnesses of fact do you intend to call to give oral evidence at trial (subject to the directions of the Court)? Please give their names, or explain why this is not being done.

    (d) Will interpreters be required for any witness?

    (e) Do you wish any witness to give oral evidence by video link? Please give his or her name, or explain why this is not being done. Please state the country and city from which the witness will be asked to give evidence by video link.

(12)

    (a) On what issues may expert evidence be required?

    (b) Is this a case in which the use of a Court–appointed expert (see **Rule 31.29**) or an assessor (see **Rule 31 Part II**) might be suitable?

    (c) On the evidence of how many expert witnesses do you intend to rely at trial (subject to the directions of the Court)? Please give their names, or explain why this is not being done. Please identify each expert's field of expertise.

    (d) By what date can you serve signed expert reports?

    (e) When will the experts be available for a meeting or meetings of experts?

    (f) How many of these expert witnesses do you intend to call to give oral evidence at trial (subject to the directions of the Court)? Please give their names, or explain why this is not being done.

    (g) Will interpreters be required for any expert witness?

    (h) Do you wish any expert witness to give oral evidence by video link? Please give his or her name, or explain why this is not being done. Please state the country and city from which the witness will be asked to give evidence by video link.

(13) What are the trial advocates' present provisional estimates of the minimum



and maximum lengths of the trial?

(14) What is the earliest date by which you believe you can be ready for trial?

(15) Is this a case in which a Pre-Trial Review is likely to be useful?

(16) Is there any way in which the Court can assist the parties to resolve their dispute or particular issues in it without the need for a trial or a full trial?

(17)

(a) Might some form of alternative dispute resolution procedure assist to resolve or narrow the dispute or particular issues in it?

(b) Has the question at (a) been considered between the client and legal representatives (including those to appear at trial)?

(c) Has the question at (a) been explored with the other parties in the case?

(d) Do you request that the case is adjourned while the parties try to settle the case by alternative dispute resolution or other means?

(e) Would an order for alternative dispute resolution in the form of the Schedule to Part 27 be appropriate?

(f) Are any other special directions needed to allow for alternative dispute resolution?

(18) What other applications will you wish to make at the Case Management Conference?

(19) Does provision need to be made in the pre-trial timetable for any application or procedural step not otherwise dealt with above? If yes, please specify the application or procedural step.

(20) Are there, or are there likely in due course to be, any related proceedings? Please give brief details.

(21) Have you entered into an "LFA" with a "Funder" with respect to these "Proceedings," as defined in Practice Direction No. 2 of 2017? Please answer yes or no. If yes, please identify the name/s of the "Funder" (applicable as regards cases filed on or after 14 March 2017).

Rights of Audience

(22) Do any of the parties' legal representatives intend to request the Court to waive or vary any limitation on their right to appear before the Court? If so, please identify the limitation and the reasons relied upon.

(23) Has the legal representative's client consented to the making of the request?

(24) Does the legal representative practice with a legal practitioner already holding





full rights of audience before the Court? If so, please identify the Practitioner. Has the Practitioner agreed to provide appropriate guidance to the legal representative if such guidance is requested?

(25) Does the legal representative agree that in the event of their request being granted, they will be bound by, and conduct themselves during the proceedings in full accordance with, the requirements of the Code of Conduct for Legal Practitioners in the DIFC Courts?

[Signature of legal representative(s)]

Note: This information sheet must be lodged with the Registry at least 7 days before the Case Management Conference (with a copy to all other parties).

## SCHEDULE B
**Progress Monitoring Information Sheet**

Party lodging information sheet:

Name(s) of legal representative(s):

Name(s) of individual legal representative(s) for trial:

(1) Have you complied with the pre-trial timetable in all respects?

(2) If you have not complied, in what respects have you not complied?

(3) Will you be ready for a trial commencing on the fixed date (or, where applicable, within the provisional range of dates) specified in the pre-trial timetable?

(4) If you will not be ready, why will you not be ready?

[Signature of legal representative(s)]

Note: This information sheet must be lodged with the Registry at least 3 days before the progress monitoring date (with a copy to all other parties).

## SCHEDULE C
Pre-Trial Checklist

a. Trial date:

b. Party lodging checklist:

c. Name(s) of legal representative(s):

d. Name(s) of individual legal representative(s) for trial:

[Note: this checklist should normally be completed with the involvement of the legal



representatives instructed for trial]

1. Have you completed preparation of trial bundles?

2. If not, when will the preparation of the trial bundles be completed?

3. Which witnesses of fact do you intend to call?

4. Which expert witness(es) do you intend to call (if directions for expert evidence have been given)?

5. Will an interpreter be required for any witness and if so, have any necessary directions already been given?

6. Have directions been given for any witness to give evidence by video link? If so, have all necessary arrangements been made?

7. What are the individual legal representative(s)'s for trial confirmed estimates of the minimum and maximum lengths of the trial? (A confirmed estimate of length signed by the individual legal representative(s) for trial should be attached).

8. What is your estimate of costs already incurred and to be incurred at trial?

[Signature of legal representative(s)]



# PART 27
## ALTERNATIVE DISPUTE RESOLUTION

**Alternative Dispute Resolution**
**27.1**
While emphasising its primary role as a forum for deciding civil and commercial cases, the Court encourages parties to consider the use of alternative dispute resolution (such as, but not confined to, mediation and conciliation) as an alternative means of resolving disputes or particular issues.

**27.2**
Whilst the Court remains an entirely appropriate forum for resolving most of the disputes which are entered in the Court, the view of the Court is that the settlement of disputes by means of alternative dispute resolution:

(1) significantly helps parties to save costs;

(2) saves parties the delay of litigation in reaching finality in their disputes;

(3) enables parties to achieve settlement of their disputes while preserving their existing commercial relationships and market reputation;

(4) provides parties with a wider range of solutions than those offered by litigation;



and

(5) is likely to make a substantial contribution to the more efficient use of judicial resources.

**27.3**

The Judges will, in appropriate cases, invite the parties to consider whether their dispute, or particular issues in it, could be resolved through alternative dispute resolution.

**27.4**

Legal representatives in all cases should consider with their clients and the other parties concerned, the possibility of attempting to resolve the dispute or particular issues by alternative dispute resolution and should ensure that their clients are fully informed as to the most cost effective means of resolving their dispute.

**27.5**

Parties who consider that alternative dispute resolution might be an appropriate means of resolving the dispute or particular issues in the dispute, may apply for directions at any stage, including before service of the defence and before the case management conference.

**27.6**

At the Case Management Conference, if it should appear to the Judge that the case before him or any of the issues arising in it are particularly appropriate for an attempt at settlement by means of alternative dispute resolution, but that the parties have not previously attempted settlement by such means, he may invite the parties to use alternative dispute resolution.

**27.7**

The Judge may, if he considers it appropriate, adjourn the case for a specified period of time to encourage and enable the parties to use alternative dispute resolution. He may for this purpose extend the time for compliance by the parties or any of them with any requirement under the Rules or any order of the Court.

**27.8**

The Judge may further consider in an appropriate case, making a alternative dispute resolution order in the terms set out in the Schedule to this Part.

**7.9**

The Court will not recommend any individual or body to act as a neutral.

**27.10**

At the Case Management Conference or at any other hearing in the course of which the Judge makes an order providing for alternative dispute resolution, he may make such order as to the costs that the parties may incur by reason of their using or attempting to use alternative dispute resolution as may in all the circumstances seem appropriate.

**SCHEDULE**

**Draft Order For Alternative Dispute Resolution**

1. On or before [*] the parties shall exchange lists of 3 neutral individuals who are available to conduct alternative dispute resolution procedures in this case prior to [*]. Each party may [in addition] [in the alternative] provide a list identifying the constitution of one or more panels of neutral individuals who are available to conduct alternative dispute resolution procedures in this case prior to [*].

2. On or before [*] the parties shall in good faith endeavour to agree a neutral individual or panel from the lists so exchanged and provided.

3. Failing such agreement by [*] the Case Management Conference will be restored to enable the Court to facilitate agreement on a neutral individual or panel.

4. The parties shall take such serious steps as they may be advised to resolve their disputes by alternative dispute resolution procedures before the neutral individual or panel so chosen by no later than [*].

5. If the case is not finally settled, the parties shall inform the Court by letter prior to [production of documents/exchange of witness statements/exchange of experts' reports] what steps towards alternative dispute resolution have been taken and (without prejudice to matters of privilege) why such steps have failed. If the parties have failed to initiate alternative dispute resolution procedures, the Case Management Conference is to be restored for further consideration of the case.

6. [Costs].

Note: The term "alternative dispute resolution procedures" is deliberately used in the draft alternative dispute resolution order. This is in order to emphasise that (save where otherwise provided) the parties are free to use the alternative dispute resolution procedure that they regard as most suitable, be it mediation, early neutral evaluation, non-binding arbitration, etc.

# PART 28
## PRODUCTION OF DOCUMENTS

### 28.0.1

The Court in *Taaleem PJSC v (1) National Bonds Corporation PJSC and (2) Deyaar Development PJSC* [2010] DIFC CFI 014 (12 March 2013) at [31] noted the importance of appreciating that the rules as to the production of documents under the RDC are not the same as the rules under the English Civil Procedure Rules, and that the RDC was much closer in this respect to the scheme for production in the International Bar Association ("IBA") Rules: [35].

**Meaning Of Document**



**28.1**

In this Part:

> (1) 'document' means anything in which information of any description is recorded; and

> (2) 'copy', in relation to a document, means anything onto which information recorded in the document has been copied, by whatever means and whether directly or indirectly.

**28.2**

The definition of a document extends to electronic documents, including email and other electronic communications, word processed documents and databases. In addition to documents that are readily accessible from computer systems and other electronic devices and media, the definition covers those documents that are stored on servers and back-up systems and electronic documents that have been 'deleted'. It also extends to additional information stored and associated with electronic documents known as metadata.

**Production Of Copies**
**28.3**

A party need not produce more than one copy of a document.

**28.4**

A copy of a document must conform fully to the original. At the request of the Court, any original must be presented for inspection. A copy of a document that contains a modification, obliteration or other marking or feature shall be treated as a separate document. Parties should not redact documents which they produce without the agreement of the other parties or the permission of the Court.

**Documents Referred To In Statements Of Case, Etc.**
**28.5**

A party may inspect a document mentioned in:

> (1) a statement of case;

> (2) a witness statement;

> (3) a witness summary; or

> (4) an affidavit.

**28.6**

An application for an order requiring a party to produce a document referred to in RDC **Rule 28.5** should be made in accordance with Part 23.

**28.7**

If a party wishes to inspect documents referred to in the expert report of another party, before issuing an application he should request inspection of the documents informally, and inspection should be provided by agreement unless the request is unreasonable.

**28.8**




Subject to **Rule 31.53**, a party may apply for an order for inspection of any document mentioned in an expert's report which has not already been produced in the proceedings.

**28.9**
Where an expert report refers to a large number or volume of documents and it would be burdensome to copy or collate them, the Court will only order inspection of such documents if it is satisfied that it is necessary for the just disposal of the proceedings and the party cannot reasonably obtain the documents from another source.

**Cooperation Between The Parties**
**28.10**
The parties should, prior to the first Case Management Conference, discuss any issues that may arise regarding searches for and the preservation of electronic documents. This may involve the parties seeking and providing information about the categories of electronic documents within their control, the computer systems, electronic devices and media on which any relevant documents may be held, the storage systems maintained by the parties, their document retention policies and the anticipated time and cost of carrying out any searches which might be requested.

**28.11**
Where the number or volume of documents to be searched is likely to be extensive, the parties should, where possible, seek to exchange preliminary production requests in draft form before standard production of documents takes place. Any such exchange shall not limit the parties' rights to submit further requests to produce after standard production in accordance with RDC 28.16.

**28.12**
The parties should co-operate at an early stage as to the format in which electronic copy documents are to be provided on production of documents.

**28.13**
If the physical structure of a file is or is claimed to be of evidential value:

(1) Any such claim should be raised at the earliest opportunity; and

(2) The legal representatives of the party holding the file should make one complete copy of the file in the form in which they received it before any documents are removed for the purpose of producing documents.

**28.14**
In the case of difficulty or disagreement on any of the matters referred to at RDC 28.10 to 28.13 above, the matter should be referred to a Judge for directions at the earliest practical date, if possible at the first Case Management Conference.

**Standard Production Of Documents**
**28.15**
Within the time ordered by the Court, each party shall submit to the other parties:

(1) all documents available to it on which it relies, including public documents and

those in the public domain, except for any documents that have already been submitted by another party; and

(2) the documents which he is required to produce by any Law, Rule or Practice Direction.

**Standard production of documents**
**28.15.1**
As emphasised in *Taaleem PJSC v (1) National Bonds Corporation PJSC and (2) Deyaar Development PJSC* [2010] DIFC CFI 014 (12 March 2013) at [35], an important feature of the RDC is that, as a general rule, a party does not have to produce in the course of standard production documents on which he does not rely; and, therefore, documents which might harm his case. The applicant in *Ahmed Zaki Beydoun v Daman Real Estate* [2012] DIFC CFI 032 (10 July 2014) had erroneously assumed the contrary in its application to strike out the claimant's case: [35].

**Request To Produce**
**28.16**
Within the time ordered by the Court, any party may submit to the other party a Request to Produce.

**28.17**
A Request to Produce shall contain:

(1) a description of a requested document sufficient to identify it; or

(2) a description in sufficient detail (including subject matter) of a narrow and specific requested category of documents that are reasonably believed to exist;

(3) a description of how the documents requested are relevant and material to the outcome of the case; and

(4) a statement of the reason why that party believes the documents requested to be in the possession, custody or control of the other party and either:

(a) a statement that the documents requested are not in the possession, custody or control of the requesting party, or

(b) a statement of the reasons why it would be unreasonably burdensome for the requesting party to produce such documents.

**Request to Produce**
**28.17.1**
It was emphasised in *Taaleem PJSC v (1) National Bonds Corporation PJSC and (2) Deyaar Development PJSC* [2010] DIFC CFI 014 (12 March 2013) at [32] that requests to produce documents must be focussed, must explain why the documents requested are relevant and material and must explain why they are thought to be in the possession, custody and control of the other party.

**28.18**




A Request to Produce should be set out substantially in the form of Schedule A to this Part.

**28.19**

In the case of documents which are or which are likely to be maintained in electronic form, the requesting party may, or the Court may order that it shall be required to, identify specific files, search terms, individuals or other means of searching for such documents in an efficient and economical manner.

**Production Of Documents As To Which No Objection Is Made**

**28.20**

Within the time ordered by the Court, the party to whom the Request to Produce is addressed shall:

    (1) Carry out a reasonable search for the documents in his possession, custody or control as to which no objection is made;

    (2) produce to the other parties all such requested documents which have been identified by such search as to which no objection is made;

    (3) Provide to the other parties information about his document retention policy and the nature of the searches which have been undertaken; and

    (4) State that, to the best of his knowledge, he has produced copies of all documents in his possession, custody and control which have been requested and to which no objection is raised. Such statement should be supported by a statement of truth.

**28.21**

The factors that may be relevant in deciding the reasonableness of a search for electronic documents include (but are not limited to) the following:

    (1) the number of documents involved;

    (2) the nature and complexity of the proceedings;

    (3) the ease and expense of retrieval of any particular document. This includes:

        (a) the accessibility of electronic documents or data including email communications on computer systems, servers, back-up systems and other electronic devices or media that may contain such documents taking into account alterations or developments in hardware or software systems used by the producing party and/or available to enable access to such documents;

        (b) the location of relevant electronic documents, data, computer systems, servers, back-up systems and other electronic devices or media that may contain such documents;

        (c) the likelihood of locating relevant data;

        (d) the cost of recovering any electronic documents;





(e) the cost of producing any relevant electronic documents;

(f) the likelihood that electronic documents will be materially altered in the course of recovery, or production;

(4) the significance of any document which is likely to be located during the search.

**28.22**

It may be reasonable to search some or all of the parties' electronic storage systems. In some circumstances, it may be reasonable to search for electronic documents by means of keyword searches even where a full review of each and every document would be unreasonable. There may be other forms of electronic search that may be appropriate in particular circumstances.

**28.23**

The parties should seek to agree in advance the parameters of any search of electronic documents, including:

(1) The electronic databases to be searched; and

(2) Any search terms to be used.

**28.24**

Where possible, any dispute about the parameters of any electronic search should be referred to the Court for determination before the relevant search is carried out. This is particularly important where the volume of documents to be searched is large or the searches are likely to be time consuming or expensive.

**28.25**

The Court may take into account any failure to comply with RDC 28.23 and 28.24 in any assessment of costs.

**Objection To Request To Produce**

**28.26**

If the party to whom the Request to Produce is addressed has objections to the production of some or all of the documents requested, he shall state them in writing within the time ordered by the Court. The reasons for such objections shall be any of those set out in **Rule 28.28**.

**Objection to Request to Produce**

**28.26.1**

In *Taaleem PJSC v (1) National Bonds Corporation PJSC and (2) Deyaar Development PJSC* [2010] DIFC CFI 014 (12 March 2013) the Court summarised the proper approach to be taken by a party in response to a request to produce under RDC 28.16 (then RDC 28.13) where objection is raised under RDC 28.26 (then RDC 28.42): [33]-[34]. A response in the form *"documents in this category have not been located"* is not sufficient, as it does not tell the requesting party or the Court what has been done in carrying out the search which is said to have been carried out: [37]. RDC 28.20 provides that a *"reasonable search"* must be carried out for requested documents within the





possession, custody of control of the party to whom the request is made as to which no objection is made. If objection is made, it must be on the basis of one or more of the reasons set out at RDC 28.28 (as to which, see the commentary at paragraph 28.28.1 below).

**28.27**
A party's objections to production in accordance with RDC 28.16 should be recorded in a schedule substantially in the form of Schedule A to this Part.

**Grounds For Excluding Documents From Production**
**28.28**
The Court may, at the request of a party or on its own initiative, exclude from production any document for any of the following reasons:

> (1) lack of sufficient relevance or materiality;

> (2) legal impediment or privilege under the legal or ethical rules determined by the Court to be applicable;

> (3) unreasonable burden to produce the requested evidence;

> (4) loss or destruction of the document that has been reasonably shown to have occurred;




> (5) grounds of commercial or technical confidentiality that the Court determines to be compelling;

> (6) grounds of special political or institutional sensitivity (including evidence that has been classified as secret by a government or a public international institution) that the Court determines to be compelling; or

> (7) considerations of procedural economy, proportionality, fairness or equality of the parties that the Court determines to be compelling.

**Grounds for excluding documents from production**
**28.28.1**
The Court held in *Taaleem PJSC v (1) National Bonds Corporation PJSC and (2) Deyaar Development PJSC* [2010] DIFC CFI 014 (12 March 2013) that paragraph (5) of RDC 28.28 (then RDC 28.42) was concerned with the "*familiar case*" where the party objects to producing its own documents because those documents relate to matters which for it are commercially or technically confidential. Examples of pricing schedules or technical information of a confidential nature were given: [11]. Confidential information of third parties which fell in to the hands of a party to proceedings would invariably be dealt with under paragraph (2).

**28.28.2**
It was further held in *Taaleem* that a claim to withhold production for the reason set out in paragraph (6) (i.e. political or institutional sensitivity) could not be made out in respect of a complaint by a party *to* the Financial Audit Department ("FAD") in circumstances where it was not a document which emanated *from* the FAD: [13].

The position in relation to correspondence between the Ruler's Court and the party was *"less obvious"*. Limited production was ordered, and the Court emphasised the restrictions on the use of produced documents under RDC 28.64 & 28.65 (then RDC 28.56 & 28.57): [14]-[16].

**28.28.3**
For commentary on the production and admissibility of without prejudice communications, see paragraph 29.0.1 below.

**28.29**
A person who wishes to claim that he has a right or a duty to withhold production of a document, or part of a document, must state in writing—

   (1) that he has such a right or duty; and

   (2) the grounds on which he claims that right or duty.

**28.30**
A party may apply to the Court to decide whether a claim made under **Rule 28.29** should be upheld.

**Public Interest Objection**
**28.31**
A person may apply, without notice, for an order permitting him to withhold production of a document on the ground that production would damage the public interest.

**28.32**
Unless the Court orders otherwise, an order of the Court under **Rule 28.31**—

   (1) must not be served on any other person; and

   (2) must not be open to inspection by any person.

**28.33**
For the purpose of deciding an application under **Rule 28.29** (duty to withhold production) or **Rule 28.31** (public interest objection) the Court may:

   (1) require the person seeking to withhold production of a document to produce that document to the Court; and

   (2) invite any person, whether or not a party, to make representations.

**28.34**
An application under **Rules 28.29** or **28.31**:

   (1) Should be made within the time ordered by the Court for objecting to the production of documents; and

   (2) must be supported by evidence.

**28.35**



This Part does not affect any rule of law which permits or requires a document to be withheld from production on the ground that its production would damage the public interest.

**Document Production Order**
**28.36**
Where a requesting party considers:

(1) That a responding party's objection to production is not justified; or

(2) That the responding party has failed to carry out a reasonable search for documents which have been requested or has otherwise failed, without objection, to produce such documents which are within his possession, custody or control,

the requesting party may apply to the Court for a Document Production Order.

**28.37**
An application for a Document Production Order should be supported by a schedule substantially in the form of Schedule A to this Part.

**28.38**
The Court may order the party to whom a Request to Produce is addressed to produce to the other parties those requested documents in its possession, custody or control (a "Document Production Order").



**28.39**
A Document Production Order will direct that a party must do one or more of the following things:

(1) produce documents or classes of documents specified in the order;

(2) carry out a search to the extent stated in the order;

(3) produce any documents located as a result of that search;

(4) identify documents or classes of documents which were, but are no longer, in the party's possession, custody and control and explain, to the best of the party's knowledge and belief, what has happened to them.

**28.40**
The party from whom a Document Production Order is sought should provide to the applicant and to the Court information as to the factors listed in **Rule 28.21** and his document retention policy, to the extent such information is relevant to the application and has not already been provided. At the hearing of an application for a Document Production Order, the Court may take into account the factors listed in **Rule 28.21** as well as the width of the request and the conduct of the parties.

**28.41**






If the propriety of an objection can only be determined by review of the document, the Judge hearing the objection may refer the objection to another Judge to review any such document and determine the objection. To the extent that the objection is upheld by the other Judge, the Court may determine that the other Judge will not disclose to the other parties the contents of the document reviewed and will take no further part in the case, either for the purpose of the hearing of applications or as the Judge at trial, unless the parties agree otherwise.

28.42
Compliance with a Document Production Order must be verified by a Document Production Statement in the form set out in Schedule B to this Part.

28.43
A Document Production Statement is a statement made by a party:

(1) setting out the extent of the search that has been made to locate documents which he is required to produce;

(2) certifying that he understands the duty to search for and produce documents; and

(3) certifying that to the best of his knowledge he has carried out that duty.

28.44
Where the party making the Document Production Statement is a company, firm, association or other organisation, the statement must also:

(1) identify the person making the statement; and

(2) explain why he is considered an appropriate person to make the statement.

28.45
(1) The parties' obligation to produce documents in response to a Document Production Request or pursuant to a Document Production Order is a continuing one. Where a party subsequently comes into possession of further documents falling within the scope of such a request or order, the party must notify the requesting party of that fact and either produce the document or object to its production in accordance with RDC 28.26.

(2) This rule shall not apply where the party has previously objected to production on grounds which apply to the new document and such objection has not been challenged by the other parties or has been upheld by the Court.

**Production Of Documents In Stages**
28.46
The parties may agree in writing, or the Court may direct, that production of documents shall take place in stages.

Production Of Documents Before Proceedings Start



**28.47**

An application for production of documents before proceedings have started under these Rules must be made in accordance with Part 8 and supported by evidence.

**28.48**

The Court may only make an order where:

    (1) the respondent is likely to be a party to subsequent proceedings;

    (2) the applicant is also likely to be a party to those proceedings;

    (3) if proceedings had started, the Court would make a Document Production Order directing the production of the documents or classes of documents of which the applicant seeks production; and

    (4) production before proceedings have started is desirable in order to:

        (a) dispose fairly of the anticipated proceedings;

        (b) assist the dispute to be resolved without proceedings; or

        (c) save costs.

**31.48.1**



See also Practice Direction No. 1 of 2013.

**28.49**

An order under **Rule 28.48** must:

    (1) specify the documents or the classes of documents which the respondent must produce; and

    (2) require him, when producing the documents, to specify any of those documents:

        (a) which are no longer in his control; or

        (b) in respect of which he claims a right or duty to withhold production.

**28.50**

Such an order may:

    (1) require the respondent to indicate what has happened to any documents which are no longer in his control; and

    (2) specify the time and place for production.

**Orders For Production Of Documents Against A Person Not A Party**





**28.51**
An application for production of documents by a person who is not a party to the proceedings must under these Rules be supported by evidence.

**28.52**
The Court may make an order under this rule only where:

(1) the documents of which production is sought are likely to support the case of the applicant or adversely affect the case of one of the other parties to the proceedings; and

(2) production is necessary in order to dispose fairly of the claim or to save costs.

**Orders for production of documents against a non-party**
**28.52.1**
Where production of documents is sought from non-parties, in accordance with the overriding objective, the requesting party should ask for voluntary production before seeking a court order: *GCC International v Capital Investment International* [2012] DIFC CA 001 (24 September 2012) at [27].

**28.52.2**
In *GCC International*, the Court continued to cite, with approval, the English Court of Appeal case of *Bermuda International Securities Ltd v KPMG* [2001] EWCA Civ 269 as authority for the *"normal rule"* that a non-party who is compelled to produce documents should be awarded its costs of production as well as its reasonable costs of instructing lawyers to advise and appear on its behalf in proceedings to compel production unless the producing party resists the order for production on unreasonable grounds.

**28.52.3**
A potential issue for the Court in *Taaleem PJSC v (1) National Bonds Corporation PJSC and (2) Deyaar Development PJSC* [2010] DIFC CFI 014 (12 March 2013) at [5] was whether an order for production of documents by a non-party could be made in circumstances where the non-party is not, itself, subject to the jurisdiction of the DIFC Court. However, the Court did not consider the issue further in light of a specific decree prohibiting the court from making any orders in the circumstances.

**28.53**
An order under **Rule** 28.51 must:

(1) specify the documents or the classes of documents which the respondent must produce; and

(2) require the respondent, when producing the documents, to specify any of the documents which the Court has ordered should be produced:

(a) which are no longer in his control; or

(b) in respect of which he claims a right or duty to withhold production.

**28.54**



Such an order may:

(1) require the respondent to indicate what has happened to any documents which are no longer in his control; and

(2) specify the time and place for production.

**Rules Not To Limit Other Powers Of The Court To Order Production Of Documents**
**28.55**
Rules 28.47 to 28.54 do not limit any other power which the Court may have to order:

(1) production of documents before proceedings have started; and

(2) production of documents against a person who is not a party to proceedings.

**Request To Produce Documents By The Court On Its Own Initiative**
**28.56**
The Court may at any time request a party to produce to the Court and to the other parties any documents that it considers to be relevant and material to the outcome of the case.

**28.57**
A party may object to such a request based on any of the reasons set out in Rule 28.28.

**28.58**
If a party raises such an objection, the Court shall decide whether to order the production of such documents based upon the considerations set out in Rule 28.28 and, if the Court considers it appropriate, through the use of the procedures set out in Rule 28.41.

**Additional Documents**
**28.59**
Within the time ordered by the Court, the parties may produce to the other parties any additional documents which they believe have become relevant and material as a consequence of the issues raised in statements of case, documents, witness statements or expert reports submitted or produced by another party or in other submissions of the parties.

**Consequence Of Failure To Produce Documents**
**28.60**
A party may not rely on any document which he fails to produce unless the Court gives permission.

**28.61**
If a party fails without satisfactory explanation to produce any document requested in a Request to Produce to which he has not objected in due time or fails to produce any document ordered to be produced by the Court, the Court may infer that such document would be adverse to the interests of that party.

**False Document Production Statements**







**28.62**

Proceedings for contempt of court may be brought against a person if he makes, or causes to be made, a false Document Production Statement, without an honest belief in its truth.

**28.63**

Proceedings under **Rule 28.62** may be brought only with the permission of the Court.

**Subsequent Use Of Produced Documents**
**28.64**

A party to whom a document has been produced may use the document only for the purpose of the proceedings in which it has been produced, except where:

(1) the document has been read to or by the Court, or referred to, at a hearing which has been held in public;

(2) the Court gives permission; or

(3) the party who produced the document and the person to whom the document belongs agree.

**28.65**

The Court may make an order restricting or prohibiting the use of a document which has been produced, even where the document has been read to or by the Court, or referred to, at a hearing which has been held in public.



**28.66**

An application for such an order may be made:

(1) by a party; or

(2) by any person to whom the document belongs.

**Restriction On Use Of A Privileged Document Inspection Of Which Has Been Inadvertently Allowed**
**28.67**

Where a party inadvertently allows a privileged document to be inspected, the party who has inspected the document may use it or its contents only with the permission of the Court.

**SCHEDULE A**
**Document Production Schedule**

[1] [Documents sought] [Reasons for request] [Document not in requesting party's control and reasons] [Document in responding party's control and reasons] [Reason for Objection]

**SCHEDULE B**






**Document Production Statement**

I, the above named claimant [or defendant] [if the party making production is a company, firm or other organisation, identify here the person making the Document Production Statement and explain why he is the appropriate person to make it] state that I have carried out a reasonable search to locate all the documents which I am required to produce under the order made by the Court day of.

[explain what was searched and extent of search]

I did not search:

(1) for documents predating.

(2) for documents located elsewhere than.

(3) for documents in categories other than.

For electronic documents

I carried out a search for electronic documents contained on or created by the following:

[explain what was searched and extent of search]

I did not search for the following:

(1) documents created before

(2) documents contained on or created by the Claimant Defendant PCs/ portable data storage media/databases/servers/back-up tapes/off-site storage/mobile phones/laptops/notebooks/handheld devices/PDA devices (delete as appropriate),

(3) documents contained on or created by the Claimant's/Defendant's mail files/ document files/calendar files/spreadsheet files/graphic and presentation files/ web-based applications (delete as appropriate),

(4) documents other than by reference to the following keyword(s)/concepts(delete if your search was not confined to specific keywords or concepts).

I certify that I understand the duty to produce documents and to the best of my knowledge I have carried out that duty. I certify that the list above is a complete list of all documents which are or have been in my control and which I am obliged under the said order to produce.
Signed and dated this.

PART 29



EVIDENCE

**Without prejudice privilige**
**29.0.1**
The Court noted in *Asif Hakim Adil v Frontline Development Partners Limited* [2014]
DIFC CFI 015 (3 April 2016) at [101] and [155] that it did not follow from the fact that
a document was ordered to be produced that it was admissible. Production and
admissibility are distinct concepts. The principles to apply in connection with without
prejudice privilege were set out at [102] to [108] and [136] [139], by reference to the
English authorities. It was held in that case that certain documents did attract without
prejudice privilege, and that production of the documents did not amount to waiver,
such that the witness evidence which referred to those matters and the documents
themselves were inadmissible: [154]-[155].

I EVIDENCE IN GENERAL
**29.1**
This Part sets out how evidence is to be given and facts are to be proved.

**29.2**
Evidence at a hearing other than the trial should normally be given by witness
statement. A witness statement is a written statement signed by a person which
contains the evidence that person would have otherwise submitted orally.

**29.3**
A witness may give evidence by affidavit if he wishes to do so.

**29.4**
Statements of case and application notices may also be used as evidence provided
that their contents have been verified by a statement of truth.

**29.5**
Affidavits must be used as evidence in the following instances:

(1) where sworn evidence is required by an enactment, Rule, order or
   Practice Direction;

(2) in any application for a search order, a freezing order, or an order requiring an
   occupier to permit another to enter his land; and

(3) in any application for an order against anyone for alleged contempt of court.

**29.6**
If a party believes that sworn evidence is required by a court in another jurisdiction
for any purpose connected with the proceedings, he may apply to the Court for a
direction that evidence shall be given only by affidavit in any pre-trial applications.

**29.7**
The Court may give a direction that evidence shall be given by affidavit instead of, or in



addition to, a witness statement or statement of case:

(1) on its own initiative; or

(2) after any party has applied to the Court for such a direction.

**29.8**
An affidavit, where referred to in these Rules or a Practice Direction, also means an affirmation unless the context requires otherwise.

Power Of Court To Control Evidence
**29.9**
The Court may control the evidence by giving directions as to:

(1) the issues on which it requires evidence;

(2) the nature of the evidence which it requires to decide those issues; and

(3) the way in which the evidence is to be placed before the Court.

**Court's control of evidence**
**29.9.1**
The Court's powers under RDC 29.9-29.11 to control evidence includes the power to exclude additional witnesses. There is no rule excluding the later addition of witnesses to a party's list of witnesses so long as the proceedings are not thereby disrupted or thereby delayed It will only be in rare cases – for example the purported inclusion of a peripheral witness very close to the trial date – where a party will be deprived of the right to call a witness. *Ibrahim Saad v Rasmala Investments Limited* [2009] DIFC CFI 007 (22 November 2009) at [45] - [47].

**29.9.2**
An example of the Court exercising its powers to control evidence is found in *Rafed Abden Mohsen Bader Al Khorafi & ors v Bank Sarasin-Alpin (ME) Limited* [2009] DIFC CFI 026 (20 January 2015). Following trial in May / July 2013 and the handing down of judgment on 21 August 2014, Chadwick DCJ gave directions for the filing and service of evidence in advance of a quantum determination; the evidence was to be limited to evidence of events which had occurred since the last day of the trial in the proceedings (10 July 2013). Evidence was so limited because the claimants had not sought a split trial. The Judge, however, left open the possibility that there may be some further matters which justice requires the Court to consider and, if there is, the claimants might apply in writing to rely on evidence of those matters.

The claimants sought permission to rely on witness evidence which included evidence about refinancing of loans in September 2010. The Judge held at [14] that the claimants should be permitted to adduce this evidence; justice required the Court to consider this evidence. The effect of denying the claimants the opportunity to advance their claims to interest on these refinanced loans in relation to both pre-trial and post-trial interest would be that they would be limited to claims for interest on the original loans in circumstances where the amount of that interest was less than it would have been if the refinancing had not taken place. The Court held that it would be unjust for the

defendants to have the benefit of the refinancing of part of the original loan (in the sense of a reduced claim to interest accruing on that debt) without suffering the burden of a claim to interest on the later borrowing. The Court permitted the Claimants to rely on the evidence but the Court attached certain conditions to that order, including the identification of sources of certain information: [15].

The Court also considered an application by the defendants to exclude two other witness statements given on behalf of the claimants in support of the quantum determination. In relation to one of the claimants' witness statements, while the Court was not satisfied that there was very much evidential value in some of the witness statements, the Court was not persuaded that it should be excluded: [20]. In relation to the other witness statement, the Court excluded this on the basis that it contained no evidence relevant to the claims which were to be quantified at the quantum determination: [24]–[25].

**29.10**
The Court may use its power under Rule 29.9 to exclude evidence that would otherwise be admissible.

**29.11**
The Court may limit cross–examination.

**Evidence Of Witnesses – General Rule**
**29.12**
The general rule is that any fact which needs to be proved by the evidence of witnesses is to be proved:

> (1) at trial, by their oral evidence given in public; and

> (2) at any other hearing, by their evidence in writing.

**29.13**
This is subject:

> (1) to any provision to the contrary contained in these Rules or elsewhere; or

> (2) to any order of the Court.

**Evidence By Video Link Or Other Means**
**29.14**
The Court may allow a witness to give evidence through a video link or by other means.

**Defects In Affidavits, Witness Statements And Exhibits**
**29.15**
Where:

> (1) an affidavit;

> (2) a witness statement; or

> (3) an exhibit to either an affidavit or a witness statement;



does not comply with this Part in relation to its form, the Court may refuse to admit it as evidence and may refuse to allow the costs arising from its preparation.

**29.16**
Permission to file a defective affidavit or witness statement or to use a defective exhibit must be obtained from a Judge.

**II WITNESS STATEMENTS**
**Preparation And Form Of Witness Statements**
**29.17**
A witness statement must comply with the requirements set out in this section of this Part.

**29.18**
The following points are emphasised:

    (1) the function of a witness statement is to set out in writing the evidence in chief of the witness; as far as possible, therefore, the statement should be in the witness's own words;

    (2) it should be as concise as the circumstances of the case allow without omitting any significant matters;

    (3) it should not contain lengthy quotations from documents;

    (4) it should not engage in argument;

    (5) it must indicate which of the statements made in it are made from the witness's own knowledge and which are made on information or belief, giving the source for any statement made on information or belief; and

    (6) it must contain a statement by the witness that he believes the matters stated in it are true; proceedings for contempt of court may be brought against a person if he makes, or causes to be made, a false statement in a witness statement without an honest belief in its truth.

**29.19**
It is improper to put pressure of any kind on a witness to give anything other than his own account of the matters with which his statement deals. It is also improper to serve a witness statement which is known to be false or which it is known the maker does not in all respects actually believe to be true.

**Fluency Of Witnesses**
**29.20**
If a witness is not sufficiently fluent in English to give his evidence in English, the witness statement should be in the witness's own language and a translation provided.

**29.21**
If a witness is not fluent in English but can make himself understood in broken English






and can understand written English, the statement need not be in his own words provided that these matters are indicated in the statement itself. It must however be written so as to express as accurately as possible the substance of his evidence.

**Heading**
**29.22**
The witness statement should be headed with the title of the proceedings where the proceedings are between several parties with the same status it is sufficient to identify the parties as follows:

Number:

A.B. (and others) Claimants/Applicants

C.D. (and others) Defendants/Respondents

(as appropriate)

**29.23**
At the top right hand corner of the first page (and on the backsheet) there should be clearly written:

    (1) the party on whose behalf it is made;

    (2) the initials and surname of the witness;

    (3) the number of the statement in relation to that witness;

    (4) the identifying initials and number of each exhibit referred to; and

    (5) the date the statement was made.

**Body Of Witness Statement**
**29.24**
The witness statement must, if practicable, be in the intended witness's own words, the statement should be expressed in the first person and should also state:

    (1) the full name of the witness;

    (2) his place of residence or, if he is making the statement in his professional, business or other occupational capacity, the address at which he works, the position he holds and the name of his firm or employer;

    (3) his occupation, or if he has none, his description; and

    (4) the fact that he is a party to the proceedings or is the employee of such a party if it be the case.

**29.25**
A witness statement must indicate:



(1) which of the statements in it are made from the witness's own knowledge and which are matters of information or belief; and

(2) the source for any matters of information or belief.

**29.26**
An exhibit used in conjunction with a witness statement should be verified and identified by the witness and remain separate from the witness statement.

**29.27**
Where a witness refers to an exhibit or exhibits, he should state "I refer to the (description of exhibit) marked '...'".

**29.28**
The provisions of Rules 29.85 to 29.98 (exhibits) apply similarly to witness statements as they do to affidavits.

**29.29**
Where a witness makes more than one witness statement to which there are exhibits, in the same proceedings, the numbering of the exhibits should run consecutively throughout and not start again with each witness statement.

**Format Of Witness Statement**
**29.30**
A witness statement should:

(1) be fully legible and should normally be typed on one side of the paper only;

(2) where possible, be bound securely in a manner which would not hamper filing, or otherwise each page should be endorsed with the case number and should bear the initials of the witness;

(3) have the pages numbered consecutively as a separate statement (or as one of several statements contained in a file);

(4) be divided into numbered paragraphs;

(5) have all numbers, including dates, expressed in figures; and

(6) give the reference to any document or documents mentioned either in the margin or in bold text in the body of the statement.

**29.31**
It is usually convenient for a witness statement to follow the chronological sequence of the events or matters dealt with, each paragraph of a witness statement should as far as possible be confined to a distinct portion of the subject.

**Statement Of Truth**
**29.32**



A witness statement is the equivalent of the oral evidence which that witness would, if called, give in evidence; it must include a statement by the intended witness that he believes the facts in it are true.

**29.33**
To verify a witness statement the statement of truth is as follows:

"I believe that the facts stated in this witness statement are true".

**29.34**
Attention is drawn to Section VI of this Part which sets out the consequences of verifying a witness statement containing a false statement without an honest belief in its truth.

**Alterations To Witness Statements**
**29.35**
Any alteration to a witness statement must be initialled by the person making the statement or by the authorised person where appropriate.

**29.36**
A witness statement which contains an alteration that has not been initialled may be used in evidence only with the permission of the Court.

**Filing Of Witness Statements**
**29.37**
If the Court directs that a witness statement is to be filed, it must be filed in the Registry.



**29.38**
Where the Court has directed that a witness statement in a language other than English is to be filed:

(1) the party wishing to rely on it must:

(a) have it translated; and

(b) file the witness statement in its original language with the Court; and

(2) the translator must make and file with the Court an affidavit verifying the translation and exhibiting both the translation and a copy of the witness statement in its original language.

**Requirement To Serve Witness Statements For Use At Trial**
**29.39**
The Court will order a party to serve on the other parties any witness statement of the oral evidence which the party serving the statement intends to rely on in relation to any issues of fact to be decided at the trial.

**29.40**
The Court may give directions as to:

(1) the order in which witness statements are to be served; and






(2) whether or not the witness statements are to be filed.

**Use At Trial Of Witness Statements Which Have Been Served**
**29.41**
If:

(1) a party has served a witness statement; and

(2) he wishes to rely at trial on the evidence of the witness who made the statement;

he must call the witness to give oral evidence unless the Court orders otherwise or he puts the statement in as hearsay evidence.

**29.42**
Where a witness is called to give oral evidence under **Rule 29.41**, his witness statement shall stand as his evidence in chief unless the Court orders otherwise.

**29.43**
In an appropriate case the trial Judge may direct that the whole or any part of a witness's evidence in chief is to be given orally. Any application for such an order should be made at the beginning of the trial.

**29.44**
A witness giving oral evidence at trial may with the permission of the Court:

(1) amplify his witness statement; and

(2) give evidence in relation to new matters which have arisen since the witness statement was served on the other parties.

**29.45**
The Court will give permission under **Rule 29.44** only if it considers that there is good reason not to confine the evidence of the witness to the contents of his witness statement.

**29.46**
A supplemental witness statement should normally be served where the witness proposes materially to add to, alter, correct or retract from what is in his original statement. Permission will be required for the service of a supplemental statement.

**29.47**
A party who has decided not to call to give oral evidence at trial a witness whose statement has been served must give prompt notice of this decision to all other parties. He must at the same time state whether he proposes to put the statement in as hearsay evidence.

**29.48**
If a party who has served a witness statement does not:

(1) call the witness to give evidence at trial; or

(2) put the witness statement in as hearsay evidence;

any other party may put the witness statement in as hearsay evidence.

**Cross–Examination On A Witness Statement**
**29.49**
Where a witness is called to give evidence at trial, he may be cross–examined on his witness statement, whether or not the statement or any part of it was referred to during the witness's evidence in chief.

**Witness Summaries**
**29.50**
A party who:

(1) is required to serve a witness statement for use at trial; but

(2) is unable to obtain one, may apply, without notice, for permission to serve a witness summary instead.

**29.51**
A witness summary is a summary of:

(1) the evidence, if known, which would otherwise be included in a witness statement; or

(2) if the evidence is not known, the matters about which the party serving the witness summary proposes to question the witness.

**29.52**
Unless the Court orders otherwise, a witness summary must include the name and address of the intended witness.

**29.53**
Unless the Court orders otherwise, a witness summary must be served within the period in which a witness statement would have had to be served.

**29.54**
Where a party serves a witness summary, so far as practicable the provisions of this section of this Part with regard to the form of witness statement and **Rules 29.39** and **29.40** (requirement to serve witness statements for use at trial) and **29.44** (amplifying witness statements) shall apply to the summary.

**Consequence Of Failure To Serve Witness Statement Or Summary**
**29.55**
If a witness statement or a witness summary for use at trial is not served in respect of an intended witness within the time specified by the Court, then the witness may not be called to give oral evidence unless the Court gives permission.

**Evidence In Proceedings Other Than At Trial**
**29.56**



Subject to Rule 29.57, the general rule is that evidence at hearings other than the trial is to be by witness statement unless the Court, a Practice Direction or any other enactment requires otherwise.

**29.57**
At hearings other than the trial, a party may, rely on the matters set out in:

(1) his statement of case; or

(2) his application notice;

if the statement of case or application notice is verified by a statement of truth.

**Order For Cross-Examination**
**29.58**
Where, at a hearing other than the trial, evidence is given in writing, any party may apply to the Court for permission to cross-examine the person giving the evidence.

**29.59**
If the Court gives permission under Rule 29.58 but the person in question does not attend as required by the order, his evidence may not be used unless the Court gives permission.

**Use Of Witness Statements For Other Purposes**
**29.60**

A witness statement may be used only for the purpose of the proceedings in which it is served unless:

(1) the witness gives consent in writing to some other use of it;

(2) the Court gives permission for some other use; or

(3) the witness statement has been put in evidence at a hearing held in public.

**Availability Of Witness Statements For Inspection**
**29.61**
A witness statement which stands as evidence in chief is open to inspection during the course of the trial unless the Court otherwise directs.

**29.62**
Any person may ask for a direction that a witness statement is not open to inspection.

**29.63**
The Court will not make a direction under Rule 29.62 unless it is satisfied that a witness statement should not be open to inspection because of:

(1) the interests of justice;

(2) the public interest;

(3) the nature of any expert evidence in the statement; or





(4) the nature of any confidential information in the statement.

**29.64**
The Court may exclude from inspection words or passages in the statement.

**Certificate Of Court Officer**
**29.65**
Where the Court has ordered that a witness statement is not to be open to inspection by the public or that words or passages in the statement are not to be open to inspection, a Court Officer will so certify on the statement and make any deletions directed by the Court under **Rule 29.64.**

**III AFFIDAVIT EVIDENCE**
**29.66**
Evidence must be given by affidavit instead of or in addition to a witness statement if this is required by the Court, a provision contained in any other Rule, a Practice Direction or any other enactment.

**29.67**
Nothing in these Rules prevents a witness giving evidence by affidavit at a hearing other than the trial if he chooses to do so in a case where **Rule 29.66** does not apply, but the party putting forward the affidavit may not recover the additional cost of making it from any other party unless the Court orders otherwise.

**Deponent**
**29.68**
A deponent is a person who gives evidence by affidavit or affirmation.

**Heading**
**29.69**
The affidavit should be headed with the title of the proceedings; where the proceedings are between several parties with the same status it is sufficient to identify the parties as follows:

Number:

A.B. (and others) Claimants/Applicants

C.D. (and others) Defendants/Respondents

(as appropriate)

**29.70**
At the top right hand corner of the first page (and on the backsheet) there should be clearly written:

(1) the party on whose behalf it is made;

(2) the initials and surname of the deponent;

(3) the number of the affidavit in relation to that deponent;



(4) the identifying initials and number of each exhibit referred to; and

(5) the date sworn.

**Body Of Affidavit**
**29.71**
The affidavit must, if practicable, be in the deponent's own words, the affidavit should be expressed in the first person and the deponent should:

   (1) Commence 'I (full name) of (address) state on oath ......';

   (2) if giving evidence in his professional, business or other occupational capacity, give the address at which he works in (1) above, the position he holds and the name of his firm or employer;

   (3) give his occupation or, if he has none, his description; and

   (4) state if he is a party to the proceedings or employed by a party to the proceedings, if it be the case.

**29.72**
An affidavit must indicate:

   (1) which of the statements in it are made from the deponent's own knowledge and which are matters of information or belief; and

   (2) the source for any matters of information or belief.

**29.73**
Where a deponent:

   (1) refers to an exhibit or exhibits, he should state 'there is now shown to me marked '...' the (description of exhibit)', and

   (2) makes more than one affidavit (to which there are exhibits) in the same proceedings, the numbering of the exhibits should run consecutively throughout and not start again with each affidavit.

**Jurat**
**29.74**
The jurat of an affidavit is a statement set out at the end of the document which authenticates the affidavit. The general form of jurat is set out in the Schedule to this Part.

**29.75**
It must:

   (1) be signed by all deponents;

   (2) be completed and signed by the person before whom the affidavit was sworn whose name and qualification must be printed beneath his signature;



(3) contain the full address of the person before whom the affidavit was sworn; and

(4) follow immediately on from the text and not be put on a separate page.

**Format Of Affidavits**
**29.76**
An affidavit should:

(1) be produced on A4 paper;

(2) be fully legible and should normally be typed on one side of the paper only;

(3) where possible, be bound securely in a manner which would not hamper filing, or otherwise each page should be endorsed with the case number and should bear the initials of the deponent and of the person before whom it was sworn;

(4) have the pages numbered consecutively as a separate document (or as one of several documents contained in a file);

(5) be divided into numbered paragraphs;

(6) have all numbers, including dates, expressed in figures; and



(7) give the reference to any document or documents mentioned either in the margin or in bold text in the body of the affidavit.

**29.77**
It is usually convenient for an affidavit to follow the chronological sequence of events or matters dealt with; each paragraph of an affidavit should as far as possible be confined to a distinct portion of the subject.

**Inability Of Deponent To Read Or Sign Affidavit**
**29.78**
Where an affidavit is sworn by a person who is unable to read or sign it, the person before whom the affidavit is sworn must certify in the jurat that:

(1) he read the affidavit to the deponent;

(2) the deponent appeared to understand it; and

(3) the deponent signed or made his mark in his presence.

**29.79**
If that certificate is not included in the jurat, the affidavit may not be used in evidence unless the Court is satisfied that it was read to the deponent and that it appeared to understand it. Two versions of the form of jurat with the certificate are set out in the Schedule to this Part.

**Alterations To Affidavits**
**29.80**



Any alteration to an affidavit must be initialled by both the deponent and the person before whom the affidavit was sworn.

**29.81**
An affidavit which contains an alteration that has not been initialled may be filed or used in evidence only with the permission of the Court.

**Who May Administer Oaths And Take Affidavits**
**29.82**
Only the following may administer oaths and take affidavits:

(1) a Judge or the Registrar;

(2) a person registered in the DIFC Court's Register of Legal Practitioners;

(3) any person authorised to administer oaths in the UAE; or

(4) any other person authorised to administer an oath in the jurisdiction in which the affidavit is sworn.

**Filing Of Affidavits**
**29.83**
If the Court directs that an affidavit is to be filed, it must be filed in the Registry.

**29.84**
Where an affidavit is in a language other than English:

(1) the party wishing to rely on it:

(a) must have it translated; and

(b) must file the affidavit in its original language with the Court; and

(2) the translator must make and file with the Court an affidavit verifying the translation and exhibiting both the translation and a copy of the affidavit in its original language.

**Exhibits**
**Manner of Exhibiting Documents**
**29.85**
A document used in conjunction with an affidavit should be:

(1) produced to and verified by the deponent, and remain separate from the affidavit; and

(2) identified by a declaration of the person before whom the affidavit was sworn.

**29.86**
The declaration should be headed with the name of the proceedings in the same way as the affidavit.

**29.87**
The first page of each exhibit should be marked:

(1) as in **Rule 29.70** above; and

(2) with the exhibit mark referred to in the affidavit.

**Letters**
**29.88**
Copies of individual letters should be collected together and exhibited in a bundle or bundles. They should be arranged in chronological order with the earliest at the top, and firmly secured.

**29.89**
When a bundle of correspondence is exhibited, the exhibit should have a front page attached stating that the bundle consists of original letters and copies. They should be arranged and secured as above and numbered consecutively.

**Other documents**
**29.90**
Photocopies instead of original documents may be exhibited provided the originals are made available for inspection by the other parties before the hearing and by the Judge at the hearing.

**29.91**
Court documents must not be exhibited (official copies of such documents prove themselves).

**29.92**
Where an exhibit contains more than one document, a front page should be attached setting out a list of the documents contained in the exhibit; the list should contain the dates of the documents.

**Exhibits Other Than Documents**
**29.93**
Items other than documents should be clearly marked with an exhibit number or letter in such a manner that the mark cannot become detached from the exhibit.

**29.94**
Small items may be placed in a container and the container appropriately marked.

**General Provisions**
**29.95**
Where an exhibit contains more than one document:

(1) the bundle should not be stapled but should be securely fastened in a way that does not hinder the reading of the documents; and
(2) the pages should be numbered consecutively at bottom centre.

**29.96**
Every page of an exhibit should be clearly legible; typed copies of illegible documents

should be included, paginated with 'a' numbers.

**29.97**
Where affidavits and exhibits have become numerous, they should be put into separate bundles and the pages numbered consecutively throughout.

**29.98**
Where on account of their bulk the service of exhibits or copies of exhibits on the other parties would be difficult or impracticable, the directions of the Court should be sought as to arrangements for bringing the exhibits to the attention of the other parties and as to their custody pending trial.

**Affirmations**
**29.99**
All provisions in these Rules relating to affidavits apply to affirmations with the following exceptions:

(1) the deponent should commence 'I (name) of (address) do solemnly and sincerely affirm .....', and

(2) in the jurat the word 'sworn' is replaced by the word 'affirmed'.

**Affidavit Made Outside The DIFC**
**29.100**
A person may make an affidavit outside the DIFC in accordance with:

(1) this Part; or

(2) the law of the place where he makes the affidavit.

**IV HEARSAY EVIDENCE**
**Introductory**
**29.101**
In this Part:

(1) 'hearsay' means a statement made, otherwise than by a person while giving oral evidence in proceedings, which is tendered as evidence of the matters stated; and

(2) references to hearsay include hearsay of whatever degree.

**Notice Of Intention To Rely On Hearsay Evidence**
**29.102**
Where a party intends to rely on hearsay evidence at trial and either:

(1) that evidence is to be given by a witness giving oral evidence; or

(2) that evidence is contained in a witness statement of a person who is not being called to give oral evidence;

that party will be deemed to give notice of such an intention by serving a witness statement on the other parties in accordance with the Court's order.



**29.103**

Where Rule 29.102(2) applies, the party intending to rely on the hearsay evidence must, when he serves the witness statement:

(1) inform the other parties that the witness is not being called to give oral evidence; and

(2) give the reason why the witness will not be called.

**29.104**

In all other cases where a party intends to rely on hearsay evidence at trial, that party must serve a notice on the other parties which:

(1) identifies the hearsay evidence;

(2) states that the party serving the notice proposes to rely on the hearsay evidence at trial; and

(3) gives the reason why the witness will not be called.

**29.105**

The party proposing to rely on the hearsay evidence must:



(1) serve the notice no later than the latest date for serving witness statements; and

(2) if the hearsay evidence is to be in a document, supply a copy to any party who requests him to do so.

**Circumstances In Which Notice Of Intention To Rely On Hearsay Evidence Is Not Required**
**29.106**

The duty to give notice of intention to rely on hearsay evidence does not apply:

(1) to evidence at hearings other than trials;

(2) to an affidavit or witness statement which is to be used at trial but which does not contain hearsay evidence; or

(3) where the requirement is excluded by these Rules.

**Power To Call Witness For Cross-Examination On Hearsay Evidence**
**29.107**

Where a party:

(1) proposes to rely on hearsay evidence; and

(2) does not propose to call the person who made the original statement to give oral evidence;

the Court may, on the application of any other party, permit that party to call the maker of the statement to be cross-examined on the contents of the statement.






**29.108**

An application for permission to cross-examine under this rule must be made not more than 14 days after the day on which a notice of intention to rely on the hearsay evidence was served on the applicant.

**Credibility**
**29.109**

Where a party:

(1) proposes to rely on hearsay evidence; but

(2) does not propose to call the person who made the original statement to give oral evidence; and

(3) another party wishes to call evidence to attack the credibility of the person who made the statement;

the party who so wishes must give notice of his intention to the party who proposes to give the hearsay statement in evidence.

**29.110**

A party must give notice under Rule 29.109 not more than 14 days after the day on which a hearsay notice relating to the hearsay evidence was served on him.



**V MISCELLANEOUS RULES ABOUT EVIDENCE**
**Notice To Admit Facts**
**29.111**

A party may serve notice on another party requiring him to admit the facts, or the part of the case of the serving party, specified in the notice.



**29.112**

A notice to admit facts must be served no later than 21 days before the trial.

**29.113**

Where the other party makes any admission in response to the notice, the admission may be used against him only:

(1) in the proceedings in which the notice to admit is served; and

(2) by the party who served the notice.

**29.114**

The Court may allow a party to amend or withdraw any admission made by him on such terms as it thinks just.

**Notice To Admit Or Produce Documents**
**29.115**






A party shall be deemed to admit the authenticity of a document produced to him under Part 28 (production of documents) unless he serves notice that he wishes the document to be proved at trial.

**29.116**
A notice to prove a document must be served:

(1) by the latest date for serving witness statements; or

(2) within 7 days of production of the document, whichever is later.

**Notarial Acts And Instruments**
**29.117**
A notarial act or instrument may be received in evidence without further proof as duly authenticated in accordance with the requirements of law unless the contrary is proved.

**Statements Of Case**
**29.118**
A statement of case may be used as evidence in an interim application provided it is verified by a statement of truth.

**29.119**
To verify a statement of case the statement of truth should be set out as follows:

"[I believe][the (party on whose behalf the statement of case is being signed) believes] that the facts stated in the statement of case are true".

**29.120**
Attention is drawn to Section VI of this Part which sets out the consequences of verifying a witness statement containing a false statement without an honest belief in its truth.

**Agreed Bundles For Hearings**
**29.121**
The Court may give directions requiring the parties to use their best endeavours to agree a bundle or bundles of documents for use at any hearing.

**29.122**
All documents contained in bundles which have been agreed for use at a hearing shall be admissible at that hearing as evidence of their contents, unless:

(1) the Court orders otherwise; or

(2) a party gives written notice of objection to the admissibility of particular documents.

**Use Of Plans, Photographs And Models As Evidence**
**29.123**






Rules 29.124 to 29.130 apply to evidence (such as a plan, photograph or model) which is not:

    (1) contained in a witness statement, affidavit or expert's report;

    (2) to be given orally at trial; or

    (3) evidence of which prior notice must be given under Rules 29.102 to 29.105.

**29.124**

The evidence referred to in Rule 29.123 includes documents which may be received in evidence without further proof being documents shown to form part of the records of a business or public authority.

**29.125**

Unless the Court orders otherwise the evidence shall not be receivable at a trial unless the party intending to put it in evidence has given notice to the other parties in accordance with Rules 29.126 to 29.130.

**29.126**

Where the party intends to use the evidence as evidence of any fact then, except where Rule 29.128 applies, he must give notice not later than the latest date for serving witness statements.

**29.127**

He must give notice at least 21 days before the hearing at which he proposes to put in the evidence, if:

    (1) there are not to be witness statements; or

    (2) he intends to put in the evidence solely in order to disprove an allegation made in a witness statement.

**29.128**

Where the evidence forms part of expert evidence, he must give notice when the expert's report is served on the other party.

**29.129**

Where the evidence is being produced to the Court for any reason other than as part of factual or expert evidence, he must give notice at least 21 days before the hearing at which he proposes to put in the evidence.

**29.130**

Where a party has given notice that he intends to put in the evidence, he must give every other party an opportunity to inspect it and to agree to its admission without further proof.

**Evidence Of Finding On Question Of Non-DIFC Law**
**29.131**



Rules 29.133 to 29.135 set out the procedure which must be followed by a party who intends to put in evidence a finding on a question of non–DIFC law.

**Procedure for evidence on non-DIFC Law**

**29.1.131**

The definition of "Non-DIFC law" (set out in RDC 29.132) received consideration in *Fidel v (1) Felecia (2) Faraz* [2015] DIFC CA 002, in the context of considering how questions of non-DIFC UAE law should be approached. It was held, however, that the DIFC Court should adopt the approach of accepting all submissions on non-DIFC law as part of legal submissions, as is usually done in international arbitration with regards to issues of any national law – the "International Approach": [72]. This marks a departure from the *"English approach"* (requiring issues of foreign law to proved as fact) and the *"Taaleem approach"* (where the approach to be adopted depended on the DIFC's judge's UAE law training, following *Taaleem PJSC v (1) National Bonds Corporation PJSC (2) Deyaar Development PJSC* [2010] CFI 014 (12 May 2013) at [3]-[10]).

The International Approach is, however, a starting point. Expert opinions are not prohibited. The trial judge always has a direction to proceed in the manner which he considers most beneficial for his education – in a system of law with which he is not confidently familiar. The approach that may be adopted is flexible: [73].

**29.132**

"Non–DIFC law" means any law other than—

(1) DIFC law or any other law in force in the DIFC;

(2) the law of any jurisdiction other than that of the DIFC expressly chosen by any DIFC Law;

(3) the laws of a jurisdiction as agreed between all the relevant persons concerned in the matter;

(4) the laws of any jurisdiction which appear to the Court to be the one most closely related to the facts of and the persons concerned in the matter; and

(5) the laws of England and Wales.

**29.133**

He must give any other party notice of his intention.

**29.134**

He must give the notice:

(1) if there are to be witness statements, not later than the latest date for serving them; or

(2) otherwise, not less than 21 days before the hearing at which he proposes to put the finding in evidence.

**29.135**

The notice must:



(1) specify the question on which the finding was made; and

(2) enclose a copy of a document where it is reported or recorded.

**Evidence Of Consent Of Trustee To Act**
**29.136**
A document purporting to contain the written consent of a person to act as trustee and to bear his signature verified by some other person is evidence of such consent.

**VI FALSE STATEMENTS**
**29.137**
Proceedings for contempt of court may be brought against a person if he makes, or causes to be made, a false statement in a document verified by a statement of truth without an honest belief in its truth.

**29.138**
Proceedings under **Rule 29.137** may be brought only with the permission of the Court.

**Penalty**
**29.139**
Where a party alleges that a statement of truth or a Disclosure Statement is false the party shall refer that allegation to the Court dealing with the claim in which the statement of truth or disclosure statement has been made.



**29.140**
The Court may:

(1) exercise any of its powers under these Rules;

(2) initiate steps to consider if there is a contempt of court and, where there is, to punish it; and/or

(3) refer the matter to the Attorney General of Dubai.

**29.141**
Where a party makes an application to the Court for permission for that party to commence proceedings for contempt of court, it must be supported by written evidence which:

(1) identifies the statement said to be false;

(2) explains:

(a) how it is false; and

(b) the basis on which it is contended the maker knew it to be false at the time he made it; and

(c) explains why contempt proceedings would be appropriate in the light of the overriding objective in Part 1 of these Rules.





SCHEDULE
General Form Of Jurat
Sworn [affirmed] at ……………………………………}
……………………………………………………………}
on ………………………………… 20 …………………
on ………………………………… 20 …………………
before me …………………………………………………}

(Notary Public/

An Officer of the Court appointed to take affidavits)

Certificate to be used where a deponent to an affidavit is unable to read or sign it

Sworn at …… on …… Before me, I having first read over the contents of this affidavit to the deponent [if there are exhibits, add 'and explained the nature and effect of the exhibits referred to in it'] who appeared to understand it and approved its content as accurate, and made his mark on the affidavit in my presence.

Or; (after, Before me) the witness to the mark of the deponent having been first sworn that he had read over etc. (as above) and that he saw him make his mark on the affidavit. (Witness must sign).



Certificate to be used where a deponent to an affirmation is unable to read or sign it

Affirmed at …… on …… Before me, I having first read over the contents of this affirmation to the deponent [if there are exhibits, add' and explained the nature and effect of the exhibits referred to in it'] who appeared to understand it and approved its content as accurate, and made his mark on the affirmation in my presence.

Or, (after, Before me) the witness to the mark of the deponent having been first sworn that he had read over etc. (as above) and that he saw him make his mark on the affirmation. (Witness must sign).

# PART 30
WITNESSES, DEPOSITIONS AND EVIDENCE FOR OTHER COURTS

**WITNESSES AND DEPOSITIONS**
**Scope Of This Section**
**30.1**
This Section of this Part provides:

    (1) for the circumstances in which a person may be required to attend Court or a tribunal to give evidence or to produce a document; and

    (2) for a party to obtain evidence before a hearing to be used at the hearing.





**30.2**
In this Section, reference to a hearing includes a reference to the trial.

**Witness Summonses**
**30.3**
A witness summons is a document issued by the Court requiring a witness to:

(1) attend the Court or a tribunal to give evidence; or

(2) produce documents to the Court or a tribunal.

**30.4**
A witness summons must be in Form P30/01.

**30.5**
There must be a separate witness summons for each witness.

**30.6**
A witness summons may require a witness to produce documents to the Court or a tribunal either:

(1) on the date fixed for a hearing; or

(2) on such date as the Court may direct.



**30.7**
The only documents that a summons under **Rule 30.3(2)** can require a person to produce before a hearing are documents which that person could be required to produce at the hearing.

**Issue Of A Witness Summons**
**30.8**
A witness summons is issued on the date entered on the summons by the Court.

**30.9**
Two copies of the witness summons should be filed with the Court for sealing, one of which will be retained on the Court file.

**30.10**
A mistake in the name or address of a person named in a witness summons may be corrected if the summons has not been served.

**30.11**
The corrected summons must be re-sealed by the Court and marked 'Amended and Re-Sealed'.

**30.12**
A party must obtain permission from the Court where he wishes to:

(1) have a summons issued less than 7 days before the date of the hearing;





(2) have a summons issued for a witness to attend the Court or a tribunal to give evidence or to produce documents on any date except the date fixed for the hearing; or

(3) have a summons issued for a witness to attend the Court or tribunal to give evidence or to produce documents at any hearing except the trial.

**30.13**
In Rule 30.12(3) 'trial' includes a hearing before a tribunal which is intended to dispose of the matter before it.

**30.14**
The Court may set aside or vary a witness summons issued under this Rule 30.8.

**Witness Summons In Aid Of Tribunal**
**30.15**
The Court may issue a witness summons in aid of a tribunal.

**30.16**
The Court may set aside a witness summons issued under Rule 30.15.

**30.17**
Unless the Court otherwise directs, the applicant must give at least 2 days' notice of the application to the party who issued the witness summons, which will normally be dealt with at a hearing.



**30.18**
In Rule 30.15, 'tribunal' means any tribunal that does not have power to issue a witness summons in relation to proceedings before it.



**Time For Serving A Witness Summons**
**30.19**
The general rule is that a witness summons is binding if it is served at least 7 days before the date on which the witness is required to attend before the Court or tribunal.

**30.20**
The Court may direct that a witness summons shall be binding even though it will be served less than 7 days before the date on which the witness is required to attend before the Court or tribunal.

**30.21**
A witness summons which is:

(1) served in accordance with this Rule 30.19 or 30.20; and

(2) requires the witness to attend before the Court or a tribunal to give evidence;

is binding until the conclusion of the hearing at which the attendance of the witness is required.

**Who Is To Serve A Witness Summons**
**30.22**



A witness summons is to be served by the Court unless the party on whose behalf it is issued indicates in writing, when he asks the Court to issue the summons, that he wishes to serve it himself.

**30.23**
Where the Court is to serve the witness summons, the party on whose behalf it is issued must deposit, in the Court office, the money to be paid or offered to the witness under Rule 30.24.

**Right Of Witness To Travelling Expenses And Compensation For Loss Of Time**
**30.24**
At the time of service of a witness summons the witness must be offered or paid:

(1) a sum reasonably sufficient to cover his expenses in travelling to and from the Court; and

(2) such sum by way of compensation for loss of time as may be specified in the relevant Practice Direction.

**Evidence By Deposition**
**30.25**
A party may apply for an order for a person to be examined before the hearing takes place.

**30.26**
A person from whom evidence is to be obtained following an order under Rule 30.25 is referred to as a 'deponent' and the evidence is referred to as a 'deposition'.

**30.27**
An order under Rule 30.25 shall be for a deponent to be examined on oath before:

(1) a Judge;

(2) an examiner of the Court; or

(3) such other person as the Court appoints.

**30.28**
The order may require the production of any document which the Court considers is necessary for the purposes of the examination.

**30.29**
The order must state the date, time and place of the examination.

**30.30**
At the time of service of the order the deponent must be offered or paid:

(1) a sum reasonably sufficient to cover his expenses in travelling to and from the place of examination; and

(2) such sum by way of compensation for loss of time as may be specified in the relevant Practice Direction.



**30.31**
Where the Court makes an order for a deposition to be taken, it may also order the party who obtained the order to serve a witness statement or witness summary in relation to the evidence to be given by the person to be examined.

**Conduct Of Examination**
**30.32**
Subject to any directions contained in the order for examination, the examination must be conducted in the same way as if the witness were giving evidence at a trial.

**30.33**
If all the parties are present, the examiner may conduct the examination of a person not named in the order for examination if all the parties and the person to be examined consent.

**30.34**
The examiner may conduct the examination in private if he considers it appropriate to do so.

**30.35**
The examiner must ensure that the evidence given by the witness is recorded in full:



(1) In ensuring that the deponent's evidence is recorded in full, the Court or the examiner may permit it to be recorded on audiotape or videotape, but the deposition must always be recorded in writing by him or by a competent shorthand writer or stenographer.

(2) If the deposition is not recorded word for word, it must contain, as nearly as may be, the statement of the deponent; the examiner may record word for word any particular questions and answers which appear to him to have special importance.

**30.36**
If a deponent objects to answering any question or where any objection is taken to any question, the examiner must:

(1) record in the deposition or a document attached to it:

(a) the question;

(b) the nature of and grounds for the objection; and

(c) any answer given; and

(2) give his opinion as to the validity of the objection and must record it in the deposition or a document attached to it.

**30.37**
The Court will decide as to the validity of the objection and any question of costs arising





from it.

**30.38**
Documents and exhibits must:

(1) have an identifying number or letter marked on them by the examiner; and

(2) be preserved by the party or his legal representative who obtained the order for the examination, or as the Court or the examiner may direct.

**30.39**
The examiner may put any question to the deponent as to:

(1) the meaning of any of his answers; or

(2) any matter arising in the course of the examination.

**30.40**
A deposition must:

(1) be signed by the examiner;

(2) have any amendments to it initialled by the examiner and the deponent; and

(3) be endorsed by the examiner with:



(a) a statement of the time occupied by the examination; and



(b) a record of any refusal by the deponent to sign the deposition and of his reasons for not doing so.

**30.41**
The examiner must send a copy of the deposition:

(1) to the person who obtained the order for the examination of the witness; and

(2) to the Court.

**30.42**
The party who obtained the order must send each of the other parties a copy of the deposition which he receives from the examiner.

**Enforcing Attendance Of Witness**
**30.43**
If a person served with an order to attend before an examiner:

(1) fails to attend; or

(2) refuses to be sworn for the purpose of the examination or to answer any lawful question or produce any document at the examination;

a certificate of his failure or refusal, signed by the examiner, must be filed by the party requiring the deposition. The examiner may include in his certificate any comment as to the conduct of the deponent or of any person attending the examination.

**30.44**

On the certificate being filed, the party requiring the deposition may apply to the Court for an order requiring that person to attend or to be sworn or to answer any question or produce any document, as the case may be.

**30.45**

An application for an order under **Rule 30.44** may be made without notice.

**30.46**

The Court will make such order on the application under **Rule 30.44** as it thinks fit including an order for the deponent to pay any costs resulting from his failure or refusal.

**30.47**

A deponent who wilfully refuses to obey an order made against him under this Section of this Part may be proceeded against for contempt of court.

**Use Of Deposition At A Hearing**

**30.48**

A deposition ordered under **Rule 30.25** may be given in evidence at a hearing unless the Court orders otherwise.

**30.49**

A party intending to put in evidence a deposition at a hearing must serve notice of his intention to do so on every other party.

**30.50**

He must serve the notice at least 21 days before the day fixed for the hearing.

**30.51**

The Court may require a deponent to attend the hearing and give evidence orally.

**30.52**

Where a deposition is given in evidence at trial, it shall be treated as if it were a witness statement for the purposes of **Rule 29.61** (availability of witness statements for inspection).

**Restrictions On Subsequent Use Of Deposition Taken For The Purpose Of Any Hearing Except The Trial**

**30.53**

Where the Court orders a party to be examined about his or any other assets for the purpose of any hearing except the trial, the deposition may be used only for the purpose of the proceedings in which the order was made.

**30.54**

However, it may be used for some other purpose:






(1) by the party who was examined;

(2) if the party who was examined agrees; or

(3) if the Court gives permission.

**30.55**
Where a party wishes to take a deposition from a person who is out of the DIFC, they should make an application by application notice in accordance with Part 23, accompanied by supporting evidence. The Registry will proceed to give directions as to the requisite procedure to be followed, depending on the jurisdiction in which the taking of evidence is being sought. Parties are put on notice that the taking of evidence abroad may not be feasible in all jurisdictions.

**Fees And Expenses Of Examiner Of The Court**
**30.56**
An examiner of the Court may charge a fee for the examination.

**30.57**
He need not send the deposition to the Court unless the fee is paid.

**30.58**
The examiner's fees and expenses must be paid by the party who obtained the order for examination.



**30.59**
If the fees and expenses due to an examiner are not paid within a reasonable time, he may report that fact to the Court.

**30.60**
The Court may order the party who obtained the order for examination to deposit in the Court office a specified sum in respect of the examiner's fees and, where it does so, the examiner will not be asked to act until the sum has been deposited.

**30.61**
An order under this **Rule 30.60** does not affect any decision as to the party who is ultimately to bear the costs of the examination.

**Examiners Of The Court**
**30.62**
The Chief Justice shall appoint persons to be examiners of the Court.

**30.63**
The persons appointed shall be practitioners with rights of audience before the Court who have been practising for a period of not less than three years.

**30.64**
The Chief Justice may revoke an appointment at any time.

**II EVIDENCE FOR OTHER COURTS**





**Scope**

**30.65**

Where an application is made to the Court for an order for evidence to be obtained in the DIFC and the Court is satisfied:

(1) that the application is made in pursuance of a request issued by or on behalf of a court or tribunal ("the requesting court") exercising jurisdiction in:

(a) Dubai; or

(b) in any other part of the UAE;

(c) or in a country or territory outside the UAE; and

(2) that the evidence to which the application relates is to be obtained for the purposes of proceedings which either have been instituted before the requesting court or whose institution before that court is contemplated;

the Court shall have the powers conferred on it by the following provisions of this Section of this Part.

**Power Of The Court To Give Effect To Application For Assistance**

**30.66**

The Court shall have the power, on an application under Rule 30.65, by order to make such provision for obtaining evidence in the DIFC as may appear to the Court to be appropriate for the purpose of giving effect to the request in pursuance of which the application is made; and any such order may require a person specified therein to take such steps as the Court may consider appropriate for that purpose.

**30.67**

Without prejudice to the generality of Rule 30.66 but subject to the provisions of this Rule, an order under Rule 30.66 may, in particular, make provision:

(1) for the examination of witnesses, either orally or in writing;

(2) for the production of documents;

(3) for the inspection, photographing, preservation, custody or detention of any property;

(4) for the taking of samples of any property and the carrying out of any experiments on or with any property;

(5) for the medical examination of any person; and/or

(6) without prejudice to sub-paragraph (5) above, for the taking and testing of samples of blood from any person.

**30.68**

An order under Rule 30.66 shall not require any particular steps to be taken unless






they are steps which can be required to be taken by way of obtaining evidence for the purposes of civil proceedings in the Court (whether or not proceedings of the same description as those to which the application for the order relates); but this Rule shall not preclude the making of an order requiring a person to give testimony (either orally or in writing) otherwise than on oath where this is asked for by the requesting court.

**30.69**
An order under Rule 30.66 shall not require a person:

(1) to state what documents relevant to the proceedings to which the application for the order relates are or have been in his possession, custody or power; or

(2) to produce any documents other than particular documents specified in the order as being documents appearing to the Court making the order to be, or likely to be, in his possession, custody or power.

**30.70**
A person who, by virtue of an order under Rule 30.66, is required to attend at any place shall be entitled to the like conduct money and payment for expenses and loss of time as on attendance as a witness in proceedings before the Court.

**Privilege Of Witnesses**
**30.71**
A person shall not be compelled by virtue of an order under Rule 30.66 to give any evidence which he could not be compelled to give:

(1) in civil proceedings in the DIFC; or

(2) subject to Rule 30.72, in civil proceedings in the country or territory in which the requesting court exercises jurisdiction.

**30.72**
Rule 30.71(2) shall not apply unless the claim of the person in question to be exempt from giving the evidence is either:

(1) supported by a statement contained in the request (whether it is so supported unconditionally or subject to conditions that are fulfilled); or

(2) conceded by the applicant for the order;

and where such a claim made by any person is not supported or conceded as aforesaid he may (subject to the other provisions of this Section of this Part) be required to give the evidence to which the claim relates but that evidence shall not be transmitted to the requesting court if that court, on the matter being referred to it, upholds the claim.

**30.73**
Without prejudice to 30.71, a person shall not be compelled by virtue of an order under Rule 30.66 to give any evidence if his doing so would be prejudicial to the security of the DIFC, Dubai or UAE; and a certificate signed by or on behalf of a responsible authority to the effect that it would be so prejudicial for that person to do so shall be conclusive

evidence of that fact.

**30.74**

In this Section of this Part references to giving evidence include references to answering any question and to producing any document and the reference in **Rule 30.72** to the transmission of evidence given by a person shall be construed accordingly.

**Application For Order**
**30.75**

An application for an order under **Rule 30.66** for evidence to be obtained:

(1) must be:

(a) supported by written evidence. The written evidence supporting an application must include or exhibit:

(i) a statement of the issues relevant to the proceedings;

(ii) a list of questions or the subject matter of questions to be put to the proposed deponent;

(iii) a draft order;

(iv) a translation of the documents in (i) and (ii) into English, if necessary; and

(b) accompanied by the request as a result of which the application is made, and where appropriate, a translation of the request into English; and

(2) may be made without notice.

**Service Of The Order**
**30.76**

The order for the deponent to attend and be examined together with the evidence upon which the order was made must be served on the deponent.

**30.77**

Attention is drawn to the provisions of **Rule 23.94** (application to vary or discharge an order made without notice).

**Examination**
**30.78**

The Court may order an examination to be taken before:

(1) any fit and proper person nominated by the person applying for the order;

(2) an examiner of the Court; or

(3) any other person whom the Court considers suitable.

**30.79**

Unless the Court orders otherwise:



(1) the examination will be taken as provided by **Rules 30.32** to **30.42**; and

(2) Rules **30.43** to **30.47** apply.

**30.80**
The Court may make an order under **Rule 30.60** for payment of the fees and expenses of the examination.

**Dealing With Deposition**
**30.81**
The examiner must send the deposition of the witness to the Registrar unless the Court orders otherwise.

**30.82**
The Registrar will:

(1) give a certificate sealed with the seal of the Court for use out of the DIFC identifying the following documents:

(a) the request;

(b) the order of the Court for examination; and

(c) the deposition of the witness; and



(2) send the certificate and the documents referred to in sub-paragraph (1) to the requesting court.

**Claim To Privilege**
**30.83**
Rules **30.84** to **30.89** apply where:

(1) a witness claims to be exempt from giving evidence on the ground specified in **Rule 30.79(2)**; and

(2) that claim is not supported or conceded as referred to in **Rule 30.80**.

**30.84**
The examiner may require the witness to give the evidence which he claims to be exempt from giving.

**30.85**
Where the examiner does not require the witness to give that evidence, the Court may order the witness to do so.

**30.86**
An application for an order under **Rule 30.85** may be made by the person who obtained the order under **Rule 30.66**.

**30.87**
Where such evidence is taken:






(1) it must be contained in a document separate from the remainder of the deposition;

(2) the examiner will send to the Registrar:

    (a) the deposition; and

    (b) a signed statement setting out the claim to be exempt and the ground on which it was made.

**30.88**
On receipt of the statement referred to **Rule 30.87(2)(b)**, the Registrar will:

(1) retain the document containing the part of the witness's evidence to which the claim to be exempt relates; and

(2) send the statement and a request to determine that claim to the requesting court or tribunal together with the documents referred to in **Rule 30.75**.

**30.89**
The Registrar will:

(1) if the claim to be exempt is rejected by the requesting court or tribunal, send the document referred to in **Rule 30.87(1)** to that court or tribunal;

(2) if the claim is upheld, send the document to the witness; and

(3) in either case, notify the witness and person who obtained the order under **Rule 30.66** of the requesting court or tribunal's decision.




## PART 31
EXPERTS AND ASSESSORS

**I EXPERTS**

**Introductory**
**31.1**
A reference to an 'expert' in this Section of this Part is a reference to an expert who has been instructed to give or prepare evidence for the purpose of court proceedings.

**31.2**
Parties are referred to the English "Protocol for the Instruction of Experts to give evidence in civil claims" which is reproduced at Schedule A to this Part as amended from time to time. Not all parts of the Protocol are applicable to litigation before the DIFC Court but the Protocol provides valuable practical guidance both to those who instruct experts and experts themselves as to what they are expected to do in civil and commercial proceedings before the Court. The Court will expect legal practitioners and experts to







have read the Protocol.

**Experts — Overriding Duty To The Court**
**31.3**
It is the duty of an expert to help the Court on the matters within his expertise.

**31.4**
This duty overrides any obligation to the person from whom he has received instructions or by whom he is paid.

**31.5**
Expert evidence should be the independent product of the expert uninfluenced by the pressures of litigation.

**31.6**
An expert should assist the Court by providing objective, unbiased opinion on matters within his expertise, and should not assume the role of an advocate.

**31.7**
An expert should consider all material facts, including those which might detract from his opinion.

**31.8**
An expert should make it clear:



    (1) when a question or issue falls outside his expertise; and

    (2) when he is not able to reach a definite opinion, for example because he has insufficient information.

**31.9**
If an expert's opinion is not properly researched because he considers that insufficient data is available, this must be stated in his report with an indication that the opinion is no more than a provisional one.

**31.10**
In a case where an expert witness who has prepared a report is unable to confirm that the report contains the truth, the whole truth and nothing but the truth without some qualification, that qualification must be stated in the report.

**31.11**
If, after producing a report, an expert changes his view on any material matter, such change of view should be communicated to all the parties without delay, and when appropriate to the Court (through the legal representatives of the party instructing the expert or directly to the Court in the case of a Court-appointed expert).

**Court's Power To Restrict Expert Evidence**
**31.12**



Expert evidence shall be restricted to that which is reasonably required to resolve the proceedings.

**31.13**
No party may call an expert or put in evidence an expert's report without the Court's permission.

**31.14**
Any application for permission to call an expert witness or serve an expert's report should normally be made at the Case Management Conference.

**31.15**
When a party applies for permission under **Rule 31.13** he must identify:

(1) the field in which he wishes to rely on expert evidence; and

(2) where practicable the expert in that field on whose evidence he wishes to rely.

**31.16**
If permission is granted under **Rule 31.13** shall be in relation only to the expert named or the field identified under **Rule 31.15**.

**31.17**
In appropriate cases the Court will direct that the reports of expert witnesses be exchanged sequentially rather than simultaneously. This is an issue that the Court will normally wish to consider at the Case Management Conference.

**31.18**
The Court may limit the amount of the expert's fees and expenses that the party who wishes to rely on the expert may recover from any other party.

**Orders**
**31.19**
Where an order requires an act to be done by an expert, or otherwise affects an expert, the party instructing that expert must serve a copy of the order on the expert instructed by him.

**General Requirement For Expert Evidence To Be Given In A Written Report**
**31.20**
Expert evidence is to be given in a written report unless the Court directs otherwise.

**Documents Referred To In Experts' Reports**
**31.21**
Unless they have already been provided, copies of any photographs, plans, analyses, measurements, survey reports or other similar documents relied on by an expert witness as well as copies of any unpublished sources must be provided to all parties at the same time as his report.

**31.22**
Rules **28.7** to **28.9** provide that (subject to **Rule 31.53**) a party may inspect a document



mentioned in an expert's report. An expert's report will frequently list all or many of the relevant previous papers (published or unpublished) or books written by the expert or to which the expert has contributed. Requiring inspection of this material may often be unrealistic, and the collating and copying burden could be considerable.

**31.23**
A party wishing to inspect a document in an expert report should (failing agreement) make an application to the Court. The Court will not permit inspection unless it is satisfied that it is necessary for the just disposal of the case and that the document is not reasonably available to the party making the application from an alternative source.

**Written Questions To Experts**
**31.24**
A party may put to:

    (1) an expert instructed by another party; or

    (2) a Court-appointed expert appointed under **Rule 31.29**;

written questions about his report.

**31.25**
Written questions under **Rule 31.24**:



    (1) may be put once only;

    (2) must be put within 28 days of service of the expert's report; and

    (3) must be for the purpose only of clarification of the report;

unless:

      (a) the Court gives permission; or

      (b) the party who has instructed the expert agrees.

**31.26**
In cases where questions that are oppressive in number or content are put, or questions are put for any purpose other than clarification of the report, the Court will disallow the questions and make an appropriate order for costs against the party putting them.

**31.27**
An expert's answers to questions put in accordance with **Rule 31.24** shall be treated as part of the expert's report.

**31.28**
Where:





(1) a party has put a written question to an expert instructed by another party in accordance with **Rule 31.24**; and

(2) the expert does not answer that question;

the Court may make one or both of the following orders in relation to the party who instructed the expert:

(a) that the party may not rely on the evidence of that expert; or

(b) that the party may not recover the fees and expenses of that expert from any other party.

**Court–Appointed Expert**
**31.29**
The Court may appoint one or more independent experts to report to it on specific issues designated by the Court.

**31.30**
Not less than 21 days before making any such appointment, the Court will notify each party in writing of the name of the proposed expert, of the matter in respect of which the opinion of the expert will be sought and of the qualifications of the expert to give that opinion.



**31.31**
The Court shall establish the terms of reference for any Court–appointed expert report. A copy of the final terms of reference shall be sent by the Court to the parties.

**31.32**
The Court–appointed expert shall, before accepting appointment, submit to the Court and to the parties a statement of his independence from the parties and the Court. Within 7 days of receipt of the statement the parties shall inform the Court whether they have any objections to the Court-appointed expert's independence.

**31.33**
Any such objection must be made in writing and filed with the Court and will be taken into account by the Court in deciding whether or not to make the appointment.

**31.34**
The Court-appointed expert may request a party to provide any relevant and material information or to provide access to any relevant documents, goods, samples, property or site for inspection, examination or experiment.

**31.35**
If a party objects to a request made under **Rule 31.34** the Court shall, at the request of the Court appointed–expert or the party determine the validity of the objection and may direct the party to comply with the request.

**31.36**
The Court may give directions about any inspection, examination or experiments





under **Rule 31.34** which the Court appointed–expert wishes to carry out.

**31.37**

The Court appointed–expert shall record in his report any non-compliance by a party with a request under **Rule 31.34** or direction by the Court and shall describe its effects on the determination of the specific issue.

**31.38**

A party shall have the right to receive any information and to attend any inspection provided in compliance with a request made under **Rule 31.34**.

**31.39**

A party may examine any document that the Court–appointed expert has examined and any correspondence between the Court and the Court-appointed expert.

**31.40**

The Court-appointed expert shall report in writing to the Court. The Court–appointed expert shall describe in the report the method, evidence and information used in arriving at the conclusions.

**31.41**

The Court shall send a copy of such expert report to the parties.

**31.42**

Within 28 days of receipt of the Court-appointed expert's report, any party may respond to the report in a submission by the party or through an expert report. The party must serve the submission or expert report on the Court, the Court-appointed expert and the other parties.

**31.43**

Any party may use a Court-appointed expert's report as evidence at the trial.

**31.44**

The Court may direct that the Court-appointed expert attend any hearing. The Court may question the Court-appointed expert, and he may be questioned by the parties.

**31.45**

The Court may give any expert report made by a Court-appointed expert and its conclusions such weight as it considers appropriate.

**31.46**

The Court may order that any party shall be responsible for part or all of the fees and expenses of a Court-appointed expert, including:

(1) directing any party to pay an amount into Court; and

(2) making payment to the expert on account to be revised on final judgment.

**31.47**

Unless the Court otherwise directs, the parties are jointly and severally liable for the



payment of the Court–appointed expert's fees and expenses.

**Concurrent Expert Evidence**
**31.48**

(1) This Rule does not affect the provisions set out in the rest of this Part.

(2) If it considers it appropriate in the circumstances of the case, the Court may give directions that expert witnesses engaged by opposing parties be sworn and present their evidence concurrently as a panel.

(3) Where the expert witnesses testify as a panel, unless the Court orders otherwise:

(a) each expert may, with the permission of the Court, give a short opening statement not exceeding 10 minutes (or such longer period as may be allowed by the Court) to introduce his report,

(b) each expert will thereafter be subject to questioning by the Court and Counsel, and the Court may direct that the expert witnesses may be questioned in any sequence that the Court thinks fit before or after they have testified as a panel.

(c) The expert witnesses may also be directed by the Court and Counsel to comment on the views of the other expert witnesses on the panel, and may also, with the permission of the Court, make a short concluding statement not exceeding 10 minutes (or such longer period as may be allowed by the Court).

(4) The Court may give any other directions as to the giving of concurrent expert evidence as it thinks fit.

**Power Of Court To Direct A Party To Provide Information**
**31.49**
Where a party has access to information which is not reasonably available to the other party, the Court may direct the party who has access to the information to:

(1) prepare and file a document recording the information; and

(2) serve a copy of that document on the other party.

**31.50**
The document served must include sufficient details of all the facts, tests, experiments and assumptions which underlie any part of the information to enable the party on whom it is served to make, or to obtain, a proper interpretation of the information and an assessment of its significance.

**Contents Of Report**
**31.51**

An expert's report must comply with the requirements set out in Rules 31.52 to 31.56.

**31.52**
An expert's report should be addressed to the Court and not to the party from whom the expert has received his instructions.

**31.53**
The expert's report must state the substance of all material instructions, whether written or oral, on the basis of which the report was written.

**31.54**
The instructions referred to in **Rule 31.53** shall not be privileged against production but the Court will not, in relation to those instructions:

    (1) order production of any specific document; or

    (2) permit any questioning in Court, other than by the party who instructed the expert;

unless it is satisfied that there are reasonable grounds to consider the statement of instructions given under **Rule 31.53** to be inaccurate or incomplete (or unless the party who gave the instructions consents to it). If the Court is so satisfied, it will allow the cross–examination where it appears to be in the interests of justice to do so.

**31.55**
An expert's report must:

    (1) give details of the expert's qualifications;

    (2) give details of any literature or other material which the expert has relied on in making the report;

    (3) contain a statement setting out the substance of all facts and instructions given to the expert which are material to the opinions expressed in the report or upon which those opinions are based;

    (4) state clearly if a stated assumption is, in the opinion of the expert witness, unreasonable or unlikely;

    (5) make clear which of the facts stated in the report are within the expert's own direct knowledge;

    (6) say who carried out any examination, measurement, test or experiment which the expert has used for the report, give the qualifications of that person, and say whether or not the test or experiment has been carried out under the expert's supervision;

    (7) where there is a range of opinion on the matters dealt with in the report:

        (a) summarise the range of opinion; and



(b) give reasons for his own opinion;

(8) contain a summary of the conclusions reached;

(9) if the expert is not able to give his opinion without qualification, state the qualification; and

(10) contain a statement that the expert understands his duty to the Court, and has complied and will continue to comply with that duty.

**31.56**
An expert's report must be verified by a statement of truth as well as containing the statements required in Rules 31.55(9) and 31.56(10) above. The form of the statement of truth is as follows:

"I confirm that insofar as the facts stated in my report are within my own knowledge I have made clear which they are and I believe them to be true, and that the opinions I have expressed represent my true and complete professional opinion."

(Attention is drawn to Section VI of Part 29 which sets out the consequences of verifying a document containing a false statement without an honest belief in its truth).

**Use By One Party Of Expert's Report Produced By Another**
**31.57**
Where a party has produced an expert's report, any party may use that expert's report as evidence at the trial.

**Discussions Between Experts**
**31.58**
The Court will normally direct a meeting or meetings of expert witnesses (including any Court–appointed expert) before trial. Sometimes it may be useful for there to be further meetings during the trial itself. The Court may, at any stage, direct a discussion between experts for the purpose of requiring the experts to:

(1) identify and discuss the expert issues in the proceedings; and

(2) decide, with the benefit of that discussion, on which expert issues they share or can come to share the same expert opinion and on which expert issues there remains a difference of expert opinion between them (and what that difference is).

**31.59**
The Court may specify the issues which the experts must discuss.

**31.60**
Subject to any directions of the Court, the procedure to be adopted at a meeting of experts is a matter for the experts themselves, not the parties or their legal representatives.

**31.61**
Neither the parties nor their legal representatives should seek to restrict the freedom





of experts to identify and acknowledge the expert issues on which they agree at, or following further consideration after, meetings of experts.

**31.62**
The content of the discussion between the experts shall not be referred to at the trial unless the parties agree.

**31.63**
Unless the Court orders otherwise, at or following any meeting, the experts should prepare a joint memorandum for the Court recording:

(1) the fact that they have met and discussed the expert issues;

(2) the issues on which they agree;

(3) the issues on which they disagree; and

(4) a brief summary of the reasons for their disagreement.

**31.64**
Where experts reach agreement on an issue during their discussions, the agreement shall not bind the parties unless the parties expressly agree to be bound by the agreement.

**Consequence Of Failure To Produce Expert's Report**
**31.65**
A party who fails to produce an expert's report may not use the report at the trial or call the expert to give evidence orally unless the Court gives permission.

**Expert's Right To Ask Court For Directions**
**31.66**
An expert (including any Court-appointed expert) may file a written request for directions to assist him in carrying out his function as an expert.

**31.67**
An expert must, unless the Court orders otherwise, provide a copy of any proposed request for directions under **Rule 31.66**:

(1) (if he is not a Court-appointed expert) to the party instructing him, at least 7 days before he files the request; and

(2) to all other parties, at least 4 days before he files it.

**31.68**
The Court, when it gives directions, may also direct that a party be served with a copy of the directions.

**Trial**
**31.69**





At trial the evidence of expert witnesses is usually taken as a block, after the evidence of witnesses of fact has been given.

**II ASSESSORS**

**31.70**
This Section of this Part applies where the Court appoints one or more persons (an 'Assessor') under Article 18 of the Court Law.

**31.71**
The Assessor shall assist the Court in dealing with a matter in which the Assessor has skill and experience.

**Appointment Of Assessor**
**31.72**
Not less than 21 days before making any such appointment, the Court will notify each party in writing of the name of the proposed Assessor, of the matter in respect of which the assistance of the Assessor will be sought and of the qualifications of the Assessor to give that assistance.

**31.73**
Where any person has been proposed for appointment as an Assessor, objection to him, either personally or in respect of his qualification, may be taken by any party.

**31.74**
Any such objection must be made in writing and filed with the Court within 7 days of receipt of the notification referred to in Rule 31.72 and will be taken into account by the Court in deciding whether or not to make the appointment.

**31.75**
Prior to commencing duties an Assessor shall take an oath or affirmation of office in accordance with these Rules.

**31.76**
An Assessor who has or may have a conflict concerning the subject matter of the proceedings must disclose the matters giving rise to that conflict to the Court and the parties to the proceeding as soon as he becomes aware of the conflict or potential conflict.

**31.77**
For the purposes of this Section of this Part, an Assessor has a conflict of interest in relation to proceedings if the Assessor has any interest, pecuniary or otherwise, that could conflict with the proper performance of the Assessor's functions in relation to the proceedings.

**Part To Be Taken In Proceedings By Assessor**
**31.78**
An Assessor shall take such part in the proceedings as the Court may direct and in particular the Court may:

(1) direct the Assessor to prepare a report for the Court on any matter at issue in the proceedings; and



(2) direct the Assessor to attend the whole or any part of the trial to advise the Court on any such matter.

**31.79**

If the Assessor prepares a report for the Court before the trial has begun:

(1) the Court will send a copy to each of the parties;

(2) the parties to the proceedings shall be given an opportunity to make submissions on the Assessor's report; and

(3) the parties may use it at trial.

**31.80**

The Assessor will not give oral evidence or be open to cross-examination or questioning.

**31.81**

The range of topics on which advice might be sought from the Assessor should be canvassed with the parties' legal representatives by, at the latest, the stage of final submissions.

**31.82**

Ordinarily, the questions asked of the Assessor by the Court should not stray outside the range previously discussed with the parties' legal representatives.



**31.83**

The questions ultimately put by the Court, together with the answers given by the Assessor, must be disclosed to the parties' legal representatives before any draft judgment is handed down.

**31.84**

The parties' legal representatives will thereafter be given the opportunity to make submissions to the Court, as to whether the advice given by the Assessor should be followed. Ordinarily, any such submissions should be in writing; but if there is good reason for doing so, an application may be made for an oral hearing. The Court will consider any such submissions before finalising any judgment.

**31.85**

Generally speaking, the interests of proportionality and finality will make it unnecessary to repeat the procedure after the Court and the Assessor have had the opportunity of considering the parties' submissions and any suggested further or revised questions. Accordingly, unless the Court in its discretion thinks it appropriate to disclose them to the parties' legal representatives before the judgment is finalised, any further or revised answers will simply be recorded in the judgment, together with the Court's decision as to whether or not to accept the Assessor's advice and its reasons for doing so.

**Remuneration Of Assessors**
**31.86**







The Registrar shall pay to any Assessor appointed under this Section of this Part a fee as set out in Schedule B to this Part for carrying out his duties and shall reimburse him for any expenses reasonably incurred.

**31.87**

The remuneration to be paid to the Assessor for his services shall be determined by the Court and shall form part of the costs of the proceedings.

**31.88**

The Court may order any party to deposit in the Registry a specified sum in respect of the Assessor's fees and, where it does so, the Assessor will not be asked to act until the sum has been deposited.

SCHEDULE A

**Protocol For The Instruction Of Experts To Give Evidence In Civil Claims**

**1. Introduction**



Expert witnesses perform a vital role in civil litigation. It is essential that both those who instruct experts and experts themselves are given clear guidance as to what they are expected to do in civil proceedings. The purpose of this Protocol is to provide such guidance. It has been drafted by the Civil Justice Council and reflects the rules and practice directions current [in June 2005], replacing the Code of Guidance on Expert Evidence. The authors of the Protocol wish to acknowledge the valuable assistance they obtained by drawing on earlier documents produced by the Academy of Experts and the Expert Witness Institute, as well as suggestions made by the Clinical Dispute Forum. The Protocol has been approved by the Master of the Rolls. 

**2. Aims of Protocol**

2.1 This Protocol offers guidance to experts and to those instructing them in the interpretation of and compliance with Part 35 of the Civil Procedure CPR 35) and its associated Practice Direction (PD 35) and to further the objectives of the Civil Procedure Rules in general. It is intended to assist in the interpretation of those provisions in the interests of good practice but it does not replace them. It sets out standards for the use of experts and the conduct of experts and those who instruct them. The existence of this Protocol does not remove the need for experts and those who instruct them to be familiar with CPR35 and PD35.

2.2 Experts and those who instruct them should also bear in mind para 1.4 of the Practice Direction on Protocols which contains the following objectives, namely to:

(a) encourage the exchange of early and full information about the expert issues involved in a prospective legal claim;

(b) enable the parties to avoid or reduce the scope of litigation by agreeing the whole or part of an expert issue before commencement of proceedings; and



(c) support the efficient management of proceedings where litigation cannot be avoided.

## 3. Application

3.1 This Protocol applies to any steps taken for the purpose of civil proceedings by experts or those who instruct them on or after 5th September 2005.

3.2 It applies to all experts who are, or who may be, governed by CPR Part 35 and to those who instruct them. Experts are governed by Part 35 if they are or have been instructed to give or prepare evidence for the purpose of civil proceeding in a court in England and Wales (CPR 35.2).

3.3 Experts, and those instructing them, should be aware that some cases may be "specialist proceedings" (CPR 49) where there are modifications to the Civil Procedure Rules. Proceedings may also be governed by other Protocols Further, some courts have published their own Guides which supplement the Civil Procedure Rules for proceedings in those courts. They contain provisions affecting expert evidence. Expert witnesses and those instructing them should be familiar with them when they are relevant.

3.4 Courts may take into account any failure to comply with this Protocol when making orders in relation to costs, interest, time limits, the stay of proceedings and whether to order a party to pay a sum of money into court.

### Limitation

3.5 If, as a result of complying with any part of this Protocol, claims would or might be time barred under any provision in the Limitation Act 1980, or any other legislation that imposes a time limit for the bringing an action, claimants may commence proceedings without complying with this Protocol. In such circumstances, claimants who commence proceedings without complying with all, or any part, of this Protocol must apply, giving notice to all other parties, to the court for directions as to the timetable and form of procedure to be adopted, at the same time as they request the court to issue proceedings. The court may consider whether to order a stay of the whole or part of the proceedings pending compliance with this Protocol and may make orders in relation to costs.

## 4. Duties of experts

4.1 Experts always owe a duty to exercise reasonable skill and care to those instructing them, and to comply with any relevant professional code of ethics. However when they are instructed to give or prepare evidence for the purpose of civil proceedings in England and Wales they have an overriding duty to help the court on matters within their expertise (CPR 35.3). This duty overrides any obligation to the person instructing or paying them. Experts must not serve the exclusive interest of those who retain them.

4.2 Experts should be aware of the overriding objective that courts deal with cases justly. This includes dealing with cases proportionately, expeditiously



and fairly (CPR 1.1). Experts are under an obligation to assist the court so as to enable them to deal with cases in accordance with the overriding objective. However the overriding objective does not impose on experts any duty to act as mediators between the parties or require them to trespass on the role of the court in deciding facts.

4.3 Experts should provide opinions which are independent, regardless of the pressures of litigation. In this context, a useful test of 'independence' is that the expert would express the same opinion if given the same instructions by an opposing party. Experts should not take it upon themselves to promote the point of view of the party instructing them or engage in the role of advocates.

4.4 Experts should confine their opinions to matters which are material to the disputes between the parties and provide opinions only in relation to matters which lie within their expertise. Experts should indicate without delay where particular questions or issues fall outside their expertise.

4.5 Experts should take into account all material facts before them at the time that they give their opinion. Their reports should set out those facts and any literature or any other material on which they have relied in forming their opinions. They should indicate if an opinion is provisional, or qualified, or where they consider that further information is required or if, for any other reason, they are not satisfied that an opinion can be expressed finally and without qualification.



4.6 Experts should inform those instructing them without delay of any change in their opinions on any material matter and the reason for it.



4.7 Experts should be aware that any failure by them to comply with the Civil Procedure Rules or court orders or any excessive delay for which they are responsible may result in the parties who instructed them being penalised in costs and even, in extreme cases, being debarred from placing the experts' evidence before the court. In Phillips v Symes1 Peter Smith J held that courts may also make orders for costs (under section 51 of the Supreme Court Act 1981) directly against expert witnesses who by their evidence cause significant expense to be incurred, and do so in flagrant and reckless disregard of their duties to the Court.

### 5. Conduct of Experts instructed only to advise

5.1 Part 35 only applies where experts are instructed to give opinions which are relied on for the purposes of court proceedings. Advice which the parties do not intend to adduce in litigation is likely to be confidential; the Protocol does not apply in these circumstances2 3.

5.2 The same applies where, after the commencement of proceedings, experts are instructed only to advise (e.g. to comment upon a single joint expert's report) and not to give or prepare evidence for use in the proceedings.

5.3 However this Protocol does apply if experts who were formerly instructed only to advise are later instructed to give or prepare evidence for the purpose of civil



proceedings.

**6. The Need for Experts**

6.1 Those intending to instruct experts to give or prepare evidence for the purpose of civil proceedings should consider whether expert evidence is appropriate, taking account of the principles set out in CPR Parts 1 and 35, and in particular whether:

(a) it is relevant to a matter which is in dispute between the parties.

(b) it is reasonably required to resolve the proceedings (CPR 35.1);

(c) the expert has expertise relevant to the issue on which an opinion is sought;

(d) the expert has the experience, expertise and training appropriate to the value, complexity and importance of the case; and whether

(e) these objects can be achieved by the appointment of a single joint expert (see section 17 below).

6.2 Although the court's permission is not generally required to instruct an expert, the court's permission is required before experts can be called to give evidence or their evidence can be put in (CPR 35.4).

**7. The appointment of experts**



7.1 Before experts are formally instructed or the court's permission to appoint named experts is sought, the following should be established:

(a) that they have the appropriate expertise and experience;

(b) that they are familiar with the general duties of an expert;

(c) that they can produce a report, deal with questions and have discussions with other experts within a reasonable time and at a cost proportionate to the matters in issue;

(d) a description of the work required;

(e) whether they are available to attend the trial, if attendance is required; and

(f) there is no potential conflict of interest.

7.2 Terms of appointment should be agreed at the outset and should normally include:

(a) the capacity in which the expert is to be appointed (e.g. party appointed expert, single joint expert or expert advisor);

(b) the services required of the expert (e.g. provision of expert's report, answering questions in writing, attendance at meetings and attendance at court);





(c) time for delivery of the report;

(d) the basis of the expert's charges (either daily or hourly rates and an estimate of the time likely to be required, or a total fee for the services);

(e) travelling expenses and disbursements;

(f) cancellation charges;

(g) any fees for attending court;

(h) time for making the payment; and

(i) whether fees are to be paid by a third party.

(j) if a party is publicly funded, whether or not the expert's charges will be subject to assessment by a costs officer.

7.3 As to the appointment of single joint experts, see section 17 below.

7.4 When necessary, arrangements should be made for dealing with questions to experts and discussions between experts, including any directions given by the court, and provision should be made for the cost of this work.



7.5 Experts should be informed regularly about deadlines for all matters concerning them. Those instructing experts should promptly send them copies of all court orders and directions which may affect the preparation of their reports or any other matters concerning their obligations.

**Conditional and Contingency Fees**

7.6 Payments contingent upon the nature of the expert evidence given in legal proceedings, or upon the outcome of a case, must not be offered or accepted. To do so would contravene experts' overriding duty to the court and compromise their duty of independence.

7.7 Agreement to delay payment of experts' fees until after the conclusion of cases is permissible as long as the amount of the fee does not depend on the outcome of the case.

**8. Instructions**

8.1 Those instructing experts should ensure that they give clear instructions, including the following:

(a) basic information, such as names, addresses, telephone numbers, dates of birth and dates of incidents;

(b) the nature and extent of the expertise which is called for;





(c) the purpose of requesting the advice or report, a description of the matter(s) to be investigated, the principal known issues and the identity of all parties;

(d) the statement(s) of case (if any), those documents which form part of standard disclosure and witness statements which are relevant to the advice or report;

(e) where proceedings have not been started, whether proceedings are being contemplated and, if so, whether the expert is asked only for advice;

(f) an outline programme, consistent with good case management and the expert's availability, for the completion and delivery of each stage of the expert's work; and

(g) where proceedings have been started, the dates of any hearings (including any Case Management Conferences and/or Pre-Trial Reviews), the name of the court, the claim number and the track to which the claim has been allocated.

8.2 Experts who do not receive clear instructions should request clarification and may indicate that they are not prepared to act unless and until such clear instructions are received.

8.3 As to the instruction of single joint experts, see section 17 below.

**9. Experts' Acceptance of Instructions**



9.1 Experts should confirm without delay whether or not they accept instructions. They should also inform those instructing them (whether on initial instruction or at any later stage) without delay if:

(a) instructions are not acceptable because, for example, they require work that falls outside their expertise, impose unrealistic deadlines, or are insufficiently clear;

(b) they consider that instructions are or have become insufficient to complete the work;

(c) they become aware that they may not be able to fulfil any of the terms of appointment;

(d) the instructions and/or work have, for any reason, placed them in conflict with their duties as an expert; or

(e) they are not satisfied that they can comply with any orders that have been made.

9.2 Experts must neither express an opinion outside the scope of their field of expertise, nor accept any instructions to do so.

**10. Withdrawal**



Where experts' instructions remain incompatible with their duties, whether through incompleteness, a conflict between their duty to the court and their instructions, or for any other substantial and significant reason, they may consider withdrawing from the case. However, experts should not withdraw without first discussing the position fully with those who instruct them and considering carefully whether it would be more appropriate to make a written request for directions from the court. If experts do withdraw, they must give formal written notice to those instructing them.

**11. Experts' Right to ask Court for Directions**

11.1 Experts may request directions from the court to assist them in carrying out their functions as experts. Experts should normally discuss such matters with those who instruct them before making any such request. Unless the court otherwise orders, any proposed request for directions should be copied to the party instructing the expert at least seven days before filing any request to the court, and to all other parties at least four days before filing it. (CPR 35.14).

11.2 Requests to the court for directions should be made by letter, containing—

(a) the title of the claim;

(b) the claim number of the case;

(c) the name of the expert;

(d) full details of why directions are sought; and

(e) copies of any relevant documentation.

**12. Power of the Court to Direct a Party to Provide Information**

12.1 If experts consider that those instructing them have not provided information which they require, they may, after discussion with those instructing them and giving notice, write to the court to seek directions (CPR 35.14).

12.2 Experts and those who instruct them should also be aware of CPR 35.9. This provides that where one party has access to information which is not readily available to the other party, the court may direct the party who has access to the information to prepare, file and copy to the other party a document recording the information. If experts require such information which has not been disclosed, they should discuss the position with those instructing them without delay, so that a request for the information can be made, and, if not forthcoming, an application can be made to the court. Unless a document appears to be essential, experts should assess the cost and time involved in the production of a document and whether its provision would be proportionate in the context of the case.

**13. Contents of Experts' Reports**



13.1 The content and extent of experts' reports should be governed by the scope of their instructions and general obligations, the contents of CPR 35 and PD35 and their overriding duty to the court.

13.2 In preparing reports, experts should maintain professional objectivity and impartiality at all times.

13.3 PD 35, para 2 provides that experts' reports should be addressed to the court and gives detailed directions about the form and content of such reports. All experts and those who instruct them should ensure that they are familiar with these requirements.

13.4 Model forms of Experts' Reports are available from bodies such as the Academy of Experts or the Expert Witness Institute.

13.5 Experts' reports must contain statements that they understand their duty to the court and have complied and will continue to comply with that duty (PD35 para 2.2(9)). They must also be verified by a statement of truth. The form of the statement of truth is as follows:

"I confirm that insofar as the facts stated in my report are within my own knowledge I have made clear which they are and I believe them to be true, and that the opinions I have expressed represent my true and complete professional opinion." This wording is mandatory and must not be modified.

**Qualifications**



13.6 The details of experts' qualifications to be given in reports should be commensurate with the nature and complexity of the case. It may be sufficient merely to state academic and professional qualifications. However, where highly specialized expertise is called for, experts should include the detail of particular training and/or experience that qualifies them to provide that highly specialised evidence.

**Tests**

13.7 Where tests of a scientific or technical nature have been carried out, experts should state:

(a) the methodology used; and

(b) by whom the tests were undertaken and under whose supervision,

summarizing their respective qualifications and experience.

**Reliance on the work of others**

13.8 Where experts rely in their reports on literature or other material and cite the opinions of others without having verified them, they must give details of those opinions relied on. It is likely to assist the court if the qualifications of the






originator(s) are also stated.

### Facts

13.9 When addressing questions of fact and opinion, experts should keep the two separate and discrete.

13.10 Experts must state those facts (whether assumed or otherwise) upon which their opinions are based. They must distinguish clearly between those facts which experts know to be true and those facts which they assume.

13.11 Where there are material facts in dispute experts should express separate opinions on each hypothesis put forward. They should not express a view in favour of one or other disputed version of the facts unless, as a result of particular expertise and experience, they consider one set of facts as being improbable or less probable, in which case they may express that view, and should give reasons for holding it.

### Range of opinion

13.12 If the mandatory summary of the range of opinion is based on published sources, experts should explain those sources and, where appropriate, state the qualifications of the originator(s) of the opinions from which they differ, particularly if such opinions represent a well-established school of thought.



13.13 Where there is no available source for the range of opinion, experts may need to express opinions on what they believe to be the range which other experts would arrive at if asked. In those circumstances, experts should make it clear that the range that they summarise is based on their own judgement and explain the basis of that judgement.



### Conclusions

13.14 A summary of conclusions is mandatory. The summary should be at the end of the report after all the reasoning. There may be cases, however, where the benefit to the court is heightened by placing a short summary at the beginning of the report whilst giving the full conclusions at the end. For example, it can assist with the comprehension of the analysis and with the absorption of the detailed facts if the court is told at the outset of the direction in which the report's logic will flow in cases involving highly complex matters which fall outside the general knowledge of the court.

### Basis of report: material instructions

13.15 The mandatory statement of the substance of all material instructions should not be incomplete or otherwise tend to mislead. The imperative is transparency. The term "instructions" includes all material which solicitors place in front of experts in order to gain advice. The omission from the statement of 'off-the-record' oral instructions is not permitted. Courts may allow cross-examination about the instructions if there are reasonable grounds to consider that the





statement may be inaccurate or incomplete.

**14. After receipt of experts' reports**

14.1 Following the receipt of experts' reports, those instructing them should advise the experts as soon as reasonably practicable whether, and if so when, the report will be disclosed to other parties; and, if so disclosed, the date of actual disclosure.

14.2 If experts' reports are to be relied upon, and if experts are to give oral evidence those instructing them should give the experts the opportunity to consider and comment upon other reports within their area of expertise and which deal with relevant issues at the earliest opportunity.

14.3 Those instructing experts should keep experts informed of the progress of cases, including amendments to statements of case relevant to experts' opinion.

14.4 If those instructing experts become aware of material changes in circumstances or that relevant information within their control was not previously provided to experts, they should without delay instruct experts to review, and if necessary, update the contents of their reports.

**15. Amendment of reports**



15.1 It may become necessary for experts to amend their reports:

(a) as a result of an exchange of questions and answers;

(b) following agreements reached at meetings between experts; or

(c) where further evidence or documentation is disclosed.

15.2 Experts should not be asked to, and should not, amend, expand or alter any parts of reports in a manner which distorts their true opinion, but may be invited to amend or expand reports to ensure accuracy, internal consistency, completeness and relevance to the issues and clarity. Although experts should generally follow the recommendations of solicitors with regard to the form of reports, they should form their own independent views as to the opinions and contents expressed in their reports and exclude any suggestions which do not accord with their views.

15.3 Where experts change their opinion following a meeting of experts, a simple signed and dated addendum or memorandum to that effect is generally sufficient. In some cases, however, the benefit to the court of having an amended report may justify the cost of making the amendment.

15.4 Where experts significantly alter their opinion, as a result of new evidence or because evidence on which they relied has become unreliable, or for any other reason, they should amend their reports to reflect that fact. Amended reports should include reasons for amendments. In such circumstances those





instructing experts should inform other parties as soon as possible of any change of opinion.

15.5 When experts intend to amend their reports, they should inform those instructing them without delay and give reasons. They should provide the amended version (or an addendum or memorandum) clearly marked as such as quickly as possible.

(1) direct the Assessor to prepare a report for the Court on any matter at issue in the proceedings; and

(2) direct the Assessor to attend the whole or any part of the trial to advise the Court on any such matter.

## 16. Written Questions to Experts

16.1 The procedure for putting written questions to experts (CPR 35.6) is intended to facilitate the clarification of opinions and issues after experts' reports have been served. Experts have a duty to provide answers to questions properly put. Where they fail to do so, the court may impose sanctions against the party instructing the expert, and, if, there is continued non-compliance, debar a party from relying on the report. Experts should copy their answers to those instructing them.



16.2 Experts' answers to questions automatically become part of their reports. They are covered by the statement of truth and form part of the expert evidence.



16.3 Where experts believe that questions put are not properly directed to the clarification of the report, or are disproportionate, or have been asked out of time, they should discuss the questions with those instructing them and, if appropriate, those asking the questions. Attempts should be made to resolve such problems without the need for an application to the court for directions.

**Written requests for directions in relation to questions**

16.4 If those instructing experts do not apply to the court in respect of questions, but experts still believe that questions are improper or out of time, experts may file written requests with the court for directions to assist in carrying out their functions as experts (CPR 35.14). See Section 11 above.

## 17. Single Joint Experts

17.1 CPR 35 and PD35 deal extensively with the instruction and use of joint experts by the parties and the powers of the court to order their use (see CPR 35.7 and 35.8, PD35, para 5).

17.2 The Civil Procedure Rules encourage the use of joint experts. Wherever possible a joint report should be obtained. Consideration should therefore be given by all parties to the appointment of single joint experts in all cases where a court might direct such an appointment. Single joint experts are the norm in cases





allocated to the small claims track and the fast track.

17.3 Where, in the early stages of a dispute, examinations, investigations, tests, site inspections, experiments, preparation of photographs, plans or other similar preliminary expert tasks are necessary, consideration should be given to the instruction of a single joint expert, especially where such matters are not, at that stage, expected to be contentious as between the parties. The objective of such an appointment should be to agree or to narrow issues.

17.4 Experts who have previously advised a party (whether in the same case or otherwise) should only be proposed as single joint experts if other parties are given all relevant information about the previous involvement.

17.5 The appointment of a single joint expert does not prevent parties from instructing their own experts to advise (but the costs of such expert advisers may not be recoverable in the case).

**Joint instructions**

17.6 The parties should try to agree joint instructions to single joint experts, but, in default of agreement, each party may give instructions. In particular, all parties should try to agree what documents should be included with instructions and what assumptions single joint experts should make.



17.7 Where the parties fail to agree joint instructions, they should try to agree where the areas of disagreement lie and their instructions should make this clear. If separate instructions are given, they should be copied at the same time to the other instructing parties.



17.8 Where experts are instructed by two or more parties, the terms of appointment should, unless the court has directed otherwise, or the parties have agreed otherwise, include:

(a) a statement that all the instructing parties are jointly and severally liable to pay the experts' fees and, accordingly, that experts' invoices should be sent simultaneously to all instructing parties or their solicitors (as appropriate); and

(b) a statement as to whether any order has been made limiting the amount of experts' fees and expenses (CPR 35.8(4)(a)).

17.9 Where instructions have not been received by the expert from one or more of the instructing parties the expert should give notice (normally at least 7 days) of a deadline to all instructing parties for the receipt by the expert of such instructions. Unless the instructions are received within the deadline the expert may begin work. In the event that instructions are received after the deadline but before the signing off of the report the expert should consider whether it is practicable to comply with those instructions without adversely affecting the timetable set for delivery of the report and in such a manner as to comply with the proportionality principle. An expert who decides to issue a report without taking into account instructions received after the deadline

should inform the parties who may apply to the court for directions. In either event the report must show clearly that the expert did not receive instructions within the deadline, or, as the case may be, at all.

**Conduct of the single joint expert**

17.10 Single joint experts should keep all instructing parties informed of any material steps that they may be taking by, for example, copying all correspondence to those instructing them.

17.11 Single joint experts are Part 35 experts and so have an overriding duty to the court. They are the parties' appointed experts and therefore owe an equal duty to all parties. They should maintain independence, impartiality and transparency at all times.

17.12 Single joint experts should not attend any meeting or conference which is not a joint one, unless all the parties have agreed in writing or the court has directed that such a meeting may be held4 and who is to pay the experts' fees for the meeting.

17.13 Single joint experts may request directions from the court – see Section 11 above.

17.14 Single joint experts should serve their reports simultaneously on all instructing parties. They should provide a single report even though they may have received instructions which contain areas of conflicting fact or allegation. If conflicting instructions lead to different opinions (for example, because the instructions require experts to make different assumptions of fact), reports may need to contain more than one set of opinions on any issue. It is for the court to determine the facts.

**Cross-examination**

17.15 Single joint experts do not normally give oral evidence at trial but if they do, all parties may cross-examine them. In general written questions (CPR 35.6) should be put to single joint experts before requests are made for them to attend court for the purpose of cross-examination 5.

**18. Discussions between Experts**

18.1 The court has powers to direct discussions between experts for the purposes set out in the Rules (CPR 35.12). Parties may also agree that discussions take place between their experts.

18.2 Where single joint experts have been instructed but parties have, with the permission of the court, instructed their own additional Part 35 experts, there may, if the court so orders or the parties agree, be discussions between the single joint experts and the additional Part 35 experts. Such discussions should be confined to those matters within the remit of the additional Part 35 experts or as ordered by the court.



18.3 The purpose of discussions between experts should be, wherever possible, to:

(a) identify and discuss the expert issues in the proceedings;

(b) reach agreed opinions on those issues, and, if that is not possible, to narrow the issues in the case;

(c) identify those issues on which they agree and disagree and summarise their reasons for disagreement on any issue; and

(d) identify what action, if any, may be taken to resolve any of the outstanding issues between the parties.

**Arrangements for discussions between experts**

18.4 Arrangements for discussions between experts should be proportionate to the value of cases. In small claims and fast-track cases there should not normally be meetings between experts. Where discussion is justified in such cases, telephone discussion or an exchange of letters should, in the interests of proportionality, usually suffice. In multi-track cases, discussion may be face to face, but the practicalities or the proportionality principle may require discussions to be by telephone or video conference.

18.5 The parties, their lawyers and experts should co-operate to produce the agenda for any discussion between experts, although primary responsibility for preparation of the agenda should normally lie with the parties' solicitors.

18.6 The agenda should indicate what matters have been agreed and summarise concisely those which are in issue. It is often helpful for it to include questions to be answered by the experts. If agreement cannot be reached promptly or a party is unrepresented, the court may give directions for the drawing up of the agenda. The agenda should be circulated to experts and those instructing them to allow sufficient time for the experts to prepare for the discussion.

18.7 Those instructing experts must not instruct experts to avoid reaching agreement (or to defer doing so) on any matter within the experts' competence. Experts are not permitted to accept such instructions.

18.8 The parties' lawyers may only be present at discussions between experts if all the parties agree or the court so orders. If lawyers do attend, they should not normally intervene except to answer questions put to them by the experts or to advise about the law6.

18.9 The content of discussions between experts should not be referred to at trial unless the parties agree (CPR 35.12(4)). It is good practice for any such agreement to be in writing.

18.10 At the conclusion of any discussion between experts, a statement should be prepared setting out:





(a) a list of issues that have been agreed, including, in each instance, the basis of agreement;

(b) a list of issues that have not been agreed, including, in each instance, the basis of disagreement;

(c) a list of any further issues that have arisen that were not included in the original agenda for discussion;

(d) a record of further action, if any, to be taken or recommended, including as appropriate the holding of further discussions between experts.

18.11 The statement should be agreed and signed by all the parties to the discussion as soon as may be practicable.

18.12 Agreements between experts during discussions do not bind the parties unless the parties expressly agree to be bound by the agreement (CPR 35.12(5)). However, in view of the overriding objective, parties should give careful consideration before refusing to be bound by such an agreement and be able to explain their refusal should it become relevant to the issue of costs.

## 19. Attendance of Experts at Court

19.1 Experts instructed in cases have an obligation to attend court if called upon to do so and accordingly should ensure that those instructing them are always aware of their dates to be avoided and take all reasonable steps to be available.



19.2 Those instructing experts should:

(a) ascertain the availability of experts before trial dates are fixed;

(b) keep experts updated with timetables (including the dates and times experts are to attend) and the location of the court;

(c) give consideration, where appropriate, to experts giving evidence using a video-link.

(d) inform experts immediately if trial dates are vacated.

19.3 Experts should normally attend court without the need for the service of witness summonses, but on occasion they may be served to require attendance (CPR 34). The use of witness summonses does not affect the contractual or other obligations of the parties to pay experts' fees.

1 Phillips v Symes [2004] EWHC 2330 (Ch)

2 Carlson v Townsend [2001] 1 WLR 2415

3 Jackson v Marley Davenport [2004] 1 WLR 2926







4 Peet v Mid Kent Area Healthcare NHS Trust [2002] 1 WLR 210

5 Daniels v Walker [2000] 1 WLR 1382

6 Hubbard v Lambeth, Southwark and Lewisham HA [2001] EWCA 1455


# PART 32
## OFFERS TO SETTLE

**Scope Of This Part**
**32.1**
This Part contains Rules about:

    (1) offers to settle; and

    (2) the consequences where an offer to settle is made in accordance with **Rule 32.4**.

**32.2**
Nothing in this Part prevents a party making an offer to settle in whatever way he chooses, but if that offer is not made in accordance with **Rule 32.4**, it will not have the consequences specified in **Rules 32.28** to **32.41**, and **32.49** to **32.54**.

**Form And Content Of A Part 32 Offer**
**32.3**
An offer to settle which is made in accordance with **Rule 32.4** is called a Part 32 offer.

**32.4**
A Part 32 offer must:

    (1) be in writing;

    (2) state on its face that it is intended to have the consequences of Part 32;

    (3) specify a period of not less than 21 days within which the defendant will be liable for the claimant's costs in accordance with Rules 32.28 to 32.33 if the offer is accepted;

    (4) state whether it relates to the whole of the claim or to part of it or to an issue that arises in it and if so to which part or issue; and

    (5) state whether it takes into account any counterclaim.

**32.5**
Rule 32.4(3) does not apply if the offer is made less than 21 days before the start of the trial.

**32.6**
An offeror may make a Part 32 offer solely in relation to liability.



**Part 32 Offers — General Provisions**
**32.7**
In this Part:

(1) the party who makes an offer is the 'offeror';

(2) the party to whom an offer is made is the 'offeree'; and

(3) 'the relevant period' means:

(a) in the case of an offer made not less than 21 days before trial, the period stated under **Rule 32.4(3)** or such longer period as the parties agree;

(b) otherwise, the period up to end of the trial or such other period as the Court has determined.

**32.8**
A Part 32 offer:

(1) may be made at any time, including before the commencement of proceedings; and

(2) may be made in appeal proceedings.

**32.9**
A Part 32 offer which offers to pay or offers to accept a sum of money will be treated as inclusive of all interest until:



(1) the date on which the period stated under **Rule 32.4(3)** expires; or

(2) if **Rule 32.5** applies, a date 21 days after the date the offer was made.

**32.10**
A Part 32 offer shall have the consequences set out in this Part only in relation to the costs of the proceedings in respect of which it is made, and not in relation to the costs of any appeal from the final decision in those proceedings.

**32.11**
Before expiry of the relevant period, a Part 32 offer may be withdrawn or its terms changed to be less advantageous to the offeree, only if the Court gives permission.

**32.12**
The permission of the court must be sought:

(1) by making an application under Part 23, which must be dealt with by a Judge other than the Judge (if any) allocated in advance to conduct the trial, unless the parties agree that such Judge may hear the application;

(2) at a trial or other hearing, provided that it is not to the trial Judge or to the Judge (if any) allocated in advance to conduct the trial, unless the parties agree that





such Judge may hear the application.

**32.13**
After expiry of the relevant period and provided that the offeree has not previously served notice of acceptance, the offeror may withdraw the offer or change its terms to be less advantageous to the offeree without the permission of the Court.

**32.14**
The offeror does so by serving written notice of the withdrawal or change of terms on the offeree.

**Part 32 Offers – Defendant's Offers**
**32.15**
A Part 32 offer by a defendant to pay a sum of money in settlement of a claim must be an offer to pay a single sum of money.

**32.16**
An offer that includes an offer to pay all or part of the sum, if accepted, at a date later than 14 days following the date of acceptance will not be treated as a Part 32 offer unless the offeree accepts the offer.

**Time When A Part 32 Offer Is Made**
**32.17**
A Part 32 offer is made when it is served on the offeree.



**32.18**
A change in the terms of a Part 32 offer will be effective when notice of the change is served on the offeree.

**Clarification Of A Part 32 Offer**
**32.19**
The offeree may, within 7 days of a Part 32 offer being made, request the offeror to clarify the offer.

**32.20**
If the offeror does not give the clarification requested under 32.19 within 7 days of receiving the request, the offeree may, unless the trial has started, apply for an order that he does so (a clarification order).

**32.21**
An application for a clarification order should be made in accordance with Part 23.

**32.22**
The application notice should state the respects in which the terms of the Part 32 offer are said to need clarification.

**32.23**
If the Court makes a clarification order, it must specify the date when the Part 32 offer is to be treated as having been made.

**Acceptance Of A Part 32 Offer**
**32.24**

304



A Part 32 offer is accepted by serving written notice of the acceptance on the offeror and filing the notice with the Court.

**Acceptance of a Part 32 Offer**
**32.24.1**
In *Dattani & Ors v Damac Park Towers Company Limited* [2012] DIFC CFI 034 (20 July 2014) a valid Part 32 offer was made by the claimants. The defendant contended that it had accepted that offer in a telephone conversation; though during which the total settlement figure was adjusted to make provision for lawyers' fees. The Court confirmed that a Part 32 offer can only be accepted in writing. Acceptance only occurs when written notice of the acceptance is served on the offeror and also filed with the Court: [56]. The subsequent reduction to writing of what had been discussed amounted to a counter-offer for the purposes of Part 32. Further, because the offer made provision for legal costs, that had to be agreed before a valid acceptance of the offer could be made: [57].

**32.25**
Subject to Rule 32.26, a Part 32 offer may be accepted at any time (whether or not the offeree has subsequently made a different offer) unless the offeror serves notice of withdrawal on the offeree.

**32.26**
The Court's permission is required to accept a Part 32 offer where:

(1) Rule 32.45 applies; or

(2) the trial has started.

**32.27**
Where the Court's permission is required to accept a Part 32 offer, the permission of the Court must be sought:

(1) by making an application under Part 23, which must be dealt with by a Judge other than the Judge (if any) allocated in advance to conduct the trial, unless the parties agree that such Judge may hear the application;

(2) at a trial or other hearing, provided that it is not to the trial Judge or to the Judge (if any) allocated in advance to conduct the trial, unless the parties agree that such Judge may hear the application.

**Costs Consequences Of Acceptance Of A Part 32 Offer**
**32.28**
Subject to Rules 32.29 and 32.31(1), where a Part 32 offer is accepted within the relevant period, the claimant will be entitled to his costs of the proceedings up to the date on which notice of acceptance was served on the offeror.

**32.29**
Where:



**32.37**

If the approval of the Court is required before a settlement can be binding, any stay which would otherwise arise on the acceptance of a Part 32 offer will take effect only when that approval has been given.

**32.38**

Any stay will not affect the power of the Court:

> (1) to enforce the terms of a Part 32 offer;

> (2) to deal with any question of costs (including interest on costs) relating to the proceedings.

**32.39**

Unless the parties agree otherwise in writing, where a Part 32 offer by a defendant that is or that includes an offer to pay a single sum of money is accepted, that sum must be paid to the offeree within 14 days of the date of acceptance.

**32.40**

If the accepted sum is not paid within 14 days or such other period as has been agreed the offeree may enter judgment for the unpaid sum.

**32.41**

Where:

> (1) a Part 32 offer (or part of a Part 32 offer) which is not an offer to Rule 32.39 applies is accepted; and

> (2) a party alleges that the other party has not honoured the terms of the offer;

that party may apply to enforce the terms of the offer without the need for a new claim.

**Acceptance Of A Part 32 Offer Made By One Or More, But Not All, Defendants**
**32.42**

Rules 32.43 to 32.45 apply where the claimant wishes to accept a Part 32 offer made by one or more, but not all, of a number of defendants.

**32.43**

If the defendants are sued jointly or in the alternative, the claimant may accept the offer if:

> (1) he discontinues his claim against those defendants who have not made the offer; and

> (2) those defendants give written consent to the acceptance of the offer.

**32.44**

If the claimant alleges that the defendants have a several liability to him the claimant









may:

> (1) accept the offer; and

> (2) continue with his claims against the other defendants if he is entitled to do so.

**32.45**
In all other cases the claimant must apply to the Court for an order permitting him to accept the Part 32 offer.

**Restriction On Disclosure Of A Part 32 Offer**
**32.46**
A Part 32 offer will be treated as 'without prejudice except as to costs'.

**32.47**
The fact that a Part 32 offer has been made must not be communicated to the trial Judge or to the Judge (if any) allocated in advance to conduct the trial until the case has been decided.

**32.48**
Rule 32.47 does not apply:

> (1) where the defence of tender before claim has been raised;

> (2) where the proceedings have been stayed following acceptance of a Part 32 offer; or

> (3) where the offeror and the offeree agree in writing that it should not apply.

**Costs Consequences Following Judgment**
**32.49**
Rules 32.50 to 32.54 apply where upon judgment being entered:

> (1) a claimant fails to obtain a judgment more advantageous than a defendant's Part 32 offer; or

> (2) judgment against the defendant is at least as advantageous to the claimant as the proposals contained in a claimant's Part 32 offer.

**32.50**
Subject to Rule 32.54, where Rule 32.49(1) applies, the Court will, unless it considers it unjust to do so, order that the defendant is entitled to:

> (1) his costs from the date on which the relevant period expired; and

> (2) interest on those costs.

**32.51**
Subject to Rule 32.54, where Rule 32.49(2) applies, the Court will, unless it considers it

unjust to do so, order that the claimant is entitled to:

(1) interest on the whole or part of any sum of money (excluding interest) awarded at a rate not exceeding 10% above Base Rate for some or all of the period starting with the date on which the relevant period expired;

(2) his costs on the indemnity basis from the date on which the relevant period expired; and

(3) interest on those costs at a rate not exceeding 10% above Base Rate.

**32.52**

In considering whether it would be unjust to make the orders referred to in **Rules 32.50** and **32.51**, the Court will take into account all the circumstances of the case including:

(1) the terms of any Part 32 offer;

(2) the stage in the proceedings when any Part 32 offer was made, including in particular how long before the trial started the offer was made;

(3) the information available to the parties at the time when the Part 32 offer was made; and

(4) the conduct of the parties with regard to the giving or refusing to give information for the purposes of enabling the offer to be made or evaluated.

**32.53**

Where the Court awards interest under this rule and also awards interest on the same sum and for the same period under any other power, the total rate of interest may not exceed 10% above Base Rate.

**32.54**

Rules 32.50 and 32.51 do not apply to a Part 32 offer:

(1) that has been withdrawn;

(2) that has been changed so that its terms are less advantageous to the offeree, and the offeree has beaten the less advantageous offer;

(3) made less than 21 days before trial, unless the Court has abridged the relevant period.

**Formalities Of Part 32 Offers And Other Notices Under This Part**
**32.55**

A Part 32 offer may be made using Form P32/01.

**32.56**

Where a:



(1) Part 32 offer;

(2) notice of acceptance;

(3) notice of withdrawal; or

(4) notice of change of terms;

is to be served on a party who is legally represented, the document to be served must be served on the legal representative.

## PART 33
### PAYMENTS INTO COURT

**Money Paid Into Court Under A Court Order**
**33.1**
A party who makes a payment into Court under a Court order must:

(1) serve notice of the payment on every other party; and

(2) in relation to each such notice, file a certificate of service.



**Money Paid Into Court Where Defendant Wishes To Rely On A Defence Of Tender Before Claim**
**33.2**
Where a defendant wishes to rely on a defence of tender before claim he must make a payment into Court of the amount he says was tendered.

**33.3**
If the defendant does not make a payment in accordance with **Rule 33.2**, the defence of tender before claim will not be available to him until he does so.

**Payment Into Court Under An Order**
**33.4**
A party paying money into Court under an order or in support of a defence of tender before claim must:

(1) send to the Registry:

(a) the payment;

(b) a sealed copy of the order or a copy of the defence; and

(c) Form P33/01;

(2) serve notice of payment on the other parties; and





(3) file at Court:

    (a) a copy of the notice of payment; and

    (b) a certificate of service confirming service of the notice on each party served.

**Application Relating To Funds In Court**
**33.5**
Any application relating to money or securities which have been paid into Court, other than an application for the payment out of the money or securities (for example, an application for money to be invested, or for payment of interest to any person):

    (1) must be made in accordance with Part 23; and

    (2) may be made without notice, but the Court may direct notice to be served on any person.

**Payment Out Of Money Paid Into Court**
**33.6**
Money paid into Court under a Court order or in support of a defence of tender before claim may not be paid out without the Court's permission except where:

    (1) a Part 32 offer is accepted without needing the permission of the Court; and

    (2) the defendant agrees that a sum paid into Court by him should be used to satisfy the offer (in whole or in part).

**33.7**
Permission may be obtained by making an application in accordance with Part 23. The application notice must state the grounds on which the order for payment out is sought. Evidence of any facts on which the applicant relies may also be necessary.

**33.8**
Where the Court gives permission under **Rule 33.6**, it will include a direction for the payment out of any money in Court, including any interest accrued.

**33.9**
Where permission is not required to take money out of Court, the requesting party should file a request for payment in Form P33/02 with Registry, accompanied by a statement that the defendant agrees that the money should be used to satisfy the Part 32 offer in Form P33/03.

**33.10**
The request for payment should contain the following details:

    (1) where the party receiving the payment is legally represented:

        (a) the name, business address and reference of the legal representative; and

        (b) the name of the bank and the sort code number, the title of the account and the account number where the payment is to be transmitted;





(1) a claimant must obtain the permission of the Court if he wishes to discontinue all or part of a claim in relation to which:

  (a) the Court has granted an interim injunction; or

  (b) any party has given an undertaking to the Court;

(2) where the claimant has received an interim payment in relation to a claim, he may discontinue that claim only if:

  (a) the defendant who made the interim payment consents in writing; or

  (b) the Court gives permission;

(3) where there is more than one claimant, a claimant may not discontinue unless:

  (a) every other claimant consents in writing; or

  (b) the Court gives permission.

**34.5**
Where there is more than one defendant, the claimant may discontinue all or part of a claim against all or any of the defendants.

**Procedure For Discontinuing**
**34.6**
To discontinue a claim or part of a claim, a claimant must:

  (1) file a notice of discontinuance; and

  (2) serve a copy of it on every other party to the proceedings.

**34.7**
The claimant must state in the notice of discontinuance which he files that he has served a notice of discontinuance on every other party to the proceedings.

**34.8**
Where the claimant needs the consent of some other party, a copy of the necessary consent must be attached to the notice of discontinuance.

**34.9**
Where there is more than one defendant, the notice of discontinuance must specify against which defendants the claim is discontinued.

**Right To Apply To Have Notice Of Discontinuance Set Aside**
**34.10**
Where the claimant discontinues under Rule 34.3, the defendant may apply to have the notice of discontinuance set aside.

**34.11**
The defendant may not make an application under Rule 34.10 more than 28 days after

the date when the notice of discontinuance was served on him.

**When Discontinuance Takes Effect Where Permission Of The Court Is Not Needed**
**34.12**
Discontinuance against any defendant takes effect on the date when notice of discontinuance is served on him under Rule 34.6.

**34.13**
Subject to Rules 34.10 and 34.11, the proceedings are brought to an end as against him on that date.

**34.14**
This does not affect proceedings to deal with any question of costs.

**Liability For Costs**
**34.15**
Unless the Court orders otherwise, a claimant who discontinues a claim is liable for the defendant's costs incurred up to and on the date on which notice of the discontinuance was served on him or his legal representative. If proceedings are only partly discontinued:

    (1) the claimant is liable for costs relating only to the part of the proceedings which he is discontinuing; and

    (2) unless the Court orders otherwise, the costs which the claimant is liable to pay must not be assessed until the conclusion of the rest of the proceedings.

**Discontinuance And Subsequent Proceedings**
**34.16**
A claimant who discontinues a claim needs the permission of the Court to make another claim against the same defendant if:

    (1) he discontinued the claim after the defendant filed a defence; and

    (2) the other claim arises out of facts which are the same or substantially the same as those relating to the discontinued claim.

**Stay Of Remainder Of Partly Discontinued Proceedings Where Costs Not Paid**
**34.17**
Rule 34.18 applies where:

    (1) proceedings are partly discontinued;

    (2) a claimant is liable to pay costs under Rule 34.15; and

    (3) the claimant fails to pay those costs within 14 days of:

        (a) the date on which the parties agreed the sum payable by the claimant; or

        (b) the date on which the Court ordered the costs to be paid.

**34.18**
Where this Rule applies, the Court may stay the remainder of the proceedings until the



claimant pays the whole of the costs which he is liable to pay under **Rule 34.15.**

## PART 35
MISCELLANEOUS PROVISIONS RELATING TO HEARINGS

**MISCELLANEOUS PROVISIONS RELATING TO HEARINGS**
**Interpretation**
**35.1**
In this Part, reference to a hearing includes a reference to the trial.

**General Rule – Hearings To Be In Public**
**35.2**
The general rule is that a hearing is to be in public.

**35.3**
The requirement for a hearing to be in public does not require the Court to make special arrangements for accommodating members of the public.

**35.4**
A hearing, or any part of it, may be in private if:

(1) publicity would defeat the object of the hearing;

(2) it involves matters relating to national security;

(3) it involves confidential information (including information relating to personal financial matters) and publicity would damage that confidentiality;

(4) a private hearing is necessary to protect the interests of any child or patient, including the approval of a compromise or settlement on behalf of a child or patient or an application for the payment of money out of Court to such a person;

(5) it is a hearing of an application made without notice and it would be unjust to any respondent for there to be a public hearing;

(6) it involves uncontentious matters arising in the administration of trusts or in the administration of a deceased person's estate; or

(7) the Court considers this to be necessary, in the interests of justice.

**Miscellaneous provisions relating to hearings**
**Rule 35.4 – Hearings in private**
**35.4.3**
In considering whether there is *"damage"* to confidentiality for the purposes of RDC 35.4(3) the test set out in *Arqaam Capital v DFSA* (CFI 006/2010) is whether an applicant *"would, or might suffer harm to its legitimate business interests by the disclosure of confidential information as to its financial position and business activities*

*in advance of a public hearing"*.

In *DNB Bank v Gulf Eyadah* [2014] DIFC CFI 043 (2 July 2015) at [53] and [58], this was formulated as whether publicity *"might significantly and disproportionately harm its share price."* In the event, the application in *DNB Bank* failed as the relevant information was already public as a result of an English Commercial Court order.

**35.5**
The Court may order that the identity of any party or witness must not be disclosed if it considers non-disclosure necessary in order to protect the interests of that party or witness.

**35.6**
The decision as to whether to hold a hearing in public or in private must be made by the Judge conducting the hearing having regard to any representations which may have been made to him.

**35.7**
The hearings set out below shall in the first instance be listed by the Court as hearings in private under Rule 35.4(3), namely:

(1) an application to suspend a warrant of execution or a warrant of possession or to stay execution where the Court is being invited to consider the ability of a party to make payments to another party;

(2) a determination under Rule 15.41 or a redetermination under Rule 15.44 or an application to vary or suspend the payment of a judgment debt by instalments;

(3) an application for a charging order (including an application to enforce a charging order), third party debt order, attachment of earnings order, administration order, or the appointment of a receiver;

(4) an order to attend Court for questioning;

(5) an application for security for costs under Article 46(1) of the Court Law 2005; and

(6) an application by a trustee or personal representative for directions as to bringing or defending legal proceedings.

**35.8**
Nothing in this Part prevents a Judge ordering that a hearing taking place in public shall continue in private, or vice-versa.

**35.9**
If the Court or Judge's room in which the proceedings are taking place has a sign on the door indicating that the proceedings are private, members of the public who are not parties to the proceedings will not be admitted unless the Court permits.

**35.10**
Where there is no such sign on the door of the Court or Judge's room, members of the



public will be admitted where practicable. The Judge may, if he thinks it appropriate, adjourn the proceedings to a larger room or Court.

**35.11**
When a hearing takes place in public, members of the public may obtain a transcript of any judgment given or a copy of any order made, subject to payment of the appropriate fee.

**35.12**
When a judgment is given or an order is made in private, if any member of the public who is not a party to the proceedings seeks a transcript of the judgment or a copy of the order, he must seek the permission of the Judge who gave the judgment or made the order.

**35.13**
A judgment or order given or made in private, when drawn up, must have clearly marked in the title:

'Before [title and name of Judge] sitting in Private'

**Failure To Attend The Trial**
**35.14**
The Court may proceed with a trial in the absence of a party but:

    (1) if no party attends the trial, it may strike out the whole of the proceedings;

    (2) if the claimant does not attend, it may strike out his claim and any defence to counterclaim. The defendant may prove any counterclaim at trial and obtain judgment on his counterclaim and for costs; and

    (3) if a defendant does not attend, it may strike out his defence or counterclaim (or both). The claimant may prove his claim at trial and obtain judgment on his claim and for costs.

**35.15**
Where the Court strikes out proceedings, or any part of them, under **Rule 35.14**, it may subsequently restore the proceedings, or that part.

**35.16**
Where a party does not attend and the Court gives judgment or makes an order against him, the party who failed to attend may apply in accordance with Part 23 for the judgment or order to be set aside.

**35.17**
An application under **Rule 35.15** or **Rule 35.16** must be supported by evidence, giving reasons for the failure to attend Court and stating when the applicant found out about the order against him.

**35.18**
Where an application is made under **Rule 35.15** or **Rule 35.16** by a party who failed to

attend the trial, the Court will only grant the application if the applicant:

(1) acted promptly when he found out that the Court had exercised its power to strike out or to enter judgment or make an order against him;

(2) had a good reason for not attending the trial; and

(3) has a reasonable prospect of success at the trial.

**Timetable For Trial**
**35.19**
When the Court sets a timetable for a trial in accordance with **Rule 26.75** (fixing or confirming the trial date and giving directions) it will do so in consultation with the parties.

**35.20**
Where the trial is fixed for a Sunday, or for a Monday where the Judge is hearing other matters on the Sunday:

All documents to be submitted for the trial must be received by the DIFC Courts Registry by no later than 10am on the Wednesday prior to the trial. Skeleton arguments are to be filed with the DIFC Courts by no later than 2pm on the Thursday prior to the trial.

**Trial Bundles**
**General**
**35.21**
It is the claimant's responsibility to prepare and lodge the agreed trial bundles.

**35.22**
If another party wishes to put before the Court a bundle that the claimant regards as unnecessary, he must prepare and lodge it himself.

**35.23**
The number, content and organisation of the trial bundles must be approved by the legal representatives with the conduct of the trial.

**35.24**
Consideration must always be given to what documents are and are not relevant and necessary. Where the Court is of the opinion that costs have been wasted by the copying of unnecessary documents it will have no hesitation in making a special order for costs against the person responsible.

**35.25**
Any party preparing a trial bundle should, as a matter of course, provide all other parties who are to take part in the trial with a copy, at the cost of the receiving party. Further copies should be supplied on request, again at the cost of the receiving party.

**35.26**
If oral evidence is to be given at trial, the claimant must provide a clean unmarked set

of all relevant trial bundles for use in the witness box. The claimant is responsible for ensuring that these bundles are kept up to date throughout the trial.

**35.27**
Failure to comply with the requirements for lodging bundles for the trial may result in the trial not commencing on the date fixed, at the expense of the party in default. An order for immediate payment of costs may be made.

**Agreement Of Bundles**
**35.28**
The preparation of bundles requires a high level of co–operation between legal representatives for all parties. It is the duty of all legal representatives to cooperate to this high level.

**35.29**
When agreeing bundles for trial, the parties should also establish through their legal representatives, and record in correspondence, whether the agreement of bundles:

(1) extends no further than agreement of the composition and preparation of the bundles; or

(2) includes agreement that the documents in the bundles are authentic (see further Rules 29.115 and 29.116); or

(3) includes agreement that the documents may be treated as evidence of the facts stated in them.

**35.30**
The Court will expect parties normally to agree that the documents or at any rate the great majority of them may be treated as evidence of the facts stated in them. A party not willing so to agree should, when the trial bundles are lodged, write a letter to the Court (with a copy to all other parties) stating that it is not willing so to agree, and explaining why that is so.

**35.31**
The number content and organisation of the trial bundles should be agreed in accordance with the following procedure:

(1) the claimant must submit proposals to all other parties at least 6 weeks before the date fixed for trial; and

(2) the other parties must submit details of additions they require and any suggestions for revision of the claimant's proposals to the claimant at least 4 weeks before the date fixed for trial.

**35.32**
Where it is not possible to agree the contents of the bundle, a summary of the points on which the parties are unable to agree should be included.

**35.33**
Preparation of the trial bundles must be completed not later than 21 days before the





date fixed for trial unless the Court orders otherwise.

**35.34**
Unless the Court orders otherwise, a full set of the trial bundles must be lodged with the Listing Office at least 14 days before the date fixed for trial.

**Contents**
**35.35**
Unless the Court orders otherwise, the trial bundle should include a copy of:

(1) the claim form and all statements of case;

(2) a case summary and/or chronology where appropriate;

(3) requests for further information and responses to the requests;

(4) all witness statements to be relied on as evidence;

(5) any witness summaries;

(6) any notices of intention to rely on hearsay evidence under **Rule 29.104**;

(7) any notices of intention to rely on evidence (such as a plan, photograph etc.) under **Rule 29.126** which is not:



(a) contained in a witness statement, affidavit or experts report;

(b) being given orally at trial;

(c) hearsay evidence under **Rule 29.104**;



(8) any experts' reports and responses to them;

(9) any order giving directions as to the conduct of the trial;

(10) any other documents required by a Court order;

(11) any other documents required by any other Rule or Practice Direction; and

(12) any other necessary documents.

**35.36**
The originals of the documents contained in the trial bundle, together with copies of any other Court orders should be available at the trial.

**Organisation**
**35.37**
Bundles should be prepared as follows:

(1) No more than one copy of any one document should be included, unless there is good reason for doing otherwise;



(2) Contemporaneous documents, and correspondence, should be included in chronological order;

(3) Where a contract or similar document is central to the case it may be included in a separate place provided that a page is inserted in the chronological run of documents to indicate:

(a) the place the contract or similar document would have appeared had it appeared chronologically; and

(b) where it may be found instead;

(4) Documents in manuscript, or not fully legible, should be transcribed; the transcription should be marked and placed adjacent to the document transcribed;

(5) Documents that are not in English should be translated; the translation should be marked and placed adjacent to the document transcribed; the translation should be agreed, or, if it cannot be agreed, each party's proposed translation should be included;

(6) If a document has to be read across rather than down the page, it should be so placed in the bundle as to ensure that the top of the text is nearest the spine;

    

(7) No bundle should contain more than 300 pages;

(8) Bundles should not be overfilled, and should allow sufficient room for later insertions. Subject to this, the size of file used should not be a size that is larger than necessary for the present and anticipated contents;

(9) Bundles should be paginated, in the bottom right hand corner and in a form that can clearly be distinguished from any existing pagination on the document;

(10) Bundles should be indexed, save that a chronological bundle of contemporaneous documents need not be indexed if an index is unlikely to be useful;

(11) Bundles should be numbered and named on the outside and on the inside front cover, the label to include the short title of the case, and a description of the bundle (including its number, where relevant).

**35.38**
Documents within bundles should be marked as follows:

(1) When copy documents from exhibits have been included in the bundle(s), then unless clearly unnecessary, the copy of the affidavit or witness statement to which the documents were exhibited should be marked in the right hand margin (in manuscript if need be) to show where the document referred to may be found in the bundle(s).







(2) Unless clearly unnecessary, where copy documents in a bundle are taken from the disclosure of more than one party, the documents should be marked in the top right hand corner (in manuscript if need be) to show from which party's disclosure the copy document has been taken;

(3) Where there is a reference in a statement of case or witness statement to a document which is contained in the trial bundles, a note should be made in the margin (if necessary in manuscript) identifying the place where that document is to be found. Unless otherwise agreed this is the responsibility of the party tendering the statement of case or witness statement.

**35.39**
For the trial a handy-sized core bundle should normally be provided containing the really important documents in the case. The documents in this bundle should be paginated, but each page should also bear its bundle and page number reference in the main bundles. It is particularly important to allow sufficient room for later insertions (see **Rule 35.37(8)** above).

**35.40**
Large documents, such as plans, should be placed in an easily accessible file.

**Representation At Trial Of Companies Or Other Corporations**
**35.41**
At any hearing, a written statement containing the following information should be provided for the Court:

(1) the name and address of each of the parties' legal representatives for trial;

(2) his qualification or entitlement to act as a legal representatives for trial; and

(3) the party for whom he so acts.

**Representation at trial of Companies or Other Corporations**
**35.41.1**
In *Philippe Choque v Mondial (Dubai) LLC & Ors* [2013] DIFC CFI 026 (17 March 2014) the Court authorised an individual to represent the first defendant, despite them not being an employee of the defendant company. The individual in question was an independent non-executive director of the first defendant; he had been authorised in writing by the sole manager and authorised legal representative of the first defendant to represent the company at the hearing: [16]–[17].

**35.42**
A company or other corporation may be represented at trial by an employee who is not otherwise authorised to appear before the Court if:

(1) the employee has been authorised by the company or corporation to appear at trial on its behalf; and

(2) the Court gives permission.

**35.43**

Where a party is a company or other corporation and is to be represented at a hearing by an employee, the written statement should contain the following additional information:

(1) The full name of the company or corporation as stated in its certificate of registration;

(2) The registered number of the company or corporation;

(3) The position or office in the company or corporation held by the representative; and

(4) The date on which and manner in which the representative was authorised to act for the company or corporation, e.g. _____ 20____: written authority from managing director; or _____ 20____: Board resolution dated _____ 20____.

**35.44**

Although **Rule 35.42** allows a company or other corporation with the permission of the Court to be represented at trial by an employee, the complexity of most cases in the Court will make that unsuitable. Accordingly, permission will be given only in unusual circumstances.

**35.45**

Permission under **Rule 35.42** should be obtained in advance of the hearing from the Judge who is to hear the case. If it is for any reason impracticable or inconvenient to do so, the permission should be obtained from any Judge by whom the case could be heard.

**35.46**

The permission may be obtained informally and without notice to the other parties. The Judge who gives the permission should record in writing that he has done so and supply a copy to the company or corporation in question and to any other party who asks for one.

**35.47**

Permission will not normally be granted under **Rule 35.42** in contempt proceedings.

**Information Technology At Trial**
**35.48**

The use of information technology at trial is encouraged where it is likely substantially to save time and cost or to increase accuracy.

**35.49**

If any party considers that it might be advantageous to make use of information technology in preparation for, or at, trial, the matter should be raised at the case management conference. This is particularly important if it is considered that document handling systems would assist disclosure and inspection of documents or the use of documents at trial.

**35.50**

Where information technology is to be used for the purposes of presenting the case at

trial, the same system must be used by all parties and must be made available to the Court.

**Reading Lists, Authorities And Trial Timetable**
**35.51**
Unless the Court orders otherwise, a single reading list approved by all the parties' legal representatives for trial must be lodged with the Registry not later than 1 p.m., two days (i.e. two clear days) before the date fixed for trial together with an estimate of the time required for reading.

**35.52**
If any party objects to the Judge reading any document in advance of the trial, the objection and its grounds should be clearly stated in a letter accompanying the trial bundles and in the skeleton argument of that party.

**35.53**
Parties should consider in particular whether they have any objection to the Judge's reading the witness statements before the trial.

**35.54**
In the absence of objection, the Judge will be free to read the witness statements and documents in advance.




**35.55**
A composite bundle of the authorities referred to in the skeleton arguments should be lodged with the Registry as soon as possible after skeleton arguments have been exchanged.

**35.56**
Unless otherwise agreed, the preparation of the bundle of authorities is the responsibility of the claimant, who should provide copies to all other parties. The parties' legal representatives should liaise in relation to the production of bundles of authorities to ensure that the same authority does not appear in more than one bundle.

**35.57**
When lodging the reading list, the claimant should also lodge a trial timetable.

**35.58**
A trial timetable may have been fixed by the Judge at the pre-trial review. If it has not, a trial timetable should be prepared by the legal representatives for the claimant after consultation with the legal representatives for all other parties.

**35.59**
If there are differences of view between the legal representatives for the claimant and legal representatives for other parties, these should be shown.

**35.60**
The trial timetable will provide for oral submissions, witness evidence and expert evidence over the course of the trial. On the first day of the trial the Judge may fix the trial timetable, subject to any further order.



**Skeleton Arguments Etc. At Trial**
**35.61**
Written skeleton arguments should be prepared by each party. Guidelines on the preparation of skeleton arguments are set out in Schedule A to Part 23.

**Skeleton Arguments at Trial**
**35.61.1** – See the commentary at paragraph 1.6.2 above and Practice Direction No. 2 of 2016.

**35.62**
Unless otherwise ordered, the skeleton arguments should be served on all other parties and lodged with the Court as follows:

    (1) by the claimant, not later than 1 p.m., two days (i.e. two clear days) before the start of the trial;

    (2) by each of the defendants, not later than 1 p.m., one day (i.e. one clear day) before the start of the trial.

**35.63**
In heavier cases, it will often be appropriate for skeleton arguments to be served and lodged at earlier times than indicated at **Rule 35.62**. The timetable should be discussed between the legal representatives and may be the subject of a direction in the pre-trial timetable or at any pre-trial review.

**35.64**
The claimant should provide a chronology with his skeleton argument. Indices (i.e. documents that collate key references on particular points, or a substantive list of the contents of a particular bundle or bundles) and dramatis personae, should also be provided where these are likely to be useful. Guidelines on the preparation of chronologies and indices are set out in Schedule A to Part 23.

**Trial Sitting Days And Hearing Trials In Public**
**35.65**
Trial sitting days will not normally include Fridays, Saturdays and UAE Public Holidays.

**35.66**
Where it is necessary in order to accommodate hearing evidence from certain witnesses or types of witness, the Court may agree to sit outside normal hours.

**Oral Opening Statements At Trial**
**35.67**
Oral opening statements should as far as possible be uncontroversial and in any event no longer than the circumstances require. Even in a very heavy case, oral opening statements may be very short.

**35.68**
At the conclusion of the opening statement for the claimant, the legal representatives

for each of the other parties will usually each be invited to make a short opening statement.

**Applications In The Course Of Trial**
**35.69**
It will not normally be necessary for an application notice to be issued for an application which is to be made during the course of the trial, but all other parties should be given adequate notice of the intention to apply.

**35.70**
Unless the Judge directs otherwise, the parties should prepare skeleton arguments for the hearing of the application.

**Oral Closing Submissions At Trial**
**35.71**
All parties will be expected to make oral closing submissions, whether or not closing submissions have been made in writing. It is a matter for the legal representatives to consider how in all the circumstances these oral submissions should be presented.

**35.72**
Unless the trial Judge directs otherwise, the claimant will make his oral closing submissions first, followed by the defendant(s) in the order in which they appear on the claim form with the claimant having a right of reply.

**Written Closing Submissions At Trial**
**35.73**
In a more substantial trial, the Court will normally also require closing submissions in writing after oral closing submissions. However, the trial judge may decide:

> (a) that written closing submissions are unnecessary;

> (b) may direct the scope of the written submissions or;

> (c) dispense with them. Oral submissions may in some cases also be unnecessary, and it is open to the trial judge to decide accordingly.

**35.74**
In the case of written submissions the Court will normally allow an appropriate period of time after the conclusion of the evidence to allow the preparation of these submissions.

**35.75**
Even in a less substantial trial, the Court will normally require a skeleton argument on matters of law.

**Judgment**
**35.76**
Where judgment is to be reserved the Judge may, at the conclusion of the hearing, invite the views of the parties' legal representatives as to the arrangements to be made for the handing down of the judgment.

**35.77**
The Court may provide a copy of the draft judgment to the parties' legal representatives

by 4 p.m. on the second working day before handing down, or at such other time as the Court may direct.

**35.78**

If the Judge intends to hand down a written judgment, a copy of the draft text marked

*"Unapproved judgment. No permission is granted to copy or use in Court"*

and bearing the rubric:

*"Confidential to the parties and their legal representatives"*

may, at the Court's discretion, be supplied to the advocates one clear day before the judgment is to be delivered.

**35.79**

A copy of the draft judgment may be shown, in confidence, to the parties provided that:

(1) neither the judgment nor its substance is disclosed to any other person or used in the public domain; and

(2) no action is taken (other than internally) in response to the judgment, before the judgment is handed down.

**35.80**

Any breach of the obligation of confidentiality prescribed by Rule 35.79 may be treated as contempt of Court.

**35.81**

The case may be listed for judgment, and the judgment handed down at the appropriate time.

**35.82**

Legal representatives should inform the Court not later than noon on the day before judgment is to be handed down of any typographical or other errors of a similar nature which the Judge might wish to correct.

**35.83**

Unless the parties or their legal representatives are told otherwise when the draft judgment is circulated, the parties must, in respect of any draft agreed order:

(1) e-mail a copy to the Registry (together with any proposed corrections or amendments to the draft judgment); and

(2) file four copies in the Registry, by noon on the working day before handing down.

**35.84**

A copy of a draft order must bear the case reference, the date of handing down and the name of the Judge.

**35.85**

Judgment is not delivered until it is formally pronounced in an open hearing by the

Court or is issued by the Registry to the parties or their legal representatives.

**35.86**
Where any consequential orders are agreed, the parties' legal representatives need not attend on the handing down.

**35.87**
Where a legal representative does attend, the Court may, if it considers such attendance was unnecessary, disallow the costs of the attendance.

**35.88**
In a matter heard by more than one Judge, the judgment may be handed down by a single member of the Court.

**35.89**
Copies of the approved judgment will be made available to the parties, to law reporters and to any other person wanting a copy.

**35.90**
The Judge may direct that the written judgment stand as the definitive record and that no transcript need be made. Any editorial corrections made at the time of handing down will be incorporated in an approved official text as soon as possible.

**Costs**
**35.91**
The rules governing the award and assessment of costs are contained in Parts 38 to 40.

**35.92**
The immediate assessment procedure provided for in Part 38 also applies to trials lasting one day or less.

**Impounded Documents**
**35.93**
Documents impounded by order of the Court must not be released from the custody of the Court except in compliance:

    (1) with a Court order; or

    (2) with a written request made by the Attorney General of Dubai.

**35.94**
A document released from the custody of the Court under Rule 35.92(2) must be released into the custody of the person who requested it.

**35.95**
Documents impounded by order of the Court, while in the custody of the Court, may not be inspected except by a person authorised to do so by a Court order.

**Settlement Or Discontinuance After The Trial Date Is Fixed**
**35.96**



Where:

    (1) an offer to settle a claim is accepted;

    (2) or a settlement is reached; or

    (3) a claim is discontinued, which disposes of the whole of a claim for which a date or 'window' has been fixed for the trial;

the parties must ensure that the Registry is notified immediately.

**35.97**
If an order is drawn up giving effect to the settlement or discontinuance of a claim, a copy of the sealed order should be filed with the Registry.

**Recording Of Proceedings**
**35.98**
At any hearing the proceedings will be tape recorded unless the Judge directs otherwise.

**35.99**
No party or member of the public may use unofficial recording equipment in any Court or Judge's room without the permission of the Court. To do so without permission constitutes a contempt of Court.



**35.100**
    (1) Any party or person may require a transcript or transcripts of the recording of any hearing to be supplied to him, upon payment of the charges authorised by any scheme in force for the making of the recording or the transcript.

    (2) Video and audio recordings of a hearing will normally only be provided for the purpose of preparing a transcript of the proceedings or to provide a record for the private use of the party or person by whom it is requested. Such recordings shall not be used for any other purpose without express authorisation of the Court and shall not, without express permission of the Court, be published or broadcast in any way whatsoever.

**35.101**
Where the person requiring the transcript or transcripts is not a party to the proceedings and the hearing or any part of it was held in private under **Rule 35.4**, **Rule 35.99** does not apply unless the Court so orders.

**Exhibits At Trial**
**35.102**
Exhibits which are handed in and proved during the course of the trial should be recorded on an exhibit list and kept in the custody of the Court until the conclusion of the trial, unless the Judge directs otherwise. At the conclusion of the trial it is the parties' responsibility to obtain the return of those exhibits which they handed in and to preserve them for the period in which any appeal may take place.

PART 36




JUDGMENTS AND ORDERS

## I JUDGMENTS AND ORDERS
### Scope Of This Part
**36.1**

This Section sets out Rules about judgments and orders which apply except where any other of these Rules or a Practice Direction makes a different provision in relation to the judgment or order in question.

### Standard Requirements
**36.2**

Every judgment or order must state the name and judicial title of the person who made it, unless it is:

(1) default judgment entered under Rule 13.7 (entry of default judgment where judgment is entered by a Court officer) or a default costs certificate obtained under Rule 40.17; or

(2) judgment entered under Rule 15.17, 15.23 and 15.29 (entry of judgment on admission where judgment is entered by a Court Officer).

**36.3**

Every judgment or order must:

(1) bear the time of day at which and date on which it is given or made; and

(2) be sealed by the Court.

**36.4**

Court orders may be issued and sealed by the Registry electronically.

**36.5**

Where a party applies for permission to appeal against a judgment or order at the hearing at which the judgment or order was made, the judgment or order shall state:

(1) whether or not the judgment or order is final; and

(2) whether the Court gives permission to appeal.

### Examples Of Forms Of Trial Judgment
**36.6**

Form P36/01 is the general form of judgment.

**36.7**

A trial judgment should have the following matters set out in a preamble:

(1) any order made during the course of the trial concerning the use of evidence;

(2) any matters that were agreed between the parties prior to or during the course of the trial in respect of:

      (a) liability;

      (b) contribution;

      (c) the amount of the damages or part of the damages; and

    (3) the findings of the Judge in respect of each head of damage in a personal injury case.

**Statement As To Service Of A Claim Form**
**36.8**
Where a party to proceedings which have gone to trial requires a statement to be included in the judgment as to where, and by what means the claim form issued in those proceedings was served, application should be made to the trial Judge when judgment is given.

**36.9**
If the Judge so orders, the statement will be included in a preamble to the judgment as entered.

**Adjustment Of Final Judgment Figure In Respect Of An Interim Payment**
**36.10**
In a final judgment where an interim payment has previously been made which is less than the total amount awarded by the Judge, the judgment or order should set out in a preamble:

    (1) the total amount awarded by the Judge; and

    (2) the amount and date of the interim payment(s).

**36.11**
The total amount awarded by the Judge should then be reduced by the total amount of any interim payments, and the judgment or order should then provide for entry of judgment and payment of the balance.

**36.12**
In a final judgment where an interim payment has previously been made which is more than the total amount awarded by the Judge, the judgment or order should set out in a preamble:

    (1) the total amount awarded by the Judge; and

    (2) the amount and date of the interim payment(s).

**36.13**
An order should then be made for repayment, reimbursement, variation or discharge under Rule 25.87 and for interest on an overpayment under Rule 25.90.

**Currency Other Than US Dollars**
**36.14**





Where judgment is ordered to be entered in a currency other than US Dollars, the order should be in the following form:

It is ordered that the defendant pay the claimant (state the sum in the currency other than US Dollars) or the US Dollar equivalent at the time of payment.

**Costs**
**36.15**
Attention is drawn to Parts 38 to 40, in particular, to the Court's power to make a summary assessment of costs and the provisions relating to interest in detailed assessment proceedings.

**36.16**
Attention is also drawn to **Rule 38.56** which provides that if an order makes no mention of costs, none are payable in respect of the proceedings to which it relates.

**Judgments Paid By Instalments**
**36.17**
Where a judgment is to be paid by instalments, the judgment should set out:

(1) the total amount of the judgment;

(2) the amount of each instalment;

(3) the number of instalments and the date on which each is to be paid; and



(4) to whom the instalments should be paid.



**Drawing Up And Filing Of Judgments And Orders**
**36.18**
Except for orders made by the Court of its own initiative and unless the Court otherwise orders, every judgment or order will be drawn up by the parties.

**36.19**
Where a judgment or an order is to be drawn up by a party:

(1) he must file it no later than 48 hours after the date on which the Court ordered or permitted him to draw it up so that it can be sealed by the Court; and

(2) if he fails to file it within that period, any other party may draw it up and file it.

**36.20**
Where any judgment, order or direction is to be served outside the DIFC, unless the Court otherwise directs:

(1) in proceedings on notice the parties must agree and lodge with the Court an Arabic translation of any judgment, order or direction within 48 hours of the same being given, made or handed down as the case may be, in default of which the Court may accept one party's translation or suspend or revoke the judgment, order or direction on such terms as it thinks fit;



(2) in without notice proceedings the party seeking relief must provide an Arabic translation of the order sought and made; or

(3) in the event of any inconsistency between the Arabic and English versions of any judgment, order or direction, the English version shall prevail.

**36.21**
The Court may direct that:

(1) a judgment or an order drawn up by a party must be checked by the Court before it is sealed; or

(2) before a judgment or an order is drawn up by the Court, the parties must file an agreed statement of its terms.

**36.22**
If the Court directs that a judgment or order which is being drawn up by a party must be checked by the Court before it is sealed, the party responsible must file the draft within 48 hours of the date the order was made with a request that the draft be checked before it is sealed.

**36.23**
If the Court directs the parties to file an agreed statement of terms of an order which the Court is to draw up, the parties must do so no later than 48 hours from the date the order was made, unless the Court directs otherwise.

**36.24**
If the Court requires the terms of an order which is being drawn up by the Court to be agreed by the parties the Court may direct that a copy of the draft order is to be sent to all the parties:

(1) for their agreement to be endorsed on it and returned to the Court before the order is sealed; or

(2) with notice of an appointment to attend before the Court to agree the terms of the order.

**Service Of Judgments And Orders**
**36.25**
Where a judgment or an order has been drawn up by a party and is to be served by the Court:

(1) the party who drew it up must file a copy to be retained at Court and sufficient copies for service on him and on the other parties; and

(2) once it has been sealed, the Court must serve a copy of it on each party to the proceedings.

**36.26**
Unless the Court directs otherwise, any order made otherwise than at trial must be



served on:

    (1) the applicant and the respondent; and

    (2) any other person on whom the Court orders it to be served.

**Power To Require Judgment Or Order To Be Served On A Party As Well As His Legal Representative**
**36.27**
Where the party on whom a judgment or order is to be served is acting by a legal representative, the Court may order the judgment or order to be served on the party as well as on his legal representative.

**Agreed Orders**
**36.28**
An application for an agreed order must include a draft of the proposed order signed on behalf of all the parties to whom it relates.

**36.29**
Where proceedings are to be stayed on agreed terms:

    (1) The draft order should include the following:

    "(1) The Defendant having agreed to the terms set forth in the schedule hereto, IT IS ORDERED THAT all further proceedings in this claim be stayed, except for the purpose of carrying such terms into effect.

    (2) Liberty to apply in order to carry such terms into effect."; and

    (2) Settlement terms should be set out in a schedule attached to the draft order.

**When Judgment Or Order Takes Effect**
**36.30**
A judgment or order takes immediate effect from the time on the day when it is given or made, or such later time or date as the Court may specify.

**Time From Which Interest Begins To Run**
**36.31**
Where interest is payable on a judgment pursuant to Article 39 of the Court Law 2004, the interest shall begin to run from the date that judgment is given unless:

    (1) a Rule in another Part or a Practice Direction makes different provision; or

    (2) the Court orders otherwise.

**36.32**
The Court may order that interest shall begin to run from a date before the date that judgment is given.

**Who May Apply To Set Aside Or Vary A Judgment Or Order**
**36.33**



A person who is not a party but who is directly affected by a judgment or order may apply to have the judgment or order set aside or varied.

**Time For Complying With A Judgment Or Order**
**36.34**
A party must comply with a judgment or order for the payment of an amount of money (including costs) within 14 days of the date of the judgment or order, unless:

(1) the judgment or order specifies a different date for compliance (including specifying payment by instalments);

(2) any of these Rules specifies a different date for compliance; or

(3) the Court has stayed the proceedings or judgment.

**Orders Requiring An Act To Be Done**
**36.35**
An order which requires an act to be done (other than a judgment or order for the payment of an amount of money) must specify the time within which the act should be done.

**36.36**
The consequences of failure to do an act within the time specified may be set out in the order. In this case the wording of the following example suitably adapted must be used:

*"Unless the [claimant/defendant] serves his list of documents by 4.00 p.m. on Wednesday, 31 January 2007 his [claim/defence] will be struck out and judgment entered for the [defendant/claimant]."*

**Non-Compliance With A Judgment Or Order**
**36.37**
An order which restrains a party from doing an act or requires an act to be done should, if disobedience is to be dealt with by an application to bring contempt of Court proceedings, have a penal notice endorsed on it as follows:

*"If you [name] disobey this order you may be held to be in contempt of Court and may be imprisoned, fined or have your assets seized."*

**36.38**
The provisions of Rule 36.35 also apply to an order which contains an undertaking by a party to do or not do an act, subject to Rule 36.39.

**36.39**
The Court has the power to decline to:

(1) accept an undertaking; and

(2) deal with disobedience in respect of an undertaking by contempt of Court proceedings, unless the party giving the undertaking has made a signed statement to the effect that he understands the terms of his undertaking and the consequences of failure to comply with it.



**36.40**

The statement may be endorsed on the order containing the undertaking or may be filed in a separate document such as a letter.

**Correction Of Errors In Judgments And Orders**
**36.41**

The Court may at any time correct an accidental slip or omission in a judgment or order.

**36.41.1**

For an explanation of the *"slip rule"* see *King and Wood Mallesons (Mena) LLP v Meydan Group LLC and Banyan Tree Corporate Pte Limited* [2017] DIFC CA 001 (20 March 2017) at [43]: while the boundaries of the rule are not defined, the operation is limited to accidental slips or omissions. The inherent power is limited to a power to make the "meaning and intention of the court clear but it is a fundamental principle that this does not enable a court to have second or additional thoughts. There cannot be a change in the substance of the order".

**36.42**

An application for a correction must be made by application notice and the standard application fee should be paid. The application notice should be precise in describing the nature of the error, should set out the exact wording of the correction sought and, where appropriate should be accompanied by a draft order. An application may be dealt with without a hearing:

(1) where the applicant so requests;

(2) with the consent of the parties; or

(3) where the Court does not consider that a hearing would be appropriate.

**36.43**

The Judge 43may deal with the application without notice if the slip or omission is obvious or may direct notice of the application to be given to the other party or parties.

**36.44**

If the application is opposed it should, if practicable, be listed for hearing before the Judge who gave the judgment or made the order.

**36.45**

The Court has an inherent power to vary its own orders to make the meaning and intention of the Court clear.

**36.45.1**

See commentary at 36.41.1

**36.46**

Where the Court allows an application to correct an order and the reason for the error



was a clerical mistake on the part of the Registry, the application fee will be refunded.

**Cases Where Court Gives Judgment Both On Claim And Counterclaim**
36.47
Rule 36.48 applies where the Court gives judgment for specified amounts both for the claimant on his claim and against the claimant on a counterclaim.

36.48
If there is a balance in favour of one of the parties, it may order the party whose judgment is for the lesser amount to pay the balance.

36.49
In a case to which Rule 36.48 applies, the Court may make a separate order as to costs against each party.

**Judgment In Favour Of Certain Part Owners Relating To The Detention Of Goods**
36.50
In Rule 36.51 'part owner' means one of two or more persons who have an interest in the same goods.

36.51
Where:

    (1) a part owner makes a claim relating to the detention of the goods; and

    (2) the claim is not based on a right to possession;

any judgment or order given or made in respect of the claim is to be for the payment of damages only, unless the claimant had the written authority of every other part owner of the goods to make the claim on his behalf as well as for himself.

**II DECLARATORY JUDGMENTS\**
36.52
The Court may make binding declarations whether or not any other remedy is claimed.

**III PREPARATION OF DOCUMENTS UNDER AN ORDER**
36.53
Where a judgment or order directs any document to be prepared, executed or signed, the order will state:

    (1) the person who is to prepare the document; and

    (2) if the document is to be approved, the person who is to approve it.

36.54
If the parties are unable to agree on the form of the document, any party may apply in accordance with Part 23 for the form of the document to be settled.

36.55
In such case the Judge may:



(1) settle the document himself; or

(2) refer it to:

    (a) the Registrar; or

    (b) an Assessor in accordance with Part 31 subject to such modifications as he thinks fit.

**IV ACCOUNTS AND INQUIRIES**
**Accounts And Inquiries: General**
**36.56**
Where the Court orders any account to be taken or any inquiry to be made, it may, by the same or a subsequent order, give directions as to the manner in which the account is to be taken and verified or the inquiry is to be conducted.

**36.57**
In particular, the Court may direct that in taking an account, the relevant books of account shall be evidence of their contents but that any party may take such objections to the contents as he may think fit.

**36.58**
Any party may apply to the Court in accordance with Part 23 for directions as to the taking of an account or the conduct of an inquiry or for the variation of directions already made.

**36.59**
Every direction for the taking of an account or the making of an inquiry shall be numbered in the order so that, as far as possible, each distinct account and inquiry is given its own separate number.

**Verifying The Account**
**36.60**
Subject to any order to the contrary:

(1) the accounting party must make out his account and verify it by an affidavit to which the account is exhibited; and

(2) the accounting party must file the account with the Court and at the same time notify the other parties that he has done so and of the filing of any affidavit verifying or supporting the account.

**Objections**
**36.61**
Any party who wishes to contend:

(1) that an accounting party has received more than the amount shown by the account to have been received;

(2) that the accounting party should be treated as having received more than he has actually received;





(3) that any item in the account is erroneous in respect of amount; or

(4) that in any other respect the account is inaccurate;

must, unless the Court directs otherwise, give written notice to the accounting party of his objections.

**36.62**
The written notice referred to in **Rule 36.61** must, so far as the objecting party is able to do so:

(1) state the amount by which it is contended that the account understates the amount received by the accounting party;

(2) state the amount which it is contended that the accounting party should be treated as having received in addition to the amount he actually received;

(3) specify the respects in which it is contended that the account is inaccurate; and

(4) in each case, give the grounds on which the contention is made.

**36.63**
The contents of the written notice must be verified by an affidavit to which the notice is an exhibit.

**Allowances**
**36.64**
In taking any account all just allowances shall be made without any express direction to that effect.

**Management Of Proceedings**
**36.65**
The Court may at any stage in the taking of an account or in the course of an inquiry direct a hearing in order to resolve an issue that has arisen and for that purpose may order that points of claim and points of defence be served and give any necessary directions.

**Delay**
**36.66**
If it appears to the Court that there is undue delay in the taking of any account or the progress of any inquiry the Court may require the accounting party or the party with the conduct of the inquiry, as the case may be, to explain the delay and may then make such order for the management of the proceedings (including a stay) and for costs as the circumstances may require.

**Distribution**
**36.67**



Where some of the persons entitled to share in a fund are known but there is, or is likely to be, difficulty or delay in ascertaining other persons so entitled, the Court may direct, or allow, immediate payment of their shares to the known persons without reserving any part of those shares to meet the subsequent costs of ascertaining the other persons.

**Accounts And Inquiries To Be Conducted Before The Registrar**
36.68
Unless the Court orders otherwise, an account or inquiry will be taken or made by the Registrar.

**Advertisements**
36.69
The Court may:

   (1) direct any necessary advertisement; and

   (2) fix the time within which the advertisement should require a reply.

**Examination Of Claims**
36.70
Where the Court orders an account of debts or other liabilities to be taken, it may direct any party, within a specified time, to:



   (1) examine the claims of persons claiming to be owed money out of the estate or fund in question;

   (2) determine, so far as he is able, which of them are valid; and

   (3) file written evidence:

      (a) stating his findings and his reasons for them; and

      (b) listing any other debts which are or may be owed out of the estate or fund.

36.71
Where the Court orders an inquiry for next of kin or other unascertained claimants to an estate or fund, it may direct any party, within a specified time, to:

   (1) examine the claims that are made;

   (2) determine, so far as he is able, which of them are valid; and

   (3) file written evidence stating his findings and his reasons for them.

36.72
If the personal representatives or trustees concerned are not the parties directed by the Court to examine claims, the Court may direct them to join with the party directed to examine claims in producing the written evidence required by this rule.

**Consideration Of Claims By The Court**
36.73



For the purpose of considering a claim the Court may:

(1) direct it to be investigated in any manner;

(2) direct the person making the claim to give further details of it; and

(3) direct that person to:

(a) file written evidence; or

(b) attend Court to give evidence;

to support his claim.

**Notice Of Decision**
**36.74**
If:

(1) the Court has allowed or disallowed any claim or part of a claim; and

(2) the person making the claim was not present when the decision was made;

the Court will serve on that person a notice informing him of its decision.

**Interest On Debts**
**36.75**

Where an account of the debts of a deceased person is directed by any judgment, unless the deceased's estate is insolvent or the Court orders otherwise, interest shall be allowed: 

(1) on any debt which carries interest, at the rate it carries; and

(2) on any other debt, from the date of the judgment, at the rate payable on judgment debts at that date.

**36.76**
Where interest on a debt is allowed under **Rule 36.75(2)**, it shall be paid out of any assets of the estate which remain after payment of:

(1) any costs of the proceedings directed to be paid out of the estate;

(2) all the debts which have been established; and

(3) the interest on such of those debts as by law carry interest.

**36.77**
For the purpose of **Rules 36.75** and **36.76**:

(1) 'debt' includes funeral, testamentary or administration expenses; and

(2) in relation to any expenses incurred after the judgment, **Rule 36.75(2)** applies as if, instead of the date of the judgment, it referred to the date when the expenses



became payable.

## PART 37
CHANGE OF LEGAL REPRESENTATIVE

**Legal Representative Acting For A Party**
**37.1**
Where the address for service of a party is the business address of his legal representative, the legal representative will be considered to be acting for that party until the provisions of this Part have been complied with.

**37.2**
A legal representative appointed to represent a party only as an advocate at a hearing will not be considered to be acting for that party within the meaning of this Part.

**Change Of Legal Representative — Duty To Give Notice**
**37.3**
Rules 37.4 to 37.10 apply where:

    (1) a party for whom a legal representative is acting wants to change his legal representative;

    (2) a party, after having conducted the claim in person, appoints a legal representative to act on his behalf (except where the legal representative is appointed only to act as an advocate for a hearing); or

    (3) a party, after having conducted the claim by a legal representative, intends to act in person.

**37.4**
Where **Rules 37.3** to **37.10** apply, the party or his legal representative (where one is acting) must:

    (1) file notice of the change; and

    (2) serve notice of the change on every other party and, where **Rule 37.3(1)** or **37.3(3)** applies, on the former legal representative.

**37.5**
The notice must state the party's new address for service.

**37.6**
The notice filed at Court must state that notice has been served as required by paragraph **37.4(2)**.

**37.7**
Where a party has changed his legal representative or intends to act in person, the





former legal representative will be considered to be the party's legal representative unless and until:

(1) notice is filed and served in accordance with paragraph **37.4**; or

(2) the Court makes an order under **Rules 37.11** to **37.13** and the order is served as required by **Rule 37.13**.

**37.8**
In addition, where a party or legal representative changes his address for service, a notice of that change should be filed and served on every party.

**37.9**
A party who, having conducted a claim by a legal representative, intends to act in person must give in his notice an address for service that is within the jurisdiction.

**Notice of an address for service in the jurisdiction**
**37.9.1**
In circumstances where a jurisdiction challenge fails and such that the acknowledgment of service ceases to have effect pursuant to RDC 12.8, the party's lawyers are not authorised to accept service. RDC Part 37 does not apply and a party is not required to give notice of an address under RDC 37.9; *King and Wood Mallesons (Mena) LLP v Meydan Group LLC and Banyan Tree Corporate Pte Limited* [2017] DIFC CA 001 (20 March 2017) at [14], [17] & [46]-[47].

**37.10**
Form P37/01 should be used to give notice of any change.

**Order That A Legal Representative Has Ceased To Act**
**37.11**
A legal representative may apply for an order declaring that he has ceased to be the legal representative acting for a party.

**37.12**
Where an application is made under **Rule 37.11**:

(1) the application should be made in accordance with Part 23;

(2) notice of the application must be given to the party for whom the legal representative is acting, unless the Court directs otherwise; and

(3) the application must be supported by evidence.

**37.13**
Where the Court makes an order that a legal representative has ceased to act:

(1) a copy of the order must be served on every party to the proceedings;

(2) if it is served by a party or the legal representative, the party or the legal representative (as the case may be) must file a certificate of service in Form



P37/01; and

(3) the order takes effect when it is served.

**Removal Of Legal Representative Who Has Ceased To Act On Application Of Another Party**
**37.14**
Where:

(1) a legal representative who has acted for a party:

(a) has died;

(b) has become bankrupt;

(c) has ceased to practice; or

(d) cannot be found; and

(2) the party has not given notice of a change of legal representative or notice of intention to act in person as required by **Rule 37.4**;

any other party may apply for an order declaring that the legal representative has ceased to be the legal representative acting for the other party in the case.



**37.15**
Where an application is made under **Rule 37.14**:

(1) the application should be made in accordance with Part 23;

(2) notice of the application must be given to the party to whose legal representative the application relates, unless the Court directs otherwise; and

(3) the application must be supported by evidence.

**37.16**
Where the Court makes an order made under **Rule 37.14**:

(1) a copy of the order must be served on every other party to the proceedings;

(2) where it is served by a party, that party must file a certificate of service Form P37/01; and

(3) the order takes effect when it is served.

**New Address For Service Where Order Made Under Rules 37.11 Or 37.14**
**37.17**
Where the Court has made an order under **Rule 37.11** that a legal representative has ceased to act or under **Rule 37.14** declaring that a legal representative has ceased to be the legal representative for a party, the party for whom the legal representative was





acting must give a new address for service to comply with **Rule 9.15**.

## PART 38
### GENERAL RULES ABOUT COSTS

**Definitions And Application**
**38.1**
In this Part, unless the context otherwise requires:

(1) 'receiving party' means a party entitled to be paid costs;

(2) 'paying party' means a party liable to pay costs;

(3) 'fixed costs' means the amounts which are to be allowed in respect of legal representatives' charges in the circumstances set out in Part 39.

**38.2**
The costs to which Parts 38 to 40 apply include the following costs where those costs may be assessed by the Court:

(1) costs of proceedings before an arbitrator or umpire;



(2) costs of proceedings before a tribunal or other statutory body; and



(3) costs which are payable by one party to another party under the terms of a contract, where the Court makes an order for an assessment of those costs.

**Meaning Of Immediate Assessment**
**38.3**
'Immediate assessment' means the procedure by which the Court, when making an order about costs, orders payment of a sum of money instead of fixed costs or 'detailed assessment'.

**Meaning Of Detailed Assessment**
**38.4**
'Detailed assessment' means the procedure by which the amount of costs is decided by the Court in accordance with Part 40.

**Legal Representative's Duty To Notify Client**
**38.5**
Where:

(1) the Court makes a costs order against a legally represented party; and

(2) the party is not present when the order is made;

the party's legal representative must notify his client in writing of the costs order no later than 7 days after the legal representative receives notice of the order.



Court's discretion and circumstances to be taken into account when exercising its discretion as to costs

**Court's Discretion And Circumstances To Be Taken Into Account When Exercising Its Discretion As To Costs**
**38.6**
Subject to Rules 38.15 to 38.16 the Court has discretion as to:

(1) whether costs are payable by one party to another;

(2) the amount of those costs; and

(3) when they are to be paid.

**Court's discretion and circumstances to be taken into account**
**38.6.1**
The Court of Appeal in *Sky News Arabia FZ-LLC v Kassab Media FZ (LLC)* [2016] DIFC CA 10 (12 July 2016), having set out RDC 38.6 to 38.9, emphasised that the *"court had the discretion to award costs with consideration of the entirety of the surrounding circumstances" and that it was "not bound by the general rule that the party that has been successful overall is usually awarded its costs."* The Court of Appeal excluded from the respondent's costs from first instance of preparing a solicitor's witness statement which did not comply with Practice Direction 1 of 2016, so as to prevent the respondent from receiving any benefit of costs from the exclusion of its evidence.



**38.6.2**
In the absence of any specific provision as to the entitlement of litigants in person to costs, in *Howard Norman Leedham v Oxford Investment Managers Limited* [2008] DIFC CFI 006 (22 June 2010), the Court applied English CPR48.6 by virtue of RDC 2.10: [84]-[88].

**38.7**
If the Court decides to make an order about costs:

(1) the general rule is that the unsuccessful party will be ordered to pay the costs of the successful party; but

(2) the Court may make a different order.

**General rule as to costs**
**38.7.1**
In *TVM Capital Healthcare v Ali Akbar Hashemi* [2014] DIFC CA 006 (27 January 2015) at [29], the Court of Appeal gave guidance on the procedure to be adopted when making a costs award following a hearing with a reserved judgment. The trial judge should indicate his provisional view as to how costs should be awarded and thereafter to invite the parties to make representations within a limited time (7 or 14 days) to challenge that view.

**38.7.2**
In *Standard Chartered Bank v Investment Group Private Limited* CFI 026/2014 (Order



with Reasons dated 27 October 2016), Steel DCJ stayed the claim having regard to a conflict with the onshore Dubai Courts and the reference to the newly-established Joint Tribunal. He ordered that the Defendant who had brought the onshore proceedings pay the costs thrown away in the DIFC by the stay in any event on the indemnity basis, on the grounds that the *"present manoeuvres afford no credit to the activities of the Defendant."*

**38.8**
In deciding what order (if any) to make about costs, the Court must have regard to all the circumstances, including:

> (1) the conduct of all the parties;

> (2) whether a party has succeeded on part of his case, even if he has not been wholly successful; and

> (3) any payment into Court or admissible offer to settle made by a party which is drawn to the Court's attention and which is not a Part 32 offer.

**Conduct of the parties**
**38.8.1**
The decision on what costs order, if any, to make is an exercise of discretion by the judge. In the course of the appeal in *Al-Khorafi v Bank Sarasin* [2015] DIFC CA 003 (3 March 2016) at [339]-[345], the Court of Appeal considered a costs appeal on the grounds that the trial judge failed to take into account the effect of a late amendment which in due course succeeded. The appeal was dismissed on the grounds that *"in the exercise of the wide discretion the judge had in ruling on the question of costs he did not depart from the margin of appreciation allowable to him."*

**38.8.2**
This *"usual defence"* does not apply where the first instance judge makes a decision on costs without hearing argument on costs *(TVM Capital Healthcare v Ali Akbar Hashemi* [20014] DIFC CA 006 (27 January 2015) at [28]).

**38.9**
The conduct of the parties includes:

> (1) conduct before, as well as during, the proceedings;

> (2) whether it was reasonable for a party to raise, pursue or contest a particular allegation or issue;

> (3) the manner in which a party has pursued or defended his case or a particular allegation or issue; and

> (4) whether a claimant who has succeeded in his claim, in whole or in part, exaggerated his claim.

**Relevant aspects of conduct**
**38.9.4**

In relation to RDC 38.9(4) (exaggeration by successful party), see the schedule of reasons of Giles J in *Adil v Frontline Development Partners* (CFI 015/2014, 24 July 2016). In awarding a Claimant all his costs even though the Claimant did not succeed in all respects, the judge said at [14]:

> *"It is correct that in some respects the Claimant did not pursue or was not successful in his pleaded case; the Defendant also did not fully pursue his pleaded case and was egregiously unsuccessful. Costs should be determined on a realistic assessment of success or failure, to reflect the overall justice of the proceedings and without undue parsing into issues; it is commonplace that pleaded cases evolve in the conduct of the trial and that a realistic winner does not succeed on all issues."*

Care should be taken not to place too much reliance on CPR38.9(4). In *TVM Capital Healthcare v Ali Akbar Hashemi* [2014] DIFC CA 006 (27 January 2015), the Court of Appeal took as a starting point for the costs award an award of 80% of the Claimant's costs even though the Claimant only recovered around US$68,000 on a claim of US$29 million subsequently reduced to US$4.1 million. The Court emphasised (at [32]) that it was for the Defendant to protect itself by making a Part 32 offer (and similar logic would apply to any other admissible offer to settle under RDC 38.8(3)). However, further specific deduction was made because of the waste of Court time caused by a specific witness.

**38.10**
The orders which the Court may make include an order that a party must pay:

    (1) a proportion of another party's costs;

    (2) a stated amount in respect of another party's costs;

    (3) costs from or until a certain date only;

    (4) costs incurred before proceedings have begun;

    (5) costs relating to particular steps taken in the proceedings;

    (6) costs relating only to a distinct part of the proceedings; and

    (7) interest on costs from or until a certain date, including a date before judgment.

**38.11**
Where the Court would otherwise consider making an order under **Rule 38.10(6)**, it must instead, if practicable, make an order under paragraph **38.10(1)** or **38.10(3)**.

**38.12**
There are certain costs orders which the Court will commonly make in proceedings before trial. The following table sets out the general effect of these orders. The table is not an exhaustive list of the orders which the Court may make.

| Term | Effect |
|------|--------|



| Costs<br>Costs in any event | The party in whose favour the order is made is entitled to the costs in respect of the part of the proceedings to which the order relates, whatever other costs orders are made in the proceedings. |
|---|---|
| Costs in the case<br>Costs in the application | The party in whose favour the Court makes an order for costs at the end of the proceedings is entitled to his costs of the part of the proceedings to which the order relates. |
| Costs reserved | The decision about costs is deferred to a later occasion, but if no later order is made the costs will be costs in the case. |
| Claimants Defendant's costs in case/application | If the party in whose favour the costs order is made is awarded costs at the end of the proceedings, that party is entitled to his costs of the part of the proceedings to which the order relates. If any other party is awarded costs at the end of the proceedings, the party in whose favour the final costs order is made is not liable to pay the costs of any other party in respect of the part of the proceedings to which the order relates. |
| Costs thrown away | Where, for example, a judgment or order is set aside, the party in whose favour the costs order is made is entitled to the costs which have been incurred as a consequence. This includes the costs of— |

(a) preparing for and attending any hearing at which the judgment or order which has been set aside was made;

(b) preparing for and attending any hearing to set aside the judgment or order in question;

(c) preparing for and attending any hearing at which the Court orders the proceedings or the part in question to be adjourned;

(d) any steps taken to enforce a judgment or order which has subsequently been set aside.

**Costs of and caused by**
Where, for example, the Court makes this order on an application to amend a statement of case, the party in whose favour the costs order is made is entitled to the costs of preparing for and attending the application and the costs of any consequential amendment to his own statement of case.

**Costs here and below**
The party in whose favour the costs order is made is entitled not only to his costs in respect of the proceedings in which the Court makes the order but also to his costs of the proceedings in any lower Court.

**No order as to costs**



**Each party to pay his own costs**

Each party is to bear his own costs of the part of the proceedings to which the order relates whatever costs order the Court makes at the end of the proceedings.

**38.13**

Where the Court has ordered a party to pay costs, it may order an amount to be paid on account before the costs are assessed.

**Interim Payment**
**38.13.1**

In *Al-Awlaqi v Tabarak* [2009] DIFC CFI 023 (22 December 2010), the Court explained that: (i) there is no presumption against an order for interim payment being made (at [69]); (ii) a judge hearing the application may make an interim costs award if he is sufficiently acquainted with the circumstances of the case (at [71]-[72]), even if he is not the trial judge; and (iii) applying the English authority of *Mars UK* [1999] 2 Costs LR 44, an appropriate amount to order is some lesser sum than the likely full amount subject to the exercise of discretion in every case.

But see now paragraph 14 of Practice Direction No. 5 of 2014 providing for an award of 50% on account unless the Court orders otherwise. This appears to be a presumption as to both the principle of an interim payment and its amount.

**38.14**

Where a party entitled to costs is also liable to pay costs the Court may assess the costs which that party is liable to pay and either:



(1) set off the amount assessed against the amount the party is entitled to be paid and direct him to pay any balance; or

(2) delay the issue of a certificate for the costs to which the party is entitled until he has paid the amount which he is liable to pay.

**Costs In The Small Claims Tribunal ('SCT')**
**38.15**

The SCT may not order a party to a small claim to pay a sum to another party in respect of that other party's costs, fees and expenses, including those relating to an appeal, except:

(1) such part of any Court or Tribunal fees paid by that other party as the SCT may consider appropriate;

(2) such further costs as the SCT may assess by the summary procedure and order to be paid by a party who has behaved unreasonably.

**38.16**

A party's rejection of an offer in settlement will not of itself constitute unreasonable behaviour under **Rule 38.15(1)** but the Court may take it into consideration when it is applying the unreasonableness test.

**Basis Of Assessment**





**38.17**

Where the Court is to assess the amount of costs (whether by immediate or detailed assessment) it will assess those costs:

(1) on the standard basis; or

(2) on the indemnity basis;

but the Court will not in either case allow costs which have been unreasonably incurred or are unreasonable in amount.

**Basis of assessment**
**38.17.1**
See PD 5/2014 paragraph 1-3 on indemnity costs generally.

**38.17.2**
Indemnity costs are awarded where a party is responsible for something *"outside the norm"*: Per Field J at [5] of the Schedule of Reasons to the order issued on 29 January 2018 in *Tavira Securities Limited v RE Point Ventures FZCO & Ors* (CFI-026-2017), applying *Excelsior Commercial & Industrial Holdings Ltd v Salisbury Hammer Aspden and Johnson* [2002] All ER (D) 39. Examples of conduct outside the norm include baseless allegations of fraud, bringing a claim that totally lacks merit and misleading the court.

Similarly, in *GFH Capital v Haigh* CFI 020/2014 (Order with Reasons of 10 November 2016), Giles J ordered indemnity costs on the basis that the dishonest Defendant's defence was *"lacking in credibility and a concoction"*, and approved the English summary in *Euroption Strategic Fund Ltd v Skandinavska Enskilda Banken AB* [2012] EWHC 749 (Comm) at [11] – [14].

**38.18**

Where the amount of costs is to be assessed on the standard basis, the Court will:

(1) only allow costs which are proportionate to the matters in issue; and

(2) resolve any doubt which it may have as to whether costs were reasonably incurred or reasonable and proportionate in amount in favour of the paying party.

**38.19**

Where the amount of costs is to be assessed on the indemnity basis, the Court will resolve any doubt which it may have as to whether costs were reasonably incurred or were reasonable in amount in favour of the receiving party.

**38.20**
Where:

(1) the Court makes an order about costs without indicating the basis on which the costs are to be assessed; or

(2) the Court makes an order for costs to be assessed on a basis other than the






standard basis or the indemnity basis;

the costs will be assessed on the standard basis.

**Factors To Be Taken Into Account In Deciding The Amount Of Costs**
**38.21**
The Court is to have regard to all the circumstances in deciding whether costs were:

(1) if it is assessing costs on the standard basis:

(a) proportionately and reasonably incurred; and

(b) were proportionate and reasonable in amount; or

(2) if it is assessing costs on the indemnity basis:

(a) unreasonably incurred; or

(b) unreasonable in amount.

**38.22**
In particular, the Court must give effect to any orders which have already been made.

**38.23**
The Court must also have regard to:

(1) the conduct of all the parties, including in particular:

(a) conduct before, as well as during, the proceedings; and

(b) the efforts made, if any, before and during the proceedings in order to try to resolve the dispute;

(2) the amount or value of any money or property involved;

(3) the importance of the matter to all the parties;

(4) the particular complexity of the matter or the difficulty or novelty of the questions raised;

(5) the skill, effort, specialised knowledge and responsibility involved;

(6) the time spent on the case; and

(7) the place where and the circumstances in which work or any part of it was done.

**38.24**
In applying the test of proportionality the Court will have regard to **Rule 1.6(3)**. The relationship between the total of the costs incurred and the financial value of the claim may not be a reliable guide. A fixed percentage cannot be applied in all cases to the




value of the claim in order to ascertain whether or not the costs are proportionate.

**38.25**
In any proceedings there will be costs which will inevitably be incurred and which are necessary for the successful conduct of the case. Legal representatives are not required to conduct litigation at rates which are uneconomic. Thus in a modest claim the proportion of costs is likely to be higher than in a large claim, and may even equal or possibly exceed the amount in dispute.

**38.26**
Where a trial takes place, the time taken by the Court in dealing with a particular issue may not be an accurate guide to the amount of time properly spent by the legal or other representatives in preparation for the trial of that issue.

**Fixed Costs**
**38.27**
A party may recover the fixed costs specified in Part 39 in accordance with that Part.

**Procedure For Assessing Costs**
**38.28**
Where the Court orders a party to pay costs to another party (other than fixed costs) it may either:

(1) make an immediate assessment of the costs; or

(2) order detailed assessment of the costs;

unless any Rule, Practice Direction or other enactment provides otherwise.

**38.29**
Whenever the Court makes an order about costs which does not provide for fixed costs to be paid, the Court should consider whether to make an immediate assessment of costs.

**38.30**
The general rule is that the Court should make an immediate assessment of the costs:

(1) at the conclusion of any hearing, which has lasted no more than one day, in which case the order will deal with the costs of the application or matter to which the hearing related. If this hearing disposes of the claim, the order may deal with the costs of the whole claim;

(2) in hearings in the Court of Appeal to which FRDC 44.165 / ARDC 44.140 applies;

unless there is good reason not to do so e.g. where the paying party shows substantial grounds for disputing the sum claimed for costs that cannot be dealt with on the material available or there is insufficient time to carry out an immediate assessment.

**38.31**



If an immediate assessment of costs is appropriate but the Court awarding costs is unable to do so on the day, the Court will give directions as to a further hearing before the same Judge.

**38.32**
Where the parties agree an order without the need for any party to attend, the parties must agree a figure for costs to be inserted in the agreed order or agree that there should be no order for costs.

**38.33**
It is the duty of the parties and their legal representatives to assist the Judge in making an immediate assessment of costs in any case to which Rule 38.30 applies, in accordance with Rules 38.34 to 38.36.

**38.34**
Each party who intends to claim costs must prepare a written statement of the costs he intends to claim showing separately in the form of a schedule:

    (1) the number of hours to be claimed;

    (2) the hourly rate to be claimed;

    (3) the qualifications and seniority of fee earner;

    (4) the amount and nature of any disbursement to be claimed;

    (5) the amount of the legal representative's costs to be claimed for attending or appearing at the hearing; and

    (6) any tax to be claimed on these amounts.

**38.35**
The statement of costs should follow as closely as possible Form P38/01 and must be signed by the party or his legal representative.

**38.36**
The statement of costs must be filed at Court and copies of it must be served on any party against whom an order for payment of those costs is intended to be sought. The statement of costs should be filed and the copies of it should be served as soon as possible and in any event not less than 24 hours before the date fixed for the hearing.

**38.37**
The failure by a party, without reasonable excuse, to comply with Rules 38.33 to 38.36 will be taken into account by the Court in deciding what order to make about the costs of the claim, hearing or application, and about the costs of any further hearing or detailed assessment hearing that may be necessary as a result of that failure.

**38.38**
The Court will not make an immediate assessment of the costs of a receiving party who is a child or patient unless the legal representative acting for the child or patient






has waived the right to further costs.

**38.39**
The Court may make an immediate assessment of costs payable by a child or patient.

**Time For Complying With An Order For Costs**
**38.40**
A party must comply with an order for the payment of costs within 14 days of:

(1) the date of the judgment or order if it states the amount of those costs;

(2) if the amount of those costs (or part of them) is decided later in accordance with Part 40, the date of the certificate which states the amount; or

(3) in either case, such later date as the Court may specify.

**Cases Where Costs Orders Will Be Considered To Have Been Made**
**38.41**
Where a right to costs arises under:

(1) Rule 4.31 (defendant's right to costs where claim struck out for nonpayment of fees);

(2) Rules 32.28 and 32.29 (claimant's entitlement to costs where a Part 32 offer is accepted); or

(3) Rules 34.15 and 34.16 (defendant's right to costs where claimant discontinues);

a costs order will have been made on the standard basis.

**38.42**
Interest on the costs deemed to have been ordered under Rule 38.41 shall begin to run from the date on which the event which gave rise to the entitlement to costs occurred.

**Costs–Only Proceedings**
**38.43**
Rules 38.44 to 38.53 set out a procedure which may be followed where:

(1) the parties to a dispute have reached an agreement on all issues (including which party is to pay the costs) which is made or confirmed in writing; but

(2) they have failed to agree the amount of those costs; and

(3) no proceedings have been started.

**38.44**
Either party to the agreement may start proceedings under Rules 38.44 to 38.53 by issuing a claim form in accordance with Part 8.

**38.45**



The claim form must:

(1) identify the claim or dispute to which the agreement to pay costs relates;

(2) state the date and terms of the agreement on which the claimant relies;

(3) set out or have attached to it a draft of the order which the claimant seeks;

(4) state the amount of the costs claimed; and,

(5) state whether the costs are claimed on the standard or indemnity basis. If no basis is specified the costs will be treated as being claimed on the standard basis.

**38.46**
In proceedings to which Rules 38.44 to 38.53 apply the Court:

(1) may:

(a) make an order for costs to be determined by detailed assessment; or

(b) dismiss the claim; and

(2) must dismiss the claim if it is opposed.

**38.47**
For the purposes of **Rule 38.46(2)**:



(1) a claim will be treated as opposed if the defendant files an acknowledgment of service stating that he intends to contest the making of an order for costs or to seek a different remedy; and

(2) a claim will not be treated as opposed if the defendant files an acknowledgment of service stating that he disputes the amount of the claim for costs.

**38.48**
An order dismissing the claim will be made as soon as an acknowledgment of service opposing the claim is filed. The dismissal of a claim under **Rule 38.46(2)** does not prevent the claimant from issuing another claim form under Part 7 or Part 8 based on the agreement or alleged agreement to which the proceedings under this rule related.

**38.49**
The evidence to be filed and served with the claim form under **Rule 8.23** must include copies of the documents on which the claimant relies to prove the defendant's agreement to pay costs.

**38.50**
The Registrar has jurisdiction to hear and decide any issue which may arise in a claim issued under **Rules 38.44** to **38.53** irrespective of the amount of the costs claimed or of the value of the claim to which the agreement to pay costs relates.

**38.51**






When the time for filing the defendant's acknowledgement of service has expired, the claimant may by letter request the Court to make an order in the terms of his claim, unless the defendant has filed an acknowledgement of service stating that he intends to contest the claim or to seek a different order.

### 38.52
An order for costs made under **Rule 38.50** will be treated as an order for the amount of costs to be decided by a detailed assessment.

### 38.53
In cases in which an additional liability is claimed, regard should be had to the time when and the extent to which the claim has been settled and to the fact that the claim has been settled without the need to commence proceedings.

### 38.54
Nothing in **Rules 38.44** to **38.53** prevents a person from issuing a claim form under Part 7 or Part 8 to sue on an agreement made in settlement of a dispute where that agreement makes provision for costs, nor from claiming in that case an order for costs or a specified sum in respect of costs.

**Special Situations**
### 38.55
Where the Court makes an order which does not mention costs:

  (1) subject to **Rules 38.56** and **38.57**, the general rule is that no party is entitled to costs in relation to that order; but

  (2) this does not affect any entitlement of a party to recover costs out of a fund held by him as trustee or personal representative, or pursuant to any lease, mortgage or other security.

### 38.56
Where the Court makes:

  (1) an order granting permission to appeal;

  (2) an order granting permission to apply for judicial review; or

  (3) any other order or direction sought by a party on an application without notice;

and its order does not mention costs, it will be considered to include an order for applicant's costs in the case.

### 38.57
Any party affected by an order for costs under **Rule 38.56** may apply at any time to vary the order.

### 38.58
The Court hearing an appeal may, unless it dismisses the appeal, make orders about the costs of the proceedings giving rise to the appeal as well as the costs of the appeal.

**Court's Powers In Relation To Misconduct**





**38.59**

The Court may, in connection with an immediate or detailed assessment, make an order under **Rule 38.60** where:

(1) a party or his legal representative fails to comply with a Rule, Practice Direction or Court order; or

(2) it appears to the Court that the conduct of a party or his legal representative, before or during the proceedings which gave rise to the assessment proceedings, was unreasonable or improper.

**38.60**

Where **Rule 38.59** applies, the Court may:

(1) disallow all or part of the costs which are being assessed; or

(2) order the party at fault or his legal representative to pay costs which he has caused any other party to incur.

**38.61**

Where:

(1) the Court makes an order under **Rule 38.60** against a legally represented party; and

(2) the party is not present when the order is made;

the party's legal representative must notify his client in writing of the order no later than 7 days after the legal representative receives notice of the order and either in the order under **Rule 38.60** or in a subsequent order, require the legal representative to produce to the Court evidence that he took reasonable steps to do so.

**38.62**

Before making an order under **Rule 38.60** the Court must give the party or legal representative in question a reasonable opportunity to attend a hearing to give reasons why it should not make such an order.

**38.63**

Conduct before or during the proceedings which gave rise to the assessment which is unreasonable or improper includes steps which are calculated to prevent or inhibit the Court from furthering the Overriding Objective.

**Production Of Documents And Inspection Of Property Before Commencement Or Against A Non-Party**

**38.64**

Rule 38.65 applies where a person applies:

(1) for an order under:

(a) **Rule 25.1(9)**; or



(b) Rules 28.47 to 28.50;

which give the Court powers exercisable before commencement of proceedings; or

(2) for an order under;

(a) Rule 25.1(10); or

(b) Rules 28.51 to 28.54;

which give the Court power to make an order against a non-party for disclosure of documents, inspection of property etc.

**38.65**
The general rule is that the Court will award the person against whom the order is sought his costs:

(1) of the application; and

(2) of complying with any order made on the application.

**Costs orders on applications for production of documents and inspection of property against non-parties**
**38.65.1**
The combined effect of RDC 38.65 and 38.66 is to disapply the usual costs rule in non-party disclosure applications. In *GCC International v Capital Investment* [2012] DIFC CA 001 (24 September 2012), the Court of Appeal overturned the first instance judge who wrongly applied the general rule of RDC 38.7(1) to a non-party disclosure application. The Court of Appeal held (at [37]-[38]) that the normal rule on such applications is that a non-party should be awarded (i) its costs of production as well as (ii) its reasonable costs of instructing lawyers to advise and appear in the proceedings unless the producing party resists the order on unreasonable grounds. The producing party *"clearly was entitled to seek legal advice before deciding on its position"* which would also fall within this rule.

**38.66**
The Court may however make a different order, having regard to all the circumstances, including the extent to which it was reasonable for the person against whom the order was sought to oppose the application.

**Costs Orders In Favour Of Or Against Non-Parties**
**38.67**
Where the Court is considering whether to exercise its power to make a costs order in favour of or against a person who is not a party to proceedings:

(1) that person must be added as a party to the proceedings for the purposes of costs only; and

(2) he must be given a reasonable opportunity to attend a hearing at which the



Court will consider the matter further.

**38.68**
Rule 38.67 does not apply:

    (1) where the Court is considering whether to make a wasted costs order; and

    (2) in proceedings to which **Rule 38.65** applies.

**Amount Of Costs Where Costs Are Payable Pursuant To A Contract**
**38.69**
Where the Court assesses (whether by the immediate or detailed procedure) costs which are payable by the paying party to the receiving party under the terms of a contract, the costs payable under those terms are, unless the contract expressly provides otherwise, to be presumed to be costs which:

    (1) have been reasonably incurred; and

    (2) are reasonable in amount, and the Court will assess them accordingly.

**38.70**
Rule 38.69 does not apply where the contract is between a legal representative and his client.

**Limitations On Court's Power To Award Costs In Favour Of Trustee Or Personal Representative**
**38.71**
Rules 38.72 and 38.73 apply where:

    (1) a person is or has been a party to any proceedings in the capacity of trustee or personal representative ("person representing his estate"); and

    (2) Rule 38.69 does not apply.

**38.72**
The general rule is that he is entitled to be paid the costs of those proceedings, insofar as they are not recovered from or paid by any other person, out of the relevant trust fund or estate.

**38.73**
Where he is entitled to be paid any of those costs out of the fund or estate, those costs will be assessed on the indemnity basis.

**Costs Where Money Is Payable By Or To A Child Or Patient**
**38.74**
Rule 38.75 applies to any proceedings where a party is a child or patient and:

    (1) money is ordered or agreed to be paid to, or for the benefit of, that party; or

    (2) money is ordered to be paid by him or on his behalf.

**38.75**



The general rule is that:

(1) the Court must order a detailed assessment of the costs payable by, or out of money belonging to, any party who is a child or patient; and

(2) on an assessment under (1), the Court must also assess any costs payable to that party in the proceedings, unless the Court has issued a default costs certificate in relation to those costs under Part 40.

(3) The Court need not order detailed assessment of costs:

(a) where there is no need to do so to protect the interests of the child or patient or his estate;

(b) where another party has agreed to pay a specified sum in respect of the costs of the child or patient and the legal representative acting for the child or patient has waived the right to claim further costs;

(c) where the Court has decided the costs payable to the child or patient by way of immediate assessment and the legal representative acting for the child or patient has waived the right to claim further costs; or



(d) where an insurer or other person is liable to discharge the costs which the child or patient would otherwise be liable to pay to his legal representative and the Court is satisfied that the insurer or other person is financially able to discharge those costs.



(4) Where:

(a) a claimant is a child or patient; and

(b) a detailed assessment has taken place under this Rule the only amount payable by the child or patient is the amount which the Court certifies as payable.

**Costs Where The Court Has Made A Group Litigation Order**
**38.76**
Rules 38.77 to 38.82 apply where the Court has made a Group Litigation Order ('GLO').

**38.77**
In Rules 38.78 to 38.82:

(1) 'individual costs' means costs incurred in relation to an individual claim on the group register;

(2) 'common costs' means:

(a) costs incurred in relation to the GLO issues;

(b) individual costs incurred in a claim while it is proceeding as a test claim; and

(c) costs incurred by the lead legal representative in administering the group

Case 1:18-mc-00458-LGS-OTW   Document 33-1   Filed 11/21/18   Page 362 of 672




litigation;

(3) 'group litigant' means a claimant or defendant, as the case may be, whose claim is entered on the group register.

**38.78**
**Unless the Court order**s otherwise, any order for common costs against group litigants imposes on each group litigant several liability for an equal proportion of those common costs.

**38.79**
The general rule is that where a group litigant is the paying party, he will, in addition to any costs he is liable to pay to the receiving party, be liable for:

(1) the individual costs of his claim; and

(2) an equal proportion, together with all the other group litigants, of the common costs.

**38.80**
Where the Court makes an order about costs in relation to any application or hearing which involved:

(1) one or more GLO issues; and

(2) issues relevant only to individual claims;

the Court will direct the proportion of the costs that is to relate to common costs and the proportion that is to relate to individual costs.

**38.81**
Where common costs have been incurred before a claim is entered on the group register, the Court may order the group litigant to be liable for a proportion of those costs.

**38.82**
Where a claim is removed from the group register, the Court may make an order for costs in that claim which includes a proportion of the common costs incurred up to the date on which the claim is removed from the group register.

**Personal Liability Of Legal Representative For Costs — Wasted Costs Orders**
**38.83**
The Court shall have power to disallow or, (as the case may be) order the legal or other representative concerned to meet, the whole of any wasted costs or such part of them as may be determined.

**38.83.1**
See Practice Direction No. 2 of 2014.

**38.84**



362

The Court must give the legal representative a reasonable opportunity to attend a hearing to give reasons why it should not make such an order.

**Opportunity for legal representative to respond**
**38.84.1**
In granting permission to appeal against a wasted costs order in *Bocimar International v Emirates Trading Agency* (CFI 008/2015 Order with Reasons of 27 March 2017), Cooke J emphasised the mandatory requirement of an opportunity to attend (at [1]) and stated that it may not have been enough for the Court to proceed to a determination on paper fourteen days after service without a response of the legal representative: [2].

**38.85**
When the Court makes a wasted costs order, it must:

    (1) specify the amount to be disallowed or paid; or

    (2) direct the Registrar to decide the amount of costs to be disallowed or paid.

**38.86**
The Court may direct that notice must be given to the legal representative's client, in such manner as the Court may direct:

    (1) of any hearing under **Rule 38.84**; or

    (2) of any order made against his legal representative.

**38.87**
The Court may refer the question of wasted costs to the Registrar instead of making a wasted costs order.

**Costs Order In Favour Of A Party Represented Pro Bono**
**38.88**
Where a party ("the claiming party") is represented by a law firm acting pro bono, the law firm may apply for an order that the other party ("the paying party") make a payment in respect of the costs of legal services provided to the pro bono litigant at no charge ("a pro bono costs order"). The Court shall consider the application and assess the costs as if the claiming party were obliged to pay the fees of the law firm at the normal commercial rates charged by the law firm.

**38.89**
Where the Court makes a pro bono costs order, such costs shall be assessed summarily by a Judge or the Registrar, unless a detailed assessment is necessary.

**38.90**
Any costs payable pursuant to a pro bono costs order shall be paid to an account ("the Account") established by the Chief Justice by Practice Direction, for the following purposes:

    (1) Scholarships providing financial support to Emirati students studying law in the Emirate of Dubai and in need of such financial support;

    (2) The provision of a Pro Bono Clinic within the DIFC Courts;



(3) The DIFC Courts Academy; and/or

(4) Such other purposes as the Chief Justice may direct or order from time to time.

**38.91**
The Account shall be administered by the signatories of the Account who are the Chief Justice, the Deputy Chief Justice, the Registrar and the Deputy Registrar in accordance with the purposes of the Account.

**38.92**
Any individual, group or organisation may apply to the Account by way of letter stating the extent of support that is required and the reasons for requiring such support to the designated Pro Bono Programme Leader at the DIFC Courts Registry.

**38.93**
All applications will be determined by the signatories of the Account. The Chief Justice will have the final determination on such applications. When making a decision on the allocation of funds, the signatories will have an absolute discretion and the signatories shall not accept any duty or liability to any individual, group or organisation seeking a distribution.

**38.94**
The allocation of funds will be listed in available records, on the Court website and in its Annual Report.



**38.95**
Where a pro bono costs order is sought, to assist the Court in making an immediate assessment of the amount payable to the Account, the pro bono litigant must prepare, file and serve in accordance with Rules 38.34 to 38.36 a written statement of the sum which the pro bono law firm would have claimed for legal representation had it not been provided free of charge.

**38.96**
If a detailed assessment of costs is required then it shall be undertaken in accordance with Part 40 in the usual manner and the costs of the detailed assessment proceedings shall also be awarded to the Account.

**38.97**
In proceedings where a party is represented pro bono the Court, wherever possible, shall reserve the issue of costs until the conclusion of the trial or the final hearing. At the conclusion of the trial or the final hearing, a single costs order may be made which reflects the overall justice of the case.

**Costs-Free Trials**
**38.98**
A pro bono litigant may be entitled to a costs–free trial, where the pro bono litigant will not be obliged to meet the legal costs of the opposing party or parties even if the pro bono litigant is unsuccessful. The pro bono litigant will only be entitled to a costs–free trial once an application has been approved by the DIFC Courts Pro Bono Panel





(the 'Panel').

**38.99**
Applications for a costs-free trial should, save in exceptional circumstances, be submitted before the trial commences. Only those applications qualifying for pro bono assistance will be forwarded to the Panel for its consideration by the designated Programme Leader (chosen by the Chief Justice and responsible for all aspects of the operation and administration of the Pro Bono Programme).

**38.100**
Applications for a costs-free trial:

(1) should be supported by the pro bono lawyer of the applicant. The pro bono lawyer must certify that in their opinion there is a reasonable prospect of the applicant's case succeeding; and

(2) will be forwarded to the opposing party's or parties' lawyers for an opportunity to respond to the application and to provide any reasons why the applicant should not be permitted a costs-free trial.

**38.101**
In determining the application, the Panel shall consider whether the applicant meets the threshold of:

(1) financial inability;

(2) case merit; and

(3) such other criteria as the Panel may consider relevant from time to time.

The Panel has absolute discretion as to whether an applicant meets the threshold for a costs-free trial. The Panel may decide that the applicant shall be entitled to costs protection in respect of any stage of proceedings, including any appeal.

**38.102**
The designated Programme Leader shall ensure that a decision of the Panel that an applicant is entitled to a costs-free trial be delivered in a Court Order.

**38.103**
A party may only appeal against an Order that an applicant is entitled to a costs-free trial:

(1) to a judge of the Court; and

(2) either prior to or during the course of the trial, save where, in exceptional circumstances, new information has come to light after the trial which affects or may affect the pro bono litigant's eligibility for a costs-free trial.

**38.104**



A pro bono litigant may at any time apply to the designated Programme Leader to have the Court fees suspended until the end of the case. The designated Programme Leader has absolute discretion in determining whether Court fees are to be suspended, and to what extent.

**38.105**
Where the Court makes an order under **Rule 38.88**, the order must specify that the payment by the paying party must be made to the Account.

**38.106**
The administrative costs and other expenses related to the office and to the management and investment of the fund will be borne by the Account.

## PART 39
### FIXED COSTS

**Scope Of This Part**
**39.1**
This Part sets out the amounts which, unless the Court orders otherwise, are to be allowed in respect of legal representatives' charges in the cases to which this Part applies.

**39.2**
This Part applies where:

(1) the only claim is a claim for a specified sum of money where the value of the claim exceeds US$50 but does not exceed US$50,000 and:

(a) judgment in default is obtained under **Rule 13.7**;

(b) judgment on admission is obtained under **Rule 15.15**;

(c) judgment on admission on part of the claim is obtained under **Rule 15.18**;

(d) immediate judgment is given under Part 24;

(e) the Court has made an order to strike out a defence under **Rule 4.16(1)** as disclosing no reasonable grounds for defending the claim; or

(f) **Rule 39.7** or **39.8** applies;

(2) the only claim is a claim where the Court gave a fixed date for the hearing when it issued the claim and judgment is given for the delivery of goods, and the value of the claim exceeds US$50 but does not exceed US$50,000; or (3) a judgment creditor has taken steps under Parts 45 to 50 to enforce a judgment or order.

**39.3**

Any appropriate Court fee will be allowed in addition to the costs set out in this Part.

**39.4**
The claim form may include a claim for fixed commencement costs.

**Amount Of Fixed Commencement Costs In A Claim For The Recovery Of Money Or Goods**
**39.5**
The amount of fixed commencement costs in a claim to which **Rule 39.2(1)** or **39.2(2)** applies:

(1) shall be calculated by reference to Table 1; and

(2) the amount claimed, or the value of the goods claimed if specified, in the claim form is to be used for determining the band in Table 1 that applies to the claim.

**39.6**
The amounts shown in Table 3 are to be allowed in addition, if applicable.

| TABLE 1 | | | |
|---|---|---|---|
| **FIXED COSTS ON COMMENCEMENT OF A CLAIM FOR THE RECOVERY OF MONEY OR GOODS** | | | |
| Relevant band | Where the claim form is served by the Court or by any method other than personal service by the claimant | Where— the claim form is served personally by the claimant; and there is only one defendant | Relevant band |
| Where the value of the claim exceeds US$50 but does not exceed US$10,000; or the only claim is for delivery of goods and no value is specified or stated on the claim form | US$160 | US$180 | US$30 |
| Where the value of the claim exceeds US$10,000 but does not exceed US$50,000 | US$600 | US$660 | US$90 |

**When Defendant Only Liable For Fixed Commencement Costs**

367



**39.7**
Where:

(1) the only claim is for a specified sum of money; and

(2) the defendant pays the money claimed within 14 days after service of particulars of claim on him, together with the fixed commencement costs stated in the claim form,

the defendant is not liable for any further costs unless the Court orders otherwise.

**Costs On Entry Of Judgment In A Claim For The Recovery Of Money Or Goods**
**39.8**
Where:

(1) the claimant has claimed fixed commencement costs under **Rule 39.5**; and

(2) judgment is entered in a claim to which **Rule 39.2(1)** or **39.2(2)** applies in the circumstances specified in Table 2, the amount to be included in the judgment for the claimant's legal representatives' charges is the total of:

(a) the fixed commencement costs; and

(b) the relevant amount shown in Table 2.



| TABLE 2<br>FIXED COSTS ON ENTRY OF JUDGMENT IN A CLAIM FOR THE RECOVERY OF MONEY OR GOODS | | |
|---|---|---|
| | Where the amount of the judgment exceeds US$50 but does not exceed US$10,000 | Where the amount of the judgment exceeds US$10,000 but does not exceed US$50,000 |
| Where judgment in default of an acknowledgment of service is entered under **Rule 13.7** (entry of judgment by request on claim for money only) | US$45 | US$180 |
| Where judgment in default of a defence is entered under **Rule 13.7** (entry of judgment by request on claim for money only) | US$50 | US$210 |



| | | |
|---|---|---|
| Where judgment is entered under **Rule 15.15** (judgment on admission), or **Rule 15.18** (judgment on admission of part of claim) and claimant accepts the defendant's proposal as to the manner of payment | US$80 | US$330 |
| Where judgment is entered under **Rule 15.15** (judgment on admission), or **Rule 15.18** (judgment on admission of part of claim) and the Court decides the date or time of payment | US$110 | US$420 |
| Where immediate judgment is given under Part 24 or the Court strikes out a defence under **Rule 4.16(1)**, in either case, on application by a party | US$350 | US$1260 |

**Miscellaneous Fixed Costs**
**39.9**
Table 3 shows the amount to be allowed in respect of legal representatives' charges in the circumstances mentioned.

| TABLE 3 MISCELLANEOUS FIXED COSTS | |
|---|---|
| For service by a party of any document required to be served personally including preparing and copying a certificate of service for each individual served | US$45 |
| Where service by an alternative method is permitted by an order under **Rule 9.31** for each individual served | US$45 |
| Where a document is served out of the DIFC and Dubai— | |
| (a) in another Emirate of the UAE; | US$410 |
| (b) in any other place | US$460 |

**Fixed Enforcement Costs**
**39.10**
Table 4 shows the amount to be allowed in respect of legal representatives' costs in the circumstances mentioned. The amounts shown in Table 3 are to be allowed in addition, if applicable.



| TABLE 4<br>FIXED ENFORCEMENT COSTS | |
| --- | --- |
| For an application under **Rule 45.11** that an award may be enforced as if payable under a Court order, where the amount outstanding under the award: | |
| exceeds US$50 but does not exceed US$500 | US$185 |
| exceeds US$500 but does not exceed US$1200 | US$245 |
| exceeds US$1200 but does not exceed US$4000 | US$415 |
| exceeds US$4000 | US$450 |
| On attendance to question a judgment debtor (or officer of a company or other corporation) who has been ordered to attend Court under **Rule 50.2** where the questioning takes place before a Court officer, including attendance by a responsible representative of the legal representative | for each half hour or part, US$90 (When the questioning takes place before a Judge, he may immediately assess any costs allowed.) |
| On the making of a final third party debt order under **Rule 47.40(1)** or an order for the payment to the judgment creditor of money in Court under **Rule 47.44(2)**: | |
| if the amount recovered is less than US$300 | one–half of the amount recovered |
| Otherwise | US$590 |
| On the making of a final charging order under **Rule 46.17(1)**: | US$660 |
| | The Court may also allow reasonable disbursements in respect of search fees and the registration of the order. |
| Where a writ of execution as defined in **Rule 48.1(3)**, is issued against any party | US$310 |
| Where an application for an attachment of earnings order is made and costs are allowed under **Rule 47.65** for each attendance on the hearing of the application | US$50 |



# PART 40
PROCEDURE FOR DETAILED ASSESSMENT OF COSTS

**I GENERAL RULES ABOUT DETAILED ASSESSMENT**

**Time When Detailed Assessment May Be Carried Out**
**40.1**
The general rule is that the costs of any proceedings or any part of the proceedings are not to be assessed by the detailed procedure until the conclusion of the proceedings. However the Court may order them to be assessed immediately.



**No Stay Of Detailed Assessment Where There Is An Appeal**
**40.2**
Detailed assessment is not stayed pending an appeal unless the Court so orders.

**Authorised Court Officer**
**40.3**
The Registrar or a judicial officer of the Court appointed for the purpose by the Chief Justice under Article 14 of the Court Law (referred to as "an authorised Court Officer" in this Part) has all the powers of the Court when making a detailed assessment, except:

(1) power to make a wasted costs order;

(2) power to make an order under:

(a) Rule 38.60 (powers in relation to misconduct); and

(b) Rule 40.12 (sanction for delay in commencing detailed assessment proceedings).

**Authorised Court Officer**
**40.3.1**
An authorised Court Officer has no authority to make an unless order, such an order being a sanction for delay (*Mana v Clariden Leu Asset Management* [2011] DIFC CFI 030 (29 August 2013) at [14]-[17]).



**II COSTS PAYABLE BY ONE PARTY TO ANOTHER – COMMENCEMENT OF DETAILED ASSESSMENT PROCEEDINGS**

**Application Of This Section**
**40.4**
This section of Part 40 applies where the Registrar is to make a detailed assessment of costs which are payable by one party to another.

**Commencement Of Detailed Assessment Proceedings**
**40.5**
Detailed assessment proceedings are commenced by the receiving party serving on the paying party:

(1) notice of commencement in Form P40/01; and

(2) a copy of the bill of costs.

**Commencement of detailed assessment proceedings**
**40.5.1**
In order properly to commence detailed assessment proceedings, both the notice of commencement and bill of costs served must be dated and signed (*Mana v Clariden Leu Asset Management* [2011] DIFC CFI 030 (29 August 2013) at [21]-[24]).

**40.6**
The receiving party must also serve a copy of the notice of commencement and the bill on any other relevant person including:





(1) any person who has taken part in the proceedings which gave rise to the assessment and who is directly liable under an order for costs made against him;

(2) any person who has given to the receiving party notice in writing that he has a financial interest in the outcome of the assessment and wishes to be a party accordingly; and/or

(3) any other person whom the Court orders to be treated as such.

**40.7**
Where a party is unsure whether a person is or is not a relevant person, that party may apply to the appropriate office for directions.

**40.8**
The Court will generally not make an order that the person in respect of whom the application is made will be treated as a relevant person, unless within a specified time he applies to the Court to be joined as a party to the assessment proceedings in accordance with Part 20.

**40.9**
A person on whom a copy of the notice of commencement is served under Rule 40.6 is a party to the detailed assessment proceedings (in addition to the paying party and the receiving party).

**Period For Commencing Detailed Assessment Proceedings**
**40.10**
The following table shows the period for commencing detailed assessment proceedings.

| Source of right to detailed assessment | Time by which detailed assessment proceedings must be commenced |
|---|---|
| Judgment, direction, order, award or other determination | 3 months after the date of the judgment etc. Where detailed assessment is stayed pending an appeal, 3 months after the date of the order lifting the stay |
| Discontinuance under Part 34 | 3 months after the date of service of notice of discontinuance under Rule 34.6; or 3 months after the date of the dismissal of application to set the notice of discontinuance aside under Rule 34.10 |
| Acceptance of an offer to settle | 3 months after the date when the right to costs arose |

**Sanction For Delay In Commencing Detailed Assessment Proceedings**
**40.11**
Where the receiving party fails to commence detailed assessment proceedings within the period specified:





(1) in Rule 40.10; or

(2) by any direction of the Court;

the paying party may apply for an order requiring the receiving party to commence detailed assessment proceedings within such time as the Court may specify.

**Sanction for delay in commencing detailed assessment proceedings**
**40.11.1**
A failure to commence detailed assessment within the time period does not exclude an application for an interim payment order, nor should a paying party make an application to require detailed assessment proceedings to be commenced once a detailed assessment has been supplied since such an application would be *"a waste of time" (Al-Awlaqi v Tabarak* [2009] DIFC CFI 023 (22 December 2010) at [64]).

**40.12**
On an application under Rule 40.11, the Court may direct that, unless the receiving party commences detailed assessment proceedings within the time specified by the Court, all or part of the costs to which the receiving party would otherwise be entitled will be disallowed.

**40.12.1**
By RDC 40.3, an authorised Court Officer has no power to make an order under this rule.



**40.13**
If:

(1) the paying party has not made an application in accordance with Rule 40.11; and

(2) the receiving party commences the proceedings later than the period specified in Rule 40.10;

the Court may disallow all or part of the interest otherwise payable to the receiving party under Article 39 of the Court Law, No. 10 of 2004 but must not impose any other sanction except in accordance with Rule 38.60.

**Points Of Dispute And Consequence Of Not Serving**
**40.14**
The paying party and any other party to the detailed assessment proceedings may dispute any item in the bill of costs by serving points of dispute on:

(1) the receiving party; and

(2) every other party to the detailed assessment proceedings.

**40.15**
The period for serving points of dispute is 21 days after the date of service of the notice of commencement.





**40.16**

If a party serves points of dispute after the period set out in **Rule 40.15**, he may not be heard further in the detailed assessment proceedings unless the Court gives permission.

**40.17**

The receiving party may file a request for a default costs certificate if:

    (1) the period set out in **Rule 40.15** for serving points of dispute has expired; and

    (2) he has not been served with any points of dispute.

**40.18**

If any party (including the paying party) serves points of dispute before the issue of a default costs certificate the Court may not issue the default costs certificate.

**Procedure Where Costs Are Agreed**
**40.19**

If the paying party and the receiving party agree the amount of costs, either party may apply for a costs certificate (either interim or final) in the amount agreed.

**III COSTS PAYABLE BY ONE PARTY TO ANOTHER — DEFAULT PROVISIONS**
**Default Costs Certificate**
**40.20**

Where the receiving party is permitted by **Rule 40.17** to obtain a default costs certificate, he does so by filing a request Form P40/02.



**40.21**

A default costs certificate will include an order to pay the costs to which it relates.

**40.22**

Where a receiving party obtains a default costs certificate, the costs payable to him for the commencement of detailed assessment proceedings shall be $US160.

**Setting Aside Default Costs Certificate**
**40.23**

The Court must set aside a default costs certificate if the receiving party was not entitled to it.

**40.24**

In any other case, the Court may set aside or vary a default costs certificate if it appears to the Court that there is some good reason why the detailed assessment proceedings should continue.

**40.25**

Where:

    (1) the receiving party has purported to serve the notice of commencement on the paying party;





(2) a default costs certificate has been issued; and

(3) the receiving party subsequently discovers that the notice of commencement did not reach the paying party at least 21 days before the default costs certificate was issued;

the receiving party must:

(a) file a request for the default costs certificate to be set aside; or

(b) apply to the Court for directions.

**40.26**
Where **Rule 40.25** applies, the receiving party may take no further step in:

(1) the detailed assessment proceedings; or

(2) the enforcement of the default costs certificate;

until the certificate has been set aside or the Court has given directions.

**IV COSTS PAYABLE BY ONE PARTY TO ANOTHER — PROCEDURE WHERE POINTS OF DISPUTE ARE SERVED**
**Optional Reply**
**40.27**

Where any party to the detailed assessment proceedings serves points of dispute, the receiving party may serve a reply on the other parties to the assessment proceedings.


**40.28**
He may do so within 21 days after service on him of the points of dispute to which his reply relates.

**Detailed Assessment Hearing**
**40.29**
Where points of dispute are served in accordance with this Part, the receiving party must file a request for a detailed assessment hearing.

**40.30**
He must file the request within 3 months of the expiry of the period for commencing detailed assessment proceedings as specified:

(1) in **Rule 40.10**; or

(2) by any direction of the Court.

**40.31**
Where the receiving party fails to file a request in accordance with **Rule 40.30**, the paying party may apply for an order requiring the receiving party to file the request within such time as the Court may specify.



**40.32**

On an application under **Rule 40.31**, the Court may direct that, unless the receiving party requests a detailed assessment hearing within the time specified by the Court, all or part of the Costs to which the receiving party would otherwise be entitled will be disallowed.

**40.33**

If:

(1) the paying party has not made an application in accordance with **Rule 40.31**; and

(2) the receiving party files a request for a detailed assessment hearing later than the period specified in **Rule 40.30**;

the Court may disallow all or part of the interest otherwise payable to the receiving party under Article 39 of the Court Law, No. 10 of 2004 but must not impose any other sanction except in accordance with **Rule 38.60**.

**40.34**

No party other than:

(1) the receiving party;

(2) the paying party; and



(3) any party who has served points of dispute under 40.14;

may be heard at the detailed assessment hearing unless the Court gives permission.

**40.35**

Only items specified in the points of dispute may be raised at the hearing, unless the Court gives permission.

**V INTERIM COSTS CERTIFICATE AND FINAL COSTS CERTIFICATE**
**Power To Issue An Interim Certificate**
**40.36**
The Court may at any time after the receiving party has filed a request for a detailed assessment hearing:

(1) issue an interim costs certificate for such sum as it considers appropriate;

(2) amend or cancel an interim certificate.

**Power to issue an interim certificate**
**40.36.1**
The Court's power to issue an interim costs certificate does not exclude the Court's power to make an interim payment order, as the two procedures are *"separate and distinct"* (*Al-Awlaqi v Tabarak* [2009] DIFC CFI 023 (22 December 2010) at [65]).





**40.37**

An interim certificate will include an order to pay the costs to which it relates, unless the Court orders otherwise.

**40.38**

The Court may order the costs certified in an interim certificate to be paid into Court.

**Final Costs Certificate**
**40.39**

In Rules 40.40 and 40.41, a completed bill means a bill calculated to show the amount due following the detailed assessment of the costs.

**40.40**

The period for filing the completed bill is 14 days after the end of the detailed assessment hearing.

**40.41**

When a completed bill is filed, the Court will issue a final costs certificate and serve it on the parties to the detailed assessment proceedings.

**40.42**

Rule 40.41 is subject to any order made by the Court that a certificate is not to be issued until other costs have been paid.



**40.43**

A final costs certificate will include an order to pay the costs to which it relates, unless the Court orders otherwise.



**VI COSTS OF DETAILED ASSESSMENT PROCEEDINGS**
**Liability For Costs Of Detailed Assessment Proceedings**
**40.44**

The receiving party is entitled to his costs of the detailed assessment proceedings except where:

    (1) the provisions of any enactment, any of these Rules or any relevant Practice Direction provide otherwise; or

    (2) the Court makes some other order in relation to all or part of the costs of the detailed assessment proceedings.

**40.45**

In deciding whether to make some other order, the Court must have regard to all the circumstances, including:

    (1) the conduct of all the parties;

    (2) the amount, if any, by which the bill of costs has been reduced; and

    (3) whether it was reasonable for a party to claim the costs of a particular item or to dispute that item.



**Offers To Settle Without Prejudice Save As To Costs Of The Detailed Assessment Proceedings**
**40.46**
Where:

(1) a party (whether the paying party or the receiving party) makes a written offer to settle the costs of the proceedings which gave rise to the assessment proceedings; and

(2) the offer is expressed to be without prejudice save as to the costs of the detailed assessment proceedings, the Court will take the offer into account in deciding who should pay the costs of those proceedings.

**40.47**
The fact of the offer must not be communicated to the Court until the question of costs of the detailed assessment proceedings falls to be decided.

**VII  APPEALS FROM AUTHORISED COURT OFFICERS IN DETAILED ASSESSMENT PROCEEDINGS**
**Court To Hear Appeal**
**40.48**
An appeal against a decision of an authorised Court Officer in detailed assessment proceedings is to a Judge of the Court of First Instance.

**Appeal Procedure**
**40.49**
An appeal against a decision of an authorised Court Officer in detailed assessment proceedings should be made in accordance with the provisions of Part 44 of the Rules of Court.




# PART 41
PROCEEDINGS BY OR AGAINST THE CENTRE, ITS BODIES AND THE GOVERNMENT

**Scope Of This Part**
**41.1**
This Part contains rules for proceedings by or against the Centre, any of the Centre's Bodies or the Government and civil proceedings to which the Centre or any of the Centre's Bodies or the Government is a party.

**Application Of The Rules Of The Dubai International Financial Centre Court**
**41.2**
These Rules apply to proceedings by or against the Centre, any of the Centre's Bodies or the Government and other proceedings to which Centre, any of the Centre's Bodies or the Government is a party unless this Part, a Practice Direction or any other enactment provides otherwise.





I ACTIONS INVOLVIN THE CENTRE, ANY OF THE CENTRE'S BODIES OR THE GOVERNMENT
– GENERAL

**Action On Behalf Of The Centre, Any Of The Centre's Bodies Or The Government**
**41.3**
Where by reason of a Rule, Practice Direction or Court order the Centre, any of the Centre's Bodies or the Government is permitted or required:

(1) to make a witness statement;

(2) to swear an affidavit;

(3) to verify a document by a statement of truth;

(4) to make a disclosure statement; or

(5) to discharge any other procedural obligation;

that function shall be performed by an appropriate officer acting on behalf of the Centre, any of the Centre's Bodies or the Government.

**41.4**
The Court may if necessary nominate an appropriate officer.

**Counterclaims, Other Additional Claims And Set-Off**
**41.5**
In a claim by the Centre, any of the Centre's Bodies or the Government for taxes, duties or penalties, the defendant cannot make a counterclaim or other additional claim or raise a defence of set-off.

**41.6**
In any other claim by the Centre, any of the Centre's Bodies or the Government, the defendant cannot make a counterclaim or other additional claim or raise a defence of set-off which is based on a claim for repayment of taxes, duties or penalties.

**41.7**
In proceedings by in the name of the Attorney-General, no counterclaim or other additional can be made or defence of set-off raised without the permission of the Court.

**41.8**
In proceedings by or against the Centre, any of the Centre's Bodies or the Government in the name of one Centre Body or Government department, no counterclaim or other additional claim can be made or defence of set-off raised without the permission of the Court unless the subject-matter relates to that Centre Body or Government department.

**Enforcement Against The Centre, Any Of The Centre's Bodies Or The Government**
**41.9**
Parts 45 to 51 do not apply to any order against the Centre, any of the Centre's Bodies or the Government.






**41.10**

In **Rule 41.9**, 'order against the Centre, any of the Centre's Bodies or the Government' means any judgment or order against the Centre, any Centre Body, a Government department, or an officer of the Centre, any of the Centre's Bodies or the Government as such, made:

    (1) in civil proceedings by or against the Centre, any of the Centre's Bodies or the Government;

    (2) in proceedings under Part 42

    (3) in connection with an arbitration to which the Centre, any of the Centre's Bodies or the Government is a party; or

    (4) in other civil proceedings to which the Centre, any of the Centre's Bodies or the Government is a party.

**Money Due From The Centre, Any Of The Centre's Bodies Or The Government**
**41.11**

None of the following orders:

    (1) a third party debt order under Part 47;

    (2) an order for the appointment of a receiver under Part 49; or

    (3) an order for the appointment of a sequestrator under **Rule 48.36**;

may be made or have effect in respect of any money due from the Centre, any of the Centre's Bodies or the Government.

**41.12**

In **Rule 41.11**, 'money due from the Centre, any of the Centre's Bodies or the Government' includes money accruing due, and money alleged to be due or accruing due.

**41.13**

Where any money is payable by the Centre, any of the Centre's Bodies or the Government to some person who, under any order of the Court, is liable to pay any money to any other person, and that other person would otherwise be entitled under these Rules to obtain an order for the attachment thereof as a debt due or accruing due, or an order for the appointment of a sequestrator or receiver to receive the money on his behalf, the Court may direct payment thereof into the Court, make an order restraining the first-mentioned person from receiving that money and directing payment thereof to that other person, or to the sequestrator or receiver, provided that no such order shall be made in respect of:

    (1) any wages or salary payable to any officer of the Centre, any of the Centre's Bodies or the Government as such; or

    (2) any money which is subject to the provisions of any enactment prohibiting or restricting assignment or charging or taking in execution.



**41.14**

An application for an order under **Rule 41.13**:

    (1) restraining a person from receiving money payable to him by the Centre, any of the Centre's Bodies or the Government; and

    (2) directing payment of the money to the applicant or another person;

may be made under Part 23.

**41.15**

The application must be supported by written evidence setting out the facts on which it is based, and in particular identifying the debt from the Centre, any of the Centre's Bodies or the Government.

**41.16**

Notice of the application, with a copy of the written evidence, must be served:

    (1) on the Centre, any of the Centre's Bodies or the Government; and
    (2) on the person to be restrained;

at least 7 days before the hearing.

**41.17**



Rules 47.35 to **47.40** apply to an application under **Rule 41.13** as they apply to an application under **Rule 47.3** for a third party debt order, except that the Court will not have the power to order enforcement to issue against the Centre, any of the Centre's Bodies or the Government.

**II SERVICE ON THE CENTRE AND ITS BODIES**
**41.18**

The persons to be served on behalf the Centre and its bodies, their addresses for service and manner(s) in which service must be effected are set out in Schedule A to this Part.

**III SERVICE ON THE GOVERNMENT**
**41.19**

Notice of intention to commence proceedings must be served on the Government at least 15 days before proceedings are served.

**41.20**

The persons to be served on behalf of the Government and its departments, their addresses for service and manner(s) in which service must be effected are set out in Schedule B to this Part.

**SCHEDULE A**

Proceedings By Or Against The Centre, Its Bodies And The Government





| Centre/Body | Person(s) to be served | Address for Service | Manner in which Service is Accepted |
|---|---|---|---|
| 1. DIFCA and entities | Legal Department | Level 14, The Gate, PO Box 74777, Dubai. | Courier or hand delivery. |
| 2. DFSA | Legal Department | Level 13, The Gate, PO Box 75850, Dubai. | Courier or hand delivery. |
| 3. DIFC Courts | Government of Dubai Legal Affairs Department (LAD) | | |

**SCHEDULE B**
Proceedings By Or Against The Centre, Its Bodies And The Government

| Government Department | Person(s) to be served | Address for Service | Manner in which Service is Accepted |
|---|---|---|---|
| All Government departments | Attorney General | Public Prosecution Dubai, PO Box 13571, Dubai, UAE. | Courier or hand delivery. |



# PART 42
JUDICIAL REVIEW

**I JUDICIAL REVIEW**
**Scope Of This Part And Interpretation**

**42.1**
This Part contains rules about judicial review.

**42.2**
In this Part:

(1) a 'claim for judicial review' means a claim to review the lawfulness of a decision, action or failure to act in relation to the exercise of a public function;

(2) 'the judicial review procedure' means the Part 8 procedure as modified by this Part; and

(3) 'interested party' means any person (other than the claimant and defendant) who is directly affected by the claim.

**42.2.1**
A challenge to a decision of the Registrar of Companies is a claim for judicial review within the meaning of RDC 42.2, being a claim to review the lawfulness of a decision,





action or failure to act in relation to the exercise of a public function (*Calandra v Calder* [2012] DIFC SCT 004 (1 March 2012)).

**42.2.2**
A review of a tribunal decision is a claim for judicial review within the meaning of RDC 42.2 since RDC 42.11 and RDC 42.13(3) expressly refer to proceedings *"in a Tribunal"* and a decision *"of a Tribunal"* respectively: *Technical Architects General Contracting Company LLC v Nakheel PJSC* [2012] DIFC CFI 029 (20 December 2012) at [15]. However, there is no jurisdiction to review decisions of the Dubai World Tribunal: Article 5(4) of Decree 57 of 2009 excludes such a review: *Technical Architects General Contracting Company LLC v Nakheel PJSC* [2012] DIFC CFI 029 (20 December 2012) at [54]–[56]



**When This Part Must Be Used**
**42.3**
The judicial review procedure must be used in a claim for judicial review where the claimant is seeking:

    (1) a mandatory order;
    (2) a prohibiting order; or

    (3) a quashing order.

**When This Part May Be Used**
**42.4**
The judicial review procedure may be used in a claim for judicial review where the claimant is seeking:

    (1) a declaration; or

    (2) an injunction.

**42.5**
A claim for judicial review may include a claim for damages, restitution or the recovery of a sum due, but may not seek such a remedy alone.

**Permission Required**
**42.6**
The Court's permission to proceed is required in a claim for judicial review.

**Time Limit For Filing Claim Form**
**42.7**
The claim form must be filed:

    (1) promptly; and

    (2) in any event not later than 3 months after the grounds to make the claim first arose.

**42.8**
The time limit in **Rule 42.7** may not be extended by agreement between the parties.



**42.9**

Rule 42.7 does not apply when any other enactment specifies a shorter time limit for making the claim for judicial review.

**Claim Form**
**42.10**

In addition to the matters set out in Rule 8.8 (contents of the claim form) the claimant must also state:

(1) the name and address of any person he considers to be an interested party;

(2) that he is requesting permission to proceed with a claim for judicial review; and

(3) any remedy (including any interim remedy) he is claiming.

**42.11**

Where the claim for judicial review relates to proceedings in a tribunal, any other parties to those proceedings must be named in the claim form as interested parties under Rule 42.10 (and therefore served with the claim form under Rule 42.17(2)).

**42.12**

The claim form must include or be accompanied by:

(1) a detailed statement of the claimant's grounds for bringing the claim for judicial review;



(2) a statement of the facts relied on;

(3) any application to extend the time limit for filing the claim form; and

(4) any application for directions.

**42.13**

In addition, the claim form must be accompanied by:

(1) any written evidence in support of the claim or application to extend time;

(2) a copy of any order that the claimant seeks to have quashed;

(3) where the claim for judicial review relates to a decision of a tribunal, an approved copy of the reasons for reaching that decision;

(4) copies of any documents on which the claimant proposes to rely;

(5) copies of any relevant statutory material; and

(6) a list of essential documents for advance reading by the Court (with page references to the passages relied on).





**42.14**

Where it is not possible to file all the above documents, the claimant must indicate which documents have not been filed and the reasons why they are not currently available.

**42.15**

The claimant must file two copies of a paginated and indexed bundle containing all the documents referred to in Rules 42.12 and 42.13.

**42.16**

Attention is drawn to Rules 8.23 and 8.29.

**Service Of Claim Form**
**42.17**

The claim form must be served on:

    (1) the defendant; and

    (2) unless the Court otherwise directs, any person the claimant considers to be an interested party;

within 7 days after the date of issue.

**42.18**

Except as required by Rules 42.30 or 42.34, the Court will not serve documents and service must be effected by the parties.

**Acknowledgment Of Service**
**42.19**

Any person served with the claim form who wishes to take part in the judicial review must file an acknowledgment of service in Form P42/01 in accordance with **Rules 42.20** to **42.23**.

**42.20**

Any acknowledgment of service must be:

    (1) filed not more than 21 days after service of the claim form; and

    (2) served on:

        (a) the claimant; and

        (b) subject to any direction under **42.17(2)**, any other person named in the claim form;

as soon as practicable and, in any event, not later than 7 days after it is filed.

**42.21**

The time limits under **Rule 42.20** may not be extended by agreement between the parties.





**42.22**

The acknowledgment of service:

  (1) must:

    (a) where the person filing it intends to contest the claim, set out a summary of his grounds for doing so; and

    (b) state the name and address of any person the person filing it considers to be an interested party; and

  (2) may include or be accompanied by an application for directions.

**42.23**

Rule 11.6 does not apply.

**42.24**

Attention is drawn to Rule 8.14 and to Rule 11.8.

**Failure To File Acknowledgment Of Service**

**42.25**

Where a person served with the claim form has failed to file an acknowledgment of service in accordance with Rule 42.19, he:



  (1) may not take part in a hearing to decide whether permission should be given unless the Court allows him to do so; but



  (2) provided he complies with Rule 42.41 or any other direction of the Court regarding the filing and service of:

    (a) detailed grounds for contesting the claim or supporting it on additional grounds; and

    (b) any written evidence;

may take part in the hearing of the judicial review.

**42.26**

Where that person takes part in the hearing of the judicial review, the Court may take his failure to file an acknowledgment of service into account when deciding what order to make about costs.

**42.27**

Rule 8.16 does not apply.

**Permission Given**

**42.28**

Where permission to proceed is given, the Court may also give directions.



**42.29**
Directions under **Rule 42.28** may include a stay of proceedings to which the claim relates and directions about serving the claim form and any evidence on other persons.

**Service Of Order Giving Or Refusing Permission**
**42.30**
The Court will serve:

> (1) the order giving or refusing permission; and

> (2) any directions;

on:

> > (a) the claimant;

> > (b) the defendant; and
> > (c) any other person who filed an acknowledgment of service.

**42.31**
An order refusing permission or giving it subject to conditions or on certain grounds only must set out or be accompanied by the Court's reasons for coming to that decision.

**Permission Decision Without A Hearing**
**42.32**
The Court will normally consider the question of permission without a hearing.

**Permission decision without a hearing**
**42.32.1**
Circumstances justifying a hearing on the question of permission will include where the claim is complex and novel: [6] of the reasons given by Williams J on the 22 March 2011 Order for Directions in *Anna Dadic v Dubai International Financial Centre Authority* (FCI 026/2010).

The test was referred to as one of *"exceptionality"* in the 24 September 2012 order of Sir Anthony Colman in *Technical Architects General Contracting LLC v Nakheel PJSC* [2012] DIFC CFI 029 (20 December 2012). In that case, a challenge to the DIFC Courts' jurisdiction to conduct judicial reviews of the decisions of the Dubai World Tribunal was considered to meet that test.

**42.33**
Rules **42.34** and **42.37** apply where the Court, without a hearing:

> (1) refuses permission to proceed; or

> (2) gives permission to proceed:

> > (a) subject to conditions; or

> > (b) on certain grounds only.



**42.34**

The Court will serve its reasons for making the decision when it serves the order giving or refusing permission in accordance with **Rule 42.30**.

**42.35**

The claimant may not appeal, but may request the decision to be reconsidered at a hearing.

**42.36**

A request under **Rule 42.35** must be filed within 7 days after service of the reasons under **Rule 42.34**.

**42.37**

The claimant, defendant and any other person who has filed an acknowledgment of service will be given at least 2 days' notice of the hearing date.

**Permission Hearing**

**42.38**

Neither the defendant nor any other interested party need attend a hearing on the question of permission unless the Court directs otherwise.

**42.39**

Where the defendant or any party does attend a hearing, the Court will not normally make an order for costs against the claimant.

**Defendant Etc. May Not Apply To Set Aside**

**42.40**

Neither the defendant nor any other person served with the claim form may apply to set aside an order giving permission to proceed.

**Response**

**42.41**

A defendant and any other person served with the claim form who wishes to contest the claim or support it on additional grounds must file and serve:

    (1) detailed grounds for contesting the claim or supporting it on additional grounds; and

    (2) any written evidence;

within 35 days after service of the order giving permission.

**42.42**

Where the party filing the detailed grounds intends to rely on documents not already filed, he must file a paginated bundle of those documents when he files the detailed grounds.

**42.43**

The following rules do not apply:



(1) Rules 8.25 and 8.26 (defendant to file and serve written evidence at the same time as acknowledgment of service); and

(2) Rules 8.27 and 8.28 (claimant to file and serve any reply within 14 days).

**Where Claimant Seeks To Rely On Additional Grounds**
**42.44**
The Court's permission is required if a claimant seeks to rely on grounds other than those for which he has been given permission to proceed.

**42.45**
Where the claimant intends to apply to rely on additional grounds at the hearing of the claim for judicial review, he must give notice to the Court and to any other person served with the claim form no later than 7 clear days before the hearing (or the warned date where appropriate).

**Evidence**
**42.46**
Rule 8.30 does not apply.

**42.47**
No written evidence may be relied on unless:

(1) it has been served in accordance with any:

(a) Rule under this Part; or

(b) direction of the Court; or

(2) the Court gives permission.

**Court's Powers To Hear Any Person**
**42.48**
Any person may apply for permission:

(1) to file evidence; or

(2) make representations at the hearing of the judicial review.

**42.49**
An application under **Rule 42.48** should be made promptly.

**42.50**
Where all the parties consent, the Court may deal with an application under **Rule 42.48** without a hearing.

**42.51**
Where the Court gives permission for a person to file evidence or make representations at the hearing of the claim for judicial review, it may do so on conditions and may give case management directions.



**42.52**

An application for permission should be made by letter to the Registry, identifying the claim, explaining who the applicant is and indicating why and in what form the applicant wants to participate in the hearing.

**42.53**

If the applicant is seeking a prospective order as to costs, the letter should say what kind of order and on what grounds.

**42.54**

Applications to intervene must be made at the earliest reasonable opportunity, since it will usually be essential not to delay the hearing.

**Skeleton Arguments**
**42.55**

The claimant must file and serve a skeleton argument not less than 21 working days before the date of the hearing of the judicial review.

**42.56**

The defendant and any other party wishing to make representations at the hearing of the judicial review must file and serve a skeleton argument not less than 14 working days before the date of the hearing of the judicial review (or the warned date).

**42.57**

Skeleton arguments must contain:



    (1) a time estimate for the complete hearing, including delivery of judgment;

    (2) a list of issues;

    (3) a list of the legal points to be taken (together with any relevant authorities with page references to the passages relied on);

    (4) a chronology of events (with page references to the bundle of documents (see Rule 42.58);

    (5) a list of essential documents for the advance reading of the Court (with page references to the passages relied on) (if different from that filed with the claim form) and a time estimate for that reading; and

    (6) a list of persons referred to.

**Bundle Of Documents To Be Filed**
**42.58**

The claimant must file a paginated and indexed bundle of all relevant documents required for the hearing of the judicial review application when he files his skeleton argument.

**42.59**

The bundle must also include those documents required by the defendant and any other party who is to make representations at the hearing.





**Agreed Final Order**
**42.60**
If the parties agree about the final order to be made in a claim for judicial review, the claimant must file at the Court a document (with 2 copies) signed by all the parties setting out the terms of the proposed agreed order together with a short statement of the matters relied on as justifying the proposed agreed order and copies of any authorities or statutory provisions relied on.

**42.61**
The Court will consider the documents referred to in Rule 42.60 and will make the order if satisfied that the order should be made.

**42.62**
If the Court is not satisfied that the order should be made, a hearing date will be set.

**42.63**
Where the agreement relates to an order for costs only, the parties need only file a document signed by all the parties setting out the terms of the proposed order.

**Judicial Review May Be Decided Without A Hearing**
**42.64**
The Court may decide the claim for judicial review without a hearing where all the parties agree.

**Court's Powers In Respect Of Quashing Orders**
**42.65**

Rule 42.66 applies where the Court makes a quashing order in respect of the decision to which the claim relates.


**42.66**
The Court may:

(1) remit the matter to the decision-maker; and

(2) direct it to reconsider the matter and reach a decision in accordance with the judgment of the Court.

**42.67**
Where the Court considers that there is no purpose to be served in remitting the matter to the decision-maker it may, subject to any statutory provision, take the decision itself.

**Transfer**
**42.68**
The Court may:

(1) order a claim to continue as if it had not been started under this Part; and

(2) where it does so, give directions about the future management of the claim.





## PART 43
### ARBITRATION CLAIMS

**SCOPE OF THIS PART**
**43.1**
This Part contains rules about arbitration claims.

**43.1.1**
See also Practice Direction 2 of 2013 for rules on the confidentiality of arbitration proceedings.

**I ARBITRATION CLAIMS**
**Interpretation**
**43.2**
In this Part:



    (1) 'the Arbitration Law' means the Arbitration Law, DIFC Law No.1 of 2008; and

    (2) 'Arbitration Claim Form' means a claim form in Form P43/01;

    (3) 'Arbitration claim' means:

      (a) any application to the Court under the Arbitration Law, including any application:

        (i) for an order under Article 12 of the Arbitration Law disapplying that Article;

        (ii) to dismiss or stay an action which is the subject of an arbitration agreement under Article 13 of the Arbitration Law;

        (iii) for an order under Article 14 of the Arbitration Law for an Order requiring disclosure of information relating to arbitral proceedings;

        (iv) to appoint or to facilitate the appointment of an Arbitral tribunal, to challenge the appointment of an Arbitrator or to terminate the mandate of an Arbitrator under Articles 17 to 20 of the Arbitration Law;

        (v) for an Order relieving an Arbitrator of any liability incurred by reason of his resignation under Article 21 of the Arbitration Law;

        (vi) to determine whether an Arbitral Tribunal has jurisdiction in respect of a dispute under Article 23 of the Arbitration Law;

        (vii) to enforce an interim measure made by an Arbitral Tribunal under Article 24 of the Arbitration Law;

        (viii) for an order from the Court issuing an interim measure under Article 24 of the Arbitration Law;



(ix) to the Court for assistance in taking evidence for the purposes of an arbitration under Article 34 of the Arbitration Law;

(x) to the Court of First Instance to determine the amount of fees and expenses properly payable to the Arbitral Tribunal under Article 39 of the Arbitration Law;

(xi) to set aside an arbitral award under Article 41 of the Arbitration Law;

(xii) for recognition or enforcement of an arbitral award under Article 42 of the Arbitration Law;

(b) any other application affecting:

(i) arbitration proceedings (whether started or not); or

(ii) an arbitration agreement.

**Starting The Claim**
**43.3**
Except where **Rule 43.4** or **Rule 43.5** applies an arbitration claim must be started by the issue of an arbitration claim form in accordance with the Part 8 procedure.

**43.4**
An application under Article 13 of the Arbitration Law to stay legal proceedings must be made by Application Notice in the proceedings.

**43.5**
An application under Article 34 of the Arbitration Law to secure the attendance of a witness should be made in accordance with RDC Part 30.

**Arbitration Claim Form**
**43.6**
An Arbitration Claim Form must:

(1) include a concise statement of:

(a) the remedy claimed; and

(b) any questions on which the Arbitral Tribunal seeks the decision of the Court;

(2) give details of any arbitration award challenged by the Arbitral Tribunal, identifying which part or parts of the award are challenged and specifying the grounds for the challenge;

(3) show that any statutory requirements have been met;

(4) specify under which Article of the Arbitration Law the claim is made;

(5) identify against which (if any) defendants a Costs Order is sought; and



(6) specify either:

    (a) the persons on whom the Arbitration Claim Form will be served, stating their role in the arbitration and whether they are defendants; or

    (b) that the claim is made without notice and the grounds relied on.

**43.7**
Reference in the Arbitration Claim Form to a witness statement or affidavit filed in support of the claim is not sufficient to comply with the requirements of Rule 43.6.

**Service**
**43.8**
An Arbitration Claim Form must be served by the claimant.

**43.9**
Unless:

    (1) the Court orders otherwise; or

    (2) the Arbitration Claim Form seeks enforcement or recognition of an award under Part 4 of the Arbitration Law

an Arbitration Claim Form must be served on the defendant within 30 days from the date of issue and Rule 7.20 is modified accordingly

**43.10**
The rules governing service of the Claim Form are set out in RDC Part 9.

**43.11**
The Court may exercise its powers under Rule 9.31 to permit service of an Arbitration Claim Form at the address of a party's legal representative or other representative acting for him in the arbitration.

**Service on Arbitration Claim Form on legal representatives**
**43.11.1**
Where a party follows the without notice procedure for recognition or enforcement of a claim for under RDC 43.61-75, there is no need for service of an Arbitration Claim Form under RDC 43.11 (*Pearl Petroleum v Kurdistan Regional Government* [2017] DIFC Arb 003 (20 August 2017) at [49]). If was further said in that case (at [67]) that it was *"unrealistic to expect a claimant to anticipate in full every argument that may be put by a defendant when it comes before the court on an ex parte basis."*

**43.12**
v
The claimant must file a Certificate of Service within 7 days of service of serving the Arbitration Claim Form. Rule 9.36 specifies what a Certificate of Service must show.

**43.13**
Where the Arbitration Claim Form is served outside Dubai, the Arbitration Claim Form should be served in accordance with Section III of Part 9 of the RDC.






**Notice**
**43.14**
Where an arbitration claim is made under Article 19(3) (challenging an Arbitrator), Article 20(1) (terminating an Arbitrator's mandate) or Article 39(4) of the Arbitration Law (determination of fees and expenses payable to the arbitral tribunal), each Arbitrator must be a defendant.

**43.15**
Where notice must be given to an Arbitrator or any other person it may be given by sending him a copy of —

 (1) the Arbitration Claim Form; and

 (2) any written evidence in support.

**43.16**
Save where **Rule 43.17** applies, where a party makes an Arbitration Claim, each of the other parties to the arbitration must be made a defendant to the Arbitration Claim.

**43.17**
Where a party makes an Arbitration Claim for recognition or enforcement of an award under Part 4 of the Arbitration Law:



 (1) only the party against whom such an order is sought need be made a defendant to the Arbitration Claim; and

 (2) the Arbitration Claim may be made without notice.

**Acknowledgment Of Service**
**43.18**
A defendant must file an Acknowledgment of Service of the Arbitration Claim Form in every case in Form P43/02.

**43.19**
Where an Arbitration Claim Form is served within the DIFC or Dubai, the period for filing an Acknowledgment of Service is 14 days after the service of the Claim Form in accordance with RDC **Rule 11.5**.

**43.20**
Where an Arbitration Claim Form is served outside Dubai, the period for filing an Acknowledgment of Service is 28 days after the service of the Claim Form in accordance with RDC **Rule 9.56**.

**Representations By An Arbitrator**
**43.21**
Where an Arbitrator is sent a copy of an Arbitration Claim Form (including an Arbitration Claim Form sent under **Rule 43.15**), that arbitrator may:

 (1) apply to be made defendant; or

 (2) apply to make representations to the Court under **Rule 43.22**.





**43.22**

An application under **Rule 43.21(1)** to be made a defendant:

(1) must be served on the Arbitral Tribunal; but

(2) need not be served on any other party.

**43.23**

An Arbitrator may make representations by filing written evidence or in writing to the Court.

**43.24**

Any Arbitrator filing written evidence or making representations to the Court may not be called to give oral evidence without the permission of the Court.

**Supply Of Documents From Court Records**
**43.25**
An Arbitration Claim Form may only be inspected with the permission of the Court.

**Case Management**
**43.26**
RDC Part 26 does not apply.

**43.27**

The claimant should apply for a hearing date as soon as possible after issuing an Arbitration Claim Form.



**43.28**

When applying for a hearing date, the Arbitral Tribunal should provide to the Court an estimate for the length of the hearing.

**43.29**

The directions set out in **Rules 43.30** to **43.37** apply unless the Court orders otherwise.

**43.30**

Where a claimant in an arbitration claim seeks to rely on written evidence, a copy of that evidence must be filed and served with the Arbitration Claim Form.

**43.31**

A defendant who wishes to rely on evidence before the Court must file and serve his written evidence within 21 days after the date by which he was required to acknowledge service.

**43.32**

A claimant who wishes to rely on evidence in reply to written evidence filed under **Rule 43.31** must file and serve his written evidence within 7 days after service of the defendant's evidence.

**43.33**

Following exchange of written evidence, the parties should confirm or amend by agreement the estimate for the length of the hearing provided pursuant to RDC 43.28.





**43.34**
Agreed indexed and paginated bundles of all the evidence and other documents to be
used at the hearing must be prepared by the claimant.

**43.35**
Not later than 5 days before the hearing date the claimant must file a complete set of
the documents to be used.

**43.36**
Not later than 2 days before the hearing date the claimant must file and serve:

(1) a chronology of the relevant events cross–referenced to the bundle
of documents;

(2) (where necessary) a list of the persons involved; and

(3) a skeleton argument which lists succinctly:

(a) the issues which arise for decision;

(b) the grounds of relief (or opposing relief) to be relied upon;

(c) the submissions of fact to be made with the references to the evidence; and

(d) the submissions of law with references to the relevant authorities.




**43.37**
Not later than the day before the hearing date the defendant must file and serve a
skeleton argument which lists succinctly:

(1) the issues which arise for decision;

(2) the grounds of relief (or opposing relief) to be relied upon;

(3) the submissions of fact to be made with the references to the evidence; and

(4) the submissions of law with references to the relevant authorities.

**43.38**
An application for directions in a pending arbitration claim should be made by
application notice under Part 23.

**Hearings**
**43.39**
The Court may order that an arbitration claim be heard either in public or in private.

**43.40**
Rules 35.2 to 35.4 do not apply, save insofar as provided by Rule 43.41 below.



**43.41**

(1) Subject to sub-rule (2) below, arbitral proceedings under the DIFC Arbitration Law 2008 in the DIFC Courts are to be heard otherwise than in open court.

(2) The court may order those proceedings to be heard in open court —

(a) on the application of any party; or

(b) if, in any particular case, the court is satisfied that those proceedings ought to be heard in open court.

(3) An order of the court under subsection (2) is not subject to appeal.

**43.42**

(1) This Rule applies to arbitral proceedings under the DIFC Arbitration Law 2008 in the DIFC Courts heard otherwise than in open court ("closed court proceedings").

(2) The Court in which closed court proceedings are being heard must, on the application of any party, make a direction as to what information, if any, relating to the proceedings may be published.

(3) The court must not make a direction permitting information to be published unless—



(a) all parties agree that the information may be published; or



(b) the court is satisfied that the information, if published, would not reveal any matter (including the identity of any party) that any party reasonably wishes to remain confidential.

(4) Despite sub-rule (3), if—

(a) the court gives a judgment in respect of closed court proceedings; and

(b) the court considers that judgment to be of major legal interest, the court may direct that reports of the judgment may be published in law reports and professional publications.

(5) If the court directs under sub-rule (4) that reports of a judgment may be published, but any party reasonably wishes to conceal any matter in those reports (including the fact that the party was such a party), the court must, on the application of the party—

(a) make a direction as to the action to be taken to conceal that matter in those reports; and

(b) if the court considers that a report published in accordance with the direction made under paragraph (5)(a) would still be likely to reveal that matter, direct that the report may not be published until after the end of a period, not exceeding 10 years, that the court may direct.

(6) A direction of the court under this section is not subject to appeal.

**43.43**

Having regard to the overriding objective the Court may decide particular issues without a hearing.

**Stay Or Dismissal Of Legal Proceedings**
**43.44**

An application notice seeking a stay or dismissal of legal proceedings under Article 13 of the Arbitration Law must be served on all parties to those proceedings in accordance with RDC Part 9.

**43.45**

Where a question arises as to whether:

(1) an arbitration agreement has been concluded; or

(2) the dispute which is the subject-matter of the proceedings falls within the terms of such an agreement;

the Court may decide that question or give directions to enable it to be decided and may order the proceedings to be stayed pending its decision.

**Challenging An Arbitrator**
**43.46**

An application to challenge an Arbitrator under Article 19(3) of the Arbitration Law must be made within 30 days after receipt of notice of the ruling by the Arbitral Tribunal rejecting the party's challenge.

**Applications To Determine The Jurisdiction Of The Arbitral Tribunal**
**43.47**

An arbitration claim for the determination of a preliminary question as to the substantive jurisdiction of the Arbitral Tribunal under Article 23(3) of the Arbitration Law must be made within 30 days after receipt of notice of the ruling by the Arbitral Tribunal as a preliminary question that it has jurisdiction.

**Interim Measures**
**43.48**

An application to the Court to enforce an interim measure made by an Arbitral Tribunal or for an order from the Court issuing an interim measure under Article 24 of the Arbitration Law must be made in an Arbitration Claim Form.

**43.49**

An application to enforce an interim measure made by an Arbitral Tribunal will not be granted unless the applicant files written evidence showing that the application is made with the written permission of the Arbitral Tribunal.

**43.50**

An application for an order from the Court issuing an interim measure will be determined in accordance with the Rules set out in Part 25 of the RDC.



**Court Assistance In Taking Evidence**
43.51
An Arbitral Tribunal or a party to arbitral proceedings being conducted in the DIFC who wishes to rely on Article 34 of the Arbitration Law to secure the attendance of a witness must apply for a witness summons in accordance with RDC Part 30.

43.52
A witness summons will not be issued on the application of a party to arbitral proceedings unless the applicant files written evidence showing that the application is made with the approval of the tribunal.

43.53
Any other application made under Article 34 of the Arbitration Law for the assistance of the Court in taking evidence must be made in an Arbitration Claim Form.

**Applications To Set Aside An Award**
43.54
An application under Article 41 of the Arbitration Law to set aside an arbitral award must be made:

(1) within 3 months from the date on which the party making the application received the award; or

(2) if a request had been made under Article 40 of the Arbitration Law, within 3 months from the date on which that request was disposed of by the Arbitral Tribunal; or

(3) within such longer period as the parties to the arbitration agree in writing.

43.55
Where a party applies to set aside an arbitral award, the arbitration claim form must state:

(1) the grounds under Article 41(2) of the Arbitration Law on which the party alleges that the award should be set aside; and

(2) whether the Arbitral Tribunal requests that the setting aside proceedings be suspended under Article 41(4) of the Arbitration Law in order to give the Arbitral Tribunal an opportunity to resume the arbitral proceedings or to take such other action as may eliminate the grounds for setting aside.

43.56
The written evidence in support of the application must set out any evidence relied on by the party for the purpose of satisfying the Court:

(1) of the matters referred to in Article 41(2) of the Arbitration Law; and

(2) that the award should be set aside.





**43.57**

The written evidence filed by the respondent to the application must:

(1) state the grounds on which the Respondent opposes the award being set aside;

(2) state whether the Respondent requests that the setting aside proceedings be suspended under Article 41(4) of the Arbitration Law in order to give the Arbitral Tribunal an opportunity to resume the arbitral proceedings or to take such other action as may eliminate the grounds for setting aside; and

(3) set out any evidence relied on by him relating to the matters mentioned in Article 41(2) of the Arbitration Law.

**43.58**

On receipt of an application to set aside an arbitration award under Article 41(2) of the Arbitration Law the Court may give such directions as it considers necessary.

**43.59**

If the Court considers it appropriate to suspend the setting aside proceedings in accordance with a request made under Rule 43.55(2) or 43.57(2) it may suspend the setting aside proceedings for a period of time determined by it.

**Appeals**
**43.60**

No appeal lies from a decision of the Court under Articles 17(3), 17(4), 19(3), 20(1), 21(2) or 23(3) of the Arbitration Law.




**II RECOGNITION AND ENFORCEMENT OF ARBITRAL AWARDS**
**43.61**

Rules 43.62 to 43.74 apply to awards made in arbitration proceedings wherever the seat.

**43.62**

An application under Article 42(1) of the Arbitration Law to enforce an award or under Article 43 of the Arbitration Law for recognition of an award may be made without notice in an Arbitration Claim Form.

**Applications to enforce an award**
**43.62.1**

Where a party follows the without notice procedure for recognition or enforcement of a claim for under RDC 43.61-75, there is no need for service of an Arbitration Claim Form under RDC 43.11 (*Pearl Petroleum v Kurdistan Regional Government* [2017] DIFC Arb 003 at [49]). For situations where service may be directed, see Practice Direction 4 of 2010, paragraph 2.

**43.63**

The Court may specify parties to the arbitration on whom the Arbitration Claim Form must be served, for example where the relevant time period for setting aside the award from the date of service of the award on the losing party has not yet expired, or there is some doubt about the validity of the award or its service upon the respondent.






**43.64**

The parties on whom the Arbitration Claim Form is served must acknowledge service and the recognition or enforcement proceedings will continue as an arbitration claim.

**43.65**

The Arbitration Claim Form may be served out of the jurisdiction irrespective of where the award was, or is treated to have been, made.

**43.66**

The application must be supported by written evidence:

(1) exhibiting:

(a) the original award; and

(b) the original arbitration agreement;

or copies of those documents certified in accordance with Article 42(3) of the Arbitration Law;

(2) (if the award or agreement is not made in English), producing a translation of the award or agreement certified in accordance with Article 42(3) of the Arbitration Law;

(3) stating the name and the usual or last known place of residence or business of the parties or, if a party is a body corporate, its registered or principal address;

(4) (in the case of an application to enforce an award) stating either:

(a) that the award has not been complied with; or

(b) the extent to which it has not been complied with at the date of the application.

**43.67**

A draft order in both English and Arabic must accompany the application unless the Court orders otherwise.

**43.68**

The Order enforcing or recognising the award must be served on the defendant in accordance with RDC Part 9.

**43.69**

The Order may be served outside Dubai:

(1) without permission; and

(2) in accordance with Section III of Part 9 of the RDC as if the Order were an Arbitration Claim Form.



**43.70**

Within 14 days after service of an Order made without notice or, if the Order is to be served outside Dubai, within such other period as the Court may set:

(1) the defendant may apply to set aside the Order; and

(2) the award must not be enforced until after:

(a) the end of that period; or

(b) any application made by the defendant within that period has been finally disposed of.

**43.71**

An Order made without notice must contain a statement of

(1) the right to make an application to set the Order aside; and

(2) the restrictions on enforcement under **Rule 43.70(2)**.

**43.72**

An application under **Rule 43.70(1)** must:

(1) be made in accordance with RDC Part 23;

(2) set out the grounds under Article 44(1) of the Arbitration Law on which the applicant alleges that the Order should be set aside;

(3) set out any grounds under Article 44(2) of the Arbitration Law on which the applicant alleges that the decision to set aside the Order should be adjourned;

(4) be accompanied by written evidence setting out any evidence relied on by the party for the purpose of satisfying the Court:

(a) of the matters referred to in Article 44 of the Arbitration Law; and

(b) that the Order should be set aside.

**43.73**

If the Respondent to the application wishes to rely on evidence in reply to written evidence filed under **Rule 43.72(4)** he must file and serve his written evidence within 7 days after service of the Applicant's evidence.

**43.74**

The written evidence filed by the Respondent to the application must:

(1) state the grounds on which the Respondent opposes the recognition or enforcement of the award being set aside; and

(2) set out any evidence relied on by him relating to:








(a) the matters referred to in Article 44(1) of the Arbitration Law; and

(b) the provision by the applicant of appropriate security in accordance with Article 44(2).

**43.75**

After conclusion of the period referred to **Rule 43.70(2)**, in relation to any award in respect of which the Court has made an Order enforcing the award:

(1) the award may be enforced within the DIFC in the same manner as a Judgment or Order of the Court to the same effect; and

(2) the Court may enter Judgment in the terms of the award.

**INTEREST ON AWARDS**

**43.76**

Where an applicant seeks to enforce an award of interest the whole or any part of which relates to a period after the date of the award, he must file a statement giving the following particulars:

(1) whether simple or compound interest was awarded;

(2) the date from which interest was awarded;

(3) where rests were provided for, specifying them;

(4) the rate of interest awarded; and

(5) a calculation showing:



(a) the total amount claimed up to the date of the statement; and

(b) any sum which will become due on a daily basis.

**43.77**

A statement under **Rule 43.76** must be filed whenever the amount of interest has to be quantified for the purpose of:

(1) obtaining a Judgment or Order under **Rule 43.75**; or

(2) enforcing such a Judgment or Order.



## PART 44
### AMENDED APPEALS

**44.0.1**
Practitioners should be aware that Rule 44 was amended with effect from 25 May 2017, such that references in older cases to the relevant rule should be checked to determine which equivalent rule (if any) under the new rule is being referred to.
For convenience, the old Part 44 is also contained in this guide.

**These Rules Will Apply To Judgments And Orders Issued On Or After 25 May 2017.**
**Scope Of This Part And Interpretation**
**44.1**
The Rules in this Part apply to appeals to:

> (1) the Court of Appeal; and

> (2) the Court of First Instance.

**44.2**
In this Part:

> (1) 'appeal Court' means the Court to which an appeal is made;

> (2) 'lower Court' means the Court, tribunal or other person or body from whose decision an appeal is brought;

> (3) unless the use or context otherwise requires, 'decision' means an order or direction or, where a matter is to be disposed of otherwise than by order or direction, the pronouncement of the disposal;

> (4) 'appellant' means a person who brings or seeks to bring an appeal;

> (5) 'respondent' means:

>> (a) a person other than the appellant who was a party to the proceedings in the lower Court and who is affected by the appeal; and

>> (b) a person who is permitted by the appeal Court to be a party to the appeal; and

> (6) 'appeal notice' means an appellant's or respondent's notice.

**44.3**
This Part is subject to any Rule, enactment or Practice Direction which sets out special provisions with regard to any particular category of appeal.

**Stay**
**44.4**
Unless the appeal Court or the lower Court orders otherwise, an appeal shall not operate as a stay of any decision of the lower Court.





**Stay**

**44.4.1**

In refusing a stay in *Al Khorafi v Sarasin* (CFI 026/2009 21 January 2016), Al Muhairi J emphasised that that the power to order a stay under Article 33 of the DIFC Court Law was a general discretion and that a stay is not automatic.

Steel J summarised the applicable principles to the exercise of the discretion in *Taalem v National Bonds Corporation* (CFI 014/2010, 27 April 2015) at [5] as follows:

*"Grounds for a stay must be established by the applicant. The successful party at trial has a decision in its favour, and is entitled to the fruits of that decision unless the applicant does so. The outcome on appeal being uncertain, the rival contentions as to the merits are unlikely to be persuasive, and it is a question of justice between the parties until the outcome is known with a view to minimising the loss to the ultimately successful party. An important consideration is the relative risk of injustice in granting or not granting a stay, but it depends on the particular facts."*

In written reasons issued on 11 November 2013 in *Kenneth David Rohan & Ors v Daman Real Estate Capital Partners Ltd* (CFI 025/2012), Colman J referred (at [12]) to the judgment of Clarke LJ in *Hammond Suddard Solicitors v Agrichem International Holdings Limited* [2002] CP Rep 21 at [22] as setting out the applicable principles as to whether a stay should be granted pending appeal:



*"...[T]he court has a discretion whether or not to grant a stay. Whether the court should exercise its discretion to grant a stay will depend upon all the circumstances of the case, but the essential question is whether there is a risk of injustice to one or other or both parties if it grants or refuses a stay. In particular, if a stay is refused what are the risks of the appeal being stifled? If a stay is granted and the appeal fails, what are the risks that the respondent will be unable to enforce the judgment? On the other hand, if a stay is refused and the appeal succeeds, and the judgment is enforced in the meantime, what are the risks of the appellant being able to recover any monies paid from the respondent?"*



A say was refused in that case on the basis, inter alia, that, *"[a] judgment debtor who is shown to have funds sufficient to discharge a judgment debt cannot be heard to say that it is in the long term interests of the creditors as a whole that payment of the judgment debt should be postponed until other unsecured creditors have been paid"* (at [18]).

**Permission**

**44.5**

An appellant or respondent requires permission to appeal:

   (1) where the appeal is to the Court of Appeal, except where the appeal is against a committal order;

   (2) where the appeal is to the Court of First Instance, except where the appeal is against:

      (a) a refusal by the Registrar of Companies to grant authorisation to transfer incorporation under Article 122(1) of the Companies Law (Amended and Restated), DIFC Law 3 of 2006; or



(b) a refusal by the Registrar of Companies to grant authorisation to transfer a Limited Partnership under Article 63(1) of the Limited Partnership Law, DIFC Law 4 of 2006.

**Permission**
**44.5.1**
An application for permission to appeal (and an application to extend time to make it) in *Anna Dadic v Orion Holdings Overseas Limited (in liquidation)* (CFI 007/2008) raised the question of whether the application was a *Henderson v Henderson* abuse of process, in circumstances where the grounds could and should have been raised in the context of an earlier unsuccessful appeal. The reasons given by Hwang CJ issued on 15 August 2010 contain a discussion of the English authorities at [10]-[13], which were said at [14] to have persuasive value. As no extension of time was granted, no decision on the abuse point was necessary.

**Appellant's Application**
**44.6**
An appellant's application for permission to appeal must be made to the lower Court:

    (1) orally at the hearing at which the decision to be appealed was made; or

    (2) in an appellant's notice.

**44.7**
Where an oral application as referred to in **Rule 44.6(1)** above has not been made, but a party requests further time to make such an application, the lower Court may adjourn the hearing to give that party the opportunity to do so.

**44.8**
The lower Court may refer an application for permission to appeal to the appeal Court for decision.

**44.9**
Where the lower Court refuses permission to appeal, a further application for permission to appeal may be made to the appeal Court in an appellant's notice.

**Time For Appeal**
**44.10**
The appellant must file the appellant's notice as referred to in **Rule 44.6(2)**:

    (1) within such period as may be directed by the lower Court; or

    (2) where the lower Court makes no such direction, within 21 days after the date of the decision.

**44.11**
The appellant must file the appellant's notice as referred to in **Rule 44.9**:

    (1) within such period as may be directed by the lower Court; or



(2) where the lower Court makes no such direction; within 21 days after receipt of the notification of the decision refusing permission to appeal.

**44.12**

The parties may not agree to extend the time for appeal.

**44.13**

Where the time for appeal has expired, the appellant must file the appellant's notice and include therein –

(1) an application for an extension of time; and

(2) a statement of the reason for the delay and the steps taken prior to the application being made.

**Respondent's Submissions**

**44.14**

(1) A respondent may make written submissions in opposition to an application for permission to appeal.

(2) A respondent wishing to make submissions in opposition to permission to appeal must file and serve the submissions:

(a) within 21 days of the service upon him of the appellant's notice; or,

(b) in the event that the grounds of appeal and/or skeleton argument are filed within 21 days of the date of the appellant's notice pursuant to RDC 44.30, within 21 days of the service upon him of the appellant's grounds of appeal and/or skeleton argument. (see RDC 44.34).

**Decision Of The Application**

**44.15**

An application for permission to appeal referred to the appeal Court by the lower Court or made to the appeal Court in an appellant's notice may not be decided by the Judge against whose decision permission to appeal is sought.

**44.16**

An application for permission to appeal not made orally to the lower Court at the hearing will ordinarily be decided without an oral hearing.

**44.17**

The appellant may request that the application for permission to appeal be considered at an oral hearing, supported by grounds as to why it would be in the interests of justice to do so.

**44.18**

The lower Court or the appeal Court may direct:

(1) the filing of further submissions by the appellant or any respondent;

(2) that the application for permission to appeal be considered at an oral hearing.





**44.19**

Permission to appeal may only be given where the lower Court or the appeal Court considers that:

(1) the appeal would have a real prospect of success; or

(2) there is some other compelling reason why the appeal should be heard.

**When permission to appeal may be given**
**44.19.1**

In *Dagher v Capital Investment International* [2011] CFI 013 (30 June 2014) at [8], the Court confirmed that appeals are from orders not judgments and permission to appeal should not be granted if the trial judge's reasons sustain the same result notwithstanding that in some respects those reasons may be open to question. The principle that appeals are from orders not judgments is important, and practitioners should be aware of it when drawing up orders from decisions: if it is intended to challenge a particular reason, that reason should be enshrined in an order.

**44.19.2**



A short point can be determined at the permission stage *"where the issue in question is a short point of construction and the necessary background evidence is available and is relatively brief, it is open to the Court to decide on an application for permission to appeal whether the construction advanced by the applicant is doomed to fail on appeal if this conclusion can be reached without prolonged consideration and consistently with the interlocutory nature of the application."* (Reasons of Field J in *Al Khorafi v Bank Sarasin*, 21 May 2015 at [23]).

**44.19.3**

Permission to appeal was granted in *Standard Chartered Bank v Investment Group Private* CFI/026/2014 (Order of 5 February 2018, Hwang CJ) on the basis that there was a compelling reason, *"namely the public interest in clarifying the meaning and extent of the doctrines of mandatory and judicial set off as set out in Articles 369 to 372 of the UAE Civil Code"*. Notably, the grant of permission was not expressly on the grounds that the appellant's contention of the law on set-off had real prospect of success, but rather the wider public interest. See, similarly, the order in *Lys v Elesco* (CFI 012/2014 Order 4 September 2016), where permission to appeal was given on issues of public importance and Hwang CJ amended his reasons to remove a reference that permission was given on the grounds of real prospect of success.

**44.20**

If permission to appeal is granted without an oral hearing, the parties will be notified of that decision.

**44.21**

If permission to appeal is refused without an oral hearing, the parties will be notified of that decision and brief reasons for it.
Limited permission

**44.22**

An order giving permission to appeal may:





(1) limit the issues to be heard; and

(2) be made subject to conditions.

**Conditional permission**
**44.22.1**
The power to impose conditions includes a power: (i) to require a payment into court; or (ii) order security for costs, provided the criteria for ordering such security are satisfied (*Al Khorafi v Bank Sarasin* [2009] DIFC CFI 026 (Reasons for order of 5 April 2015) at [14]-[16]).

**44.22.2**
Note that the test for imposing conditions at the permission to appeal stage in RDC 44.22 is not qualified, unlike the power of the appellate court itself to impose or vary conditions in RDC 44.94, which it can only exercise if there is a "compelling reason" to do so. In circumstances where a potential respondent has the power to make submissions on opposition of the application for permission to appeal and attend any oral hearing and to recover the costs of successfully resisting the grant of permission (under RDC 44.25), a respondent would be well advised to make an alternative submission for conditions to be imposed at the permission stage to avoid the higher threshold of RDC 44.94 applying.

**44.22.3**
In *Al Khorafi* [2009] DIFC CFI 026 (Reasons for order of 5 April 2015), the Court noted that the imposition of a condition is not an ordinary means of assisting a respondent faced with difficulties of enforcement such that more is required before justice warrants such an order: [34]-[36].

**44.23**
Where the lower Court or the appeal Court gives permission to appeal on some issues only, it will:

(1) refuse permission to appeal on any remaining issues; or

(2) reserve the question of permission to appeal on any remaining issues to the Court hearing the appeal.

**44.24**
If the lower Court reserves the question of permission to appeal under **Rule 44.23(2)**, the appellant must, within 14 days after receipt of the notification of the decision, inform the appeal Court and the respondent in writing whether he intends to pursue the reserved issues. If the appellant does intend to pursue the reserved issues, the parties must include in any time estimate for the appeal hearing, their time estimate for the reserved issues.

**Respondents' Costs Of Permission Applications**
**44.25**
The lower Court or the appeal Court will normally allow the respondent his costs of an application for permission to appeal if permission to appeal is refused.

Appeals from case management decisions






**44.26**

Case management decisions include decisions made under **Rule 4.2** and decisions about:

(1) disclosure;

(2) filing of witness statements or experts reports;

(3) directions about the timetable of the claim;

(4) adding a party to a claim; and

(5) security for costs.

**44.27**

Where the application is for permission to appeal from a case management decision, the lower Court or the appeal Court deciding the application may take into account whether:

(1) the issue is of sufficient significance to justify the costs of an appeal;

(2) the procedural consequences of an appeal (e.g. loss of trial date) outweigh the significance of the case management decision; and

(3) it would be more convenient to determine the issue at or after trial.

**Permission to appeal from case management decisions**
**44.27.1**
In addition to the express criteria the court may take into account in granting permission to appeal a case management decision, practitioners should note the summary of the test to appeal a case management decision at *Fidel v Felicia* [2015] DIFC CA 002 (23 November 2015) at [24], that the appellate court will only interfere if the judge: (a) erred in principle; (b) took into account irrelevant matters; (c) failed to take into account relevant matters; and/or (d) came to a decision so plainly wrong it must be regarded as outside the generous ambit of the discretion entrusted to the judge.

The fact that the judge made a discretionary decision of case management militates against any requirement for a rehearing unless the conditions for the review of such a decision are satisfied: *Vegie Bar LLC v Emirates National Bank of Dubai Properties LLC* [2016] CA 013 (25 January 2018) at [6]).

In *GFH Capital Limited v David Lawrence Haigh* (CA 002/2016) Mr Haigh sought to appeal or otherwise reopen a directions order. At [29] of the Court of Appeal's 28 February 2017 reasons, the requirements of RDC 44.31 (now RDC 44.27) were emphasised. The Court dismissed the appellant's application for permission to appeal; he had demonstrated that he was clearly attempting to delay the process of the cases and had abused the procedural system: [65].

**Appellant's Notice**
**44.28**
An appellant's notice must be filed in all cases other than an application for permission to appeal made orally as referred to in **Rule 44.6(1)**.





**44.29**

Subject to **Rule 44.30**, an appellant's notice must:

(1) set out the grounds of appeal relied on and

(2) include or be accompanied by a skeleton argument.

**44.30**

Where it is impracticable to comply with **Rule 44.29**, a statement of the grounds of appeal and the skeleton argument must be filed within 21 days of filing the appellant's notice.

**44.31**

The grounds of appeal must:

(1) set out clearly the reasons why it is said the decision of the lower Court was:

(a) wrong; or

(b) unjust because of a serious procedural or other irregularity in the proceedings in the lower Court;

(2) specify, in respect of each ground, whether the ground raises an appeal on a point of law or is an appeal against a finding of fact; and

(3) state the orders sought on appeal.



**44.32**

An appellant's notice which includes a skeleton argument or a skeleton argument filed in compliance with **Rule 44.30** must be accompanied by –

(1) where an application for permission to appeal is made in an appellant's notice filed pursuant to **Rule 44.6(2)**, any witness statement and affidavit in support of the application;

(2) where an application for permission to appeal is made in an appellant's notice filed pursuant to **Rule 44.9** –

(a) a copy of the order refusing permission to appeal, together with a copy of the Judge's reasons for refusing permission to appeal;

(b) the claim form and statements of case (where relevant to the subject of the appeal);

(c) a suitable record of the judgment;

(d) a copy or record of the decision appealed from;

(e) those parts of the documentary evidence and any transcript of evidence reasonable considered necessary to enable the appeal Court to decide whether or not to grant permission to appeal; and




(f) any witness statement and affidavit in support of the application.

**44.33**
Where the lower Court refers an application for permission to appeal to the appeal Court for decision, the appellant must file the documents referred to in **Rule 44.32(2)** within 14 days of receipt of notification of the referral.

**44.34**
Unless the Court otherwise orders, the appellant must serve on each respondent –

(a) a sealed copy of the appellant's notice;

(b) copies of any statement of the grounds of appeal and any skeleton argument; and

(c) copies of the documents accompanying the appellant's notice or the skeleton argument as referred to in **Rule 44.32** as soon as practicable and in any event within 7 days after they are filed.

**44.35**
The appellant must, as soon as practicable, file a certificate of service of the documents referred to in **Rule 44.34**.

**44.36**
The Court may dispense with the requirement for service of the appellant's notice on a respondent. Any application notice seeking an order under **Rule 9.32** to dispense with service should set out the reasons relied on and be verified by a statement of truth.

**Applications**
**44.37**
An application to be made to the appeal Court for a remedy incidental to the appeal may be included in the appellant's notice or made in a Part 23 application notice.

**44.38**
Where an application for a remedy incidental to the appeal is included in the appellant's notice, the rules relating to Part 23 application notices apply mutatis mutandis to the application.

**Appeal Bundles**
**44.39**
(1) Where permission to appeal is not required or has been given, the appellant must file an appeal bundle not less than 21 days before the appeal hearing and serve a copy of the appeal bundle on each respondent at the same time as he files it.

(2) The appellant must provide two additional copies of the appeal bundle for the appeal Court.

(3) The appeal bundle must include –



(a) a sealed copy of the appellant's notice;

(b) a sealed copy of the decision appealed from;

(c) a copy of any order giving or refusing permission to appeal, together with a copy of the Judge's reasons for allowing or refusing permission to appeal;

(d) any affidavit or witness statement filed in support of any application included in the appellant's notice;

(e) a copy of his skeleton argument;

(f) the claim form and statements of case (where relevant to the subject of the appeal);

(g) a suitable record of the judgment, and those parts of any transcript of evidence which are directly relevant to any question at issue on the appeal;

(h) those parts of any documentary evidence and any transcript of evidence reasonably considered necessary to enable the appeal Court to decide the appeal;

(i) any application notice (or case management documentation) relevant to the subject of the appeal;

 

(j) in the case of judicial review or a statutory appeal, the original decision which was the subject of the application to the lower Court;

(k) in cases where the appeal is from a tribunal, a copy of the tribunal's reasons for the decision, a copy of the decision reviewed by the tribunal and the reasons for the original decision and any document filed with the tribunal setting out the grounds of appeal from that decision;

(l) any other documents which the appellant reasonably considers necessary to enable the appeal Court to decide the appeal and any application; and

(m) such other documents as the Court may direct.

**44.40**
All documents that are extraneous to the issues to be considered must be excluded. The appeal bundle may include affidavits, witness statements, summaries, experts' reports and exhibits but only where these are directly relevant to the subject matter of the appeal.

**44.41**
The appeal bundle must contain a certificate signed by the appellant's legal representatives to the effect that they have read and understood Rules 44.39 and 44.40 and that the composition of the appeal bundle complies with it.





**44.42**

Where it is not possible to file all the above documents, the appellant must indicate which documents have not yet been filed and the reasons why they are not currently available. The appellant must then provide a reasonable estimate of when the missing document or documents can be filed and file them as soon as reasonably practicable.

**Core Bundles**
**44.43**

In cases where the appeal bundle comprises more than 500 pages, exclusive of transcripts, the appellant's legal representatives must, after consultation with the respondent's legal representatives, also prepare and file with the Court, in addition to copies of the appeal bundle (as amended in accordance with **Rule 44.89**) the requisite number of copies of a core bundle.

**44.44**

The core bundle must be filed within 28 days of receipt of the order giving permission to appeal or, where permission to appeal was granted by the lower Court or is not required, within 28 days of the date of service of the appellant's notice on the respondent.

**44.45**

The core bundle:

(1) must contain the documents which are central to the appeal; and

(2) must not exceed 150 pages.



**Preparation Of Bundles**
**44.46**

Rules 44.47 to 44.58 apply to the preparation of appeal bundles, supplemental respondents' bundles where the parties are unable to agree amendments to the appeal bundle, and core bundles.

**Rejection Of Bundles**
**44.47**

Where documents are copied unnecessarily or bundled incompletely, costs may be disallowed. Where the provisions of this Part as to the preparation or delivery of bundles are not followed the bundle may be rejected by the Court or be made the subject of a special costs order.

**Avoidance of duplication**
**44.48**

No more than one copy of any document should be included unless there is a good reason for doing otherwise (such as the use of a separate core bundle in **Rule 44.45**).

**Pagination**
**44.49**

The following rules regarding pagination shall apply:

(1) Bundles must be paginated, each page being numbered individually and consecutively. The pagination used at trial must also be indicated. Letters and





other documents should normally be included in chronological order. (An exception to consecutive page numbering arises in the case of core bundles where it may be preferable to retain the original numbering).

(2) Page numbers should be inserted in bold figures at the bottom of the page and in a form that can be clearly distinguished from any other pagination on the document.

**Format And Presentation**
**44.50**
The following rules regarding format and presentation shall apply:

(1) Where possible the documents should be in A4 format and may be printed single or double sided (unless the Court directs a particular format). Where a document has to be read across rather than down the page, it should be so placed in the bundle as to ensure that the text starts nearest the spine.

(2) Where any marking or writing in colour on a document is important, the document must be copied in colour or marked up correctly in colour.

(3) Documents which are not easily legible should be transcribed and the transcription marked and placed adjacent to the document transcribed.

(4) Documents in a language other than English should be translated and the translation marked and placed adjacent to the document translated. The translation should be agreed or, if it cannot be agreed, each party's proposed translation should be included.

(5) The size of any bundle should be tailored to its contents. A large lever arch file should not be used for just a few pages nor should files be overloaded.

(6) Where it will assist the Court, different sections of the file may be separated by cardboard or other tabbed dividers so long as these are clearly indexed. Where, for example, a document is awaited when the appeal bundle is filed, a single sheet of paper can be inserted after a divider, indicating the nature of the document awaited. For example, 'Transcript of evidence of Mr J Smith (to follow)'.

**Binding**
**44.51**
The following rules regarding binding shall apply:

(1) All documents, with the exception of transcripts, must be bound together. This may be in a lever arch file, ring binder or plastic folder. Plastic sleeves containing loose documents must not be used. Binders and files must be strong enough to withstand heavy use.

(2) Large documents such as plans should be placed in an easily accessible file. Large documents which will need to be opened up frequently should be inserted in a file larger than A4 size.






## Indices And Labels
**44.52**
The following rules regarding indices and labels shall apply:

(1) An index must be included at the front of the bundle listing all the documents and providing the page references for each. In the case of documents such as letters, invoices or bank statements, they may be given a general description.

(2) Where the bundles consist of more than one file, an index to all the files should be included in the first file and an index included for each file. Indices should, if possible, be on a single sheet. The full name of the case should not be inserted on the index if this would waste space. Documents should be identified briefly but properly.

## Identification
**44.53**
The following rules regarding identification shall apply:

(1) Every bundle must be clearly identified, on the spine and on the front cover, with the name of the case and the Court's reference. Where the bundle consists of more than one file, each file must be numbered on the spine, the front cover and the inside of the front cover.

(2) Outer labels should use large lettering e.g. 'Appeal Bundle A' or 'Core Bundle'. The full title of the appeal and legal representatives' names and addresses should be omitted. A label should be used on the front as well as on the spine.

## Staples Etc.
**44.54**
All staples, heavy metal clips, etc., must be removed.

## Statement Of Case
**44.55**
The following rules regarding statements of case shall apply:

(1) Statements of case should be assembled in 'chapter' form — i.e. claim followed by particulars of claim, followed by further information, irrespective of date.

(2) Redundant documents, e.g. particulars of claim overtaken by amendments, requests for further information recited in the answers given, should generally be excluded.

## New Documents
**44.56**
The following rules regarding new documents shall apply:

(1) Before a new document is introduced into bundles which have already been delivered to the Court, steps should be taken to ensure that it carries an appropriate bundle/page number so that it can be added to the Court documents. It should not be stapled and it should be prepared with punch holes for immediate inclusion in the binders in use.

(2) If it is expected that a large number of miscellaneous new documents will from time to time be introduced, there should be a special tabbed empty loose-leaf file for that purpose. An index should be produced for this file, updated as necessary.

**Correspondence Between Legal Representatives**
**44.57**
Since correspondence between legal representatives is unlikely to be required for the purposes of an appeal, only those letters which will need to be referred to should be copied.

**Sanctions For Non-Compliance**
**44.58**
If the appellant fails to comply with the requirements as to the provision of bundles of documents, the application or appeal will be referred for consideration to be given as to why it should not be dismissed for failure so to comply.

**Content Of Skeleton Arguments**
**44.59**
A skeleton argument filed on behalf of the appellant should contain in paragraph 1 the legal representatives' time estimate for the hearing of the appeal.

**44.60**
A skeleton argument must contain a numbered list of the points which the party wishes to make. These should both define and confine the areas of controversy. Each point should be stated as concisely as the nature of the case allows.

**44.61**
Skeleton arguments submitted in the context of appeals and supplementary skeleton arguments for appeals are not to exceed 35 pages in length. Requests for permission to submit lengthier skeleton arguments should be made via letter application.

**44.61.1**
See Practice Direction 2 of 2016

**44.62**
A numbered point must be followed by a reference to any document on which the party wishes to rely.

**44.63**
A skeleton argument must state, in respect of each authority cited:

(1) the proposition of law that the authority demonstrates; and

(2) the parts of the authority (identified by page or paragraph references) that support the proposition.

**44.64**
If more than one authority is cited in support of a given proposition, the skeleton argument must briefly state the reason for taking that course.



**44.65**

The statement referred to in **Rule 44.64** should not materially add to the length of the skeleton argument but should be sufficient to demonstrate, in the context of the argument:

(1) the relevance of the authority or authorities to that argument; and

(2) that the citation is necessary for a proper presentation of that argument.

**44.66**

The cost of preparing a skeleton argument which:

(1) does not comply with the requirements set out in **Rules 44.59** to **44.64**; or

(2) was not filed within the time limits provided by this Part (or any further time granted by the Court); Will Not Be Allowed On Assessment Except To The Extent That The Court Otherwise Directs.

**44.67**

The appellant should consider what other information the appeal Court will need. This may include a list of persons who feature in the case or glossaries of technical terms. A chronology of relevant events will be necessary in most appeals.

**Suitable Record Of The Judgment**
**44.68**



A suitable record of the judgment is –

(1) where the Court has issued the judgment sealed by the Court, a copy of the judgment;

(2) In other cases of Court judgments –

    (a) where the judgment has been officially recorded by the Court, a transcript of that record certified by the appellant's legal representative as a correct record;

    (b) subject to **Rule 44.68(3)**, where the judgment has not been officially recorded by the Court, a note of the judgment agreed between the legal representatives of the appellant and the respondent approved by the Judge whose decision is being appealed.

(3) If the parties cannot agree on a single note of the judgment, both versions should be provided to the judge with an explanatory letter. For the purposes of an application for permission to appeal the note need not be agreed by the respondent or approved by the Judge.

(4) In tribunal cases, a sealed copy of the tribunal's reasons for the decision.







**44.69**

An appellant may not be able to obtain a suitable record of the lower Court's judgment within the time within which the appellant's notice must be filed. In such cases the appellant's notice must still be completed to the best of the appellant's ability on the basis of the documentation available. However it may be amended subsequently with the permission of the appeal Court.

**44.70**

When the evidence is relevant to the appeal an official transcript of the relevant evidence must be obtained. Transcripts or notes of evidence are generally not needed for the purpose of determining an application for permission to appeal.

**44.71**

If evidence relevant to the appeal was not officially recorded, a typed version of the Judge's notes of evidence must be obtained.

**Procedure After Permission To Appeal Is Given**
**44.72**

Rules 44.73 to 44.74 set out the procedure where permission to appeal is given.

**44.73**

The appeal Court will send the parties

(1) notification of the date of the hearing;

(2) a copy of the order giving permission to appeal; and

(3) any other directions given by the Court.

**Time Estimates**
**44.74**

The legal representatives who will argue the appeal must provide a time estimate within 14 days of the appellant receiving the order giving permission to appeal. It should exclude the time required by the Court to give judgment. If the respondent disagrees with the time estimate, the respondent must inform the Court within 7 days of receipt of the estimate. In the absence of such notification the respondent will be deemed to have accepted the estimate proposed on behalf of the appellant.

**Respondent's Notice**
**44.75**

A respondent may file and serve a respondent's notice –

(1) applying for permission to appeal; or

(2) asking the appeal Court to uphold the decision of the lower Court for reasons different from or additional to those given by the lower Court.

**44.76**

(1) A respondent who wishes to ask the appeal Court to vary the decision of the lower Court in any way must appeal and permission will be required on the same basis as for an appellant.







(2) A respondent's application for permission to appeal must be made to the appeal Court.

(3) The rules in relation to applying for permission to appeal in an appellant's notice and decision of the application apply mutatis mutandis to an application for permission to appeal in a respondent's notice.

**44.77**
A respondent who wishes only to request that the appeal Court upholds the decision of the lower Court for reasons different from or additional to those given by the lower Court does not appeal and does not require permission to appeal.

**44.78**
If the respondent does not file a respondent's notice, he will not be entitled, except with the permission of the Court, to rely on any reason not relied on in the lower Court.

**Time For Respondent's Notice**
**44.79**
A respondent's notice must be filed within:

(1) such period as may be directed by the Court; or

(2) where the Court makes no such direction, 21 days after the date in **Rule 44.80**.



**44.80**
The date referred to in **Rule 44.79** is –

(1) where permission to appeal is not required, the date the respondent is served with the appellant's notice;

(2) in all other cases –

(a) the date the respondent receives a copy of the order giving permission to appeal; or

(b) the date the respondent receives notification that the application for permission to appeal and the appeal itself are to be heard together.

**44.81**
Rule 44.13 (extension of time for appeal) applies mutatis mutandis to a respondent and a respondent's notice. Accordingly, where an extension of time is required the extension must be requested in the respondent's notice and the reasons why the respondent failed to act within the specified time must be included.

**44.82**
The respondent must file a skeleton argument in all cases where he proposes to address arguments to the Court. The respondent's skeleton argument may be included within a respondent's notice.







**44.83**

Unless the Court orders otherwise a respondent's notice must be served on the appellant and any other respondent:

(1) as soon as practicable; and

(2) in any event not later than 7 days;

after it is filed.

**44.84**

A respondent who:

(1) files a respondent's notice; but

(2) does not include his grounds of appeal and skeleton argument within that notice;

may file his grounds of appeal and skeleton argument accompanying the notice but in any event must file his skeleton argument within 21 days of filing the notice.

**44.85**

A respondent who does not file a respondent's notice but who files a skeleton argument must file that skeleton argument no later than 28 days after the appellant's skeleton has been filed.



**44.86**

The respondent must:

(1) serve his skeleton argument on:

(a) the appellant; and

(b) any other respondent;

at the same time as he files it at the Court; and

(2) file a certificate of service.

**Content Of Respondent's Skeleton Argument**
**44.87**

A respondent's skeleton argument must conform to the directions at Rules 44.59 to 44.67 with any necessary modifications. It should, where appropriate, answer the arguments set out in the appellant's skeleton argument.

**44.87.1**

See also Practice Direction 2 of 2016

**Applications Within Respondent's Notice**
**44.88**

A respondent may include an application within a respondent's notice in accordance with **Rule 44.37** above.





**Respondent's Document**
**44.89**
If the respondent wishes to rely on any documents which he reasonably considers necessary to enable the appeal Court to decide the appeal and any application in addition to those filed by the appellant, he must make every effort to agree amendments to the appeal bundle with the appellant.

**44.90**
If the legal representatives of the parties are unable to reach agreement, the respondent may prepare a supplemental bundle.

**44.91**
If the respondent prepares a supplemental bundle he must file three copies of it within 21 days after he is served with the appeal bundle, and must provide two additional copies for the appeal Court.

**44.92**
The respondent must serve any supplemental bundle on the appellant and any other respondent at the same time as he files it.

**Amendment Of Appeal Notice**
**44.93**
An appeal notice may not be amended without the permission of the appeal Court. An application to amend and any application in opposition will normally be dealt with at the appeal hearing unless that course would cause unnecessary expense or delay in which case a request should be made for the application to amend to be heard in advance.




**Striking Out Appeal Notices And Setting Aside Or Imposing Conditions On Permission To Appeal**
**44.94**
The appeal Court may:

(1) strike out the whole or part of an appeal notice;

(2) set aside permission to appeal in whole or in part;

(3) impose or vary conditions upon which an appeal may be brought.

**44.95**
The Court will only exercise its powers under Rule 44.94 where there is a compelling reason for doing so.

**Exercise of powers under RDC 44.94**
**44.95.1**
This is a higher threshold than the grant of a condition at the permission stage, see *Al Khorafi v Bank Sarasin* [2009] DIFC CFI 026 (Reasons for order of 5 April 2015) at [14].



**44.96**
Where a party was present at an oral hearing at which permission to appeal was given he may not subsequently apply for an order that the Court exercise its powers under Rule 44.94(2) or 44.94(3).

**Bundles Of Authorities**
**44.97**
Once the parties have been notified of the date fixed for the hearing, the appellant's legal representative must, after consultation with his opponent, file a bundle containing photocopies of the authorities upon which each side will rely at the hearing.

**44.98**
The bundle of authorities should, in general:

    (1) have the relevant passages of the authorities marked;

    (2) not include authorities for propositions not in dispute; and

    (3) not contain more than 10 authorities unless the scale of the appeal warrants more extensive citation.

**44.99**
The bundle of authorities must be filed:

    (1) at least 7 days before the hearing; or

    (2) where the period of notice of the hearing is less than 7 days, immediately.

**44.100**
If, through some oversight, a party intends, during the hearing, to refer to other authorities the parties may agree a second agreed bundle., the appellant's legal representatives must file this bundle at least 48 hours before the hearing commences.

**44.101**
A bundle of authorities must bear a certification by the legal representatives responsible for arguing the case that the requirements of Rule 44.62 or 44.64 have been complied with in respect of each authority included.

**Supplementary Skeleton Arguments**
**44.102**
A supplementary skeleton argument on which the appellant wishes to rely must be filed no later than 14 days after the respondent's skeleton has been filed.

**44.103**
A supplementary skeleton argument on which the respondent wishes to rely must be filed 14 days after the appellant's supplementary skeleton and at least 14 days before the hearing.

**44.104**
All supplementary skeleton arguments must comply with the requirements set out in Rules 44.59 to 44.67.





**44.105**
At the hearing the Court may refuse to hear argument from a party not contained in a skeleton argument filed within the relevant time limit set out in this paragraph.

**Papers For The Appeal Hearing**
**44.106**
All the documents which are needed for the appeal hearing must be filed at least 7 days before the hearing.

**44.107**
Any party who fails to comply with the provisions of Rule 44.106 may be required to attend before the Chief Justice to seek permission to proceed with, or to oppose, the appeal.

**Appeals To The Court Of Appeal**
**44.108**
On hearing an appeal from a decision of the Court of First Instance, the Court of Appeal may:

(1) make or give any order that could have been made or given by the Court of First Instance;

(2) attach terms or conditions to an order it makes;

(3) annul or set aside a decision;

(4) require or prohibit the taking of a specific action or of action of a specified class;

(5) make a declaration of facts; or

(6) make any other order that the Court of Appeal considers appropriate or just.

**Appeals To The Court Of First Instance**
**44.109**
Unless another Rule, Practice Direction or enactment provides otherwise, on hearing an appeal, the Court of First Instance may:

(1) affirm, reverse or vary the decision appealed;

(2) set aside the decision appealed, in whole or in part;

(3) make any other order it considers appropriate;

(4) remit proceedings to the tribunal from which the appeal was brought, subject to any directions the Court of First Instance considers appropriate; or

(5) make any order or direction that is in the interests of justice.



**Hearings Of Appeals**
**44.110**
Every appeal will be limited to a review of the decision of the lower Court unless:

(1) the Court considers that in the circumstances of an individual appeal it would be in the interests of justice to hold a re-hearing;

(2) Rule 44.111 applies; or

(3) any other Rule or enactment requires a re-hearing.

**Appeals limited to a review**
**44.110.1**
For an example of the appeal court's consideration of whether to hold a re-hearing (under the old RDC 44.27 now RDC 44.110), see *Vegie Bar LLC v Emirates National Bank of Dubai Properties* [2016] CA 013 (25 January 2018) at [6]. The Court of Appeal ordered the production of documents for *"practical reasons"* but refused to take those documents into account in hearing an appeal from a security for costs application. The proper question was whether the judge was entitled to take the decision he did on the material before him. This was particularly so on an appeal from a case management decision.

**44.111**
The hearing of an appeal will be a re-hearing (as opposed to a review of the decision of the lower Court) if the appeal is from the decision of a person or other body and the person or other body:

(1) did not hold a hearing to come to that decision; or

(2) held a hearing to come to that decision, but the procedure adopted did not provide for the consideration of evidence.

**44.112**
The appeal Court may exercise its powers in relation to the whole or part of an order of the lower Court.

**44.113**
At the hearing of the appeal a party may not rely on a matter not contained in his appeal notice unless the appeal Court gives permission.

**Evidence On Appeal**
**44.114**
Unless it orders otherwise, the appeal Court will not receive:

(1) oral evidence; or

(2) evidence which was not before the lower Court.



**44.115**

Subject to **Rule 44.114**, the Court may receive further evidence, including:

(1) oral testimony;

(2) unsworn and sworn written evidence;

(3) evidence by video link, telephone or other means in accordance with what is appropriate in the circumstances; or

(4) evidence given in accordance with Part 29.

**44.116**

The appeal Court may draw any inference of fact which it considers justified on the evidence.

**Conditions For Allowing An Appeal**
**44.117**

The Court of Appeal will allow an appeal from a decision of the Court of First Instance where the decision of the lower Court was:

(1) wrong; or

(2) unjust because of a serious procedural or other irregularity in the proceedings in the lower Court.




**Circumstances for allowing an appeal from the CFI**
**44.117.1**

In *DAMAC Park Towers v Ward* [2015] DIFC CA 006 (14 December 2015) at [64-78], the Court of Appeal considered when it was open to a party to take a new point on appeal to argue the judgment below was "wrong". In summary:

(i) There is a principle that an appellant *"should not have free rein to introduce points on appeal that were not advanced at trial"* (at [65]).

(ii) Where the question is one of pure law, the court has no reason to preclude such admission (at [66]).

(iii) Where the new point raised presents factual questions which might affect the evidence or conduct of the trial, the position is more restrictive (at [68]).

(iv) However, this does not mean that the appellate court may not make findings of fact which an appellant did not put to the trial judge. The appellate court finding such facts would be impermissible if raising the point at trial might have called for more evidence, but the appellate court may find such facts so long as it is not in a *"much less advantageous position than the Courts below"* (at [69]-[70]).

(v) This is especially true where the new factual dispute resolves around an inference to be drawn rather than a question of primary fact (at [70]).

In the event, the Court allowed both (i) a new point of construction as a pure legal argument, and (ii) a point of inference to be determined to be raised on appeal.

**44.118**
The Court of First Instance will allow an appeal from a decision of a tribunal provided for in the Law, DIFC Law or Rules of Court where the decision was:

(1) wrong in relation to a question of law;

(2) unjust because of procedural unfairness or a miscarriage of justice; and/or

(3) wrong in relation to any other matter provided for in or under DIFC Law.

**Circumstances for allowing an appeal from a tribunal provided for in the Law**
**44.118.1**
It was emphasised, in the context of an appeal from the Small Claims Tribunal, that the consequence of this rule (then RDC 44.144) is that *"a complaint about a finding of fact by the [tribunal] lower court is not justiciable on an appeal unless it flows from some procedural unfairness or miscarriage or justice"*: judgment of Steel J dated 19 September 2013 in *Mona Sinaki v Openlink International* (CFI 011/2013) at [9].

**44.118.2**
Where a jurisdiction challenge failed in the SCT, and was not appealed, and there was a determination of the substantive claim, an appellant cannot, in the course of appealing the substantive judgment, try to appeal the jurisdiction challenge. The doctrine of *res judicata* applies to the jurisdiction issue, which was not appealed. See *Earlene v Earl* [2014] DIFC CFI 011 (10 August 2014) at [17]-[27].

**44.119**
The Court of First Instance will allow an appeal not referred to in **Rule 44.118** where the decision was:

(1) wrong; or

(2) unjust because of a serious procedural or other irregularity in the proceedings.

**Non–Disclosure Of Part 32 Offers**
**44.120**
The fact that a Part 32 offer or payment into Court has been made must not be disclosed to any Judge of the appeal Court who is to hear or determine:

(1) an application for permission to appeal; or

(2) an appeal;

until all questions (other than costs) have been determined.

**44.121**
Rule 44.120 does not apply if the Part 32 offer or payment into Court is relevant to the substance of the appeal.



**44.122**
Rule 44.120 does not prevent disclosure in any application in the appeal proceedings if disclosure of the fact that a Part 32 offer or payment into Court has been made is properly relevant to the matter to be decided.

**Who May Exercise The Powers Of The Court Of Appeal**
**44.123**
The Registrar may exercise the jurisdiction of the Court of Appeal with the consent of the Chief Justice to do all things necessary or convenient for the purpose of assisting the Judges of the Court of Appeal in the exercise of their powers or duties.

**44.124**
A single Judge may exercise the appellate jurisdiction of the Court of Appeal relating to an application:

(1) for permission to appeal to the Court of Appeal (and to grant such permission subject to such conditions as may be ordered by the single judge);

(2) for an extension or reduction of time for any document to be filed in an appeal to the Court of Appeal (including a general power to amend the times fixed by the rules or by order of the court, as may be the case);

(3) for leave to amend the grounds of appeal;

(4) for a stay;

(5) to strike out an appeal in the event that:

(a) the appellant does not file a document within the time ordered and notice has been given by the Court in the order for filing that the appeal will be struck out if filing is not made strictly on time; or

(b) the appellant does not attend the hearing of the appeal in person or by his Counsel on the date fixed for hearing; or

(6) to strike out an appeal in the event that a skeleton is not submitted.

(7) The single judge shall also have the power to decide any matter of case management relating to the appeal on behalf of the full bench of the Court of Appeal.

**44.125**
Decisions of the Registrar or a single Judge and under Rules 44.123 or 11.124 may be made without an oral hearing.

**44.126**
A party may request any decision of the Registrar or the single Judge under **Rules 44.123** or **44.124 (3) or (4)** made without a hearing to be reviewed by the Court of Appeal at an oral hearing.



**44.127**

A request under Rule 44.126 must be filed within 7 days after the party is served with notice of the decision.

**44.128**

A single Judge may refer any matter for a decision by a Court consisting of two or more judges.

### Dismissal Of Applications Or Appeals By Consent
**44.129**

Where an appellant does not wish to pursue an application or an appeal, he may request the appeal Court for an order that his application or appeal be dismissed. If such a request is granted it will usually be on the basis that the appellant pays the costs of the application or appeal.

**44.130**

If the appellant wishes to have the application or appeal dismissed without costs, his request must be accompanied by a consent signed by the respondent or his legal representative stating that the respondent consents to the dismissal of the application or appeal without costs.

**44.131**

Where a settlement has been reached disposing of the application or appeal, the parties may make a joint request to the Court asking that the application or appeal be dismissed by consent. If the request is granted the application or appeal will be dismissed.

### Allowing Unopposed Appeals Or Applications Without A Hearing
**44.132**



The appeal Court will not normally make an order allowing an appeal unless satisfied that the decision of the lower Court was wrong, but the appeal Court may set aside or vary the order of the lower Court with consent and without determining the merits of the appeal, if it is satisfied that there are good and sufficient reasons for doing so. Where the appeal Court is requested by all parties to allow an application or an appeal the Court may consider the request without a hearing. The request should set out the relevant history of the proceedings and the matters relied on as justifying the proposed order and be accompanied by a copy of the proposed order.

### Availability Of Reserved Judgments Before Hand Down
**44.133**

Rules 44.134 and 44.135 apply where the presiding Judge is satisfied that the result of the appeal will attract no special degree of confidentiality or sensitivity.

**44.134**

A copy of the written judgment may be made available to the parties' legal representatives by 4 p.m. two clear working days before judgment is due to be pronounced or such other period as the Court may direct. This can be shown, in confidence, to the parties but only for the purpose of obtaining instructions and on the strict understanding that the judgment, or its effect, is not to be disclosed to any other person. A working day is any day on which the Court Office is open for business.



**44.135**
The appeal will be listed for judgment and the judgment handed down at the appropriate time.

**Attendance Of Legal Representatives On The Handing Down Of A Reserved Judgment**
**44.136**
Where any consequential orders are agreed, the parties' legal representatives need not attend on the handing down of a reserved judgment. Where a legal representative does attend the Court may, if it considers such attendance unnecessary, disallow the costs of the attendance. If the parties do not indicate that they intend to attend, where the appeal was heard by more than one Judge, the judgment may be handed down by a single member of the Court.

**Agreed Orders Following Judgment**
**44.137**
The parties must, in respect of any draft agreed orders file 4 copies in the Court Office, no later than 12 noon on the working day before the judgment is handed down.

**44.138**
A copy of a draft order must bear the case reference, the date the judgment is to be handed down and the name of the presiding Judge.

**Corrections To The Draft Judgment**
**44.139**
Any proposed correction to the draft judgment should be sent to the Registry with a copy to any other party.

**Immediate Assessment Of Costs**
**44.140**
Costs are likely to be assessed by way of immediate assessment at the following hearings:

(1) contested directions hearings;

(2) applications for permission to appeal at which the respondent is present;

(3) dismissal list hearings in the Court of Appeal at which the respondent is present;

(4) appeals from case management decisions; and

(5) appeals listed for one day or less.

**44.141**
Parties attending any of the hearings referred to in Rule 44.140 should be prepared to deal with the immediate assessment.

**Appeals To The Court Of First Instance From The Director Of Employment Standards**
**44.142**
Rules 44.143 to 44.152 apply to appeals to the Court of First Instance from a determination, decision, or fine of the Director of Employment Standards pursuant to Article 83(1) of the Employment Law, DIFC Law 4 of 2005.



**44.143**

An appeal referred to in **Rule 44.142** shall be filed within 30 days of receipt of the determination, decision, or fine appealed and in accordance with the requirements of this Part.

**44.144**

The Director of Employment Standards must be named as a party to an appeal referred to in **Rule 44.142**.

**44.145**

The Court may grant a stay of the decision appealed from until the disposition of the appeal.

**44.146**

The Court may attach conditions to the stay, including requiring a party to deposit as security part or all of a monetary order.

**44.147**

The Director of Employment Standards shall provide the Court with the record that was before him at the time the determination, order or fine was made, including any witness statement and documents considered by him.

**44.148**

The Court may consider any other relevant evidence, in addition to the record.



**44.149**

Before considering the appeal, the Court of First Instance may:

(1) refer the matter back to the Director of Employment Standards for further investigation; or

(2) recommend that an attempt be made to settle the matter.

**44.150**

The Court may dismiss the appeal without a hearing if satisfied that:

(1) the appeal is not within the Court's jurisdiction;

(2) the appeal is frivolous or trivial or is not brought in good faith.

**44.151**

On hearing the appeal the Court may:

(1) decide all questions of fact or law arising in the course of an appeal;

(2) refer the matter back to the Director of Employment Standards; or

(3) confirm, vary or cancel the determination, decision or fine under appeal, or make another decision that it considers proper.





**44.152**

The Director of Employment Standards shall comply with any directions the Court gives to him.

**No Second Appeals**

**44.153**

No appeal lies from a decision of the Court of First Instance or the Court of Appeal on an appeal.

**Reopening Of Final Appeals**

**44.154**

The Court of Appeal or the Court of First Instance will not reopen a final determination of any appeal unless:

> (1) it is necessary to do so in order to avoid real injustice;
>
> (2) the circumstances are exceptional and make it appropriate to reopen the appeal; and
>
> (3) there is no alternative effective remedy.

**44.154.1**



In *Raul Silva v United Investment Bank Limited* (CA-004-2014) (13 November 2014) the defendant's application for permission to re-open the determination of the appeal and for permission to adduce further evidence. At [6] Giles J explained that: *"An appeal is not to be reopened so that a party can re-agitate a matter already considered or present the matter more fully or better than it may have been previously presented, even if the application is based on mistakes by the party's lawyers... The jurisdiction must be exercised with caution, given the importance of the public interest in the finality of litigation. Generally it will not be exercised unless the applicant can show that by accident and without fault on his part he has not been heard or his appeal has not been fully considered, although there may be other circumstances in which, for example, misapprehension of the facts or the law has fundamentally afflicted the integrity of the judgment in question."* 

The Court held that the Court of Appeal had not misunderstood the defendant's position on appeal; this was so clear that there was no warrant for allowing the application to proceed: [12]–[13]. The Court also did not consider that the conditions of exceptional circumstances and real injustice were met: [15]. No case had been made out for reception of further evidence, let alone for reopening the appeal by reason of the further evidence: [21]. The applications were dismissed.

**44.154.2**

Permission to reopen an appeal was granted in *Rohan & ors v Daman Real Estate Capital Partners Limited* CA 005/2013 (24 April 2014). Daman sought permission to reopen the appeal in respect of judgment given on 11 February 2014, together with judgment in a related case, *Beydoun v Daman Real Estate Capital Partners Limited* (CA 006/2013). Giles J held that the appellant's case on appeal had not been fully considered or dealt with: [8]. Although the judge considered that the appellant might have a difficult task to succeed on appeal, he considered that he should not too readily refuse permission



to re-open the appeal because of difficulty in the appellant's case when its case has not been dealt with. Leave to appeal had been granted and through no fault of the appellant its case had not been considered on appeal: [10]. Permission to reopen the related appeal in the Beydoun case had also been given by Giles J on 26 March 2014 also on the basis that the appellant's case had not been fully considered on appeal: [25]. The Court held that there would be a real injustice if the appellant were unable to reopen the appeal and submit that, on a proper construction of a contractual provision for which it contended and which found favour, the appeal should be allowed: [27].

### 44.154.3

In *Deyaar Development PJSC v (1) Taaleem PJSC (2) National Bonds Corporation PJSC* (CA-010-2015) (3 May 2017) the Court of Appeal emphasised at [17] that final appeals should only be reopened in exceptional circumstances, citing *Raul Silva v United Investment Bank Limited* CA-004-2014. Following the hearing of an appeal in May 2016 arising out of a judgment of Steel J from March 2015 in which orders relating to quantum were finalised, the Court of Appeal dismissed Deyaar's appeal. Deyaar then made an application for the Court of Appeal to exercise its discretion to vary the appeal judgment so as to order NBC to pay Taaleem's costs. The Court found that Deyaar had not met the cumulative requirements set out in RDC 44.179: [18]. However, as the Court had not had the opportunity hear the parties' submissions on costs at the appeal hearing and had included the words *"after further submissions on costs"* in its previous order, the Court went on to consider costs arguments from NBC and Deyaar.

### 44.154.4

In *GFH Capital Limited v David Lawrence Haigh* CA 002/2016 (28 February 2017) the Court of Appeal again emphasised at [70]–[71] the requirements which must be satisfied before the Court of Appeal will reopen a final determination. Mr Haigh sought to appeal or otherwise reopen a directions order. At [73] the Court stressed that to re-open the appeal, the appellant would have to *"show that the integrity of the earlier litigation process had been undermined"*. The Court did not consider that the reopening of directions orders to be exceptional circumstances: [74].

### 44.155

In **Rules** 44.154, 44.156, 44.159 and 44.163, "appeal" includes an application for permission to appeal.

### 44.156

Permission is needed to make an application under **Rule** 44.154 to reopen a final determination of an appeal even in cases where permission was not needed for the original appeal.

### 44.157

Permission to reopen a final determination of an appeal must be sought from the Court whose decision the applicant wishes to reopen.

### 44.158

The application for permission must be made by application notice and supported by written evidence, verified by a statement of truth.



**44.159**

A copy of the application for permission must not be served on any other party to the original appeal unless the Court so directs.

**44.160**

Where the Court directs that the application for permission is to be served on another party, that party may within 14 days of the service on him of the copy of the application file and serve a written statement either supporting or opposing the application.

**44.161**

The application for permission, and any written statements supporting or opposing it, will be considered on paper by a single Judge.

**44.162**

There is no right to an oral hearing of an application for permission unless, exceptionally, the Judge so directs.

**44.163**

The Judge will not grant permission without directing the application to be served on the other party to the original appeal and giving him an opportunity to make representations.

**44.164**

There is no right of appeal or review from the decision of the Judge on the application for permission, which is final.

 

## FORMER PART 44 — APPEALS
## THESE RULES WILL APPLY TO JUDGMENTS AND ORDERS ISSUED BEFORE 25 MAY 2017.
### SCOPE OF THIS PART AND INTERPRETATION

**x44.1**

The Rules in this Part apply to appeals to:

(1) the Court of Appeal; and

(2) the Court of First Instance.

**x44.2**

In this Part:

(1) 'appeal Court' means the Court to which an appeal is made;

(2) 'lower Court' means the Court, tribunal or other person or body from whose decision an appeal is brought;

(3) 'appellant' means a person who brings or seeks to bring an appeal;





**x44.8**

Permission to appeal may be given only where:

> (1) the Court considers that the appeal would have a real prospect of success; or

> (2) there is some other compelling reason why the appeal should be heard.

**x44.9**

Where a party applies for permission to appeal against a decision at the hearing at which the decision was made, the Judge making the decision shall state:

> (1) whether or not the judgment or order is final;

> (2) whether an appeal lies from the judgment or order; and

> (3) whether the Court gives permission to appeal; and

> (4) if not, the appropriate appeal Court to which any further application for permission may be made.

**x44.10**

Where no application for permission to appeal has been made in accordance with Rule 44.6(1) but a party requests further time to make such an application, the Court may adjourn the hearing to give that party the opportunity to do so.



**x44.11**

Where the lower Court refuses an application for permission to appeal, a further application for permission to appeal may be made to the appeal Court. 

**Consideration Of Permission Without A Hearing**

**x44.12**

Applications for permission to appeal may be considered by the appeal Court without a hearing.

**x44.13**

If permission is granted without a hearing the parties will be notified of that decision and the procedure in Rules 44.93 to 44.97 will then apply.

**x44.14**

If permission is refused without a hearing the parties will be notified of that decision with the reasons for it.

**x44.15**

Where the appeal Court, without a hearing, refuses permission to appeal, the person seeking permission may request the decision to be reconsidered at a hearing. This may be before the same Judge.

**x44.16**

Where the appeal Court refuses permission to appeal without a hearing, it may, if it considers that the application is totally without merit, make an order that the person seeking permission may not request the decision to be reconsidered at a hearing.



**x44.17**

A request for the decision to be reconsidered at an oral hearing must be filed at the appeal Court within 7 days after service of the notice that permission has been refused. A copy of the request must be served by the appellant on the respondent at the same time.

**Permission Hearing**

**x44.18**

Rules 44.19 to 44.21 apply where an appellant makes a request for a decision to be reconsidered at an oral hearing.

**x44.19**

The appellant's legal representative must, at least 4 days before the hearing, in a brief written statement:

    (1) inform the Court and the respondent of the points which he proposes to raise at the hearing; and

    (2) set out his reasons why permission should be granted notwithstanding the reasons given for the refusal of permission.

**x44.20**

Notice of a permission hearing will be given to the respondent but he is not required to attend unless the Court requests him to do so.



**x44.21**

If the Court requests the respondent's attendance at the permission hearing, the appellant must supply the respondent with a copy of the appeal bundle within 7 days of being notified of the request, or such other period as the Court may direct. The costs of providing that bundle shall be borne by the appellant initially, but will form part of the costs of the permission application.

**Limited Permission**

**x44.22**

An order giving permission may:

    (1) limit the issues to be heard; and

    (2) be made subject to conditions.

**x44.23**

Where a Court under **Rule 44.22** gives permission to appeal on some issues only, it will:

    (1) refuse permission on any remaining issues; or

    (2) reserve the question of permission to appeal on any remaining issues to the Court hearing the appeal.

**x44.24**

If the Court reserves the question of permission under **Rule 44.23(2)**, the appellant must, within 14 days after service of the Court's order, inform the appeal Court and the



respondent in writing whether he intends to pursue the reserved issues. If the appellant does intend to pursue the reserved issues, the parties must include in any time estimate for the appeal hearing, their time estimate for the reserved issues.

**x44.25**

If the appeal Court refuses permission to appeal on the remaining issues without a hearing and the applicant wishes to have that decision reconsidered at an oral hearing, the time limit in Rule 44.17 shall apply. Any application for an extension of this time limit should be made promptly. The Court hearing the appeal on the issues for which permission has been granted will not normally grant, at the appeal hearing, an application to extend the time limit in Rule 44.17 for the remaining issues.

**x44.26**

If the appeal Court refuses permission to appeal on remaining issues at or after an oral hearing, the application for permission to appeal on those issues cannot be renewed at the appeal hearing.

**Respondents' Costs Of Permission Applications**
**x44.27**

In most cases, applications for permission to appeal will be determined without the Court requesting:

　　(1) submissions from; or

　　(2) if there is an oral hearing, attendance by;

the respondent.

**x44.28**

Where the Court does not request submissions from or attendance by the respondent' costs will not normally be allowed to a respondent who volunteers submissions or attendance.

**x44.29**

Where the Court does request:

　　(1) submissions from; or

　　(2) attendance by the respondent;

the Court will normally allow the respondent his costs if permission is refused.

**Appeals From Case Management Decisions**
**x44.30**

Case management decisions include decisions made under Rule 4.2 and decisions about:

　　(1) disclosure;

　　(2) filing of witness statements or experts reports;

---



(3) directions about the timetable of the claim;

(4) adding a party to a claim; and

(5) security for costs.

**x44.31**
Where the application is for permission to appeal from a case management decision, the Court dealing with the application may take into account whether:

(1) the issue is of sufficient significance to justify the costs of an appeal;

(2) the procedural consequences of an appeal (e.g. loss of trial date) outweigh the significance of the case management decision; and

(3) it would be more convenient to determine the issue at or after trial.

**Appellant's Notice**
**x44.32**
An appellant's notice must be filed and served in all cases.

**x44.33**
Where the appellant seeks permission from the appeal Court it must be requested in the appellant's notice.



**x44.34**
The appellant's notice must set out the grounds of appeal relied on.

**x44.35**
The grounds of appeal must:

(1) set out clearly the reasons why it is said the decision of the lower Court was:

(a) wrong; or

(b) unjust because of a serious procedural or other irregularity in the proceedings in the lower Court; and

(2) specify, in respect of each ground, whether the ground raises an appeal on a point of law or is an appeal against a finding of fact.

**Filing And Service Of Appellant's Notice**
**x44.36**
The appellant must file the appellant's notice at the appeal Court within:

(1) such period as may be directed by the lower Court which should not normally exceed 28 days and which may be longer or shorter than the period referred to in (2); or

(2) where the Court makes no such direction, 14 days after the date of the decision of the lower Court that the appellant wishes to appeal.

440





**x44.37**

Where the lower Court Judge announces his decision and reserves the reasons for his judgment or order until a later date, he should, in the exercise of powers under **Rule 44.36(1)**, fix a period for filing the appellant's notice at the appeal Court that takes this into account.

**x44.38**

Subject to **Rule 44.39** and unless the appeal Court orders otherwise, a sealed copy of the appellant's notice, together with any skeleton arguments, must be served on each respondent :

(1) as soon as practicable; and

(2) in any event not later than 7 days;

after it is filed.

**x44.39**

Where the requirement to serve a skeleton argument is modified by **Rule 44.75** the skeleton argument should be served as soon as it is filed.

**x44.40**

The appellant must, as soon as practicable, file a certificate of service of the documents referred to in **Rule 44.38**.



**x44.41**

Where the time for filing an appellant's notice has expired, the appellant must:

(1) file the appellant's notice; and

(2) include in that appellant's notice an application for an extension of time.

**x44.42**

The appellant's notice should state the reason for the delay and the steps taken prior to the application being made.



**x44.43**

Where the appellant is applying for permission to appeal in his appellant's notice, he must serve on the respondents his appellant's notice and skeleton argument (but not the appeal bundle), unless the appeal Court directs otherwise.

**x44.44**

Where permission to appeal:

(1) has been given by the lower Court; or

(2) is not required;

the appellant must serve the appeal bundle on the respondents with the appellant's notice.





**x44.45**

Where the appellant's notice includes an application for an extension of time and permission to appeal has been given or is not required the respondent has the right to be heard on that application. He must be served with a copy of the appeal bundle. However, a respondent who unreasonably opposes an extension of time runs the risk of being ordered to pay the appellant's costs of that application.

**x44.46**

If an extension of time is given following such an application the procedure at **Rules** 44.93 to 44.97 applies.

**x44.47**

The Court may dispense with the requirement for service of the notice on a respondent. Any application notice seeking an order under **Rule 9.32** to dispense with service should set out the reasons relied on and be verified by a statement of truth.

**x44.48**

Unless the Court otherwise directs a respondent need not take any action when served with an appellant's notice until such time as notification is given to him that permission to appeal has been given.

**Variation Of Time**
**x44.49**

An application to vary the time limit for filing an appeal notice must be made to the appeal Court.



**x44.50**

The parties may not agree to extend any date or time limit set by:

   (1) these Rules;

   (2) any Practice Direction; or

   (3) an order of the appeal Court or the lower Court.

**Applications**
**x44.51**

Notice of an application to be made to the appeal Court for a remedy incidental to the appeal may be included in the appeal notice or in a Part 23 application notice.

**x44.52**

The applicant must file the following documents with the notice:

   (1) one additional copy of the application notice for the appeal Court and one
       copy for each of the respondents;

   (2) where applicable a sealed copy of the order which is the subject of the main
       appeal; and

   (3) a bundle of documents in support which should include:





(a) the Part 23 application notice; and

(b) any witness statements and affidavits filed in support of the application notice.

**Documents**
**x44.53**
The appellant must file the following documents together with an appeal bundle with his appellant's notice:

(1) two additional copies of the appellant's notice for the appeal Court;

(2) one copy of the appellant's notice for each of the respondents; and

(3) one copy of his skeleton argument for each copy of the appellant's notice that is filed.

**x44.54**
An appellant must include in his appeal bundle the following documents:

(1) a sealed copy of the appellant's notice;

(2) a sealed copy of the order being appealed;

(3) a copy of any order giving or refusing permission to appeal, together with a copy of the Judge's reasons for allowing or refusing permission to appeal;

(4) any affidavit or witness statement filed in support of any application included in the appellant's notice;

(5) a copy of his skeleton argument;

(6) a transcript or note of judgment, and in cases where permission to appeal was given by the lower Court or is not required those parts of any transcript of evidence which are directly relevant to any question at issue on the appeal;

(7) the claim form and statements of case (where relevant to the subject of the appeal);

(8) any application notice (or case management documentation) relevant to the subject of the appeal;

(9) in the case of judicial review or a statutory appeal, the original decision which was the subject of the application to the lower Court;

(10) in cases where the appeal is from a tribunal, a copy of the tribunal's reasons for the decision, a copy of the decision reviewed by the tribunal and the reasons for the original decision and any document filed with the tribunal setting out the grounds of appeal from that decision;






(11) any other documents which the appellant reasonably considers necessary to enable the appeal Court to reach its decision on the hearing of the application or appeal; and

(12) such other documents as the Court may direct.

**x44.55**
All documents that are extraneous to the issues to be considered on the application or the appeal must be excluded. The appeal bundle may include affidavits, witness statements, summaries, experts' reports and exhibits but only where these are directly relevant to the subject matter of the appeal.

**x44.56**
The appeal bundle must contain a certificate signed by the appellant's legal representatives to the effect that they have read and understood Rule 44.55 above and that the composition of the appeal bundle complies with it.

**x44.57**
Where it is not possible to file all the above documents, the appellant must indicate which documents have not yet been filed and the reasons why they are not currently available. The appellant must then provide a reasonable estimate of when the missing document or documents can be filed and file them as soon as reasonably practicable.

**Core Bundles**
**x44.58**

In cases where the appeal bundle comprises more than 500 pages, exclusive of transcripts, the appellant's legal representatives must, after consultation with the respondent's legal representatives, also prepare and file with the Court, in addition to copies of the appeal bundle (as amended in accordance with Rule 44.119) the requisite number of copies of a core bundle.


**x44.59**
The core bundle must be filed within 28 days of receipt of the order giving permission to appeal or, where permission to appeal was granted by the lower Court or is not required, within 28 days of the date of service of the appellant's notice on the respondent.

**x44.60**
The core bundle:

(1) must contain the documents which are central to the appeal; and

(2) must not exceed 150 pages.

**Preparation Of Bundles**
**x44.61**
Rules 44.62 to 44.73 apply to the preparation of appeal bundles, supplemental respondents' bundles where the parties are unable to agree amendments to the appeal bundle, and core bundles.






**Rejection Of Bundles**
**x44.62**
Where documents are copied unnecessarily or bundled incompletely, costs may be
disallowed. Where the provisions of this Part as to the preparation or delivery of bundles
are not followed the bundle may be rejected by the Court or be made the subject of a
special costs order.

**Avoidance Of Duplication**
**x44.63**
No more than one copy of any document should be included unless there is a good
reason for doing otherwise (such as the use of a separate core bundle in Rule 44.58).

**Pagination**
**x44.64**
The following rules regarding pagination shall apply:

(1) Bundles must be paginated, each page being numbered individually and
consecutively. The pagination used at trial must also be indicated. Letters and
other documents should normally be included in chronological order. (An
exception to consecutive page numbering arises in the case of core bundles
where it may be preferable to retain the original numbering).

(2) Page numbers should be inserted in bold figures at the bottom of the page and
in a form that can be clearly distinguished from any other pagination on the
document.



**Format And Presentation**
**x44.65**
The following rules regarding format and presentation shall apply:

(1) Where possible the documents should be in A4 format. Where a document
has to be read across rather than down the page, it should be so placed in the
bundle as to ensure that the text starts nearest the spine.

(2) Where any marking or writing in colour on a document is important, the
document must be copied in colour or marked up correctly in colour.

(3) Documents which are not easily legible should be transcribed and the
transcription marked and placed adjacent to the document transcribed.

(4) Documents in a language other than English should be translated and the
translation marked and placed adjacent to the document translated. The
translation should be agreed or, if it cannot be agreed, each party's proposed
translation should be included.

(5) The size of any bundle should be tailored to its contents. A large lever arch file
should not be used for just a few pages nor should files be overloaded.

(6) Where it will assist the Court, different sections of the file may be separated
by cardboard or other tabbed dividers so long as these are clearly indexed.



Where, for example, a document is awaited when the appeal bundle is filed, a single sheet of paper can be inserted after a divider, indicating the nature of the document awaited. For example, 'Transcript of evidence of Mr J Smith (to follow)'.

**Binding**
**x44.66**
The following rules regarding binding shall apply:

(1) All documents, with the exception of transcripts, must be bound together. This may be in a lever arch file, ring binder or plastic folder. Plastic sleeves containing loose documents must not be used. Binders and files must be strong enough to withstand heavy use.

(2) Large documents such as plans should be placed in an easily accessible file. Large documents which will need to be opened up frequently should be inserted in a file larger than A4 size.

**Indices And Labels**
**x44.67**
The following rules regarding indices and labels shall apply:

(1) An index must be included at the front of the bundle listing all the documents and providing the page references for each. In the case of documents such as letters, invoices or bank statements, they may be given a general description.

(2) Where the bundles consist of more than one file, an index to all the files should be included in the first file and an index included for each file. Indices should, if possible, be on a single sheet. The full name of the case should not be inserted on the index if this would waste space. Documents should be identified briefly but properly.

**Identification**
**x44.68**
The following rules regarding identification shall apply:

(1) Every bundle must be clearly identified, on the spine and on the front cover, with the name of the case and the Court's reference. Where the bundle consists of more than one file, each file must be numbered on the spine, the front cover and the inside of the front cover.

(2) Outer labels should use large lettering e.g. 'Appeal Bundle A' or 'Core Bundle'. The full title of the appeal and legal representatives' names and addresses should be omitted. A label should be used on the front as well as on the spine.

**Staples Etc.**
**x44.69**
All staples, heavy metal clips, etc., must be removed.



## Statement Of Case
**x44.70**

The following rules regarding statements of case shall apply:

(1) Statements of case should be assembled in 'chapter' form — i.e. claim followed by particulars of claim, followed by further information, irrespective of date.

(2) Redundant documents, e.g. particulars of claim overtaken by amendments, requests for further information recited in the answers given, should generally be excluded.

## New Documents
**x44.71**

The following rules regarding new documents shall apply:

(1) Before a new document is introduced into bundles which have already been delivered to the Court, steps should be taken to ensure that it carries an appropriate bundle/page number so that it can be added to the Court documents. It should not be stapled and it should be prepared with punch holes for immediate inclusion in the binders in use.

(2) If it is expected that a large number of miscellaneous new documents will from time to time be introduced, there should be a special tabbed empty loose-leaf file for that purpose. An index should be produced for this file, updated as necessary.




## Correspondence Between Legal Representatives
**x44.72**

Since correspondence between legal representatives is unlikely to be required for the purposes of an appeal, only those letters which will need to be referred to should be copied.

## Sanctions For Non-Compliance
**x44.73**

If the appellant fails to comply with the requirements as to the provision of bundles of documents, the application or appeal will be referred for consideration to be given as to why it should not be dismissed for failure so to comply.

## Skeleton Arguments
**x44.74**

The appellant's notice must, subject to **Rule 44.75**, be accompanied by a skeleton argument. Alternatively the skeleton argument may be included in the appellant's notice. Where the skeleton argument is so included it will not form part of the notice for the purposes of **Rule 44.88**.

**x44.75**

Where it is impracticable for the appellant's skeleton argument to accompany the appellant's notice it must be filed and served on all respondents within 14 days of filing the notice.



**Content Of Skeleton Arguments**
**x44.76**
A skeleton argument filed on behalf of the appellant should contain in paragraph 1 the legal representatives' time estimate for the hearing of the appeal.

**x44.77**
A skeleton argument must contain a numbered list of the points which the party wishes to make. These should both define and confine the areas of controversy. Each point should be stated as concisely as the nature of the case allows.

**x44.78**
A numbered point must be followed by a reference to any document on which the party wishes to rely.

**x44.79**
A skeleton argument must state, in respect of each authority cited:

(1) the proposition of law that the authority demonstrates; and

(2) the parts of the authority (identified by page or paragraph references) that support the proposition.

**x44.80**
If more than one authority is cited in support of a given proposition, the skeleton argument must briefly state the reason for taking that course.



**x44.81**
The statement referred to in **Rule 44.80** should not materially add to the length of the skeleton argument but should be sufficient to demonstrate, in the context of the argument:

(1) the relevance of the authority or authorities to that argument; and

(2) that the citation is necessary for a proper presentation of that argument.

**x44.82**
The cost of preparing a skeleton argument which:

(1) does not comply with the requirements set out in **Rules 44.76** to **44.81**; or

(2) was not filed within the time limits provided by this Part (or any further time granted by the Court);

will not be allowed on assessment except to the extent that the Court otherwise directs.

**x44.83**
The appellant should consider what other information the appeal Court will need. This may include a list of persons who feature in the case or glossaries of technical terms. A chronology of relevant events will be necessary in most appeals.





**Suitable Record Of The Judgment**
**x44.84**
Where the judgment to be appealed has been officially recorded by the Court, an approved transcript of that record should accompany the appellant's notice. Photocopies will not be accepted for this purpose. However, where there is no officially recorded judgment, the following documents will be acceptable:

(1) Written judgments

Where the judgment was made in writing a copy of that judgment endorsed with the Judge's signature.

(2) Note of judgment

When judgment was not officially recorded or made in writing a note of the judgment (agreed between the appellant's and respondent's legal representatives ) should be submitted for approval to the Judge whose decision is being appealed. If the parties cannot agree on a single note of the judgment, both versions should be provided to that Judge with an explanatory letter. For the purpose of an application for permission to appeal the note need not be approved by the respondent or the lower Court Judge.

(3) Reasons for judgment in tribunal cases

A sealed copy of the tribunal's reasons for the decision.



**x44.85**
An appellant may not be able to obtain an official transcript or other suitable record of the lower Court's decision within the time within which the appellant's notice must be filed. In such cases the appellant's notice must still be completed to the best of the appellant's ability on the basis of the documentation available. However it may be amended subsequently with the permission of the appeal Court.



**Transcripts Or Notes Of Evidence**
**x44.86**
When the evidence is relevant to the appeal an official transcript of the relevant evidence must be obtained. Transcripts or notes of evidence are generally not needed for the purpose of determining an application for permission to appeal.

**x44.87**
If evidence relevant to the appeal was not officially recorded, a typed version of the Judge's notes of evidence must be obtained.

**Amendment Of Appeal Notice**
**x44.88**
An appeal notice may not be amended without the permission of the appeal Court. An application to amend and any application in opposition will normally be dealt with at the appeal hearing unless that course would cause unnecessary expense or delay in which case a request should be made for the application to amend to be heard in advance.





**Striking Out Appeal Notices And Setting Aside Or Imposing Conditions On Permission To Appeal**
**x44.89**
The appeal Court may:

    (1) strike out the whole or part of an appeal notice;

    (2) set aside permission to appeal in whole or in part;

    (3) impose or vary conditions upon which an appeal may be brought.

**x44.90**
The Court will only exercise its powers under Rule 44.88 where there is a compelling reason for doing so.

**x44.91**
Where a party was present at the hearing at which permission was given he may not subsequently apply for an order that the Court exercise its powers under Rule 44.89(2) or 44.89(3).

**Procedure After Permission Is Obtained**
**x44.92**
Rules 44.93 to 44.97 set out the procedure where:

    (1) permission to appeal is given by the appeal Court; or

    (2) the appellant's notice is filed in the appeal Court; and:

      (a) permission was given by the lower Court; or

      (b) permission is not required.

**x44.93**
If the appeal Court gives permission to appeal, the appeal bundle must be served on each of the respondents within 7 days of receiving the order giving permission to appeal.

**x44.94**
The appeal Court will send the parties:

    (1) notification of the date of the hearing;

    (2) where permission is granted by the appeal Court a copy of the order giving permission to appeal; and

    (3) any other directions given by the Court.

**x44.95**
Where the appeal Court grants permission to appeal, the appellant must add the following documents to the appeal bundle:






(1) the respondent's notice and skeleton argument (if any);

(2) those parts of the transcripts of evidence which are directly relevant to any question at issue on the appeal;

(3) the order granting permission to appeal and, where permission to appeal was granted at an oral hearing, the transcript (or note) of any judgment which was given; and

(4) any document which the appellant and respondent have agreed to add to the appeal bundle in accordance with **Rule 44.119**.

**x44.96**
Where permission to appeal has been refused on a particular issue, the appellant must remove from the appeal bundle all documents that are relevant only to that issue.

**Time Estimates**
**x44.97**
The legal representatives who will argue the appeal must provide a time estimate within 14 days of the appellant receiving the order giving permission to appeal. It should exclude the time required by the Court to give judgment. If the respondent disagrees with the time estimate, the respondent must inform the Court within 7 days of receipt of the estimate. In the absence of such notification the respondent will be deemed to have accepted the estimate proposed on behalf of the appellant.



**Respondent's Notice**
**x44.98**
A respondent may file and serve a respondent's notice.

**x44.99**
A respondent who:

(1) is seeking permission to appeal from the appeal Court; or

(2) wishes to ask the appeal Court to uphold the order of the lower Court for reasons different from or additional to those given by the lower Court;

must file a respondent's notice.

**x44.100**
Where the respondent seeks permission from the appeal Court it must be requested in the respondent's notice.

**x44.101**
A respondent who wishes to ask the appeal Court to vary the order of the lower Court in any way must appeal and permission will be required on the same basis as for an appellant.

**x44.102**
A respondent who wishes only to request that the appeal Court upholds the judgment





or order of the lower Court whether for the reasons given in the lower Court does not make an appeal and does not therefore require permission to appeal in accordance with Rule 44.5.

**x44.103**
A respondent who wishes to appeal or who wishes to ask the appeal Court to uphold the order of the lower Court for reasons different from or additional to those given by the lower Court must file a respondent's notice.

**x44.104**
If the respondent does not file a respondent's notice, he will not be entitled, except with the permission of the Court, to rely on any reason not relied on in the lower Court.

**Time Limits For Respondent's Notice**
**x44.105**
A respondent's notice must be filed within:

(1) such period as may be directed by the lower Court; or

(2) where the Court makes no such direction, 14 days after the date in Rule 44.106.

**x44.106**
The date referred to in Rule 44.105 is:



(1) the date the respondent is served with the appellant's notice where:

(a) permission to appeal was given by the lower Court; or

(b) permission to appeal is not required;

(2) the date the respondent is served with notification that the appeal Court has given the appellant permission to appeal; or

(3) the date the respondent is served with notification that the application for permission to appeal and the appeal itself are to be heard together.



**x44.107**
Rules 44.41 and 44.42 (extension for time for filing appellant's notice) also apply to a respondent and a respondent's notice.

**x44.108**
Where an extension of time is required the extension must be requested in the respondent's notice and the reasons why the respondent failed to act within the specified time must be included.

**x44.109**
The respondent must file a skeleton argument for the Court in all cases where he proposes to address arguments to the Court. The respondent's skeleton argument may be included within a respondent's notice. Where a skeleton argument is included within a respondent's notice it will not form part of the notice for the purposes of Rule 44.88.



**x44.110**

Unless the appeal Court orders otherwise a respondent's notice must be served on the appellant and any other respondent :

    (1) as soon as practicable; and

    (2) in any event not later than 7 days;

after it is filed.

**x44.111**

A respondent who:

    (1) files a respondent's notice; but

    (2) does not include his skeleton argument within that notice;

must file and serve his skeleton argument within 14 days of filing the notice.

**x44.112**

A respondent who does not file a respondent's notice but who files a skeleton argument must file and serve that skeleton argument at least 7 days before the appeal hearing.

**x44.113**

The respondent must:

    (1) serve his skeleton argument on:

      (a) the appellant; and

      (b) any other respondent;

at the same time as he files it at the Court; and

    (2) file a certificate of service.

**Content Of Respondent's Skeleton Argument**
**x44.114**

A respondent's skeleton argument must conform to the directions at Rules 44.76 to 44.83 with any necessary modifications. It should, where appropriate, answer the arguments set out in the appellant's skeleton argument.

**Applications Within Respondent's Notice**
**x44.115**

A respondent may include an application within a respondent's notice in accordance with Rule 44.51 above.

**Filing Respondent's Notice And Skeleton Argument**
**x44.116**

The respondent must file the following documents with his respondent's notice in every case:







(1) two additional copies of the respondent's notice for the appeal Court; and

(2) one copy each for the appellant and any other respondents.

**x44.117**
The respondent may file a skeleton argument with his respondent's notice and—

(1) where he does so he must file two copies; and

(2) where he does not do so he must comply with Rules 44.111 and 44.112.

**x44.118**
If the respondent wishes to rely on any documents which he reasonably considers necessary to enable the appeal Court to reach its decision on the appeal in addition to those filed by the appellant, he must make every effort to agree amendments to the appeal bundle with the appellant.

**x44.119**
If the legal representatives of the parties are unable to reach agreement, the respondent may prepare a supplemental bundle.

**x44.120**
If the respondent prepares a supplemental bundle he must file it, together with the requisite number of copies for the appeal Court, at the appeal Court :



(1) with the respondent's notice; or

(2) if a respondent's notice is not filed, within 21 days after he is served with the appeal bundle.

**x44.121**
The respondent must serve:

(1) the respondent's notice;

(2) his skeleton argument (if any); and

(3) the supplemental bundle (if any);

on:

(a) the appellant; and

(b) any other respondent;

at the same time as he files them at the Court.

**Bundles Of Authorities**
**x44.122**
Once the parties have been notified of the date fixed for the hearing, the appellant's




legal representative must, after consultation with his opponent, file a bundle containing photocopies of the authorities upon which each side will rely at the hearing.

**x44.123**
The bundle of authorities should, in general:

    (1) have the relevant passages of the authorities marked;

    (2) not include authorities for propositions not in dispute; and

(3) not contain more than 10 authorities unless the scale of the appeal warrants more extensive citation.

**x44.124**
The bundle of authorities must be filed:

    (1) at least 7 days before the hearing; or

    (2) where the period of notice of the hearing is less than 7 days, immediately.

**x44.125**
If, through some oversight, a party intends, during the hearing, to refer to other authorities the parties may agree a second agreed bundle. The appellant's legal representatives must file this bundle at least 48 hours before the hearing commences.

**x44.126**
A bundle of authorities must bear a certification by the legal representatives responsible for arguing the case that the requirements of Rule 44.79 to 44.81 have been complied with in respect of each authority included.

**Supplementary Skeleton Arguments**
**x44.127**
A supplementary skeleton argument on which the appellant wishes to rely must be filed at least 14 days before the hearing.

**x44.128**
A supplementary skeleton argument on which the respondent wishes to rely must be filed at least 7 days before the hearing.

**x44.129**
All supplementary skeleton arguments must comply with the requirements set out in Rules 44.76 to 44.83.

**x44.130**
At the hearing the Court may refuse to hear argument from a party not contained in a skeleton argument filed within the relevant time limit set out in this paragraph.

**Papers For The Appeal Hearing**
**x44.131**
All the documents which are needed for the appeal hearing must be filed at least 7 days before the hearing.



**x44.132**

Any party who fails to comply with the provisions of **Rule 44.131** may be required to attend before the Chief Justice to seek permission to proceed with, or to oppose, the appeal.

**Appeals To The Court Of Appeal**
**x44.133**

On hearing an appeal from a decision of the Court of First Instance, the Court of Appeal may:

(1) make or give any order that could have been made or given by the Court of First Instance;

(2) attach terms or conditions to an order it makes;

(3) annul or set aside a decision;

(4) require or prohibit the taking of a specific action or of action of a specified class;

(5) make a declaration of facts; or

(6) make any other order that the Court of Appeal considers appropriate or just.

**Appeals To The Court Of First Instance**
**x44.134**



Unless another Rule, Practice Direction or enactment provides otherwise, on hearing an appeal, the Court of First Instance may:

(1) affirm, reverse or vary the decision appealed;

(2) set aside the decision appealed, in whole or in part;

(3) make any other order it considers appropriate;

(4) remit proceedings to the tribunal from which the appeal was brought, subject to any directions the Court of First Instance considers appropriate; or

(5) make any order or direction that is in the interests of justice.

**Hearings Of Appeals**
**x44.135**

Every appeal will be limited to a review of the decision of the lower Court unless:

(1) the Court considers that in the circumstances of an individual appeal it would be in the interests of justice to hold a re-hearing;

(2) **Rule 44.136** applies; or

(3) any other Rule or enactment requires a re-hearing.





**x44.136**

The hearing of an appeal will be a re-hearing (as opposed to a review of the decision of the lower Court) if the appeal is from the decision of a person or other body and the person or other body:

  (1) did not hold a hearing to come to that decision; or

  (2) held a hearing to come to that decision, but the procedure adopted did not provide for the consideration of evidence.

**x44.137**

The appeal Court may exercise its powers in relation to the whole or part of an order of the lower Court.

**x44.138**

At the hearing of the appeal a party may not rely on a matter not contained in his appeal notice unless the appeal Court gives permission.

**Evidence On Appeal**
**x44.139**

Unless it orders otherwise, the appeal Court will not receive:

  (1) oral evidence; or

  (2) evidence which was not before the lower Court.



**x44.140**

Subject to Rule 44.139, the Court may receive further evidence, including:

  (1) oral testimony;

  (2) unsworn and sworn written evidence;

  (3) evidence by video link, telephone or other means in accordance with what is appropriate in the circumstances; or

  (4) evidence given in accordance with Part 29.

**x44.141**

The appeal Court may draw any inference of fact which it considers justified on the evidence.

**Conditions For Allowing An Appeal**
**x44.142**

The Court of Appeal will allow an appeal from a decision of the Court of First Instance where the decision of the lower Court was:

  (1) wrong; or

  (2) unjust because of a serious procedural or other irregularity in the proceedings in the lower Court.






**x44.143**

The Court of First Instance will allow an appeal from a decision of a tribunal provided for in the Law, DIFC Law or Rules of Court where the decision was:

(1) wrong in relation to a question of law;

(2) unjust because of procedural unfairness or a miscarriage of justice; and/or

(3) wrong in relation to any other matter provided for in or under DIFC Law.

**x44.144**

The Court of First Instance will allow an appeal not referred to in Rule 44.143 where the decision was:

(1) wrong; or

(2) unjust because of a serious procedural or other irregularity in the proceedings.

**Non–Disclosure Of Part 32 Offers**
**x44.145**

The fact that a Part 32 offer or payment into Court has been made must not be disclosed to any Judge of the appeal Court who is to hear or determine:

(1) an application for permission to appeal; or

(2) an appeal;

until all questions (other than costs) have been determined.

**x44.146**

Rule 44.145 does not apply if the Part 32 offer or payment into Court is relevant to the substance of the appeal.

**x44.147**

Rule 44.145 does not prevent disclosure in any application in the appeal proceedings if disclosure of the fact that a Part 32 offer or payment into Court has been made is properly relevant to the matter to be decided.

**Who May Exercise The Powers Of The Court Of Appeal**
**x44.148**

The Registrar may exercise the jurisdiction of the Court of Appeal with the consent of the Chief Justice to do all things necessary or convenient for the purpose of assisting the Judges of the Court of Appeal in the exercise of their powers or duties.

**x44.149**

A single Judge may exercise the appellate jurisdiction of the Court of Appeal relating to an application for:

(1) leave to appeal to the Court of Appeal;

(2) an extension of time within which to institute an appeal to the Court of Appeal;



(3) leave to amend the grounds of an appeal to the Court of Appeal; or

(4) a stay.

**x44.150**
Decisions of the Registrar or a single Judge and under **Rules 44.148** or **44.149** may be made without a hearing.

**x44.151**
A party may request any decision of the Registrar or the single Judge under **Rules x44.148** or **44.149** made without a hearing to be reviewed by the Court of Appeal at a hearing.

**x44.152**
A request under **Rule 44.151** must be filed within 7 days after the party is served with notice of the decision.

**x44.153**
A single Judge may refer any matter for a decision by a Court consisting of two or more judges.

**Dismissal Of Applications Or Appeals By Consent**
**x44.154**
Where an appellant does not wish to pursue an application or an appeal, he may request the appeal Court for an order that his application or appeal be dismissed. If such a request is granted it will usually be on the basis that the appellant pays the costs of the application or appeal.

**x44.155**
If the appellant wishes to have the application or appeal dismissed without costs, his request must be accompanied by a consent signed by the respondent or his legal representative stating that the respondent consents to the dismissal of the application or appeal without costs.

**x44.156**
Where a settlement has been reached disposing of the application or appeal, the parties may make a joint request to the Court asking that the application or appeal be dismissed by consent. If the request is granted the application or appeal will be dismissed.

**Allowing Unopposed Appeals Or Applications Without A Hearing**
**x44.157**
The appeal Court will not normally make an order allowing an appeal unless satisfied that the decision of the lower Court was wrong, but the appeal Court may set aside or vary the order of the lower Court with consent and without determining the merits of the appeal, if it is satisfied that there are good and sufficient reasons for doing so. Where the appeal Court is requested by all parties to allow an application or an appeal the Court may consider the request without a hearing. The request should set out the relevant history of the proceedings and the matters relied on as justifying the proposed order and be accompanied by a copy of the proposed order.



**Availability Of Reserved Judgments Before Hand Down**
**x44.158**
Rules 44.159 and 44.160 apply where the presiding Judge is satisfied that the result of the appeal will attract no special degree of confidentiality or sensitivity.

**x44.159**
A copy of the written judgment will be made available to the parties' legal representatives by 4 p.m. on the second working day before judgment is due to be pronounced or such other period as the Court may direct. This can be shown, in confidence, to the parties but only for the purpose of obtaining instructions and on the strict understanding that the judgment, or its effect, is not to be disclosed to any other person. A working day is any day on which the Court Office is open for business.

**x44.160**
The appeal will be listed for judgment and the judgment handed down at the appropriate time.

**Attendance Of Legal Representatives On The Handing Down Of A Reserved Judgment**
**x44.161**
Where any consequential orders are agreed, the parties' legal representatives need not attend on the handing down of a reserved judgment. Where a legal representative does attend the Court may, if it considers such attendance unnecessary, disallow the costs of the attendance. If the parties do not indicate that they intend to attend, where the appeal was heard by more than one Judge, the judgment may be handed down by a single member of the Court.



**Agreed Orders Following Judgment**
**x44.162**
The parties must, in respect of any draft agreed orders file 4 copies in the Court Office, no later than 12 noon on the working day before the judgment is handed down.

**x44.163**
A copy of a draft order must bear the case reference, the date the judgment is to be handed down and the name of the presiding Judge.

**Corrections To The Draft Judgment**
**x44.164**
Any proposed correction to the draft judgment should be sent to the Judge who prepared the draft with a copy to any other party.

**Immediate Assessment Of Costs**
**x44.165**
Costs are likely to be assessed by way of immediate assessment at the following hearings:

    (1) contested directions hearings;

    (2) applications for permission to appeal at which the respondent is present;

    (3) dismissal list hearings in the Court of Appeal at which the respondent is present;





(4) appeals from case management decisions; and

(5) appeals listed for one day or less.

**x44.166**
Parties attending any of the hearings referred to in Rule 44.165 should be prepared to deal with the immediate assessment.

**Appeals To The Court Of First Instance From The Director Of Employment Standards**
**x44.167**
Rules 44.168 to 44.177 apply to appeals to the Court of First Instance from a determination, decision, or fine of the Director of Employment Standards pursuant to Article 83(1) of the Employment Law, DIFC Law 4 of 2005.

**x44.168**
An appeal referred to in Rule 44.167 shall be filed within 30 days of receipt of the determination, decision, or fine appealed and in accordance with the requirements of this Part.

**x44.169**
The Director of Employment Standards must be named as a party to an appeal referred to in Rule 44.167.

**x44.170**
The Court may grant a stay of the decision appealed from until the disposition of the appeal.

**x44.171**
The Court may attach conditions to the stay, including requiring a party to deposit as security part or all of a monetary order.

**x44.172**
The Director of Employment Standards shall provide the Court with the record that was before him at the time the determination, order or fine was made, including any witness statement and documents considered by him.

**x44.173**
The Court may consider any other relevant evidence, in addition to the record.

**x44.174**
Before considering the appeal, the Court of First Instance may:

(1) refer the matter back to the Director of Employment Standards for further investigation; or

(2) recommend that an attempt be made to settle the matter.



**x44.175**

The Court may dismiss the appeal without a hearing if satisfied that:

(1) the appeal is not within the Court's jurisdiction;

(2) the appeal is frivolous or trivial or is not brought in good faith.

**x44.176**

On hearing the appeal the Court may:

(1) decide all questions of fact or law arising in the course of an appeal;

(2) refer the matter back to the Director of Employment Standards; or

(3) confirm, vary or cancel the determination, decision or fine under appeal, or make another decision that it considers proper.

**x44.177**

The Director of Employment Standards shall comply with any directions the Court gives to him.

**No Second Appeals**
**x44.178**

No appeal lies from a decision of the Court of First Instance or the Court of Appeal on an appeal.



**Reopening Of Final Appeals**
**x44.179**

The Court of Appeal or the Court of First Instance will not reopen a final determination of any appeal unless:

(1) it is necessary to do so in order to avoid real injustice;

(2) the circumstances are exceptional and make it appropriate to reopen the appeal; and

(3) there is no alternative effective remedy.

**x44.180**

In **Rules** 44.179, 44.181, 44.184 and 44.188 "appeal" includes an application for permission to appeal.

**x44.181**

Permission is needed to make an application under **Rule** 44.179 to reopen a final determination of an appeal even in cases where permission was not needed for the original appeal.

**x44.182**

Permission must be sought from the Court whose decision the applicant wishes to reopen.



**x44.183**

The application for permission must be made by application notice and supported by written evidence, verified by a statement of truth.

**x44.184**

A copy of the application for permission must not be served on any other party to the original appeal unless the Court so directs.

**x44.185**

Where the Court directs that the application for permission is to be served on another party, that party may within 14 days of the service on him of the copy of the application file and serve a written statement either supporting or opposing the application.

**x44.186**

The application for permission, and any written statements supporting or opposing it, will be considered on paper by a single Judge, and will be allowed to proceed only if the Judge so directs.

**x44.187**

There is no right to an oral hearing of an application for permission unless, exceptionally, the Judge so directs.

**x44.188**

The Judge will not grant permission without directing the application to be served on the other party to the original appeal and giving him an opportunity to make representations.

**x44.189**

There is no right of appeal or review from the decision of the Judge on the application for permission, which is final.

## PART 45
GENERAL RULES ABOUT ENFORCEMENT OF JUDGMENTS AND ORDERS

**Scope Of This Part And Interpretation**
**45.1**
This Part contains general Rules about enforcement of judgments and orders.

**45.2**
In this Part and in Parts 46 to 50:

    (1) 'judgment creditor' means a person who has obtained or is entitled to enforce a judgment or order;

    (2) 'judgment debtor' means a person against whom a judgment or order was given or made;

    (3) 'judgment or order' includes an award which the Court has:



(a) ratified for enforcement;

(b) ordered to be enforced; or

(c) given permission to enforce;

as if it were a judgment or order of the Court; and

(4) 'judgment or order for the payment of money' includes a judgment or order for the payment of costs, but does not include a judgment or order for the payment of money into Court.

**Methods Of Enforcing Judgments Or Orders**
**45.3**
A judgment creditor may enforce a judgment or order for the payment of money by any of the following methods:

(1) a charge over property (a charging order);

(2) attachment of assets (whether present or future);

(3) execution against assets;

(4) the appointment of a receiver.



**45.4**
In addition the Court may make an order of committal for contempt of Court against a judgment debtor but only if permitted by a Rule.

**45.5**
The enforcement of a judgment or order may be affected by the Laws and Regulations relating to insolvency.

**45.6**
A judgment creditor may, except where an enactment, Rule or Practice Direction provides otherwise:

(1) use any method of enforcement which is available; and

(2) use more than one method of enforcement, either at the same time or one after another.

**Enforcement Of Judgment Or Order By Or Against A Non-Party**
**45.7**
If a judgment or order is given or made in favour of or against a person who is not a party to proceedings, it may be enforced by or against that person by the same methods as if he were a party.





(2) state the name and address of the person against whom it is sought to enforce the decision;

(3) if the decision requires that person to pay a sum of money, state the amount which remains unpaid.

**Enforcement Outside The DIFC Of DIFC Court Judgments, Decisions, Orders And Awards Ratified By The Courts**

**45.18**

Rules 45.19 to 45.21 apply where a party seeks to enforce a DIFC Court judgment, decision or order, or ratified arbitral award outside the DIFC in accordance with Article 7(2) and / or 7(3) of the Judicial Authority Law.

**45.19**

An application must be made by filing an application notice in Form P45/01.

**45.20**

Where a party seeks to enforce a DIFC Court judgment, decision, order, or ratified arbitral award outside of the DIFC, they must file an application notice in Form P45/01 requesting the Court to affix the executory formula on the judgment, decision, order or ratified arbitral award in the following form:



"Authorities must take the initiative to enforce this document and assist in implementing it even forcibly whenever requested to do so."

**45.21**

Where the party intends to seek enforcement in Dubai outside the DIFC, the application should also request that the Court issue an execution letter pursuant to Article 7(3) (a) of the Judicial Authority Law addressed to the Chief Justice of the Court of First Instance of the Dubai Courts stating the procedure to be carried out.



**45.22**

The Court will only affix the executory formula to a judgment, decision, order or ratified arbitral award when the following criteria are met:

(1) The judgment, decision, order or ratified arbitral award to be executed is final and executory; and

(2) The judgment, decision, order or ratified arbitral award is translated into the official language of the entity through which execution is carried out;

**45.23**

The Court will only issue an execution letter in respect of a judgment, decision, order or ratified arbitral award to which it has affixed the executory formula.

**45.24**

An application under [RDC 45.20] should be accompanied by the following:

(1) A copy of the judgment, decision, order or ratified arbitral award which the applicant seeks to enforce;







(2) Where the applicant seeks to enforce an arbitral award, a copy of any order of the DIFC Court ratifying or recognising the award;

(3) A draft of any execution letter which is sought;

(4) Translations of the documents referred to at sub-paragraphs (1) to (3) above into the official language of theentity through which enforcement is to be carried out; and

(5) A statement that the judgment, decision, order or arbitral award is final and executory and the grounds on which that is said to be the case.

**Effect Of Setting Aside Judgment Or Order**
**45.25**
If a judgment or order is set aside, any enforcement of the judgment or order shall cease to have effect unless the Court otherwise orders.

**Interest On Judgment Debts**
**45.26**
If a judgment creditor is claiming interest on a judgment debt, he must include in his application or request to issue enforcement proceedings in relation to that judgment details of:

(1) the amount of interest claimed and the sum on which it is claimed;

(2) the dates from and to which interest has accrued; and

(3) the rate of interest which has been applied and, where more than one rate of interest has been applied, the relevant dates and rates.

**45.26.1**
For rates of interest on Judgment Debts, see Practice Direction No. 4 of 2017.

**Enforcing A Judgment Or Order Against A Partnership**
**45.27**
A judgment or order made against a partnership may be enforced against any property of the partnership within the DIFC.

**45.28**
Subject to **Rule 45.29**, a judgment or order made against a partnership may be enforced against any person who is not a limited partner and who:

(1) acknowledged service of the claim form as a partner;

(2) having been served as a partner with the claim form, failed to acknowledge service of it;

(3) admitted in his statement of case that he is or was a partner at a material time; or

(4) was found by the Court to have been a partner at a material time.





**45.29**

A judgment or order made against a partnership may not be enforced against a limited partner or a member of the partnership who was ordinarily resident outside the DIFC and Dubai when the claim form was issued unless he:

    (1) acknowledged service of the claim form as a partner;

    (2) was served within the DIFC or Dubai with the claim form as a partner; or

    (3) was served out of the DIFC and Dubai with the claim form, as a partner, in accordance with the provisions of Section III of Part 9.

**45.30**

A judgment creditor wishing to enforce a judgment or order against a person in circumstances not set out in Rules 45.28 or 45.29 must apply to the Court for permission to enforce the judgment or order.

**Payment Of Debt After Issue Of Enforcement Proceedings**
**45.31**

If a judgment debt or part of it is paid:

    (1) after the judgment creditor has issued any application or request to enforce it; but

    (2) before:

        (a) any writ or warrant has been executed; or

        (b) in any other case, the date fixed for the hearing of the application;

the judgment creditor must immediately notify the Court in writing.



## PART 46
CHARGING ORDERS, STOP ORDERS AND STOP NOTICES

**I CHARGING ORDERS**
**Scope Of This Part And Interpretation**
**46.1**

This Section of this Part applies to an application by a judgment creditor for a charging order under Article 43 of the Law of Damages and Remedies 2005.

**Application For Charging Order**
**46.2**

An application for a charging order may be made without notice.

**46.3**

A judgment creditor may apply for a single charging order in respect of more than one judgment or order against the same debtor.





**46.4**

A judgment creditor may apply in a single application notice for charging orders over more than one asset, but if the Court makes interim charging orders over more than one asset, it will draw up a separate order relating to each asset.

**46.5**

An application for a charging order must be made by filing an application notice in Form P46/01.

**46.6**

The application notice must contain the following information:

(1) the name and address of the judgment debtor;

(2) details of the judgment or order sought to be enforced;

(3) the amount of money remaining due under the judgment or order;

(4) if the judgment debt is payable by instalments, the amount of any instalments which have fallen due and remain unpaid;

(5) if the judgment creditor knows of the existence of any other creditors of the judgment debtor, their names and (if known) their addresses;



(6) identification of the asset or assets which it is intended to charge;

(7) details of the judgment debtor's interest in the asset; and

(8) the names and addresses of the persons on whom an interim charging order must be served under Rule 46.10.

**46.7**

The application notice must be verified by a statement of truth.

**Interim Charging Order**
**46.8**

An application for a charging order will initially be dealt with by the Registrar without a hearing.

**46.9**

The Registrar may make an order (an 'interim charging order'):

(1) imposing a charge over the judgment debtor's interest in the asset to which the application relates; and

(2) fixing a hearing to consider whether to make a final charging order as provided by 46.17(1).





**Service Of Interim Order**
**46.10**
Copies of the interim charging order, the application notice and any documents filed in support of it must, not less than 28 days before the hearing, be served by the judgment creditor on the following persons:

(1) the judgment debtor;

(2) such other creditors as the Court directs;

(3) if the order relates to an interest under a trust, on such of the trustees as the Court directs;

(4) if the interest charged is in securities other than securities held in Court, then:

(a) in the case of government stock, the keeper of the register;

(b) in the case of stock of any body incorporated within the DIFC, that body;

(c) in the case of stock of any body incorporated outside DIFC or of any state or territory outside the DIFC, which is registered in a register kept in DIFC, the keeper of that register;

(d) in the case of units of any unit trust in respect of which a register of the unit holders is kept in DIFC, the keeper of that register;

(5) if the interest charged is in funds in Court, the Registrar; and

(6) if the interest charged is subject to a security interest filed in the Security Registry under the Law of Security 2005, the Security Registrar.

**46.11**
The judgment creditor must either:

(1) file a certificate of service not less than 2 days before the hearing; or

(2) produce a certificate of service at the hearing.

**Effect Of Interim Order In Relation To Securities**
**46.12**
If a judgment debtor disposes of his interest in any securities, while they are subject to an interim charging order which has been served on him, that disposition shall not, so long as that order remains in force, be valid as against the judgment creditor.

**46.13**
A person served under Rule 46.10(4) with an interim charging order relating to securities must not, unless the Court gives permission:

(1) permit any transfer of any of the securities; or

(2) pay any dividend, interest or redemption payment relating to them.






**46.14**

If a person acts in breach of **Rule 46.13**, he will be liable to pay to the judgment creditor:

(1) the value of the securities transferred or the amount of the payment made (as the case may be); or

(2) if less, the amount necessary to satisfy the debt in relation to which the interim charging order was made.

**Effect Of Interim Order In Relation To Funds In Court**

**46.15**

If a judgment debtor disposes of his interest in funds in Court while they are subject to an interim charging order which has been served on him and on the Registrar in accordance with **Rule 46.10**, that disposition shall not, so long as that order remains in force, be valid as against the judgment creditor.

**Further Consideration Of The Application**

**46.16**

If any person objects to the Court making a final charging order, he must:

(1) file; and

(2) serve on the applicant;

written evidence stating the grounds of his objections, not less than 7 days before the hearing.



**46.17**

At the hearing the Court may:

(1) make a final charging order confirming that the charge imposed by the interim charging order shall continue, with or without modification;

(2) discharge the interim charging order and dismiss the application;

(3) decide any issues in dispute between the parties, or between any of the parties and any other person who objects to the Court making a final charging order; or

(4) direct a trial of any such issues, and if necessary give directions.

**46.18**

If the Court makes a final charging order which charges securities other than securities held in Court, the order will include a stop notice unless the Court otherwise orders.

**46.19**

Any order made at the hearing must be served on all the persons on whom the interim charging order was required to be served.









**Discharge Or Variation Of Order**
**46.20**
A charging order shall be discharged upon satisfaction of the judgment or upon further order of the Court.

**46.21**
Any application to discharge or vary a charging order must be made in accordance with Part 23.

**46.22**
The Court may direct that:

(1) any interested person should be joined as a party to such an application; or

(2) the application should be served on any such person.

**46.23**
An order discharging or varying a charging order must be served on all the persons on whom the charging order was required to be served.

**Enforcement Of Charging Order By Sale**
**46.24**
Subject to the provisions of any enactment, the Court may, upon a claim by a person who has obtained a charging order over an interest in property, order the sale of the property to enforce the charging order.



**46.25**
The claimant must use the Part 8 procedure.

**46.26**
A copy of the charging order must be filed with the claim form.

**46.27**
The written evidence in support of a claim under 46.24 must:

(1) identify the charging order and the property sought to be sold;

(2) state the amount in respect of which the charge was imposed and the amount due at the date of issue of the claim;

(3) verify, so far as known, the debtor's title to the property charged;

(4) state, so far as the claimant is able to identify:

(a) the names and addresses of any other creditors who have a prior charge or other security over the property; and

(b) the amount owed to each such creditor;





(5) give an estimate of the price which would be obtained on sale of the property; and

(6) if the claim relates to land, give details of every person who to the best of the claimant's knowledge is in possession of the property.

**46.28**
The claimant must take all reasonable steps to obtain the information required by 46.27(4) before issuing the claim.

**46.29**
Sample forms of orders for sale are set out in Schedule A to this Part for guidance. They may be adapted or varied by the Court to meet the requirements of individual cases.

**Charging Order Against Property Belonging To A Partnership**
**46.30**
A charging order or interim charging order may be made against any property, within the DIFC, belonging to a judgment debtor that is a partnership.

**46.31**
For the purposes of **Rule 46.10(1)** (service of the interim order), the specified documents must be served on:

(1) a member of the partnership within the DIFC or Dubai;



(2) a person authorised by a partner; or



(3) some other person having the control or management of the partnership business.

**46.32**
Where an order requires a partnership to appear before the Court, it will be sufficient for a partner to appear before the Court.

**II STOP ORDERS**
**Interpretation**
**46.33**
In this Section, 'stop order' means an order of the Court not to take, in relation to funds in Court or securities specified in the order, any of the following steps:

(1) the registration of any transfer of the securities;

(2) in the case of funds in Court, the transfer, sale, delivery out, payment or other dealing with the funds, or of the income thereon;

(3) the making of any payment by way of dividend, interest or otherwise in respect of the securities; and

(4) in the case of a unit trust, any acquisition of or other dealing with the units by any person or body exercising functions under the trust.



**Application For Stop Order**
**46.34**
The Court may make:

(1) a stop order relating to funds in Court, on the application of any person:

(a) who has a mortgage or charge on the interest of any person in the funds; or

(b) to whom that interest has been assigned; or

(c) who is a judgment creditor of the person entitled to that interest; or

(2) a stop order relating to securities other than securities held in Court, on the application of any person claiming to be beneficially entitled to an interest in the securities.

**46.35**
An application for a stop order must be made:

(1) by application notice in existing proceedings; or

(2) by Part 8 claim form if there are no existing proceedings in the Court.

**46.36**
The application notice or claim form must be served on:

(1) every person whose interest may be affected by the order applied for; and

(2) either:

(a) the Registrar, if the application relates to funds in Court; or

(b) the person specified in **Rule 46.10(4)** if the application relates to securities other than securities held in Court.

**Stop Order Relating To Funds In Court**
**46.37**
A stop order relating to funds in Court shall prohibit the transfer, sale, delivery out, payment or other dealing with:

(1) the funds or any part of them; or

(2) any income on the funds.

**Stop Order Relating To Securities**
**46.38**
A stop order relating to securities other than securities held in Court may prohibit all or any of the following steps:

(1) the registration of any transfer of the securities;





(2) the making of any payment by way of dividend, interest or otherwise in respect of the securities; and

(3) in the case of units of a unit trust, any acquisition of or other dealing with the units by any person or body exercising functions under the trust.

**46.39**

The order shall specify:

(1) the securities to which it relates;

(2) the name in which the securities stand;

(3) the steps which may not be taken; and

(4) whether the prohibition applies to the securities only or to the dividends or interest as well.

**Variation Or Discharge Of Order**
**46.40**

The Court may, on the application of any person claiming to have a beneficial interest in the funds or securities to which a stop order relates, make an order discharging or varying the order.

**46.41**

An application notice seeking the variation or discharge of a stop order must be served on the person who obtained the order.

**III STOP NOTICES**
**General**
**46.42**

In this Section:

(1) 'stop notice' means a notice issued by the Court which requires a person or body not to take, in relation to securities specified in the notice, any of the steps listed Rule 46.33, without first giving notice to the person who obtained the notice; and

(2) 'securities' does not include securities held in Court.

**Request For Stop Notice**
**46.43**

The Court may, on the request of any person claiming to be beneficially entitled to an interest in securities, issue a stop notice.

(A stop notice may also be included in a final charging order under Rule 46.18)

**46.44**

A request for a stop notice must be made by filing:

(1) a draft stop notice; and







(2) written evidence which:

    (a) identifies the securities in question;

    (b) describes the applicant's interest in the securities; and

    (c) gives an address for service for the applicant.

(A sample form of stop notice is annexed to this Part at Schedule B)

**46.45**
If the Court considers that the request complies with **Rule 46.44**, it will issue a stop notice.

**46.46**
The applicant must serve copies of the stop notice and his written evidence on the person to whom the stop notice is addressed.

**Effect Of Stop Notice**
**46.47**
A stop notice:

    (1) takes effect when it is served in accordance with **Rule 46.46**; and

    (2) remains in force unless it is withdrawn or discharged in accordance with **Rules 46.53** and **46.54**.



**46.48**
While a stop notice is in force, the person on whom it is served:

    (1) must not:

        (a) register a transfer of the securities described in the notice; or

        (b) take any other step restrained by the notice;

without first giving 14 days' notice to the person who obtained the stop notice; but

    (2) must not, by reason only of the notice, refuse to register a transfer or to take any other step, after he has given 14 days' notice under **Rule 46.48(1)** and that period has expired.

**Amendment Of Stop Notice**
**46.49**
If any securities are incorrectly described in a stop notice which has been obtained and served in accordance with Rules 46.43 to 46.46 the applicant may request an amended stop notice.

**46.50**
The amended stop notice takes effect when it is served.





**Withdrawal Of Stop Notice**
**46.51**
A person who has obtained a stop notice may withdraw it by serving a request for its withdrawal on:

(1) the person or body on whom the stop notice was served; and

(2) the Court.

**46.52**
The request must be signed by the person who obtained the stop notice, and his signature must be witnessed by a practising lawyer.

**Discharge Or Variation Of Stop Notice**
**46.53**
The Court may, on the application of any person claiming to be beneficially entitled to an interest in the securities to which a stop notice relates, make an order discharging or varying the notice.

**46.54**
The application notice must be served on the person who obtained the stop notice.

**IV APPLICATIONS FOR ORDERS CHARGING PARTNER'S INTEREST IN PARTNERSHIP PROPERTY**
**46.55**
Rules 46.56 to 46.60 relate to orders made under Article 37 of the General Partnership Law 2004 ("Article 37").



**46.56**
The following applications must be made in accordance with Part 23:

(1) an application for an order under Article 37 made by a judgment creditor of a partner;

(2) an application for any order by a partner of the judgment debtor in consequence of any application made by the judgment creditor under Article 37.

**46.57**
The powers conferred on the Court by Article 37 may be exercised by the Registrar.

**46.58**
Every application notice filed under **Rule 46.56(1)** by a judgment creditor, and every order made following such an application, must be served on the judgment debtor and on any of the other partners that are within the DIFC or Dubai.

**46.59**
Every application notice filed under **Rule 46.56(2)** by a partner of a judgment debtor, and every order made following such an application, must be served:

(1) on the judgment creditor and the judgment debtor; and






(2) on the other partners of the judgment debtor who are not joined in the application and who are within the DIFC and Dubai.

**46.60**

An application notice or order served under **Rule 46.57** or **46.59** on one or more, but not all, of the partners of a partnership shall be deemed to have been served on all the partners of that partnership.

**SCHEDULE A**
**ORDER FOR SALE FOLLOWING A CHARGING ORDER**
**(Property Solely Owned By Judgment Debtor)**

**DUBAI INTERNATIONAL FINANCIAL CENTRE COURT**
**COURT OF FIRST INSTANCE**

Claim No. [xxx]

Appn. No. [xxx]

B E T W E E N :

Claimant

Defendant
On the ... 20—, ...
heard ...



The claimant is entitled to an equitable charge upon the defendant's interest in the property ...

[registered at the DIFC Land Registry under Title No. ] ("the property") under a charging order made on the ...
in Claim No. ...

**and the Court orders that**

1. The remainder of this order will not take effect if the defendant by 4.00 p.m. on the ... 20 —— pays to the claimant the judgment debt of US$ ... secured by the charge and his costs to date of this application assessed at US$ ..., making together US$ ... [together with interest at the rate of US$ ... per day from the date of this order until payment is received by the claimant].

2. The property shall be sold without further reference to the Court at a price not less than US$ ..., unless that figure is changed by a further order of the Court.

3. The [claimant] [claimant's legal representative] will have conduct of the sale.

4. To enable the claimant to carry out the sale, there be created and vested in the claimant pursuant a legal term in the property of [3000 years] [one day less than the remaining period of the term created by the lease under which the defendant holds the property].

478





5. The defendant must deliver possession of the property to the claimant [on or before the –––– 20 ––] [within [ ] days of this order being served on him].

6. The claimant shall first apply the proceeds of sale of the property:

    a. to pay the costs and expenses of effecting the sale; and

    b. to discharge any charges or other securities over the property which have priority over the charging order.

7. Out of the remaining proceeds of sale the claimant shall:

    a. retain the amount due to him as stated in paragraph 1; and

    b. pay the balance (if any) [to the defendant] [to xxx] [into Court].

8. Either party may apply to the Court to vary any of the terms of this order, or for further directions about the sale or the application of the proceeds of sale, or otherwise.

**ORDER FOR SALE FOLLOWING A CHARGING ORDER**
**(property owned by judgment debtor and another person)**

**DUBAI INTERNATIONAL FINANCIAL CENTRE COURT**
**COURT OF FIRST INSTANCE**



Claim No. [xxx]

Appn. No. [xxx]

B E T W E E N:

Claimant

Defendants
On the … 20–, …
heard …

The claimant is entitled to an equitable charge upon the first defendant's interest in the property …

[registered at the DIFC Land Registry under Title No. ] ("the property")  under a charging order made on the …

in Claim No. …

**and the Court orders that**

Order for sale

Following a charging order (property owned by judgment debtor and another person)





In the Claim No.

Claimant/Defendants,

On the ... 20—, sitting at

heard

The claimant is entitled to an equitable charge upon the first defendant's interest in the property

[registered at DIFC Land Registry under Title No. ] ("the property")
under a charging order made on the
in Claim No.

**and the Court orders that**




1. The remainder of this order will not take effect if the first defendant by 4.00 p.m. on the ... 20—, pays to the claimant the judgment debt of US$ ... secured by the charge and his costs to date of this application assessed at US$ ..., making together US$ ... [together with interest at the rate of US$ ... per day from the date of this order until payment is received by the claimant].

2. The property shall be sold without further reference to the Court at a price not less than US$ ... unless that figure is changed by a further order of the Court.

3. The [claimant] [claimant's representative] will have conduct of the sale.

4. The defendants must deliver possession of the property to the claimant [on or before the ... 20—] [within [ ] days of this order being served on him].

5. The claimant shall first apply the proceeds of sale of the property:

   a. to pay the costs and expenses of effecting the sale; and

   b. to discharge any charges or other securities over the property which have priority over the charging order.

6. The claimant shall then divide the remaining proceeds of sale into two equal shares and

   a. pay one equal share to the second defendant; and

   b. out of the other equal share, retain the amount due to him as stated in paragraph 1, and pay the balance (if any) [to the first defendant] [to ] [into Court].

7. Any party may apply to the Court to vary any of the terms of this order, or for further directions about the sale or the application of the proceeds of sale, or otherwise.



**SCHEDULE B**
**STOP NOTICE**
RDC Rule 48.40

To [insert name of person or body to whom the notice is addressed]

TAKE NOTICE that [insert name and address]

claims to be beneficially entitled to an interest in the following securities — [specify the securities, giving the name(s) in which they stand]

This Notice requires you to refrain from:

1. registering a transfer of the securities specified above; or

2. paying any dividend or interest in respect of the securities [delete if inappropriate]; without first giving 14 days' notice in writing to the said [insert name] of the above address.

## PART 47
ATTACHMENT OF FUTURE ASSETS AND EARNINGS



**I ATTACHMENT OF FUTURE ASSETS**
**Scope Of This Part And Interpretation**
**47.1**
This Part contains rules which provide for a judgment creditor to obtain an order for the payment to him of money which a third party, who is within the DIFC, owes to the judgment debtor.

**47.2**
In this Part, 'bank' includes any person carrying on a business in the course of which he lawfully accepts deposits in the DIFC.

**Third Party Debt Order**
**47.3**
Upon the application of a judgment creditor, the Court may make an order (a 'final third party debt order') requiring a third party to pay to the judgment creditor:

(1) the amount of any debt due or accruing due to the judgment debtor from the third party; or

(2) so much of that debt as is sufficient to satisfy the judgment debt and the judgment creditor's costs of the application.

**47.4**
The Court will not make an order under **Rule 47.3** without first making an order (an 'interim third party debt order') as provided by **Rules 47.11** to **47.15**.





**47.5**

In deciding whether money standing to the credit of the judgment debtor in an account may be made the subject of a third party debt order, the following conditions will be disregarded:

    (1) any condition applying to the account that a receipt for money deposited in the account must be produced before any money is withdrawn;

    (2) any condition that notice is required before any money or share is withdrawn;

    (3) any condition that a personal application must be made before any money or share is withdrawn;

    (4) any condition that a deposit book or share–account book must be produced before any money or share is withdrawn; or

    (5) any other prescribed condition.

**Application For Third Party Debt Order**
**47.6**
An application for a third party debt order may be made without notice.

**47.7**

An application for a third party debt order must be made by filing an application notice in Form P47/01.



**47.8**

The application notice must contain the following information:

    (1) the name and address of the judgment debtor;

    (2) details of the judgment or order sought to be enforced;

    (3) the amount of money remaining due under the judgment or order;

    (4) if the judgment debt is payable by instalments, the amount of any instalments which have fallen due and remain unpaid;

    (5) the name and address of the third party;

    (6) if the third party is a bank:

        (a) its name and the address of the branch at which the judgment debtor's account is believed to be held; and

        (b) the account number;

or, if the judgment creditor does not know all or part of this information, that fact;

    (7) confirmation that to the best of the judgment creditor's knowledge or belief the third party:





(a) is within the DIFC; and

(b) owes money to or holds money to the credit of the judgment debtor;

(8) if the judgment creditor knows or believes that any person other than the judgment debtor has any claim to the money owed by the third party:

(a) his name and (if known) his address; and

(b) such information as is known to the judgment creditor about his claim;

(9) details of any other applications for third party debt orders issued by the judgment creditor in respect of the same judgment debt; and

(10) the sources or grounds of the judgment creditor's knowledge or belief of the matters referred to in (7), (8) and (9).

**47.9**
The application notice must be verified by a statement of truth.

**47.10**
The Court will not grant speculative applications for third party debt orders, and will only make an interim third party debt order against a bank if the judgment creditor's application notice contains evidence to substantiate his belief that the judgment debtor has an account with the bank in question.

**Interim Third Party Debt Order**

**47.11**
An application for a third party debt order will initially be dealt with by the Registrar without a hearing.

**47.12**
The Registrar may make an interim third party debt order:

(1) fixing a hearing to consider whether to make a final third party debt order; and

(2) directing that until that hearing the third party must not make any payment which reduces the amount he owes the judgment debtor to less than the amount specified in the order.

**47.13**
An interim third party debt order will specify the amount of money which the third party must retain, which will be the total of:

(1) the amount of money remaining due to the judgment creditor under the judgment or order; and

(2) an amount for the judgment creditor's fixed costs of the application, as specified in Part 39.





**47.14**

An interim third party debt order becomes binding on a third party when it is served on him.

**47.15**

The date of the hearing to consider the application shall be not less than 28 days after the interim third party debt order is made.

**Service Of Interim Order**
**47.16**

Copies of an interim third party debt order, the application notice and any documents filed in support of it must be served by the judgment creditor:

(1) on the third party, not less than 21 days before the date fixed for the hearing; and

(2) on the judgment debtor not less than:

(a) 7 days after a copy has been served on the third party; and

(b) 7 days before the date fixed for the hearing.

**47.17**

The judgment creditor must either:

(1) file a certificate of service not less than 2 days before the hearing; or

(2) produce a certificate of service at the hearing.

**Obligations Of Third Parties Served With An Interim Order**
**47.18**

A bank served with an interim third party debt order must carry out a search to identify all accounts held with it by the judgment debtor.

**47.19**

The bank must disclose to the Court and the creditor within 7 days of being served with the order, in respect of each account held by the judgment debtor:

(1) the number of the account;

(2) whether the account is in credit; and

(3) if the account is in credit:

(a) whether the balance of the account is sufficient to cover the amount specified in the order;

(b) the amount of the balance at the date it was served with the order, if it is less than the amount specified in the order; and




(c) whether the bank asserts any right to the money in the account, whether pursuant to a right of set–off or otherwise, and if so giving details of the grounds for that assertion.

**47.20**

A bank served with an interim third party debt order is only required, unless the order states otherwise:

(1) to retain money in accounts held solely by the judgment debtor (or, if there are joint judgment debtors, accounts held jointly by them or solely by either or any of them); and

(2) to search for and disclose information about such accounts.

**47.21**

The bank is not required, for example, to retain money in, or disclose information about:

(1) accounts in the joint names of the judgment debtor and another person; or

(2) if the interim order has been made against a firm, accounts in the names of individual members of that firm.

**47.22**

If:

(1) the judgment debtor does not hold an account with the bank; or

(2) the bank is unable to comply with the order for any other reason (for example, because it has more than one account holder whose details match the information contained in the order, and cannot identify which account the order applies to);

the bank must inform the Court and the judgment creditor of that fact within 7 days of being served with the order.

**47.23**

Any third party other than a bank served with an interim third party debt order must notify the Court and the judgment creditor in writing within 7 days of being served with the order, if he claims:

(1) not to owe any money to the judgment debtor; or

(2) to owe less than the amount specified in the order.

**Attachment Of Debts Owed By A Partnership**
**47.24**
Rules 47.25 and 47.26 relate to debts due or accruing due to a judgment creditor from a partnership.



**47.25**

An interim third party debt order under Rule 47.12 relating to such debts must be served on:

(1) a member of the partnership within the DIFC;

(2) a person authorised by a partner; or

(3) some other person having the control or management of the partnership business.

**47.26**

Where an order made under Rule 47.12 requires a partnership to appear before the Court, it will be sufficient for a partner to appear before the Court.

**Arrangements For Debtors In Hardship**

**47.27**

If:

(1) a judgment debtor is an individual;

(2) he is prevented from withdrawing money from his account with a bank as a result of an interim third party debt order; and

(3) he or his family is suffering hardship in meeting ordinary living expenses as a result;



the Court may, on an application by the judgment debtor, make an order permitting the bank to make a payment or payments out of the account ('a hardship payment order').

**47.28**

An application notice seeking a hardship payment order must:

(1) include detailed evidence explaining why the judgment debtor needs a payment of the amount requested; and

(2) be verified by a statement of truth.

**47.29**

The evidence filed by a judgment debtor in support of an application for a hardship payment order should include documentary evidence, for example (if appropriate) bank statements, wage slips and mortgage statements, to prove his financial position and need for the payment.

**47.30**

The Court will treat an application for a hardship payment order as being made:

(1) in the proceedings in which the interim third party debt order was made; and

(2) under the same claim number.






**47.31**

Unless the Court orders otherwise, the application notice:

(1) must be served on the judgment creditor at least 2 days before the hearing; but

(2) does not need to be served on the third party.

**47.32**

In cases of exceptional urgency the judgment debtor may apply for a hardship payment order without notice to the judgment creditor and the Court will decide whether to:

(1) deal with the application without it being served on the judgment creditor; or

(2) direct it to be served.

**47.33**

If the Court decides to deal with the application without it being served on the judgment creditor, where possible it will normally:

(1) direct that the judgment creditor be informed of the application; and

(2) give him the opportunity to make representations;

by telephone, fax or other appropriate method of communication.



**47.34**

A hardship payment order may:

(1) permit the third party to make one or more payments out of the account; and

(2) specify to whom the payments may be made.

**Further Consideration Of The Application**
**47.35**

If the judgment debtor or the third party objects to the Court making a final third party debt order, he must file and serve written evidence stating the grounds for his objections.

**47.36**

If the judgment debtor or the third party knows or believes that a person other than the judgment debtor has any claim to the money specified in the interim order, he must file and serve written evidence stating his knowledge of that matter.

**47.37**

If:

(1) the third party has given notice under **Rule 47.23** that he does not owe any money to the judgment debtor, or that the amount which he owes is less than the amount specified in the interim order; and

(2) the judgment creditor wishes to dispute this;



the judgment creditor must file and serve written evidence setting out the grounds on
which he disputes the third party's case.

**47.38**

Written evidence under Rules 47.35, 47.36 and 47.37 must be filed and served on each
other party as soon as possible, and in any event not less than 3 days before the hearing.

**47.39**

If the judgment creditor is notified that some person other than the judgment debtor
may have a claim to the money specified in the interim order, he must serve on that
person notice of the application and the hearing.

**47.40**

At the hearing the Court may:

  (1) make a final third party debt order;

  (2) discharge the interim third party debt order and dismiss the application;

  (3) decide any issues in dispute between the parties, or between any of the parties
      and any other person who has a claim to the money specified in the interim
      order; or

  (4) direct a trial of any such issues, and if necessary give directions.

**Effect Of Final Third Party Order**
**47.41**

A final third party debt order shall be enforceable as an order to pay money.

**47.42**

If:

  (1) the third party pays money to the judgment creditor in compliance with a third
      party debt order; or

  (2) the order is enforced against him;

the third party shall, to the extent of the amount paid by him or realised by enforcement
against him, be discharged from his debt to the judgment debtor.

**47.43**

Rule 47.42 applies even if the third party debt order, or the original judgment or order
against the judgment debtor, is later set aside.

**Money In Court**
**47.44**

If money is standing to the credit of the judgment debtor in Court:

  (1) the judgment creditor may not apply for a third party debt order in respect of
      that money; but

(2) he may apply for an order that the money in Court, or so much of it as is sufficient to satisfy the judgment or order and the costs of the application, be paid to him.

**47.45**

An application notice seeking an order under **Rule 47.44(2)** must be served on:

(1) the judgment debtor; and

(2) the Registrar.

**47.46**

If an application notice has been issued under **Rule 47.45**, the money in Court must not be paid out until the application has been disposed of.

**Costs**
**47.47**

If the judgment creditor is awarded costs on an application for an order under **Rule 47.3** or **47.44**:

(1) he shall, unless the Court otherwise directs, retain those costs out of the money recovered by him under the order; and

(2) the costs shall be considered to be paid first out of the money he recovers, in priority to the judgment debt.

**II ATTACHMENT OF EARNINGS**

**Mode Of Applying**
**47.48**

A judgment creditor who desires to apply for an attachment of earnings order shall file his application certifying the amount of money remaining due under the judgment or order and that the whole or part of any instalment due remains unpaid.

**Service And Reply**
**47.49**

Notice of the application together with a form of reply in the appropriate form, shall be served on the judgment debtor in the manner set out in **Rule 9.2**.

**47.50**

The judgment debtor shall, within 8 days after service on him of the documents mentioned in **Rule 47.49**, file a reply in the form provided.

**47.51**

Nothing in **Rule 47.50** shall require a defendant to file a reply if, within the period of time mentioned in that Rule, he pays to the judgment creditor the money remaining due under the judgment or order and, where such payment is made, the judgment creditor shall so inform the Court.

**47.52**

On receipt of a reply the Court shall send a copy to the applicant.





**Notice To Employer**
**47.53**
The Court may, at any stage of the proceedings, send to any person appearing to have the judgment debtor in his employment a notice requesting him to give to the Court, within such period as may be specified in the notice, a statement of the judgment debtor's earnings and anticipated earnings with such particulars as may be so specified.

**Attachment Of Earnings Order**
**47.54**
On receipt of the judgment debtor's reply, the Court may, if it has sufficient information to do so, make an attachment of earnings order and a copy of the order shall be sent to the parties and to the judgment debtor's employer.

**47.55**
Where an order is made under **Rule 47.54**, the judgment creditor or the judgment debtor may, within 14 days of service of the order on him and giving his reasons, apply on notice for the order to be re-considered and the Court shall fix a day for the hearing of the application and give to the judgment creditor and the judgment debtor not less than 2 days' notice of the day so fixed.

**47.56**
On hearing an application under **Rule 47.55**, the Court may confirm the order or set it aside and make such new order as he thinks fit and the order so made shall be entered in the records of the Court.



**47.57**
Where an order is not made under **Rule 47.54**, the Court will fix a day for the hearing of the application and give to the judgment creditor and the judgment debtor not less than 8 days' notice of the day so fixed.

**47.58**
If the judgment creditor does not appear at the hearing of the application under **Rule 47.57** but:

(1) the Court has received a witness statement or affidavit of evidence from him; or

(2) the judgment creditor requests the Court in writing to proceed in his absence, the Court may proceed to hear the application and to make an order thereon.

**47.59**
An attachment of earnings order may be made to secure the payment of a judgment debt if the debt is:

(1) of not less than US$100; or

(2) for the amount remaining payable under a judgment for a sum of not less than US$100.





**Failure By Judgment Debtor**
**47.60**
If the judgment debtor has failed to comply with **Rule 47.50** or to make payment to the judgment creditor, the Court may issue an order which shall:

(1) be indorsed with or incorporate a notice warning the judgment debtor of the consequences of disobedience to the order;

(2) be served on the judgment debtor personally; and

(3) direct that any payments made thereafter shall be paid into the Court and not direct to the judgment creditor.

**47.61**
If the person served with an order made pursuant to **Rule 47.60** fails to obey it or to file a statement of his means or to make payment, the Court will issue a notice calling on that person to show good reason why he should not be committed for contempt of Court and any such notice shall be served on the judgment debtor personally not less than 5 days before the hearing.

**47.62**
Any failure to comply with an order made pursuant to **Rule 47.60** is punishable by committal for contempt of Court.

**Suspended Committal Order**
**47.63**

If the judgment debtor fails to attend at an adjourned hearing of an application for an attachment of earnings order and a committal order is made, the Judge may direct that the committal order shall be suspended so long as the judgment debtor attends at the time and place specified in the committal order.


**47.64**
Where a committal order is suspended under **Rule 47.63** and the judgment debtor fails to attend at the time and place specified under **Rule 47.63**, a certificate to that effect given by the Court shall be sufficient authority for the issue of a warrant of committal.

**Costs**
**47.65**
Where costs are allowed to the judgment creditor on an application for an attachment of earnings order, there may be allowed:

(1) a charge of a legal representative for attending the hearing and, if the Court so directs, for serving the application; and

(2) the Court fee on the issue of the application.

**47.66**
For the purpose of **Rule 47.65(1)**, a legal representative who has prepared on behalf of the judgment creditor a witness statement or affidavit or request under **Rule 47.58** shall be treated as having attended the hearing.






**47.67**

The costs may be fixed and allowed without detailed assessment under Part 40.

**Contents And Service Of Order**
**47.68**

An attachment of earnings order shall contain such of the following particulars relating to the debtor as are known to the Court, namely:

    (1) his full name and address;

    (2) his place of work; and

    (3) the nature of his work and his works number, if any.

**47.69**

An attachment of earnings order and any order varying or discharging such an order shall be served on the judgment debtor and on the person to whom the order is directed, and Part 9 and Rules 36.25, 36.26 and 36.27 shall apply with the further modification that where the order is directed to a corporation which has requested the Court that any communication relating to the judgment debtor or to the class of persons to whom he belongs shall be directed to the corporation at a particular address, service may, if the Court thinks fit, be effected on the corporation at that address.

**Application To Determine Whether Particular Payments Are Earnings**
**47.70**



Where an attachment of earnings order is in force, the Court shall, on the application of the employer, the judgment debtor or the person to whom payment under the relevant adjudication is required to be made, determine whether payments to the debtor of a particular class or description specified by the application are earnings for the purposes of the order; and the employer shall be entitled to give effect to any determination for the time being in force.



**47.71**

An application to the Court to determine whether payments to the debtor of a particular class or description are earnings for the purpose of an attachment of earnings order may be made to the Court in writing and the Court shall thereupon fix a date and time for the hearing of the application and give notice thereof to the employer, the judgment debtor and the person to whom payment under the relevant adjudication is required to be made.

**Notice Of Order Ceasing To Have Effect**
**47.72**

An attachment of earnings order made to secure the payment of a judgment debt shall cease to have effect on the making of an order for committal or the issue of a warrant of committal for the enforcement of the debt.

**47.73**

Where an attachment of earnings order ceases to have effect as set out in **Rule 47.72** above, the Court shall give notice to the person to whom the order was directed.





**Variation And Discharge By Court On Own Initiative**

**47.74**
The Court may make an order discharging or varying an attachment of earnings order.

**47.75**
Subject to Rule 47.82, the Court may make an order under Rule 47.74 of its own motion in the circumstances mentioned in Rules 47.76 to 47.81.

**47.76**
Where it appears to the Court that a person served with an attachment of earnings order directed to him does not employ the judgment debtor, the Court may discharge the order.

**47.77**
Where an attachment of earnings order which has lapsed as a result of the judgment debtor ceasing to be in the employment of the person to whom the order is directed is again directed to a person who appears to the Court to have the judgment debtor in his employment, the Court may make such consequential variations in the order as it thinks fit.



**47.78**
Where, after making an attachment of earnings order, the Court makes or is notified of the making of another such order in respect of the same judgment debtor which is not to secure the payment of a judgment debt, the Court may discharge or vary the first-mentioned order in the following order of priority:



(1) dealing first with any order which is not made to secure the payment of a judgment debt; and

(2) dealing thereafter with any order which is made to secure the payment of a judgment debt as if the earnings to which it relates were the residue of the debtor's earnings after the making of any deduction to comply with an order having priority by virtue of (1); and

(3) if there are two or more orders to which (2) applies:

(a) dealing with the orders according to the respective dates on which they were made, disregarding any later order until an earlier one has been dealt with;

(b) dealing with any later order as if the earnings to which it relates were the residue of the debtor's earnings after the making of any deduction to comply with any earlier order.

**47.79**
On making a consolidated attachment of earnings order the Court may discharge any earlier attachment of earnings order made to secure the payment of a judgment debt by the same debtor.





**47.80**

Where it appears to the Court that a bankruptcy order has been made against a person in respect of whom an attachment of earnings order is in force to secure the payment of a judgment debt, the Court may discharge the attachment of earnings order.

**47.81**

Where an attachment of earnings order has been made to secure the payment of a judgment debt and the Court grants permission to issue execution for the recovery of the debt, the Court may discharge the order.

**47.82**

Before varying or discharging an attachment of earnings order of its own motion under Rules 47.76 to 47.81, the Court shall, unless it thinks it unnecessary in the circumstances to do so, give the judgment debtor and the person on whose application the order was made an opportunity of being heard on the question of whether the order should be varied or discharged, and for that purpose the Court Officer may give them notice of a date, time and place at which the question will be considered.

**Cases In Which Consolidated Order May Be Made**

**47.83**

Subject to the provisions of Rules 47.84 to 47.94, the Court may make a consolidated attachment order where:



> (1) two or more attachment of earnings orders are in force to secure the payment of judgment debts by the same debtor; or



> (2) on an application for an attachment of earnings order to secure the payment of a judgment debt, or for a consolidated attachment order to secure the payment of two or more judgment debts, it appears to the Court that an attachment of earnings order is already in force to secure the payment of a judgment debt by the same debtor.

**Application For Consolidated Order**

**47.84**

An application for a consolidated attachment order may be made:

> (1) by the judgment debtor in respect of whom the order is sought; or

> (2) by any person who has obtained or is entitled to apply for an attachment of earnings order to secure the payment of a judgment debt by that debtor.

**47.85**

An application under **Rule 47.84** may be made in the proceedings in which any attachment of earnings order is in force.

**47.86**

An application under **Rule 47.84(2)** shall certify the amount of money remaining due under the judgment or order and that the whole or part of any instalment due remains unpaid.



**47.87**

Where an application for a consolidated attachment of earnings order is made, the Court will:

(1) notify any party who may be affected by the application of its terms; and

(2) require him to notify the Court in writing, within 14 days of service of notification upon him, giving his reasons for any objection he may have to the granting of the application.

**47.88**

If notice of any objection is not given within the time stated, the Court will make a consolidated attachment of earnings order.

**47.89**

If any party objects to the making of a consolidated attachment of earnings order, the Court may grant the application after considering the objection made and the reasons given.

**47.90**

In Rule 47.87, a party affected by the application means:

(1) where the application is made by the judgment debtor, the creditor in the proceedings in which the application is made and any other creditor who has obtained an attachment of earnings order which is in force to secure the payment of a judgment debt by the judgment debtor;

(2) where the application is made by the judgment creditor, the judgment debtor and every person who, to the knowledge of the applicant, has obtained an attachment of earnings order which is in force to secure the payment of a judgment debt by the debtor.

**47.91**

A person to whom two or more attachment of earnings orders are directed to secure the payment of judgment debts by the same judgment debtor may request the Court in writing to make a consolidated attachment order to secure the payment of those debts, and on receipt of such a request Rules 47.87 to 47.90 will apply, with the necessary modifications, as if the request were an application by the judgment creditor.

**Making Of A Consolidated Order By The Court On Its Own Initiative**
**47.92**

Where an application is made for an attachment of earnings order to secure the payment of a judgment debt by a judgment debtor in respect of whom an attachment of earnings order is already in force to secure the payment of another judgment debt and no application is made for a consolidated attachment order, the Court may make such an order on its own initiative after giving all persons concerned an opportunity of submitting written objections.





**Extension Of Consolidated Order**
**47.93**
Where a consolidated attachment order is in force to secure the payment of two or more judgment debts, any creditor to whom another judgment debt is owed by the same judgment debtor may apply to the Court for it to be extended so as to secure the payment of that debt as well as the first-mentioned debts and, if the application is granted, the Court may either vary the order accordingly or may discharge it and make a new consolidated attachment order to secure payment of all the aforesaid judgment debts.

**47.94**
An application under Rule 47.93 shall be treated for the purposes of Rules 47.84 to 47.91 as an application for a consolidated attachment order.

**Payments Under Consolidated Order**
**47.95**
If the Court receives payments in compliance with a consolidated attachment order it will, after deducting such Court fees, if any, in respect of proceedings for or arising out of the order as are deductible from those payments, deal with the sums paid as if they had been paid by the judgment debtor to satisfy the relevant adjudications in proportion to the amounts payable thereunder, and for that purpose dividends may from time to time be declared and distributed among the creditors entitled thereto.

# PART 48
EXECUTION AGAINST ASSETS



**Interpretation**
**48.1**
In this Part:

    (1) 'enforcement officer' means the Court Bailiff or an individual who is authorised to act as such by the Chief Justice or a person acting on his behalf; and

    (2) 'relevant enforcement officer' means:

        (a) in relation to an order for execution against assets which is directed to a single enforcement officer, that officer;

        (b) in relation to an order for execution against assets which is directed to two or more enforcement officers, the officer to whom the order is allocated;

    (3) 'writ of execution' includes a writ of execution against assets, a writ of possession, or a writ of delivery, a writ of sequestration and any further writ in aid of any of the aforementioned writs.





**Notice Of Seizure**

**48.2**

When first executing an order for execution against assets, the relevant enforcement officer shall deliver to the debtor or leave at each place where execution is levied, a notice in Form P48/01 informing the debtor of the execution.

**Enforcement Of Judgment For Delivery Of Goods**

**48.3**

Subject to the provisions of this Part, a judgment or order for the delivery of any goods which does not give a person against whom the judgment is given or order made, the alternative of paying the assessed value of the goods may be enforced by one or more of the following means:

(1) an order of delivery to recover the goods without alternative provision for recovery of the assessed value thereof (hereafter in this Part referred to as an 'order of specific delivery');

(2) in a case in which **Rule 48.8** applies:

(a) an order of committal; or

(b) a writ of sequestration.

**48.4**



Subject to the provisions of this Part, a judgment or order for the delivery of any goods or payment of their assessed value may be enforced by one or more of the following means:

(1) an order of delivery to recover the goods or their assessed value;

(2) by order of the Court, an order of specific delivery;

(3) in a case in which **Rule 48.8** applies, a writ of sequestration.

**48.5**

An application for an order under **Rule 48.4(2)** shall be made in accordance with Part 23, which must be served on the defendant against whom the judgment or order sought to be enforced was given or made.

**48.6**

A writ of specific delivery, and a writ of delivery to recover any goods or their assessed value, may include provision for enforcing the payment of any money adjudged or ordered to be paid by the judgment or order which is to be enforced by the writ.

**48.7**

A judgment or order for the payment of the assessed value of any goods may be enforced by the same means as any other judgment or order for the payment of money.










**Enforcement Of Judgment To Do Or Abstain From Doing Any Act**
**48.8**
Where:

(1) a person required by a judgment or order to do an act within a time specified in the judgment or order refuses or neglects to do it within that time or, as the case may be, within that time as extended or abridged under a Court order or Rule 2.19; or

(2) a person disobeys a judgment or order requiring him to abstain from doing an act;

then, subject to the provisions of these Rules, the judgment or order may be enforced by one or more of the following means:

(a) with the permission of the Court, a writ of sequestration against the property of that person;

(b) where that person is a body corporate, with the permission of the Court, a writ of sequestration against the property of any director or other officer of the body;

(c) an order of committal against that person or, where that person is a body corporate, against any such officer.

**48.9**
Where a judgment or order requires a person to do an act within a specified time and an order is subsequently made under Rule 48.11 requiring the act to be done within some other time, references in Rule 48.8 to a judgment or order shall be construed as references to the order made under Rule 48.11.

**48.10**
Where under any judgment or order requiring the delivery of any goods the person liable to execution has the alternative of paying the assessed value of the goods, the judgment or order shall not be enforceable by order of committal under Rule 48.8, but the Court may, on the application of the person entitled to enforce the judgment or order, make an order requiring the first mentioned person to deliver the goods to the applicant within a time specified in the order, and that order may be so enforced.

**Judgment Or Order Requiring Act To Be Done: Order Fixing Time For Doing It**
**48.11**
Notwithstanding that a judgment or order requiring a person to do an act specifies a time within which the act is to be done, the Court shall have power to make an order requiring the act to be done within another time, being such time after service of that order, or such other time, as may be specified therein.

**48.12**
Where a judgment or order requiring a person to do an act does not specify a time within which the act is to be done, the Court shall have power subsequently to make an order requiring the act to be done within such time after service of that order, or such other time, as may be specified therein.





**48.13**

An application for an order under Rule 48.11 or Rule 48.12 must be made in accordance with Part 23 and the application notice must be served on the person required to do the act in question.

**Service Of Copy Of Judgment Or Order Prerequisite To Enforcement Under Rule 48.8**
**48.14**
In Rules 48.15 to 48.20, references to an order shall be construed as including references to a judgment.

**48.15**

Subject to Rules 48.19 and 48.20, an order shall not be enforced under Rule 48.8 unless:

(1) a copy of the order has been served personally on the person required to do or abstain from doing the act in question; and

(2) in the case of an order requiring a person to do an act, the copy has been so served before the expiration of the time within which he was required to do the act.

**48.16**

Subject as aforesaid, an order requiring a body corporate to do or abstain from doing an act shall not be enforced as mentioned in Rule 48.8 unless:



(1) a copy of the order has also been served personally on the officer against whose property permission is sought to issue a writ of sequestration or against whom an order of committal is sought; and



(2) in the case of an order requiring the body corporate to do an act, the copy has been so served before the expiration of the time within which the body was required to do the act.

**48.17**

There must be prominently displayed on the front of the copy of an order served under Rule 48.15 or 48.16 a warning to the person on whom the copy is served that disobedience to the order would be a contempt of Court punishable by a fine, or (in the case of an order requiring a body corporate to do or abstain from doing an act) punishable by sequestration of the assets of the body corporate and by a fine of any individual responsible.

**48.18**

With the copy of an order required to be served under Rule 48.15 or 48.16, being an order requiring a person to do an act, there must also be served a copy of any order or agreement under Rule 2.19 extending or abridging the time for doing the act and, where the first-mentioned order was made under Rule 48.11 or Rule 48.12, a copy of the previous order requiring the act to be done.

**48.19**

An order requiring a person to abstain from doing an act may be enforced under Rule 48.8 notwithstanding that service of a copy of the order has not been effected in accordance with Rule 48.15 or 48.16 if the Court is satisfied that pending such service,



the person against whom or against whose property is sought to enforce the order has had notice thereof either:

(1) by being present when the order was made; or

(2) by being notified of the terms of the order, whether by telephone, telegram or otherwise.

**48.20**
The Court may dispense with service of a copy of an order under Rules 48.15 to 48.18 if it thinks it just to do so.

### Court May Order Act To Be Done At The Expense Of The Disobedient Party
**48.21**
If a mandatory order, an injunction or a judgment or order for the specific performance of a contract is not complied with, then the Court may direct that the act required to be done may, so far as practicable, be done by the party by whom the order or judgment was obtained or some other person appointed by the Court, at the cost of the disobedient party, and upon the act being done, the expenses incurred may be ascertained in such manner as the Court may direct and execution may issue against the disobedient party for the amount so ascertained and for costs.

### Matters Occurring After Judgment: Stay Of Execution
**48.22**
A party against whom a judgment has been given or an order made may apply to the Court for a stay of execution of the judgment or order or other relief on the ground of matters which have occurred since the date of the judgment or order, and the Court may by order grant such relief, and on such terms, as it thinks just.

### Stay of execution
**48.22.1**
For an example of an application for a stay of execution which was refused in the context of an application for immediate judgment to enforce a foreign judgment, see *Barclays v Essar Global Fund Ltd* [2016] DIFC CFI 036 (13 April 2017) at [74]-[84].

### Forms Of Writs
**48.23**
An order for execution against assets must be in Form P48/02.

**48.24**
An order of delivery must be in Form P48/03.

**48.25**
A writ of possession must be in Form P48/04.

**48.26**
A writ of sequestration must be in Form P48/05.

**48.27**
Unless the Court orders otherwise, an order of execution to enforce a judgment or order must not be executed on a day that is not a business day.



**No Enforcement 6 Years After Order Made**
**48.28**
The Court shall not make an order to enforce a judgment or order after 6 years have elapsed from the date when the judgment or order was made.

**When Permission To Issue Any Writ Of Execution Is Necessary**
**48.29**
An order of execution to enforce a judgment or order may not issue without the permission of the Court in the following cases:

(1) where any change has taken place, whether by death or otherwise, in the parties entitled or liable to execution under the judgment or order;

(2) where the judgment or order is against the assets of a deceased person coming to the hands of his executors or administrators after the date of the judgment or order, and it is sought to issue execution against such assets;

(3) where under the judgment or order, any person is entitled to a remedy subject to the fulfilment of any condition which it is alleged has been fulfilled;

(4) where any goods sought to be seized under an order of execution are in the hands of a receiver appointed by the Court or a sequestrator.

**48.30**
Rule 48.29 is without prejudice to any enactment or Rule by virtue of which a person is required to obtain the permission of the Court for the issue of a writ of execution or to proceed to execution on or otherwise to the enforcement of a judgment or order.

**48.31**
Where the Court grants permission, whether under **Rule 48.29** or otherwise, for the issue of a writ of execution and the writ is not issued within one year after the date of the order granting such permission, the order shall cease to have effect, without prejudice, however, to the making of a fresh order.

**Permission Required For Issue Of Writ In Aid Of Other Writ**
**48.32**
A writ of execution in aid of any other writ of execution shall not issue without the permission of the Court.

**Application For Permission To Issue Writ**
**48.33**
An application for permission to issue a writ of execution may be made in accordance with Part 23 but the application notice need not be served on the respondent unless the Court directs.

**48.34**
Such an application must be supported by a witness statement or affidavit:

(1) identifying the judgment or order to which the application relates and, if the judgment or order is for the payment of money, stating the amount originally due and the amount due at the date the application notice is filed;







(2) stating, where the case falls within Rule 48.29(1), the change which has taken place in the parties entitled or liable to execution since the date of the judgment or order;

(3) stating, where the case falls within Rule 48.29(2) or 48.29(3), that a demand to satisfy the judgment or order was made on the person liable to satisfy it, and that he has refused or failed to do so;

(4) giving such other information as is necessary to satisfy the Court that the applicant is entitled to proceed to execution on the judgment or order in question, and that the person against whom it is sought to issue execution is liable to execution on it.

**48.35**
The Court hearing such application may grant permission in accordance with the application or may order that any issue or question, a decision on which is necessary to determine the rights of the parties, be tried in any manner in which any question of fact or law arising in proceedings may be tried and, in either case, may impose such terms as to costs or otherwise as it thinks just.

**Application For Permission To Issue Writ Of Sequestration**
**48.36**
Notwithstanding anything in Rules 48.29 to 48.35, an application for permission to issue a writ of sequestration must be made in accordance with Part 23 and be heard by a Judge.



**48.37**
Subject to Rule 48.38, the application notice, stating the grounds of the application and accompanied by a copy of the witness statement or affidavit in support of the application, must be served personally on the person against whose property it is sought to issue the writ.

**48.38**
The Court may dispense with service of the application notice under Rule 48.37 if it thinks it just to do so.

**48.39**
The Judge hearing an application for permission to issue a writ of sequestration may sit in private in any case in which, if the application were for an order of committal, he would be entitled to do so by virtue of Rule 52.28 but, except in such a case, the application shall be heard in public.

**Issue Of Writ Of Execution**
**48.40**
Issue of a writ of execution takes place on its being sealed by the Court.

**48.41**
The application for a writ of execution must be signed by or on behalf of the legal representative of the person entitled to execution or, if that person is acting in person, by him.





**48.42**

No such order shall be sealed unless at the time tendering it for sealing:

(1) the person tendering it produces:

(a) the judgment or order in respect of it the order of execution is made, or an authorised copy;

(b) where the order may not be made without the permission of the Court, the order granting permission or evidence of the granting of it; and

(2) the Court Officer authorised to seal it is satisfied that the period, if any, specified in the judgment or order for the payment of any money or the doing of any other act thereunder has expired.

**48.43**

Every order of execution shall bear the date of the day on which it is sealed.

**Duration And Renewal Of Writ Of Execution**

**48.44**

For the purpose of execution, a writ of execution is valid in the first instance for 12 months beginning with the date of its issue.

**48.45**



Subject to Rule 48.46, where an order of execution has not been wholly executed, the Court may by order extend the validity of the order from time to time for a period of 12 months at any one time beginning with the day on which the order is made, if an application for extension is made to the Court before the day next following that on which the order would otherwise expire or such later day, if any, as the Court may allow.



**48.46**

The Court shall not make an order under Rule 48.45 or 48.50 to enforce a judgment or order after 6 years have elapsed from the date when the judgment or order was made.

**48.47**

Before an order, the validity of which had been extended under Rule 48.45, is executed either the order must be sealed by the Court showing the date on which the order extending its validity was made or the applicant for the order must serve a sealed notice in Form P48/06 on the relevant enforcement officer informing him of the making of the order and the date thereof.

**48.48**

The priority of an order of execution, the validity of which has been extended under Rule 48.45, shall be determined by reference to the date on which it was originally delivered to the relevant enforcement officer.

**48.49**

The production of a writ of execution, or of such a notice as is mentioned in Rule 48.47 purporting in either case to be sealed as mentioned in that Rule, shall be evidence that




the validity of that order of execution, or, as the case may be, of the order referred to in that notice, has been extended under **Rule 48.45**.

**48.50**
Subject to **Rule 48.46**, if during the validity of an order of execution, an interpleader claim is issued in relation to an execution under that order, the validity of the order shall be extended until the expiry of 12 months from the conclusion of the interpleader proceedings.

**Return To Order Of Execution**
**48.51**
Any party at whose instance or against whom an order of execution was issued, may serve a notice on the relevant enforcement officer requiring him, within such time as may be specified in the notice, to indorse on the order a statement of the manner in which he has executed it and to send to that party a copy of the statement.

**48.52**
If an enforcement officer on whom such a notice is served fails to comply with it, the party by whom it was served may apply to the Court for an order directing the enforcement officer to comply with the notice.

**Power To Stay Execution Against Assets**
**48.53**
Where a judgment is given or an order made for the payment by any person of money, and the Court is satisfied, on an application made at the time of the judgment or order, or at any time thereafter, by the judgment debtor or other party liable to execution:

    (1) that there are special circumstances which render it inexpedient to enforce the judgment or order; or

    (2) that the applicant is unable from any cause to pay the money;

then, the Court may by order stay the execution against assets of the judgment or order either absolutely or for such period and subject to such conditions as the Court thinks fit.

**48.54**
An application under **Rule 48.53**, if not made at the time the judgment is given or order made, must be made in accordance with Part 23, and may be so made notwithstanding that the party liable to execution did not acknowledge service of the claim form or serve a defence or take any previous part in the proceedings.

**48.55**
The grounds on which an application under **Rule 48.53** is made must be set out in the application notice and be supported by an affidavit made by or on behalf of the applicant substantiating the grounds and, in particular, where the application is made on the grounds of the applicant's inability to pay, disclosing his income, the nature and value of any property of his and the amount of any other liabilities of his.



**48.56**

The application notice and a copy of the supporting affidavit must be served on the party entitled to enforce the judgment or order not less than 4 clear days before the hearing.

**48.57**

An order staying execution under **Rule 48.53** may be varied or revoked by a subsequent order.

**Separate Orders To Enforce Payment Of Costs**
**48.58**

Where only the payment of money, together with costs to be assessed in accordance with Part 40 (detailed costs assessment), is adjudged or ordered, then, if when the money becomes payable under the judgment or order the costs have not been assessed, the party entitled to enforce that judgment or order may issue a writ for execution against assets to enforce payment of the sum (other than for costs) adjudged or ordered and, not less than 8 days after that order is made, he may obtain a second writ to enforce payment of the assessed costs.

**48.59**

A party entitled to enforce a judgment or order for the delivery of possession of any property (other than money) may, if he so elects, obtain a separate writ to enforce payment of any damages or costs awarded to him by that judgment or order.

**Order For Sale Otherwise Than By Auction**
**48.60**



An order of the Court under Article 45(3) of the Law of Damages emedies 2005 that a sale of goods seized under an execution may be made otherwise than by public auction may be made on the application of: 

    (1) the judgment creditor;

    (2) the judgment debtor; or

    (3) the relevant enforcement officer.

**48.61**

An application under **Rule 48.60** must be made in accordance with Part 23 and the application notice must contain a short statement of the grounds of the application.

**48.62**

Where the applicant for an order under this **Rule 48.60** is not the enforcement officer, the enforcement officer must, on the demand of the applicant, send to the applicant a list stating:

    (1) whether he has notice of the issue of another writ or writs of execution against
       the goods of the judgment debtor; and

(2) so far as is known to him, the name and address of every creditor who has obtained the issue of another writ of execution,

and where the enforcement officer is the applicant, he must prepare such a list.

**48.63**
Not less than 4 clear days before the hearing, the applicant must serve the application notice on each of the other persons by whom the application might have been made and on every person named in the list under **Rule 48.62.**

**48.64**
The applicant must produce the list under **Rule 48.62** to the Court on the hearing of the application.

**48.65**
Every person on whom the application notice was served may attend and be heard on the hearing of the application.

## PART 49
COURT'S POWER TO APPOINT A RECEIVER

**Scope Of This Part And Interpretation**
**49.1**
This Part contains provisions about the Court's power to appoint a receiver.

**49.2**
In this Part 'receiver' includes a manager.

**Court's Power To Appoint Receiver**
**49.3**
The Court's powers to appoint a receiver are set out in:

(1) Article 25 of the Court Law 2004;

(2) Article 92(3) of the Regulatory Law 2004;

(3) Article 136 of the Companies Law (Amended and Restated) 2006;

(4) Article 12.8 of the Companies Regulations; and

(5) Articles 42(1) and 46 of the Law of Damages and Remedies 2005.

**Court's power to appoint a receiver**
**49.3.1**
In *Saboowala v Nair* [2017] DIFC CFI 037 (10 October 2017) at [22], the Court considered and rejected an alternative application to appoint a receiver under RDC Part 49 for three reasons. The first objection was that it was "far from clear that the Court has any jurisdiction to make such an order" but no explanation was given as to why this was the case in circumstances where article 25 of the Court Law (No 10 of 2004) gives the CFI

power to appoint a receiver or provisional liquidator "at any stage of a proceeding". The second reason was that the evidential requirements of 49.10-13 were not satisfied, and thirdly that a receiver was not in any event justified.

**49.4**

The Court may appoint a receiver:

(1) before proceedings have started;

(2) in existing proceedings; or

(3) on or after judgment.

**49.5**

The Court will normally only consider an application for the appointment of a receiver before proceedings are started after notice of the application has been served.

**49.6**

Where a judgment creditor applies for the appointment of a receiver as a method of enforcing a judgment, in considering whether to make the appointment the Court will have regard at all times to:

(1) the sum owed;

(2) the likelihood of making a substantial recovery; and

(3) the cost of appointing the receiver.

**49.7**

The Court may at any time:

(1) terminate the appointment of a receiver; and

(2) appoint another receiver in his place.

**How To Apply For The Appointment Of A Receiver**
**49.8**

An application for the appointment of a receiver:

(1) may be made without notice; and

(2) must be supported by written evidence.

**49.9**

If a person applies at the same time for:

(1) the appointment of a receiver; and

(2) a related injunction,

he must use the same claim form or application notice for both applications.



**49.10**

The written evidence in support of an application for the appointment of a receiver must:

(1) explain the reasons why the appointment is required;

(2) give details of the property which it is proposed that the receiver should get in or manage, including estimates of:

(a) the value of the property; and

(b) the amount of income it is likely to produce;

(3) if the application is to appoint a receiver by way of equitable execution, give details of:

(a) the judgment which the applicant is seeking to enforce;

(b) the extent to which the debtor has failed to comply with the judgment;

(c) the result of any steps already taken to enforce the judgment; and

(d) why the judgment cannot be enforced by any other method; and

(4) if the applicant is asking the Court to allow the receiver to act:

(a) without giving security; or

(b) before he has given security or satisfied the Court that he has security in place;

explain the reasons why that is necessary.

**49.11**

In addition, the written evidence should normally identify an individual whom the Court is to be asked to appoint as receiver ('the nominee'), and should:

(1) state the name, address and position of the nominee;

(2) include written evidence by a person who knows the nominee, stating that he believes the nominee is a suitable person to be appointed as receiver, and the basis of that belief; and

(3) be accompanied by written consent, signed by the nominee, to act as receiver if appointed.

**49.12**

If the applicant does not nominate a person to be appointed as receiver, or if the Court decides not to appoint the nominee, the Court may:





(1) order that a suitable person be appointed as receiver; and

(2) direct any party to nominate a suitable individual to be appointed.

**49.13**
A party directed to nominate a person to be appointed as receiver must file written evidence containing the information required by Rule 49.11 and accompanied by the written consent of the nominee.

**Information to accompany nominee**
**49.13.1**
For an example of the strict approach the Court takes to the evidential requirements of 49.10-13, see *Saboowala v Nair* [2017] DIFC CFI 037 (10 October 2017) at [22].

**Service Of Order Appointing Receiver**
**49.14**
An order appointing a receiver must be served by the party who applied for it on:

(1) the person appointed as receiver;

(2) unless the Court orders otherwise, every other party to the proceedings; and

(3) such other persons as the Court may direct.



**Court's Directions**
**49.15**
The Court may give directions to the receiver when it appoints him or at any time afterwards.



**49.16**
The Court will normally, when it appoints a receiver, give directions in relation to security.

**49.17**
Other matters about which the Court may give directions include:

(1) whether, and on what basis, the receiver is to be remunerated for carrying out his functions;

(2) the preparation and service of accounts;

(3) the payment of money into Court; and

(4) authorising the receiver to carry on an activity or incur an expense.

**Security**
**49.18**
The Court may direct that before a receiver begins to act or within a specified time he must either:







(1) give such security as the Court may determine; or

(2) file and serve on all parties to the proceedings evidence that he already has in force sufficient security;

to cover his liability for his acts and omissions as a receiver.

**49.19**
An order appointing a receiver will normally specify the date by which the receiver must:

(1) give security; or

(2) file and serve evidence to satisfy the Court that he already has security in force.

**49.20**
Unless the Court directs otherwise, security will be given by a guarantee.

**49.21**
Where the Court has given directions about giving security, then a guarantee should be prepared in a form, and entered into with a bank or insurance company, approved by the Court.

**49.22**
The Court may terminate the appointment of the receiver if he fails to:



(1) give the security; or

(2) satisfy the Court as to the security he has in force, and

(3) by the date specified.

**Receiver's Application For Directions**
**49.23**
The receiver may apply to the Court at any time for directions to assist him in carrying out his function as a receiver.

**49.24**
The Court, when it gives directions, may also direct the receiver to serve on any person:

(1) the directions; and

(2) the application for directions.

**49.25**
An application by a receiver for directions may be made by filing an application notice in accordance with Part 23.

**49.26**
If the directions sought by the receiver are unlikely to be contentious or important to the parties, he may make the application by letter, and the Court may reply by letter.



In such cases the receiver need not serve his letter or the Court's reply on the parties, unless the Court orders him to do so.

**49.27**
Where a receiver applies for directions by letter, the Court may direct him to file and serve an application notice.

**Receiver's Remuneration**
**49.28**
A receiver may only charge for his services if the Court:

    (1) so directs; and

    (2) specifies the basis on which the receiver is to be remunerated.

**49.29**
The Court may specify:

    (1) who is to be responsible for paying the receiver; and

    (2) the fund or property from which the receiver is to recover his remuneration.

**49.30**
If the Court directs that the amount of a receiver's remuneration is to be determined by the Court:



    (1) the receiver may not recover any remuneration for his services without a determination by the Court; and

    (2) the receiver or any party may apply at any time for such a determination to take place.



**49.31**
Unless the Court orders otherwise, in determining the remuneration of a receiver the Court shall award such sum as is reasonable and proportionate in all the circumstances and which takes into account:

    (1) the time properly given by him and his staff to the receivership;

    (2) the complexity of the receivership;

    (3) any responsibility of an exceptional kind or degree which falls on the receiver in consequence of the receivership;

    (4) the effectiveness with which the receiver appears to be carrying out, or to have carried out, his duties; and

    (5) the value and nature of the subject matter of the receivership.



**49.32**

An application by a receiver for the amount of his remuneration to be determined must be supported by:

    (1) written evidence showing:

        (a) on what basis the remuneration is claimed; and

        (b) that it is justified and in accordance with this Part; and

    (2) a certificate signed by the receiver that he considers that the remuneration he claims is reasonable and proportionate.

**49.33**

The Court may, before determining the amount of a receiver's remuneration:

    (1) require the receiver to provide further information in support of his claim; and

(2) appoint an assessor under Part 31 to assist the Court.

**49.34**

The Court may refer the determination of a receiver's remuneration to the Registrar.

**49.35**

Rules 49.28 to 49.34 do not apply to expenses incurred by a receiver in carrying out his functions. These are accounted for as part of his account for the assets he has recovered, and not dealt with as part of the determination of his remuneration.



**Accounts**

**49.36**

The Court may order a receiver to prepare and serve accounts.

**49.37**

A party served with such accounts may apply for an order permitting him to inspect any document in the possession of the receiver relevant to those accounts.

**49.38**

A party should not apply for an order under Rule 49.37 without first asking the receiver to permit inspection without an order.

**49.39**

Where the Court makes an order under Rule 49.37, it will normally direct that the receiver must:

    (1) permit inspection within 7 days after being served with the order; and

    (2) provide a copy of any documents the subject of the order within 7 days after receiving a request for a copy from the party permitted to inspect them, provided that party has undertaken to pay the reasonable cost of making and providing the copy.






**49.40**

Any party may, within 14 days of being served with the accounts, serve notice on the receiver:

    (1) specifying any item in the accounts to which he objects;

    (2) giving the reason for such objection; and

    (3) requiring the receiver, within 14 days of receipt of the notice, either:

        (a) to notify all the parties who were served with the accounts that he accepts the objection; or

        (b) if he does not accept the objection, to apply for an examination of the accounts in relation to the contested item.

**49.41**

When the receiver applies for the examination of the accounts he must at the same time file:

    (1) the accounts; and

    (2) a copy of the notice served on him under **Rule 49.40**.

**49.42**



If the receiver fails to comply with **Rule 49.40(3)**, any party may apply to the Court for an examination of the accounts in relation to the contested item.

**49.43**

At the conclusion of its examination of the accounts the Court will certify the result.

**49.44**

When the Court gives directions under **Rule 49.36** for the receiver to prepare and serve accounts, it may:

    (1) direct the receiver to prepare and serve accounts either by a specified date or at specified intervals; and

    (2) specify the persons on whom he must serve the accounts.

**49.45**

A party should not apply for an order under **Rule 49.37** permitting him to inspect documents in the possession of the receiver, without first asking the receiver to permit such inspection without an order.

**Non-Compliance By Receiver**
**49.46**

If a receiver fails to comply with any Rule, Practice Direction or direction of the Court the Court may order him to attend a hearing to explain his non-compliance.







**49.47**

At the hearing the Court may make any order it considers appropriate, including:

(1) terminating the appointment of the receiver;

(2) reducing the receiver's remuneration or disallowing it altogether; and

(3) ordering the receiver to pay the costs of any party.

**49.48**

Where:

(1) the Court has ordered a receiver to pay a sum of money into Court; and

(2) the receiver has failed to do so;

the Court may order him to pay interest on that sum for the time he is in default at such rate as it considers appropriate.

**Application For Discharge Of Receiver**

**49.49**

A receiver or any party may apply for the receiver to be discharged on completion of his duties.



**49.50**

The application notice must be served on the persons who were required under **Rule 49.14** to be served with the order appointing the receiver.



**Order Discharging Or Terminating Appointment Of Receiver**

**49.51**

An order discharging or terminating the appointment of a receiver may:

(1) require him to pay into Court any money held by him; or

(2) specify the person to whom he must pay any money or transfer any assets still in his possession; and

(3) make provision for the discharge or cancellation of any guarantee given by the receiver as security.

**49.52**

The order must be served on the persons who were required under **Rule 49.14** to be served with the order appointing the receiver.





# PART 50
## ORDERS TO OBTAIN INFORMATION FROM JUDGMENT DEBTORS

**Scope Of This Part And Interpretation**
**50.1**
This Part contains rules which provide for a judgment debtor to be required to attend Court to provide information, for the purpose of enabling a judgment creditor to enforce a judgment or order against him.

**Order To Attend Court**
**50.2**
A judgment creditor may apply for an order requiring:

(1) a judgment debtor; or

(2) if a judgment debtor is a company or other corporation, an officer of that body;

to attend Court to provide information about:

(a) the judgment debtor's means; or

(b) any other matter about which information is needed to enforce a judgment or order.



**50.3**
An application under **Rule 50.2** may be made without notice.

**50.4**
The application must be made by filing an application notice in Form P50/01 if the application is to question an individual judgment debtor, or Form P50/02 if the application is to question an officer of a company or other corporation.

**50.5**
The application notice must:

(1) state the name and address of the judgment debtor;

(2) identify the judgment or order which the judgment creditor is seeking to enforce;

(3) if the application is to enforce a judgment or order for the payment of money, state the amount presently owed by the judgment debtor under the judgment or order;

(4) if the judgment debtor is a company or other corporation, state:

(a) the name and address of the officer of that body whom the judgment creditor wishes to be ordered to attend Court; and

(b) his position in the company;






(5) if the judgment creditor wishes the questioning to be conducted before a Judge, state this and give his reasons;

(6) if the judgment creditor wishes the judgment debtor (or other person to be questioned) to be ordered to produce specific documents at Court, identify those documents; and

(7) if the application is to enforce a judgment or order which is not for the payment of money, identify the matters about which the judgment creditor wishes the judgment debtor (or officer of the judgment debtor) to be questioned.

**50.6**
An application under **Rule 50.2** may be dealt with by the Registrar without a hearing.

**50.7**
If the application notice complies with **Rules 50.4** and **50.5**, an order to attend Court will be issued in the terms of **Rule 50.9.**

**50.8**
The Registrar:

(1) may, in any appropriate case, refer an application under **Rule 50.2** to a Judge; and



(2) will refer it to a Judge for consideration, if the judgment creditor requests the judgment debtor (or officer of the judgment debtor) to be questioned before a Judge. 

**50.9**
A person served with an order issued under **Rule 50.7** must:

(1) attend Court at the time and place specified in the order;

(2) when he does so, produce at Court documents in his control which are described in the order; and

(3) answer on oath such questions as the Court may require.

**50.10**
The order will normally provide for questioning to take place before the Registrar. The order will provide for questioning to take place before a Judge only if the Judge considering the request decides that there are compelling reasons to make such an order.

**50.11**
An order under **Rule 50.7** will contain a notice in the following terms:

*"You must obey this order. If you do not, you may be fined for contempt of Court."*





**Service Of Order**
**50.12**
An order to attend Court must, unless the Court otherwise orders, be served personally on the person ordered to attend Court not less than 14 days before the hearing.

**50.13**
Service of an order to attend Court for questioning must be carried out by the judgment creditor (or someone acting on his behalf).

**50.14**
The judgment creditor must inform the Court not less than 7 days before the date of the hearing if he has been unable to serve the order to attend Court.

**Travelling Expenses**
**50.15**
A person ordered to attend Court may, within 7 days of being served with the order, ask the judgment creditor to pay him a sum reasonably sufficient to cover his travelling expenses to and from Court.

**50.16**
The judgment creditor must pay such a sum if requested.

**Judgment Creditor's Affidavit**
**50.17**
The judgment creditor must file an affidavit or affidavits:



    (1) by the person who served the order giving details of how and when it was served;

    (2) stating either that:

        (a) the person ordered to attend Court has not requested payment of his travelling expenses; or

        (b) the judgment creditor has paid a sum in accordance with such a request; and

    (3) stating how much of the judgment debt remains unpaid.

**50.18**
The judgment creditor must either:

    (1) file the affidavit or affidavits not less than 2 days before the hearing; or

    (2) produce it or them at the hearing.

**Conduct Of The Hearing**
**50.19**
The person ordered to attend Court will be questioned on oath.

**50.20**
The questioning will be carried out by the Registrar unless the Court has ordered that the hearing shall be before a Judge.





**50.21**

The Registrar will ask a standard series of questions, as set out forms in Schedules A and B to this Part. The form in Schedule A will be used if the person being questioned is the judgment debtor, and the form in Schedule B will be used if the person is an officer of a company or other corporation.

**50.22**

The judgment creditor or his representative may either:

(1) attend Court and ask questions himself or through his legal representative; or

(2) request the Registrar to ask additional questions, by attaching a list of proposed additional questions to his application notice.

**50.23**

The Registrar will:

(1) make a written record of the evidence given, unless the proceedings are tape recorded;

(2) at the end of the questioning, read the record of evidence to the person being questioned and ask him to sign it; and

(3) if the person refuses to sign it, note that refusal on the record of evidence.



**50.24**

Where the hearing takes places before a Judge, the judgment creditor or his legal representative must attend and conduct the questioning, and the standard questions in the forms in Schedules A and B will not be used.



**50.25**

Where the hearing takes places before a Judge, the proceedings will be tape recorded and the Court will not make a written record of the evidence.

**Adjournment Of The Hearing**
**50.26**

If the hearing is adjourned, the Court will give directions as to the manner in which notice of the new hearing is to be served on the judgment debtor.

**Failure To Comply With Order**
**50.27**

Where a judgment debtor was ordered to attend before the Registrar, if a person against whom an order has been made under **Rule 50.7**:

(1) fails to attend Court;

(2) refuses at the hearing to take the oath or to answer any question; or

(3) otherwise fails to comply with the order;

the Registrar will refer the matter to a Judge.






**50.28**

If the Registrar refers to a Judge the failure of a judgment debtor to comply with an order under Rule 50.7, he will certify in writing the respect in which the judgment debtor failed to comply with the order.

**50.29**

That Judge may, subject to Rules 50.31 and 50.32, make a committal order against the person.

**50.30**

Where a judgment debtor was ordered to attend before a Judge, if a person against whom an order has been made under Rule 50.7:

(1) fails to attend Court;

(2) refuses at the hearing to take the oath or to answer any question; or

(3) otherwise fails to comply with the order;

the Judge may, subject to Rules 50.31 and 50.32, make a committal order against the person.

**50.31**

A committal order for failing to attend Court may not be made unless the judgment creditor has complied with Rules 50.15 to 50.18.



**50.32**

If a committal order is made, the Judge will direct that:

(1) the order shall be suspended provided that the person:

(a) attends Court at a time and place specified in the order; and

(b) complies with all the terms of that order and the original order; and

(2) if the person fails to comply with any term on which the committal order is suspended, he shall be brought before a Judge to consider whether the committal order should be discharged.



**50.33**

Where Rule 50.32 applies, the appointment specified will be:

(1) before a Judge, if:

(a) the original order under Rule 50.7 was to attend before a Judge; or

(b) the Judge making the suspended committal order so directs; and

(2) otherwise, before the Registrar.



**50.34**

Rules 50.12 to 50.14 (service of order), and Rules 50.17(1) and 50.18 (affidavit of service), apply with the necessary changes to a suspended committal order as they do to an order to attend Court.

# PART 51
## INTERPLEADER

**Interpretation**
**51.1**
In this Part:

    (1) 'enforcement officer' means the Court Bailiff or an individual who is authorised to act as such by the Chief Justice or a person acting on his behalf;

    (2) 'order of execution' includes an order of execution against assets, an order of possession, an order of delivery, or an order of sequestration and any further order in aid of any of the aforementioned orders.

**Entitlement To Relief By Way Of Interpleader**
**51.2**
Where:



    (1) a person is under a liability in respect of a debt or in respect of any assets and he is, or expects to be, sued for or in respect of that debt or assets by two or more persons making adverse claims thereto; or

    (2) claim is made to any assets taken or intended to be taken by an enforcement officer in execution under any process, or to the proceeds or value of any such assets, by a person other than the person against whom the process is issued;



the person under liability as mentioned in sub-paragraph (1) or (subject to Rules 51.3 to 51.6) an enforcement officer may apply to the Court for relief by way of interpleader.

**Claim To Assets Taken In Execution**
**51.3**
Any person making a claim to or in respect of any assets taken or intended to be taken in execution under process of the Court, or to the proceeds or value of any such assets, must give notice of his claim to the enforcement officer charged with the execution of the process and must include in his notice a statement of his address, and that address shall be his address for service.

**51.4**
On receipt of a claim made under Rule 51.3 the enforcement officer must forthwith give notice thereof to the execution creditor and the execution creditor must, within 7 days after receiving the notice, give notice to the enforcement officer informing him whether he admits or disputes the claim. An execution creditor who gives notice in accordance with this Rule admitting a claim shall only be liable to the enforcement





officer for any fees and expenses incurred by the enforcement officer before receipt of that notice.

**51.5**
Where:

(1) the enforcement officer receives a notice from an execution creditor under **Rule 51.4** disputing a claim, or the execution creditor fails, within the period mentioned in that Rule, to give the required notice; and

(2) the claim made under **Rule 51.3** is not withdrawn;

the enforcement officer may apply to the Court for relief under this Part.

**51.6**
An enforcement officer who receives a notice from an execution creditor under **Rule 51.4** admitting a claim made under **Rule 51.3** shall withdraw from possession of the assets claimed and may apply to the Court for an order restraining the bringing of a claim against him for or in respect of his having taken possession of the assets.

**Claim In Respect Of Assets Protected From Seizure**
**51.7**
Where a judgment debtor whose assets have been seized, or are intended to be seized, by an enforcement officer under an order of execution claims that such assets are not liable to execution by virtue of Article 45(2) of the Lawof Damages and Remedies 2005, he must within 5 days of the seizure give notice in writing to the enforcement officer identifying all those assets in respect of which he makes such a claim and the grounds of such claim in respect of each item.

**51.8**
Upon receipt of a notice of claim under **Rule 51.7**, the enforcement officer must forthwith give notice thereof to the execution creditor and to any person who has made a claim to, or in respect of, the goods under **Rule 51.3** and the execution creditor and any person who has made claim must, within 7 days of receipt of such notice, inform the enforcement officer in writing whether he admits or disputes the judgment debtor's claim in respect of each item.

**51.9**
The enforcement officer shall withdraw from possession of any goods in respect of which the judgment debtor's claim is admitted or if the execution creditor or any person claiming under **Rule 51.3** fails to notify him in accordance with **Rule 51.8** and the enforcement officer shall so inform the parties in writing.

**51.10**
Where the enforcement officer receives notice from:

(1) the execution creditor; or

(2) any such person to whom notice was given under **Rule 51.8**;



that the claim or any part thereof is disputed, he must forthwith seek the directions of the Court and may include therein an application for an order restraining the bringing of any claim against him for, or in respect of, his having seized any of those assets or his having failed so to do.

**51.11**

The enforcement officer's application for directions under Rule 51.10 shall be made by an application in accordance with Part 23 and, on the hearing of the application, the Court may:

(1) determine the judgment debtor's claim immediately; or

(2) give such directions for the determination of any issue raised by such claim as may be just.

**51.12**

The Registrar shall have power to make an order of the kind referred to in Rule 51.11.

**Mode Of Application**
**51.13**

An application for relief under this Part must be made by claim form in accordance with Part 8 unless made in an existing claim, in which case it must be made in accordance with Part 23.

**51.14**



Where the applicant is an enforcement officer who has withdrawn from possession of assets taken in execution and who is applying for relief under Rule 51.6 the claim form must be served on any person who made a claim under Rule 51.3 to or in respect of those assets, and that person may attend the hearing of the application.



**51.15**

Subject to Rule 51.16 a claim form or application notice under Rule 51.13 must be supported by evidence that the applicant:

(1) claims no interest in the subject matter in dispute other than for charges or costs;

(2) does not collude with any of the claimants to that subject matter; and

(3) is willing to pay or transfer that subject matter into Court or to dispose of it as the Court may direct.

**51.16**

Where the applicant is an enforcement officer, he shall not provide such evidence as is referred to in Rule 51.15 unless directed by the Court to do so.

**51.17**

Any person who makes a claim under Rule 51.3 and who is served with a claim form under Rule 51.14 shall within 14 days serve on the execution creditor and the sheriff an affidavit specifying and/or describing any assets claimed and setting out the grounds upon which such claim is based.






**51.18**

Where the applicant is an enforcement officer a claim form under **Rule 51.13** must give notice of the requirement in **Rule 51.17**.

**Powers Of Court Hearing The Claim**
**51.19**

Where on the hearing of a claim under this Part all the persons by whom adverse claims to the subject-matter in dispute (hereafter in this Part referred to as 'the interpleader claimants') appear, the Court may order:

(1) that any interpleader claimant be made a defendant in any claim pending with respect to the subject-matter in dispute in substitution for or in addition to the applicant for relief under this Part; or

(2) that an issue between the interpleader claimants be stated and tried and may direct which of the interpleader claimants is to be claimants and which defendant.

**51.20**

Where:

(1) the applicant under this Part is an enforcement officer;

(2) all the interpleader claimants consent or any of them so requests; or

(3) the question at issue between the interpleader claimants is a question of law and the facts are not in dispute;




the Court may immediately determine the question at issue between the interpleader claimants and make an order accordingly on such terms as may be just.

**51.21**

Where an interpleader claimant, having been duly served with a claim form under this Part, does not appear at the hearing or, having appeared, fails or refuses to comply with an order made in the proceedings, the Court may make an order declaring the interpleader claimant, and all persons claiming under him, barred from prosecuting his claim against the applicant for such relief and all persons claiming under him, but such an order shall not affect the rights of the interpleader claimants as between themselves.

**Power To Order Sale Of Assets Taken In Execution**
**51.22**

Where an application for relief under this Part is made by an enforcement officer who has taken possession of any assets in execution under any process, and an interpleader claimant alleges that he is entitled to the assets by way of security for debt, the Court may order those assets or any part thereof to be sold and may direct that the proceeds of sale be applied in such manner and on such terms as may be just and as may be specified in the order.





**Power To Stay Proceedings**
**51.23**
Where a defendant to a claim applies for relief under this Part in the claim, the Court may by order stay all further proceedings in the claim.

**Other Powers**
**51.24**
The Court may in or for the purposes of any interpleader proceedings make such order as to costs or any other matter as it thinks just.

**51.25**
Where the interpleader claimant fails to appear at the hearing, the Court may direct that the enforcement officer's and execution creditor's costs shall be assessed by the Registrar.

**One Order In Several Proceedings**
**51.26**
Where the Court considers it necessary or expedient to make an order in any interpleader proceedings in several proceedings, the Court may make such an order; and the order shall bear the titles of all those proceedings and shall be binding on all the parties to them.

**Production Of Documents**
**51.27**
Parts 19 and 28 shall, with the necessary modifications, apply in relation to an interpleader issue as they apply in relation to any other proceedings.

**Trial Of Interpleader Issue**
**51.28**
Part 35 shall, with the necessary modifications, apply to the trial of an interpleader issue as it applies to the trial of a claim.

**51.29**
The Court may give such judgment or make such order as is necessary finally to dispose of all questions arising in the interpleader proceedings.

# PART 52
CONTEMPT OF COURT

**Committal For Contempt Of Court**
**52.1**
The power of the Court of First Instance or Court of Appeal to punish for contempt of Court may be exercised by an order of committal.

**52.2**
An order of committal may be made by a single Judge of the Court.





**Application For Committal**
**52.3**
An application for an order of committal must be made by claim form or application notice and be supported by an affidavit.

**52.4**
A committal application must, subject to Rule 52.5, be commenced by the issue of a Part 8 claim form.

**52.5**
If the committal application is made in existing proceedings it must be commenced by the filing of an application notice in those proceedings.

**52.6**
An application to commit for breach of an undertaking or order must be commenced by the filing of an application notice in the proceedings in which the undertaking was given or the order was made.

**52.7**
The application notice must state that the application is made in the proceedings in question and its title and reference number must correspond with the title and reference number of those proceedings.

**52.8**
If the committal application is commenced by the issue of a claim form, Part 8 shall, subject to the provisions of this Part, apply as though references to 'claimant' were references to the person making the committal application and references to 'defendant' were references to the person against whom the committal application is made (in this practice direction referred to as 'the respondent') but:




> (1) the claim form together with copies of all written evidence in support must, unless the Court otherwise directs, be served personally on the respondent;

> (2) the claim form must set out in full the grounds on which the committal application is made and must identify, separately and numerically, each alleged act of contempt including, if known, the date of each alleged act;

> (3) an amendment to the claim form can be made with the permission of the Court but not otherwise;

> (4) Rule 8.16 does not apply; and

> (5) the claim form must contain a prominent notice stating the possible consequences of the Court making a committal order and of the respondent not attending the hearing. A form of notice, which may be used, is annexed to this Part at Schedule A.

**52.9**
If a committal application is commenced by the filing of an application notice, Part 23 shall, subject to the provisions of this Part, apply, but:





(1) the application notice together with copies of all written evidence in support must, unless the Court otherwise directs, be served personally on the respondent;

(2) the application notice must set out in full the grounds on which the committal application is made and must identify, separately and numerically, each alleged act of contempt including, if known, the date of each of the alleged acts;

(3) an amendment to the application notice can be made with the permission of the Court but not otherwise;

(4) the Court may not dispose of the committal application without a hearing; and

(5) the application notice must contain a prominent notice stating the possible consequences of the Court making a committal order and of the respondent not attending the hearing. A form of notice, which may be used, is annexed to this Part at Schedule A.

**52.10**

Without prejudice to its powers under Part 9, the Court may dispense with service under **Rule 52.8(1)** or **Rule 52.9(1)** if it thinks it just to do so.

**Saving For Power To Commit Without Application**
**52.11**

Nothing in this Part shall be taken as affecting the power of the Court of First Instance or Court of Appeal to make an order of committal on its own initiative against a person guilty of contempt of Court.




**Evidence**
**52.12**

Written evidence in support of or in opposition to a committal application must be given by affidavit.

**52.13**

Written evidence served in support of or in opposition to a committal application must, unless the Court otherwise directs, be filed.

**52.14**

A respondent may give oral evidence at the hearing, whether or not he has filed or served any written evidence. If he does so, he may be cross-examined.

**52.15**

A respondent may, with the permission of the Court, call a witness to give oral evidence at the hearing whether or not the witness has sworn an affidavit.

**Case Management Of Committal Applications**
**52.16**

The applicant for the committal order must, when lodging the claim form or application notice with the Court for issuing or filing, as the case may be, obtain from the Court a date for the hearing of the committal application.



**52.17**

Unless the Court otherwise directs, the hearing date of a committal application shall be not less than 14 days after service of the claim form or of the application notice, as the case may be, on the respondent. The hearing date must be specified in the claim form or application notice or in a Notice of Hearing or Application attached to and served with the claim form or application notice.

**52.18**

The Court may, however, at any time give case management directions, including directions for the service of written evidence by the respondent and written evidence in reply by the applicant, or may hold a directions hearing.

**52.19**

The Court may on the hearing date:

> (1) give case management directions with a view to a hearing of the committal application on a future date; or

> (2) if the committal application is ready to be heard, proceed to hear it.

**52.20**

In dealing with any committal application, the Court will have regard to the need for the respondent to have details of the alleged acts of contempt and the opportunity to respond to the committal application.



**52.21**

The Court should also have regard to the need for the respondent to be:

> (1) allowed a reasonable time for responding to the committal application including, if necessary, preparing a defence;

> (2) given the opportunity, if unrepresented, to obtain legal advice; and

> (3) if unable to understand English, allowed to make arrangements, seeking the assistance of the Court if necessary, for an interpreter to attend the hearing.

**Striking Out**

**52.22**

The Court may, on application by the respondent or on its own initiative, strike out a committal application if it appears to the Court:

> (1) that the committal application and the evidence served in support of it disclose no reasonable ground for alleging that the respondent is guilty of a contempt of Court;

> (2) that the committal application is an abuse of the Court's process or, if made in existing proceedings, is otherwise likely to obstruct the just disposal of those proceedings; or

> (3) that there has been a failure to comply with a Rule, Practice Direction or Court order.





**Miscellaneous**
**52.23**
Rules 31.29 to 31.49 do not apply to committal applications.

**52.24**
An order under **Rule 19.1** may not be made against a respondent to a committal application.

**52.25**
A committal application may not be discontinued without the permission of the Court.

**52.26**
The Court may waive any procedural defect in the commencement or conduct of a committal application if satisfied that no injustice has been caused to the respondent by the defect.

**Hearings Of Applications To Commit**
**52.27**
A committal application should normally be heard in public.

**52.28**
The Court hearing an application for an order of committal may sit in private in the following cases, that is to say:




   (1) where the application arises out of proceedings relating to a person suffering or appearing to be suffering from mental disorder;

   (2) where the application arises out of proceedings in which a secret process, discovery or invention was in issue; or

   (3) where it appears to the Court that in the interests of the administration of justice or for reasons of national security the application should be heard in private.

**52.29**
If the Court hearing an application in private by virtue of **Rule 52.28** decides to make an order of committal against the person sought to be committed, it shall state in public:

   (1) the name of the respondent;

   (2) in general terms the nature of the contempt or contempts found proved; and

   (3) the penalty (if any) imposed.

**52.30**
Except with the permission of the Court hearing an application for an order of committal, no grounds shall be relied upon at the hearing except the grounds set out in the claim form or application notice.



**52.31**

If on the hearing of the application the person sought to be committed expresses a wish to give oral evidence on his own behalf, he shall be entitled to do so.

**Power To Suspend Execution Of Committal Order**
**52.32**

The Court may by order direct that the execution of the order of committal shall be suspended for such period or on such terms or conditions as it may specify.

**52.33**

Where execution of an order of committal is suspended by an order under **Rule 52.32**, the applicant for the order of committal must, unless the Court otherwise directs, serve on the person against whom it was made a notice informing him of the making and terms of the order under that Rule.

**Contempt In The Face Of The Court**
**52.34**

Where the committal application relates to a contempt in the face of the Court the following matters should be given particular attention. Normally, it will be appropriate to defer consideration of the behaviour to allow the respondent time to reflect on what has occurred. The time needed for the following procedures should allow for such a period of reflection.




**52.35**

A Part 8 claim form and an application notice are not required for committal for contempt in the face of the Court, but other provisions of this Part should be applied, as necessary, or adapted to the circumstances. In addition the Judge should:

(1) tell the respondent of the possible penalty he faces;

(2) inform the respondent in detail, and preferably in writing, of the actions and behaviour of the respondent which have given rise to the committal application;

(3) if he considers that an apology would remove the need for the committal application, tell the respondent;

(4) have regard to the need for the respondent to be:

(a) allowed a reasonable time for responding to the committal application, including, if necessary, preparing a defence;

(b) given the opportunity, if unrepresented, to obtain legal advice;

(c) if unable to understand English, allowed to make arrangements, seeking the Court's assistance if necessary, for an interpreter to attend the hearing; and

(d) brought back before the Court for the committal application to be heard within a reasonable time;

(5) allow the respondent an opportunity to:







(a) apologise to the Court;

(b) explain his actions and behaviour; and

(c) if the contempt is proved, address the Court on the penalty to be imposed on him;

(6) if there is a risk of the appearance of bias, ask another Judge to hear the committal application; and

(7) where appropriate, nominate a suitable person to give the respondent the information.

(It is likely to be appropriate to nominate a person where the effective communication of information by the Judge to the respondent was not possible when the incident occurred).

**52.36**
Where the committal application is to be heard by another Judge, a written statement by the Judge before whom the actions and behaviour of the respondent which have given rise to the committal application took place may be submitted as evidence of those actions and behaviour.

**Saving For Other Powers**
**52.37**
Nothing in this Part shall be taken as affecting the power of the Court:

(1) to make an order referring the matter to the Attorney General of Dubai; or

(2) to make any other order it considers necessary in the interests of justice (including the giving security for his good behaviour), pursuant to Article 43 of the Court Law 2004; or

(3) to make an order requiring a person guilty of contempt of Court, or a person punishable by virtue of any enactment in like manner as if he had been guilty of contempt of Court, to pay a fine or to give security for his good behaviour;

and the provisions of this Part, so far as applicable, and with the necessary modifications, shall apply in relation to an application for such an order as they apply in relation to an application for an order of committal.

**APPENDIX A**
**IMPORTANT NOTICE**
The Court has power to fine you, refer the matter to the Attorney General of Dubai or make any other order it considers necessary in the interests of justice if it finds that any of the allegations made against you are true and amount to a contempt of Court.

You must attend Court on the date shown on the front of this form. It is in your own interest to do so. You should bring with you any witnesses and documents which you think will help you put your side of the case.







If you consider the allegations are not true you must tell the Court why. If it is established that they are true, you must tell the Court of any good reason why they do not amount to a contempt of Court, or, if they do, why you should not be punished

If you need advice you should show this document at once to your legal representative.

## PART 53
### SMALL CLAIMS TRIBUNAL

**53.0.1**
See also Practice Direction No 1 of 2011 "Small Claims Tribunal Practice.

**53.1**
This Part sets out the:

    (1) special procedure for dealing with claims ("small claims") which are issued in or have been transferred to the Small Claims Tribunal ("the SCT"); and

    (2) limits the amount of costs that can be recovered in respect of a small claim.

**53.2**
The SCT will hear and determine claims within the jurisdiction of the DIFC Courts:



    (1) where the amount of the claim or the value of the subject matter of the claim does not exceed AED 500,000 or;

    (2) where the claim relates to the employment or former employment of a party; and

all parties elect in writing that it be heard by the SCT (there is no value limit for the SCT's elective jurisdiction in the context of employment claims); or

    (3) which do not fall within the provisions of sub-paragraphs (1) or (2) above, but in respect of which:

        (a) the amount of the claim or the value of the subject matter of the claim does not exceed AED 1,000,000; and

        (b) all parties to the claim elect in writing that it be heard by the SCT, and such election is made in the underlying contract (if any) or subsequent to execution of that contract

or

    (4) such other claims as may be ordered or directed by the Chief Justice to be heard by the SCT from time to time.






**Jurisdiction**
**53.2.1**
As to the value limit, a party is entitled to cap a larger claim at a level within the jurisdiction of the Small Claims Tribunal ("SCT") and waive his rights over any higher claim (*Haya Spa LLC v Harper Real Estate* [2016] DIFC SCT 150; *Heitor v Helah* [2017] DIFC SCT 141 at [35] and [64]).

**53.2.2**
The SCT has no jurisdiction to hear judicial review claims: see *Calandra v Calder* [2012] DIFC SCT 004. Similarly, where neither party has opted in to the DIFC Court jurisdiction and none of the other jurisdictional gateways apply, the SCT will not have jurisdiction as the DIFC Courts will not have jurisdiction (*Haneul v Hannelle* [2017] DIFC SCT 193).

**53.3**
    (1) Where parties have elected the SCT's jurisdiction in writing, neither party shall be able to withdraw such election without the approval of an SCT Judge.

    (2) Where a claimant issues multiple claims against the same defendant, the SCT Judge may, where appropriate treat those claims as a single consolidated claim under Rule 4.2(7) for the purposes of deciding whether the amount in dispute exceeds the limits of the SCT's jurisdiction.

**53.4**
Reference in this Part to "claims" shall include reference to counterclaims, save that, where a counterclaim would not otherwise be within the SCT's jurisdiction, an SCT Judge may direct that the proceedings be transferred to the Court of First Instance

**53.5**
References in this Part to filing a document are references to filing that document with the SCT Registrar, unless stated otherwise.

**SCT Judge's power to grant a final remedy**
**53.6**
The SCT Judge may grant any final remedy in relation to a small claim which a Judge of the Court of First Instance of the DIFC Courts could grant if the proceedings were before that Court.

**Extent To Which Other Parts Apply**
**53.7**
The following Parts of the RDC shall apply to small claims except to the extent that a Rule limits such application or the SCT Judge orders otherwise:

    (1) Parts 1 to 5;

    (2) Part 9.6 (Service);

    (3) Part 12 (Disputing the Court's Jurisdiction);

    (4) Part 15 (Admissions);







(5) Part 23 (General Rules about applications for Court orders);

(6) Rules 29.9 to 29.11 (Evidence — power to control evidence);

(7) Rules 31.2 (Experts and assessors — general), 31.3 – 31.11 (Experts and assessors — overriding duty to the court), 31.12 – 31.18 (Experts and assessors — power to restrict expert evidence), 31.29 – 31.47 (Experts and assessors — power to appoint an expert) and 35.8 (Experts and assessors — instructions to a single joint expert);

(8) Rules 34.1 to 34.14 (discontinuance); and

(9) Part 36 (judgments and orders); and

(10) Parts 44 to 52.

**53.8**
The SCT of its own initiative may order a party to provide further information if it considers it appropriate to do so.

**Commencement Of A Small Claim**
**53.9**
A small claim must be started by a Claim Form using Form P53/01.

**53.10**
A small claim is started when the SCT Registrar issues a Claim Form at the request of a party.

**53.11**
The claimant must set out in or attach to the Claim Form a statement summarising the remedy sought and the claimant's reasons for claiming that he is entitled to that remedy. The claimant must include on the face of the Claim Form a statement of the monetary value of the small claim.

**53.12**
The claimant must include in the Claim Form the name and address for service of the defendant, together with any other available contact information. Where the defendant is a company, the claimant shall state the address where, to the best of his knowledge, the company carries on its business.

**53.13**
The SCT will serve the claim form on defendant, unless otherwise directed by the Registry.

**Responding To A Small Claim**
**53.14**
Within 7 days after he is served with a claim form in respect of a matter which has been referred to the SCT, a defendant must:

(1) Admit the claim by filing and serving on the claimant an admission in accordance with RDC Part 15;





(2) File a defence to the claim setting out (a) which parts of the claim are admitted; (b) which parts are denied and his reasons for denying those parts; and (c) the details of any counterclaim; or

(3) Make an application to dispute the jurisdiction of the SCT, supported by evidence.

**53.15**

Where the defendant admits the claim in accordance with **Rule 53.14(1)**, the SCT shall issue an order giving judgment on the claim.

**53.16**

Where the defendant files and serves an application to dispute the jurisdiction in accordance with **Rule 53.12(3)**, the application will be heard by an SCT Judge in accordance with RDC Part 23.

**The Consultation**
**53.17**

After the defendant has filed and served a defence in accordance with **Rule 53.14(2)** and/or after the time for filing such a statement has passed, the SCT will fix a time for the parties to attend before an SCT Judge for a consultation.

**53.18**

The primary purpose of the consultation will be to allow the parties to attempt to resolve their dispute.



**53.19**

The SCT may treat the consultation as the final hearing of the claim if all the parties agree.

**53.20**

The SCT will generally fix the consultation within 7 days after the time for filing a defence has expired (i.e. within 14 days after service of the claim form).

**53.21**

When filing the Claim Form the claimant should inform the SCT of any dates within that period on which he is unable to attend the consultation and his reasons for being unable to attend.

**53.22**

When filing a defence, the defendant should inform the SCT of any dates within that period on which he is unable to attend the consultation and his reasons for being unable to attend.

**53.23**

The SCT will attempt to fix the consultation on a date on which both parties are able to attend.

**53.24**

If any party is unable to attend the consultation on the date fixed, he must notify the SCT and the other party as soon as possible and give his reasons for being unable to



attend. If it appears to the SCT that the party has a good reason for being unable to attend the consultation, the SCT may adjourn the consultation and fix a new date.

**53.25**

It is essential that each party attends the consultation in person. Parties should not be represented by a lawyer. A party may be represented by a non–lawyer where it appears to the SCT that it is reasonably necessary.

**53.26**

Any of its full–time officers or employees may represent a corporate party at the consultation.

**53.27**

Each party should file with his claim form or defence any documents on which he wishes to rely at the consultation.

**53.28**

If a party fails to attend the consultation, the SCT Judge may:

    (1) decide the small claim against that party; or

    (2) adjourn the consultation.

**53.29**

If neither party attends the consultation, the SCT Judge may:

    (1) dismiss the claim; or

    (2) adjourn the consultation.

**53.30**

A party who was neither present nor represented at the consultation and against whom the claim has been decided in accordance with **Rule 53.28** or **Rule 53.29** may apply for that order to be set aside and the claim reinstated.

**53.31**

A party who applies for an Order to be set aside in accordance with **Rule 53.30**, must make the application not more than 7 days after the day on which notice of the Order was served on him.

**53.32**

The SCT may grant an application under **Rule 53.30** only if the applicant:

    (1) had a good reason for not attending the consultation; and

    (2) has a real prospect of success in the small claim.



**53.33**

If the SCT grants an application to set aside an Order under **Rule 53.30**:

    (1) the SCT will fix a new date for the consultation; and

    (2) the consultation may take place immediately after the hearing of the application to set aside the Order and may be dealt with by the SCT Judge who set aside the Order.

**53.34**

Unless the SCT Judge orders otherwise, the consultation shall take place in private.

**53.35**

If the claim is settled at the consultation, the SCT Judge conducting the consultation will issue a consent order, recording the terms of the settlement.

**53.36**

If the claim is not settled at the consultation, the SCT Judge may either:

    (1) fix a date for a further consultation; or

    (2) make arrangements for the hearing of the claim in accordance with RDC Rules 53.38 to 53.42 below.

**Re-allocation**





**53.37**

Where appropriate, the SCT Judge may order that the small claim be transferred to the Court of First Instance. When deciding whether to do so, the SCT Judge shall have regard to the following matters:

    (1) The financial value of the claim or of the subject of the claim;

    (2) The nature of the dispute;

    (3) The nature of the remedy sought;

    (4) The likely complexity of the facts, law or evidence;

    (5) The number of parties or likely parties;

    (6) The value of any counterclaim or other additional claim and the complexity of any matters relating to it;

    (7) The amount of oral evidence which may be required;

    (8) The importance of the claim to persons who are not parties to the proceedings;

    (9) The views expressed by the parties at the consultation; and

    (10) The circumstances of the parties, including their financial means.





**Preparation for the hearing**
**53.38**
If the claim is not settled at the consultation, unless he fixes a further consultation or
**Rule 53.37** applies, the SCT Judge will give directions for the preparation of the small
claim for trial.

**53.39**
The SCT Judge at the consultation will generally:

(1) fix a date for the final hearing of the small claim;

(2) inform the parties of the time allowed for the final hearing; and

(3) order each party to file and serve on every other party copies of any further
documents on which they intend to rely at the hearing.

**53.40**
A party may ask the SCT Judge at the consultation to give particular directions about
the conduct of the case.

**53.41**
In deciding whether to make an order for exchange of witness statements the SCT
Judge will have regard to the following:

(1) the amount in dispute in the proceedings;

(2) the nature of the matters in dispute; and

(3) the need for the parties to have access to justice without undue formality, cost
or delay.

**53.42**
No expert may give evidence, whether written or oral, at a hearing without the
permission of the SCT.

**Power Of The SCT To Add To, Vary Or Revoke Directions**
**53.43**
The SCT may add to, vary or revoke directions.

**Conduct Of The Hearing**
**53.44**
Unless the parties agree otherwise, the hearing of the claim will not be conducted by
the same SCT Judge who conducted the consultation.

**53.45**
The SCT Judge may adopt any method of proceeding at a hearing that he considers
to be fair.

**53.46**
Hearings will be informal.






**53.47**

The general rule is that a small claim hearing will be in private, unless the parties agree or the SCT Judge orders otherwise.

**53.48**

The strict rules of evidence do not apply.

**Strict rules of evidence do not apply**
**53.48.1**

The strict rules of evidence are disapplied to give consideration to the fact that the parties are often not represented and to seek to reduce costs (*Haya Spa v Harper Real Estate* [2016] DIFC SCT 150 at [53]). In those circumstances, where there was nothing to suggest the evidence is false and the statement was based on first-hand knowledge, it was permitted.

**53.49**

The SCT Judge may take evidence on oath but is not required to do so.

**53.50**

The SCT Judge may limit cross-examination.

**53.51**

The SCT Judge may in particular:



   (1) ask questions of all or any of the witnesses himself before allowing any other person to ask questions of any witnesses;

   (2) refuse to allow cross-examination of any witness until all the witnesses have given evidence in chief; and/or

   (3) limit cross-examination of a witness to a fixed time or to a particular subject or issue, or both.

**Representation at a hearing**
**53.52**

Natural persons

   (1) Unless the SCT Judge orders otherwise, a party should present his own case at a hearing.

   (2) A party may be represented at the hearing by a non-lawyer or lawyer[1] only after obtaining permission from the SCT which is to be given where it appears to the SCT on reasonable grounds that it is necessary in the circumstances.

   (3) If a party is allowed to be represented by a lawyer, or in house Counsel as permitted under **Rule 53.53**, the opposing party shall be informed and given the opportunity to be represented at the hearing.

   (4) Parties' attention is drawn to RDC Part 53.70.








**53.53**
Corporate parties

Any of its full-time officers or employees (including in house Counsel) may represent a corporate party.

**53.54**
The SCT will take a minute of or otherwise record by such means as the SCT Judge considers appropriate any hearing that takes place at the SCT. A party may obtain a copy of that minute or other recording on payment of the proper charges specified by the SCT.

**53.55**
It is not permissible for a party to use its own recording devices in the SCT.

**53.56**
The SCT Judge must give reasons for his decision.

**53.57**
The SCT Judge may give reasons for his judgment as briefly and simply as the nature of the case requires.

**53.58**
He will normally do so orally at the hearing, but he may give them later at a hearing either orally or in writing.

**53.59**
Where the SCT Judge decides the case without a hearing under **Rule 53.64**, the SCT Judge will prepare a note of his reasons and the SCT will send a copy to each party.

**Non-attendance of parties at a final hearing**
**53.60**
If a claimant does not attend the hearing, the SCT may strike out the claim.

**53.61**
If a defendant does not attend the hearing and the claimant does attend the hearing, the SCT may decide the claim on the basis of the evidence of the claimant alone.

**Decisions in absence of the defendant**
**53.61.1**
For an example of the SCT proceeding in a defendant's absence, see *Hasia v Howie* [2017] DIFC SCT 237. At [27], one element of the claim expressly succeeded because of the absence of any evidence to the contrary. Another recent example is *Imogen LLC v Ingolf Transport & Maintenance* [2017] SCT 353.

**53.62**
If neither party attends the hearing, the SCT may strike out the claim and any defence and counterclaim.



**53.63**

Nothing in these provisions affects the general power of the SCT to adjourn a hearing, for example where a party who wishes to attend a hearing on the date fixed cannot do so for a good reason.

**Disposal without a hearing**
**53.64**

The SCT may, if all parties agree, deal with the claim without a hearing.

**Setting Judgment aside and re-hearing**
**53.65**

A party who was not present at the hearing of the claim may apply for an order that a Judgment under this Part shall be set aside and the claim re-heard.

**53.66**

A party who applies for an order setting aside a Judgment under Rule 53.65 must make the application not more than 7 days after the day on which notice of the Judgment was served on him.

**53.67**

The SCT may grant an application under Rule 53.65 only if the applicant:

    (1) had a good reason for not attending the hearing; and

    (2) has a real prospect of success at the hearing.



**53.68**

If a Judgment is set aside:

    (1) the SCT must fix a new hearing for the claim; and

    (2) the hearing may take place immediately after the hearing of the application to set the Judgment aside and may be dealt with by the SCT Judge who set aside the Judgment.

**53.69**

A party may not apply to set aside a Judgment under this rule if the SCT dealt with the claim without a hearing under Rule 53.64.

**Costs in the SCT**
**53.70**

The SCT may not order a party to a small claim to pay a sum to another party in respect of that other party's costs, fees and expenses, including those relating to an appeal, except:

    (1) such part of any Court or Tribunal fees paid by that other party as the SCT may consider appropriate;

    (2) such further costs as the SCT may assess by the summary procedure and order to be paid by a party who has behaved unreasonably.





**Costs**
**53.70.1**
The usual "no costs" order can be disapplied where there is unreasonable conduct (RDC 53.70(2) as applied in, for example, *Diwan Capital AG v Diwan Capital Limited* [2010] DIFC CFI 018 (16 May 2011)). In that case, a party was sanctioned for "artificially constructing" a claim to bring it within the small claims limit as a test case for a larger sum. This was held to be an abuse of process and that a test case should only be instituted where there was a distinct and complete claim within the jurisdiction of the SCT (at [34]-[35]). In contrast, where a party has a larger claim but chooses to cap it at a level within the jurisdiction of the SCT and waive his rights over any higher claim, he is entitled to do so (*Heitor v Helah* [2017] DIFC SCT 141). The cap and waiver means there is no abuse of process.

**53.70.2**
Awards of the court fee also reflect conduct. Half the court fee has been awarded where a party exaggerated its claim (*Haya Spa v Harper* [2016] DIFC 150 at [120]-[122]) or where the amount claimed was well in excess of the amount awarded (*Ginny v Graeme Consulting* [2016] DIFC SCT 184 at [47]). In contrast, where the Claimant had "no choice" but to go to Court, the whole fee was awarded (*Hades v Hadassah* [2016] DIFC SCT 094 at [110]).

**53.71**
A party's rejection of an offer in settlement will not of itself constitute unreasonable behaviour under **Rule 53.70(2)**, but the SCT may take it into consideration when it is applying the unreasonableness test.

**Claim re-allocated from the SCT to the Court of First Instance**
**53.72**
Where a claim is transferred from the SCT to the Court of First Instance, **Rule 53.70** (costs in the SCT) will cease to apply after the claim has been transferred and the Costs Rules set out in RDC Parts 38–40 will apply from the date of transfer.

**Enforcement**
**53.73**
An Order of the SCT shall have the same status as an Order f the Court of First Instance of the DIFC Courts and may be enforced in accordance with the rules and procedures set out in RDC Parts 45–50.

**53.74**
Applications for the enforcement of an Order of the SCT should be made to the Court of First Instance.

**Appeals**
**53.75**
RDC Part 44 deals with appeals.

**53.76**
Attention is drawn to FRDC 44.36 / ARDC 44.10 which specifies that, subject to any Order of the SCT, an appellant should file his appellant's notice seeking permission to appeal with the Court of First Instance within 14 days (FRDC) or 21 days (ARDC) after the date of the decision which the appellant wishes to appeal.






**53.77**
Attention is also drawn to FRDC 44.143 / ARDC 44.118 which sets out the circumstances in which the Court of First Instance will allow an appeal from a decision of a Tribunal.

**53.78**
An appellant's Notice must be filed and served in Form P53/02.

**53.79**
Where the SCT dealt with the claim to which the appellant is a party under **Rule 53.64** without a hearing, an application for permission to appeal must be made to the Court of First Instance.

**53.80**
Where an appeal is allowed the Appeal Court will, if possible, dispose of the case at the same time without referring the claim to the lower court or ordering a new hearing. It may do so without hearing further evidence.

**53.81**
Permission to appeal an SCT Judgment may be made subject to conditions when the Judge granting permission considers it appropriate to do so. Such conditions may include the costs of appeal.

**Waiver of fees or fee deferral**
**53.82**
Where a party seeks an order that the Court fee associated with his claim should be waived:



    (1) He must state this in his claim form;

    (2) He must set out in his claim form or attach to his claim form a statement of the grounds on which he seeks waiver of the court fees;

    (3) The SCT Registrar shall decide on paper whether to waive the fees or defer payment of the fees until the end of the case;

    (4) Where Court fees are waived, the SCT Registry shall record that fact on the case file.



## PART 54
INSOLVENCY PROCEEDINGS

**I INTRODUCTORY PROVISIONS**
**Construction And Interpretation**
**54.1**
In this Part:

"block transfer order" has the meaning in **Rule 54.228**;

"the Companies Law" means the Companies Law 2009;

"the Court Law" means the DIFC Court Law 2004;

"insolvency proceedings" means any proceedings under the Law, the Regulations or this Part of these Rules;

"the Law" means the Insolvency Law 2009;

"office-holder" means in relation to insolvency proceedings any person who by virtue of any provision of the Law or the Regulations holds an office in relation to those proceedings;




"outgoing office-holder" has the meaning in **Rule 54.227**;

"the petitioner" or "the petitioning creditor" includes, in winding up, any person who has been substituted as such, or has been given carriage of the petition;

"the Regulations" means the Insolvency Regulations 2009 (and any reference to a numbered regulation is to that regulation within the Regulations);

"replacement office-holder" has the meaning in **Rule 54.227**; and

"substantive application" is that part of the application in **Rule 54.230(1)** and **54.230(2)**

**54.2**
For the purposes of this Part a "Company" includes:

**54.2.1** a Recognised Company in respect of which a winding-up order is sought or which is being wound up by the Court pursuant to Part 6 of the Law save as otherwise provided or the context otherwise requires; and

**54.2.2** a Foreign Company where and insofar as the context requires.

**54.3**
Other terms which have a defined meaning in the Law, the Companies Law, the Regulations and these Rules have the same meaning in this Part.



**Time Limits**
**54.4**
The provisions of **Rules** 2.11 to 2.15 (Time) apply, as regards computation of time, to anything required or authorised to be done in this Part.

**54.5**
The provisions of **Rule** 4.2(1) (The Court's general powers of management) apply so as to enable the Court to extend or shorten the time for compliance with anything required or authorised to be done by this Part.

**Power Of Judge, Registrar**
**54.6**
Save where these Rules provide otherwise, anything to be done under or by virtue of the Law, the Regulations or this Part of the Rules by, to or before the Court may be done by, to or before a Judge or a Registrar.

**II APPLICATIONS**
**Preliminary**
**54.7**
This Section applies to any application made to the Court under the Law or the Regulations except (save as otherwise provided):




    (1) a petition for a winding-up order under Article 50 of the Law (see Section III);

    (2) an application for the appointment of a provisional liquidator (see Section IV); and

    (3) an application for a cell receivership order (see Section V).

**Form And Contents Of Application**
**54.8**
Each application shall be in writing and shall state:

    (1) that the application is made under the Law or the Regulations (as the case may be);

    (2) the names of the parties;

    (3) the name of the Company which is the subject of the insolvency proceedings to which the application relates;

    (4) where the Court has previously allocated a reference number to the insolvency proceedings within which the application is made, that number;

    (5) the nature of the remedy or order applied for or the directions sought from the Court;

    (6) the names and addresses of the persons (if any) on whom it is intended to serve the application or that no person is intended to be served;



(7) where the Law, the Regulations or these Rules require that notice of the application is to be given to specified persons, the names and addresses of all those persons (so far as known to the applicant); and

(8) the applicant's address for service.

**Filing And Service Of Application**
**54.9**
On receipt of an application notice containing a request for a hearing the Court will notify the applicant of the time and date for the hearing of the application.

**54.10**
Unless the Court otherwise directs, the applicant shall serve a sealed copy of the application, endorsed with the time and date for the hearing, on the respondent named in the application (or on each respondent if more than one).

**54.11**
The Court may give any of the following directions:

(1) that the application be served upon persons other than those specified by the relevant provision of the Law, the Regulations or these Rules;

(2) that the giving of notice to any person may be dispensed with; and

(3) that notice be given in some way other than that specified in Rule 54.10.



**54.12**
An application must be served at least fourteen (14) calendar days before the date fixed for its hearing unless:

(1) the provision of the Law or the Regulations under which the application is made makes different provision; or

(2) the case is one of urgency to which Rule 54.13 applies.

**54.13**
Where the case is one of urgency, the Court may (without prejudice to its general power to extend or abridge time limits):

(1) hear the application immediately, either with or without notice to, or the attendance of, other parties; or

(2) authorise a shorter period of service than that provided for by Rule 54.12;

and any such application may be heard on terms providing for the filing or service of documents, or the carrying out of other formalities, as the Court thinks fit.







**Hearings Without Notice**
**54.14**
Where the relevant provisions of the Law or the Regulations do not require service of the application on, or notice of it to be given to, any person:

(1) the Court may hear the application as soon as reasonably practicable without fixing a time and date for the hearing as required by **Rule 54.9**; or

(2) it may fix a time and date for the hearing in which case Rules 54.9 to 54.13 shall apply to the extent that they are relevant;

but nothing in those provisions is to be taken as prohibiting the applicant from giving such notice if the applicant wishes to do so.

**Witness Statements**
**54.15**
Subject to Rules 54.20 to 54.21, where evidence is required by the Law or the Regulations as to any matter, such evidence may be provided in the form of a witness statement unless:

**54.15.1** in any specific case, the Act, a Regulation or a Rule makes different provision; or

**54.15.2** the Court otherwise directs.



**54.16**
Witness statements and affidavits must comply with the requirements of Part 29 (Evidence), save that photocopy documents may be used unless the Court orders otherwise.

**54.17**
Where in insolvency proceedings a witness statement is made by an office-holder, the witness statement must state:

(1) the capacity in which that office-holder is acting; and

(2) the address at which that office-holder works.

**54.18**
The Court may, on the application of any party to the matter in question order the attendance for cross-examination of the person making the witness statement.

**54.19**
Where, after such an order has been made, the person in question does not attend, that person's witness statement must not be used in evidence without the permission of the Court.

**Use Of Reports**
**54.20**
Unless the application involves other parties or the Court otherwise orders, a report may be filed in Court instead of a witness statement by:






(1) a liquidator;

(2) an administrative receiver;

(3) a receiver;

(4) a cell receiver; or

(5) a provisional liquidator.

**54.21**
In any case where a report is filed instead of a witness statement, the report shall be treated for the purposes of **Rule 54.22** and any hearing before the Court as if it were a witness statement.

**Filing And Service Of Witness Statements**
**54.22**
Unless the provision of the Law or the Regulations under which the application is made provides otherwise, or the Court otherwise allows:



(1) if the applicant intends to rely at the first hearing on evidence in a witness statement, he shall file the witness statement with the Court and serve a copy on the respondent (or on each respondent if more than one);

(2) where a respondent to an application intends to oppose it and to rely for that purpose on evidence in a witness statement, he shall file the witness statement with the Court and serve a copy on the applicant (or on each applicant if more than one) and on every other respondent; and



(3) the timetable for the filing and service of witness statements shall be as set out in **Rules 23.40** to **23.48**.

**Hearing Of Application**
**54.23**
Unless the Court otherwise directs, the application will be heard in public in accordance with Article 13 of the Court Law.

**54.24**
The jurisdiction of the Court to hear and determine an application may be exercised by the Registrar (to whom any application should be made in the first instance) unless:

(1) a direction to the contrary has been given; or

(2) it is not within the Registrar's power to make the order required (whether pursuant to Part 3 (Organisation of the Court) or otherwise).

**54.25**
Nothing in **Rule 54.24** precludes an application being made directly to the Judge in a proper case.



**54.26**

Where an application is made to the Registrar, the Registrar may refer to the Judge any matter which the Registrar thinks should properly be decided by the Judge, and the Judge may either dispose of the matter or refer it back to the Registrar with such directions as that Judge thinks fit.

**Adjournment Of Hearing And Directions**
**54.27**

The Court may adjourn the hearing of an application on such terms as it thinks fit.

**54.28**

The Court may at any time give such directions as it thinks fit as to:

    (1) service or notice of the application on or to any person;

    (2) whether particulars of claim and defence are to be delivered and generally as to the procedure on the application, including whether a hearing is necessary; and

    (3) the matters to be dealt with in evidence.

**54.29**

The Court may give directions as to the manner in which any evidence is to be adduced at a resumed hearing and in particular as to:

    (1) the taking of evidence wholly or partly by witness statement or orally;

    (2) the cross-examination of the maker of a witness statement; and

    (3) any report to be made by an office-holder.



**Enforcement Of Court Orders**
**54.30**

In any insolvency proceedings, orders of the Court may be enforced in the same manner as a judgment to the same effect in accordance with Part 45 (General Rules About Enforcement of Judgments and Orders).

**III PETITION FOR A WINDING-UP ORDER**
**Introductory Provisions**
**54.31**

The Rules in this Section apply in relation to a winding up by the Court under Part 4, Chapter 5, or Part 6 of the Law.

**54.32**

For the purposes of this Section, the term "a Company" includes a Recognised Company (with such modifications as may be necessary).

**Injunction To Restrain Presentation Or Advertisement Of Petition**
**54.33**

An application may at any time be made by a Company for an injunction to restrain a person from:



(1) presenting a petition for the winding up of a Company; or

(2) advertising a petition for the winding up of a Company.

**54.34**
Such application should be made in accordance with Section II of this Part.

**Presentation And Filing Of Petition**
**54.35**
The petition, verified by a statement of truth in accordance with Part 22 (Statements of Truth) and Rules 54.40 to 54.45, shall be filed in Court.

**54.36**
There must be annexed to the petition (and each copy thereof) a copy of any written demand which has been served on the Company by the petitioner pursuant to Article 51.1(a) of the Law and Regulation 5.1.

**54.37**
There shall be delivered with the petition:

(1) if the petitioner is a person other than the Company, one copy for service on the Company;

(2) if any office-holder has been appointed in respect of the Company or the assets of the Company (or any of them), one copy for service on each such office-holder; and

(3) if the Company is an Authorised Person and the petitioner is not the DFSA, one copy for service on the DFSA for notification purposes.

**54.38**
Each of the copies delivered shall have applied to it the seal of the Court, and shall be issued to the petitioner.

**54.39**
The Court shall fix a date and time for the hearing of the petition, and this shall be endorsed on any copy of the petition issued to the petitioner under **Rule 54.38**.

**Verification Of Petition**
**54.40**
The petition shall be verified by a statement of truth in such form as the Court may specify.

**54.41**
If the petition is in respect of debts due to different creditors, the debts to each creditor must be separately verified.

**54.42**
A statement of truth which is not contained in or endorsed upon the petition which it verifies must be sufficient to identify the petition and must specify:



(1) the Court reference number of the petition;

(2) the name and registered number of the Company; and

(3) the name of the petitioner.

**54.43**

The statement of truth must be made:

(1) by the petitioner (or if there are two or more petitioners, any one of them);

(2) by some person such as a director, company secretary or similar company officer, or a legal representative, who has been concerned in the matters giving rise to the presentation of the petition; or

(3) by some responsible person who is duly authorised by the petitioner to make the statement of truth and has the requisite knowledge of those matters.

**54.44**

Where the person making the statement of truth is not the petitioner himself, or one of the petitioners, he must in the statement of truth identify himself and state:

(1) the capacity in which, and the authority by which, he makes it; and

(2) the means of his knowledge of the matters verified in the statement of truth.

**54.45**

A statement of truth verifying more than one petition shall include in its title the names of the Companies to which it relates and shall set out, in respect of each Company, the statements relied on by the petitioner; and a clear and legible photocopy of the statement of truth must be filed with each petition which it verifies.

**Consent Of The Insolvency Practitioner Proposed For Appointment As Liquidator**

**54.46**

The petition shall contain the name and address of the insolvency practitioner whom the petitioner proposes should be appointed as liquidator or provisional liquidator of the Company in the event that a winding-up order is made by the Court and a statement that the person so nominated is (to the best of the petitioner's belief) a registered insolvency practitioner for the purposes of Article 89 of the Law and has consented to such appointment. There shall be attached to the statement of truth a copy of the written consent to such appointment signed by the insolvency practitioner so nominated.

**Service Of Petition**

**54.47**

Rules 54.48 to 54.52 apply as regards service of the petition on the Company (where the petitioner is other than the Company itself); and references to the petition are to a copy of the petition bearing the seal of the Court.

**54.48**



Subject as follows, the petition shall be served at the Company's registered office.

**54.49**
Service of the petition at the registered office may be effected in any of the following ways:

(1) it may be handed to a person who there and then acknowledges himself to be, or the best of the server's knowledge, information and belief is, a director or other officer, or employee, of the Company;

(2) it may be handed to a person who there and then acknowledges himself to be authorised to accept service of documents on the Company's behalf; or

(3) in the absence of any such person as is mentioned in paragraphs 54.49.1 or 54.49.2, it may be deposited at or about the registered office in such a way that it is likely to come to the notice of a person attending at the office.

**54.50**
If for any reason service at the registered office is not practicable, or the Company has no registered office, the petition may be served on the Company by leaving at the Company's last known principal place of business in such a way that it is likely to come to the attention of a person attending there, or by delivering it to the secretary or some director, manager or principal officer of the Company, wherever that person may be found.

**54.51**
If for any reason it is impracticable to effect service as provided by Rules 54.49 or 54.50, the petition may be served in such other manner as the Court may by order approve or direct.

**54.52**
Application for an order of the Court under Rule 54.51 may be made by an application without notice to any other party, supported by a witness statement, stating what steps have been taken to comply with Rules 54.49 and 54.50 and the reasons why it is impracticable to effect service as there provided.

**Proof Of Service**
**54.53**
Service of the petition must be proved by a certificate of service.

**54.54**
The certificate of service must be sufficient to identify the petition served and must specify:

(1) the name and registered office of the Company;

(2) the address of the registered office of the Company;

(3) the name of the petitioner;

(4) the court reference number of the petition;

(5) the date of the petition;

(6) whether the copy served was a sealed copy;

(7) the date on which service was effected; and

(8) the manner in which service was effected.

**54.55**
Where substituted service has been ordered under **Rule 54.51**, the certificate of service must have attached to it a sealed copy of the order.

**54.56**
The certificate of service must be filed in Court as soon as reasonably practicable after service, and in any event not less than five (5) business days before the hearing of the petition.

**Other Persons To Receive Copies Of Petition Or Entitled To Copy Of Petition**
**54.57**
If to the petitioner's knowledge any office-holder has been appointed in respect of the Company or the assets of the Company (or any of them), a copy of the petition shall be sent by him to such office-holder.



**54.58**
If to the petitioner's knowledge the Company is an Authorised Person and the petitioner is not the DFSA itself, a copy of the petition shall be sent by the petitioner to the DFSA.

**54.59**
A copy of the petition which is required to be sent pursuant to Rules 54.57 or 54.58 shall be despatched on the next business day after the day on which the petition is served on the Company.

**54.60**
Subject to any order of the Court to the contrary every director, contributory and creditor of the Company is entitled to be furnished by the legal representative of the petitioner (or by the petitioner himself, if acting in person) with a copy of the petition within two (2) business days after requiring it on payment of reasonable copying charges.

**Advertisement Of Petition**
**54.61**
The petitioner shall cause the petition to be advertised, in accordance with Regulation 5.3, in the English language newspaper(s) and in the Arabic language newspaper(s) as the Court may by Practice Direction designate.

**54.61.1**
See Practice Direction 3 of 2011

**54.62**



Unless the Court otherwise directs, the notice must be made to appear:

(1) if the petitioner is the Company itself, not less than seven (7) business days before the day appointed for the hearing; or

(2) otherwise, not less than seven (7) business days after service of the petition on the Company, nor less than seven (7) business days before the day so appointed.

**54.63**
In addition to the standard contents (as set out in Section VII), the notice must state:

(1) that a petition has been presented for the winding up of the Company;

(2) the name and address of the petitioner;

(3) the date on which the petition was presented;

(4) the date and time fixed for the hearing of the petition;

(5) the name and address of the petitioner's legal representative (if any);

(6) the name and address of the insolvency practitioner whom the petitioner proposes for appointment as liquidator; and

(7) that any person intending to appear at the hearing (whether to support or oppose the petition or the appointment of the insolvency practitioner proposed for appointment as liquidator) must give notice of that intention in accordance with Rules 54.70 to 54.73.

**54.64**
Non-compliance with Rules 54.61 to 54.63, is a ground on which the Court may, if it thinks fit, dismiss the petition.

**Certificate Of Compliance**
**54.65**
The petitioner or his legal representative shall, at least five (5) business days before the hearing of the petition, file in Court a certificate of compliance with the Rules, in such form as the Court may specify, relating to service and advertisement.

**54.66**
The certificate shall show:

(1) the name and registered office of the Company;

(2) the name of the petitioner;

(3) the court reference number of the petition;

(4) the date of presentation of the petition;

(5) the date and time fixed for the hearing; and

(6) the date or dates on which the petition was served and notice of it was given in compliance with the Rules.

**54.67**
A copy or, where this is not reasonably practicable, a description of the form and content of any notice given shall be filed in Court with the certificate.

**54.68**
Non–compliance with Rules 54.65 to 54.67 is a ground on which the Court may, if it thinks fit, dismiss the petition.

**Permission For Petitioner To Withdraw**
**54.69**
If at least five (5) business days before the hearing the petitioner, on an application without notice to any other party in such form as the Court may specify, satisfies the Court that:

(1) the petition has not been advertised;

(2) no notices (whether in support or opposition) have been received by him with reference to the petition; and

(3) the Company consents to an order being made under this Rule;

the Court may order that the petitioner has permission to withdraw the petition on such terms as to costs as the parties may agree or the Court may think fit.

**Notice Of Appearance**
**54.70**
Every person who intends to appear on the hearing of the petition shall give to the petitioner notice of his intention in accordance with Rules 54.71 to 54.73 in such form as the Court may specify.

**54.71**
The notice shall specify:

(1) the name and address of the person giving it, and any telephone number and reference which may be required for communication with him or with any other person (to be also specified in the notice) authorised to speak or act on his behalf;

(2) whether his intention is to support or oppose the petition;

(3) whether or not he objects (in the event that a winding-up order is made by the Court) to the appointment as liquidator or provisional liquidator of the insolvency practitioner proposed for such appointment by the petitioner;

(4) whether, if he does so object, he proposes that (in the event that a winding-up



order is made by the Court) some other insolvency practitioner be appointed liquidator or provisional liquidator; and

(5) the amount and nature of his debt (if any).

**54.72**
The notice shall be sent to the petitioner at the address shown for him in the Court records or in the advertisement of the petition required by Regulation 5.3, or it may be sent to his legal representative.

**54.73**
The notice shall be sent so as to reach the addressee not later than 4 p.m. on the business day before that which is appointed for the hearing (or, where the hearing has been adjourned, for the adjourned hearing).

**54.74**
A person who fails to comply with Rules 54.70 to 54.73 may appear on the hearing of the petition only with the permission of the Court.

**List Of Appearances**
**54.75**
The petitioner shall prepare for the Court a list of the persons (if any) who have given notice under Rule 54.70 in such form as the Court may specify, specifying their names and addresses and (if known to him) their respective legal representatives.

**54.76**
Against the name of each creditor in the list it shall be stated whether his intention is to support the petition, or to oppose it and whether he objects (in the event that a winding-up order is made by the Court) to the appointment as liquidator or provisional liquidator of the insolvency practitioner proposed for such appointment by the petitioner.

**54.77**
On the date appointed for the hearing of the petition, a copy of the list shall be lodged at Court or handed to the Court before the commencement of the hearing.

**54.78**
If any permission is given under Rule 54.74, the petitioner shall add to the list the same particulars in respect of each person to whom permission has been given.

**Witness Statement In Opposition**
**54.79**
If the Company intends to oppose the petition, it shall file in Court a witness statement in opposition not less than five (5) business days before the date fixed for the hearing.

**54.80**
A copy of the witness statement shall be sent by the Company to the petitioner forthwith after filing.

**Adjournment Of Hearing Of Petition**





**54.81**

If the Court adjourns the hearing of the petition, unless the Court otherwise directs, the petitioner must forthwith send:

(1) to the Company; and

(2) where any creditor has given notice under Rule 54.70 but was not present at the hearing, to that creditor;

notice of the order adjourning the petition, stating the date and time of the adjourned hearing.

**Substitution Of Creditor For Petitioner**
**54.82**

Where a person petitions and is subsequently found not entitled to do so, or where the petitioner:

(1) fails to advertise his petition within the time prescribed by the Regulations or this Part of the Rules or such extended time as the Court may allow;

(2) consents to withdraw his petition, or to allow it to be dismissed, consents to an adjournment, or fails to appear in support of his petition when it is called on in Court on the day originally fixed for the hearing, or on a day to which it is adjourned; or



(3) appears, but does not apply for an order in the terms of the prayer of his petition;

the Court may, on such terms as it thinks just, substitute as petitioner any person who in its opinion would have a right to present a petition, and who is desirous of prosecuting it.

**54.83**

An order of the Court under Rule 54.82 may, where a petitioner fails to advertise his petition within the time prescribed by the Regulations or this Part of the Rules, or consents to withdraw his petition, be made at any time.

**The Winding-Up Order**
**54.84**

Rules 54.85 to 54.91 apply when a winding-up order has been made by the Court.

**54.85**

A winding-up order shall be in such form as the Court may specify, subject to any amendments or further provisions as the Court considers appropriate.

**54.86**

The petitioner shall, not later than the business day following that on which the order is made, lodge with the Court a draft of the form in which he proposes the order be drawn up; and the petitioner and every other person who has appeared on the hearing of the petition shall leave at the Court all the documents required for enabling the order to be completed as soon as reasonably practicable.

**54.87**

It is not necessary for the Court to appoint a date and time for any person to attend to settle the order, unless in any particular case the special circumstances make an appointment necessary.

**54.88**
A winding-up order must name a person as the liquidator or provisional liquidator in respect of the conduct of the winding-up in accordance with Article 58(1) of the Law and Regulation 5.4(2).

**54.89**
Three copies of the winding-up order, sealed with the seal of the Court, shall be sent as soon as reasonably practicable by the Court to the liquidator or provisional liquidator (as the case may be) in respect of the conduct of the winding-up.

**54.90**
The liquidator or provisional liquidator shall cause:

    (1) a sealed copy of the order to be served on the Company by prepaid letter addressed to it at its registered office (if any) or, if there is no registered office, at its principal or last known principal place of business; and

    (2) a sealed copy of the order to be sent to the Registrar of Companies.

**54.91**
Upon the making of a winding-up order, the Court shall forthwith in accordance with Regulation 5.4(1):

    (1) give notice of the fact to the Company, the petitioner, the DFSA (in the case of an Authorised Person) and any other person represented at the hearing of the petition; and

    (2) cause notice of the fact that the order has been made to be advertised, in accordance with Regulation 5.3, in the English language newspaper(s) and in the Arabic language newspaper(s) as the Court may by Practice Direction designate.

**54.91.1**
See Practice Direction 3 of 2011

**Dismissal Of The Petition**
**54.92**
Unless the Court otherwise directs, when a petition is dismissed, the petitioner shall forthwith give notice of the dismissal. Such notice shall be advertised in the same manner as the petition was advertised under **Rules 54.61** to **54.64** or otherwise as the Court may direct.

**54.93**

The notice advertised under **Rule 54.92** must state:

(1) that a petition for the winding-up of the Company has been dismissed;

(2) the name and address of the petitioner;

(3) the date on which the petition was presented;

(4) the date on which the petition was advertised; and

(5) the date of the hearing at which the petition was dismissed.

**54.94**
Where the petitioner is not the Company itself and the petitioner has not complied with **Rules 54.92** and **54.93** within 21 days of the date of the hearing at which the petition was dismissed, the Company may advertise notice of the dismissal itself. Where the Company advertises notice of the dismissal itself, then unless the Court orders otherwise:

(1) the petitioner shall pay to the Company the costs reasonably incurred by the Company in advertising such notice; and

(2) the amount of the costs so payable, unless agreed between the Company and the petitioner, must be decided by detailed assessment and the Company may commence detailed assessment proceedings in accordance with Part 40 (Procedure for Detailed Assessment of Costs).

**54.95**
**Rules 54.92** to **54.94** above do not apply in the case where a petition is withdrawn pursuant to **Rule 54.69** above.

**Applications To Stay Winding Up**
**54.96**
The Court may at any time after an order for winding up, on the application of the provisional liquidator, the liquidator or the DFSA or any creditor or contributory, and on proof to the satisfaction of the Court that all proceedings in the winding up ought to be stayed make an order staying the proceedings, either altogether or for a limited time, on such terms and conditions as the Court thinks fit.

**54.97**
The Court may, before making an order, give notice of the application to the DFSA, who may furnish the Court with a report with respect to any facts or matters which are in its opinion relevant to the application.

**54.98**
A copy of every order made staying a winding up shall forthwith be forwarded by the Company to the Registrar of Companies.

**IV PROVISIONAL LIQUIDATORS**



**Appointment Of Provisional Liquidators**
**54.99**
An application to the Court for the appointment of a provisional liquidator under Article 59 of the Law may be made by:

(1) the petitioner;

(2) a creditor of the Company;

(3) the Company;

(4) the DFSA;

(5) an administrative receiver; and

(6) any other person who under any enactment would be entitled to present a petition for the winding-up of the Company.

**54.100**
The application must be supported by a witness statement stating:

(1) the grounds on which it is proposed that a provisional liquidator should be appointed;

(2) that the person proposed to be appointed has consented to act and, to the best of the applicant's belief, is a registered insolvency practitioner for the purposes of Article 89 of the Law;

(3) whether to the applicant's knowledge:

(a) there has been proposed or is in force for the Company a voluntary arrangement under Part 2 of the Law;

(b) an administrative receiver is acting in relation to the Company;

(c) a liquidator has been appointed for the Company's voluntary winding-up; or

(d) a cell receivership order under Regulation 8.2 has been made in respect of the Company; and

(4) the applicant's estimate of the value of the assets in respect of which the provisional liquidator is to be appointed, and the facts and bases upon which such estimate is made.

**54.101**
The Court may on the application, if satisfied that sufficient grounds are shown for the appointment, make it on such terms as it thinks fit.

**Notice And Advertisement Of Appointment**







**54.102**

Where a provisional liquidator has been appointed, the Court shall as soon as reasonably practicable give notice of the fact to the provisional liquidator.

**54.103**

Unless the Court otherwise directs, on receipt of the notice of appointment, as soon as reasonably practicable the provisional liquidator shall give notice of that appointment by advertisement once in the English language newspaper(s) and in the Arabic language newspaper(s) as the Court may by Practice Direction designate.

**54.103.1**

See Practice Direction 3 of 2011

**54.104**

In addition to the standard contents (as set out in Section VII), the notice under **Rule 54.103** (to be in such form as the Court may specify) must state:

(1) that a provisional liquidator has been appointed; and

(2) the date of the appointment.

**Order Of Appointment Of Provisional Liquidator**
**54.105**

The order appointing the provisional liquidator shall specify the functions to be carried out by him in relation to the Company's affairs.



**54.106**

The Court shall as soon as reasonably practicable after the order is made, send sealed copies of the orders as follows:

(1) three copies to the person appointed as provisional liquidator; and

(2) if there is an administrative receiver or cell receiver acting in relation to the Company, one copy to him.

**54.107**

Of the three copies of the order sent to the provisional liquidator under **Rule 54.106(1)**:

(1) one copy shall be sent by him to the Company or, if a liquidator has been appointed for the Company's voluntary winding-up, to him; and

(2) one shall be sent to the Registrar of Companies.

**Security**
**54.108**

The cost of providing the security required under the Law upon the appointment of a provisional liquidator shall be paid in the first instance by the provisional liquidator; but:

(1) if a winding-up order is not made, the person so appointed is entitled to be



reimbursed out of the property of the Company, and the Court may make an order accordingly; and

(2) if a winding-up order is made, he is entitled to be reimbursed as an expense of the liquidation in the prescribed order of priority.

### 54.109
If the provisional liquidator fails to give or keep up his security, the Court may remove him and make such order as it thinks fit as to costs.

### 54.110
If an order is made under **Rule 54.109** removing the provisional liquidator, or discharging an order appointing him, the Court shall give directions as to whether any, and if so what, steps should be taken for the appointment of another person in his place.

### Remuneration
### 54.111
The remuneration of the provisional liquidator shall be fixed by the Court from time to time on his application.

### 54.112
In fixing his remuneration, the Court shall take into account:

(1) the time properly given by him (as provisional liquidator) and his staff in attending to the Company's affairs;

(2) the complexity (or otherwise) of the case;

(3) any respects in which, in connection with the Company's affairs, there falls on the provisional liquidator any responsibility of an exceptional kind or degree;

(4) the effectiveness with which the provisional liquidator appears to be carrying out, or to have carried out, his duties; and

(5) the value and nature of the property with which he has had to deal.

### 54.113
Without prejudice to any order the Court may make as to costs, the provisional liquidator's remuneration shall be paid to him, and the amount of any expenses incurred by him reimbursed:

(1) if a winding-up order is not made, out of the property of the Company; and

(2) if a winding-up order is made, as an expense of the liquidation, in the prescribed order of priority.

### 54.114
Unless the Court otherwise directs, in a case falling within **Rule 54.113(1)** above the provisional liquidator may retain out of the company's property such sums or property as are or may be required for meeting his remuneration and expenses.

### Termination Of Appointment



**54.115**

The appointment of the provisional liquidator shall be terminated without further order on the appointment of a liquidator and may be terminated by the Court on his application or on that of any of the persons specified in **Rule 54.99**.

**54.116**

If the provisional liquidator's appointment terminates, whether in consequence of the dismissal of the winding-up petition or otherwise, the Court may give such directions as it thinks fit with respect to the accounts of his administration or any other matters which it thinks appropriate.

**54.117**

Notice of termination of the appointment of a provisional liquidator must be given by the provisional liquidator, unless the termination is on the making of a winding-up order or the Court otherwise directs. Such notice must as soon as reasonably practicable be:

(1) sent to the Registrar of Companies;

(2) sent to the DFSA if the Company is an Authorised Person; and

(3) advertised in the same manner as the appointment of the provisional liquidator was advertised pursuant to **Rule 54.103**.

**54.118**

In addition to the standard contents (as set out in Section VII), a notice under **Rule 54.117** must state:

(1) that the appointment as provisional liquidator has terminated;

(2) the date of that termination; and

(3) that the appointment terminated otherwise than (if it be the case) on the making of a winding-up order.

**V APPLICATION FOR A CELL RECEIVERSHIP ORDER**
**Scope**
**54.119**

This Section applies in relation to the making of a cell receivership order under Regulation 8.2.

**Application For A Cell Receivership Order**
**54.120**

An application for a cell receivership application shall be in such form as the Court may specify.

**54.121**

If made by the Company or by its directors, an application for a cell receivership order shall state the name of the Company and its address for service, which (in the absence of special reasons to the contrary) is that of the Company's registered office.

**54.122**



If the application is made by the directors, it shall state that it is made under Regulation 8.3.1(b); but from and after making it is to be treated for all purposes as the application of the Company.

**54.123**

If made by any other person (including the DFSA), an application for a cell receivership order shall state the name and address for service of the applicant.

**54.124**

The application shall contain a statement of the applicant's belief that the cellular assets attributable to a particular cell of the Company are or are likely to be insufficient to discharge the claims of creditors in respect of that cell.

**Statement By Proposed Cell Receiver**
**54.125**

There shall be attached to the application a written statement which shall be in such form as the Court may specify by each of the persons proposed to be a cell receiver stating:

    (1) that he consents to accept appointment;

    (2) details of any prior professional relationship(s) that he has had with the applicant or the Company to which he is to be appointed as cell receiver; and

    (3) his opinion that it is reasonably likely that one or more of the purposes set out in Regulation 8.2.3 would be achieved.

**Witness Statement In Support Of Cell Receivership Application**
**54.126**

Where it is proposed to apply to the Court for a cell receivership order to be made in relation to a Company, a witness statement complying with Rules 54.127 to 54.129 must be prepared, with a view to its being filed at Court in support of the application.

**54.127**

If the application is to be made by the Company or by its directors, the witness statement shall be made by one of the directors, or the secretary of the Company, stating himself to make it on behalf of the company or, as the case may be, on behalf of the directors.

**54.128**

If the application is to be made by any other person, the witness statement shall be made by the applicant or a person acting under the authority of the applicant, and there must be stated in the witness statement his means of knowledge of the matters to which the witness statement relates and the nature of his authority (if applicable).

**54.129**



The witness statement in support of an application for a cell receivership order shall contain:

(1) a statement of the financial position in respect of that cell, specifying (to the best of the applicant's knowledge and belief) the assets and liabilities of the cell, including contingent and prospective liabilities;

(2) details of any security known or believed to be held by creditors in respect of that cell;

(3) details of any debt or liability owing to the applicant by that cell and any security held by the applicant in respect of that cell;

(4) details of the nature of the business of that cell and, if different, the business of the Company as a whole;

(5) details of any insolvency proceedings in relation to that cell or to the Company, including any petition that has been presented for the winding up of the Company or any administrative receiver who has been appointed in respect of the Company so far as within the immediate knowledge of the applicant; and

(6) any other matters which, in the opinion of those intending to make the application for a cell receivership order, will assist the Court in deciding whether to make such an order, so far as lying within the knowledge or belief of the witness.

**Filing Of Application**
**54.130**
The application (and all supporting documents) shall be filed with the Court, with a sufficient number of copies for service and use as provided by **Rule 54.134**.

**54.131**
Each of the copies filed shall have applied to it the seal of the Court and be issued to the applicant.

**54.132**
The Court shall fix a venue for the hearing of the application and this shall be endorsed on each copy of the application issued under **Rule 54.131**.

**54.133**
After the application is filed, it is the duty of the applicant to notify the Court in writing of the existence of any insolvency proceedings in relation to the Company as soon as he becomes aware of them.

**Service Of Application**
**54.134**
The application shall be served in addition to those persons referred to in Regulation 8.3.3:

(1) if there is pending a petition for the winding-up of the Company, on the petitioner (and also on the provisional liquidator) if any;

(2) on the person proposed as the cell receiver; and






(3) if a supervisor of a voluntary arrangement under Part 2 of the Law has been appointed, on him.

In this Rule, references to the application are to a copy of the application issued by the Court under Rule 54.131 together with the witness statement required by Rule 54.126 and the documents attached to the application.

**Notice To Officers Charged With Execution Of Legal Process, Etc.**
**54.135**
The applicant shall as soon as reasonably practicable after filing the application give notice of its being made to:

(1) any enforcement officer or other officer who to his knowledge is charged with an execution or other legal process either against that cell of the Company or its property or against the Company or its property generally; and

(2) any person who to his knowledge has distrained either against that cell of the Company or its property or against the Company or its property generally.

**Manner In Which Service Is To Be Effected**
**54.136**
Service of the application in accordance with 54.134 shall be effected by the applicant, or his legal practitioner, or by a person instructed by him or his legal practitioner, not less than five (5) business days before the date fixed for the hearing.

**54.137**
Service shall be effected as follows:

(1) on the Company (subject to Rule 54.138 below), by delivering the documents to its registered office;

(2) on any other person (subject to Rule 54.139 below), by delivering the documents to his proper address; or

(3) in either case, in such other manner as the Court may direct.

**54.138**
If delivery to a Company's registered office is not practicable, service may be effected by delivery to its last known principal place of business.

**54.139**
For the purposes of Rule 54.137 (2) above, a person's proper address is any which he has previously notified as his address for service; but if he has not notified any such address, service may be effected by delivery to his usual or last known address.

**Proof Of Service**





**54.140**

Service of the application must be verified by a certificate of service. The certificate of service must be sufficient to identify the application served and must specify:

(1) the name and registered number of the Company;

(2) the address of the registered office of the Company;

(3) the name of the applicant;

(4) the court reference number in respect of the application;

(5) the date of the application;

(6) whether the copy served was a sealed copy;

(7) the date on which service was effected; and

(8) the manner in which service was effected.

**54.141**

The certificate of service shall be filed with the Court as soon as reasonably practicable after service, and in any event not less than one (1) business day before the hearing of the application.



**Application Where Company In Liquidation Or Administrative Receivership**
**54.142**

Where an application is made for a cell receivership order under Regulation 8.2.4, the witness statement required by Rule 54.126 shall contain:

(1) full details of the existing insolvency proceedings, including the name and address of the liquidator or administrative receiver, the date he was appointed and by whom;

(2) the reasons why it has subsequently been considered appropriate that an application for a cell receivership order should be made;

(3) all other matters that would, in the opinion of the applicant, assist the Court in considered the need to make provisions in respect of matters arising in connection with the liquidation or administrative receivership; and

(4) the details required in Rule 54.129.

**The Hearing**
**54.143**

At the hearing of an application for a cell receivership order, any of the following persons may appear or be represented:

(1) the applicant;

(2) any of the persons specified in Regulation 8.3.3; and



(3) with the permission of the Court, any other person who appears to have an
interest justifying his appearance.

**54.144**
If the Court makes a cell receivership order, it shall be in such form as the Court may
specify.

**54.145**
If the Court makes a cell receivership order, the costs of the applicant and of any
person whose costs are allowed by the Court, are payable as an expense of the cell
receivership.

**54.146**
Where the Court makes a cell receivership order in relation to a Company upon an
application under Regulation 8.2.4, the Court shall include in the order (i) such provision
as the Court thinks fit with respect to matters arising in connection with the liquidation
or administrative receivership and (ii) such other provisions as the Court shall think fit.

**Notice Of Cell Receivership Order**
**54.147**
If the Court makes a cell receivership order, it shall as soon as reasonably practicable
send two sealed copies of the order to the person who made the application.

**54.148**
The applicant shall send a sealed copy of the order as soon as reasonably practicable
to:

(1) the person appointed as cell receiver; and

(2) if the Company is an Authorised Person, the DFSA.

**54.149**
If the Court makes an order under Regulation 8.3.2, it shall give directions as to the
persons to whom, and how, notice of that order is to be given.

**VI SERVICE OF COURT DOCUMENTS**
**Scope**
**54.150**
Subject to Rule 54.151, this Section applies in relation to the service of:

(1) petitions;

(2) applications;

(3) documents relating to petitions or applications; and

(4) court orders;

which are required to be served by any provision of the Law, the Regulations or this Part
of the Rules ("court documents").

**54.151**

This Section does not apply to the service of:

> (1) a winding up petition;

> (2) any document relating to such a petition; or

> (3) a winding-up order.

### Part 9 Service
### 54.152
Except where different provision is made in this Part and subject to any direction or order of the Court, Part 9 (Service) applies in relation to the service of court documents, whether within or outside the jurisdiction.

### 54.153
For the purpose of the application by Rule 54.152 of Part 9 (Service) to the service of documents in insolvency proceedings an application commencing insolvency proceedings or an application within insolvency proceedings against a respondent is to be treated as a claim form.

### Service Of Orders Staying Proceedings
### 54.154
Where in insolvency proceedings the Court makes an order staying any action, execution or other legal process against the property of a Company, service of the order may be effected by sending a sealed copy of the order to whatever is the address for service of the party having the carriage of the proceedings to be stayed.

### Service On Joint Office-Holders
### 54.155
Where there are joint office-holders in insolvency proceedings, service on one of them is to be treated as service on all of them.

### VII CONTENT OF NOTICES TO BE ADVERTISED
### 54.156
Where under the Law, the Regulations or this Part of the Rules a notice is to be advertised, in addition to any content specifically required by the Law, the Regulations or any other provision of this Part of the Rules, the content of such a notice must be as set out in this Section.

### 54.157
All notices published must specify insofar as it is applicable in relation to the particular notice:

> (1) the name and postal address of the office-holder acting in the proceedings;

> (2) the capacity in which the office-holder is acting and the date of appointment;

> (3) either an e-mail address, or a telephone number, through which the office-holder may be contacted;

> (4) the name of any person other than the office-holder (if any) who may be



contacted regarding the proceedings;

(5) the Court name and any number assigned to the proceedings by the Court;

(6) the registered name and number of the Company;

(7) the registered office of the Company or, in the case of a Recognised Company, its place of business in the DIFC or, in the case of any other Foreign Company, its registered office and, if different, its principal place of business;

(8) any principal trading address if this is different from its registered office;

(9) any name under which it was registered in the 12 months prior to the date of the commencement of the proceedings which are the subject of the notice; and

(10) any name or style (other than its registered name) under which it:

   (a) the Company carried on business; or

   (b) any debt owed to a creditor was incurred.

**54.158**
Information required under this Section to be included in a notice to be advertised may be omitted if it is not reasonably practicable to obtain it.

**VIII COSTS AND DETAILED ASSESSMENT**
**Scope**
**54.159**
This Section applies in relation to costs in connection with insolvency proceedings.

**54.160**
In this Section a reference to costs includes charges and expenses.

**Requirement To Assess Costs By The Detailed Procedure**
**54.161**
Where the costs of any person are payable as an expense out of the insolvent estate in accordance with the Law, the Regulations or by order of the Court, the amount payable must be decided by detailed assessment unless agreed between the office-holder and the person entitled to payment.

**54.162**
In the absence of such agreement as is mentioned in **Rule 54.161**, the office-holder:

(1) may serve notice requiring that person to commence detailed assessment proceedings in accordance with Part 40 (Procedure for Detailed Assessment of Costs); and

(2) must serve such notice (except in an administrative receivership) where a liquidation or creditors' committee formed in relation to the insolvency proceedings resolves that the amount of the costs must be decided by detailed assessment.

**54.163**

569





Where the costs of any person employed by an office-holder in insolvency proceedings are required to be decided by detailed assessment under an order of the Court directing that those costs are to be paid otherwise than out of the insolvent estate, the Registrar shall note on the final costs certificate by whom, or the manner in which, the costs are to be paid.

**54.164**

Where an office-holder is made a party to any proceedings on the application of another party to the proceedings, he shall not be personally be liable for costs unless the Court otherwise directs.

**54.165**

Nothing in Rules 54.161 to 54.164 above shall affect the power of the Court to order an immediate assessment of the costs of any proceedings, or part of any proceedings, before the Court pursuant to Part 38 (General Rules About Costs).

**Application For Costs**
**54.166**

This Section applies where a party to, or person affected by, any proceedings in an insolvency:

    (1) applies to the Court for an order allowing his costs, or part of them, incidental to the proceedings; and

    (2) that application is not made at the time of the proceedings.



**54.167**

The person concerned shall serve a sealed copy of his or her application on the office-holder.

**54.168**

The office-holder may appear on an application to which Rule 54.166 applies.

**54.169**

No costs of or incidental to the application shall be allowed to the applicant unless the Court is satisfied that the application could not have been made at the time of the proceedings.

**Costs And Expenses Of Witnesses**
**54.170**

Except as directed by the Court, no allowance as a witness in any examination or other proceedings before the Court shall be made to any officer of the insolvent Company to which the proceedings relate.

**54.171**

A person presenting any petition in a Company insolvency shall not be regarded as a witness on the hearing of the petition, but the Registrar may allow his expenses of travelling and subsistence.

**Final Costs Certificate**

570





**54.172**

A final costs certificate of the Registrar is final and conclusive as to all matters which have not been objected to in the manner provided for under these Rules.

**54.173**

Where it is proved to the satisfaction of the Registrar that a final costs certificate has been lost or destroyed, he may issue a duplicate.

**IX APPEALS IN INSOLVENCY PROCEDURES**
**Appeals And Reviews Of Court Orders**
**54.174**

The Court may review, rescind, or vary any order made by it in the exercise of its jurisdiction under this Part.

**54.175**

Appeals in proceedings under this Part lie as follows:

(1) to a Judge of the Court of First Instance where the decision appealed against is made by the Registrar; and

(2) to the Court of Appeal from a decision of a Judge of the Court of First Instance.

**54.176**

Any application for the rescission of a winding-up order shall be made within five (5) business days after the date on which the order was made.

**Procedure On Appeal**
**54.177**

An appeal against a decision at first instance may only be brought with either the permission of the Court which made the decision or the permission of the Court which has jurisdiction to hear the appeal.

**54.178**

An appellant must file an appeal notice (within the meaning of Part 44 (Appeals)) within 21 calendar days after the date of the decision of the Court that the appellant wishes to appeal.

**54.179**

Subject to **Rules** 54.174 to **54.178**, the procedure in Part 44 (Appeals) applies to any appeal to which this Section applies.

**X PRINCIPAL COURT RULES AND PRACTICE TO APPLY**
**Principal Court Rules And Practice To Apply**
**54.180**

The provisions of the Rules in the first column of the table in this Rule (including any related practice directions) apply to insolvency proceedings by virtue of the provisions of the Rules in this Part set out in the second column with any necessary modifications, except so far as inconsistent with these Rules:






| Provisions of the Rules | Provisions of this Part |
|---|---|
| Part 19 (Further Information) | Rule 54.182(1) |
| Part 28 (Production of Documents) | Rule 54.182(2) |
| Part 29 (Evidence) | Rule 54.16 |
| Part 33 (Payments into Court) | Rule 54.184 |
| Part 40 (Procedure for Detailed Assessment of Costs) | Rule 54.94(2) and 54.162(1) |
| Part 44 (Appeals) | Section IX |
| Part 45 (General Rules About Enforcement of Judgments and Orders) | Rule 54.30 |

**54.181**

The provisions of the other Parts of these Rules (including any related practice directions) not referred to in the table in Rule 54.180 apply to proceedings under the Law, the Regulations and this Part of the Rules with any necessary modifications, except so far as inconsistent with the Rules contained in this Part.

**Further Information And Disclosure**
**54.182**

Any party to insolvency proceedings may apply to the Court for an order:



(1) that any other party:

   (a) clarify any matter which is in dispute in the proceedings; or

   (b) give additional information in relation to any such matter,

in accordance with Part 19 (Further Information); or

(2) to obtain documents from any other party in accordance with Part 28 (Production of Documents).

**54.183**

An application under Rule 54.182 may be made without notice being given to any other person.

**Payment Into Court**
**54.184**

Part 33 (Payments into Court) applies to money lodged in Court under the Law, the Regulations or otherwise in relation to an insolvency proceeding under this Part.

**No Determination Of Insolvency Proceedings By The Small Claims Tribunal**
**54.185**

No insolvency proceedings may be issued in or be transferred to the Small Claims Tribunal under Part 53 (The Small Claims Tribunal) and Part 53 shall not apply to insolvency proceedings.






**Office Copies Of Documents**
**54.186**
Any person who has under the Law, Regulations of this Part of the Rules the right to inspect the Court file of insolvency proceedings may require the Court to provide him with an office copy of any document from the file.

**54.187**
A person's rights under **Rule 54.186** may be exercised on his behalf by his legal representative.

**54.188**
An office copy provided by the Court under **Rule 54.186** shall be in such form as the Court may specify, and shall bear the Court's seal.

**Formal Defects**
**54.189**
No insolvency proceedings shall be invalidated by any formal defect or by any irregularity, unless the Court before which objection is made considers that substantial injustice has been caused by the defect or irregularity, and that the injustice cannot be remedied by any order of the Court.

**XI INQUIRY INTO COMPANY'S DEALINGS**
**Introduction**
**54.190**
This Section applies to applications to the Court for an order under Article 25(3) of the Law (Powers of liquidator) or Articles 94 to 96 of the Law (Inquiry into Company's dealings).



**Form And Contents Of Application**
**54.191**
An application for such an order shall be in writing specifying the grounds on which it is made.

**54.192**
The application must specify the name of the respondent.

**54.193**
It shall be stated whether the application is for an order that the respondent:

(1) appear before the Court;

(2) submit witness statements (and, if so, the particulars to be given of the matters to be included);

(3) produce books, papers or other records (if so, the items in question to be specified);

(4) clarify any matter which is in dispute in the proceedings or give additional information in relation to any such matter and, if so, Part 19 (Further Information) shall apply to any such order; or



or for any two or more of those purposes or for some other (and, if so, what other) relief.

**54.194**
The application may be made without notice to any party other than the respondent.

**Order For Examination, Etc.**
**54.195**
The Court may, whatever the purpose of the application, make any order which it has power to make under the Law and the Regulations.

**54.196**
The Court, if it orders the respondent to appear before it, shall specify a date and time for his appearance, which shall be not less than fourteen (14) calendar days from the date of the order.

**54.197**
If the respondent is ordered to submit a witness statement, the order shall specify:

    (1) the matters which are to be dealt with in his witness statement; and

    (2) the time within which the witness statement is to be submitted to the Court.

**54.198**
If the order is to produce books, papers or other records, the time and manner of compliance shall be specified.

**54.199**
The order must be served as soon as reasonably practicable on the respondent; and it must be served personally, unless the Court orders otherwise.

**Procedure For Examination**
**54.200**
At any examination of the respondent, the applicant may attend in person, or be represented by a legal representative, and may put such questions to the respondent as the Court may allow.

**54.201**
The following persons may attend the examination with the permission of the Court and may put questions to the respondent (but only through the applicant):

    (1) any person who could have applied for an order under the applicable provisions of the Law;

    (2) any creditor who has provided information on which the application was made by the applicant.

**54.202**
If the respondent is ordered to clarify any matter or to give additional information, the Court shall direct him as to the questions which he is required to answer, and as to whether his answers (if any) are to be made in a witness statement.



**54.203**

The respondent may at his own expense instruct a legal representative, who may put to him such questions as the Court may allow for the purpose of enabling him to explain or qualify any answers given him, and may make representations on his behalf.

**Record Of Examination**
**54.204**

There shall be made in writing such record of the examination as the Court thinks proper. The record shall be read over either to or by the respondent and signed or otherwise authenticated by him on a date and at a time fixed by the Court.

**54.205**

The written record may, in any proceedings (whether under the Law or otherwise) be used as evidence against the respondent of any statement made by him in the course of his examination.

**Inspection Of Record Of Examination, Etc.**
**54.206**

Unless the Court otherwise directs, the written record of questions put to the respondent and the respondent's answers, and any witness statements submitted by the respondent in compliance with an order of the Court under the applicable provision of the Law, are not to be filed with the Court.

**54.207**

The documents set out in **Rule 54.208** are not open to inspection without an order of the Court by any person other than:




(1) the applicant for an order under the applicable provision of the Law; or

(2) any person who could have applied for such an order in respect of the affairs of the same Company.

**54.208**

The documents to which **Rule 54.207** refers are:

(1) the written record of the respondent's examination;

(2) copies of the questions put to the respondent or proposed to be put to the respondent and answers to questions given by the respondent;

(3) any witness statement by the respondent; and

(4) any document on the Court files which shows the grounds for the application for an order.

**54.209**

The Court may from time to time give directions as to the custody and inspection of any documents to which Rules 54.206 to 54.208 apply, and as to the furnishing of copies of, or extracts from, such documents.



**Costs Of Proceedings**
**54.210**
Where the Court makes any other order against a person (including, without limitation, an order requiring the production of books, papers or other records or clarifying any matter which is in dispute or giving additional information) the costs of the application for the order may be ordered by the Court to be paid by the respondent.

**54.211**
Where the Court has ordered an examination of any person under the applicable provision of the Law, and it appears to it that the examination was made necessary because information had been unjustifiably refused by that person, it may order that the costs of the examination be paid by him.

**54.212**
Subject to Rules 54.210 and 54.211, the applicant's costs shall, unless the Court otherwise orders, be paid as an expense of the insolvency proceeding.

**54.213**
The costs of a person summoned to attend for examination under this Part incurred in connection with his attendance are at the Court's discretion.

**XII APPLICATION OF PART [X] TO LIMITED LIABILITY PARTNERSHIPS**
**54.214**
This Part shall apply for the purpose of giving effect to the provisions of the Law and the Regulations which are applied by Article 87 (Application to Limited Liability Partnerships) with the following modifications (except where the context otherwise requires):

**54.214.1** references to a Company shall include references to a Limited Liability Partnership;

**54.214.2** references to a director or to an officer of a Company shall include references to a member of Limited Liability Partnership;

**54.214.3** references to the Law or the Regulations, or to any provisions thereof, shall include references to the Law or the Regulations, or the provisions thereof, as they apply to Limited Liability Partnerships in accordance with the Law;

**54.214.4** such further or other modifications as the context may require for the purpose of giving effect to (i) the Law and the Regulations in accordance with Article 87 of the Law and (ii) this Rule 54.214.

**XIII FORMS**
**Forms For Use In Insolvency Proceedings**
**54.215**
Forms, as specified in this Part and where provided, are to be used in insolvency proceedings.

**54.216**
Where the forms are required to be used, they may be used with such variations, if any, as the circumstances may require.



**XIV COURT RECORDS AND RETURNS**
**Court File**
**54.217**
The Court shall open and maintain a file in any case where documents are filed with it under the Law, the Regulations or this Part of the Rules.

**54.218**
Any documents which are filed with the Court under the Law or the Regulations must be placed on the file opened in accordance with **Rule 54.217**.

**54.219**
The following persons may inspect or obtain from the Court a copy of, or a copy of any document or documents contained in, a file opened in accordance with **Rule 54.217**:

(1) the office-holder in the proceedings;

(2) the DFSA;

(3) any person who is a creditor of the Company to which the proceedings relate if that person provides the Court with a statement in writing by him or a person authorised by him confirming that that person is a creditor;

(4) an officer or former officer of the Company to which the proceedings relate; and

(5) a member of the Company to which the proceedings relate or a contributory in its winding up.

**54.220**
The right to inspect or obtain a copy of, or a copy of any document or documents contained in, the file opened in accordance with **Rule 54.217** may be exercised on that person's behalf by a person authorised to do so by that person.

**54.221**
Any person who is not otherwise entitled to inspect or obtain a copy of, or a copy of any document or documents contained in, the file opened in accordance with **Rule 54.217** may do so if that person has the permission of the Court.

**54.222**
The Court may, upon an application by the office-holder or any person appearing to the Court to have an interest, direct that the file, a document (or part of it) or a copy of a document (or part of it) must not be made available under **Rules 54.219** to **54.220** without the permission of the Court.

**54.223**
Where any person wishes to exercise the right to inspect the file under **Rule 54.219**, **54.220** or **54.221**, that person:

(1) if the permission of the Court is required, must file with the Court an application notice in accordance with this Part; or






(2) if the permission of the Court is not required, may inspect the file at any reasonable time.

**54.224**

Where any person wishes to exercise the right to obtain a copy of a document under Rule 54.219, 54.220 or 54.221, that person must pay any prescribed fee and:

(1) if the permission of the Court is required, file with the Court an application notice in accordance with this Part; or

(2) if the permission of the Court is not required, file with the Court a written request for the document.

**54.225**

An application for (a) permission to inspect the file or obtain a copy of a document under Rule 54.221 or (b) a direction under Rule 54.222 may be made without notice to any other party, but the Court may direct that notice shall be given to any person who would be affected by its decision.

**XV BLOCK TRANSFERS OF CASES WHERE INSOLVENCY PRACTITIONER HAS RETIRED ETC.**
**Preliminary**
**54.226**

The Rules in this Section relate to applications for a block transfer order.

**Power To Make A Block Transfer Order**
**54.227**



This Rule applies where an individual who is acting as an office-holder ("the outgoing office-holder"):

(1) dies;

(2) retires from practice; or

(3) is otherwise unable or unwilling to continue in office;

and it is expedient to transfer some or all of the cases in which the outgoing office-holder holds office to one or more office-holders ("the replacement office-holder") in a single transaction.

**54.228**

In a case to which this Rule applies the Court has the power to make an order, ("a block transfer order"), appointing a replacement office-holder in the place of the outgoing office-holder to be:

(1) liquidator or provisional liquidator in any winding up;

(2) receiver or administrative receiver in any receivership; or

(3) supervisor of a voluntary arrangement under Article 13 of the Law.



**54.229**

The replacement office-holder must be qualified to act as an insolvency practitioner.

**Application For A Block Transfer Order**
**54.230**

An application for a block transfer order may be made to the Registrar for:

> (1) the removal of the outgoing office-holder by the exercise of any of the powers in Rule 54.231;

> (2) the appointment of a replacement office-holder by the exercise of any of the powers in Rule 54.232; and/or

> (3) such other order or direction as may be necessary or expedient in connection with any of the matters referred to above.

**54.231**

The powers referred to in Rule 54.230(1) are those in:

> (1) Articles 46 and 66 (winding up);

> (2) Article 20 (receivership); and

> (3) Article 13(6) of the Law (voluntary arrangement).

**54.232**

The powers referred to in Rule 54.230(2) are those in:

> (1) Articles 33, 59 and 71 (winding up);

> (2) Article 14 (receivership); and

> (3) Article 13(4) and (5) of the Law (voluntary arrangement).

**54.233**

The application may be made by any of the following:

> (1) the outgoing office-holder (if able and willing to do so);

> (2) any person who holds office jointly with the outgoing office-holder;

> (3) any person who is proposed to be appointed as the replacement office-holder;

> (4) any creditor in a case subject to the application;

> (5) the recognised professional body or recognised body by which the outgoing office-holder is or was authorised; or

> (6) the Registrar of Companies appointed under the Companies Law 2009.





**54.234**

An applicant (other than the Registrar of Companies) must deliver notice of the application to the Registrar of Companies at least 5 business days before the hearing of the application.

**54.235**

The following must be made a respondent to the application and served by the applicant with it:

(1) the outgoing office-holder (if not the applicant or deceased);

(2) every person who holds office jointly with the outgoing office-holder; and

(3) such other person as the Registrar or Judge directs.

**54.236**

The application must contain a schedule setting out:

(1) the name of each case;

(2) the identity of the Court having jurisdiction when the application is made;

(3) the case number (if any); and

(4) the capacity in which the outgoing office-holder was appointed.



**54.237**

The application must be supported by evidence:

(1) setting out the circumstances as a result of which it was expedient to appoint a replacement office-holder; and

(2) exhibiting the written consent to act of each person who is proposed to be appointed as replacement office-holder.

**Action Following Application For A Block Transfer Order**
**54.238**

The Registrar or Judge may in the first instance consider the application without a hearing and make such order as the Registrar or Judge thinks just.

**54.239**

In the first instance, the Registrar or Judge may do any of the following:

(1) if the documents are considered to be in order and that the matter is considered straightforward, make an order on the substantive application;

(2) give any directions which are considered to be necessary including (if appropriate) directions for the joinder of any additional respondents or requiring the service of the application on any person or requiring additional evidence to be provided; or






(3) if an order is not made on the substantive application, give directions for the further consideration of the substantive application by the Registrar or Judge.

**54.240**

In deciding to what extent (if any) the costs of making an application under this Rule should be paid as an expense of the insolvency proceedings to which the application relates, the factors to which the Court must have regard include:

(1) the reasons for the making of the application;

(2) the number of cases to which the application relates;

(3) the value of assets comprised in those cases; and

(4) the nature and extent of the costs involved.

**54.241**

Any appointment made under this Rule must be notified:

(1) to the Registrar of Companies as soon as reasonably practicable;

(2) to the creditors; and

(3) to such other persons as the Court may direct, in such manner as the Court may direct.

# PART 55
## PROBATE RULES

**PROBATE**
**Scope of this Part and definitions**
**55.1**
   (1) This Part contains rules about –

   (a) probate;

   (b) probate claims;

   (c) claims for the rectification of wills; and

   (d) claims and applications to –

      (i) Substitute another person for an executor; or

      (ii) Remove an executor





(2) In this Part:

(a) "probate claim" means a claim for –

(i) the grant of probate or administration (with Will annexed) of a deceased person's estate;

(ii) the revocation of such a grant; or

(iii) an order declaring for or against the validity of a will;

(iv) any application for an order confirming the revocation of a will under

Rule 18 of the WPR Rules.

(b) "WPR" means the DIFC Wills and Probate Registry;

(c) "testamentary document" means a will, a draft of a last will, written instructions for a will made by or at the request of, or under the instructions of, the testator, and any document purporting to be evidence of the contents, or to be a copy, of a Will which is alleged to have been lost or destroyed; or any document that might affect the validity of the registered will.

(d) Testamentary instrument means any document which may have been annexed to the will at the time of the will registration, and relating to the estate in question.




(e) "WPR Rules" means the DIFC Wills and Probate Registry Rules.

(3) Where appropriate, WPR Rules shall apply and "executor" includes for the purpose only of this Part an administrator where the context allows this.

**I PROBATE CLAIMS**
**General**
**55.2**
This Section contains rules about probate claims.

**How To Start A Probate Claim**
**55.3**
(1) A probate claim must be commenced using the procedure in Part 7

(2) The claim form and all other Court documents relating to a probate claim must be marked at the top "In the estate of [name] deceased (Probate)".

(3) The commencement of a probate claim will, unless the Court otherwise directs, prevent any grant of probate or grant of administration (with will annexed) being made until the probate claim has been disposed of.

(4) The Court shall give notice of the probate claim to the WPR.



**Acknowledgment Of Service And Defence**
**55.4**

(1) A defendant who is served with a claim form must file an acknowledgment of service.

(2) Subject to paragraph (3), the period for filing an acknowledgment of service is –

(a) if the defendant is served with a claim form which states that particulars of claim are to follow, 28 days after service of the particulars of claim; and

(b) in any other case, 28 days after service of the claim form.

(3) Rule 16.9 (which provides the period for filing a defence) applies as if the words 'under Part 11' were omitted from Rule 16.9(2).

**Lodging Of Wills And Testamentary Documents And Filing Of Evidence About Testamentary Documents**
**55.5**

(1) Unless the Court directs otherwise, the will and any other testamentary instruments held at the WPR shall be lodged with the Court.[1]

(2) Any testamentary document of the deceased person that affects the validity of the will, in the possession or control of any party, must be lodged with the Court.

(3) Unless the Court directs otherwise, such testamentary documents must be lodged at the Court –

(a) by the claimant when the claim form is issued; and

(b) by a defendant when he acknowledges service.

(4) The claimant and every defendant who acknowledges service of the claim form must in written evidence

(a) describe any testamentary document that affects the validity of the will of the deceased of which he has any knowledge or,

(b) if any such testamentary document of which he has knowledge is not in his possession or under his control, give the name and address of the person in whose possession or under whose control it is or, if he does not know the name or address of that person, state that fact.

(5) Unless the Court directs otherwise, the written evidence required by paragraph (4) must be filed in the Court –

(a) by the claimant, when the claim form is issued; and

(b) by a defendant when he acknowledges service.

(6) The written evidence about testamentary documents required by this Part must contain a statement of truth in accordance with part 22 of the RDC, and be signed.





(4) Any party who wishes to contend that –

    (a) a will was not duly executed;

    (b) at the time of the execution of a will the testator lacked testamentary capacity; or

    (c) the execution of a will was obtained by undue influence or fraud, must set out the contention specifically and give particulars of the facts and matters relied on.

**Counterclaim**
**55.9**

(1) A defendant who contends that he has any claim or is entitled to any remedy relating to the grant of probate of the will, or grant of administration (with will annexed) of the estate, of the deceased person must serve a counterclaim making that contention.

(2) If the claimant fails to serve particulars of claim within the time allowed, the defendant may, with the permission of the Court, serve a counterclaim and the probate claim shall then proceed as if the counterclaim were the particulars of claim.

**Probate Counterclaim In Other Proceedings**
**55.10**



(1) In this rule "probate counterclaim" means a counterclaim in any claim other than a probate claim by which the defendant claims any such remedy as is mentioned in rule 55.1(2)(a).

(2) Subject to the following paragraphs of this rule, this Part shall apply with the necessary modifications to a probate counterclaim as it applies to a probate claim.

(3) A probate counterclaim must contain a statement of the nature of the interest of each of the parties in the estate of the deceased to which the probate counterclaim relates.

**Failure To Acknowledge Service Or To File A Defence**
**55.11**

(1) A default judgment cannot be obtained in a probate claim and rule 11.4 and Part 13 of the RDC do not apply.

(2) If any of several defendants fails to acknowledge service, the claimant may –

    (a) after the time for acknowledging service has expired; and

    (b) upon filing written evidence of service of the claim form and (if no particulars of claim were contained in or served with the claim form) the particulars of claim on that defendant;

proceed with the probate claim, as if that defendant had acknowledged service.





(3) If no defendant acknowledges service or files a defence then, unless on the application of the claimant the Court orders the claim to be discontinued, the Court shall order that the claim is to proceed to trial.

(4) When making an application under paragraph (3) the claimant must file written evidence of service of the claim form and (if no particulars of claim were contained in or served with the claim form) the particulars of claim on each of the defendants.

(5) Where the Court makes an order under paragraph (3), it may direct that the claim be tried on written evidence.

**Discontinuance And Dismissal**
**55.12**
(1) Part 34 does not apply to probate claims.

(2) At any stage of a probate claim the Court, on the application of the claimant or of any defendant who has acknowledged service, may order that –

(a) the claim be discontinued or dismissed on such terms as to costs or otherwise as it thinks just; and

(b) a grant of probate of the will, or grant of administration (with will annexed) of the estate, of the deceased person be made to the person entitled to the grant.



**Case Management**
**55.13**
In giving case management directions in a probate claim, the Court will give consideration to the questions –

(1) whether any person who may be affected by the claim and who is not joined as a party should be joined as a party, or giving notice of the claim under **Rule 20.55**.

(2) whether to make a representation order[2] under **Rule 20.35** or **20.41**.

**Settlement Of A Probate Claim**
**55.14**
If, at any time, the parties agree to settle a probate claim, the Court may –
(1) order the trial of the claim on written evidence, which will lead to a grant in special form;

(2) order that the claim be discontinued or dismissed under **Rule 55.12**, which will lead to a grant in common form;

(3) pronounce for, or against, the validity of one or more wills under **Rule 54** of the WPR Rules.

(4) An appropriate consent order (for applications for compromise of probate action, in accordance with **Rule 54** of the WPR Rules) should be signed by both parties in the presence of a court officer.





**Applications For A Grant**
**55.15**

(1) An application for an order for:

(a) A discretionary grant[3];

(b) A grant pending the determination of a probate claim[4];

(c) An interim grant[5];

(d) A grant limited in any other way the Court thinks fit;

(e) Where there is a dispute as to the persons entitled to the grant, that a grant is made to a particular person or persons;shall be made by application notice in a probate claim.

(2) If an application is made for an order for a grant under paragraph (1):–

(a) **Rules 49.14** to **49.35** of the RDC shall apply, as if the administrator were a receiver appointed by the Court;

(b) If the Court allows the administrator remuneration[6]under **Rule 49.28**, it may make an order specifying the remuneration is recoverable out of the estate of the deceased; and



(c) Every application, relating to the conduct of the administration (with will annexed), shall be made by application notice in the probate claim.

(3) An appointment of an administrator, to whom administration (with will annexed) are granted pending the determination of a probate claim, will cease automatically when a final order in the probate claim is made, but will continue pending any appeal. Where, in such a case, the grant ceases automatically, the grant shall be returned to the WPR.

**II RECTIFICATION OF WILLS**
**Rectification of Wills**
**55.16**

(1) This Section contains rules about claims for the rectification of a will, in conjunction with Part 5 (Rectification of wills) of the WPR Rules.

(2) Every executor of the estate shall be joined as a party.

**Lodging The Grant**
**55.17**

(1) If the claimant is the person to whom the grant was made in respect of the will of which rectification is sought, he must, unless the Court orders otherwise, lodge the grant of probate or grant of administration (with will annexed) with the Court when the claim form is issued.

(2) If a defendant has the grant of probate or grant of administration (with will annexed) in his possession or under his control, he must, unless the Court orders



otherwise, lodge it in the relevant office within 14 days after the service of the claim form on him.

**Orders**
**55.18**
A copy of every order made for the rectification of a will shall be sent to the WPR for filing, and a memorandum of the order shall be endorsed on, or permanently annexed to, the grant under which the estate is administered.

**III SUBSTITUTION AND REMOVAL OF EXECUTORS**
**Substitution And Removal Of Executors**
**55.19**

(1) This Section contains rules about claims and applications for substitution or removal of an executor (see also **Rule 29** of the WPR Rules on the maximum number of executors).

(2) Every executor of the estate shall be joined as a party.

(a) This rule shall apply to such applications (with references to claims being read as references to applications).

**Starting The Claim**
**55.20**
The claim form must be accompanied by –

(1) a sealed or certified copy of the grant of probate or grant of administration (with will annexed), and

(2) written evidence containing the grounds of the claim and the following information so far as it is known to the claimant –

(a) brief details of the property comprised in the estate, with an approximate estimate of its capital value and any income that is received from it;

(b) brief details of the liabilities of the estate, if any;

(c) the names and addresses of the persons who are in possession of the documents relating to the estate;

(d) the names of the beneficiaries and their respective interests in the estate; and

(e) the name, address and occupation of any proposed substituted executor.

**Consent To Act And Evidence**
**55.21**
If the claim is for the appointment of a substituted executor, the claim form must be accompanied by –

(1) a signed or sealed consent to act; and





(2) written evidence as to the fitness of the proposed substituted executor, if an individual, to act.

**Production Of The Grant**
**55.22**

    (1) On the hearing of the claim, the executor must produce to the Court the grant of representation to the deceased's estate.

    (2) If an order is made substituting or removing the executor, the grant (together with a sealed copy of the order) must be sent to and remain in the custody of the WPR, until a memorandum of the order has been endorsed on, or permanently annexed to the grant.

    (3) Where the claim is to substitute or remove an executor and the claim is made before a grant of probate has been issued, paragraphs (1) and (2) do not apply. Where, in such a case, an order is made substituting or removing an executor, a sealed copy of the order must be sent to the WPR, where it will be recorded and retained, pending any application for a grant. An order sent to the WPR in accordance with this paragraph must be accompanied by a note of the full name and date of death of the deceased, if it is not apparent on the face of the order.

**B. CLAIMS FOR DIRECTIONS AND ORDERS RELATING TO THE ADMINISTRATION OF ESTATES**
**General**
**55.23**

This Part contains rules about claims relating to the administration of estates of deceased persons (where a deceased person has made a will).
It applies to claims –

    (a) for the court to determine any question (excluding intestacy and its consequences) arising in the administration of the estate of a deceased person; and

    (b) for an order for the administration of the estate of a deceased person to be carried out under the direction of the court ('an administration order').

    (c) To enforce rights under a foreign law under **Rule 11.1** of the WPR Rules.

**Parties**
**55.24**

In a claim to which this Part applies –

    (a) all the executors or administrators of the deceased person's estate must be parties;

    (b) if the claim is made by executors or administrators, any of them who does not consent to being a claimant must be made a defendant; and

    (c) the claimant may make parties to the claim any persons with an interest in or claim against the estate who it is appropriate to make parties having regard to the nature of the order sought.

(The court may, under rule 20.2, order additional persons to be made parties to a claim.)

**55.25**
The following are examples of the types of claims which may be made under this Part –

(1) a claim for the determination of any of the following questions

(a) any question as to who is included in any class of persons having

(i) a claim against the estate of a deceased person;

(ii) a beneficial interest in the estate of such a person; or

(b) any question as to the rights or interests of any person claiming

(i) to be a creditor of the estate of a deceased person;

(ii) to be entitled under a will of a deceased person; or

(2) a claim for any of the following remedies –

(a) an order requiring an executor or administrator –

(i) to provide and, if necessary, verify accounts;

(ii) to pay into court money which he holds in that capacity; or

(iii) to do or not to do any particular act;

(b) an order approving any sale, purchase, compromise or other transaction by an executor or administrator; or

(c) an order directing any act to be done which the court could order to be done if the estate were being administered or executed under the direction of the court.

**Determining Certain Claims Under This Part Without A Hearing**
**55.26**
(1) Where a claim is made by a trustee for a remedy within rule 55.25(2)(b) (including a case where the remedy sought is approval of a transaction affected by conflict of interests or duties), the court may be requested to determine the claim without a hearing.

(2) The claim form in such a case may be issued without naming defendants, and no separate application for permission need be made.

(3) The claim form must be accompanied by

(a) a witness statement setting out the material facts justifying determination without a hearing and in particular –



(i) identifying those affected by the remedy sought and

(ii) detailing any consultation of those so affected and the result of that consultation;

(b) the advice of a lawyer on the merits of the claim;

(c) a draft order for the remedy sought;

(d) a statement of costs.

(4) If the court considers that the case does not require an oral hearing, it will proceed to consider the claim on the papers.

(5) If the court considers that an oral hearing is required, it will give appropriate directions.

(6) If the court considers it appropriate, it will make the order sought and may direct that the claimant must –

(a) serve notice of the order on the interested parties in accordance with **Rule 20.55**, and

(b) file a certificate of service within 7 days of doing so.



**Administration Orders – Rule 55.23(B)**
**55.27**

(1) The court will only make an administration order if it considers that the issues between the parties cannot properly be resolved in any other way.

(2) If, in a claim for an administration order, the claimant alleges that the executors or administrators have not provided proper accounts, the court may –

(a) stay the proceedings for a specified period, and order them to file and serve proper accounts within that period; or

(b) if necessary to prevent proceedings by other creditors or persons claiming to be entitled to the estate, make an administration order and include in it an order that no such proceedings are to be taken without the court's permission.

(3) Where an administration order has been made in relation to the estate of a deceased person, and a claim is made against the estate by any person who is not a party to the proceedings –

(a) no party other than the executors or administrators of the estate may take part in any proceedings relating to the claim without the permission of the court; and

(b) the court may direct or permit any other party to take part in the proceedings, on such terms as to costs or otherwise as it thinks fit.







**Application To Enforce Rights Under A Foreign Law – Rule 55.23(C)**
**55.28**
An application to enforce rights under a foreign law shall be in accordance with **Rule 11.1** of the WPR Rules and supported by:

    (a) a certified copy of the grant or court order issued in the foreign jurisdiction;

    (b) extracts of the relevant law; and

    (c) an affidavit of a suitably qualified lawyer confirming the relevant law.

# PART 56
## TECHNOLOGY AND CONSTRUCTION DIVISION

**General**
**56.1**
This Part applies to Technology and Construction Division claims ("TCD Claims").

**56.2**
In this Part –

    (1) A "TCD Claim" means a claim which—

    (a) satisfies the requirements of **Rule 56.3**; and

    (b) has been issued in or transferred into the specialist Division for such claims;

    (2) "Technology and Construction Division" has the meaning provided for by **Rule 56.5**.

**56.3**
A claim may be brought as a TCD Claim if it involves issues or questions which are technically complex. The following are examples of the types of claim which may be appropriate to bring as TCD Claims, but are not exhaustive and other types of claim may be appropriate to this specialist division:

    (1) building or other construction disputes;

    (2) engineering disputes;

    (3) claims by and against engineers, architects, surveyors, accountants and other specialised advisers relating to the services they provide;

    (4) claims by and against the DIFC or any DIFC Body relating to their statutory duties concerning the development of land or the construction of buildings;

    (5) claims relating to the design, supply and/or installation of computers, computer software and related network and information technology systems and services;





    (6) claims between landlord and tenant for breach of a repairing covenant;

    (7) claims between neighbours, owners and occupiers of land in trespass, nuisance etc.;

    (8) claims arising out of fires;

    (9) claims involving taking of accounts where these are complicated; and

    (10) challenges to decisions of arbitrators in construction and engineering disputes.

**56.4**
TCD Claims will be dealt with in the Technology and Construction Division, unless:

    (1) this Part or a Practice Direction permits otherwise; or

    (2) a Judge directs otherwise.

**Specialist Division**
**56.5**
The Technology and Construction Division is a specialist division of the DIFC Courts.

**56.6**
A Judge will be appointed to be the Judge in charge of the Technology and Construction Division.

**Application Of The Rules Of The Dubai International Financial Centre Courts**
**56.7**
The Rules of the DIFC Courts and their Practice Directions and Registrar's Directions apply to TCD Claims unless this Part or a Practice Direction provides otherwise.

**Issuing A TCD Claim**
**56.8**
A TCD Claim may be commenced using the procedure in Part 7 or Part 8, including Arbitration Claims under Part 43.

**56.9**
The claim form and all other Court documents relating to a TCD Claim must be marked "Technology and Construction Division".

**Applications Before Proceedings Are Issued**
**56.10**
A party who intends to issue a TCD Claim must make any application within the claim form for determination by the Court whether it should be issued in the Technology and Construction Division.

**56.11**
The written evidence in support of such an application must state that the proposed claim is a TCD Claim.



**Transfer Of Proceedings**

**56.12**
The Court may order proceedings to be transferred to or from the Technology and Construction Division.

**56.13**
Where the Court orders proceedings to be transferred, it will give notice of that transfer to all the parties.

**Case Management**

**56.14**
Rules 43.26 to 43.38 do not apply to Arbitration Claims that proceed as TCD Claims, save insofar as provided by this Part.

**56.15**
Part 26 (Case Management) applies to TCD Claims with the modification to Rule 26.1 that the Court will fix a Case Management Conference within 14 days of the earlier of these events:

(1) the filing of particulars of claim; or

(2) the date of an order transferring the claim to the Technology and Construction Division.



**56.16**
At the same time that the parties must file and serve Case Management Information Sheets under Rule 26.3, the Claimant, in consultation with the other parties, must file and serve a TCD Case Management Directions Form. A standard form of a TCD Case Management Directions Form is set out in Schedule A to this part.

**56.17**
The parties are encouraged to agree the directions to propose to the Court by reference to the TCD Case Management Directions Form. If any directions are not agreed the parties must explain on the TCD Case Management Direction Form the scope of the disagreement in respect of each direction that is not agreed and the reason for the disagreement.

**56.18**
If any party fails to file or serve the Case Management Information Sheet or the Claimant fails to file or serve the TCD Case Management Directions Form by the date specified, the Court may:

(1) impose such sanction as may be appropriate to further the overriding objective; and

(2) either proceed with or adjourn the Case Management Conference.

**56.19**
In addition to the topics the Court is likely to consider at a Case Management Conference set out in Rule 26.35, in TCD Claims further topics the Court will consider are likely to include:





(1) whether any issues can be conveniently dealt with by a Court-appointed expert and whether ancillary orders may be necessary for the carrying out of inspections, the obtaining of samples, the conducting of experiments, or the performance of calculations;

(2) whether it would be appropriate and proportionate to make any interim orders for the preservation of evidence under **Rule 25.1**; and

(3) whether it would be appropriate and proportionate for elements of the claim (or any counterclaims or other additional claims under Part 21) to be set out by way of a Scott Schedule. A Scott Schedule is a table in which elements of the Claimant's case are set out item by item and the Defendant's response is set out in the adjacent columns. When the Court orders the production of a Scott Schedule:

(a) a Judge may give directions for the relevant column headings; and

(b) each party's entries on the Scott Schedule must be supported by a statement of truth in accordance with Part 22.

**Pre-Trial Review**
**56.20**
If the Court fixes a date for a Pre-Trial Review, the parties must send to the Registrar and serve on all other parties completed TCD Pre-Trial Review Questionnaires not less than three days before the date fixed for the Pre-Trial Review. A standard form of TCD Pre-Trial Review Questionnaire is set out in Schedule B to this Part.

**56.21**
If any party fails to return or exchange the TCD Pre-Trial Review Questionnaire by the date specified the Court may:

(1) impose such sanction as may be appropriate to further the overriding objective; and

(2) either proceed with or adjourn the Pre-Trial Review.

**56.22**
The TCD Pre-Trial Review Questionnaire incorporates the Pre-Trial Checklist required under **Rule 26.61**.

**56.23**
At the Pre-Trial Review, the Court will give such directions for the conduct of the trial as it sees fit.

**SCHEDULE A**
**TCD CASE MANAGEMENT DIRECTIONS FORM**
[Delete or amend the following directions, as appropriate to the circumstances of the case]

1. Trial date:



2. Estimated length of trial:

3. Directions, if appropriate, (a) for the trial of any preliminary issues or (b) for the trial to be divided into stages:

4. [ ] be added as a [claimant] [defendant] in this Claim.

5. This claim is to be [consolidated] [managed and tried with] claim no. [ ]

The lead claim shall be claim no. [ ]

All directions given in the lead claim shall apply to both claims, unless otherwise stated.

6. Further statements of case shall be filed and served as follows:

    a. Defence and any counterclaim by 4 pm on [ ]

    b. Reply (if any) and defence to counterclaim (if any) by 4 pm on [ ]

7. Permission to make the following amendments [ ]

8. Standard production of documents:

    a. By 5 pm on [ ]



    b. Specific directions in respect of electronic production of documents [where appropriate]

9. Parties to file and serve any Request to Produce by 5pm on [ ].

10. By 5pm on [ ]:

    a. The parties shall file and serve any Objections to Requests to Produce; and

    b. The parties shall produce documents responsive to any Request to Produce in respect of which no Objection is raised.

11. The Court will determine any Objections to Requests to Produce and issue any disclosure orders by 5pm on [ ].

12. There shall be a Scott Schedule in respect of defects / items of damage / other [ ]

    a. The column headings shall be as follows [ ]

    b. Claimant / Defendant to serve Scott Schedule by 5 pm on [ ]

    c. Defendant / Claimant to respond to Scott Schedule by 5 pm on [ ]

13. Signed statements of witnesses of fact to be served by 5 pm on [ ] [Supplementary statements of witnesses of fact to be served by 5 pm on [ ]





14. The parties have permission to call the following expert witnesses in respect of the following issues:

   a. [ ]

   b. [ ]

   c. [ ]

15. In respect of any expert evidence permitted under paragraph 13:

   a. Directions for carrying out inspections / taking samples / conducting experiments / performance of calculations shall be [ ]

   b. Experts in like fields to hold discussions in accordance with RDC 31.58 by [ ]

   c. Experts' joint memorandum pursuant to RDC 31.63 to be prepared and filed by 5 pm on [ ]

   d. Experts' reports to be served by 5 pm on [ ]

16. A court-appointed expert shall be appointed to report on the following issues [ ]

The following directions shall govern the appointment of the court-appointed expert:

   a. [ ]

   b. [ ]

17. The following documents shall be provided to the court electronically or in computer-readable form, as well as in hard copy [ ]

18. A further case management conference shall be held on [ ] at [ ] am/pm. Time allowed [ ]

19. The pre-trial review shall be held on [ ] at [ ] am/pm. Time allowed [ ]

20. The above dates and time limits may be extended by agreement between the parties. Nevertheless:

   a. The dates and time limits specified in paragraph [ ] may not be extended by more than [14] days without the permission of the Court.

   b. The dates specified in paragraph 1 (trial) and paragraph 18 (pre-trial review) cannot be varied without the permission of the Court.

21. Costs [in the case].





SCHEDULE B
TCD PRE-TRIAL REVIEW QUESTIONNAIRE
[Note: this questionnaire should normally be completed with the involvement of the legal representatives instructed for trial]

[SHORT TITLE OF CASE and CASE NUMBER]

1. Trial date:

2. Party lodging questionnaire:

**A. DIRECTIONS COMPLIED WITH**
3. Have you complied with all the previous directions given by the Court? Yes/No

4. If no, explain which directions are outstanding and why [ ].

5. Are any further directions required to prepare the case for trial? Yes/No

6. If yes, explain the directions required and give reasons [ ].

**B. EXPERTS**
7. Has the Court already given permission for you to use written expert evidence? Yes/No

8. If yes, give the expert(s)' name(s) and field(s) of expertise [ ].

9. Have the experts held discussions as directed? Yes/No

10. Have they filed statements as directed following those discussions? Yes/No

11. Have the expert(s') reports(s) been served and filed as ordered? Yes/No

12. Has the Court already given permission for the expert(s) to give oral evidence at the trial? Yes/No

13. If no, are you seeking permission? Yes/No

14. If yes, give your reasons for seeking permission [ ].

15. If yes, what are the names, addresses and fields of expertise of your experts? [ ]

16. Give details of any dates within the trial period when your expert(s) will not be available [ ].

**C. OTHER WITNESSES**
17. How many witnesses (not including experts) will be giving evidence on your behalf at trial?

18. What are the names and addresses of your witnesses? [ ]






19. Give details of any dates within the trial period when you or your witnesses will not be available: [ ]

20. Are any of the witness statements agreed between the parties? Yes/No

21. If yes, give the name of the witness and the date of his or her statement [ ].

22. Do you or any of your witnesses need any special facilities? Yes/No

23. If yes, what are they? [ ]

24. Will an interpreter be required for any witness and if so, have any necessary directions already been given? Yes/No

25. If no, what type of interpretation will be required? [ ]

26. Have directions been given for any witness to give evidence by video link? Yes/No

27. If yes, have all necessary arrangements been made? Yes/No

28. If no, what further arrangements are necessary? [ ]

**D. LEGAL REPRESENTATION**
29. Name(s) of legal representative(s):



30. Name(s) of individual legal representative(s) for trial:

31. Please give details of any dates within the trial period when the person presenting the case will not be available.

32. What are the individual legal representative(s)'s for trial confirmed estimates of the minimum and maximum lengths of the trial? (A confirmed estimate of length signed by the individual legal representative(s) for trial should be attached).

**E. OTHER MATTERS**
33. Have you completed preparation of trial bundles? Yes/No

34. If no, when will the preparation of the trial bundles be completed?

35. Is the Case Management Bundle up-to-date? Yes/No

36. What is your estimate of costs already incurred and to be incurred at trial?

[Signature of legal representative(s)]







# PRACTICE DIRECTION NO. 3 OF 2008 DIFC COURT CHARGES
SEPTEMBER 24, 2008

**The Dubai International Financial Centre Judicial Authority**
**The DIFC Court**

**DIFC Court Practice Direction No. 3 of 2008**

**Citation**

1. This Practice Direction will come into effect on the date of signature. It may be cited as Practice Direction 3 of 2008 — DIFC Court Charges and may be abbreviated to PD 3/2008.

**Administrative Charges**

1. Should a party to proceedings request the DIFC Courts to provide a copy of any recording made by the DIFC Courts in respect of such proceedings, that recording shall be provided on one or more computer disks. A charge of AED1, 000 shall apply for each such disk produced by the DIFC Courts and shall be payable by the party requesting the copy prior to the disk or disks (as the case may be) being handed to that party.

2. Should a party to proceedings request the DIFC Courts to undertake any scanning or photocopying of documents, a charge of AED5 per page shall be payable by that party to the DIFC Courts prior to the commencement of any such scanning or photocopying.

3. In this practice direction, reference to a "party" shall include representatives of that party as well as appointed counsel to that party

**Chief Justice of the DIFC Court**
Dated: 24 of September, 2008




# PRACTICE DIRECTION NO. 4 OF 2008 URGENT APPLICATIONS
DECEMBER 15, 2008

**In The Judicial Authority of The Dubai International Centre**
**DIFC Courts**

**Practice Direction No 4 of 2008 Urgent Applications**

**Citation**

This Practice Direction will come into effect on the date of issue. It may be cited as **Practice Direction 4 of 2008 — Urgent Applications** and may be abbreviated to **PD 4/2008.**



**Urgent Applications**

1. This Practice Direction should be read in conjunction with the Rules of the DIFC Courts and in particular RDC Parts 2(calculation of time), 3 and 25.

2. Upon an application under the urgent applications procedure set out in RDC 25.11–25.15, the Court may consist of a resident Judge and the Registrar sitting together.

3. When acting under the procedure set out in this Practice Direction, the Court shall set a Return Date for the hearing of the application before a Judge sitting alone, which shall not be later than three days from the date upon which the interim order is issued.

4. Urgent applications can be made between 10:00am and 5:00pm (in Dubai) by telephoning the Courts on +97144273333 and asking to be put in touch with the Registrar or Deputy Registrar. It should be stated that the call is in relation to an urgent application. Where an urgent application is to be made outside those hours, the applicant should telephone the DIFC Courts' emergency number on +97144273331 and appropriate arrangements will be made.

5. Nothing in this Practice Direction shall be construed as affecting any rules or enactments relating to jurisdiction and in particular RDC 3.4–3.14 and RDC 25.4–25.5.

**Chief Justice of the DIFC Courts**
Dated: 15th of December 2008




# PRACTICE DIRECTION NO. 5 OF 2008 DIFC COURTS' FORM NO. P45/01

DECEMBER 15, 2008

**In The Judicial Authority of The Dubai International Centre**
**DIFC Courts**

**DIFC Courts' Form No. P45/01 (Application to Enforce an Award of a Body other than the DIFC Courts)**

**Citation**

This Practice Direction will come into effect on the date of issue. It may be cited as **Practice Direction 5 of 2008 – DIFC Courts' Form No. P45/01** and may be abbreviated to **PD 5/2008**.

**Courts' Form No. P45/01**

1. This Practice Direction prescribes the form to be used in proceedings before the DIFC Courts to enforce and award of a body other than the DIFC Courts pursuant to section 45 of the Rules of the DIFC Courts.





2. This form is in addition to the forms prescribed under paragraph 2 of DIFC Courts'
Practice Direction No. 2 of 2008.

**Chief Justice of the DIFC Courts**
Dated: 15th of December 2008

# PRACTICE DIRECTION NO. 1 OF 2009 INTEREST ON JUDGMENTS
APRIL 23, 2009

**In The Judicial Authority of The Dubai International Financial Centre**
**DIFC Courts**

**Practice Direction No. 1 of 2009**

**Interest on Judgments**

**Citation**

This Practice Direction will come into effect on the date of signature. It may be cited as
**Practice Direction 1 of 2009 – Interest on Judgments** and may be abbreviated to **PD
1/2009**.



**Interest on Judgments**

1. This Practice Direction should be read in conjunction with DIFC Law No. 10 of
2004 and the Rules of the DIFC Courts and in particular **Rule 45.19** (Interest on
Judgment Debts).

2. A judgment of the DIFC Courts shall carry interest, from the date the judgment is
entered, at the rate of 1% over the Emirates Interbank Offer Rate ("EIBOR") or such
other rate as the judge may prescribe in the judgment.

**Chief Justice of the DIFC Courts**
Dated: 23rd April 2009

# PRACTICE DIRECTION NO. 1 OF 2009 INTEREST ON JUDGMENTS (CLARIFICATION)
JULY 6, 2009

**In the Judicial Authority of the Dubai International Financial Centre**
**DIFC Courts**

**Practice Direction No. 1 of 2009 (Clarification)**

**Interest on Judgments**

  



**Citation**

This Practice Direction will come into effect on the date of signature. It may be cited as **Practice Direction 1 of 2009 – Interest on Judgments (Clarification)** and may be abbreviated to **PD 1/2009 (Clarification)**.

**Interest on Judgments**

1. This Practice Direction should be read in conjunction with DIFC Law No. 10 of 2004; the Rules of the DIFC Courts and in particular **Rule 45.19** (Interest on Judgment Debts); and PD 1/2009.

2. PD 1/2009 provides that a judgment of the DIFC Courts shall carry interest, from the date the judgment is entered, at the rate of 1% over the Emirates Interbank Offer Rate ("EIBOR") or such other rate as the judge may prescribe in the judgment. For the sake of clarification, reference to EIBOR is to the EIBOR three months' reference rate as at the date of judgment.

**Chief Justice of the DIFC Courts**
Dated: 6th July 2009

# PRACTICE DIRECTION NO. 2 OF 2009 DIFC COURTS' CODE OF PROFESSIONAL CONDUCT FOR LEGAL PRACTITIONERS
SEPTEMBER 27, 2009



IN THE JUDICIAL AUTHORITY OF THE DUBAI INTERNATIONAL
FINANCIAL CENTRE

DIFC COURTS PRACTICE DIRECTION NO 2 OF 2009

**DIFC Courts' Code of Professional Conduct for Legal Practitioners**

**Citation**

The attached code of professional conduct for legal practitioners in the DIFC Courts (the "Code") shall take immediate effect for all new registrations in parts I and II of the DIFC Courts' Register of Practitioners. For all existing registrants as at the date of this practice direction, the Code shall become effective on November 1, 2009.

Immediately upon the Code becoming effective for a firm or individual, that firm or individual shall, as a condition of its registration, comply with the provisions of the Code.

This Practice Direction may be cited as **Practice Direction 2 of 2009 – DIFC Courts' Code of Professional Conduct** and may be abbreviated to **PD 2/2009**.

**Chief Justice of the DIFC Courts**
Dated: 27 September 2009







**THE CODE OF PROFESSIONAL CONDUCT**
**FOR LEGAL PRACTITIONERS**
**IN THE DIFC COURT**

**A — Governing Principles**

The DIFC Courts (the "Court") were established to uphold the laws of the DIFC and to advance the rule of law by ensuring the just and effective resolution of disputes within the Court's jurisdiction.

By registering to practice in the Court, each individual legal practitioner and firm ("Practitioner") undertakes to act with integrity and independence in support of the Court and the wider community that it serves.

The right to practice in the Court is conditional upon observance of this Code of Conduct ("the Code") and acceptance of the Court's power to impose the sanctions provided for herein.

**B — Duties Owed to the Court**



1. Practitioners shall show due respect to, and co-operate with, the Court and its staff.

2. Practitioners shall ensure that they are familiar with the Rules of the Court (the "Rules") and in particular with the provisions of the Overriding Objective set out at Part 1 thereof.

3. Practitioners shall ensure that they are familiar with such laws of the DIFC as may be applicable to the matter before the Court.

4. Practitioners shall never knowingly make any incorrect or misleading statement of fact or law to the Court and shall correct any material error or omission at the earliest opportunity.

5. Practitioners shall inform the Court of all relevant decisions and legislative provisions of which they are aware regardless of whether the effect is favourable or unfavourable to the contention for which they argue.

**C — Duties Owed to Clients**

6. Subject to the duties set out in B(1), B(4) and B(5) above, Practitioners shall fearlessly advance, defend and protect the interests of their client before the Court without regard to any consequences to themselves or any other person.

7. Practitioners shall not act for a client in proceedings before the Court if:

    (i) the Practitioner owes a separate duty to act in the best interests of another client in relation to the same or related asset, liability or matter and (a) those duties conflict or there is a risk that those duties may conflict; and (b) the Practitioner does not have the consent in writing of the said other client to act for the client in question or







(ii) the Practitioner's duty to act in the best interest of the client conflicts, or there is a risk that it may conflict, with the Practitioner's own interests in the same or related asset, liability or matter;

8. Practitioners shall only agree to act in proceedings before the Court if they can handle them promptly, with competence and without undue interference from the pressure of other work.

9. Practitioners shall not seek to provoke or prolong Court proceedings unnecessarily and shall at the earliest opportunity advise their client of any appropriate alternative means of dispute resolution.

10. Practitioners shall at the earliest opportunity advise their client of the Court's discretion as to costs and in particular the general rule at Part 38.7(1) of the Rules that the unsuccessful party will be ordered to pay the reasonable legal costs and expenses of the successful party.

11. Practitioners shall at the earliest opportunity enter into a clear and transparent fee agreement with their client and thereafter ensure that sufficient records are kept of work done to enable the Court to properly assess any legal costs and expenses claimed during, or at the conclusion of, proceedings.

12. Practitioners shall keep information communicated to them by their client confidential unless such disclosure is authorised by the client, ordered by the Court or required by law. This duty extends to all partners and employees of a Practitioner and continues even after the Practitioner has ceased to act for the client.

**D — Duties Owed to Other Practitioners**

13. Practitioners shall deal with each other honestly, co-operatively and with civility.

**E — General Duties**

14. Practitioners shall comply with the Code.

15. Practitioners shall not act in proceedings before the Court unless satisfied of their continuing adherence to the Court's Registration criteria.

16. Practitioners shall abstain from any behaviour which may tend to discredit the Court and the reputation of its Practitioners.

17. Practitioners shall never withdraw from proceedings before the Court in order to confer a tactical advantage upon a party.

18. Practitioners shall not communicate about a particular case or matter directly with any party who is known to be represented in that case or matter by another Practitioner, save with the latter's consent. The only exception to this duty is that Practitioners may communicate with any party who is known to be represented by another Practitioner where the interests of that other party will be prejudiced if the communication is delayed. In such case the other Practitioner must be informed as soon as possible.







19. Practitioners shall never agree to act in proceedings before the Court other than at the direct request of the party concerned unless they are satisfied that the person making the request is authorised by the concerned party. A Practitioner may, however, accept a case or matter forwarded to him by another Practitioner or other practising lawyer.

20. Subject to any relevant provisions of the Rules, Practitioners shall not disclose to the Court prior to judgment, the content of any settlement offers or settlement negotiations, regardless of whether these have expressly been stated to be "Without Prejudice".

**F — Sanctions for Breach of the Code**

21. Any complaint by any person (the "Complainant") that a Practitioner has acted in breach of the Code shall be made in writing to the Registrar.

22. Unless the Registrar is of the opinion on reasonable grounds that the complaint is frivolous or vexatious he shall:
    (i) Forward a copy of the complaint to the Practitioner;

    (ii) Require from the Practitioner a written response to the complaint;

    (iii) Make any further investigation he deems appropriate;

    (iv) Issue a reasoned written decision on the complaint.



23. A Practitioner against whom a complaint is made may require that it is investigated and decided upon jointly by the Registrar and two independent Assessors chosen by the Registrar from the Register of Practitioners. The Registrar shall be responsible for drawing up and issuing the decision, which decision shall be that of the majority.



24. Assessors shall be paid a daily honorarium fixed periodically by the Chief Justice.

25. Any decision issued by the Registrar may be reviewed by the Chief Justice on the application of the Practitioner or the Complainant.

26. Where the facts and circumstances of the complaint involve the Registrar or the Chief Justice to any significant degree, the Chief Justice shall nominate the Deputy Registrar or any Justice of the Court to act instead of the Registrar, and any Justice of the Court to act instead of himself.

27. The Court, acting through the Registrar, the Chief Justice or any nominee of the Chief Justice, may impose the following sanction upon any Practitioner found on a balance of probabilities to have acted in breach of the Code:
    (i) Private Admonition;

    (ii) Public Admonition;

    (iii) Fine not exceeding US$5,000 in the case of an individual Practitioner and US$15,000 in the case of a firm;







(iv) Suspension from the Register of Practitioners for a period of time not exceeding 12 months;

(v) Removal from the Register of Practitioners.

28. The Court may impose a combination of sanctions. Any sanction other than a Private Admonition shall be published by the Court together with a summary of the complaint and the names of the Complainant and the Practitioner.

29. When imposing any sanction other than a Private Admonition, the Court may notify the fact to any Bar Association or similar body responsible for the supervision or regulation of the Practitioner concerned.

## PRACTICE DIRECTION NO. 1 OF 2010 CLAIMS RELATING TO THE SPECIAL TRIBUNAL FOR DUBAI WORLD
JANUARY 21, 2010

IN THE JUDICIAL AUTHORITY OF THE DUBAI INTERNATIONAL FINANCIAL CENTRE

DIFC COURTS

**Practice Direction No. 1 of 2010 Claims Relating to the Special Tribunal for Dubai World**



**Citation**

This Practice Direction will come into effect on the date of signature. It may be cited as **Practice Direction 1 of 2010** – Claims Relating to the Special Tribunal for Dubai World and may be abbreviated to **PD 001/2010**.

**Claims Relating to the Special Tribunal for Dubai World**

1. This Practice Direction should be read in conjunction with DIFC Law No. 10 of 2004; the Rules of the DIFC Courts and Decree 57 of 2009 issued by HH The Ruler of Dubai.

2. Any claims brought before the DIFC Courts that pertain to the Special Tribunal Relating to Dubai World shall be allocated to Justice Sir Anthony Colman. The claim form, and all subsequent documents filed with the DIFC Courts, should be marked for the attention of Justice Sir Anthony Colman.

3. The case thereafter shall be subject to directions given by Justice Sir Anthony Colman and shall be heard by him or by another Justice of the DIFC Courts nominated by him.

**Chief Justice of the DIFC Courts**
Dated: 21 January 2010





## PRACTICE DIRECTION NO. 2 OF 2010 SCT JUDGE
AUGUST 15, 2010

IN THE JUDICIAL AUTHORITY OF THE DUBAI INTERNATIONAL FINANCIAL CENTRE

DIFC COURTS

PRACTICE DIRECTION NO 2 OF 2010 (Re-enactment of PD 4 of 2009)

**Small Claims Tribunal (SCT) Judge**

**Citation**

This Practice Direction will come into effect on the date of issue. It may be cited as **Practice Direction 2 of 2010 — SCT Judge** and may be abbreviated to **PD 2/2010**.

1. This Practice Direction should be read in conjunction with the Rules of the DIFC Courts ("RDC") and in particular RDC Part 53 Small Claims Tribunal.

2. Where the Rules refer to a "SCT Judge" this shall include the Court of First Instance Judges and Registrar and all other persons named in the DIFC Courts Order 1 of 2010 (Limits of Jurisdiction) as members of the SCT.

**Chief Justice of the DIFC Courts**
Dated: 15 August 2010



## PRACTICE DIRECTION NO. 3 OF 2010 WRITTEN EVIDENCE SUPPORTING SECURITY FOR COSTS APPLICATIONS
SEPTEMBER 5, 2010

IN THE JUDICIAL AUTHORITY OF THE DUBAI INTERNATIONAL FINANCIAL CENTRE

DIFC COURTS

PRACTICE DIRECTION NO. 3 OF 2010

Written Evidence Supporting Security for Costs Applications

**Citation**

This Practice Direction will come into effect on the date of issue. It may be cited as **Practice Direction 3 of 2010 — Written Evidence Supporting Security For Costs Applications** and may be abbreviated to **PD 3/2010**.

**Security for Costs**

1. This Practice Direction should be read in conjunction with DIFC Law No. 10 of 2004 and The Rules of the DIFC Courts ("RDC") and in particular RDC Part 38 (General Rules About Costs) and RDC Part 25.99.





2. Written evidence in support of an application for security for costs under RDC Part 25.99 must set out as a minimum the grounds on which security is sought and any factors relevant to the exercise of the Courts' discretion, such as location of the claimant's assets and any practical difficulties in enforcing any order for costs and must set out in detail with regard to costs already incurred, the elements described in RDC Part 38.35 and with regard to anticipated future costs, an estimate calculated by reference to the elements described in RDC Part 38.35. Such written evidence must be signed by the party or his legal representative pursuant to RDC Part 38.36.

**Chief Justice of the DIFC Courts**
Date: 5 September 2010

# PRACTICE DIRECTION NO. 4 OF 2010 SERVICE OF AN APPLICATION FOR RECOGNITION OR ENFORCEMENT OF AN ARBITRAL AWARD UNDER ARTICLES 42 AND 43 OF DIFC LAW NO. 1 OF 2008 (" DIFC ARBITRATION LAW")
OCTOBER 7, 2010

IN THE JUDICIAL AUTHORITY OF THE DUBAI INTERNATIONAL FINANCIAL CENTRE

DIFC COURTS

PRACTICE DIRECTION NO. 4 OF 2010

**Service of an Application for Recognition or Enforcement of an Arbitral Award under Articles 42 and 43 of DIFC Law No. 1 of 2008 (" DIFC Arbitration Law")**

**Citation**

This Practice Direction will come into effect on the date of issuance. It may be cited as **Practice Direction 4 of 2010 — Service of an Application for Recognition or Enforcement of an Arbitral Award under Article 42 and 43 of DIFC Law No. 1 of 2008 ("DIFC Arbitration Law")** and may be abbreviated to **PD 4/2010**.

**Arbitration Claims**

1. This Practice Direction should be read in conjunction with Articles 42 and 43 of the DIFC Arbitration Law and Part 43.61 of the Rules of the DIFC Courts ("RDC").

2. An application for recognition or enforcement of an arbitral award is generally made without notice, however service may be directed where the relevant time period for setting aside the award from the date of service of the award on the losing party has not yet expired, or there is some doubt about the regularity of the award or its service upon the respondent.

**Chief Justice of the DIFC Courts**
Date: 7 September 2010





# PRACTICE DIRECTION NO. 5 OF 2010 DIFC COURTS FORMS
OCTOBER 19, 2010

IN THE JUDICIAL AUTHORITY OF THE DUBAI INTERNATIONAL FINANCIAL CENTRE

DIFC COURTS
PRACTICE DIRECTION NO. 5 OF 2010

DIFC Courts Forms

**Citation**

This Practice Direction will come into effect on the date of signature. It may be cited as **Practice Direction 5 of 2010 – DIFC Courts Forms** and may be abbreviated to **PD 5/2010**.

**Courts' Forms**

1. This Practice Direction should be read in conjunction with DIFC Law No. 10 of 2004 and the Rules of the DIFC Courts and in particular Rule 5.1 (Forms).

2. The forms attached hereto as Schedule 1 shall be used in proceedings before the DIFC Courts. These forms replace the forms prescribed in DIFC Courts Practice Direction No. 2 of 2008.



**Chief Justice of the DIFC Courts**
Dated: 19 October 2010

**Schedule 1**

| | |
|---|---|
| P7/01 | Claim Form (Part 7) |
| P7/01C | Notes for Claimant on Filing a Part 7 Claim Form |
| P7/01 Defendant Notes | Notes for Defendant on Replying to a Part 7 Claim Form |
| P8/01 | Claim Form (Part 8) |
| P8/01C | Notes for Defendant on Replying to a Part 8 Claim Form |
| P8/02 | Acknowledgement of Service for Part 8 Claim |
| P11/01 | Acknowledgment of Service for Part 7 Claim |
| P11/01C | Notes for Defendant on Filing a Part 11 Acknowledgment of Service |
| P11/02 | Acknowledgment of Service for Probate Claim |
| P11/04 | Acknowledgment of Service for Costs Only Claim |
| P13/01 | Request for Default Judgment and Reply to Admission Specified Amount |
| P13/02 | Request for Default Judgment Amount to be Decided by Court |
| P15/01 | Admission of Whole Claim for Specified Amount of Money |
| P15/02 | Admission of Whole Claim for Unspecified Amount of Money or Non-money Claim |
| P15/03 | Request for Judgment on Full Admission Unspecified |








|  | Amount of Money or Non-money Claim |
| P16/01 | Defence of a Claim (Specified Amount) |
| P16/02 | Defence of a Claim (Unspecified Amount or Non-money Claims) |
| P16/01 and 16/02C | Notes for Defendant on Filing a Part 16 Defence |
| P20/01 | Part 20 Claim Form |
| P20/01C | Notes for Part 20 Defendant on replying to the Part 20 claim form |
| P20/02 | Judgment on Non-parties |
| P20/03 | Acknowledgment of Service for Part 20 Claim |
| P23/01 | Application Notice |
| P30/01 | Witness Summons |
| P32/01 | Offer to Settle |
| P33/01 | Notice of Payment into Court |
| P34/01 | Notice of Discontinuance |
| P37/01 | Notice of Change of Legal Representative |
| P38/01 | Statement of Costs Summary Assessment |
| P40/01 | Notice of Commencement of Assessment of Bill of Costs |
| P40/02 | Request for Default Costs Certificate |
| P42/01 | Acknowledgment of Service for Judicial Review |
| P43/01 | Arbitration Claim Form |
| P43/01 Defendant Notes | Notes for Defendant on Replying to a Part 43 Claim Form |
| P44/01 | Appeal Notice |
| P44/02 | Respondent's Appeal Notice |
| P45/01 | Application to Enforce Foreign Judgment |
| P46/01 | Application for a Charging Order |
| P47/01 | Application for a Third Party Debt Order (Provisional Garnishee Order) |
| P48/01 | Notice of Seizure |
| P48/02 | Order for Execution Against Assets |
| P48/03 | Order for Delivery |
| P48/04 | Writ of Possession |
| P48/05 | Writ of Sequestration |
| P48/06 | Duration and Renewal of Writ of Execution |
| P50/01 | Application for an Order Requiring an Individual Judgment Debtor to Attend Court to Provide Information |
| P50/02 | Application for an Order Requiring an Officer of a Judgment Debtor Company or Corporation to Attend Court to Provide Information |
| P53/01 | Claim Form (SCT) |
| P53/02 | SCT Appellant's Notice |
| P53/02C | Notes for Party Submitting Form 53/02 |





## TRIBUNAL PRACTICE DIRECTION NO. 1 OF 2011 – DECISIONS AND ORDERS BY FEWER THAN THREE TRIBUNAL MEMBERS.

APRIL 24, 2011

PRACTICE DIRECTIONS

**Citation**

This Practice Direction will come into effect on date of issue.It may be cited as 'Tribunal Practice Direction No. 1 of 2011 –Decisions and Orders by Fewer Than Three Tribunal Members'. It may be abbreviated to TPD 001/2011.

Having reviewed:

Degree No. 57 of 2009 concerning the Establishment of Special Tribunal, as amended by Degree No.11 of 2010;and

The Rules of the DIFC Courts(the "Rules")
**I hereby direct as follows:**



(1) A decision or order on behalf of the Tribunal may be made by two members if (a) only two members are available to hear the demand or claim and (b) they agree on the order to be made in respect thereof either (i) without the need to consult the third member or (ii) after consulting the third member but without a further hearing. If they then do not agree on the order to be made, they shall order a rehearing before three members.



(2) The following orders may be made on behalf of the Tribunal by single member: –

    (a) interim and interlocutory orders,including injunctions and orders for specific performance(not being final orders); provided that in any case where he is considering granting an interim injunction or making an interim order for specific performance the single member may direct that the application be heard or re-heard before a two- or three-member Tribunal as he thinks fit in all the circumstances of the case;
    (b) case management directions and orders;
    (c) and order to enforce of recognise and arbitration award;
    (d) and other order of substantive relief (including final orders and injunctions and orders of specific performance) where –
        (i) the matter is urgent, and
        (ii) the parties so agree.

(3) Any Tribunal member or members that consider(s) a matter pursuant to paragraph(1) and/or (2) above may sit on re-hearing of that matter pursuant to paragraphs(1) and or (2) (a) above.

(4) With the written permission of the Chairman, the Registrar shall have the same powers in proceedings before the Tribunal as are granted to the Registrar of the DIFC Courts under Part 3 of the Rules.

**Chairman of the Tribunal**
Date issued: 24 April 2011





# PRACTICE DIRECTION NO. 1 OF 2011 SMALL CLAIMS TRIBUNAL PRACTICE
MAY 4, 2011

THE DUBAI INTERNATIONAL FINANCIAL CENTRE

COURTS
PRACTICE DIRECTION NO 1 OF 2011

**Small Claims Tribunal Practice**
**Citation**

This Practice Direction will come into effect on the date of issue. It may be cited as Practice Direction 1 of 2011 — Small Claims Tribunal Practice and may be abbreviated to PD 1/2011.

1. This Practice Direction should be read in conjunction with the Rules of the DIFC Courts ("RDC") and in particular RDC Part 53 — Small Claims Tribunal ("SCT"), and DIFC Courts Order No. 1 of 2010 in respect of The DIFC Courts Small Claims Tribunal (Limits of Jurisdiction) (the "Order").

2. Where the Order refers to "amount of the claim or the value of the subject-matter of the claim" this shall not be deemed to include legal fees or interest.

3. Where the Order refers to the SCT's jurisdiction to hear claims exceeding AED 100,000 (one hundred thousand UAEDirhams) but not exceeding AED 500,000 (five hundred thousand UAE Dirhams) pursuant to an election in writing by all parties to the claim that it be heard by the SCT, neither party shall be able to withdraw such election without the approval of a SCT Judge.

4. Where a claimant is bringing claims based on separate invoices, the SCT Judge may treat these claims as a single consolidated claim under RDC 4.2(7) for the purposes of deciding whether the amount in dispute exceeds the limits of the SCT's jurisdiction.

5. RDC 53.10 states that "The Claimant must include in the claim form the name and address for service of the Defendant, together with any other available contact information." Where the Defendant is a company, the Claimant shall furnish proof of address where, to the best of his knowledge, the officers of Company may be found.

**Michael Hwang**
**Chief Justice of the DIFC Courts**
Dated:4 May 2011



## PRACTICE DIRECTION NO. 2 OF 2011 ELECTRONIC DISCLOSURE SPECIFIC DATE RANGES IN REQUESTS TO PRODUCE ELECTRONIC DOCUMENTS

SEPTEMBER 4, 2011

THE DUBAI INTERNATIONAL FINANCIAL CENTRE COURTS

PRACTICE DIRECTION NO. 2 OF 2011

**Electronic Disclosure Specific Date Ranges in Requests to Produce Electronic Documents**

**Citation**

This Practice Direction will come into effect on the date of issue. It may be cited as **Practice Direction 2 of 2011 — Electronic Disclosure: Specific Date Ranges in Requests to Produce Electronic Documents** and may be abbreviated to **PD 2/2011**.

1. This Practice Direction should be read in conjunction with DIFC Law No. 10 of 2004 and The Rules of the DIFC Courts("RDC") and in particular RDC Part 28 (Production of Documents) and **Rule 28.14** thereof.

2. A Request to Produce electronic documents shall specify the date on which the document was created or dated. If a thread of connected documents is requested, the requestor shall specify the range of dates of the thread.

**Michael Hwang**
**Chief Justice of the DIFC Courts**
Dated: 4 September 2011



## PRACTICE DIRECTION NO. 3 OF 2011 INSOLVENCY — (ADVERTISEMENT REQUIREMENTS IN INSOLVENCY PROCEEDINGS)

SEPTEMBER 4, 2011

THE DUBAI INTERNATIONAL FINANCIAL CENTRE COURTS

PRACTICE DIRECTION NO. 3 OF 2011

**Advertisement Requirements in Insolvency Proceedings**

**Citation**

This Practice Direction will come into effect on the date of issue. It may be cited as **Practice Direction 3 of 2011 — Insolvency (Advertisement Requirements in Insolvency Proceedings)** and may be abbreviated to **PD 3/2011**.

1. This Practice Direction should be read in conjunction with DIFC Insolvency Law (Law No. 3 of 2009); the DIFC Insolvency Regulations (in particular Regulation 5.3);





and Part 54 of The Rules of the DIFC Courts.

2. For satisfying Rules 54.61, 54.91(2) and 54.103 of the Rules of the DIFC Courts, the advertisement is to be published:
(1) Once in English in any of the following newspapers: English:
    (a) Gulf News
    (b) Khaleej Times
    (c) The National

And;

    (2) Once in Arabic in any of the following newspapers: Arabic:
        (a) Al Bayan
        (b) Al Khaleej
        (c) Al Ittihad

**Michael Hwang**
**Chief Justice of the DIFC Courts**
Dated: 4 September 2011

# PRACTICE DIRECTION NO. 4 OF 2011 PRO BONO FUND
SEPTEMBER 11, 2011

THE DUBAI INTERNATIONAL FINANCIAL CENTRE COURTS

PRACTICE DIRECTION NO.4 OF 2011

Pro Bono Fund

**Citation**

This Practice Direction will come into effect on the date of issue. It may be cited as **Practice Direction 4 of 2011 — Pro Bono Fund** and may be abbreviated to **PD 4/2011**

1. This Practice Direction:
    (a) establishes the Pro Bono Fund referred to in **Rule 38.89** for the payment into of costs received in favour of a party represented pro bono under **Rules 38.89**; and
    (b) sets out the method of distributing such funds for the purposes stated under **Rule 38.90.**

2. The Fund is established in accordance with Article 28 of DIFC Trust Law No. 11 of 2005 (as amended by DIFC Law No. 2 of 2007).

3. The Fund shall be administered by its Board of Trustees in accordance with the purposes of the trust.

4. Any individual, group or organisation may apply to the Fund by way of letter stating the kind of support that is required and why to the Pro Bono Programme Leader at the DIFC Courts Registry.



5. The application letter should state under which purpose of **Rule 38.90** the application is made and a full description of the project in respect of which funding is sought.

6. The Applicant should include with the letter any relevant documentation in respect of the Applicant's financial circumstances.

7. Subsequent to an application being made the Applicant may be requested to provide further information if necessary.

8. All applications will be determined at a meeting of Trustees held three times a year, unless the Trustees decide otherwise.

9. When making a decision on distribution of funds, the Board of Trustees will have an absolute discretion and the Trustees do not accept any duty or liability to any individual, group or organisation seeking a distribution.

10. The Fund will aim to operate transparently. Thus all grants will be listed in available records, on the Court website and in its annual report.

**Michael Hwang**
**Chief Justice of the DIFC Courts**
Dated: 11 September 2011



# PRACTICE DIRECTION NO. 5 OF 2011 GENERAL RULES ABOUT COSTS — (COST ORDER IN FAVOR OF PARTY REPRESENTED PRO BONO)
SEPTEMBER 11, 2011

THE DUBAI INTERNATIONAL FINANCIAL CENTRE COURTS

PRACTICE DIRECTION NO.5 OF 2011

**Cost Order in Favor of Party represented Pro Bono**

**Citation**

This Practice Direction will come into effect on the date of issue. It may be cited as **Practice Direction 5 of 2011 — General Rules about Costs — (Cost Order in Favor of Party represented Pro Bono)** and may be abbreviated to **PD 5/2011**

1. **Rule 38.91** sets out how the Court may determine the amount to be paid when making an order for costs under **Rule 38.89**.

2. The general rule is that the Court will make an immediate assessment of costs unless there is good reason not to do so.

3. Where an order under **Rule 38.90** is sought, to assist the Court in making an immediate assessment of the amount payable to the Fund, the party who has pro

616





bono representation must prepare, file and serve in accordance with **Rules 38.35 — 38.37** a written statement of the sum equivalent to the costs that party would have claimed for the legal representation had it not been provided free of charge

4. If a detailed assessment of costs is required then it shall be undertaken in accordance with Part 40 in the usual manner and the costs of the detailed assessment proceedings shall also be awarded to the Fund.

5. In proceedings where a party is represented pro bono the Court, wherever possible, shall reserve the issue of costs until the conclusion of the trial or final hearing. In general, a note shall be made on the Court file to indicate the costs order that would have been made at the interim stages had a party not been represented pro bono. The Court conducting the final hearing can then make a single costs order which reflects the justice of the case overall, providing for the interim successes and failures.

**Michael Hwang**
**Chief Justice of the DIFC Courts**
Dated: 11 September 2011



# PRACTICE DIRECTION. NO. 7 OF 2011 SMALL CLAIMS TRIBUNAL FEES CAP
**DECEMBER 20, 2011**

THE DUBAI INTERNATIONAL FINANCIAL CENTRE COURTS

PRACTICE DIRECTION NO. 7 OF 2011

**Small Claims Tribunal Fees Cap**

**Citation**

This Practice Direction will come into effect on the date of issue, St may be cited as **Practice Direction 7 of 2011 — Small Claims Tribunal Fees Cap** and may be abbreviated to **PD 7/2011.**

1. This Practice Direction should be read in conjunction with Practice Direction 6 of 2011 DIFC Courts' Fees,

2. Filing fees for claims related to an employment dispute shall be assessed as follows; 2% of the value of the claim with a minimum of USD 55 and a maximum of USD 4,000.

3. Should a claim relating to an employment dispute be referred to the CFI, an additional fee shall be payable at the rate of; 1 % of the value of the claim with a minimum of USD 55 and a maximum of USD 4,000.

**Michael Hwang**
**Chief Justice of the DIFC Courts**
Dated: 20 December 2011





# PRACTICE DIRECTION NO. 1 OF 2012 SUBMISSION OF DOCUMENTS

JANUARY 3, 2012

PRACTICE DIRECTION NO. 1 OF 2012

**Submission of Documents**

**Citation**

This Practice Direction will come into effect on the date of signature. It may be cited as **Practice Direction 1 of 2012 — Submission of Documents** and may be abbreviated to **PD 1 of 2012. It supercedes and replaces Registrar's Direction 5 of 2010**.

**Trials in the DIFC Courts:**

Where the trial is fixed for a Sunday, or for a Monday where the Judge is hearing other matters on the Sunday:

All documents to be submitted for the trial must be received by the DIFC Courts' Registry by no later than **10am on the Wednesday** prior to the trial. Skeleton arguments to be filed with the DIFC Courts by no later than **2pm on the Thursday** prior to the trial.



Where the hearing is fixed for a Tuesday, Wednesday or Thursday, or for a Monday where the Judge is not hearing other matters on the Sunday, the timeframe for submissions is set out in the Rules of the DIFC Courts.



**Heavy Applications (Rule 23.45 et al of the Rules of the DIFC Courts):**

Where the hearing is fixed for a Sunday, or for a Monday where the Judge is hearing other matters on the Sunday:

All documents to be submitted for the hearing of the Heavy Application must be received by the DIFC Courts' Registry by **10am on the Wednesday** prior to the hearing date. Skeleton arguments to be exchanged and filed with the DIFC Courts by no later than **2pm on the Thursday** prior to the hearing.

For all other applications to be heard by video conference, all documents must be received by the DIFC Courts' Registry by (i) **10am on the Wednesday** prior to any hearing fixed for a Monday or Tuesday, with Skeleton arguments to be filed with the Courts by **2pm on the Thursday** prior to the hearing and (ii) **10am on the Sunday** prior to any hearing fixed for a Wednesday or Thursday with Skeleton arguments to be filed with the Courts by **2pm on the day falling two working days** prior to the hearing.

For each day that a submission or filing (as described in this Practice Direction) is delayed, a charge of US$200 will be applied to the party responsible for making the filing.

Nothing in this Practice Direction shall affect any directions or orders of the DIFC Courts in relation to a trial or hearing, nor does it affect any obligations prescribed by the Rules



This contract shall be governed by and construed in accordance with the law of [INSERT PLACE]."

    **C) Exclusive Jurisdiction After a Dispute Arises /Over Existing Disputes** "A dispute having arisen between the parties concerning [DEFINE DISPUTE], the parties hereby agree that the dispute shall be subject to the exclusive jurisdiction of the DIFC Courts.The governing law of this agreement shall be the law of [INSERT PLACE]"

Dated this [ 8 ] day of March 2012
**Chief Justice Michael Hwang**

# PRACTICE DIRECTION NO. 1 OF 2013 CONCURRENT EXPERT EVIDENCE
MARCH 25, 2013

IN THE DUBAI INTERNATIONAL FINANCIAL CENTRE COURTS

PRACTICE DIRECTION NO.1 OF 2013

Concurrent Expert Evidence

Citation




This Practice Direction will come into effect on the date of signature. It may be cited as **Practice Direction 1 of 2013 – Concurrent Expert Evidence** – and may be abbreviated to **PD 1/2013**.

The Court may give directions that expert witnesses engaged by opposing parties be sworn and present their evidence concurrently as a panel (a practice commonly known as "hot–tubbing") in circumstances it considers appropriate.

Where the expert witnesses testify as a panel, each expert may, with the permission of the Court, give a short opening statement not exceeding 10 minutes (or such longer period as may be allowed by the Court) to introduce his report, and will thereafter be subject to questioning by the Court and Counsel, and the Court may direct that the expert witness may be questioned in any sequence as the Court thinks fit before or after they have testified as a panel. The expert witnesses may also be directed by the Court and Counsel to comment on the views of the other expert witnesses on the panel, and may also, with the permission of the Court, make a short concluding statement not exceeding 10 minutes (or such longer period as may be allowed by the Court).

The Court may give any other directions as to the giving of concurrent expert evidence as it thinks fit.

Dated this 25th day of March 2013
**Chief Justice Michael Hwang**





# PRACTICE DIRECTION NO. 2 OF 2013 CONFIDENTIALITY OF ARBITRAL PROCEEDINGS

MARCH 25, 2013

IN THE DUBAI INTERNATIONAL FINANCIAL CENTRE COURTS

PRACTICE DIRECTION NO.2 OF 2013

Confidentiality of Arbitral Proceedings

**Citation**

This Practice Direction will come into effect on the date of signature. It may be cited as **Practice Direction 2 of 2013 – Confidentiality of Arbitral Proceedings** – and may be abbreviated to **PD 2/2013**.

**1. Proceedings to be heard otherwise than in open court**

(1) Subject to subsection (2), arbitral proceedings under the DIFC Arbitration Law 2008 in the DIFC Courts are to be heard otherwise than in open court.

(2) The court may order those proceedings to be heard in open court –

(a) on the application of any party; or

(b) if, in any particular case, the court is satisfied that those proceedings ought to be heard in open court.

(3) An order of the court under subsection (2) is not subject to appeal.

**2. Restrictions on reporting of proceedings heard otherwise than in open court**

(1) This section applies to arbitral proceedings under the DIFC Arbitration Law 2008 in the DIFC Courts heard otherwise than in open court ("closed court proceedings").

(2) The court in which closed court proceedings are being heard must, on the application of any party, make a direction as to what information, if any, relating to the proceedings may be published.

(3) The court must not make a direction permitting information to be published unless–

(a) all parties agree that the information may be published; or

(b) the court is satisfied that the information, if published, would not reveal any matter (including the identity of any party) that any party reasonably wishes to remain confidential.



(4) Despite subsection (3), if–

    (a) the court gives a judgment in respect of closed court proceedings; and

    (b) the court considers that judgment to be of major legal interest, the court must direct that reports of the judgment may be published in law reports and professional publications.

(5) If the court directs under subsection (4) that reports of a judgment may be published, but any party reasonably wishes to conceal any matter in those reports (including the fact that the party was such a party), the court must, on the application of the party–

    (a) make a direction as to the action to be taken to conceal that matter in those reports; and

    (b) if the court considers that a report published in accordance with the direction made under paragraph (a) would still be likely to reveal that matter, direct that the report may not be published until after the end of a period, not exceeding 10 years, that the court may direct.

(6) A direction of the court under this section is not subject to appeal.

Dated this 25th day of March 2013
**Chief Justice Michael Hwang**



## PRACTICE DIRECTION NO. 3 OF 2013 SCHEDULE A TO PART 26 OF RULES OF DIFC COURTS – CASE MANAGEMENT INFORMATION SHEET –ADDENDUM
MARCH 25, 2013

IN THE DUBAI INTERNATIONAL FINANCIAL CENTRE COURTS

PRACTICE DIRECTION NO.3 OF 2013

**Schedule A to Part 26 of Rules of DIFC Courts – Case Management Information Sheet –Addendum**

**Citation**

This Practice Direction will come into effect on the date of signature. It may be cited as Practice Direction 3 of 2013 – Case Management Information Sheet – Addendum – and may be abbreviated to PD 3/2013.

To Schedule A to Part 26 of the Rules of the DIFC Courts – Case Management Information Sheet (CMIS) – shall be added the following questions:





"Rights of Audience

(21) Do any of the parties' legal representatives intend to request the Court to waive or vary any limitation on their right to appear before the Court? If so, please identify the limitation and the reasons relied upon.

(22) Has the legal representative's client consented to the making of the request?

(23) Does the legal representative practice with a legal practitioner already holding full rights of audience before the Court? If so, please identify the Practitioner. Has the Practitioner agreed to provide appropriate guidance to the legal representative if such guidance is requested?

(24) Does the legal representative agree that in the event of their request being granted, they will be bound by, and conduct themselves during the proceedings in full accordance with, the requirements of the Code of Conduct for Legal Practitioners in the DIFC Courts?"

A copy of the CMIS as it now reads is provided at attached Schedule 1.

The Court will decide on a case by case basis whether the granting of a waiver or variation is in the circumstances appropriate.

Dated this 25th day of March 2013

**Chief Justice Michael Hwang**
Schedule 1 to Practice Direction 3 of 2013 Revised Case Management Information Sheet Schedule A to Part 26 Case Management information sheet



## SCHEDULE 1 TO PRACTICE DIRECTION 3 OF 2013 REVISED CASE MANAGEMENT INFORMATION SHEET SCHEDULE A TO PART 26 CASE MANAGEMENT INFORMATION SHEET
MARCH 25, 2013

Party lodging information sheet:
Name(s) of legal representative(s)
Name(s) of individual legal representative(s) for trial:

(1) Approximately how many documents and how many pages of documents do you intend to produce on standard production of documents?

(2) How do you intend to produce documents to the other parties under RDC 28.6? (For example by hard copy or electronically.)

(3) By what date can you provide standard production of documents?

(4) Please estimate the legal costs associated with standard production of documents.





(5) Have the parties discussed standard production of documents? In particular, have the parties discussed the production of electronic documents? If so, please provide a summary of material areas of agreement and disagreement between the parties.

(6) Is production of specific documents likely to be required on any issue? If so, please give as much detail as is currently available.

(7) Have the parties discussed likely or potential requests for production of specific documents? In particular, have the parties discussed requests to produce electronic documents? If so, please provide a summary of material areas of agreement and disagreement between the parties.

(8) Are amendments to or is information about any statement of case required? If yes, please give brief details of what is required.

(9) Can you make any additional admissions? If yes, please give brief details of the additional admissions.

(10) Are any of the issues in the case suitable for trial as preliminary issues?

(11)
(a) On the evidence of how many witnesses of fact do you intend to rely at trial (subject to the directions of the Court)? Please give their names, or explain why this is not being done.



(b) By what date can you serve signed witness statements?

(c) How many of these witnesses of fact do you intend to call to give oral evidence at trial (subject to the directions of the Court)? Please give their names, or explain why this is not being done.

(d) Will interpreters be required for any witness?

(e) Do you wish any witness to give oral evidence by video link? Please give his or her name, or explain why this is not being done. Please state the country and city from which the witness will be asked to give evidence by video link.

(12)
(a) On what issues may expert evidence be required?

(b) Is this a case in which the use of a Court-appointed expert (see **Rule 31.29**) or an assessor (see **Rule 31 Part II**) might be suitable?

(c) On the evidence of how many expert witnesses do you intend to rely at trial (subject to the directions of the Court)? Please give their names, or explain why this is not being done. Please identify each expert's field of expertise.

(d) By what date can you serve signed expert reports?

(e) When will the experts be available for a meeting or meetings of experts?





(f) How many of these expert witnesses do you intend to call to give oral evidence at trial (subject to the directions of the Court)? Please give their names, or explain why this is not being done.

(g) Will interpreters be required for any expert witness?

(h) Do you wish any expert witness to give oral evidence by video link? Please give his or her name, or explain why this is not being done. Please state the country and city from which the witness will be asked to give evidence by video link.

(i) Do you consider it appropriate for Concurrent Expert Evidence (as explained in Practice Direction No. 1 of 2013) to be applied in this case? If not, please state why you think not.

(13) What are the trial advocates' present provisional estimates of the minimum and maximum lengths of the trial?

(14) What is the earliest date by which you believe you can be ready for trial?

(15) Is this a case in which a Pre-Trial Review is likely to be useful?

(16) Is there any way in which the Court can assist the parties to resolve their dispute or particular issues in it without the need for a trial or a full trial?

(17)



(a) Might some form of justice by reconciliation procedure assist to resolve or narrow the dispute or particular issues in it?

(b) Has the question at (a) been considered between the client and legal representatives (including those to appear at trial)?

(c) Has the question at (a) been explored with the other parties in the case?

(d) Do you request that the case is adjourned while the parties try to settle the case by justice by reconciliation or other means?

(e) Would an order for justice by reconciliation in the form of the Schedule to Part 27 be appropriate?

(f) Are any other special directions needed to allow for justice by reconciliation?



(18) What other applications will you wish to make at the Case Management Conference?

(19) Does provision need to be made in the pre-trial timetable for any application or procedural step not otherwise dealt with above? If yes, please specify the application or procedural step.

(20) Are there, or are there likely in due course to be, any related proceedings? Please give brief details.



**Rights of Audience**

(21) Do any of the parties' legal representatives intend to request the Court to waive or vary any limitation on their right to appear before the Court? If so, please identify the limitation and the reasons relied upon.

(22) Has the legal representative's client consented to the making of the request?

(23) Does the legal representative practice with a legal practitioner already holding full rights of audience before the Court? If so, please identify the Practitioner. Has the Practitioner agreed to provide appropriate guidance to the legal representative if such guidance is requested?

(24) Does the legal representative agree that in the event of their request being granted, they will be bound by, and conduct themselves during the proceedings in full accordance with, the requirements of the Code of Conduct for Legal Practitioners in the DIFC Courts?

[Signature of legal representative(s)]

Note: This information sheet must be lodged with the Registry at least 7 days before the Case Management Conference (with a copy to all other parties).





# PRACTICE DIRECTION NO. 4 OF 2013 PERMISSION TO APPEAL
MAY 29, 2013

**IN THE DUBAI INTERNATIONAL FINANCIAL CENTRE COURTS**

**PRACTICE DIRECTION NO. 4 OF 2013**

**Permission to Appeal**

**Citation**

This Practice Direction will come into effect on the date of signature. It may be cited as Practice Direction 4 of 2013 — Permission to Appeal — and may be abbreviated to PD 4/2013.

In instances in which a party seeks the appeal court's permission to appeal against a decision of the Court of First Instance in an appeal notice (Rule 44.7(2) of the Rules of the DIFC Courts (RDC)), the application for permission to appeal may not be put before the judge against whose decision permission to appeal is being sought.

The above restriction applies in the context of applications to the appeal Court for permission to appeal without a hearing (see RDC 44.12), as well as applications in which the appeal Court, without a hearing, has refused permission to appeal, and the party seeking permission requests the decision to be reconsidered at a hearing (see RDC 44.15).





This Practice Direction in no way amends or limits the provisions contained in Part 44 of the Rules of the DIFC Courts.

Dated this 29th day of May 2013
**Chief Justice Michael Hwang**

# PRACTICE DIRECTION NO. 6 OF 2013 DIFC COURTS' PRO BONO ACCOUNT
SEPTEMBER 16, 2013

**IN THE DUBAI INTERNATIONAL FINANCIAL CENTRE COURTS**

**PRACTICE DIRECTION NO. 6 OF 2013**

**DIFC Courts' Pro Bono Account**

**Citation**

This Practice Direction will come into effect on the date of signature. It may be cited as **Practice Direction 6 of 2013 – DIFC Courts' Pro Bono Account** – and may be abbreviated to **PD 6/2013**.

This Practice Direction amends specific sections of Practice Direction No. 4 of 2011 on the DIFC Courts' Pro Bono Fund. All remaining unaffected clauses shall remain as they are unaffected by this amendment. PD 4/2011 must be read in conjunction with PD 6/2013.




Rules that are affected by this amendment must be reviewed and rectified in the next Rules Review exercise.

Below are the clauses of PD 4/2011 that are amended and or omitted:

1. Clause 1 (a) to read: establishes the Pro Bono Account referred to in **Rule 38.90** for the payment into of costs received in favour of a party represented pro bono under **Rules 38.89**.

2. Clause 2 is deleted.

3. Clause 3 to read: The Account shall be administered by the signatories of the account who are Chief Justice, the Deputy Chief Justice, the Registrar and the Deputy Registrar in accordance with the purposes of the Account.

4. Clause 4 to read: Any individual, group or organisation may apply to the Account by way of letter stating the kind of support that is required and why to the Pro Bono Programme Leader at the DIFC Courts Registry.

5. Clause 8 to read: All applications will be determined by the signatories. The Chief Justice will have the final determination.



6. Clause 9 to read: When making a decision on distribution of funds, the signatories will have an absolute discretion and the signatories do not accept any duty or liability to any individual, group or organisation seeking a distribution.

7. Clause 10 to read: All grants will be listed in available records, on the Court website and in its annual report.

**Michael Hwang**
**Chief Justice of the DIFC Courts**
Dated: 16 September 2013

# PRACTICE DIRECTION NO. 1 OF 2014 DIFC COURTS' PRO BONO PROGRAMME AMENDMENT
JANUARY 15, 2014

IN THE DUBAI INTERNATIONAL FINANCIAL CENTRE COURTS

PRACTICE DIRECTION NO. 1 OF 2014

**DIFC Courts' Pro Bono Programme Amendment**

**Citation**



This Practice Direction will come into effect on the date of signature. It may be cited as **Practice Direction 1 of 2014 — DIFC Courts' Pro Bono Programme Amendment** — and may be abbreviated to **PD 1/2014**.



This Practice Direction amends Practice Direction No. 5 of 2013 on the DIFC Courts' Pro Bono Programme. The Guidelines which follow shall replace those found in the Practice Direction 3 of 2009.

The amended clause of the guideline is number 15 as reflected in the guidelines below.

Chief Justice Michael Hwang
Dated: 15th January 2014

DIFC Courts' Pro Bono Programme Guidelines

**Purpose**

The introduction of the DIFC Courts' Pro Bono Programme (the "Programme") derived from a need in the community for pro bono legal representation. The DIFC Courts' aim is to facilitate representation of individuals that are in need of such, but who cannot afford to retain lawyers. The DIFC Courts have a mission to provide accessibility to justice and to ensure that all parties are on an equal footing in proceedings before the Courts. The services offered in the Programme will be delivered to eligible individuals ("pro bono litigants") who approach the Registry of the DIFC Courts requesting assistance. To ensure consistency of pro bono representation, information and procedures, the DIFC Courts provide the following guidelines in relation to the Programme.




In addition, to enable greater accessibility the Programme introduced Pro Bono clinics which run on a regular basis providing brief legal advice about matters relating to the DIFC.

**Guidelines**

1. The following may participate in the Programme (as a "volunteer practitioner"):
   a. Any person or firm registered in the Register of Practitioners of the DIFC Courts; and
   b. Any person or firm who or which does not qualify under (a.) above but who or which satisfies the Pro Bono Programme Leader that he/she/it is legally qualified to give pro bono advice.

2. If a pro bono litigant directly contacts a volunteer practitioner, the volunteer practitioner should ask the individual to contact the Pro Bono Programme Leader at the DIFC Courts directly for assistance on the DIFC Courts' Pro Bono email: Pro.bono@difccourts.ae.

3. The Pro Bono Programme Leader will be chosen by the Chief Justice of the DIFC Courts. The Programme Leader will be responsible for all aspects of the operation and administration of the Programme.

4. Each individual practitioner wishing to take part in the Pro Bono Programme should complete the volunteer form and submit it to the Programme Leader. [The Individual Volunteer Form can be found at: Individual Volunteer Form] The completed form should be sent by email to the Programme Leader at Pro.bono@difccourts.ae.



5. Any firm wishing to register shall include in its volunteer form, among other things, the details of a person in the firm with whom the DIFC Courts can liaise for pro bono matters, including the referral of pro bono litigants. [The Law Firm Volunteer form can be found at: Volunteer Law Firm Form] The completed form should be sent by email to the Programme Leader at Pro.bono@difccourts.ae.



6. There are several legal matters that fall outside the purview of our pro bono programme. The legal advice that our volunteer practitioners provide will be focused on issues that do or might fall within the jurisdiction of the DIFC Courts. We do not provide legal assistance on matters which are criminal in nature or which are governed by personal laws, such as family or inheritance laws, or those originating from organisations or transactions outside our jurisdiction.

7. A pro bono litigant should complete a pro bono litigant intake form. [The Pro bono litigant intake form can be found at: Pro Bono Litigant Intake Form] The completed form should be sent by email to the Programme Leader at Pro.bono@difccourts.ae. The intake form requires the pro bono litigant to briefly describe the nature of their claim, their financial position and the type of remedy sought. In order for a pro bono litigant to be eligible for the Programme, and to continue to retain free legal services, the pro bono litigant must provide evidence to the Programme Leader that he/she cannot afford a lawyer. It is at the discretion of the Programme Leader as to the evidence required, and based on that evidence; the Programme Leader will decide whether the litigant is eligible for the Programme. It must be recognised that the decision of the Programme Leader is final.



8. A pro bono litigant must notify the volunteer practitioner and the Programme Leader if, at any time during the course of pro bono representation, his or her financial position changes such that he/she is, or will be able, to retain a lawyer. Failure to notify the volunteer practitioner and Programme Leader of such a change in the pro bono litigant's financial circumstances may result in him or her being held liable for the legal costs and any fees waived under this Programme.

9. Once an applicant has been admitted into the Programme, he/she will be added to the Pro Bono Register, and a volunteer practitioner will be assigned. The Programme Leader will endeavour to allocate no more than one pro bono litigant to each volunteer practitioner at any given time. However, there may be instances in which that number is exceeded.

10. The successful applicant will be entitled to free legal services, but this is only in relation to his/her own legal costs. Save as provided for in paragraph 11 below, the pro bono litigant will most likely have to cover the legal costs of the other party or parties in the event that the pro bono litigant loses the case.

11. There can be instances in which a pro bono litigant may be entitled to a cost free trial, where he/she will not be obligated to meet the legal costs of the opposing party or parties even if the pro bono litigant loses his or her case. The pro bono litigant will only be entitled to this once an application has been approved by the Pro Bono Panel (the 'Panel') of the DIFC Courts.



Not all applications for a costs free trial will be forwarded for the consideration of the Panel. Only certain qualifying applications will be put forward to the Panel for its consideration. The legal representative of the pro bono litigant (the law firm that agreed to pursue the pro bono litigant's case) must support a pro bono applicant's application for a costs free trial, and must certify that in their opinion there is a reasonable prospect of the pro bono applicant's case succeeding. Similarly, the opposing party's or parties' legal representative will be given the opportunity to respond to the application for a costs free trial and may provide its submissions about why the pro bono litigant should not be permitted a costs free trial. A pro bono litigant may only be granted a costs free trial once the application has been forwarded to the Panel by the Programme Leader and the Panel has subsequently determined that the applicant meets the threshold of financial inability, case merit and such other criteria as the Panel may determine is relevant from time to time. The Panel has absolute discretion as to whether an applicant meets the threshold for a costs free trial. A brief description of the guidelines under which the Panel operates is attached. 

12. A pro bono litigant can at any time apply to the Programme Leader to have the court fees suspended until the end of the case. The Programme Leader has absolute discretion in determining whether court fees are to be suspended and to what extent.

13. If the pro bono litigant's action is successful and the litigant is awarded costs, all legal costs and court fees are payable to the DIFC Courts' Pro Bono Fund. Assessment shall be undertaken on a summary basis by a Judge or the Registrar. Parties should consider Practice Direction no. 5 of 2011 — Cost Order in Favour of Party represented Pro Bono.



14. When a volunteer practitioner takes on a pro bono engagement, both the volunteer practitioner and the pro bono litigant should sign a letter of engagement which outlines the scope of the pro bono engagement. A sample letter for law firms is attached and for other examples (eg. such as in-house counsel, non-practising lawyers etc.) please contact the Courts' Pro Bono team at Pro.bono@difccourts.ae. One copy will be retained by the volunteer practitioner; one copy will be provided to the pro bono litigant; and a third copy will be provided to the Programme Leader.

15. Each pro bono engagement must be clearly defined in the pro bono letter of engagement in respect to the type of service and scope of work to be provided. Pro bono engagements can range from basic advice to full case management and trial, as well as representation in proceedings. The pro bono engagement only encompasses the Small Claims Tribunal, in accordance with part 53 of the Rules of the DIFC Courts, and the Court of First Instance. If the pro bono litigant and the volunteer practitioner agree to continue the representation to cover an appeal or additional claim, a new pro bono letter of engagement will need to be submitted to the Programme Leader. In the absence of such agreement, the pro bono litigant may apply to the Programme Leader requesting a referral to another volunteer practitioner.

16. If a pro bono litigant is not satisfied with the type of service and/or scope of work offered by the volunteer practitioner or for any other valid reason, he/she may approach the Programme Leader to request a change in representation. The Programme Leader has the absolute discretion to determine whether to assign the pro bono litigant an alternative volunteer practitioner.




17. Volunteer practitioners which are firms shall ensure that pro bono litigants and their matters are administered and handled to the same high standards as for non–pro bono clients. All volunteer practitioners who represent pro bono clients in proceedings before the DIFC Courts must act in accordance with the Code of Professional Conduct for Legal Practitioners issued by the DIFC Courts.

18. In the interests of promoting accessibility to representation for pro bono litigants, the DIFC Courts reserve the right to waive the requirement of Part II registration in order for a volunteer practitioner (and where the volunteer practitioner is a firm, for lawyers of that firm) to appear in Court in relation to pro bono cases only. Upon application to, and acceptance by, the Programme Leader a volunteer practitioner (and where the volunteer practitioner is a firm, a lawyer of that firm) may represent the pro bono litigant in Court.

19. The Programme Leader will maintain a confidential spread sheet detailing the number of occasions on which a volunteer practitioner has agreed to provide assistance to a pro bono litigant. From time to time, the spread sheet will be reviewed by the Programme Leader to determine which volunteer practitioner should remain on the Pro Bono Register.

[Note: This is a sample form only. Use of this letter will help to establish clear expectations and avoid misunderstandings between the volunteer practitioner and the pro bono litigant.]





DIFC COURTS' PRO BONO PROGRAMME
[SAMPLE] LETTER OF ENGAGEMENT FOR FIRMS

[Date]

[Pro Bono Litigant Name & Address]

**Re: Scope of representation**

Dear [Pro Bono Litigant]:

This letter will confirm the terms of our representation. Our work will begin upon receipt of a signed copy of this letter.

[Name of volunteer practitioner] will provide legal services to [Pro bono litigant name], and the scope of services we will render and other aspects of the proposed representation are mutually agreed to be as follows: [Name of volunteer practitioner] will provide legal services to [Pro bono litigant name], and the scope of services we will render and other aspects of the proposed representation are mutually agreed to be as follows:

**Services to be Provided:**

[Name of volunteer practitioner] has been engaged to provide the following services: [list services to be provided].



**Excluded Services**

[Name of volunteer practitioner] has not been engaged to provide the following services: [list services that are outside the scope of the representation].



**Expenses:**

We may incur various expenses in providing services. We will inform you before incurring expenses for your approval. You agree to pay all such expenses and to reimburse us for all out-of-pocket expenses that we pay on your behalf provided you had prior notification and gave your approval to the disbursement. Whenever possible, we will forward bills for any expenses incurred on your behalf directly to you and you agree to make prompt payment directly to the originator of these bills. Expenses that may be incurred include, but are not limited to, photocopying, faxing, courier fees, court fees, expert's fees and mailing disbursements.

**Client Cooperation**

Our expectations of you are *[list any expectations concerning maintaining accurate address and contact information, responses to requests for information, communication, etc.]*.





**Documentation**

The DIFC Courts will keep copies of all of your case related documents and correspondence once a claim is filed with the Court. We will keep copies of this information as well. If you wish to have your own copies of these documents you may request copies from the Registry of the DIFC Courts and pay the appropriate copying charges. Once we have completed the legal work necessary to conclude this matter, we will close our file and return any original documents to you.

**Your Right to Terminate Representation**

You may terminate this representation at any time with or without cause by notifying us and the DIFC Courts' Pro Bono Programme Leader in writing of your desire to do so. Upon receipt of the notice to terminate representation, we will stop all legal work on your behalf immediately. You will be responsible for paying all expenses incurred on your behalf in this matter before the date of written notice of termination was received.

**Our Right to Terminate Representation**



We may terminate our representation (to the extent permitted by the Code of Conduct of the DIFC Courts and the Rules of the DIFC Courts) at any time if you breach any material term of this agreement or fail to cooperate or follow our advice on a material matter, if a conflict of interest develops or is discovered, or if there exists at any time any facts or circumstance that would, in our opinion, render our continuing representation unlawful, unethical, or otherwise inappropriate. If we elect to terminate our representation, you will take all steps reasonably necessary and will cooperate as reasonably required to free us of any further obligation to perform legal services, including the execution of any documents necessary to complete our withdrawal from representation. In such case, you agree to pay for all expenses incurred before the termination of our representation in accordance with the provision of this agreement.



**Eligibility Requirements**

In order to be eligible for the DIFC Courts' Pro Bono Programme and to continue to retain our legal services, you have certified to the DIFC Courts that you cannot afford a lawyer, along with providing relevant evidence. You must notify us and the Pro Bono Programme Leader if at any time during this representation your financial position changes such that you would be able to retain a lawyer to represent you.

If any of the terms stated in this letter are not consistent with your understanding of our agreement, please contact us before signing the agreement. Otherwise, please sign the agreement in the space provided below and return it to [*email address and/or postal address information*]. Also, please provide a signed copy to the DIFC Courts' Pro Bono Programme Leader.

If you have questions, please feel free to call on [*telephone number*].

Yours sincerely,

[Name of volunteer practitioner]

**I have read and consent to the terms contained in this letter.**

_____
Signature

_____
Printed Name

_____
Date

**DIFC Courts Pro Bono Panel Guidelines**

1. The DIFC Courts' pro bono panel will comprise of seven members and will include:

   a. The Pro Bono Programme Leader; and

   b. Six lawyers who are registered with the DIFC Courts' Register of Legal Practitioners.

2. The tenure of membership will be for a period of one year and there will be a review after that period. The review will be done by the Pro Bono Programme Leader. The Pro Bono Programme Leader will assess, among other things, the contribution of the panel members and can either:

   a. Choose to continue with the existing panel members for another year; or

   b. Choose a new panel member or members.

3. The panel will be required to process an application within 14 working days of the application being submitted to it.

4. Meetings:
   a. The venue for each meeting shall be determined by the Pro Bono Programme Leader and panel members shall be considered present at the meeting if they attend in person or by telephone.

   b. Not less than three panel members (including the Pro Bono Programme Leader) must be present at a meeting for the meeting to be quorate and at any meeting the decision of a majority of the panel members present at that meeting shall bind the panel. The Pro Bono Programme Leader shall have a casting vote.

   c. Members shall not be permitted to appoint a delegate or proxy to attend at or vote at meetings.

5. The panel will have to assess two different facets of each application:



a. The financial inability of the pro bono applicant: The panel will have to assess whether the pro bono litigant is unable to meet his/her legal costs and that of his/her opponents, in the event that he/she loses the claim. This assessment will be comprehensive and will include thorough examination of all the documents that deal with the financial position of the pro bono litigant.

b. The merits of the case at hand: Aside from the financial inability of the pro bono litigant, the panel will also have to determine whether the case at hand has a reasonable chance of succeeding if it goes to trial.

The pro bono litigant can only have a costs free trial once both conditions have been met and when the same has been confirmed by the panel.

6. When determining whether a costs free trial should be granted, the Panel will give both the pro bono litigant's lawyers and the opposing party's or parties' lawyers an opportunity to present their reasons why a costs free trial should or should not be awarded. The panel, after permitting both sides to present the above arguments, will make a decision as to whether or not the pro bono litigant will be granted a costs free trial.

7. Upon confirmation that a pro bono litigant is granted a costs free trial, notice is to be served on the other parties to the case that they cannot recover legal costs from the pro bono litigant, even if the pro bono litigant loses the case.



# PRACTICE DIRECTION NO. 2 OF 2014 PARTICULARS OF CLAIM — GOVERNING LAW AND DIFC COURTS' JURISDICTION
FEBRUARY 16, 2014

**IN THE DUBAI INTERNATIONAL FINANCIAL CENTRE COURTS**

**PRACTICE DIRECTION NO. 2 OF 2014**

**Particulars of Claim — Governing Law and DIFC Courts' Jurisdiction
Citation**

This Practice Direction will come into effect on the date of signature. It may be cited as **Practice Direction 2 of 2014 — Particulars of Claim — Governing Law and DIFC Courts' Jurisdiction** — and may be abbreviated to **PD 2/2014**.

When submitting particulars of claim in accordance with Part 7 of the Rules of the DIFC Courts (RDC), whether this is done at the same time as submission of the claim form or separately as provided by RDC 7.31 (2), the following must be stated clearly:

(a) the law that the Claimant maintains governs the dispute; and the Defendant must in turn expressly agree or disagree with that assertion; and





(b) the law that the Claimant maintains gives rise to the jurisdiction of the DIFC Courts in respect of its claim; and the Defendant must in turn expressly agree or disagree with that assertion.

The above requirements also apply in the context of a counterclaim.

Dated this [16] day of February 2014
**Chief Justice Michael Hwang**

## PRACTICE DIRECTION NO. 3 OF 2014 CONFIDENTIALITY OF SMALL CLAIMS TRIBUNAL (SCT) JUDGMENTS ON APPEAL TO COURT OF FIRST INSTANCE
MAY 28, 2014

IN THE DUBAI INTERNATIONAL FINANCIAL CENTRE COURTS
PRACTICE DIRECTION NO. 3 OF 2014

**Confidentiality of Small Claims Tribunal (SCT) Judgments on Appeal to Court of First Instance**
**Citation**



This Practice Direction will come into effect on the date of signature. It may be cited as **Practice Direction 3 of 2014 — Confidentiality of SCT Judgments on Appeal** — and may be abbreviated to **PD 3/2014**.

1. Where an SCT judgment has been appealed to the Court of First Instance in accordance with RDC ("Rules of the DIFC Courts") 53.75 and 44.143; and where the Court of First Instance subsequently issues a judgment which is to be made publically available, both the parties' names and the names of individuals referred to in the judgment shall remain confidential unless the Court orders otherwise.

2. Paragraph 1 above may be read as an extension of the principle of the confidentiality of the SCT process (see in this regard 53.45).

Dated this 28 day of May 2014
**Chief Justice Michael Hwang**

## PRACTICE DIRECTION NO. 4 OF 2014 DIFC COURTS' WASTED COSTS ORDERS
JUNE 23, 2014

IN THE DUBAI INTERNATIONAL FINANCIAL CENTRE COURTS

PRACTICE DIRECTION NO. 4 OF 2014

DIFC Courts' Wasted Costs Orders
Citation



This Practice Direction will come into effect on the date of signature. It may be cited as **Practice Direction 4 of 2014 – DIFC Courts' Wasted Costs Orders** – and may be abbreviated to **PD 4/2014**.

**Wasted Costs**

**Personal liability of legal representative for costs – wasted costs orders: rule 38.83**

    1. A wasted costs order is an order –

      (a) that the legal representative pay a sum (either specified or to be assessed) in respect of costs to a party; or

      (b) for costs relating to a specified sum or items of work to be disallowed.

    2. Rule 38.83 deals with wasted costs orders against legal representatives. Such orders can be made at any stage in the proceedings up to and including the detailed assessment proceedings. In general, applications for wasted costs are best left until after the end of the trial.

    3. The Court may make a wasted costs order against a legal representative on its own initiative.

    4. A party may apply for a wasted costs order –

      (a) by filing an application notice in accordance with Part 23; or

      (b) by making an application orally in the course of any hearing.

    5. It is appropriate for the Court to make a wasted costs order against a legal representative, only if –

      (a) the legal representative has acted improperly, unreasonably or negligently;

      (b) the legal representative's conduct has caused a party to incur unnecessary costs, or has meant that costs incurred by a party prior to the improper, unreasonable or negligent act or omission have been wasted;

      (c) it is just in all the circumstances to order the legal representative to compensate that party for the whole or part of those costs.

    6. The Court will give directions about the procedure to be followed in each case in order to ensure that the issues are dealt with in a way which is fair and as simple and summary as the circumstances permit.

    7. As a general rule the Court will consider whether to make a wasted costs order in two stages –

      (a) at the first stage the Court must be satisfied –

        (i) that it has before it evidence or other material which, if unanswered, would be likely to lead to a wasted costs order being made; and



        (ii) the wasted costs proceedings are justified notwithstanding the likely costs involved;

    (b) at the second stage, the Court will consider, after giving the legal representative an opportunity to make representations in writing or at a hearing, whether it is appropriate to make a wasted costs order in accordance with paragraph 5 above.

8. The Court may proceed to the second stage described in paragraph 7 without first adjourning the hearing if it is satisfied that the legal representative has already had a reasonable opportunity to make representations.

9. On an application for a wasted costs order under Part 23 the application notice and any evidence in support must identify –
    (a) what the legal representative is alleged to have done or failed to do; and

    (b) the costs that the legal representative may be ordered to pay or which are sought against the legal representative.

Dated this 23rd day of June 2014
**Chief Justice Michael Hwang**

# PRACTICE DIRECTION NO. 5 OF 2014 DIFC COURTS' COSTS REGIME
AUGUST 12, 2014



IN THE DUBAI INTERNATIONAL FINANCIAL CENTRE COURTS

PRACTICE DIRECTION NO. 5 OF 2014

DIFC Courts' Costs Regime

**Citation**

This Practice Direction will come into effect on the date of signature. It may be cited as **Practice Direction 5 of 2014 – DIFC Courts' Costs Regime** – and may be abbreviated to **PD 5/2014**.

**Costs on the Indemnity Basis – RDC 38.17**

1. In determining whether costs should be assessed on the indemnity basis as opposed to the standard basis (see in this regard RDC (Rules of the DIFC Courts) 38.17), the following factors, inter alia, will be taken into consideration in the exercise of a judge's discretion:

    (i) circumstances where the facts of the case and/or the conduct of the paying party are/is such as to take the situation away from the norm; for example where the Court has found deliberate misconduct in breach of a direction of the Court or unreasonable conduct to a high degree in connection with the litigation; or







(ii) otherwise inappropriate conduct in its wider sense in relation to a paying party's pre–litigation dealings with the receiving party, or in relation to the commencement or conduct of the litigation itself; or

(iii) where the Court considers the paying party's condut to be an abuse of process.

2. It is open to the Court to award costs on the indemnity basis in relation to specific portions of the trial or hearings (such as reliance on deficient expert evidence, uncalled for behaviour during cross–examination etc.) that have led to unnecessary costs being incurred by the other party to litigation.

3. An order for indemnity costs will not enable a party to receive more costs than they have incurred. Even on the indemnity basis the receiving is restricted to recovering only the amount of costs which have been reasonably incurred (subject to RDC 38.19). The award of costs on the indemnity basis is normally reserved to cases where the Court wishes to indicate its disapproval of the conduct in the litigation of the paying party.

**RDC 38.55**

4. For the purposes of clarification, RDC 38.55, (which provides that where the Court issues an Order which does not mention costs the general rule is that no party is entitled to costs in relation to that Order), applies only to sealed orders and does not extend to judgments. The Court may subsequently issue a consequential order including a Costs Order regardless of whether costs were dealt with in a judgment on the merits.

**Costs on Account**

5. Where the Court has ordered a party to pay costs subject to detailed assessment unless agreed, it will order 50% of the amount claimed in the statement of costs to be paid on account before the costs are assessed, unless the Court sees fit to order otherwise.

**Costs Assessment Fees**

6. The applicable fee for a costs assessment is hereby amended to 7.5 % of the amount claimed in the bill of costs, with a 50% refund if the parties settle in full and advise the Court within 21 days of the date of the detailed costs assessment hearing.

**Costs Summary/Bill of Costs — Signed Statement**

7. Any costs summary or bill of costs must include a statement signed by a registered practitioner that the bill accurately reflects the amounts which the Client is liable to pay and that there are no arrangements in place which will reduce the amount due and payable by the Client dependent on the outcome of the costs assessment.



**Mediation**

8. In exercising its discretion as to costs, the Court may take into account parties' conduct in relation to any attempt at mediation or any other means of alternative dispute resolution. Moreover, parties are encouraged to seek mediation in the context of costs liability.

Dated this 12th day of August 2014
**Chief Justice Michael Hwang**


# PRACTICE DIRECTION NO. 6 OF 2014 CONFIDENTIALITY OF MEDIATION PROCEEDINGS
AUGUST 12, 2014

IN THE DUBAI INTERNATIONAL FINANCIAL CENTRE COURTS

PRACTICE DIRECTION NO. 6 OF 2014

**Confidentiality of Mediation Proceedings**

**Citation**

This Practice Direction will come into effect on the date of signature. It may be cited as **Practice Direction 6 of 2014 — Confidentiality of Mediation Proceedings** — and may be abbreviated to **PD 6/2014**.



1. In circumstances in which parties have entered into mediation communications, either before (pre-action) or after a claim has been filed with the DIFC Courts, the content of those communications shall be treated as having been made on a "without prejudice" basis, and parties will not be able to rely on them during the course of proceedings before the DIFC Courts.

2. The term mediation shall be taken to encompass mediation, conciliation and other forms of alternative dispute resolution provided for under Part 27 of the Rules of the DIFC Courts (RDC).

3. For the purpose of this Practice Direction, communications shall extend to statements that are made orally, through conduct or in writing or other recorded activity. This would not include non-verbal conduct through which no assertions are made, such as the fact that a person attended or did not attend mediation.

4. The Court may admit evidence of mediation communications on any ground (based on applicable legal principles) under which "without prejudice" communications may be admitted as evidence.

5. Where the Court decides to admit evidence of mediation communications pursuant to paragraph 4 above, it shall admit only such part of the mediation communications as it considers necessary for the application of the relevant exception to confidentiality.



6. The Court will not normally permit a mediator to give evidence of mediation communications except as provided in paragraph 4 above.

7. Nothing in this Practice Direction shall affect the general law of confidentiality or privilege.

Dated this 12th day of August 2014
**Chief Justice Michael Hwang**

# DIFC COURTS PRACTICE DIRECTION NO. 1 OF 2015 – ELECTIVE JURISDICTION OF THE DIFC COURTS
## FEBRUARY 16, 2015

ANNEX A1

**Practice Direction No. 1 of 2015** IN THE DUBAI INTERNATIONAL FINANCIAL CENTRE COURTS (DIFC COURTS)

Elective Jurisdiction of the DIFC Courts

**Citation**

This Practice Direction will come into effect on the date of signature. It replaces Practice Direction No. 2 of 2012 (Jurisdiction of the DIFC Courts). It may be cited as Practice Direction No. 1 of 2015, and may be abbreviated to PD 1/2015.

**Elective Jurisdiction of the DIFC Courts:**

While compliance with Article 5(A)(2) of Dubai Law No. 12 (as amended), is ultimately a matter of interpretation by the Courts in a hearing, the Registry will accept Claim Forms filed by the Parties which rely on Article 5(A)(2) to invoke the jurisdiction of the DIFC Courts if accompanied by submission agreements in one of the forms set out below, without prejudice to any subsequent challenge that may be made to that jurisdiction on the ground that the submission relied on does not satisfy the requirements of Article 5(A)(2). Alternative forms of submission agreements will also be accepted if the Registry considers that such agreements prima facie comply with the requirements of Article 5(A)(2).

**Suggested Jurisdiction Clauses**

**A) Exclusive Jurisdiction of the DIFC Courts Before a Dispute Arises**

Any dispute, difference, controversy or claim arising out of or in connection with this contract, including (but not limited to) any question regarding its existence, validity, interpretation, performance, discharge and applicable remedies, shall be subject to the exclusive jurisdiction of the Courts of the Dubai International Financial Centre ("the DIFC Courts").








**B) Non-Exclusive Jurisdiction of the DIFC Courts Before a Dispute Arises**

Any dispute, difference, controversy or claim arising out of or in connection with this contract, including (but not limited to) any question regarding its existence, validity, interpretation, performance, discharge and applicable remedies, shall be subject to the non-exclusive jurisdiction of the Courts of the Dubai International Financial Centre ("the DIFC Courts"). Each party irrevocably submits to the jurisdiction of the DIFC Courts and waives any objection it may have to disputes arising out of or in connection with this contract being heard in the DIFC Courts on the grounds that it is an inconvenient forum (forum non conveniens).

**C) Exclusive Jurisdiction After a Dispute Arises**

Any dispute, difference, controversy or claim arising out of or in connection with [Define Dispute], including (but not limited to) any question regarding the existence, validity, interpretation, performance, discharge and applicable remedies of the underlying contract in dispute, shall be subject to the exclusive jurisdiction of the Courts of the Dubai International Financial Centre ("the DIFC Courts").

Nothing in this Practice Direction shall be taken to rescind, vary, curtail or suspend the effect or operation of any judgment of the DIFC Courts save as expressly provided in the Rules of the DIFC Courts as they may be amended from time to time.

Dated this 16 day of February 2015
**Chief Justice Michael Hwang**



# DIFC COURTS PRACTICE DIRECTION NO. 3 OF 2015 – REVIEW OF DIFC COURTS OFFICER AND REGISTRAR DECISIONS
MAY 25, 2015



**IN THE DUBAI INTERNATIONAL FINANCIAL CENTRE COURTS**

**PRACTICE DIRECTION NO. 3 of 2015**

**Review of DIFC Courts Officer and Registrar Decisions
Citation**

This Practice Direction will come into effect on the date of signature. It may be cited as **Practice Direction 3 of 2015 – Review of DIFC Courts Officer and Registrar Decisions** -and may be abbreviated to **PD 3/2015**.

1. Judicial officers, case progression officers and staff ("hereinafter Court officers") [1], alongside Registrars[2] of the DIFC Courts, may in the course of their functions, examine and issue decisions which are judicial in nature in respect of applications[3] lodged before the Courts.

2. Where a Court officer or Registrar of the Courts has delivered a judicial decision[4] in accordance with paragraph 1 above, a party to the application may request





that the matter be reconsidered de novo[5] by a judge of the DIFC Courts.[6]

3. In the reconsideration of the application in accordance with paragraph 2 above, the judge shall in no way be bound by the preceding decision of the Court Officer or Registrar as the case may be.[7] It is open to the judge to either: (i) confirm; or (ii) quash and replace the decision against which a de novo review has been sought.

4. The general rule is that a judge will carry out such reconsideration on the papers followed by an immediate assessment of costs, unless there is good reason not to do so.

5. A request for a de novo review should be submitted by way of application[8]. Unless the Court orders otherwise, such a request should be filed and served within 3 working days after the Court Officer or Registrar decision sought to be reviewed has been issued, accompanied by brief reasons for the application. Any reply to the request should be filed within a further 3 working days, following which the Court shall endeavour to issue a decision[9] within 5 working days. Within 2 working days of the filing of any reply, each party to the request is to file and serve statements of costs.

6. A request for a de novo review in accordance with the provisions of this Practice Direction will not have the effect of staying the execution of a judgment or order unless the Court directs otherwise

Dated this 25 day of May 2015
**Chief Justice Michael Hwang**




[1] appointed by the Chief Justice in accordance with Article 14 (1)(c) of the DIFC Court Law (DIFC Law No. 10 of 2004) and authorized by RDC 3.14 to perform acts of a formal or administrative character in their capacity as Court Officers – defined in the Schedule to Part 2 of the RDC as encompassing "any member of the Court staff."

[2] taken in this context to mean the Registrar, the Deputy Registrar and Assistant Registrar of the DIFC Courts – appointed under Article 16 of the DIFC Court Law and authorized under Article 17 of the DIFC Court Law and RDC 3.1, together with the judges, to perform functions of the Courts, except insofar as any enactment, Rule or Practice Direction provides otherwise.

[3] this includes application notices, or any other documents in which the applicant seeks a court order or direction

[4] this shall include case progression decisions taken in the course of the Registry's functioning which are judicial in nature

[5] in effect a full reconsideration

[6] appointed in accordance with Article 3(4) of the Judicial Authority Law (Law no. 12 of 2004, in respect of the Judicial Authority at Dubai International Financial





Centre, as amended), and Article 9 of the DIFC Court Law 2004

[7] the judge's discretion in considering the application is unfettered. However, in instances in which the Court Officer or Registrar who first considered the application has had the benefit of hearing oral evidence, the judge reviewing the application de novoshould have due regard to the Court Officer or Registrar's findings, given that they had the benefit of assessing the oral evidence firsthand.

[8] Including by letter

[9] Either confirming or replacing the original Court officer or Registrar decision.

# DIFC COURTS PRACTICE DIRECTION NO. 2 OF 2015 – REFERRAL OF JUDGMENT PAYMENT DISPUTES TO ARBITRATION

MAY 27, 2015

**Amended Practice Direction No. 2 of 2015 IN THE DUBAI INTERNATIONAL FINANCIAL CENTRE COURTS (DIFC COURTS)**

**REFERRAL OF JUDGMENT PAYMENT DISPUTES TO ARBITRATION**

**Citation**



This Amended Practice Direction will come into effect on the date of signature and supersede the former Practice Direction No. 2 of 2015. It shall be known and cited as Practice Direction 2 of 2015 – Referral of Judgment Payment Disputes to Arbitration – and may be abbreviated to PD 2 of 2015.

Referral to DIFC-LCIA Arbitration of any Judgment Payment Dispute
If parties who have submitted (or have agreed to submit) to (or are bound by) the jurisdiction of the DIFC Courts wish further to agree that any dispute arising out of or in connection with the non-payment of any money judgment given by the DIFC Courts may, at the option of the judgment creditor (as defined below), be referred to arbitration under the Arbitration Rules of the DIFC-LCIA Arbitration Centre, they may to that end adopt an arbitration clause in the terms of the recommended arbitration agreement set out below by reference to the Referral Criteria as defined.

**The Referral Criteria**
In the Referral Criteria, the following terms have the following meanings:

'Judgment Payment Dispute' any dispute, difference, controversy or claim between a judgment creditor and judgment debtor with respect to any money (including interest and costs) due under an unsatisfied judgment, including:

(i) a failure to pay on demand any sum of money remaining due under a judgment on or after the date on which that sum becomes due under **Rule 36.34**; and/or



    (ii) the inability or unwillingness of the judgment debtor to pay the outstanding portion of the judgment sum within the time demanded,

but excluding any dispute about the formal validity or substantive merits of the judgment;

'judgment' a judgment (including a summary or default judgment) of any of the DIFC Courts for the payment of money (including interest and costs) in respect of which there is a Judgment Payment Dispute that the judgment creditor refers to arbitration under this Practice Direction (whether or not the judgment also provides for remedies other than the payment of money);

'judgment creditor' any of the parties who has obtained or is entitled to enforce a judgment;

'judgment debtor' any of the parties against whom a judgment has been given or made.

**The Referral Criteria are:**

    (1) The judgment has taken effect in accordance with **Rule 36.30**;

    (2) The judgment is not in respect of an employment contract or consumer contract which is subject to Article 12(2) of the Arbitration Law 2008 precluding arbitration in respect of such contracts;

    (3) The judgment is not subject to any appeal, and the time permitted for a party to the judgment to apply for permission to appeal has expired;

    (4) There is a Judgment Payment Dispute; and

    (5) The judgment creditor and judgment debtor have agreed in writing that any Judgment Payment Dispute between them may be referred to arbitration pursuant to this Practice Direction.

**Suggested Arbitration Clause**

Any Judgment Payment Dispute (as defined in DIFC Courts Practice Direction No 2 of 2015) that satisfies all of the Referral Criteria set out in the Practice Direction may be referred to arbitration by the judgment creditor, and such dispute shall be finally resolved by arbitration under the Arbitration Rules of the DIFC–LCIA Arbitration Centre, which Rules are deemed to be incorporated by reference into this clause. There shall be a single arbitrator to be appointed by the LCIA Court pursuant to Article 5.4 of the DIFC–LCIA Arbitration Rules. The seat, or legal place of arbitration, shall be the Dubai International Financial Centre. The language to be used in the arbitration shall be English.

This agreement for submission to arbitration shall in all respects including (but not limited to) its existence, validity, interpretation, performance, discharge and applicable remedies be governed by and construed in accordance with the laws of the Dubai International Financial Centre.

The judgment creditor may, before or after exercising its option to refer a Judgment Payment Dispute to arbitration as provided above, exercise all rights of enforcement of the judgment in a national court by way of execution on the assets of the judgment debtor, and the judgment debtor shall not be entitled to resist execution before any such national court on the grounds of this arbitration agreement, which is intended to provide a judgment creditor with additional, and not alternative, remedies for enforcement of its judgment.

Nothing in this Practice Direction shall be taken to rescind, vary, curtail or suspend the effect or operation of any judgment of the DIFC Courts save as expressly provided in the Rules of the DIFC Courts as they may be amended from time to time.

**Commentary**

PD 2 of 2015 has been amended in order to clarify the manner in which it should be applied by the parties. The way in which PD 2 of 2015 is meant to operate is as follows. First, the judgment creditor would consider its judgment options in order to determine the preferred method of obtaining assets from the judgment debtor.




Its choice from those options would be likely to depend on where the judgment debtor's assets may be located. For example, if the judgment debtor has assets in Dubai, the judgment creditor would be likely to return to the courts in Dubai. If the judgment debtor has assets in another common law jurisdiction, the judgment creditor may wish to sue on the DIFC Courts judgment as a foreign judgment in that particular common law jurisdiction. If the judgment debtor has assets in another GCC country, then the judgment creditor may wish to sue on the DIFC Courts judgment in the relevant GCC country in reliance on the mutual enforceability of court judgments in the GCC region under the GCC Convention. The same considerations would apply if the judgment debtor has assets in a country with which the UAE has a treaty providing for the mutual recognition and enforcement of judgments.

Next, if the above litigation options do not permit recovery of the judgment debt, then the judgment creditor should turn to enforcement through arbitration as provided for in this PD 2 of 2015. A judgment creditor is likely to have recourse to this option only if any judicial remedies have been exhausted or are unlikely to be available.

In order to allay concerns about whether this arbitration clause works in the above described manner, and further to clarify that the judgment creditor has not by agreement to this arbitration clause given up its rights to litigate, an express provision has been added in the suggested arbitration clause which states that the option to litigate is not precluded by the entitlement to commence arbitration.

**This would result in a possible execution of the judgment as follows.**

1. The judgment creditor has the option either to litigate or to arbitrate (as long as the arbitration has not commenced).

2. The judgment creditor would opt to litigate before arbitration if the judgment debtor has assets in Dubai, a common law country, a GCC country and/or another country with which the UAE has a treaty providing for mutual recognition and enforcement of judgments.



3. If the judgment debtor does not have assets in Dubai, a common law country, a GCC country and/or a country with which the UAE has a bilateral or multilateral treaty on recognition and enforcement of judgments (or if the above step proved to be unsuccessful), the judgment creditor would commence arbitration.

   In the last scenario, it is likely that the vast majority of New York Convention countries will uphold this arbitration clause and the arbitration award could then be enforced in almost all of the more than 150 countries that have acceded to the New York Convention.

Dated this 27 day of May 2015
**Chief Justice Michael Hwang**

## PRACTICE DIRECTION 1 OF 2016 – PRACTITIONERS' DUTIES TO THE COURT – FILING OF WITNESS STATEMENTS BY LAWYERS EMPLOYED BY PART I LAW FIRMS
JANUARY 20, 2016

**IN THE DUBAI INTERNATIONAL FINANCIAL CENTRE COURTS**

**PRACTICE DIRECTION NO. 1 OF 2016**

**Practitioners' Duties to the Court – Filing of Witness Statements by Lawyers employed by Part I Law Firms**



**Citation**

This Practice Direction will come into effect on the date of signature. It may be cited as Practice Direction 1 of 2016 –Practitioners' Duties to the Court – Filing of Witness Statements by Lawyers employed by Part I Law Firms and may be abbreviated to PD 1/2016.

1. This Practice Direction should be read in the light of the Mandatory Code of Conduct for Legal Practitioners in the DIFC Courts, in particular Part B – Duties Owed to the Court, paragraph 6, which provides as follows:

   "Practitioners shall not appear as advocate or otherwise conduct proceedings before the Court in any matter in which they have reason to believe they may be a witness, save where any evidence they may give is likely to be purely formal or uncontroversial."

2.1 As a general rule, law firms which are representing a party through Part I of the Register of Practitioners in proceedings before the DIFC Courts should not permit lawyers who are employed by them ("lawyers") to file witness statements in such proceedings unless:

   (a) The contents of the witness statement are formal or uncontroversial; or

   (b) The witness statement has been submitted solely for the purposes of





introducing documents without any factual evidence being given with regard to the merits of the case;

However, lawyers are permitted to file witness statements concerning their own personal knowledge of events happening within the context of the court proceedings after they have commenced. Even in such cases, where the lawyer's witness statement asserts facts which are likely to be controversial, another lawyer should present the arguments relating to those facts.

(i) Exceptionally, and where the Court considers it appropriate in the circumstances, lawyers registered in Part 1 of the Register of Practitioners may be allowed to swear an affidavit, annexing the draft affidavit of their witness and undertaking to file a sworn copy of the witness' affidavit as soon as practicable.

(ii) This may be where the first-hand witness cannot be contacted. The lawyer may then choose to file a witness statement alleging certain facts based on what has been conveyed to him, and identifying the source of that information.

2.2 All these cases above should be read as being exceptions to the general rule.

3. Where any lawyer files a factual witness statement which does not conform with 2.1 above, the Court may discount the evidentiary weight of that witness statement for lack of first-hand knowledge.

4. Where a lawyer purports to give an expert opinion in support of his/her firm's client's case, the Court will consider that opinion to constitute part of Counsel's arguments and may likewise discount the opinion as expert evidence for lack of independence. However, the Court may still take the opinion into account in arriving at its decision, but relying on that opinion only as a submission.

Dated this 20 day of January 2016
**Chief Justice Michael Hwang**

# PRACTICE DIRECTION NO. 2 OF 2016 – SKELETON ARGUMENTS AND STATEMENTS OF CASE FILED WITH THE DIFC COURTS
JANUARY 31, 2016

IN THE DUBAI INTERNATIONAL FINANCIAL CENTRE COURTS

PRACTICE DIRECTION NO. 2 OF 2016

Skeleton Arguments and Statements of Case filed with the DIFC Courts

Citation





This Practice Direction will come into effect on the date of signature. It may be cited as Practice Direction 2 of 2016 – Skeleton Arguments and Statements of Case filed with the DIFC Courts – and may be abbreviated to PD 2/2016.

This Practice Direction should be read in the light of Rules 35.61 to 35.63, 44.76 to 44.82, 44.109 to 44.114, and 44.127 to 44.130 of the Rules of the DIFC Courts ("RDC") which provide for the submission of written skeleton arguments, as well as Schedule A to Part 23 of the RDC.

1. Skeleton arguments submitted by parties before trial and the consideration of heavy applications (see RDC 23.44) are not to exceed 25 pages in length.

2. Skeleton arguments submitted in the context of ordinary applications (see RDC 23.39) are not to exceed 15 pages in length.

3. Skeleton arguments submitted in the context of appeals and supplementary skeleton arguments for appeals are not to exceed 35 pages in length.

4. No skeleton may be submitted in a font smaller than 12 point or with less than double line spacing.

5. Any front sheet, back sheet, index, chronology, reading list, timetable, glossary, list of dramatis personae or attachments(1.) will not be counted as part of the page limit prescribed in paragraphs 1, 2 and 3 above.



6. Within their skeletons, parties should seek to direct the judge to the appropriate material from the reading list that focuses on the issues to be considered.



7. Should parties wish to submit skeleton arguments longer than as prescribed in paragraphs 1, 2 and 3 above, they must seek the Court's permission by way of letter application, with reasons, to the Registry. Such an application:

    a. Must be made sufficiently in advance of the deadline for service to enable the Court to rule upon it. The applicant should bear in mind the timescale for a decision set out in paragraph 8 below, and the time it may need to shorten the skeleton if necessary.

    b. Must be contained in a letter no longer than one side of A4 paper.

    c. Must attach the proposed skeleton argument.

8. The Court will decide all applications made in accordance with paragraph 7 above within five working days from the date the Court received the application. If a response has not been received within that period, the party may assume that permission has been granted.

9. When deciding such an application, the Court will grant permission for a lengthier skeleton where:

    a. The application, trial or appeal concerns an exceptional level of factual or legal complexity (beyond that of a normal commercial dispute), and



b. The proposed skeleton complies with the requirements of Schedule A to Part 23 of the RDC.

10. Where permission for a lengthier skeleton has been granted by the Court, a note to that effect should be placed at the start of the skeleton.

11. Where a party files and serves a skeleton argument longer than prescribed in paragraphs 1, 2 and 3 above without the Court's permission the Court may apply one or more of the following sanctions:

a. Limit the time the party in breach is allowed for oral argument,

b. Disregard any page beyond the page limit,

c. Adjourn the hearing and order a compliant skeleton to be filed and served in advance of the adjourned hearing,

d. Make an order for wasted costs under RDC 38.83,

e. Make any other order.

12. Any party wishing to make an application for relief from any of the sanctions set out in paragraph 11 is reminded that such an application will be decided in accordance with RDC 4.49.



13. Parties wishing to file a statement of case(2.) longer than 25 pages may do so, but their attention is drawn to the requirement for a summary set out in RDC 17.47.



Dated this 31 day of January 2016
**Chief Justice Michael Hwang**

1. "Attachments" for the purposes of this paragraph shall encompass attachments of key extracts from case documents or case authorities, for ease of reference of the Court. The trial judge reserves the discretion to allow for a more detailed Opening Statement to be made with whichever page limits he or she considers appropriate given the complexity of the case. This can also be achieved on application or by consent between the parties.

2. For the purposes of paragraph 13 above, the term "statement of case" shall mean:

(1) A claim form, particulars of claim where these are not included in a claim form, defence, additional claim notice, or reply to defence; and

(2) Any formal written further information given in relation to a statement of case, whether given voluntarily or by court order.





## PRACTICE DIRECTION NO. 3 OF 2016 – ANONYMISATION OF DIFC COURTS JUDGMENTS AND ORDERS

JANUARY 31, 2016

**IN THE DUBAI INTERNATIONAL FINANCIAL CENTRE COURTS**

**PRACTICE DIRECTION NO. 3 OF 2016**

**Anonymisation of DIFC Courts Judgments and Orders**

**Citation**

This Practice Direction will come into effect on the date of signature. It may be cited as Practice Direction 3 of 2016 – Anonymisation of DIFC Courts Judgments and Orders and may be abbreviated to PD 3/2016.

1. This Practice Direction shall apply as regards all anonymised judgments and orders of the DIFC Courts, including those which have already been issued, as well as those which will be issued subsequent to the coming into effect of this Practice Direction.

2. Where a judgment or order issued by the DIFC Courts has been or will be redacted so as to ensure that parties' names remain anonymous in the interests of confidentiality, neutral names shall be used in place of the actual names of the parties.

3. All judgments and orders which have been redacted previously with the use of single letters from the alphabet (for example A v B, X v Y) shall now be replaced by the use of neutral names.

**System to be Implemented:**

4. The following system shall henceforth be put in place in the context of redaction/anonymisation of DIFC Courts judgments and orders:

    i) Claimant and Defendant names shall be replaced by female and male given names alternately;

    ii) In circumstances where third party names also require redaction, they shall be replaced by female and male given names alternately;

    iii) Where one of the parties is a legal person as opposed to an individual, "LLC," "LLP" or a similar designation will be used to reflect that the party is not a natural person;

    iv) When redacting DIFC Courts judgments and orders, the Court officer tasked with redaction shall refer to an online repository of given names chosen internally by the Registry;

    v) This system will be applied to all redacted DIFC Courts judgments and orders which have been issued since 2010;







vi) Names shall be allocated in sequential alphabetical order, commencing with names beginning with the letter A in respect of redacted judgments and orders issued in 2010, with B for 2011 and so forth.

5. In the event of translation and/or enforcement outside the DIFC, the DIFC Courts will notify the persons concerned that the parties' names have been redacted in accordance with this Practice Direction, and will provide a copy of this Practice Direction by way of clarification.

Dated this 31 day of January 2016
**Chief Justice Michael Hwang**

# PRACTICE DIRECTION NO. 4 OF 2016 NEUTRAL CITATION OF DIFC COURTS JUDGMENTS
OCTOBER 20, 2016

IN THE DUBAI INTERNATIONAL FINANCIAL CENTRE COURTS

PRACTICE DIRECTION NO. 4 OF 2016

**Neutral Citation of DIFC Courts Judgments**

**Citation**



This **Practice Direction will come into effect on the date of signature. It may be cited as Practice Direction 4 of 2016 – Neutral Citation of DIFC Courts Judgments** and may be abbreviated to **PD 4/2016**.

1. This Practice Direction shall apply as regards all judgments of the DIFC Courts, those which have already been issued as well as those which are issued subsequent to it coming into effect.

2. A form of neutral citation will be introduced for judgments issued from the Small Claims Tribunal, Court of First Instance and Court of Appeal of the DIFC Courts.

3. A unique number will be given by the DIFC Courts Registry to each approved judgment issued by the DIFC Courts. The judgments will be numbered in the following way:

Small Claims Tribunal       [2016] DIFC SCT 1,2,3 etc.
Court of First Instance      [2016] DIFC CFI 1,2,3 etc.
Court of Appeal              [2016] DIFC CA 1,2,3 etc.

4. Under these new arrangements, para 29 in Smith v Jones, the twelfth numbered judgment of the year in the DIFC Courts Court of First Instance, would be cited:

Smith v Jones [2016] DIFC CFI 12 at [29].







5. The neutral citation will be the official number attributed to the judgment by the DIFC Courts and will be used on at least one occasion:

   (i) when the judgment is cited in a later judgment; and

   (ii) when the judgement is cited in submissions or other documents filed by practitioners.

6. If a judgment is cited on more than one occasion, only one abbreviation (if desired) will be used. Thus Smith v Jones [2016] DIFC CFI 12 could be abbreviated to Smith v Jones, or Smith's case, but preferably not both in the same judgment or other document.

7. If it is desired to cite more than one paragraph of a judgment each numbered paragraph should be enclosed with a square bracket. Thus: Smith v Jones [2016] DIFC CFI 12 at [35]–[40], or Smith v Jones [2016] DIFC CFI 12 at [35], [40], and [50]–[53].

8. Once the judgment is reported, the citation from the law report series will be used and the neutral citation will appear before that citation.

9. The neutral citation arrangements for judgments may be extended to include other reasoned orders of the DIFC Courts.



10. Where a judgment issued by the DIFC Courts is redacted so as to ensure that parties' names remain anonymous in the interests of confidentiality, in accordance with PD 3/2016, the neutral names will be used in place of the actual names of the parties within the neutral citation.



Dated this 20 day of October 2016
**Chief Justice Michael Hwang**

## PRACTICE DIRECTION NO. 1 OF 2017 – INDEMNITY COSTS FOR FAILED CHALLENGES TO ARBITRAL AWARDS IN THE DIFC COURTS
FEBRUARY 27, 2017

IN THE DUBAI INTERNATIONAL FINANCIAL CENTRE COURTS
PRACTICE DIRECTION NO. 1 OF 2017

**Indemnity Costs for Failed Challenges to Arbitral Awards in the DIFC Courts**

**Citation**

This Practice Direction will come into effect on the date of signature. It may be cited as **Practice Direction 1 of 2017 – Indemnity Costs for Failed Challenges to Arbitral Awards in the DIFC Courts** – and may be abbreviated to **PD 1/2017**.





1. Where an application has been lodged with the DIFC Courts pursuant to Part 43 of the Rules of the DIFC Courts (RDC) for ratification of an arbitral award, and the award debtor defends such a request for ratification, the presiding judge reserves the right to take into account the merits of such challenge when deciding whether to require the defendant to an arbitration claim to pay the amount of the award into Court first, as security pursuant to Article 44(2) Arbitration Law (DIFCLaw No.1 of 2008).[1]

2. Paragraph 1 above shall apply in the context of all applications for ratification of arbitral awards and is not limited to applications under the New York Convention (see footnote 1 below).

3. When the Court is exercising its discretion as to costs under Part 38 of the RDC, the principle of awarding indemnity costs may also be invoked for other unsuccessful applications to Court relating to arbitration, such as (by way of example only) unsuccessful applications for setting aside of arbitral awards and unmeritorious challenges to remove arbitrators. [2]

Dated this 27 day of February 2017

**Michael Hwang**
**Chief Justice of the DIFC Courts**

[1] See Article VI of the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the New York Convention"), which provides as follows: "If an application for the setting aside or suspension of the award has been made to a competent authority referred to in article V(1)(e), the authority before which the award is sought to be relied upon may, if it considers it proper, adjourn the decision on the enforcement of the award and may also, on the application of the party claiming enforcement of the award, order the other party to give suitable security," reiterated in Article 44(2) of the DIFC Arbitration Law (DIFC Law No. 1 of 2008).

[2] See by way of example the decision of the Hong Kong Court of First Instance in Peter Cheung & Co v. Perfect Direct Limited & Yu Guolin (HCMP 2493/2012) and New Heaven Investments Limited & Rondo Development Limited v. Yu Guolin (HCA 115/2013), judgment of 25 April 2016, where costs were awarded on the indemnity basis where a party had engaged in "unmeritorious" behaviour in attempting to delay the enforcement of an arbitral award; Exfin Shipping (India) Ltd Mumbai v Tolani Shipping Co Ltd Mumbai, [2006] EWHC (Comm): 17 May 2006, where indemnity costs were awarded by the English Commercial Court following a "wholly unmeritorious" application to set aside an arbitral award; and DigiTelCom Ltd. v. Tele2 Sverige AB (1:12–cv–03082), 16 November 2012, where the District Court for the Southern District of New York imposed costs sanctions on a party for making a "frivolous" application to vacate an arbitral award.



# PRACTICE DIRECTION NO. 2 OF 2017 ON THIRD PARTY FUNDING IN THE DIFC COURTS
MARCH 14, 2017

IN THE DUBAI INTERNATIONAL FINANCIAL CENTRE COURTS
PRACTICE DIRECTION NO. 2 OF 2017

Citation:

This Practice Direction will come into effect on the date of signature. It may be cited as "Practice Direction 2 of 2017 – Third Party Funding in the DIFC Courts" and may be abbreviated to "PD 2/2017".

1. This Practice Direction sets out requirements to be observed by "Funded Parties" in respect of their relationships, interactions and contracts with "Funders" concerning legal "Proceedings" in the DIFC Courts.

2. In this Practice Direction, unless the context or subject matter otherwise requires, words or phrases will have the following meanings:

    a. A "Funded Party" means a party to Proceedings before the DIFC Courts who or which has entered into a Litigation Funding Agreement with a Funder.

    b. An "Associated Law Firm" means a law firm, including any single Associated Lawyer, representing a Funded Party before the DIFC Courts which is registered to act before the DIFC Courts, under the Register of Practitioners of the DIFC Dispute Resolution Authority's Academy of Law, and is thus bound by the Mandatory Code of Conduct for Legal Practitioners in the DIFC Courts.

    c. An "Associated Lawyer" means any individual lawyer representing a Funded Party before the DIFC Courts who is registered to act before the DIFC Courts, under the Register of Practitioners of the DIFC Dispute Resolution Authority's Academy of Law, and is thus bound by the Mandatory Code of Conduct for Legal Practitioners in the DIFC Courts.

    d. A "Funder" means a person or entity independent from the Funded Party and the Associated Law Firm, including a parent entity, subsidiary entity or group of entities, that provides Funding towards the Proceedings.

    e. "Funding" means any form of financial assistance which potentially confers to the Funder an economic benefit which is linked to the outcome of the Proceedings, including but not limited to receiving a share of the Proceeds.

    f. A "Litigation Funding Agreement" or "LFA" means an agreement entered into between a Funder and a Funded Party relating to the Funding of the Proceedings.

    g. The term "Proceeds" means all pecuniary advantages, in particular all financial gains (including interest) and all property gains which a Funded Party receives

as a result of the Courts' or any other official judgment, a Court approved or out-of-court settlement or an admission or as otherwise defined or described in the LFA.

h. The term "Proceedings" shall mean any proceedings involving the Funded Party for resolving disputes filed in the DIFC Courts whether commenced or contemplated.

3. This Practice Direction is without prejudice to any subsequent determinations of the DIFC Courts regarding LFAs in general or any specific LFA in particular (or any part thereof).

4. A Funded Party who enters into an LFA in respect of Proceedings must put every other party to the relevant dispute on notice, in accordance with subsection (5) and (6), of the fact that he has entered into an LFA in respect of the relevant Proceedings. For the avoidance of doubt, this subsection (4) requires disclosure of the Funder's identity but does not require disclosure of a copy of or any part of the LFA unless the Court orders otherwise.

5. For Part 7 claims, notice under subsection (4) must be given:

a. In the Case Management Information Sheet to be submitted prior to the Case Management Conference (CMC), pursuant to RDC 26.3; or

b. When the Funded Party enters into an LFA after the CMC, within 7 days of the date of the LFA. Such notice shall be in writing and shall be served on every other party to the relevant Proceedings as well as the DIFC Courts' Registry.



6. For all other types of claims, written notice under subsection (4) must be served on all other parties to the relevant dispute, including the DIFC Courts' Registry: 

a. Where Proceedings have yet to be commenced, as soon as practicable after the commencement of such Proceedings including within the Claim Form or Particulars of Claim if appropriate; or

b. Where the LFA was entered into after the commencement of Proceedings, within 7 days of the date of the LFA.

7. For claims made in the Small Claims Tribunal, notice pursuant to subsection (4) is not required unless and until such claim is transferred or appealed to the Court of First Instance, at which time subsection (6) will come into effect as appropriate.

8. The DIFC Courts may take into account the fact that a party has disclosed that it is a Funded Party when making determinations on applications for security for costs, but the fact that a party is a Funded Party shall not by itself be determinative.

9. The DIFC Courts have inherent jurisdiction to make costs orders against third parties, including Funders, where the Court deems it appropriate given the circumstances of the case.



10. This Practice Direction applies to Proceedings commencing on or after the date of the issuance of this Practice Direction.

Dated this 14 day of March 2017
**Michael Hwang**
**Chief Justice of the DIFC Courts**

## PRACTICE DIRECTION NO. 3 OF 2017 – DIFC COURTS FEES AMENDMENT
SEPTEMBER 17, 2017

IN THE DUBAI INTERNATIONAL FINANCIAL CENTRE COURTS

PRACTICE DIRECTION NO. 3 OF 2017

DIFC Courts Fees Amendment

Citation

This Practice Direction will come into effect on the date of signature. It may be cited as Practice Direction 3 of 2017 – DIFC Courts Fees Amendment and may be abbreviated to PD 3/2017.



1. This Practice Direction is issued pursuant to the powers conferred on me by Article 8(Second)(5)(c) of Dubai Law no. 9 of 2004, as amended. It will come into force from the date of signature and supersedes the former Amended Practice Direction No. 4 of 2015 – DIFC Courts' Fees.



2. The attached Schedule 1 of this Practice Direction prescribes the fees of the DIFC Courts that will come into effect on the date of signature.

Dated this 17 September 2017
**Michael Hwang**
**Chief Justice of the DIFC Courts**

## SCHEDULE 1

**DIFC Courts' Fees**

**Article I. Court of First Instance (CFI)**

**(A) Part 7 claims:**

(1) Fees applicable to claims filed under Part 7 of the Rules of the DIFC Courts ("RDC") shall be on the following scale:





**Claim Value**
**Fee**

Up to and including USD 500,000
5% of the value of the claim and/or the property with a minimum of USD 1,500

USD 500,000 – USD 1 million
USD 25,000 + 1% over USD 500,000
USD 1 million – USD 5 million
USD 30,000 + 0.5% over USD 1 million
USD 5 million – USD 10 million
USD 50,000 + 0.4% over USD 5 million
USD 10 million – USD 50 million
USD 70,000 + 0.15% over USD 10 million

Over 50 million
USD 130,000

> (2) This amount will include the hearing fees for any in-chambers meetings, one Case Management Conference, one Pre-Trial Review and up to 3 days of trial. Any additional filings or hearings will be charged as per the Articles below.

**(B) Arbitration claims:**

> (1) Fees applicable to claims filed pursuant to Articles 41, 42 and/or 43 of the DIFC Arbitration Law, DIFC Law No. 1 of 2008, as amended, shall be on the following scale:

**Claim Value**
**Fee**

Up to and including USD 500,000
5% of the value of the claim and/or of the property with a minimum of USD 1,500

USD 500,000 – USD 1 million
USD 25,000 + 1% over USD 500,000
USD 1 million – USD 5 million
USD 30,000 + 0.5% over USD 1 million
USD 5 million – USD 10 million
USD 50,000 + 0.4% over USD 5 million
USD 10 million – USD 50 million
USD 70,000 + 0.15% over USD 10 million

Over 50 million
USD 130,000

> (2) At the time of filing, only 50% of the abovementioned fee shall be payable. In the event that the claim is unopposed, no further fees shall be payable by the Claimant. In the event that the claim is opposed or contested, the remaining 50% will be payable by the Claimant.







(3) In all events, the General Rules about Costs (including the recoverability of costs) under Part 38 of the RDC apply, as supplemented by Practice Direction 6 of 2016 regarding indemnity costs.

**(C) All other claims:**

(1) The fee applicable to all other claims shall be USD 5,000.

(2) All other claims include, but are not limited to:

    (a) Part 8 claims
    (b) Winding-up petitions
    (c) Arbitration claims (as defined in **Rule 43(2)(3)** of the RDC) other than those subject to Article A(2)(a) above;
    (d) Unquantified damages claims; and
    (e) Proceedings for judicial review

**(D) Filing Proceedings against a party or parties not named in originating proceedings:**

(1) The fee applicable shall be USD 500.

**(E) Reimbursement:**

(1) The below reimbursements shall only applicable to Part 7 Claims.



    (a) Where the parties successfully settle the claim filed in the DIFC Courts in full, the following reimbursements shall apply:

        (i) For claims settled before the Case Management Conference takes place, 65% of the filing fee shall be reimbursed.

        (ii) For claims settled between the Case Management Conference and the Pre-Trial Review, 35% of the filing fee shall be reimbursed.

        (iii) For claims settled after the Pre-Trial Review has taken place, no reimbursement shall be applicable.

    (b) For claims which are referred to the Joint Judicial Committee established pursuant to Dubai Decree No. 19 of 2016 (the 'JJC'), the following reimbursements shall apply following the expiry of a period of 1 month after either party evidences to the Court that the Joint Judicial Committee has found that Dubai Courts has primary jurisdiction to determine the claim:

        (i) For claims referred to the JJC before the Case Management Conference takes place, 65% of the filing fee shall be reimbursed.

        (ii) For claims referred to the JJC between the Case Management Conference and the Pre-Trial Review, 35% of the filing fee shall be reimbursed; and





(iii) For claims referred to the JJC after the Pre–Trial Review has taken place, no reimbursement shall be applicable.

(c) For claims in which judgment is given in default of the filing of an acknowledgement of service or defence, 65% of the filing fee will be reimbursed upon application following the expiry of a period of 1 month after the judgment creditor has advised the Court that the judgment debtor has been made aware of the default judgment. The fee will be payable again should the judgment debtor apply successfully to set aside the default judgment in question (see RDC 14.1 to 14.4); and

(d) For claims which are the subject of a successful immediate judgment application (even after a disputed jurisdiction hearing), 65% of the filing fee will be reimbursed upon application in the following circumstances:

(i) in the event that the judgment debtor is not present at the immediate judgment hearing, following one month after the Court is informed that the judgment debtor has been a made aware of the immediate judgment; or

(ii) in the event that the judgment debtor is present at the hearing, following the expiry of the period within which the judgment debtor can appeal the immediate judgment.

**(F) Notes:**

 

(1) Where a claim is both for money and for other relief (whether cumulatively or in the alternative), a Part 7 Claim form should be used and only the higher applicable fee, being that for a Part 7 Claim, will be payable.

(2) For a claim made by way of counterclaim, the same fee shall be payable as if the relief or remedy sought were the subject of separate proceedings.

(3) Where a claim or counterclaim is amended so that a higher fee would have been payable if it had been so drawn originally, the party making the amendment shall pay the difference.

(4) Where a claim or counterclaim is said to be for an unspecified amount, an amount to be determined by the Courts or for an amount which reasonably appears to the DIFC Courts to be less than the actual amount of the claim or counterclaim, the DIFC Courts may impose such fees as it considers reasonable and which are based on the fees set out in this Schedule.

(5) For the avoidance of doubt, the fees applicable to claims to recognise and/ or enforce judgments from other courts pursuant to common law pirnciples shall be those applicable to Part 7 claims. This does not apply to applications to enforce judgments from, among others, Courts in the UAE or GCC, pursuant to a treaty or convention, which are to be filed as enforcement claims rather than claims for recognition or ratification.






**Article II. Applications:**

**(A) Ordinary Applications:**

    (1) Fee for applications without a hearing: USD 300

    (2) Fee for applications likely to require an oral hearing of two hours or less: USD 1,000

**(B) Heavy Applications:**

    (1) Heavy applications must include, but are not limited to:

        (a) An application contesting jurisdiction

        (b) An application seeking to strike out all or part of a statement of case, submission or evidence filed

        (c) An application for immediate judgment

    (2) Fee for applications likely to require an oral hearing lasting more than two hours: USD 2,000

**(C) Notes:**



    (1) The fee in Article II(A)(2) will include a maximum of a two-hour hearing for the relief sought.

    (2) The fee in Article II(B)(2) will include a maximum of a one day hearing for the relief sought.

    (3) The above fee is payable whenever an application notice is received by the Registry.

    (4) The above fee also applies to applications made by way of letter or email, or pursuant to another Rule, whether on or without notice, with the exception of applications made orally at a hearing.

    (5) Where an application is amended so as to request a hearing where none was previously sought, an additional Court fee in line with the above will be payable. The Registrar or Judge shall have the discretion to determine, on a case-by-case basis, which party shall pay the additional fee.

    (6) Where an application is amended seeking a longer duration for the hearing, so as to classify that application as a heavy rather than ordinary application, an additional Court fee in line with the above will be payable. The Registrar or Judge shall have the discretion to determine, on a case-by-case basis, which party shall pay the additional fee.






**Article III. Penalties:**

**(A) Late filing fees**

(1) A late filing fee of USD 200 may be charged for every day that any and all documents to be filed pursuant to a Rule, Direction or Order of the Court are filed late with the Court.

**(B) Notes:**

(1) Parties filing documents after the deadline to do so has passed, even if filed on the same day, may be charged a late filing fee.

(2) Upon written application, which may be made by way of letter, the Registrar or a Judge of the DIFC Courts shall have the discretion to vary, suspend or waive any and all late filing fees that are applied.

**Article IV. Hearings:**

**(A) Hearing fees:**

(1) The following fees will be applicable in the event that the hearing fee is not already encompassed within another fee chargeable at the time of filing.



(2) The fee for a hearing of up to one day shall be USD 1,000.

(3) The fee for each half-day of a hearing after the first day shall be USD 500.

**(B) Video Conferencing Facilities:**

(1) The fee for the use of video conferencing facilities shall be USD 1,000 per hearing.

**(C) Notes:**

(1) The fee shall be paid when the hearing is set down by the DIFC Courts, based on the number of days agreed by the parties or, failing agreement, as determined by the DIFC Courts.

(2) Fees for any overrun shall be paid prior to the expiry of the period for which the hearing was originally set down.

(3) The paying party may seek reimbursement of any payment of this fee for half–days not utilised for the relevant hearing. Reimbursement of such fees shall be at the sole discretion of the DIFC Courts.



(4) With regard to hearings by telephone or video conference, the costs of the transmission will initially be the responsibility of, and must be met by, the party requesting the telephone or video conferencing facility. Such costs will be invoiced in addition to the setting down for a hearing fee.






(5) Should a hearing be vacated one month in advance of the date it is listed, the hearing fee will no longer be payable and will be refunded if already paid. Any hearing vacated within a month of the listing date remains payable. If a hearing is vacated within a month of the listing date and is relisted for a later date, both hearing fees will be payable.

**Article V. Court of Appeal (CA):**

**(A) Appellants and Respondents Notices**

(1) The fee for filing an Appellant's Notice or a Respondent's Notice shall be USD 5,000.

**(B) Notes:**

(1) The fee in Article V(A) (1) shall include a one day hearing before the Court of Appeal.

(2) For a cross–appeal, the same fees as payable as for an appeal.

(3) Setting down for hearing fees under Article IV applies to appeal hearings.

**VI. Enforcement (ENF):**

**(A) Enforcement of DIFC Courts judgments or orders in the DIFC:**

(1) The fee for enforcing DIFC Court judgments or orders under Part 48 of the RDC shall be USD 100.

**(B) Enforcement non–DIFC Courts judgments or orders in the DIFC:**

(1) The fee for enforcing judgments or orders made outside of the DIFC Courts shall be 1% of the value of the judgment or order, with a minimum of USD 100 and a maximum of USD 20,000.

**(C) Enforcement of DIFC Courts Orders outside of the DIFC:**

(1) The fee for a letter or information from the DIFC Courts to enforce outside of the DIFC shall be USD 100.

**(D) All other enforcement applications:**

(1) The fee for any other enforcement applications at the DIFC Courts shall be USD 300.

**(E) Notes:**

(1) Enforcement as per the above does not apply to the ratification and/or recognition of arbitral awards or judgments of other courts. See Article I.





**VII. Determination of Costs:**

**(A) Notice of Commencement of Assessment:**

    (1) The fee upon filing a Notice of Commencement of Assessment of Bill of Costs shall be 7.5% of the sum claimed in the bill of costs.

**(B) Default Cost Certificates:**

    (1) The fee for a default costs certificate or certificate for an agreed amount shall be USD 300.

**(C) Notes:**

    (1) A separate setting down fee for the detailed costs assessment hearing shall apply (see Article IV — Hearings).

    (2) Where the sum certified in a final costs certificate includes costs certified in an interim certificate in respect of which a fee has been paid, the fee for the final costs certificate shall be correspondingly reduced.

    (3) Parties will be entitled to a 50% refund (of the sum they paid in respect of the notice of commencement of assessment of bill of costs) if they settle in full and advise the Court within 21 days of the date of the detailed assessment.



**VIII. Small Claims Tribunal (SCT):**

**(A) Employment claims:**

    (1) The fee for filing an employment claim shall be 2% of the value of the claim with a minimum fee of USD 100.

    (2) The fee for filing an appeal to the CFI following an employment claim in the SCT shall be 1% of the value of the claim with a minimum fee of USD 100.

**(B) All other claims:**

    (1) The fee for filing all other claims shall be 5% of the value of the claim with a minimum fee of USD 100.

    (2) The fee for filing an appeal to the CFI following any other claim in the SCT shall be 2.5% of the value of the claim with a minimum fee of USD 100.

**(C) Applications:**

    (1) Applications seeking a fee waiver or suspension shall be free of charge.

    (2) The fee for all other applications shall be USD 50





**(D) Reimbursements:**

(1) The below reimbursements are only applicable to filing fees payable under Article VIII(B) and where the claim value exceeds USD25,000.

(a) For claims in which default judgment is given, 65% of the filing fee will be reimbursed upon application following the expiry of a period of 1 month after the judgment creditor has advised the Court that the judgment debtor has been made aware of the default judgment. The fee will be payable again should the judgment debtor apply successfully to set aside the default judgment in question (see RDC [14.1 to 14.4 – update]); and

(b) For claims which are the subject of a successful immediate judgment application (even after a disputed jurisdiction hearing), 65% of the filing fee will be reimbursed upon application in the following circumstances:

(i) in the event that the judgment debtor is not present at the immediate judgment hearing, following one month after the Court is informed that the judgment debtor has been a made aware of the immediate judgment; or

(ii) in the event that the judgment debtor is present at the hearing, following the expiry of the period within which the judgment debtor can appeal the immediate judgment.



**(E) Notes:**

(1) For a claim made by way of counterclaim, the same fee shall be payable as if the relief or remedy sought were the subject of separate proceedings.

(2) The SCT Registrar or SCT Judge shall have the discretion to suspend, reduce, or waive applicable fees in the SCT if they consider it appropriate in the circumstances.

(3) The fees for a Part 7 Claim will apply to cases that are transferred from the SCT to the CFI pursuant to RDC 53.37.



**IX. Transcripts, Recordings and Photocopies:**

**(A) Transcripts of hearings:**

(1) Fees applicable to the production of a transcript shall be on the following scale:

(a) USD 385 per audio hour for overnight turnaround
(b) USD 337 per audio hour for 2 working-day turnaround
(c) USD 298 per audio hour for 4 working-day turnaround
(d) USD 248 per audio hour for 7 working-day turnaround
(e) USD 585 per audio hour for processing on a weekend or Public Holiday

(2) In accordance with **Rule 35.99** of the Rules of the DIFC Courts, should a party wish to request the DIFC Courts to have a transcript of any hearing(s) drawn up,





the Court shall charge an administrative fee of USD 300 for the handling of such a request, in addition to the applicable third party charges.

**(B) Recordings of hearings:**

(1) The fee for a recording of a hearing shall be USD 300 per CD of recording (8 hours of recording per disc).

**(C) Photocopies**

(1) The fee for photocopies of documents shall be USD 2 for the first page and USD 1 for each subsequent page.

**(D) Notes:**

(1) Payment for transcripts must be made before the transcript can be provided to the requesting party.

(2) Transcripts requested on overnight turnaround will be delivered, if paid for, by no later than 2pm UAE time the following day.

(3) A full day's hearing cannot be transcribed on overnight turnaround without advance notice being given to the DIFC Courts Registry.



(4) Working days for transcription are from Monday to Friday. The weekend falls on Saturday and Sunday.

(5) A transcript cannot be processed on a weekend or public holiday without at least one week's notice being given to the DIFC Courts Registry.

(6) Once a transcript has been drawn up, it will be available to all the parties to a case and will be placed in the DIFC Courts eRegistry.

(7) There is no fee for downloading soft copies of documents via the eRegistry available via the DIFC Courts' website.

(8) The above fee for photocopies also applies to photocopies of documents from the DIFC Courts library and documents to be printed by the Court at the request of the parties.

**X. General Information**

All of the above mentioned fees are payable in UAE Dirhams or their equivalent in United States Dollars (at the conversion rates of USD1:AED3.675 or as otherwise determined by the DIFC Courts from time to time).

All invoice, at the outset, will be issued as pro forma invoices. Once payment is made towards that invoice, the paying party shall receive the final invoice and receipt for their records.





Payments may be made by using the Courts' e-payment facility or alternatively by registering your law firm with the Courts' credit facility. Payments can also be made by wire transfer or in person in cash or cheque.

In an effort to promote the most efficient handling of cases and allocation of resources, and in line with the DIFC Courts' paperless initiative, parties are encouraged to use the DIFC Courts' e-filing facility for the filing of court documents.

Please note that a 40% surcharge will be added to the applicable fees for any document filed with the Registry for the Court of First Instance or Court of Appeal by means other than the e-filing facility.

## PRACTICE DIRECTION NO 4 OF 2017 – INTEREST ON JUDGMENTS
NOVEMBER 21, 2017

IN THE DISPUTE RESOLUTION AUTHORITY OF THE DUBAI INTERNATIONAL FINANCIAL CENTRE



DIFC COURTS

PRACTICE DIRECTION NO. 4 OF 2017

Interest on Judgments

**Citation**
This Practice Direction will come into effect on the date of signature. It may be cited as **Practice Direction 4 of 2017 – Interest on Judgments** and may be abbreviated to **PD 4/2017**. It replaces Practice Direction 1 of 2009 – Interest on Judgments (Clarification) and Practice Direction 1 of 2009 – Interest on Judgments.

**Interest on Judgments**

1. This Practice Direction should be read in conjunction with DIFC Law No. 10 of 2004; the Rules of the DIFC Courts and in particular **Rule 45.26** (Interest on Judgment Debts); PD 1/2009 (Clarification) and PD 1/2009.

2. Any judgment of the DIFC Courts issued on or prior to the date of this Practice Direction shall carry interest, from the date the judgment is entered, at the rate of 1% over the Emirates Interbank Offer Rate ("EIBOR") or such other rate as the judge may prescribe in the judgment. Reference to EIBOR is to the EIBOR three months' reference rate as at the date of judgment.

3. Any judgment of the DIFC Courts issued after the date of this Practice Direction shall carry simple interest, from the date the judgment is entered, at the rate of 9% or such other rate as the judge may prescribe.

Chief Justice of the DIFC Courts
Dated: 20 November 2017





# PRACTICE DIRECTION NO. 5 OF 2017 – SERVICE OF A RECORD OF HEARING FOR EX PARTE INTERIM RELIEF IN THE DIFC COURTS
DECEMBER 5, 2017

IN THE DUBAI INTERNATIONAL FINANCIAL CENTRE COURTS

PRACTICE DIRECTION NO. 5 OF 2017

**Service of a Record of Hearing for Ex Parte Interim Relief in the DIFC Courts**

**Citation**

This Practice Direction will come into effect on the date of signature. It may be cited as **Practice Direction 5 of 2017 – Service of a Record of Hearing for Ex Parte Interim Relief in the DIFC Courts** – and may be abbreviated to **PD 5/2017**.

1. In cases in which an Order for ex parte (without notice) interim relief has been made in accordance with Part 25 of the Rules of the DIFC Courts (RDC), the Applicant must, together with the Order, serve on the Respondent and any other person affected by the Order a digital recording or transcript of the hearing of the application for that Order. The judge shall determine whether a digital recording or transcript is most appropriate in the circumstances.

2. The legal representative of the Applicant shall, on any application for such an order, take a detailed note of the hearing of the Application and, if a digital recording or transcript is unavailable from the Court, shall serve that note, with any such Order, on the Respondent and any other person affected by the Order.

3. The fees for the digital recording and transcript referred to in this Practice Direction are set out in the DIFC Courts Fee Schedule.

Dated this 5 day of December 2017
**Chief Justice Michael Hwang**










# 2018

| January | | | | | | |
|---|---|---|---|---|---|---|
| S | M | T | W | T | F | S |
|  | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 | | | |

| February | | | | | | |
|---|---|---|---|---|---|---|
| S | M | T | W | T | F | S |
| | | | | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | | | |

| March | | | | | | |
|---|---|---|---|---|---|---|
| S | M | T | W | T | F | S |
| | | | | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

| April | | | | | | |
|---|---|---|---|---|---|---|
| S | M | T | W | T | F | S |
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | | | | | |

| May | | | | | | |
|---|---|---|---|---|---|---|
| S | M | T | W | T | F | S |
| | | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 | | |

| June | | | | | | |
|---|---|---|---|---|---|---|
| S | M | T | W | T | F | S |
| | | | | | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |

| July | | | | | | |
|---|---|---|---|---|---|---|
| S | M | T | W | T | F | S |
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | | | | |

| August | | | | | | |
|---|---|---|---|---|---|---|
| S | M | T | W | T | F | S |
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 | |

| September | | | | | | |
|---|---|---|---|---|---|---|
| S | M | T | W | T | F | S |
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | | | | | | |

| October | | | | | | |
|---|---|---|---|---|---|---|
| S | M | T | W | T | F | S |
| | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 | | | |

| November | | | | | | |
|---|---|---|---|---|---|---|
| S | M | T | W | T | F | S |
| | | | | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | |

| Dec | | | | | | |
|---|---|---|---|---|---|---|
| S | M | T | W | T | F | S |
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 | | | | | |






# 2019

| January | | | | | | |
|---|---|---|---|---|---|---|
| S | M | T | W | T | F | S |
|  | | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 | | |

| February | | | | | | |
|---|---|---|---|---|---|---|
| S | M | T | W | T | F | S |
|  | | | | | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | | |

| March | | | | | | |
|---|---|---|---|---|---|---|
| S | M | T | W | T | F | S |
|  | | | | | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 | | | | | | |

| April | | | | | | |
|---|---|---|---|---|---|---|
| S | M | T | W | T | F | S |
|  | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | | | | |

| May | | | | | | |
|---|---|---|---|---|---|---|
| S | M | T | W | T | F | S |
|  | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 | |

| June | | | | | | |
|---|---|---|---|---|---|---|
| S | M | T | W | T | F | S |
|  | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | | | | | | |

| July | | | | | | |
|---|---|---|---|---|---|---|
| S | M | T | W | T | F | S |
|  | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 | | | |

| August | | | | | | |
|---|---|---|---|---|---|---|
| S | M | T | W | T | F | S |
|  | | | | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

| September | | | | | | |
|---|---|---|---|---|---|---|
| S | M | T | W | T | F | S |
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | | | | | |

| October | | | | | | |
|---|---|---|---|---|---|---|
| S | M | T | W | T | F | S |
|  | | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 | | |

| November | | | | | | |
|---|---|---|---|---|---|---|
| S | M | T | W | T | F | S |
|  | | | | | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |

| Dec | | | | | | |
|---|---|---|---|---|---|---|
| S | M | T | W | T | F | S |
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | | | | |






# 2020

| January | | | | | | |
|---|---|---|---|---|---|---|
| S | M | T | W | T | F | S |
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 | |

| February | | | | | | |
|---|---|---|---|---|---|---|
| S | M | T | W | T | F | S |
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |

| March | | | | | | |
|---|---|---|---|---|---|---|
| S | M | T | W | T | F | S |
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | | | | |

| April | | | | | | |
|---|---|---|---|---|---|---|
| S | M | T | W | T | F | S |
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | | |

| May | | | | | | |
|---|---|---|---|---|---|---|
| S | M | T | W | T | F | S |
| | | | | | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 | | | | | | |

| June | | | | | | |
|---|---|---|---|---|---|---|
| S | M | T | W | T | F | S |
| | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | | | | |

| July | | | | | | |
|---|---|---|---|---|---|---|
| S | M | T | W | T | F | S |
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 | |

| August | | | | | | |
|---|---|---|---|---|---|---|
| S | M | T | W | T | F | S |
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 | | | | | |

| September | | | | | | |
|---|---|---|---|---|---|---|
| S | M | T | W | T | F | S |
| | | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | | | |

| October | | | | | | |
|---|---|---|---|---|---|---|
| S | M | T | W | T | F | S |
| | | | | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

| November | | | | | | |
|---|---|---|---|---|---|---|
| S | M | T | W | T | F | S |
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | | | | | |

| Dec | | | | | | |
|---|---|---|---|---|---|---|
| S | M | T | W | T | F | S |
| | | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 | | |


