**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE:

EX PARTE APPLICATION OF IRAQ
TELECOM LIMITED FOR AN EXPEDITED
ORDER TO TAKE DISCOVERY
PURSUANT TO 28 U.S.C. § 1782,

                        Applicant,

SIRWAN SABER MUSTAFA, and KOREK
TELECOM COMPANY LLC.

                        Intervenors.

Case No. 1:18-mc-00458 (LGS) (OTW)

## IRAQ TELECOM LIMITED'S BRIEF IN RESPONSE TO THE INTERVENORS' OPPOSITION TO ITS APPLICATION PURSUANT TO 28 U.S.C. § 1782

QUINN EMANUEL URQUHART & SULLIVAN LLP

1300 I Street NW, Suite 900
Washington, DC 20001
Telephone:  (202) 538-8000
Facsimile:  (202) 538-8100

865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

SKARZYNSKI BLACK LLC

One Battery Park Plaza
New York, New York 10004
Telephone: (212) 820-7700

*Counsel for Applicant, Iraq Telecom Limited*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

ADDITIONAL FACTUAL BACKGROUND ......................................................................3

ARGUMENT .........................................................................................................................4

I.      THE APPLICATION MEETS THE STATUTORY REQUIREMENTS .........................4

        A.      The Requested Discovery is "For Use" in Foreign Proceedings ...........................4

        B.      The Requested Discovery is Not Speculative and Available From the
                Banks ...........................................................................................................................7

II.     THE *INTEL* FACTORS WEIGH IN FAVOR OF THE APPLICATION.........................9

        A.      The Requested Discovery Is Not Available In The Foreign Proceedings .............9

        B.      Mr. Mustafa's "Character and Nature" Argument is Without Merit....................10

        C.      The Application Does Not Circumvent the Proof-Gathering Procedures of
                the Foreign Tribunals................................................................................................12

        D.      The Discovery Requests Are Not Overbroad or Unduly Burdensome.................14

III.    THERE REMAINS AN EXPEDITED NEED ...............................................................15

CONCLUSION......................................................................................................................15

## TABLE OF APPENDICES

| Appendix | Declarant |
|---|---|
| Appendix G | Kristin N. Tahler |
| Appendix H | Graham Kenneth Lovett |
| Appendix I | Rajinder Bassi |
| Appendix J | Nabil Abdel-Malek |

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>Cases</u>

*In re Accent Delight Int'l Ltd.*,
    2018 WL 2849724 (S.D.N.Y. June 11, 2018) .......................................................... 13

*In re Application of Accent Delight Int'l Ltd.*,
    2016 WL 5818597 (S.D.N.Y. Oct. 5, 2016) ........................................................... 15

*In re Accent Delight Int'l Ltd.*,
    696 F. App'x 537 (2d Cir. 2017) ............................................................................ 15

*In re Accent Delight Int'l Ltd.*,
    869 F.3d 121 (2d Cir. 2017) ................................................................................... 15

*In re Alghanim*,
    2018 WL 2356660 (S.D.N.Y. May 9, 2018) ............................................................. 8

*Application of OOO Promnefstroy*,
    2009 WL 3335608 (S.D.N.Y. Oct. 15, 2009) ........................................................... 8

*In re Asia Maritime Pacific Ltd.*,
    253 F. Supp. 3d 701 (S.D.N.Y. 2015) ................................................................... 5, 8

*In re Babcock Borsig AG*,
    583 F. Supp. 2d 233 (D. Mass. 2008) ...................................................................... 4

*In re Broadsheet LLC*,
    2011 WL 4949864 (D. Colo. Oct. 18, 2011) ............................................................. 4

*In re Catalyst Managerial Servs., DMCC*,
    680 F. App'x 37 (2d Cir. 2017) ................................................................................ 2

*In re Application of Caratube*,
    730 F. Supp. 2d 101 (D.D.C. 2010) ....................................................................... 12

*In re Application of Chevron Corp.*,
    736 F. Supp. 2d 773 (S.D.N.Y. 2010) ...................................................................... 9

*Chevron Corp. v. Berlinger*,
    629 F.3d 297 (2d Cir. 2011) ..................................................................................... 5

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*,
    187 F.3d 229 (2d Cir. 1999) ..................................................................................... 2

*Comision Ejecutiva Hidroelectrica del Rio Lempa v. Nejapa Power Co., LLC*,
2008 WL 4809035 (D. Del. Oct. 14, 2008) ................................................................. 4

*Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*,
747 F.3d 1262 (11th Cir. 2014) ................................................................................ 5

*In re Degitechnic*,
2007 WL 1367697 (W.D. Wash. May 8, 2007) ................................................... 8, 12

*In re Dubey*,
949 F. Supp. 2d 990 (C.D. Cal. 2013) .................................................................... 12

*Euromepa S.A. v. R. Esmerian, Inc.*,
51 F.3d 1095 (2d Cir. 1995) .............................................................................. 10, 14

*In re Ex Parte Application of Kleimar N.V.*,
220 F. Supp. 3d 517 (S.D.N.Y. 2016) ...................................................................... 4

*In re Ex Parte Application of Qualcomm Inc.*,
162 F.Supp.3d 1029 (C.D. Cal. 2016) ...................................................................... 8

*In re Application of Furstenberg Fin. SAS*,
2018 WL 4625802 (S.D.N.Y. Sept. 26, 2018) .......................................................... 2

*In re Furstenberg Fin. SAS*,
2018 WL 3392882 (S.D.N.Y. July 12, 2018) .................................................. 2, 8, 10

*Gov't of Ghana v. ProEnergy Servs. LLC*,
2011 WL 2652755 (W.D. Mo. June 6, 2011) ........................................................... 4

*In re Grupo Unidos por el Canal, S.A.*,
2014 WL 5456520 (N.D. Cal. Oct. 27, 2014) .................................................... 4, 10

*In re Hallmark Capital Corp.*,
534 F. Supp. 2d 951 (D. Minn. 2007) ............................................................... 4, 10

*Heraeus Kulzer GmbH v. Biomet, Inc.*,
633 F.3d 591 (7th Cir. 2011) .................................................................................. 13

*In re Hornbeam Corp.*,
2015 WL 13647606 (S.D.N.Y. Sept. 17, 2015)
*aff'd*, 722 F. App'x 7 (2d Cir. 2018), *and aff'd*, 722 F. App'x 7 (2d Cir. 2018) .................. 12

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004) .................................................................................... passim

*Jiangsu Steamship Co. v. Success Superior Ltd.*,
  2015 WL 3439220 (S.D.N.Y. Feb. 5, 2015) .................................................................. 5

*Kiobel v. Cravath Swaine & Moore LLP*
  895 F.3d 238 (2d Cir. 2018) ....................................................................................... 13

*In re Kreke Immobilien, KG*,
  2013 WL 5966916 (S.D.N.Y. Nov. 8, 2013) ............................................................. 8, 9

*Matter of Application of Leret*
  51 F. Supp. 3d 66 (D.D.C. 2014) ................................................................................. 9

*Matter of Fornaciari*
  2018 WL 679884 (S.D.N.Y. Jan. 29, 2018) ................................................................. 8

*Application of Malev Hungarian Airlines*,
  964 F.2d 97 (2d Cir. 1992) ......................................................................................... 13

*In re Mare Shipping Inc.*,
  2013 WL 5761104 (S.D.N.Y. Oct. 23, 2013) ............................................................. 12

*Mees v. Buiter*,
  793 F.3d 291 (2d Cir. 2015) ................................................................................... 13, 14

*In re NRC Holding, Ltd.*,
  2015 WL 541770 (S.D. Fla. Feb. 10, 2015) ................................................................. 6

*In re Application for an Order Permitting Metallgesellschaft AG to take Discovery*,
  121 F.3d 77 (2d Cir. 1997) ..................................................................................... 12, 14

*Rio Lempa v. Nejapa Power Co., LLC*,
  2008 WL 4809035 (D. Del. Oct. 14, 2008) ................................................................. 4

*In re Roz Trading Ltd.*,
  469 F. Supp. 2d 1221 (N.D. Ga. 2006) ........................................................................ 4

*In re Schlich*,
  893 F.3d 40 (1st Cir. 2018) .......................................................................................... 4

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP.*,
  376 F.3d 79 (2d Cir. 2004) ......................................................................................... 12

*Thompson v. Bowie*,
  71 U.S. 463 (1866) ....................................................................................................... 2

*United Paperworkers Int'l Union v. Misco, Inc.*
  484 U.S. 29  (1987)  .................................................................................................... 11

## <u>Statutory Authorities</u>

28 U.S.C. § 1782 ................................................................................................................ passim

## <u>Rules and Regulations</u>

Fed. R. Civ. P. 26 ..................................................................................................................... 14

## INTRODUCTION[1]

Iraq Telecom seeks targeted and discrete discovery from the Correspondent Banks,[2] which processed USD transactions for several of the foreign banks involved in the corrupt transactions at issue in the Foreign Proceedings.  Not one of the Correspondent Banks has raised any objection to the availability of Section 1782 discovery from them, despite three having appeared by counsel and all having been given every opportunity to do so.  Mr. Mustafa, however, vigorously objects to the Application in an Opposition that ignores the extensive allegations of misconduct, fraud, self-dealing, and mismanagement alleged in the Foreign Proceedings, which Iraq Telecom has commenced to seek redress for the significant losses caused by Mr. Mustafa and others.

Mr. Mustafa's over-reaching Opposition is telling.  Given that the cost of production of ordinary banking records by third party banks is nothing for Mr. Mustafa and his fellow Defendants, his vociferous protests that Iraq Telecom should seek records exclusively from him (and others in the Foreign Proceedings), betrays much.  Indeed, if the Correspondent Banks' records will show nothing more than the records available in the Foreign Proceedings, the subpoenas would, at worst, be redundant but still valuable as independent confirmation, perhaps resulting in a minor cost-of-doing-business inconvenience to a handful of US banks, ***but not Mr. Mustafa***.  Which begs the question: Why has Mr. Mustafa so forcefully objected to subpoenas seeking nothing from him?

The answer, of course, is that the disinterested Correspondent Banks must have evidence that will be probative of wrongdoing, which otherwise will not be available to Iraq Telecom.

---

[1]  Based on communications with counsel to Intervenor Mustafa, for purposes of this Reply, we refer to the Intervenor as Mr. Mustafa.  Mr. Mustafa is the same individual referenced in the Application and supporting documents as Mr. Barzani.

[2]  Unless otherwise noted, all capitalized terms herein have the same meaning as in the Application and its supporting documents.

There simply is no basis to believe that Mr. Mustafa would commit fraud and then produce evidence of the same in response to document requests.  This is precisely a scenario envisioned by Section 1782.  As the Second Circuit explained in *In re Catalyst Managerial Servs., DMCC*, 680 F. App'x 37, 40 (2d Cir. 2017), Section 1782 discovery requests are appropriate where there is reason to question "the completeness and accuracy" of the evidence that was otherwise available in the foreign tribunal.  *See also In re Furstenberg Fin. SAS*, 2018 WL 3392882, at *6 (S.D.N.Y. July 12, 2018), *reconsideration denied*, 2018 WL 4625802 (S.D.N.Y. Sept. 26, 2018). Here the accuracy and completeness of information is a core issue in the foreign proceedings. Indeed, given that Mr. Mustafa and the other Defendants are accused of significant bribery and corruption, Iraq Telecom has every reason to question that whatever might eventually be produced in the underlying Foreign Proceedings will be accurate, reliable, or complete.

The Supreme Court recognized long ago that other forms of proof are necessary in cases of fraud and conspiracy because "knaves have usually sufficient cunning to have no witnesses present who can testify directly to their fraudulent contrivances."  *Thompson v. Bowie*, 71 U.S. 463, 473 (1866); *see also Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 240 (2d Cir. 1999) (recognizing that conspiracies will not easily be shown by direct evidence).  Such is the case here.  In short, the Requested Discovery will likely forever elude Iraq Telecom, absent a grant of the Application.

Try as he might, Mr. Mustafa's sweeping laundry list of purported objections (each contradicting the objection preceding it), cannot distract from this fundamental truth.  For these and the reasons further detailed herein, the Opposition is without merit and the Application should be granted.

## ADDITIONAL FACTUAL BACKGROUND

**Mr. Mustafa's Responsibility For Iraq Telecom's Losses:**   Ignoring the extensive allegations of misconduct, fraud, self-dealing, and mismanagement for which the Applicant seeks redress in the Foreign Proceedings, the Opposition asserts that Iraq Telecom merely seeks indemnity for ordinary investment losses flowing from two so-called "setbacks" which, according to Mr. Mustafa, had nothing to do with him.  *See* Opp. at 4.  While Iraq Telecom will not burden the Court with a lengthy discussion of the underlying merits, Mr. Mustafa's misleading factual characterizations do warrant limited correcting.

First, despite Mr. Mustafa's convenient "setbacks" characterization, as Mr. Beale recognizes, an Iraq Telecom joint venturer, Agility, has commenced an arbitration against the Republic of Iraq.  *See, e.g.*, Beale Decl. ¶ 19.  Indeed, Iraq Telecom's investigation to date has revealed evidence that Messrs. Mustafa and Rahmeh bribed CMC officials to improperly influence the CMC to act in a manner adverse to Iraq Telecom.  *See, e.g.*, App. at 14 n.29, App'x F ¶ 5.  Second, Mr. Mustafa fails to mention that the reason Iraq Telecom did not acquire majority control of IHL following its exercise of the call option is because, to date, CS Ltd has refused to complete the call option as required under the IHL Shareholders' Agreement.  *See, e.g.*, App. at App'x C, Ex. A ¶¶ 11, 31-34.  In short, Mr. Mustafa's professed innocence in connection with the losses to Iraq Telecom's investment is in substantial dispute, despite his attempts to whitewash the factual record to his benefit.

**Defendants' Deliberate Delay Campaign:**   The Opposition further suggests that the Court should deny (or, at minimum, delay) the Application given the purported premature status of certain proceedings.  *See* Opp. at 12-14.  Not only is this argument legally unsupportable, it also is disingenuous given that Mr. Mustafa and his cohorts have engaged in a concerted campaign to delay the various proceedings by, among other things, selectively appearing in some

proceedings but not others, failing to meet deadlines, and seeking eleventh hour extensions. *See* App'x H ¶¶ 14-17; App'x I ¶ 22; App'x J ¶¶ 7-14. Mr. Mustafa's transparent delay tactics should not be further rewarded by denying or even delaying the instant Application.[3]

## ARGUMENT

## I.   THE APPLICATION MEETS THE STATUTORY REQUIREMENTS

### A.   The Requested Discovery is "For Use" in Foreign Proceedings

The Opposition sets forth two primary arguments in an attempt to defeat Iraq Telecom's showing of the second statutory factor. *See* Opp. at 11-15. Both arguments fall far short.

### 1.   Arbitrations Constitute "Foreign Proceedings"

The Opposition wrongly asserts that the arbitrations do not qualify as "foreign proceedings" under Section 1982. Opp. at 11-15. However, as set forth in the Application, the Supreme Court's decision in *Intel* triggered a new understanding with regard to whether arbitrations constitute "foreign tribunals." Since *Intel*, courts routinely find that arbitral tribunals qualify. *See* App. at 30-31 (citing *In re Ex Parte Application of Kleimar N.V.*, 220 F. Supp. 3d 517, 521 (S.D.N.Y. 2016)).[4] In so holding, courts rely upon, *inter alia*, the Supreme Court's finding that Congress's 1964 amendment to Section 1782 signaled an intent to broaden the scope of the statute "to provide the possibility of U.S. judicial assistance in connection with administrative and quasi-judicial proceedings." *In re Roz Trading Ltd.*, 469 F. Supp. 2d 1221,

---

[3]  Notably, counsel for Mr. Barzani here also selectively acts for Mr. Mustafa and other defendants in the ICC and LAMC Arbitrations and related matters. *See* Beale Decl. ¶¶ 27, 39, 45. That such counsel is sufficiently informed of the Foreign Proceedings to challenge other aspects of the Application, while also attempting to use the lack of service and constitution of an arbitral tribunal in support of an argument that these are merely "attempted" proceedings is at a minimum inequitable, if not pure gamesmanship. *See also* App'x H ¶ 16.

[4]  *See also In re Grupo Unidos por el Canal, S.A.*, 2014 WL 5456520, at *2 (N.D. Cal. Oct. 27, 2014); *In re Broadsheet LLC*, 2011 WL 4949864, at *2 (D. Colo. Oct. 18, 2011); *Gov't of Ghana v. ProEnergy Servs. LLC*, 2011 WL 2652755, at *3 (W.D. Mo. June 6, 2011); *In re Babcock Borsig AG*, 583 F. Supp. 2d 233, 239-40 (D. Mass. 2008), *disagreed with on other grounds by In re Schlich*, 893 F.3d 40 (1st Cir. 2018); *Comision Ejecutiva Hidroelectrica del Rio Lempa v. Nejapa Power Co., LLC*, 2008 WL 4809035, at *1 (D. Del. Oct. 14, 2008); *In re Hallmark Capital Corp.*, 534 F. Supp. 2d 951, 957 (D. Minn. 2007); *In re Roz Trading Ltd.*, 469 F. Supp. 2d at 1224.

1224 (N.D. Ga. 2006) (quoting *Intel Corp. v. Advanced Micro Devices, Inc.,* 542 U.S. 241, 258 (2004)).

The primary Second Circuit case relied on by Mr. Mustafa, *National Broadcasting Co., Inc. v. Bear Stearns & Co* ("*NBC*"), predates *Intel* and, thus, does not reflect the Supreme Court's broadened interpretation or its impact on cases since. *See* App. at 30-31. For example, holdings from this District, including those cited by Mr. Mustafa (*see* Opp. at 12), have acknowledged that *Intel* "call[s] into question" *NBC*.[5] None more so than *Kleimar*, which expressly found Section 1782 to be a proper discovery tool for use in arbitrations. 220 F. Supp. 3d at 521. The Second Circuit has only confronted this issue once since *NBC*. *See Chevron Corp. v. Berlinger,* 629 F.3d 297, 310-311 (2d Cir. 2011). Mr. Mustafa misleadingly claims that the Court there "expressly declined to disturb the holding" of *NBC*. Opp. at 12. Not so. In fact, the Court *expressly* "did not reach the argument" because other proceedings "provided an adequate basis for the district court's production order." *Chevron Corp.,* 629 F.3d at 310-311.[6]

Relying upon non-controlling cases outside this Circuit and arising in vastly different contexts, Mr. Mustafa sets forth various policy arguments as to why courts purportedly remain "reluctant" to apply Section 1782 to arbitrations. *See* Opp. at 12-13. But, these arguments are unavailing as Mr. Mustafa cannot credibly argue that the purported speed and efficiency of arbitration is realistically at issue where, according to Mr. Mustafa himself, months will pass

---

[5]  *See In re Asia Maritime Pacific Ltd.*, 253 F. Supp. 3d 701, 707 n.8 (S.D.N.Y. 2015); *see also Jiangsu Steamship Co. v. Success Superior Ltd.*, 2015 WL 3439220, at *6 (S.D.N.Y. Feb. 5, 2015) (suggesting post-*Intel* that arbitrations are "adjudicative in nature," and thus, a "foreign tribunal"). The Eleventh Circuit has likewise noted that the continuing validity of the Second Circuit's holding in *NBC* is in substantial doubt given the *Intel* "dicta that [t]he term 'tribunal' ... includes investigating magistrates, administrative and arbitral tribunals, and quasi-judicial agencies, as well as conventional civil, commercial, criminal, and administrative courts . . . ." *Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1270 n. 4 (11th Cir. 2014).

[6]  Notably, although arbitrations are within the scope of Section 1782 for the reasons set forth herein, the DIFC proceedings alone provide an adequate basis for a production order here, as in *Chevron*. *See Chevron,* 629 F.3d at 310-311.

5

before the parties submit statements of this complex case.[7]  *See* Opp. at 23; Beale Decl. ¶¶ 52-53;

*see also* App'x I ¶ 22; App'x J ¶¶ 15-20, 29.  Nor will granting the Application "interfere with

the bargained-for expectations concerning the arbitration process," *see* Opp. at 12, given the

Court's authority to limit discovery to ensure that it is narrowly tailored and relevant, *see Intel*,

542 U.S. at 265.

### 2.      The Foreign Proceedings Have Commenced

Implicitly conceding the fruitlessness of the foregoing, Mr. Mustafa wrongly claims there

is the "much more fundamental problem" that the Foreign Proceedings have not yet commenced.

His argument borders on senseless because a foreign proceeding need only be *contemplated* for

purposes of Section 1782.  *See Intel*, 542 U.S. at 259.  Indeed, the Supreme Court expressly

rejected the contention that Section 1782 "comes into play only when adjudicative proceedings

are 'pending' or 'imminent.'"  *Id.*; *see also In re NRC Holding, Ltd.*, 2015 WL 541770, at *2

(S.D. Fla. Feb. 10, 2015).  Commencement is therefore irrelevant.  *See* App. at 28, 31 n.51.

Nevertheless, even if Mr. Mustafa's invented "commencement" test is considered, there plainly

is no question that the Foreign Proceedings have commenced.

### (a)      DIFC Litigation

DIFC law is clear that litigation in the DIFC Courts formally commences when claims

are filed, which has indisputably occurred here.  *See* App'x H ¶ 5.  Unable to escape the clear

rules, Mr. Mustafa offers the red herring argument that the Applicant has conceded that service

of the DIFC matter is an "if" not a "when."  *See* Opp. at 13.  Unfortunately for Mr. Mustafa,

service is wholly unrelated to commencement.[8]  App'x H ¶ 5.  Moreover, the unremarkable

---

[7]  As discussed *supra* at 3-4, Mr. Mustafa and his associates are responsible for delays in the ICC and LAMC arbitrations.

[8]  It is noteworthy, however, that service could be expedited if the defendants in the DIFC Litigation accepted service.  *See* App'x H ¶ 7.  They have declined to do so, despite being on notice of the proceedings.  *Id.* ¶¶ 14-17.

observation that the DIFC matters will continue to proceed after service is hardly the concession Mr. Mustafa paints it to be.  *See* App. at App'x B ¶ 24.

Mr. Mustafa also creatively argues that so-called "contingent proceedings" do not qualify as foreign proceedings under Section 1782.  *See* Opp. at 14.  This argument is wholly unsupported by the law, however, as neither the term "contingent proceedings" nor Mr. Mustafa's analysis is found in *Intel* or other applicable cases.  Instead, in *Intel*, the Supreme Court considered whether the foreign tribunal was a first-instance decisionmaker empowered to issue a final ruling, which it was.  *Intel,* 542 U.S. at 257-58.  Mr. Mustafa does not challenge that the DIFC Courts meet this standard.  *See also* App. at App'x B ¶ 5.

**(b)     ICC and LAMC Arbitrations**

Mr. Mustafa attempts to make much of the fact that the tribunals in the ICC and LAMC arbitrations have not yet been constituted.  *See* Opp. at 13.  As with the DIFC Litigation, constitution of the tribunal is immaterial to commencement of the Arbitrations.  Both arbitrations commenced when the RFAs were received by the Secretariat.  App'x I ¶¶ 4-5; App'x J ¶¶ 4-5. What is more, the parties have begun selecting their arbitrators, (App'x I ¶ 6; App'x J ¶¶ 9-12); thus, in any event, the tribunals shortly will be constituted.[9]

**B.     The Requested Discovery is Not Speculative and Available From the Banks**

Although irrelevant to the second statutory requirement, Mr. Mustafa inexplicably argues that the Requested Discovery is speculative (Opp. at 14-15), and therefore not for "use" in a "proceeding before a foreign tribunal."  Mr. Mustafa is mistaken.

---

[9]  As it relates to the future tribunals' ability to issue final decisions, the parties are required by their agreements to submit to the jurisdiction of the ICC and the LAMC, including a final decision therefrom.  App. at App'x E, Ex. C ¶ 48.3, Ex. D ¶ 14.2.  Thus, even if Mr. Mustafa's "contingent proceedings" classification found support, which it does not, the arbitrations here would not qualify.

First, Mr. Mustafa's speculative critiques of the Raedas Declaration (*see* Opp. at 7-8), are self-servingly cherry-picked, while detailed evidence such as specific bank account numbers, dates, and payment amounts are conveniently overlooked.  *See*, *e.g.*, App. at App'x F ¶¶ 6, 7 (Figure 1), 9-14, and Exs. A-D.[10]  Second, Mr. Mustafa simply ignores the Application's clear explanation as to why the Correspondent Banks are likely to have responsive documents. *Compare* App. at 16-20, 16 n.31, App'x F *with* Opp. at 14-15.  This case bears no resemblance to the application in *In re Asia Maritime Pacific,* which the court denied because the applicant "provided *no basis* to believe that [the foreign defendant] ever transacted business through" the banks from which the discovery was sought.  253 F. Supp. 3d at 705.  In sharp contrast here, Iraq Telecom has amply described (1) the suspect USD transactions executed by the foreign defendants through the foreign banks; (2) the relationship between the Correspondent Banks and the foreign banks; and (3) why the Correspondent Banks would have information and documents relating to the suspect USD transactions it processed for the foreign banks.[11]  *See, e.g.,* App. at 12 n.26, 16 n.31, App'x E at 7 n.13, App'x F ¶ 7 (Figure 1) and Exs. A-D.

Significantly, the Correspondent Banks have *not objected* to the Application.  That the discovery targets, who typically would be the ones to raise objections based on speculation and burden,[12] are silent further diminishes the complaints of Mr. Mustafa, who bears no production obligations.  Notably, Mr. Mustafa has provided no rationale as to why he even has standing for

---

[10]   To the extent that Mr. Mustafa is suggesting that Iraq Telecom must *prove* the allegations in the Foreign Proceedings at this stage, he is wrong.  *See In re Furstenberg Fin. SAS,* 2018 WL 3392882, at *5 ("[T]his Court cannot decide the merits of the contemplated foreign proceeding when deciding an application under § 1782.").

[11]   *See, e.g.*, *In re Alghanim*, 2018 WL 2356660, at *5 (S.D.N.Y. May 9, 2018); *Matter of Fornaciari for Order to Take Discovery Pursuant to 28 U.S.C. §1782*, 2018 WL 679884, at *1 (S.D.N.Y. Jan. 29, 2018) (granting Section 1782 application seeking discovery from four banks regarding payments flowing from accounts at those banks).

[12]   *See, e.g., In re Ex Parte Application of Qualcomm Inc.,* 162 F. Supp. 3d 1029, 1044-45 (N.D. Cal. 2016); *In re Kreke Immobilien, KG,* 2013 WL 5966916, at *7 (S.D.N.Y. Nov. 8, 2013); *In re Application of OOO Promnefstroy*, 2009 WL 3335608, at *9 (S.D.N.Y. Oct. 15, 2009); *In re Degitechnic*, 2007 WL 1367697, at *5 (W.D. Wash. May 8, 2007).

such objections.  *See, e.g., In re Application of Chevron Corp.*, 736 F. Supp. 2d 773, 779 n.20 (S.D.N.Y. 2010) ("The Lago Agrio plaintiffs, however, lack standing to object to the application . . . except to the extent, if any, that the application seeks material as to which they have a claim of privilege." (citation omitted)).

## II.  THE *INTEL* FACTORS WEIGH IN FAVOR OF THE APPLICATION

As previously shown (*see* App. at 32-37), the *Intel* discretionary factors heavily favor granting the Application.  Mr. Mustafa's assertions otherwise fall short (assuming he even has standing to assert them).

### A.  The Requested Discovery Is Not Available In The Foreign Proceedings

Recognizing that the first *Intel* factor favors the Applicant (*i.e.*, whether the person from whom discovery is sought is a participant in the foreign proceeding), Mr. Mustafa offers the unpersuasive argument that evidence sought from the Correspondent Banks is duplicative of evidence available in the Foreign Proceedings.  Opp. at 16.[13]  As explained *supra* at 1-2, this is contrary to Section 1782's function in matters, as here, involving allegations of fraud and deceit.

Moreover, this argument is misplaced in the context of the first *Intel* factor and also wholly inaccurate (*i.e.*, the parties in the Foreign Proceedings cannot possibly possess the same records, or quality of records, as the nonparty Correspondent Banks, which likely maintain, among other things, sophisticated and comprehensive wire transfer records).[14]  Unsurprisingly, Mr. Mustafa offers no evidence to the contrary, nor can he.  In addition, as alleged in the Foreign

---

[13]  In some instances, Mr. Mustafa argues that the Applicant can obtain the Requested Discovery from the parties to the Foreign Proceedings.  Opp. at 16.  In others, he claims that the Requested Discovery is overly broad and inconsistent with the character and nature of the Foreign Proceedings.  *Id*. at 16-19, 21-23.  Mr. Mustafa cannot have it both ways and, in fact, this inconsistency undermines both arguments.

[14]  *In Matter of Application of Leret* bears no relation to the facts of this case.  *See* 51 F. Supp. 3d 66, 68, 71 (D.D.C. 2014) (denial of 1782 application because the party from whom discovery was sought was a ***participant*** in two out of three of the foreign proceedings).  *In re Kreke Immobilien KG* is similarly inapposite.  *See* 2013 WL 5966916, at *5 (denial of 1782 application where discovery was sought from a German bank and the underlying foreign proceeding was before a German court).

Proceedings, Iraq Telecom has repeatedly requested financial information about Korek from Mr. Mustafa and others, but has not received a substantive response.  App. at 15.  Furthermore, given the allegations against the parties in the Foreign Proceedings, Mr. Mustafa and his associates are unlikely to produce fulsome, reliable productions, let alone any incriminating evidence.  As such, Iraq Telecom plainly cannot obtain the Requested Discovery from the parties to the Foreign Proceedings.  *See*, *e.g.*, *In re Furstenberg Fin. SAS*, 2018 WL 3392882, at *6 (rejecting argument that Petitioner could obtain the requested discovery from a party in the foreign proceeding).

### B.  Mr. Mustafa's "Character and Nature" Argument is Without Merit

### 1.  ICC and LAMC Arbitrations

There is nothing about the character and nature of arbitrations generally, or the ICC and LAMC arbitrations specifically, that is inconsistent with the Application or the Requested Discovery.  Indeed, both the ICC and the LAMC are demonstrably receptive to assistance from U.S. courts.[15]  *See* App. at App'x C ¶ 14, App'x D ¶¶ 16-17; *see also In re Grupo Unidos*, 2014 WL 5456520, at *3.  Thus, Mr. Mustafa's claims relating to this *Intel* factor are easily dismissed.

<u>First</u>, the parties' agreements to arbitrate are not relevant to this discretionary factor (Opp. at 17), but in any event: (i) Iraq Telecom has complied with these agreements by filing its claims in the appropriate forums (App. at App'x E, Ex. C ¶ 48.3, Ex. D ¶ 14.2; App'x I ¶¶ 15-16; App'x J ¶¶ 24-25); (ii) nothing in these agreements precludes Iraq Telecom from seeking evidence through 1782 applications (*id.*); and (iii) seeking discovery from the U.S. does not divest the ICC or LAMC of any authority.  *See*, *e.g.*, *Hallmark*, 534 F. Supp. 2d at 957 ("[e]ven if the district court would permit the discovery, nothing prohibits the arbitration body from

---

[15]  To the extent that Messrs. Beale and Black disagree with any points in the Applicant's supporting declarations, the Court may not engage in any "battle[s]-by-affidavit"; instead, it may only consider "authoritative proof" that the foreign tribunal would reject the evidence sought.  *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1099-1100 (2d Cir. 1995).

nevertheless . . . refusing to allow the resulting evidence to be introduced or admitted".[16]
Second, Mr. Mustafa's claim that that the character and nature of private arbitration is inconsistent with discovery under Section 1782 (Opp. at 17) relies again entirely on *NBC* and merely parrots his previously debunked arguments.[17]  *Compare* Opp. at 12 *with* Opp. at 17-18; *see supra* at 4-6.  Third, as shown in detail below, the "all document" requests are proper and appropriate. *See infra* at 13.

## 2.    DIFC Litigation

Mr. Mustafa's claims regarding the "character and nature" of the DIFC Courts are similarly unavailing.  Opp. at 18-19.  First, his suggestion that Iraq Telecom should have provided notice to the parties or the DIFC Courts before filing the Application is wholly unsupported.  App'x H ¶ 30; *see also* App'x I ¶ 24; App'x J ¶ 30.  "Notice" is not relevant to this *Intel* factor, as Mr. Mustafa's absence of authority illustrates.  But, in any event, such objections are now moot given that Mr. Mustafa and others clearly have notice of the Application.

In addition, Mr. Mustafa's argument that, because certain of the Defendants in the DIFC Litigation have not yet been served, it is "premature and impossible" for this Court to evaluate the character and nature of the DIFC Courts and their receptivity to the Requested Discovery (Opp. at 18-19), is fatally flawed.  Neither the statute nor *Intel* require applicants in 1782 actions to obtain an opinion from the foreign tribunals regarding such tribunals' receptivity to the requested discovery.  *See supra* at 11.  Accordingly, the stage of litigation in the foreign

---

[16]  Mr. Mustafa's citation to *United Paperworkers Int'l Union v. Misco, Inc.* is a non-issue (Opp. at 17): this case does not involve a 1782 Application and, in the context of the cited quote, the Court was condemning the lower court's refusal to enforce an arbitral award because the arbitrator failed to consider certain evidence barred by the parties' agreed rules of discovery.  484 U.S. 29, 39 (1987).

[17]  It bears noting that, despite Mr. Mustafa's trumpeting of the speed and efficiency of arbitrations (Opp. at 17), he himself has had a central role in obstructing the progress of the arbitrations, in addition to the DIFC Litigation.  *See, e.g.,* App'x H ¶¶ 14-17; App'x I ¶ 22; App'x J ¶¶ 7-14; *see supra* at 3-4.

proceedings, including whether service has been completed, is irrelevant to the analysis.[18]  *See*

*supra* at 6-7.  And, the cases relied upon by Mr. Mustafa are not to the contrary.[19]

### C.      The Application Does Not Circumvent the Proof-Gathering Procedures of the Foreign Tribunals

The Requested Discovery is not an attempt to circumvent the proof-gathering rules in the

Foreign Proceedings.  First, contrary to Mr. Mustafa's suggestions otherwise (Opp. at 19), Iraq

Telecom was not required under any rule to first seek party discovery (App'x H ¶ 31; App'x I ¶

25; App'x J ¶ 31) and the cases cited fail to say otherwise.[20]  Second, neither the statute nor the

relevant case law require Section 1782 applicants to delay filing of their application until the

foreign tribunal sets forth specific discovery procedures.[21]  In striving to fashion such a rule out

of whole cloth, Mr. Mustafa ignores contradictory Second Circuit precedent directly on point,

holding that "a district court may not refuse a request for discovery pursuant to § 1782 because a

foreign tribunal has not yet had the opportunity to consider the discovery request."  *In re*

*Application for an Order Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77, 79

---

[18]  Judge Broderick's recent decision in *In re Hornbeam Corp.*, in which the Court granted the Application in the absence of any foreign proceeding having been even filed, much less served, is instructive.  2015 WL 13647606, at *4 (S.D.N.Y. Sept. 17, 2015), *aff'd*, 722 F. App'x 7 (2d Cir. 2018), *and aff'd*, 722 F. App'x 7 (2d Cir. 2018) (finding that district courts may resolve 1782 applications relating to contemplated proceedings *ex parte*).

[19]  *See, e.g.*, *Schmitz v. Bernstein Liebhard & Lifshitz, LLP.*, 376 F.3d 79, 84 (2d Cir. 2004) (denial of 1782 application because the foreign tribunal had already considered and rejected the requested discovery, which is not the case here); *In re Dubey*, 949 F. Supp. 2d 990, 996 (C.D. Cal. 2013) (denial of 1782 application on the basis that a private American Arbitration Association arbitration was not a "foreign or international tribunal" and because "Petitioner . . . might be able to obtain the requested documents pursuant to the arbitration rules").

[20]  *See, e.g.*, *In re Mare Shipping Inc.*, 2013 WL 5761104, at *5 (S.D.N.Y. Oct. 23, 2013) (denial of 1782 application where discovery request was on the U.S.-based counsel for the opposing party in the underlying foreign proceeding and the foreign tribunal had jurisdiction to order the opposing party to produce this discovery); *In re Degitechnic*, 2007 WL 1367697, at *4-5 (W.D. Wash. May 8, 2007) (denial of 1782 application which involved a discovery request on a participant in the underlying foreign proceeding (not a third party) and at an unreasonably late stage in the foreign litigation); *In re Application of Caratube Int'l Oil Co.*, 730 F. Supp. 2d 101, 108 (D.D.C. 2010) (denial of 1782 application where, unlike here, there was an explicit requirement that documents from third parties be sought and collected by the tribunal itself).

[21]  As discussed above, the statute also applies to contemplated proceedings, which further demonstrates that Section 1782 does not require the foreign tribunal to issue discovery procedures before granting a 1782 application.  *See supra* at 6.

(2d Cir. 1997). Moreover, such rules would be "at odds with the twin purposes of 28 U.S.C. § 1782" by making it more difficult for petitioners to seek the assistance of US courts and limiting the ability of US courts to set an example for foreign courts to follow. *Application of Malev Hungarian Airlines*, 964 F.2d 97, 100–01 (2d Cir. 1992).

Furthermore, the Requested Discovery, including the requests for "all documents," is consistent with and not a circumvention of the DIFC, ICC and LAMC rules, nor is it "U.S.-Style" so as to be inconsistent with discovery requests that may be made in the Foreign Proceedings.[22] App'x H ¶¶ 24-27; App'x I ¶¶ 16-19, 21; App'x J ¶¶ 25-28. Significantly, these arguments from Mr. Mustafa are nothing more than a recasting of the fourth *Intel* factor, which, as shown below, supports granting, not denying, the Application. *See infra* at 14-15.

Additionally, *Kiobel v. Cravath Swaine & Moore LLP* is inapposite. Contrary to Mr. Mustafa's misleading representations, the *Kiobel* Court did not reject the established Second Circuit precedent that the third *Intel* factor considers whether the foreign tribunal has affirmative restrictions prohibiting the requested discovery, rather than rules limiting it.[23] In fact, the court found that the foreign tribunal affirmatively prohibited the requested discovery, not merely that the foreign tribunal had a more restrictive scope of discovery. 895 F.3d 238, 245, 245 n.3 (2d Cir. 2018).[24] Mr. Mustafa does not argue that the foreign tribunals in this case affirmatively

---

[22] Even if the Requested Discovery proves broader than that permitted in the Foreign Proceedings, courts have regularly granted such requests. Specifically, the Second Circuit has recognized, but ultimately downplayed, this concern, noting that "[f]ew if any foreign jurisdictions permit the scope of discovery available in our courts." *Mees v. Buiter*, 793 F.3d 291, 302 (2d Cir. 2015). Consequently, "[i]f district courts were free to refuse discovery based upon its unavailability in a foreign court ... § 1782 would be irrelevant to much international litigation, frustrating its underlying purposes." *Id.* (internal citation and quotation marks omitted).

[23] *See also In re Accent Delight Int'l Ltd.*, 2018 WL 2849724, at *4 (S.D.N.Y. June 11, 2018) (quoting *Mees*, 793 F.3d at 303 n.20).

[24] *Heraeus Kulzer GmbH v. Biomet, Inc.,* 633 F.3d 591, 594 (7th Cir. 2011), an out-of-Circuit case, is inapposite for similar reasons. *See* Opp. at 21.

prohibit the Requested Discovery, because he cannot.  To the contrary, as set forth above at Section II.B and in the Application at 34-35, the Requested Discovery likely will be condoned.[25]

### D.      The Discovery Requests Are Not Overbroad or Unduly Burdensome

Had the subpoenas been issued *ex parte,* one of the *Intel* factors the Court would consider in deciding whether to quash or limit them would be whether the subpoenas were overbroad and unduly burdensome.  But this is no longer an *ex parte* proceeding and the scope of the discovery is, by order of this Court, to be determined in a second phase, with the Correspondent Banks participating in that phase only.  So further scope arguments seem unnecessary.

Nevertheless, Mr. Mustafa complains that the draft subpoenas request "all documents" using the rubric common in U.S. discovery requests.  Of course, U.S. requests are also subject to meet and confer requirements, and Iraq Telecom readily will negotiate in good faith with the banks.[26]  Mr. Mustafa's complaint, however, is not that the subpoenas are inconsistent with U.S. discovery rules, but rather with foreign discovery process.  That is not the test under *Intel*.  As the court held in *Mees v. Buiter*: "Whether a request is intrusive or burdensome should not be assessed based on the "discovery scope" available in the foreign proceeding. . . . Rather, a district court evaluating a § 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure."  793 F.3d at 302; *see also In re Application for an Order Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d at 79 ("We have rejected any requirement that evidence sought in the United States pursuant to § 1782(a) be discoverable under the laws of the foreign country that is the locus of the underlying proceeding.").

---

[25]  The Second Circuit has made clear that a foreign tribunal's receptivity to the evidence will be presumed unless there is an authoritative declaration to the contrary.  *Euromepa*, 51 F.3d at 1101.

[26]  Indeed, certain of the Correspondent Banks have already reached out to Iraq Telecom to begin discussing the scope of the proposed subpoenas should the Court grant the Application.  *See* App'x G ¶ 4.

Given that the Correspondent Banks have not opposed the Application, Mr. Mustafa's challenges to the breadth and burden of the Requested Discovery should be ignored. Indeed, the SDNY has recognized that, where the party from whom discovery is sought agrees to comply with the subpoena, an intervenor's arguments regarding such topics "ring hollow."[27]

## III.    THERE REMAINS AN EXPEDITED NEED

Iraq Telecom sought expedited review of the Application in the hopes of ensuring that the Requested Discovery could be utilized in the Foreign Proceedings. *See* App. at 3, App'x B at 8, n.4; App'x C ¶¶ 21-22. Because proceedings relating to the Application are proceeding apace, Iraq Telecom's timing concerns have been addressed. Nevertheless, impending events in the Foreign Proceedings, such as the Interim Relief Application in the DIFC, and statements of case in the ICC and LAMC arbitrations, continue to support Applicant's expedited need. *See* App'x H ¶¶ 11-13; App'x I ¶¶ 11-13; App'x J ¶¶ 21-22.

## CONCLUSION

Based on the foregoing, the Applicant respectfully requests that the Court grant the Application and authorize the Applicant to serve the draft subpoenas attached to the Application as Exhibits A-E to Appendix A.

---

[27] *In re Application of Accent Delight Int'l Ltd.,* 2016 WL 5818597, at *2 (S.D.N.Y. Oct. 5, 2016), *aff'd sub nom. In re Accent Delight Int'l Ltd.,* 869 F.3d 121 (2d Cir. 2017), *and aff'd sub nom. In re Accent Delight Int'l Ltd.,* 696 F. App'x 537 (2d Cir. 2017).

Date: November 30, 2018

Respectfully submitted,

QUINN EMANUEL URQUART & SULLIVAN, LLP

*/s/ Kristin N. Tahler*

Kristin N. Tahler, Esq. (*pro hac vice*)
  kristintahler@quinnemanuel.com
Gabriel F. Soledad, Esq.
  gabrielsoledad@quinnemanuel.com
Lauren H. Dickie, Esq. (*pro hac vice*)
  laurendickie@quinnemanuel.com

1300 I Street NW, Suite 900
Washington, DC 20005
Telephone:  (202) 538-8000
Facsimile:  (202) 538-8100

865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

SKARZYNSKI BLACK LLC

James Sandnes, Esq.
  jsandnes@skarzynski.com

One Battery Park Plaza
New York, New York 10004
Telephone: (212) 820-7700

*Counsel for Applicant Iraq Telecom*