# APPENDIX I

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE:

EX PARTE APPLICATION OF IRAQ
TELECOM LIMITED FOR AN EXPEDITED
ORDER TO TAKE DISCOVERY
PURSUANT TO 28 U.S.C. § 1782,
          Applicant,

SIRWAN SABER MUSTAFA, and KOREK
TELECOM COMPANY LLC.
          Intervenors.

Case No. 1:18-mc-00458 (LGS) (OTW)

## SUPPLEMENTAL DECLARATION OF RAJINDER BASSI

Pursuant to 28 U.S.C. § 1746, I, Rajinder Bassi, declare under penalty of perjury as follows:

1. I am the same Rajinder Bassi who submitted a declaration on September 27, 2018 (the "**First Bassi Declaration**") in support of Iraq Telecom Limited's *Ex Parte* Application for Expedited Judicial Assistance Pursuant to 28 U.S.C. § 1782 (the "**Application**"). I continue to represent Iraq Telecom Limited ("**Iraq Telecom**" or the "**Applicant**") in a number of matters, including with respect to pending and contemplated arbitrations under the rules of the International Chamber of Commerce ("**ICC**").[1]

2. I submit this supplemental declaration in response to the ICC-related matters discussed in the declaration by Mr. Kenneth Beale (the "**Beale Declaration**"), dated November 21, 2018, which Mr. Beale submitted in support of the Opposition to the Application ("**Opposition**") filed by the Intervenor, Mr. Sirwan Saber Mustafa (also known as and referred to as Mr. Barzani in the Application and the First Bassi Declaration but referenced herein as "**Mr. Mustafa**").

---

[1] Unless otherwise noted, all capitalized terms contained herein have the same meaning as set forth in the Application and the First Bassi Declaration.

1

3. I am familiar with the information set forth in this supplemental declaration either from personal knowledge or on the basis of documents I have reviewed. The facts and matters testified to are true to the best of my own knowledge and belief. Because I submit this supplemental declaration specifically in response to certain aspects of the Opposition and the Beale Declaration, it does not contain each and every fact within my knowledge regarding the topics discussed herein, nor does it attempt to litigate the underlying matters by addressing every claim in these documents.

I. **STATUS OF PENDING AND CONTEMPLATED ICC ARBITRATIONS**

   A. **Proceedings Relating to the Breach of Agreement RFA**

      1. <u>This Proceeding is Active and Pending under the ICC Rules</u>

4. As discussed in the First Bassi Declaration (¶ 4), on June 4, 2018, Iraq Telecom filed a request for arbitration ("**RFA**") with the ICC against CS Ltd and Mr. Mustafa (the "**Respondents**"), alleging breaches of various agreements (the "**Breach of Agreement RFA**"). The ICC received the RFA that very same day, as evidenced by the attached letter from the ICC dated June 5, 2018, which acknowledged receipt of the RFA ("**June 2018 Acknowledgement**") (attached hereto as Exhibit A).[2]

5. Pursuant to Article 4(2) of the ICC Rules, the date on which the RFA is received by the Secretariat "*shall, for all purposes, be deemed to be the date of the commencement of the arbitration.*" Accordingly, in the June 2018 Acknowledgement, the ICC confirmed that the arbitration relating to the Breach of Agreement RFA (the "**Breach of Agreement Arbitration**") commenced on June 4, 2018. *See* Exhibit A, at 1. As such, the constitution of the Arbitral Tribunal has nothing to do with the commencement of the arbitration. Under the ICC Rules, the Arbitral

---

[2] I certify that all exhibits attached hereto are true and correct copies of the original documents.

2

Tribunal is confirmed or appointed by the ICC Court (ICC Rules, Art. 12), which would only happen <u>after</u> the RFA is received by the ICC and the arbitration has commenced in accordance with Article 4(2) of the ICC Rules.  I therefore do not understand the statement made in the Opposition that Iraq Telecom has "*attempted to commence*" the Breach of Agreement Arbitration (*see*, *e.g.*, Opposition at 5).  There can be no question that the Breach of Agreement Arbitration has commenced under the ICC Rules and is ongoing.  I note that Mr. Beale does not dispute this, nor do the Respondents in this arbitration (*i.e.* Mr. Mustafa and CS Ltd), who have participated in this arbitration to date, including by filing an Answer to the Breach of Agreement RFA (*see* Beale Declaration, at ¶ 47).

6. In addition, as acknowledged by Mr. Beale, the parties have already nominated two co-arbitrators (*see* Beale Declaration ¶¶ 47 and 52) in connection with the Breach of Agreement Arbitration.  Specifically, on June 4, 2018, Iraq Telecom nominated Dr. Michael Pryles AO PBM as its party-appointed arbitrator.  The Respondents nominated Professor Lucy Reed as their party-appointed arbitrator on September 30, 2018.  Now that the payment issues referenced by Mr. Beale have been resolved (*see* Beale Declaration ¶¶ 48-57), I expect the ICC to confirm the co-arbitrators' appointment in a matter of days and the Breach of Agreement Arbitration to proceed swiftly.[3]

7. Once confirmed, the two co-arbitrators will have **30** days to nominate a chairperson (ICC Rules, Art. 12(5)).  Upon nomination of the chairperson, the Arbitral Tribunal for the Breach of Agreement Arbitration will be constituted, which I expect will occur in just over a month.

---

[3] In his declaration, Mr. Beale references difficulties with respect to the processing of certain payments by the ICC's bank in connection with the Breach of Agreement Arbitration.  Following further exchanges with the ICC, the ICC has since confirmed that the payment issues have now been resolved.  Specifically, on November 27, 2018, the ICC informed the parties that the ICC's bank had reconsidered its decision and agreed to process the relevant payment (*see* Exhibit B).

8. Once constituted, the Secretariat of the ICC will transmit the file to the Arbitral Tribunal (ICC Rules, Art. 16). As soon as the Arbitral Tribunal receives the file from the Secretariat, it has **30** days to transmit the Terms of Reference to the ICC Court (ICC Rules, Art. 23(2)).

9. In connection with drafting the Terms of Reference, or as soon as possible thereafter, the Arbitral Tribunal will convene a Case Management Conference to deal with matters such as the procedural timetable for the arbitration (ICC Rules, Art. 24). I note Mr. Beale's statement of his expectation that Iraq Telecom would be granted at least three months to prepare its statement of case and supporting documents (*see* Beale Declaration at ¶ 52(d)). While that could be the case, given the already significant delay to the Breach of Agreement Arbitration, Iraq Telecom will seek a more expedited timetable than that envisaged by Mr. Beale.

    **B.**    **Contemplated Self-Dealing RFA**

10. I note Mr. Beale's statement that the arbitration relating to the contemplated Self-Dealing RFA has not yet been commenced. Although technically correct, Mr. Beale omits to mention that Iraq Telecom has sought the Respondents' consent to include the dispute underlying the contemplated Self-Dealing RFA as part of the Breach of Agreement Arbitration. This is possible under the ICC Rules if the parties agree to include this additional dispute within the scope of the Terms of Reference adopted for the Breach of Agreement Arbitration. If the Respondents agree to proceed on that basis, there would be no need to file the contemplated Self-Dealing RFA and commence a separate arbitration based on that dispute.

4

## II. IRAQ TELECOM SEEKS THE REQUESTED DISCOVERY AS SOON AS POSSIBLE IN ORDER TO PUSH FOR AN EXPEDITED SCHEDULE

11. As discussed in the First Bassi Declaration (¶ 22), statements of case in ICC arbitrations are generally accompanied by the evidence (including documents) upon which each party will seek to rely in support of its case.

12. Depending on the procedural timetable issued by the Arbitral Tribunal and the stage of the proceedings, there may be restrictions on the ability of a party to collect and/or adduce additional evidence outside of the deadlines set out in the procedural timetable. In other words, should Iraq Telecom not receive the Requested Discovery before filing its statement of case, it may be precluded from relying on such discovery later on in the proceedings.

13. Accordingly, Iraq Telecom seeks to obtain the Requested Discovery before filing its statement of case pursuant to the expedited timetable Iraq Telecom intends to request from the Arbitral Tribunal.

## III. THE REQUESTED DISCOVERY IS NOT DUPLICATIVE OF EVIDENCE THAT COULD BE OBTAINED FROM THE PARTICIPANTS IN THE ICC ARBITRATIONS

14. Iraq Telecom cannot readily obtain the Requested Discovery in the Breach of Agreement Arbitration because the Correspondent Banks are third parties over which the Arbitral Tribunal lacks jurisdiction.

## IV. THE REQUESTED DISCOVERY IS NOT AN ATTEMPT TO CIRCUMVENT THE ARBITRATION AGREEMENT AND IS CONSISTENT WITH THE CHARACTER AND NATURE OF ICC ARBITRATIONS

15. Although the IHL Shareholders' Agreement and the Subscription Agreement require that any disputes relating to these agreements be resolved by arbitration under the ICC Rules, neither those agreements nor the ICC Rules preclude Iraq Telecom from collecting evidence for use in such arbitrations from foreign sources, including through a 1782 action.

5

16.     Iraq Telecom has complied and acted in accordance with the agreement to arbitrate set out in the IHL Shareholders' Agreement and the Subscription Agreement. I therefore disagree with the argument that, by seeking to obtain evidence to use in the arbitration proceedings in a manner that is permissible under the applicable rules (discussed further below), Iraq Telecom is seeking somehow to "*circumvent the arbitral process*" or "*avoid*" the arbitration agreement between the parties (*see*, *e.g.*, Opposition, at 2 and 17). As discussed in the First Bassi Declaration (¶ 12), the ICC Rules do not prohibit parties in ICC arbitrations from: (1) collecting documents from opposing parties, third parties or foreign jurisdictions (including evidence lawfully gathered abroad by foreign courts or through foreign litigation); or (2) submitting such documents as evidence to the Arbitral Tribunal. Similarly, the ICC Rules do not preclude specific categories of evidence for use in an arbitration, such as financial or bank records obtained from third parties (*Id*. at ¶ 13). In this context, I note that Mr. Beale accepts that "[m]*ost institutional rules of arbitration (including the ICC Rules) do not contain any express limitations on the availability of discovery*" (*see* Beale Declaration at ¶ 59).

17.     While I agree with the general principle that the scope of discovery in private international arbitrations such as those administered by the ICC is generally more limited than in the United States, I disagree with Mr. Mustafa's claim that the Requested Discovery constitutes "U.S.-style discovery" (*see*, *e.g.*, Opposition, at 18), which Mr. Mustafa claims would be inappropriate in the present context.

18.     As discussed in the First Bassi Declaration (¶ 12), Arbitral Tribunals are often guided by the IBA Taking of Evidence Rules, including with respect to document production. In this context, Article 3(3) of the IBA Taking of Evidence Rules states that requests for the production of documents must include: (a) (i) "*a description of each requested Document sufficient*

6

*to identify it*"; or (ii) "*a description in sufficient detail (including subject matter) of a narrow and specific requested category of Documents that are reasonably believed to exist; in the case of Documents maintained in electronic form, the requesting Party may, or the Arbitral Tribunal may order that it shall be required to, identify specific files, search terms, individuals or other means of searching for such Documents in an efficient and economical manner*;" (b) "*a statement as to how the Documents requested are relevant to the case and material to its outcome*"; and (c) (i) "*a statement that the Documents requested are not in the possession, custody or control of the requesting Party or a statement of the reasons why it would be unreasonably burdensome for the requesting Party to produce such Documents*"; and (ii) "*a statement of the reasons why the requesting Party assumes the Documents requested are in the possession, custody or control of another Party.*"

19. The Requested Discovery meets each of these requirements and is fully consistent with a request that may be made in an ICC arbitration. Specifically, the Application and its supporting declarations and exhibits (including the proposed subpoenas to the Correspondent Banks):

- (1) Sufficiently describe the documents in order to identify them (*see*, *e.g.*, Exhibit A to Tahler Declaration, Request Nos. I.A.1 ("*Agreements or Contracts relating to correspondent banking services provided by Citibank to IBL Bank, either directly or through a third party*"); I.B.7 ("*All Documents and Communications Concerning Transactions involving IBL Bank Account Number 007 002 244 0700 716 016*"); I.B.9 ("*All Documents and Communications Concerning Transactions between HSBC Bank Middle East Limited UAE Branch ("HSBC UAE") Account Number 022 2525 22 100 and IBL Bank*"); I.C.11 ("*All Documents and Communications Concerning Transactions Between Korek and IBL Bank account number 169160 (IBAN Number LB 8000 52000 7002 30201 6916 0014 or LB 8000 52000 7002 1100 16916 0013*"); II.B.20 ("*All Documents and Communications Concerning Transactions between Korek and BPC account number 033180 (IBAN Number LB81 0035 0004 0000 0000 0003 3180))*";

- (2) Sufficiently describe narrow and specific requested categories of documents reasonably believed to exist (*see*, *e.g.*, Exhibit A to Tahler Declaration describing

7

  categories of requested documents as follows: (i) relationship between Citibank and IBL Bank; (ii) transactions relating to the IBL Loan, (iii) transactions relating to Korek's payments to certain suppliers; (iv) transactions relating to or involving Korek S.A.L.; (v) relationship between Citibank and Byblos/BPC; and (vi) transactions between Korek and Byblos/BPC;[4]

- (3) Include discussions as to how the Requested Discovery is relevant to the case and material to its outcome (*see*, *e.g.*, Memorandum in Support of the Application, at 16-20, 28-31); and

- (4) Include a statement of the reasons why Iraq Telecom assumes the Requested Discovery is in the possession, custody or control of the Correspondent Banks (*see, e.g.*, Memorandum in Support of the Application, at 2-3, 16-20).

  20. I note that the Opposition takes issue with the Requested Discovery using the term "*all documents*" (*see*, *e.g.*, Opposition at 18, 19). In this context, I note that in another ongoing ICC arbitration between Iraq Telecom and the Respondents, the Respondents have made a number of document production requests vis-à-vis Iraq Telecom, all of which were for "*all documents*" related to the relevant request. An objection to the Requested Discovery on that basis therefore seems to conflict with the position previously adopted by the Respondents.

  21. In my experience, Arbitral Tribunals frequently grant or approve discovery where, as here, such requested discovery has been shown to be relevant and material to the outcome of the claims at issue in the proceedings. In addition, where, as here, matters are complex and involve multiple parties, sophisticated financial transactions, and allegations of fraud, misconduct, self-dealing and international corruption, one would expect discovery to be broader and more voluminous than in cases with less complexity.

  22. I further note that although it is commonly considered that arbitrations can be favorable with regard to speed, as compared with litigation, neither the Breach of Agreement

---

[4] In addition, I understand that Iraq Telecom will negotiate the scope of electronic discovery with the Correspondent Banks in the ordinary course which is consistent with the IBA Taking of Evidence Rules regarding documents in electronic form.

Arbitration, the LAMC Arbitration, nor the other pending arbitrations between the parties are proceeding in such an efficient manner. Indeed, while I cannot get into specifics (to avoid potential violations of the confidentiality rules in these proceedings), it has been my experience that Mr. Mustafa and the other defendants in the Foreign Proceedings are actively seeking to delay matters by, among other things, selectively instructing counsel to represent them, despite being on notice of all pending proceedings, and frequently seeking extensions of deadlines that are fully within their control (*see also* App'x H ¶¶ 14-17; App'x J ¶¶ 7-14).

23. Finally, I note that if the Application were granted and the Requested Discovery obtained from the Correspondent Banks before the deadline for filing of Iraq Telecom's statement of case, this would not delay the Breach of Agreement Arbitration or increase the cost for the Respondents. Quite to the contrary, it would allow the arbitration to proceed more efficiently.

## V. NOTICE OF APPLICATION TO RESPONDENTS IN ICC ARBITRATIONS NOT REQUIRED

24. As noted previously, the ICC Rules do not contain specific provisions relating to discovery and evidence gathering, including obtaining documents from opposing parties, third parties or foreign jurisdictions. As such, there is no provision in the ICC Rules that would have required Iraq Telecom to notify the Respondents (or the ICC itself) of its Application before submitting it to this Court.

## VI. NO REQUIREMENT THAT IRAQ TELECOM MUST REQUEST DISCOVERY FROM RESPONDENTS BEFORE FILING APPLICATION

25. In addition, there is nothing in the ICC Rules that would require Iraq Telecom to request discovery from the Respondents before seeking evidence from third parties or foreign sources.

\* \* \* \* \*

I declare under penalty of perjury under the laws of the United States and England that the foregoing is true and correct to the best of my knowledge and belief.

Executed in London, England, on this the 30th of November, 2018,

_____
Rajinder Bassi

# Exhibit A



**INTERNATIONAL COURT OF ARBITRATION®** | **INTERNATIONAL CENTRE FOR ADR** | **LEADING DISPUTE RESOLUTION WORLDWIDE**

5 June 2018 / ASM-DKT

**23685/AYZ**

IRAQ TELECOM LIMITED (United Arab Emirates) **vs/ 1.** KOREK INTERNATIONAL (MANAGEMENT) LTD. (Cayman Islands) **2.** Sirwan Saber Mustafa (Iraq)

Chris Colbridge
Rajinder Bassi
Philipp Kurek
Kartikey Mahajan
KIRKLAND & ELLIS INTERNATIONAL LLP
30 St Mary Axe
EC3A 8AF
United Kingdom

*By email: chris.colbridge@kirkland.com; rajinder.bassi@kirkland.com; philipp.kurek@kirkland.com; kartikey.mahajan@kirkland.com*

Jean-Pierre Harb
Ileana M. Smeureanu
Alexandre Meyniel
JONES DAY
2, rue Saint-Florentin
75001 Paris
France

*By email: jpharb@jonesday.com; ismeureanu@jonesday.com; ameyniel@jonesday.com*

Dear Mesdames and Sirs,

The Secretariat of the International Court of Arbitration of the International Chamber of Commerce ("Secretariat") acknowledges receipt of your Request for Arbitration ("Request") dated 4 June 2018. Your Request was received on 4 June 2018. Pursuant to Article 4(2) of the ICC Rules of Arbitration in force as from 1 March 2017 ("Rules"), this arbitration commenced on that date.

The caption and reference of this arbitration are indicated above. Please ensure that the caption is accurate and include the reference **23685/AYZ** in all future correspondence.

In all future correspondence, any capitalised term not otherwise defined will have the meaning ascribed to it in the Rules and references to Articles of the Rules generally will appear as: "(Article ***)".

…/…

INTERNATIONAL CHAMBER OF COMMERCE (ICC)
INTERNATIONAL COURT OF ARBITRATION

www.iccarbitration.org

| HEADQUARTERS | HONG KONG OFFICE | BRAZIL OFFICE | NORTH AMERICA OFFICE | SINGAPORE OFFICE |
|---|---|---|---|---|
| 33-43 avenue du Président Wilson 75116 Paris, France T +33 (0)1 49 53 28 28 F +33 (0)1 49 53 29 33 E arb@iccwbo.org | Suite 2, 12/F Fairmont House 8 Cotton Tree Drive Central, Hong Kong T +852 3607 5600 F +852 2523 1619 E ica8@iccwbo.org | in affiliation with SCIAB LTDA. rua Surubim, 504, Brooklin Novo CEP 04571-050, Sao Paulo Brazil T +55 11 3040 8830 E ica10@iccwbo.org | in affiliation with SICANA, Inc. 140 East 45th Street, Suite 14C New York, NY 10017, USA T +1 646 699 5704 F +1 646 737 9467 E ica9@iccwbo.org | in affiliation with SICAS 32 Maxwell Road #03-05B Maxwell Chambers Singapore 069115 T +65 6805 9580 E ica11@iccwbo.org |

23685/AYZ                                                                                                            Page 2

## Filing Fee

You indicated that we will soon receive payment of the non-refundable filing fee. We will inform you when we receive it.

## Copies of the Request

We have received an electronic version of the Request and of the documents annexed thereto.

We note that eight hard copies of the Request and of the documents annexed thereto were sent to the Secretariat by courier.

## Notification of the Request

We will notify the Request to Respondents upon receipt of the above mentioned payment and copies.

## Your Case Management Team

Ms Asli Yilmaz, Counsel .................................................................(direct dial number +33 1 49 53 28 32)
Ms Amany Chamieh, Deputy Counsel............................................(direct dial number +33 1 49 53 28 16)
Mr Mark Demitry, Deputy Counsel .................................................(direct dial number +33 1 49 53 29 04)
Ms Stella Leptourgou, Deputy Counsel ..........................................(direct dial number +33 1 49 53 28 61)
Mr Dylan Afresne, Assistant ...........................................................(direct dial number +33 1 49 53 28 56)
Ms Sylvie Mostyn-Dignan, Assistant...............................................(direct dial number +33 1 49 53 29 82)
Assistant .........................................................................................(direct dial number +33 1 49 53 29 35)
Fax .................................................................................................................(+33 1 49 53 57 80)
Email .............................................................................................................(ica5@iccwbo.org)

Your case management team will write to you concerning the notification of the Request and other relevant information.

Please find enclosed a note that highlights certain key features of ICC arbitration, which also includes key features of the Expedited Procedure Provisions.

Finally, we invite you to visit our website at www.iccarbitration.org to learn more about our Dispute Resolution services.

Yours faithfully,

*[signature]*

Ana Serra e Moura
Deputy Secretary General
ICC International Court of Arbitration

encl.   - ICC Rules of Arbitration (see also www.iccarbitration.org)
        - Note to Parties and Arbitral Tribunals on the Conduct of the Arbitration under the ICC Rules of Arbitration (click here to download it)

# Exhibit B

| | |
|---|---|
| **From:** | Compliance <Compliance@iccwbo.org> |
| **Sent:** | 27 November 2018 15:58 |
| **To:** | Bassi, Rajinder |
| **Cc:** | #KirklandGotham; Kurek, Philipp; ica5; Compliance; YILMAZ Asli; Jean-Pierre Harb; 'dhunt@bsfllp.com'; 'kartikey.mahajan@kirkland.com'; 'ismeureanu@jonesday.com'; 'ameyniel@jonesday.com'; ica5; 'droughton@bsfllp.com'; 'kbeale@bsfllp.com'; 'raxbey@bsfllp.com'; Colbridge, Chris |
| **Subject:** | RE: ICC Case N° 23685/AYZ |
| **Attachments:** | IBAN - CCI.PDF |

Dear Ms. Bassi,

The International Chamber of Commerce (ICC) refers to your below two correspondences and apologizes for the additional delays incurred in processing Claimant's payment in matter 23685/AYZ.

As indicated during our phone conversation of last week, these delays resulted from the involvement of Al Bilad Islamic Bank for Investment and Finance PSC as a compliance-related entity in this case. This entity is currently a Specially Designated Global Terrorist (SDGT) and listed as a sanctioned entity by the U.S. Office of Foreign Assets Control (OFAC).

Pursuant to its compliance policies and procedures, Fransabank requested ICC to provide additional information and confirmations with respect to this entity before the received credit could be processed in this matter. Both parties' indications and comments further to such requests were submitted to Fransabank for its consideration. Unfortunately, the provided elements were considered unsatisfactory to enable the bank to position itself in this matter and said payment has been rejected as a consequence. ICC's other bank which we contacted also provided a negative advisory opinion and refused to process payments in this case.

In order to allow this case to proceed further, ICC has therefore been discussing again with Fransabank in view of clarifying Al Bilad Bank's role and the relevance of its implication in this dispute from a case-management perspective. Further to these discussions, we inform you that Fransabank has agreed, by email dated 21 November 2018, to exceptionally reconsider its decision and accepted to process said payment if newly submitted by Claimant.

Such acceptance is based on ICC and Fransabank's understanding at this stage that :

(i)  Al Bilad Islamic Bank for Investment and Finance PSC appears as the bank which issued guarantees toward third-parties on behalf of Claimant, but is not linked to the shareholder agreement concluded by the parties in this matter ;
(ii) No other mention of Al Bilad Islamic Bank for Investment and Finance PSC is made in the Request for Arbitration or its corresponding exhibits.

We also draw the parties attention to the fact that should any further submission involving Al Bilad Islamic Bank be received from the parties at a later stage of the proceedings:

(i)   this ICC Compliance-related information will be brought to the attention of Fransabank and transmitted to the members of the arbitral tribunal ;
(ii)  Fransabank will request from the parties the procurement of an OFAC license allowing the bank to process payments further in this matter. Please note Fransabank's indication that the procurement of such OFAC license is already highly recommended at the current stage of the proceedings.

The rejected funds should be received by Claimant shortly. As soon as received, we kindly invite Claimant to initiate a new payment corresponding to the requested payment in this matter. For your convenience, you will find newly enclosed Fransabank's banking instructions to be used in this respect.

The Secretariat will ensure to keep the parties appraised as soon as the new payment is duly credited to ICC's account.

Yours faithfully,

Aasiyah PATEL | Legal Advisor
Legal Services Department
International Chamber of Commerce
33-43 avenue du Président Wilson, 75116 Paris, France
Tel: +33 1 49 53 30 19 | Email: aasiyah.patel@iccwbo.org | www.iccarbitration.org

---

**De :** Bassi, Rajinder [mailto:rajinder.bassi@kirkland.com]
**Envoyé :** mercredi 21 novembre 2018 15:03
**À :** YILMAZ Asli; Jean-Pierre Harb
**Cc :** #KirklandGotham; Kurek, Philipp; ica5; Compliance
**Objet :** RE: ICC Case N° 23685/AYZ

Dear Ms. Yilmaz,

We refer to our email of 13 November, to which we have received no response.

We reiterate our request that you please provide us with an update on the Al Bilad compliance issue at your earliest convenience. Furthermore, as noted in our previous email, if the issue with the ICC's bank is not resolved imminently, we request that the payment be processed through one of the ICC's other banks so that the matter can finally move forward.

Kind regards,

Rajinder Bassi

**Rajinder Bassi**
Partner

**KIRKLAND & ELLIS INTERNATIONAL LLP**
30 St Mary Axe, London EC3A 8AF, United Kingdom
**T** +44 20 7469 2120  **M** +44 7904378505
**F** +44 20 7469 2001

rajinder.bassi@kirkland.com

---

**From:** Bassi, Rajinder
**Sent:** 13 November 2018 17:07
**To:** YILMAZ Asli <asli.yilmaz@iccwbo.org>; Jean-Pierre Harb <jpharb@jonesday.com>
**Cc:** #KirklandGotham <kirkland.gotham@kirkland.com>; Kurek, Philipp <philipp.kurek@kirkland.com>; ica5 <ica5@iccwbo.org>; compliance@iccwbo.org
**Subject:** RE: ICC Case N° 23685/AYZ

Dear Ms. Yilmaz,

Further to our call last week, we should be grateful if you could please provide us with an update on the Al Bilad compliance issue at your earliest convenience.

We note that is has now been almost <u>four months</u> since the Claimant paid the provisional advance, and two weeks since the Claimant provided the relevant information with respect to the ICC's latest request.

It simply cannot be the case that a passing reference to Al Bilad in the Request for Arbitration, which is not a party to this arbitration and only tangentially involved with respect to the allegations levelled against the Respondents, can delay the present proceedings any further.

We would therefore request that, if the issue with the ICC's bank is not resolved this week, the payment be processed through one of the ICC's other banks so that the matter can finally move forward.

Thank you very much for your assistance.

Kind regards,

Rajinder Bassi

**Rajinder Bassi**
Partner

---

**KIRKLAND & ELLIS INTERNATIONAL LLP**
30 St Mary Axe, London EC3A 8AF, United Kingdom
**T** +44 20 7469 2120  **M** +44 7904378505
**F** +44 20 7469 2001

---

rajinder.bassi@kirkland.com

---

**From:** YILMAZ Asli <asli.yilmaz@iccwbo.org>
**Sent:** 08 November 2018 11:16
**To:** Jean-Pierre Harb <jpharb@jonesday.com>
**Cc:** #KirklandGotham <kirkland.gotham@kirkland.com>; Kurek, Philipp <philipp.kurek@kirkland.com>
**Subject:** RE: ICC Case N° 23685/AYZ

Dear Jean-Pierre,

Many thanks for your email. Indeed, I will be in Court this afternoon. However, if you should wish, I am available to speak until 2pm today or anytime tomorrow.

Let me know what is most convenient.

Best wishes,

Asli Yilmaz| Counsel
International Court of Arbitration | International Chamber of Commerce
33-43 avenue du Président Wilson | 75116 Paris - France
Tel: +33 1 49 53 28 32 | Fax: +33 1 49 53 57 80
asli.yilmaz @iccwbo.org | www.iccarbitration.org

---

This message is confidential. If you have received this message in error, please delete it and notify the sender immediately. Please contact the Secretariat by telephone at +33 1 49 53 28 61, fax at +33 1 49 53 29 33 and email at ica5@iccwbo.org. You should not retain this message or disclose its contents to anyone.

---

Ce message est confidentiel. Si vous avez reçu ce message par erreur, veuillez le détruire et en informer l'expéditeur. Vous pouvez contacter le Secrétariat par téléphone au +33 1 49 53 28 61, fax au +33 1 49 53 29 33 et email ica5@iccwbo.org. Vous ne devez ni conserver le message, ni en révéler le contenu.

- **Revised ICC Rules of Arbitration in force as of 1st March 2017 including the new Expedited Procedure Provisions**: *click here*.
- **New Scales effective as of 1st January 2017**: *click here to access* the Scales and here for the *Cost Calculator*..
- **Note to Parties and Arbitral Tribunals on the Conduct of the Arbitration under the ICC Rules of Arbitration**: *click here to download* the latest version of the Note dated **30th October 2017**.
- **Electronic communications**: please send your correspondence and any documents **only** electronically.

🏍 *Please consider the environment before printing this e-mail*

---

**From:** Harb, Jean-Pierre N. [mailto:jpharb@jonesday.com]
**Sent:** jeudi 8 novembre 2018 11:59
**To:** YILMAZ Asli
**Cc:** #KirklandGotham; Kurek, Philipp
**Subject:** ICC Case N° 23685/AYZ

Dear Asli,

3

I hope all is well.

Would you be available for a quick call this afternoon, say 3-30 pm to discuss with our co-counsel from Kirkland & Ellis the compliance raised by the ICC Bank in case N° 23685?

I know it is normally a Court session day and you may not be available. In that case could you propose alternatives?

Many thanks and best regards,

Jean Pierre


Jean Pierre Harb (bio)
Partner - Avocat au Barreau de Paris
**JONES DAY® - One Firm Worldwide℠**
2, rue Saint-Florentin
75001 Paris, France
Office +33.1.56.59.39.39
jpharb@jonesday.com

***This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.***

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return e-mail or by e-mail to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

Kirkland & Ellis International LLP is a limited liability partnership established in Delaware, and the liability of its partners is limited in accordance with section 15-306(c) of the Delaware Revised Uniform Partnership Act. It is a multinational practice, the partners of which are Solicitors and Registered Foreign Lawyers (admitted in the U.S. and other jurisdictions), and is authorised and regulated in the UK by the Solicitors Regulation Authority (SRA number 349107). The Solicitors' Code of Conduct can be accessed at http://www.sra.org.uk/code-of-conduct.page. A list of the partners, giving each partner's professional qualification and jurisdiction of qualification, is open for inspection at the address below.

Kirkland & Ellis International LLP
30 St Mary Axe | London | EC3A 8AF | UK
Tel: +44 (0)20 7469 2000 | Fax: +44 (0)20 7469 2001 | Email: econtact@kirkland.com
VAT registration number GB 650 1040 94