# APPENDIX J

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE:

EX PARTE APPLICATION OF IRAQ
TELECOM LIMITED FOR AN EXPEDITED
ORDER TO TAKE DISCOVERY
PURSUANT TO 28 U.S.C. § 1782,
                    Applicant,

SIRWAN SABER MUSTAFA, and KOREK
TELECOM COMPANY LLC.
                    Intervenors.

Case No. 1:18-mc-00458 (LGS) (OTW)

<u>**SUPPLEMENTAL DECLARATION OF NABIL ABDEL-MALEK**</u>

Pursuant to 28 U.S.C. § 1746, I, Nabil Abdel-Malek, declare under penalty of perjury as

follows:

1.       I am the same Nabil Abdel-Malek who submitted a declaration on September 18,

2018 (the "**First Malek Declaration**") in support of Iraq Telecom Limited's *Ex Parte* Application

for Expedited Judicial Assistance Pursuant to 28 U.S.C. § 1782 (the "**Application**").  I continue

to represent Iraq Telecom Limited ("**Iraq Telecom**" or the "**Applicant**") in a pending arbitration

administered by the Lebanese Arbitration and Mediation Center ("**LAMC**") (the "**LAMC**

**Arbitration**").[1]

2.       I submit this supplemental declaration in response to the LAMC-related matters

discussed in the declaration by Mr. Kenneth Beale (the "**Beale Declaration**"), dated November

21, 2018, which Mr. Beale submitted in support of the Opposition to the Application

("**Opposition**") filed by the Intervenor, Mr. Sirwan Saber Mustafa (also known as and referred to

---

[1]       Unless otherwise noted, all capitalized terms contained herein have the same meaning as set forth
in the Application and the First Malek Declaration.

as Mr. Barzani in the Application and the First Malek Declaration but referenced herein as "**Mr. Mustafa**").

3.      I am familiar with the information set forth in this supplemental declaration either from personal knowledge or on the basis of documents I have reviewed.  The facts and matters testified to are true to the best of my own knowledge and belief.  Because I submit this supplemental declaration specifically in response to certain aspects of the Opposition and the Beale Declaration, it does not contain each and every fact within my knowledge regarding the topics discussed herein, nor does it attempt to litigate the underlying matters by addressing every claim in these documents.

## I.      THE LAMC ARBITRATION IS AN ACTIVE, PENDING PROCEEDING

4.      As discussed in the First Malek Declaration (¶¶ 3, 18, 21), on June 26, 2018, Iraq Telecom filed a request for arbitration ("**RFA**") with the Secretariat of the LAMC Court (the "**Secretariat**") against IBL Bank SAL ("**IBL Bank**"), Korek Telecom Company LLC ("**Korek**"), and International Holdings Limited ("**IHL**") (collectively, the "**Respondents**"), alleging that IBL Bank and Mr. Mustafa fraudulently induced Iraq Telecom to enter into the Subordination Agreement (the "**LAMC RFA**").  The Secretariat received the LAMC RFA that very same day, as evidenced by the attached letter from the LAMC dated July 20, 2018, which acknowledged the filing of the LAMC RFA on June 26, 2018 ("**July 2018 LAC Acknowledgement**") (attached hereto as Exhibit A).[2]

5.      Pursuant to Article 3(1) of the LAC Rules, "*[t]he date when the Request is received by the Secretariat General shall, for all purposes, be deemed to be the date of the commencement of the arbitral proceedings.*"  Accordingly, the LAMC Arbitration commenced on June 26, 2018.

---

[2]      I certify that all exhibits attached hereto are true and correct copies of the original documents.

6.      Constitution of the Arbitral Tribunal has nothing to do with the commencement of the arbitration.  Under the LAC Rules, the Arbitral Tribunal is confirmed or appointed by the LAMC Court (LAC Rules, Art. 2), which would only happen <u>after</u> the RFA is received by the LAMC and the arbitration has commenced in accordance with Article 3(1) of the LAC Rules.  I therefore do not understand the statement made in the Opposition that Iraq Telecom has "*attempted to commence*" the LAMC Arbitration (*see*, *e.g.*, Opposition, at 5).  There can be no question that the LAMC Arbitration has commenced under the LAC Rules and is ongoing.  I note that Mr. Beale does not dispute this.

## II.    CS LTD (CONDUCTING THE DEFENSE OF THE LAMC ARBITRATION ON BEHALF OF KOREK AND IHL) HAS SIGNIFICANTLY DELAYED THE LAMC ARBITRATION

7.      As explained by Mr. Beale, pursuant to Clause 28.4 of the IHL Shareholders' Agreement, CS Ltd is entitled to conduct the defense of certain claims brought against IHL and Korek (*see* Beale Declaration ¶ 39).

8.      As noted above, Iraq Telecom commenced the LAMC Arbitration on June 26, 2018.  IHL received a copy of the LAMC RFA on July 24, 2018, and Mr. Nawzad Junde (a director of IHL and member of the KSC, in accordance with Clause 2 of the Subordination Agreement) received a copy of the same on August 2, 2018.  *See* Exhibit B (November 19, 2018 Letter from LAMC).  Korek received the LAMC RFA on July 30, 2018, but appears to have returned it the following day, refusing to accept delivery.  *Id.*  The LAMC Court subsequently held that Korek's return and/or refusal of the LAMC RFA did not invalidate service, and that the notification of the LAMC RFA to Korek was valid.  *Id.*

9.      In a letter dated August 31, 2018, the LAMC requested that, by October 8, 2018, (1) Iraq Telecom nominate an arbitrator; and (2) Respondents jointly nominate an arbitrator.  *See* Exhibit C (August 31, 2018 Letter from the LAMC).

3

10.     Iraq Telecom nominated an arbitrator on October 8, 2018.

11.     On that same day, IBL Bank (1) informed the LAMC that "*the other respondents* [*i.e.*, IHL and Korek] . . . *have not, to date, provided their feedback or comments as to the joint nomination of the arbitrator*" and, on that basis, (2) sought an extension until November 30, 2018 to allow it to determine whether the Respondents could reach an agreement regarding the joint nomination of an arbitrator.  *See* Exhibit D (Answer and Counterclaim, ¶¶ 56-58).

12.     The LAMC granted the Respondents an extension until November 15, 2018.  *See* Exhibit E (October 26, 2018 Letter from LAMC).

13.     As noted above, IHL and Korek have been aware of the LAMC Arbitration since at least August 2018, and Boies Schiller Flexner (UK) LLP ("**Boies Schiller**") has been aware of the LAMC Arbitration since at least September 27, 2018, when Iraq Telecom expressly referred to the LAMC Arbitration in separate proceedings before the DIFC courts brought by Iraq Telecom against IHL, Korek, Mr. Mustafa and CS Ltd, with Boies Schiller acting for CS Ltd in those proceedings.[3]

14.     However, despite the above, neither IHL, Korek, nor CS Ltd on their behalf, took any steps to participate in the LAMC Arbitration until November 14, 2018 (one day before the deadline imposed by the LAMC for Respondents to nominate an arbitrator), when Boies Schiller wrote to the LAMC, confirming that they act for IHL and Korek pursuant to the IHL Shareholders' Agreement and *asking for an extension* of 45 days to submit their Answer and appoint an arbitrator. *See* Exhibit F (November 14, 2018 Letter from Boies Schiller).

---

[3]     Mr. Beale refers to these proceedings at ¶¶ 36 and 37 of his declaration (the "**Injunction Proceedings**").  The Injunction Proceedings were brought by Iraq Telecom against Mr. Mustafa, CS Ltd, Korek and IHL.  I understand that, in those proceedings, Boies Schiller acts for CS Ltd but has not been instructed to act for Mr. Mustafa, Korek or IHL.  *See also* App'x H ¶ 16.

### III. DELAYED ARBITRATION TIMELINE RESULTING FROM RESPONDENTS' REQUESTS FOR EXTENSIONS

15.     By letter of November 19, 2018, the LAMC granted IHL and Korek an extension until December 19, 2018 to file their Answer to the LAMC RFA, and for the Respondents jointly to nominate an arbitrator, failing which the formation of the Arbitral Tribunal will be decided by the LAMC Court.  *See* Exhibit B.

16.     If and when the Respondents nominate an arbitrator, the LAMC Court will appoint the chairperson, unless otherwise agreed to by the parties (LAC Rules, Arts. 2(4) and (5)).

17.     Accordingly, based on this timeline and my experience in such matters, I expect the Arbitral Tribunal in the LAMC Arbitration to be constituted by early January 2019.

18.     Upon constitution of the Arbitral Tribunal, the LAMC will transmit the file to the Arbitral Tribunal (LAC Rules, Art. 10).  Within two months of the date when the file has been transmitted to it, the Arbitral Tribunal must prepare the Terms of Reference (setting out, amongst other things, the issues to be determined and particulars of the applicable procedural rules) (LAC Rules, Art. 13).  In my experience, this typically happens more quickly; however, I am concerned that the Respondents may again attempt to delay matters, continuing their pattern to date.

19.     Within the same time period, I would also expect the Arbitral Tribunal to issue a procedural order setting out the procedural timetable for the arbitration.

20.     I would therefore expect an Arbitral Tribunal for the LAMC Arbitration to be constituted and a procedural timetable established by the end of January 2019 and Iraq Telecom's statement of case to be due in a matter of weeks thereafter.

## IV.    THE REQUESTED DISCOVERY IS URGENT

21.    As noted above, I expect that Iraq Telecom's statement of case may be due early next year, in a matter of weeks after the Arbitral Tribunal has been constituted and a procedural timetable established.

22.    In my experience, the procedural timetables often envisage the parties filing their statements of case/statements of defense *with* the evidence each party seeks to rely on in support of its case.  Depending on the procedural timetable ordered by the Arbitral Tribunal and the stage of the arbitration, there may be restrictions on a party adducing additional evidence outside of the deadlines set out in the procedural timetable.  In other words, should Iraq Telecom not receive the Requested Discovery before filing its statement of case, it may be precluded from relying on such discovery later on in the LAMC Arbitration.

## V.    THE REQUESTED DISCOVERY IS NOT DUPLICATIVE OF EVIDENCE THAT COULD BE OBTAINED FROM THE PARTICIPANTS IN THE LAMC ARBITRATION

23.    As discussed in the First Malek Declaration (¶ 11), because the Correspondent Banks are not parties to the LAMC Arbitration, Iraq Telecom cannot obtain the Requested Discovery through the LAMC Court or the Arbitral Tribunal, which do not have jurisdiction over the Correspondent Banks.

## VI.    THE REQUESTED DISCOVERY IS NOT AN ATTEMPT TO CIRCUMVENT LAC RULES AND IS CONSISTENT WITH THE CHARACTER AND NATURE OF LAMC ARBITRATIONS

24.    Although the Subordination Agreement requires that any disputes relating to the agreement be resolved by arbitration under the LAC Rules, it does not preclude Iraq Telecom from collecting evidence for use in the arbitration from third parties or foreign sources, including through a 1782 action.

25.     Iraq Telecom has at all material times complied and acted in accordance with the agreement to arbitrate set out in the Subordination Agreement.  I therefore disagree with the statement that, by seeking to obtain evidence to use in the arbitration proceedings in a manner that is permissible under the applicable rules, Iraq Telecom is seeking somehow to "*circumvent the arbitral process*" or "*avoid*" the arbitration agreement between the parties (*see*, *e.g.*, Opposition, at 2, 17).  As discussed in the First Malek Declaration (¶¶ 14-17), the LAC Rules do not prohibit parties in LAMC arbitrations from: (1) collecting documents from opposing parties, third parties or foreign jurisdictions (including evidence lawfully gathered abroad by foreign courts or through foreign litigation); or (2) submitting such documents as evidence to the Arbitral Tribunal. Similarly, the LAC rules do not preclude specific categories of evidence for use in an LAMC arbitration, such as financial or bank records obtained from third parties.  *Id*.

26.     While the scope of discovery in private international arbitrations such as LAMC arbitrations is generally more limited than in the United States, I disagree with Mr. Mustafa's claim that the Requested Discovery constitutes "U.S.-style discovery" (*see*, *e.g*., Opposition at 18), which Mr. Mustafa claims would be inappropriate in the present context.

27.     I have read the declaration of Ms. Rajinder Bassi, particularly with respect to the International Bar Association Rules on Taking of Evidence in International Arbitration ("**IBA Taking of Evidence Rules**") (App'x I at Section IV).  I agree that Arbitral Tribunals, including Arbitral Tribunals in LAMC arbitrations, are often guided by the IBA Taking of Evidence Rules. I also agree with Ms. Bassi's assessment that the Requested Discovery meets each of the requirements set out in Article 3(3) of the IBA Taking of Evidence Rules with respect to requests for the production of documents.  *Id.*  It is thus my view, which is also informed by my experience,

that the Requested Discovery is fully consistent with a request that may be made in a LAMC arbitration.

28.     In this context, I note that in my experience, Arbitral Tribunals in LAMC arbitrations (similar to those in ICC arbitrations, as Ms. Bassi points out) frequently grant or approve discovery where, as here, such requested discovery has been shown to be relevant and material to the outcome of the claims at issue in the proceedings.  In addition, where, as here, matters are complex and involve multiple parties, sophisticated financial transactions, and allegations of fraud, misconduct, self-dealing and international corruption, one would expect discovery to be broader and more voluminous than in cases with less complexity.

29.     I further note that although it is commonly considered that arbitrations can be favorable with regard to speed, as compared with litigation, for the reasons set out above, the LAMC Arbitration is not proceeding in such a speedy and efficient manner.  Finally, I note that if the Application were granted and the Requested Discovery obtained from the Correspondent Banks before the deadline for filing of Iraq Telecom's statement of case, this would not delay the arbitration or increase the cost for the Respondents.  Quite to the contrary, it would allow the arbitration to proceed more efficiently.

## VII.   NOTICE OF APPLICATION TO RESPONDENTS IN LAMC ARBITRATION NOT REQUIRED

30.     As noted previously, the LAC Rules do not contain specific provisions relating to discovery and evidence gathering, including obtaining documents from opposing parties, third parties or foreign jurisdictions.  As such, there is no provision in the LAC Rules that would have required Iraq Telecom to notify the Respondents (or the LAMC itself) of its Application before submitting it to this Court.

## VIII.   NO REQUIREMENT THAT IRAQ TELECOM MUST REQUEST DISCOVERY FROM RESPONDENTS BEFORE FILING APPLICATION

31.   In addition, there is nothing in the LAC Rules that would require Iraq Telecom to request discovery from the Respondents before seeking evidence from third parties or foreign sources.

\* \* \* \* \*

I declare under penalty of perjury under the laws of the United States and Lebanon that the foregoing is true and correct.

Executed in Beirut, Lebanon, on this the 30ᵗʰ of November, 2018.

_____

Nabil Abdel Malek

10

# Exhibit A



مركـز معتمـد مـن جمعيـة غرف التجـارة والصنـاعة للبـحر الابيـض المتوسـط
Appointed by ASCAME (Association of Mediterranean Chambers of Commerce and Industry)

المـركـــز اللبنـانـــي للتحكيـــم
**LEBANESE ARBITRATION CENTER**
Beirut, 20/7/2018

Ref. No: 97/148

**IBL BANK SAL**

**Al Itihadia Building Charles Malek
Avenue Achrafieh,**

**Beirut Lebanon**

**01-200350 /01-334102**

|  |  |
|---|---|
| <u>Subject:</u> | **Request for Arbitration filed against your good selves by Iraq Telecom Limited and registered with the Lebanese Arbitration Center under no. 73/18 on 18/7/2018 (case number: 175)** |
| <u>Reference:</u> | **Arbitration Clause provided for in Article 5.2 of the subordination agreement entered into by the parties on or around 14 December 2011** |

Greetings,

With reference to the above-captioned subject and reference, we hereby enclose a copy of the Request for Arbitration and its exhibits which were filed with the Lebanese Arbitration Center on 26 June 2018 by Iraq Telecom Limited, represented by Jones Day, Kirkland and Ellis International LLP and Nabil Abdel Malek Law Offices. Your answer to the Request for Arbitration is required within 30 days of the date on which you receive this letter. In case of failure on your end to file your answer to the Request, the latter will be submitted to the Higher Council of Arbitration to proceed as it deems necessary in accordance with the Rules of the Lebanese Arbitration and Mediation Center of the Chamber of Commerce, Industry and Agriculture of Beirut and Mount-Lebanon.

Sincerely,

**Rayan Kouatly**

**Secretary-General**



The Lebanese Arbitration Center
Chamber of Commerce, Industry and
Agriculture of Beirut and Mount Lebanon





www.facebook.com/CCIAB

www.twitter.com/CCIABML

مبنى غرفـة التجارة والصناعة والزراعة في بيروت وجبل لبنـان
ط.٧، شارع جوستينيان١، الصنائع، ص.ب. ١٨٠١ 11 بيروت، لبنان

CCIA-BML Bldg, 7th Fl, 1Justinien St, Sanayeh, **P.O.BOX** : 11/1801 Beirut Lebanon
**Hotline:** 1314 ext: 171 **T|F:** +961 1 349 616 **email:** arbitration@ccib.org.lb
www.ccib.org.lb

<div dir="rtl">

غرفة التجارة والصناعة والزراعة
في بيروت وجبل لبنان
المركـز اللبنانـي للتحكيم

<u>ايصـــال تبليغ</u>

<u>طالب التبليـغ:</u>                 المركز اللبناني للتحكيم.

<u>المطلوب تبليغه:</u>

**IBL BANK SAL**
**AI Itihadia Building**
**Charles Malek**
**Avenue Achrafieh,**
**Beirut Lebanon**
**01-200350 /01-334102**

<u>نوع الأوراق:   :</u>        طلب تحكيم مقدم ضدكم من قبل IRAQ Telecom Ltd والمسجل في المركز اللبناني للتحكيم تحت رقم 18/73 تاريخ 2018/7/18 رقم القضية 175

<u>تاريخ التبليغ:</u>

تبلغت واستلمت النسخة المرسلة من المركز اللبناني للتحكيم المبينة انواعها وتاريخها واشعارا باستلامها فقد وقعت هذا الايصال .

</div>

COURRIER REÇU
2 3 JUL 2018
IBL BANK
Dept Administratif

5



مركـز معتمـد مـن جمعيـة غرف التجـارة والصنـاعة للبـحر الابيـض المتوسـط
Appointed by ASCAME (Association of Mediterranean Chambers of Commerce and Industry)
Ref. No: 98/148

المـركــز اللبنانــي للتحكيـــم
**LEBANESE ARBITRATION CENTER**
Beirut, 20/7/2018

**International Holdings Limited**

**Unit 11, Level 3**

**Gate Village Building 10**

**Dubai International Financial Centre**

**Dubai 507043**

**United Arab Emirates**

**+971506582663**

| | |
|---|---|
| **Subject:** | Request for Arbitration filed against your good selves by Iraq Telecom Limited and registered with the Lebanese Arbitration Center under no. 73/18 on 18/7/2018 (case number: 175) |
| **Reference:** | Arbitration Clause provided for in Article 5.2 of the subordination agreement entered into by the parties on or around 14 December 2011 |

Greetings,

With reference to the above-captioned subject and reference, we hereby enclose a copy of the Request for Arbitration and its exhibits which were filed with the Lebanese Arbitration Center on 26 June 2018 by Iraq Telecom Limited, represented by Jones Day, Kirkland and Ellis International LLP and Nabil Abdel Malek Law Offices. Your answer to the Request for Arbitration is required within 30 days of the date on which you receive this letter. In case of failure on your end to file your answer to the Request, the latter will be submitted to the Higher Council of Arbitration to proceed as it deems necessary in accordance with the Rules of the Lebanese Arbitration and Mediation Center of the Chamber of Commerce, Industry and Agriculture of Beirut and Mount-Lebanon.

Sincerely,



The Lebanese Arbitration Center
Chamber of Commerce, Industry and
Agriculture of Beirut and Mount Lebanon

Rayan Kouatly

**Secretary-General**




www.facebook.com/CCIAB
www.twitter.com/CCIABML

مبنـى غرفـة التجارة والصنـاعة والزراعة في بيـروت وجبل لبنـان
ط.٧، شـارع جوسـتينيان١، الصنائـع، ص.ب. ١٨٠١ ١١ بيـروت، لبنان
CCIA-BML Bldg, 7th Fl, 1Justinien St, Sanayeh, **P.O.BOX :** 11/1801 Beirut Lebanon
**Hotline:** 1314  ext: 171  **T|F:** +961 1 349 616  **email:** arbitration@ccib.org.lb
www.ccib.org.lb



amex
my unlimited

**Track Shipments**

Track | Ship | Solutions & Services | Help & Support

Shipment Summary

Dubai

Tracking Number: 31359868956

Processing — In Transit — Delivered

Track Pickup Requests

Notifications

Advanced Tracking

| From | To | Current Activity |
|---|---|---|
| Beirut LEBANON BEIRUT | Dubai UNITED ARAB EMIRATES Dubai | 7/24/2018 12:21:00 PM |

Customer Support



Questions About Your Shipment?

History

Where Your Shipment Has Been

Support
Submit Request

| Date | Location | Activity |
|---|---|---|
| 24 Jul 2018 | Aramex Umm Ramool , United Arab Emirates | Delivered Buena/recption |



مركــز معتمــد مــن جمعيــة غرف التجــارة والصناعـة للبحـر الابيـض المتوسـط
Appointed by ASCAME (Association of Mediterranean Chambers of Commerce and Industry)

**LEBANESE ARBITRATION CENTER**
المركــز اللبنانــي للتحكيــم

Ref. No: 100/148

Beirut, 20/7/2018

**KOREK**

**45 Kurdistan Street**

**Next to the post office**

**Pirmam, Erbil**

**Kurdistan, Republic of Iraq**

**+ 964 750 445 0022**

<u>Subject:</u>   Request for Arbitration filed against your good selves by Iraq Telecom Limited and registered with the Lebanese Arbitration Center under no. 73/18 on 18/7/2018 (case number: 175)

<u>Reference:</u>   Arbitration Clause provided for in Article 5.2 of the subordination agreement entered into by the parties on or around 14 December 2011

Greetings,

With reference to the above-captioned subject and reference, we hereby enclose a copy of the Request for Arbitration and its exhibits which were filed with the Lebanese Arbitration Center on 26 June 2018 by Iraq Telecom Limited, represented by Jones Day, Kirkland and Ellis International LLP and Nabil Abdel Malek Law Offices. Your answer to the Request for Arbitration is required within 30 days of the date on which you receive this letter. In case of failure on your end to file your answer to the Request, the latter will be submitted to the Higher Council of Arbitration to proceed as it deems necessary in accordance with the Rules of the Lebanese Arbitration and Mediation Center of the Chamber of Commerce, Industry and Agriculture of Beirut and Mount-Lebanon.

Sincerely,

**Rayan Kouatly**

**Secretary-General**



The Lebanese Arbitration Center
Chamber of Commerce, Industry and
Agriculture of Beirut and Mount Lebanon





www.facebook.com/CCIAB

www.twitter.com/CCIABML

مبنى غرفـة التجارة والصناعة والزراعة في بيروت وجبل لبنــان
ط.٧، شارع جوستينيان ١، الصنائـع، ص.ب. ١١/١٨٠١ ١١ بيروت، لبنان

CCIA-BML Bldg, 7th Fl, 1Justinien St, Sanayeh, **P.O.BOX** : 11/1801 Beirut Lebanon
**Hotline:** 1314  ext: 171  **T|F:** +961 1 349 616   **email:** arbitration@ccib.org.lb
www.ccib.org.lb

mex



Korek

Shipments

Track    Ship    Solutions & services    Help & Support

Shipment Summary



Tracking Number: 31359868945

Pickup Requests

 Processing    In Transit    Delivered

ations

ed Tracking    Current Activity

From    To

Beirut    Elton Kubri    7/30/2018 3:21:00
LEBANON    IRAQ    PM
BEIRUT    Al Taamim

Customer Support

History

estions About Your
Shipment?

Where Your Shipment Has Been

Date    Location    Activity

nit Request    30 Jul    Erbil, Iraq    Delivered SAMI



مركـز معتمـد مـن جمعيـة غرف التجـارة والصنـاعة للبـحر الابيـض المتوسـط
Appointed by ASCAME (Association of Mediterranean Chambers of Commerce and Industry)
Ref. No: 99/148

المركـــز اللبنانـــي للتحكيـــم
**LEBANESE ARBITRATION CENTER**
Beirut, 20/7/2018

**Mr. Nawzad Junde**

**English Village Villa 203**
**Erbil, Kurdistan**
**Republic of Iraq**
**+964 750 445 0081**

<u>Subject:</u>    Request for Arbitration filed against your good selves by Iraq Telecom Limited and registered with the Lebanese Arbitration Center under no. 73/18 on 18/7/2018 (case number: 175)

<u>Reference:</u>    Arbitration Clause provided for in Article 5.2 of the subordination agreement entered into by the parties on or around 14 December 2011

Greetings,

With reference to the above-captioned subject and reference, we hereby enclose a copy of the Request for Arbitration and its exhibits which were filed with the Lebanese Arbitration Center on 26 June 2018 by Iraq Telecom Limited, represented by Jones Day, Kirkland and Ellis International LLP and Nabil Abdel Malek Law Offices. Your answer to the Request for Arbitration is required within 30 days of the date on which you receive this letter. In case of failure on your end to file your answer to the Request, the latter will be submitted to the Higher Council of Arbitration to proceed as it deems necessary in accordance with the Rules of the Lebanese Arbitration and Mediation Center of the Chamber of Commerce, Industry and Agriculture of Beirut and Mount-Lebanon.

Sincerely,

**Rayan Kouatly**

**Secretary-General**



**The Lebanese Arbitration Center**
Chamber of Commerce, Industry and
Agriculture of Beirut and Mount Lebanon



www.facebook.com/CCIAB
www.twitter.com/CCIABML

مبنى غرفـة التجارة والصناعة والزراعة في بيروت وجبل لبنـان
ط.٧، شـارع جوسـتينيان١، الصنائـع، ص.ب. ١٨٠١ ١١ بيروت، لبنان

CCIA-BML Bldg, 7th Fl, 1Justinien St, Sanayeh, **P.O.BOX** : 11/1801 Beirut Lebanon
**Hotline: 1314  ext: 171  T|F:** +961 1 349 616   **email:** arbitration@ccib.org.lb
www.ccib.org.lb



aramex
delivery unlimited

Login

Track | Ship | Solutions & Services | Help & Support

Track Shipments

Track Pickup Requests

Notifications

Advanced Tracking

Mr. Nawzad Junde

Shipment Summary

Tracking Number: 31359868960

Processing | In Transit | Delivered

From
Beirut
LEBANON
BEIRUT

To
Ibnil Haythem
IRAQ
Al-Basrah

Current Activity
8/2/2018 4:10:00 PM
Delivered

History

Where Your Shipment Has Been

| Date | Location | Activity |
|---|---|---|
| 02 Aug 2018 04:10 PM | Erbil, Iraq | Delivered ditan |

Customer Support

Questions About Your Shipment?

Support
Submit Request

# Exhibit B



مركـز معتمـد مـن جمعيـة غرف التجـارة والصنـاعة للبـحر الابيـض المتوسـط
Appointed by ASCAME (Association of Mediterranean Chambers of Commerce and Industry)

المركــز اللبنانــي للتحكيـــم
**LEBANESE ARBITRATION CENTER**

Beirut, 19 November 2018

**To:**
**Kirkland & Ellis International LLP**
30 St. Mary Axe
London EC3A 8AF
United Kingdom

**Jones Day**
2 rue Saint Florentin
75001 Paris, France

**Nabil Abdel Malek Law Offices**
Ashrafieh, Medawar, Pasteur St.
Pasteur 40 Bldg, 8th floor

**Boies Schiller Flexner (UK) LLP**
Level 11
5 New Street Square
London EC4A 3BF
United Kingdom

**Abousleiman and Partners Law Office**
Beydoun Building no.51
Mohamad Beydoun Street
Beirut, Lebanon

**Badri and Salim El Meouchi Law Firm**
315 Saifi, 3 Selim Takla Street
PO Box 11-3577
Beirut, Lebanon



**The Lebanese Arbitration Center**
Chamber of Commerce, Industry and
Agriculture of Beirut and Mount Lebanon

مبنى غرفـة التجارة والصناعة والزراعة في بيروت وجبل لبنـان
ط.٧، شارع جوسـتينيان ١، الصنائـع، ص.ب. ١١ ١٨٠١ بيـروت، لبنان

CCIA-BML Bldg, 7th Fl, 1Justinien St, Sanayeh, **P.O.BOX**: 11/1801 Beirut Lebanon
**Hotline:** 1314  ext: 171  **T|F:** +961 1 349 616  **email:** arbitration@ccib.org.lb
www.ccib.org.lb




www.facebook.com/CCIAB
www.twitter.com/CCIABML



<u>Ref. No:</u> Case no. 175, registered with the Lebanese Center of Arbitration (the "Center") under no. 73/18

<u>Subject:</u> Request for an extension of time submitted by Korek Telecom LLC ("Korek") and International Holdings Ltd ("IT Ltd")

Dear all,

We refer to the letter submitted to the Secretariat of the Center by Korek and IT Ltd's Counsel on 14 November 2018 and to the answer to such letter submitted by Kirkland & Ellis on behalf of Claimant on 18 November 2018.

The Court has reviewed both letters in its hearing dated 19 November 2018 and taken the following decisions:

i-   The Court reiterates that the Request for Arbitration has been validly notified to Korek and IT Ltd (respectively the Second and Third Respondents), pursuant to Articles 3.3 and 6.2 of the Arbitration Rules of the Center. Indeed, in its letter of 17 August 2018, the Secretariat notified all parties to these proceedings that it had used the services of Aramex to serve Korek the Request for Arbitration at its designated address.
The letter clearly mentioned that the shipment tracking had shown that the Request was duly received by Mr. Sami on 30 July 2018 (as indicated in the attached Shipment Summary provided for by Aramex)[1] and that it was subsequently returned on 31 July as confirmed by Aramex's email to the Secretariat dated 8 August 2018 which stated "the shipment was received in Erbil under AWB# 31359868945 **was refused by Korek and they advised that documents doesn't belong to them**".[2] The letter thus informed the parties that the Court had resolved in its hearing of 13 August 2018 that "the notification of the Request for Arbitration to Korek Telecom Company LLC is valid", in accordance with Article 6.2 of the Rules of Arbitration.
Furthermore, the Court asserts that the Request was received by (i) IT Ltd on 24 July 2018 as confirmed by the receipt provided by the courier Pink Dot[3] and (ii) Mr. Nawzad Junde at his designated address on 2 August 2018 as confirmed by the receipt provided by Pink Dot.[4]

ii-  The Court has resolved to grant the Second and Third Respondents an extension of 30 days ending on 19 December 2018, end of business, to file their Answer to the Request for Arbitration **and** provide the Center with the name of the arbitrator jointly nominated by all Respondents.

Sincerely,

Rayan Kouatly

Secretary General

> **The Lebanese Arbitration Center**
> Chamber of Commerce, Industry and
> Agriculture of Beirut and Mount Lebanon

---

[1] Shipment Summary to Korek, Aramex, 30 July 2018 (**Exhibit 1**)
[2] Email from Ms. Sally Sakaya (Aramex) to the Secretariat, 8 August 2018 (**Exhibit 2**).
[3] Delivery Note regarding International Holdings Ltd, Pink Dot, 24 July 2018 (**Exhibit 3**).
[4] Delivery Note regarding Nawzad Junde, Pink Dot, 2 August 2018 (**Exhibit 4**).

# EXHIBIT 1



amex

Track | Ship | Solutions & services | Help & Support

Shipment Summary

KoReK

Tracking Number: 3135986 8945

Processing    In Transit    Delivered    Current Activity

From:
Beirut
LEBANON
BEIRUT

To:
Elton Kubri
IRAQ
Al Taamim

7/30/2018 3:21:00
PM

Where Your Shipment Has Been

History

| Date | Location | Activity |
|---|---|---|
| 30 Jul | Erbil, Iraq | Delivered SAMI |

estions About Your
Shipment?

Customer Support

nit Request

# EXHIBIT 2

## Lebanese Arbitration and Mediation Center

| | |
|---|---|
| **From:** | Lebanese Arbitration and Mediation Center |
| **Sent:** | Monday, November 19, 2018 1:09 PM |
| **To:** | Counsel-LAMC |
| **Subject:** | FW: HAWB 31359868945 ** Pink dot  **** |

| **Tracking:** | **Recipient** | **Delivery** |
|---|---|---|
| | Counsel-LAMC | Delivered: 2018/11/19 1:09 PM |

---

**From:** Sally Sakkaya [mailto:Sally@aramex.com]
**Sent:** Wednesday, August 08, 2018 11:59 AM
**To:** Lebanese Arbitration and Mediation Center
**Cc:** BEYCedar
**Subject:** HAWB 31359868945 ** Pink dot ****

Hello Dear ,

Kindly note that shipment received in Erbil under AWB# 31359868945 was refused by korek and they advised that documents doesn't belong to them,
Please share correct consignee name and direct telephone number to check with and arrange for the delivery again .


Regards
**Sally Sakkaya**
CMT Executive/Cedar Team
Aramex Lebanon S.A.L, Beirut

Direct +961 1 518621 - Fax +961 1 495404
www.aramex.com
For a greener planet, please don't print this email unless necessary.

1

# EXHIBIT 3



# amex

Track Shipments

Track Pickup Requests

Notifications

Advanced Tracking

Customer Support

Track | Ship | Solutions & Services | Help & Support

## Shipment Summary

*International Holdings* Dubai

## Tracking Number: 31 3359868956

Processing | In Transit | Delivered — Current Activity

From
Beirut
LEBANON
BEIRUT

To
Dubai
UNITED ARAB
EMIRATES
Dubai

7/24/2018 12:21:00 PM

History

## Where Your Shipment Has Been

| Date | Location | Activity |
|---|---|---|
| 24 Jul 2018 | Aramex Umm Ramool, United Arab Emirates | Delivered Buena/reception |

## Questions About Your Shipment?

Support
Submit Request

# EXHIBIT 4

aramex
delivery unlimited

Login

Track  Ship  Solutions & Services  Help & Support

Track Shipments

Track Pickup Requests

Notifications

Advanced Tracking

Customer Support

Questions About Your Shipment?

Support
Submit Request

Shipment Summary

Mr. Nawzad
Junde

Tracking Number: 31359868960

Processing    In Transit    Delivered

Current Activity

8/2/2018 4:10:00
PM

From                              To

Beirut              →    Ibnil Haythem
LEBANON                  IRAQ
BEIRUT                         Al Basrah

History

Where Your Shipment Has Been

| Date | Location | Activity |
|------|----------|----------|
| 02 Aug 2018 04:10 PM | Erbil, Iraq | Delivered dtian |

# Exhibit C



مركـز معتمـد مـن جمعيـة غرف التجـارة والصنـاعة للبحـر الابيـض المتوسـط
Appointed by ASCAME (Association of Mediterranean Chambers of Commerce and Industry)

**المـركـــز اللبنـانـــي للتحكيـــــم**
**LEBANESE ARBITRATION CENTER**

Beirut, 31/8/2018

## Case number: 175/2018

## Re: Request for an extension of time for the filing of Respondent IBL S.A.L.'s defense and documents and nomination of arbitrators in case no. 175

1. **Iraq Telecom Limited**

Unit 11, Level 3, Gate Village Building 10, Dubai International Financial Centre, Dubai, 507043, United Arab Emirates

**Represented by:**

**1.a KIRKLAND & ELLIS INTERNATIONAL LLP**

30 St. Mary Axe London EC3A 8AF, United Kingdom +44 (0)20 7469 2000

Chris Colbridge chris.colbridge@kirkland.com
Rajinder Bassi rajinder.bassi@kirkland.com
Philipp Kurek philipp.kurek@kirkland.com
Kartikey Mahajan kartikey.mahajan@kirkland.com

**1.b JONES DAY**

2 rue Saint-Florentin 75001 Paris France + 33 1 56 59 39 39

Jean-Pierre Harb jpharb@jonesday.com
Ileana Smeureanu ismeureanu@jonesday.com
Alexandre Meyniel ameyniel@jonesday.com

**1.c NABIL ABDEL-MALEK LAW OFFICES**

Achrafieh, Medawar, Pasteur Str., Pasteur 40 Bldg, 8th Floor- Beirut- Lebanon + 961 1 564105

Nabil Abdel-Malek nabil@abdel-malek.com

2. **IBL BANK SAL**

Al Itihadia Building; Charles Malek Avenue Achrafieh, Beirut Lebanon 01-200350 /01-334102

**Represented by:**

Randa Abousleiman randab@abousleimanlaw.com , a.p@abousleimanlaw.com
Patrick Obcid p.obeid@abousleimanlaw.com
Ghina El-Zibawi g.elzibawi@abousleimanlaw.com
Salim El Meouchi salim.elmeouchi@elmeouchi.com
Khalil Sarkis khalil.sarkis@elmeouchi.com
Chadia El Meouchi chadia.elmeouchi@elmeouchi.com





**The Lebanese Arbitration Center**
Chamber of Commerce, Industry and
Agriculture of Beirut and Mount Lebanon

مبنى غرفـة التجـارة والصنـاعة والزراعة فـي بيـروت وجبل لبنـان
ط.V، شـارع جوسـتينيان١، الصنـائع، ص.ب. ١٨٠١ 11 بيروت، لبنان

CCIA-BML Bldg, 7th Fl, 1Justinien St, Sanayeh, **P.O.BOX** : 11/1801 Beirut Lebanon
**Hotline:** 1314  ext: 171  **T|F:** +961 1 349 616   **email:** arbitration@ccib.org.lb
www.ccib.org.lb





www.facebook.com/CCIAB
www.twitter.com/CCIABML

3.   **KOREK Telecom Company LLC**

Next to the post office 45 Kurdistan  Street Pirmam Erbil Kurdistan Republic of Iraq + 964 750 445 0022

4.   **International Holdings Limited**

Unit 11, Level 3 Gate Village Building 10 Dubai International Financial Centre Dubai 507043, United Arab Emirates +971506582663

5.   **Mr. Nawzad Junde**

English Village Villa 203, Erbil, Kurdistan, Republic of Iraq +964 750 445 0081

**\* \* \* \***

Dear Parties Representatives,

We refer to the "*Request for an extension of time for the filing by Respondent INTERCONTINENTAL BANK OF LEBANON (IBL S.A.L.) of its defense and documents*", which was submitted to the Lebanese Arbitration Center (the "Center") on 17 August 2018 and duly notified by the Centre to all Parties (the last one having been notified on 26 August 2018),

We also refer to the Claimant's letter of 27 August 2018 and their written remarks therein pertaining to the "*Request for Extension of time*" and the "*Constitution of Tribunal*",

And wish to inform you that:

- the Secretariat of the Center has decided to grant the Respondent INTERCONTINENTAL BANK OF LEBANON (IBL S.A.L.) an **extension of time ending on 8 October 2018 at 12h00 pm Beirut time to submit** its defense;
- the High Court of Arbitration has decided, on 28 August 2018, – in consideration of the complexity and size of the dispute – that **the case should be heard by a three-member Tribunal**;

**Therefore, the Secretariat kindly requests the Claimant to nominate its arbitrator, and all three Respondents to nominate another arbitrator, before 8 October 2018 at 12h00 pm Beirut time.**

Sincerely,

Rayan Kouatly

Secretary General

**The Lebanese Arbitration Center**
Chamber of Commerce, Industry and
Agriculture of Beirut and Mount Lebanon

2

# Exhibit D

المركز اللبناني للتحكيم
غرفة التجارة والصناعة والزراعة
في بيروت وجبل لبنان
وارد رقم ١٨/١١٦ تاريخ ١٨/١١/١٨
صادر رقم .................... تاريخ

### To the attention of the Lebanese Arbitration Center of the Chamber of Commerce, Industry and Agriculture of Beirut

**IRAQ TELECOM LIMITED**
*(represented by counsels: Kirkland & Ellis International LLP, Jones Day and Nabil Abdel-Malek Law Offices)*

**Claimant**

**INTERCONTINENTAL BANK OF LEBANON S.A.L. (IBL S.A.L.)**

**And**

**KOREK TELECOM COMPANY L.L.C.**

**And**

**INTERNATIONAL HOLDINGS LIMITED**

*The respondents in this matter*

### ANSWER AND COUNTERCLAIM TO THE REQUEST FOR ARBITRATION by the Respondent INTERCONTINENTAL BANK OF LEBANON (IBL) S.A.L. (REGISTRATION NUMBER 73/18 – CASE NUMBER: 175)

Counsels for the Respondent Intercontinental Bank of Lebanon S.A.L. (IBL S.A.L.)

**Abousleiman & Partners Law Office, Randa Abousleiman, Esq.**
Beydoun Building no. 51
Mohamad Beydoun Street
Nasra District, Achrafiyeh
Beirut, Lebanon

**Badri and Salim El Meouchi Law Firm, Salim El Meouchi Esq.**
315 Saifi, 3 Sélim Takla Street
P.O.Box 11-3577
Beirut Central District
20285603
Lebanon

**October 8, 2018**

Pursuant to Article 4.2 of the Rules of Arbitration of the Beirut Chamber of Commerce, Industry and Agriculture (the "**Rules**") and the High Court of Arbitration's (the "**Court**") decision dated August 31, 2018 relating to the Request for an Extension of Time submitted by Intercontinental Bank of Lebanon S.A.L. (IBL S.A.L.) (the "**Respondent**"), the Respondent hereby submits this answer (the "**Answer**") in response to the Request for Arbitration (the "**RFA**") filed by Iraq Telecom Limited (UAE) (the "**Claimant**") on June 26, 2018.

In its Request for an Extension of Time submitted to the Court on August 17, 2018, and registered under number 91/18, the Respondent commented on the proposals made by the Claimant concerning the composition of the Arbitral Tribunal, the number and the appointment of the arbitrators.

Pursuant to its decision dated August 31, 2018, the Court decided that – in consideration of the complexity and size of the dispute – the case should be heard by a three-member Tribunal. Moreover, the Secretary of the Court requested all the three respondents to nominate one arbitrator.

This Answer is therefore limited to the defense of the Respondent, including (i) the submission of the relevant documents relating to the dispute, (ii) the Respondent's counterclaim and (iii) the nomination of the arbitrator.

### BACKGROUND

1- The Respondent generally denies each and every allegation in the Claimant's RFA. The Respondent further denies any liability averred by the Claimant. The factual allegations contained in the Claimant's RFA are inaccurate, unfounded and unsubstantiated, and the Respondent demands strict proof of all allegations.

2- The Respondent finds itself, in an extraordinary turn of event, engaged in this dispute for no reason except the Claimant's bad faith, which constitutes in itself ground for the Respondent to take legal action against the Claimant and to submit a counterclaim.

3- The Respondent is essentially being sued for having acted in good faith and extending a loan to Korek Telecom Company L.L.C. ("**Korek**"), a subsidiary of the Claimant, pursuant to Korek's request, for the purpose of financing the payment of its license fees. The terms and conditions of the requested loan were duly approved by all the concerned parties, including the Claimant.

4- Korek failed to honor its obligations under the IBL Loan Agreement (as defined below). The Claimant then filed this arbitration for wrongful purposes of (i) requesting the declaration of the subordination agreement entered into amongst the parties as null and void or no longer in full force and effect, and (ii) claiming damages, in a bad faith attempt, to illegally extort compensation from the Respondent for Korek's default under the IBL Loan Agreement.

5- In the absence of any valid grounds for its claims, the Claimant fabricated its far-fetched theory of "*orchestrated fraud*" of an alleged conspiracy amongst the respondents, on the basis of a collateral granted to secure the Respondent's loan to Korek.

6- Contrary to the Claimant's allegations, no "*sham or secret arrangement*" ever existed between the respondents, as will be further demonstrated below and in the Respondent's defense and pleadings. The Respondent acted in full compliance with its legal and contractual obligations and was never a party to any kind of collusion or fraud.

7- In order to enable the Arbitral Tribunal to have an accurate understanding of the dispute, the Respondent hereby provides a statement of the facts that are true and relevant to the current dispute.

## I.   STATEMENT OF RELEVANT FACTS AND DOCUMENTS RELATING TO THE DISPUTE

8- The Respondent is a prominent Lebanese bank established since 1961. In 2005, the Respondent was one of the first Lebanese banks to enter the Iraqi market by opening a representative office in Erbil. In 2010, the Respondent further developed its presence in Iraq by establishing another branch in Baghdad. In 2014, a third branch of the Respondent was established in Basra.

9- Amidst this track record of growth, the Respondent extended its presence in Iraq and developed an Iraqi solid clients' network that included, among others, Korek.

10- Korek, an Iraqi major telecommunication company, is an entity fully owned by International Holdings Limited ("**IH**"), a joint venture established between Korek International (Management) Ltd. ("**CS Ltd.**"), which owns 56% of its shares, and the Claimant, which owns 44% of its shares.

3

11- The relationship between the Respondent and Korek precedes the extension of the loan. The Respondent and Korek had commercial dealings since 2008.

12- In 2011, Korek had to honor an urgent and substantial payment obligation to the Iraqi Communication and Media Commission under its mobile telecommunications license, failing which, Korek would have lost its license, its business and more than 1.25 billion dollars.

13- In light of the above, Korek approached the Respondent seeking to obtain financing for the urgent payment of its license fees' installment.

14- In the course of assessing Korek's file for purpose of granting the loan, the Respondent was made aware of the following:

    i.    The Claimant had extended a shareholder's loan to IH (the "**IT-IH Loan**");

    ii.    In turn, IH extended the same amount of the IT-IH Loan to Korek (the "**Shareholder's Loan**"), and,

    iii.    Korek was acting as the guarantor of IH under the IT-IH Loan (the "**Korek Guarantee**").

15- The Respondent agreed to extend to Korek the requested financing, under certain terms and conditions, which obviously factored in the risk elements associated with the granting of the loan in Iraq, including among others:

    i.    to apply an interest rate of 13,25%;

    ii.    to obtain sufficient guarantees and securities; and,

    iii.    to rank senior to the rights associated with the existing Shareholder's Loan.

16- Those terms and conditions were in line with the prevailing market practices, rates and standards for lending operations in Iraq, and in conformity with Lebanese laws and regulations.

17- The Respondent and Korek (including its indirect shareholders, CS Ltd. and the Claimant) agreed to the terms and conditions of the Loan.

18- Thus, on December 14, 2011, a shareholder resolution[1] was taken at the level of Korek, resolving (a) the entry into the loan agreement to be provided by the Respondent to Korek and (b) the subordination to the IBL Loan Agreement of all obligations and liabilities of (i) IH as borrower under the IT-IH Loan, (ii) Korek as borrower under the Shareholder's Loan and (iii) Korek as guarantor under the Korek Guarantee. Other corporate authorizations were also granted at the level of the different entities involved in the transaction.

19- Moreover, on December 14, 2011, a subordination agreement was entered into amongst the Claimant, Korek, IH and the Respondent (the "**Subordination Agreement**")[2], by virtue of which IH and the Claimant agreed to subordinate their rights, under the IT-IH Loan, the Shareholders' Loan and the Korek Guarantee, to the obligations and liabilities of Korek to the Respondent under the IBL Loan Agreement.

20- Further to the issuance of all the corporate authorizations necessary to proceed with the transaction and the execution of the Subordination Agreement, on December 21, 2011, a loan agreement was entered into amongst the Respondent (as lender), Korek (as borrower) and Mr. Sirwan Saber Mustafa ("**Mr. Mustafa**") (as independent guarantor to the borrower), by virtue of which the Respondent extended a USD 150,000,000 loan (the "**Loan**") to Korek (the "**IBL Loan Agreement**")[3].

21- Concurrently with the signature of the IBL Loan Agreement, to be compliant with the applicable laws and regulations, the Respondent requested that the Loan be secured by collateral. This collateralization was materialized in the form of cash collateral (the "**Cash Co.**").

22- Contrary to the Claimant's misstatement that the Cash Co. was kept a secret throughout the life of the Loan, the Respondent acted in full transparency in this respect and reflected, since 2012, the existence of the Cash Co. in its yearly audited accounts.

23- The Claimant's misrepresentations that the Loan was *"an unsecured third-party bank loan"*[4] and *"without any collateral"*[5] are simply untrue. Any person with basic knowledge in the business field would be aware that, from a market practices and

---

[1] Exhibit R-1: Shareholders' Resolution at the level of Korek Telecom Company L.L.C.
[2] Exhibit C-1 annexed to the RFA.
[3] Exhibit C-7 annexed to the RFA.
[4] Paragraph 24 of the RFA.
[5] Paragraph 38 of the RFA.

regulatory standpoint, no bank or financial institution would agree to lend USD 150,000,000 to a company in Iraq, without having obtained adequate and sufficient securities, including for instance, an adequate cash collateral.

24- Instead, the Claimant attempts to distort the facts by alleging that the Cash Co. constituted part of an arrangement to hide a "*shareholder loan provided by Mr. Barzani* [Mr. Mustafa] *with the benefit of a subordination agreement vis-à-vis the IT-IH Loan*"[6]. In this respect, it is worth noting that there is no link whatsoever between the Cash Co. and the entry into the Subordination Agreement. The Respondent would have requested the entry into the Subordination Agreement prior to the extension of the Loan, regardless of the existence of the Cash Co.

25- Pursuant to the initial executed version of the IBL Loan Agreement, the Loan was composed of (i) a short term loan payable on July 21, 2012 and (ii) a long term loan payable on June 21, 2014.

26- On June 19, 2012, Korek requested to extend the payment term of the short term loan. Such extension was duly approved by all the respective parties. Accordingly, on July 21, 2012, Korek, Mr. Mustafa and the Respondent entered into the first loan supplemental (the "**First Loan Supplemental**")[7] extending the maturity date of the short term loan to February 1, 2013.

27- In parallel, a supplemental agreement to the Subordination Agreement was entered into amongst the respective parties (the "**First Subordination Supplemental**")[8], pursuant to which the Subordination Agreement would extend to the IBL Loan Agreement as amended by the First Loan Supplemental.

28- On February 1, 2013, based on Korek's request and upon the receipt of the relevant corporate authorizations from the parties involved in the transaction (including the Claimant), the Respondent agreed to enter into a second supplemental agreement to the IBL Loan Agreement (the "**Second Loan Supplemental**")[9] deferring the payment date of the short term loan to February 1, 2014.

29- Subsequently, another supplemental agreement to the Subordination Agreement was entered into amongst the respective parties (the "**Second Subordination**

---

[6] Paragraph 45 of the RFA.
[7] Exhibit C-9 annexed to the RFA.
[8] Exhibit C-10 annexed to the RFA.
[9] Exhibit C-11 annexed to the RFA.

**Supplemental**")[10], pursuant to which the Subordination Agreement would extend to the IBL Loan Agreement as amended by virtue of the Second Loan Supplemental.

30- One more time, on June 21, 2014, based on Korek's request, a third supplemental agreement to the IBL Loan Agreement (the "**Third Loan Supplemental**")[11] was executed amongst the parties, rescheduling the settlement date of the short term and long term loans to the following dates: (i) the short term loan to be paid on January 31, 2015 and (ii) the long term loan to be paid on June 21, 2015.

31- Contrary to the Claimant's allegation that "*IT did not agree to any further extension or variation of the Subordination Agreement in respect of the Third Extension* [the Third Loan Supplemental]"[12], on June 21, 2014, a third supplemental to the Subordination Agreement was signed (the "**Third Subordination Supplemental**")[13] amongst the respective parties, including the Claimant. This falsification of the facts by the Claimant reflects its bad faith, lack of credibility and its desperate attempts to find a ground for its fabricated collusion theory.

32- Within the term of the Third Loan Supplemental, a fourth extension was under negotiation; however, there was no formal approval to proceed with the said extension.

33- Due to the deterioration of the economic and political situation in Iraq, and while Korek continued to pay the interest due under the Loan in a timely manner, Korek failed to honor its obligations under the IBL Loan Agreement as amended, in respect of the payment of the principal of the Loan.

34- In light of the above, the Claimant's misstatement that "*upon variation and extension of the IBL Loan pursuant to the Third Extension* [the Third Loan Supplemental]*, the Subordination Agreement lapsed with the effect that the IT-IH Loan and the Korek Guarantee were no longer subordinated to the IBL Loan*"[14] is not accurate. The absence of approval to enter into the fourth extension along with Korek's failure to meet its obligations under the IBL Loan Agreement, as amended, triggered the

---

[10] Exhibit C-12 annexed to the RFA.
[11] Exhibit R-2: Third Supplemental Agreement dated as of June 21st, 2014 to the Term Loan Agreement dated as of December 21, 2011.
[12] Paragraph 30 of the RFA.
[13] Exhibit R-3: Third Supplemental Agreement dated as of June 21st, 2014 to the Subordination Agreement dated as of December 14, 2011.
[14] Paragraph 32 of the RFA.

application of Article 1.2[15] of the Subordination Agreement and thus, no further extension of the Subordination Agreement was required.

35- On July 9, 2015, the Respondent sent Korek a *"Notice of Event of Default"*[16] , with a copy to IH and the Claimant, warning Korek that an event of default commenced as of February 5, 2015, and requesting:

- The immediate repayment of all amounts due under the Loan; and,

- The compliance with the terms of the Subordination Agreement, including ceasing to make any payments in respect of the Shareholder's Loan and the Korek Guarantee.

36- On September 15, 2015, the Respondent sent Korek another letter, providing as follows:

*"...* ***We must insist on a full repayment of the Loan****. In view of the good relations between IBL Bank SAL and the Borrower's shareholders, we are willing to grant you a further period for the full repayment of the Loan until 15 October 2015.*

*This further extension is conditional, among other things, on continued compliance with the terms of the Subordination Agreement.*

***We reserve the right to demand repayment of the Loan on any earlier date, at our discretion***"*.*[17] (Emphasis added)

37- The Claimant's allegation that the letters mentioned above were sent *"only to further a sham arrangement between Mr. Barzani* [Mr. Mustafa] *and IBL* [the Respondent]*"*[18] is cursory accusation fabricated by the Claimant for the purpose of involving the Respondent in any dispute that may be occurring amongst Korek's indirect shareholders, a dispute that does not concern in any form or manner, at any time or under any circumstances, the Respondent. The Claimant is remarkably desperate to find a ground for its *"orchestrated fraud"* theory that it interpreted, in

---

[15] Article 1.2 of the Subordination Agreement annexed to the RFA as Exhibit C-1.
[16] Exhibit R-4: Notice of Event of Default, dated July 9, 2015, sent from the Respondent to Korek, with a copy to the Claimant and IH.
[17] Exhibit R-5: Letter dated September 15, 2015, sent from the Respondent to Korek, with a copy to the Claimant and IH.
[18] Paragraph 34 of the RFA.

bad faith, the Respondent's notices to Korek, as a part of a "*sham arrangement*", only for purpose of serving its own interests.

38- Despite the notices notified to all the concerned parties, the Respondent did not receive a response on its letters dated July 9, 2015 and September 15, 2015, neither from Korek nor from any of its indirect shareholders, including the Claimant.

39- Moreover, Korek continued to pay the interest due under the Loan in a timely manner.

40- The Respondent treated Korek as it would treat any other well-established client. In line with common procedure, the Respondent does not immediately seek enforcement against a debtor in the event of default, especially when the client is well-known to the Respondent and interest is paid in a timely manner.

41- On August 30, 2017, the Respondent sent Korek a letter[19], requesting (i) the repayment of the Loan and (ii) in the interim, to be provided with additional collateral, in the form of a pledge over Korek's shares.

42- It was only upon the receipt of the abovementioned letter that Mr. Deepak Jain and Mr. Ehab Aziz decided suddenly and unjustifiably to react, on September 25, 2017, by sending the Respondent a letter[20] requesting information about the relationship between Korek and the Respondent, information that they are not entitled to receive from the Respondent.

43- In response to the abovementioned letter, on October 13, 2017, the Respondent acted in compliance with its contractual obligations and sent Korek a letter[21], informing the latter that the Respondent will only correspond with it.

44- Some of the Claimant's directors persevered in their hostile approach. On October 25, 2017, Mr. Ehab Aziz and Mr. Deepak Jain unilaterally authorized themselves to bypass the formal channels of communication provided for in the IBL Loan

---

[19] Exhibit R-6: Letter dated August 30, 2017, sent from the Respondent to Korek, with a copy to the Claimant and IH.

[20] Exhibit R-7: Letter dated September 25, 2017, sent from Mr. Deepak Jain and Mr. Ehab Aziz to the Respondent, with a copy to Korek, IH, IT and Mr. Mustafa.

[21] Exhibit R-8: Letter dated October 13, 2017, sent from the Respondent to Korek, with a copy to the Claimant, IH and Mr. Mustafa.

Agreement and sent the Respondent a letter[22] reiterating their requests set forth in their previous correspondence dated September 25, 2017.

45- On December 17, 2017, Mr. Ehab Aziz and Mr. Deepak Jain addressed a third letter[23] to the Respondent requesting again the same information, which they were not entitled to receive from the Respondent.

46- The Respondent maintained its *"position to only correspond with the duly authorized representative of Korek in accordance with the Loan Agreement"*.[24]

47- On March 21, 2018, the Claimant increased the level of their accusations to the Respondent by sending it an unacceptable letter[25], threatening the Respondent with legal actions on the basis of the unfounded so-called *"sham loan arrangement"*.

48- On another level, on March 26, 2016, Korek sent the Respondent a letter[26] indicating its willingness to (i) maintain a good relation with the Respondent and (ii) to deposit in its accounts with the Respondent the quarterly interest payment on the Loan, in compliance with the terms of the IBL Loan Agreement.

49- On March 29, 2018, the Respondent sent Korek a letter[27] (i) reiterating its position on the line of communications among the parties to the IBL Loan Agreement and (ii) firmly inviting Korek to resolve the dispute amongst its shareholders.

50- However, the Claimant elected to construe the Respondent's flexibility and willingness to take into account the economic situation in Iraq and its impact on Korek, as a dark conspiracy aiming to defraud the Claimant. On that unfounded basis, the Claimant has drawn the Respondent in this costly and needless dispute, by distorting facts and fabricating theories deprived of any form of proof or evidence.

---

[22] Exhibit R-9: Letter dated October 25, 2017, sent from Mr. Deepak Jain and Mr. Ehab Aziz to the Respondent, with a copy to Korek, IH, IT and Mr. Mustafa.
[23] Exhibit R-10: Letter dated December 17, 2017, sent from Mr. Deepak Jain and Mr. Ehab Aziz to the Respondent, with a copy to Korek, IH, IT and Mr. Mustafa.
[24] Exhibit R-11: Letter dated January 29, 2018, sent from the Respondent to Korek, with a copy to the Claimant, IH and Mr. Mustafa.
[25] Exhibit R-12: Letter dated March 21, 2018, sent from Mr. Deepak Jain and Mr. Ehab Aziz to the Respondent, with a copy to Korek, IH, IT, Mr. Nawzad Junde, Orange S.A. and Mr. Mustafa.
[26] Exhibit R-13: Letter dated March 26, 2018, sent from Korek to the Respondent with a copy to IH, the Claimant and Mr. Mustafa.
[27] Exhibit R-14: Letter dated March 29, 2018, sent from the Respondent to Korek, with a copy to the Claimant, IH and Mr. Mustafa.

51- The Claimant would want us to believe that the Respondent, an alpha bank (i.e. top ten tier bank in Lebanon) with a crystal reputation in Lebanon and the MENA region, would make itself involved in such a scheme, for purposes of serving an alleged third party's interests. The Respondent has no will and no interest whatsoever in participating to the so-called "*orchestrated fraud*", especially that the Respondent is a highly regulated entity operating under the scrutiny of the Lebanese monetary institutions and notably, *Banque du Liban*.

52- In fact, the Respondent entered into a regular lending operation with standard commercial terms and conditions and in conformity with applicable laws and regulations. However, for purposes of serving its own interests, the Claimant could not but throw unfounded and illogical allegations against the Respondent.

53- Based on the foregoing, the Claimant has clearly no lawful right to bring an arbitration claim against the Respondent. As a result, the Claimant must bear all of the arbitration's costs and expenses, including attorney fees, in addition to damages, in application of Articles 10, 11 and 551 of the LCCP in conjunction with Article 20 of the Rules.

## II.   **RESPONDENT'S COUNTERCLAIM**

54- As a result of the Claimant's conduct and wrongful allegations included in the RFA, the Claimant has inflicted damage on the Respondent, its reputation and good-standing.

55- Therefore, in application of Article 122 of the Lebanese Code of Obligations and Contracts, and Articles 10, 11 and 551 of the Lebanese Code of Civil Procedure in conjunction with Article 20 of the Rules, the Claimant should be declared liable to indemnify the Respondent for all damages and losses suffered, in an amount to be determined during the course of this arbitration.

## III.   **NOMINATION OF THE ARBITRATOR**

56- On August 31, 2018, the Court resolved that this case should be heard by a three-member tribunal. Moreover, the Secretariat of the Court requested all the three respondents to nominate one arbitrator.

57- The other respondents, other than the Respondent, have not, to date, provided their feedback or comments as to the joint nomination of the arbitrator.

58- On that basis, the Respondent respectfully requests, until November 30, 2018, to be able to determine whether the other respondents would reach an agreement regarding the joint nomination of an arbitrator. Should the respondents reach an agreement in this respect, the three respondents will provide the Court with the name of the appointed arbitrator by no later than November 30, 2018.

59- Should the above request be denied, then the Respondent concurs with the Claimant that the Court appoints all three members of the Arbitral Tribunal and designates its president.

## IV.    **RELIEF REQUESTED BY THE RESPONDENT**

60- The Respondent respectfully requests from the Arbitral Tribunal to:

- Dismiss the Claimant's request to declare the Subordination Agreement null and void;

- Dismiss the Claimant's request to declare the Subordination Agreement no longer in full force and effect;

- Dismiss the Claimant's request that the Respondent pays damages for the Claimant;

- Dismiss the Claimant's request that the Respondent pays for all costs and expenses (including all legal fees) incurred by the Claimant in connection with these arbitral proceedings;

- Dismiss the Claimant's request that the Respondent pays post-award interest on all sums awarded;

- Order the Claimant to compensate the Respondent, and grant the Respondent's counterclaim, for the damages and losses suffered, in an amount to be determined during the course of these arbitral proceedings, in application to Article 122 of the Lebanese Code of Obligations and Contracts, and Articles 10, 11 and 551 of the Lebanese Code of Civil Procedure in conjunction with Article 20 of the Rules;

- Order the Claimant to bear all the costs and expenses incurred by the Respondent in connection with these arbitral proceedings, including attorney's fees, the costs of the Arbitral Tribunal and the Court, as well as any legal or other fees, costs and/or expenses incurred by the Respondent;

12

- Grant the Respondent until November 30, 2018, to determine whether the other respondents would reach an agreement regarding the joint nomination of an arbitrator and jointly nominate an arbitrator;

- Should the above request be denied, the Court to appoint all three members of the Arbitral Tribunal and designate its president;

- Such other relief as the Arbitral Tribunal may deem appropriate.

This Answer is without prejudice to, and with reservation of, any right afforded to the Respondent, without exception, including *inter alia*, under law and/or contract, with respect to any right or action or claim or counterclaim or argument in connection with the subject matter thereof and these arbitral proceedings, including *inter alia*, before the Court, the Arbitral Tribunal, any appropriate court of law or arbitral tribunal.

**Respectfully submitted on behalf of Intercontinental Bank of Lebanon S.A.L. (IBL S.A.L.) on October 8, 2018:**

By Randa Abousleiman, Esq.

**Abousleiman & Partners Law Office**

By Salim El Meouchi, Esq.

**Badri and Salim El Meouchi Law Firm**

**To the attention of the Lebanese Arbitration Center of the Chamber of Commerce, Industry and Agriculture of Beirut**

**IRAQ TELECOM LIMITED**
*(represented by counsels: Kirkland & Ellis International LLP, Jones Day and Nabil Abdel-Malek Law Offices)*

*Claimant*

**INTERCONTINENTAL BANK OF LEBANON S.A.L. (IBL S.A.L.)**

**And**

**KOREK TELECOM COMPANY L.L.C.**

**And**

**INTERNATIONAL HOLDINGS LIMITED**

*The respondents in this matter*

**ANSWER AND COUNTERCLAIM TO THE REQUEST FOR ARBITRATION by the Respondent INTERCONTINENTAL BANK OF LEBANON (IBL) S.A.L. (REGISTRATION NUMBER 73/18 – CASE NUMBER: 175)**

**INDEX OF SUPPORTING DOCUMENTS**

Counsels for the Respondent Intercontinental Bank of Lebanon S.A.L. (IBL S.A.L.)

**Abousleiman & Partners Law Office, Randa Abousleiman, Esq.**
Beydoun Building no. 51
Mohamad Beydoun Street
Nasra District, Achrafiyeh
Beirut, Lebanon

**Badri and Salim El Meouchi Law Firm, Salim El Meouchi Esq.**
315 Saifi, 3 Sélim Takla Street
P.O.Box 11-3577
Beirut Central District
20285603
Lebanon

**October 8, 2018**

**FACTUAL EXHIBITS SUBMITTED WITH RESPONDENT'S ANSWER
TO THE CLAIMANT'S REQUEST FOR ARBITRATION**

- **Exhibit R-1**: Shareholders' Resolution at the level of Korek Telecom Company L.L.C.

- **Exhibit R-2**: Third Supplemental Agreement dated as of June 21st, 2014 to the Term Loan Agreement dated as of December 21, 2011.

- **Exhibit R-3**: Third Supplemental Agreement dated as of June 21st, 2014 to the Subordination Agreement dated as of December 14, 2011.

- **Exhibit R-4**: Notice of Event of Default, dated July 9, 2015, sent from the Respondent to Korek, with a copy to the Claimant and IH.

- **Exhibit R-5**: Letter dated September 15, 2015, sent from the Respondent to Korek, with a copy to the Claimant and IH.

- **Exhibit R-6**: Letter dated August 30, 2017, sent from the Respondent to Korek, with a copy to the Claimant and IH.

- **Exhibit R-7**: Letter dated September 25, 2017, sent from Mr. Deepak Jain and Mr. Ehab Aziz to the Respondent, with a copy to Korek, IH, IT and Mr. Mustafa.

- **Exhibit R-8**: Letter dated October 13, 2017, sent from the Respondent to Korek, with a copy to the Claimant, IH and Mr. Mustafa.

- **Exhibit R-9**: Letter dated October 25, 2017, sent from Mr. Deepak Jain and Mr. Ehab Aziz to the Respondent, with a copy to Korek, IH, IT and Mr. Mustafa.

- **Exhibit R-10**: Letter dated December 17, 2017, sent from Mr. Deepak Jain and Mr. Ehab Aziz to the Respondent, with a copy to Korek, IH, IT and Mr. Mustafa.

- **Exhibit R-11**: Letter dated January 29, 2018, sent from the Respondent to Korek, with a copy to the Claimant, IH and Mr. Mustafa.

- **Exhibit R-12**: Letter dated March 21, 2018, sent from Mr. Deepak Jain and Mr. Ehab Aziz to the Respondent, with a copy to Korek, IH, IT, Mr. Nawzad Junde, Orange S.A. and Mr. Mustafa.

- **Exhibit R-13**: Letter dated March 26, 2018, sent from Korek to the Respondent with a copy to IH, the Claimant and Mr. Mustafa.

- **Exhibit R-14**: Letter dated March 29, 2018, sent from the Respondent to Korek, with a copy to the Claimant, IH and Mr. Mustafa.

**Korek Telecom Company LLC**
**(Erbil)**

Shareholder Resolution

We, the undersigned, according to our capacity as the representatives of International Holdings Limited, the sole shareholder of Korek Telecom Company LLC (the "**Company**") established in the Republic of Iraq according to certificate No. 1272 issued on 16 August 2000 and pursuant to the powers vested to me by the shareholders of International Holdings Limited according to the legal proceedings followed under Iraqi Companies' Law, resolve that the entry into the loan agreement to be provided by IBL Bank S.A.L. ("**IBL Bank**") in a total amount equal to approximately US$150 million from IBL Bank S.A.L. to the Company (the "**Loan Agreement**") by the Company is hereby approved in the form set forth in the draft Loan Agreement submitted to the members of the Board of International Holdings Limited.

All obligations and liabilities of the Company as guarantor under the existing shareholder loan agreement between International Holdings Limited as borrower and Iraq Telecom Limited as lender, dated 27 July 2011 (the "**Shareholder Loan Agreement**") and International Holdings Limited as borrower under the Shareholder Loan Agreement and all obligations and liabilities of the Company as borrower pursuant to the shareholder loan agreement between International Holdings Limited as lender and the Company as borrower dated 27 July 2011 (the "**On-Loan Agreement**") are subordinated (pursuant to a subordination agreement, on the terms outlined to the members of the KSC, the "**Subordination Agreement**") to the obligations and liabilities of the Company as borrower of the Loan on the terms and conditions set out therein and the Company is a party to the Loan Agreement and the Subordination Agreement for this purpose.

Shareholder:

_____
CS Ltd Representative

_____
IT Ltd Representative

14/12/2011

LN 560743.4

**Korek Telecom Company LLC**
(the "**Company**")

Shareholder Resolution

Passed on 14 December 2011

We, the undersigned, according to our capacity as the representatives of International Holdings Limited ("**IH**"), the sole shareholder of the "Company" and pursuant to the powers vested to us by the shareholders of IH according to the legal proceedings followed under Iraqi Companies' Law, resolve that the entry into the loan agreement to be provided by IBL Bank S.A.L. ("**IBL Bank**") in a total amount equal to approximately US$150 million from IBL Bank to the Company (the "**Loan**", and documented in the "**Loan Agreement**")) is hereby approved in the form set forth in the draft Loan Agreement submitted to the members of the Company Supervisory Committee.

All obligations and liabilities of (i) the Company as guarantor under the existing shareholder loan agreement between IH as borrower and Iraq Telecom Limited as lender, dated 27 July 2011 (the "**Shareholder Loan Agreement**"), (ii) IH as borrower under the Shareholder Loan Agreement, and (iii) the Company as borrower pursuant to the shareholder loan agreement between IH as lender and the Company as borrower dated 27 July 2011, are subordinated (pursuant to a subordination agreement, on the terms outlined to the members of the Company Supervisory Committee, the "**Subordination Agreement**") to the obligations and liabilities of the Company as borrower of the Loan on the terms and conditions set out therein and the Company is a party to the Loan Agreement and the Subordination Agreement for this purpose.

Shareholder:

_____
CS Ltd Representative

_____
IT Ltd Representative

LN 560743.5

**Korek Telecom Company LLC**
(the "Company")

Shareholder Resolution

Passed on 14 December 2011

We, the undersigned, according to our capacity as the representatives of International Holdings Limited ("**IH**"), the sole shareholder of the "Company" and pursuant to the powers vested to us by the shareholders of IH according to the legal proceedings followed under Iraqi Companies' Law, resolve that the entry into the loan agreement to be provided by IBL Bank S.A.L. ("**IBL Bank**") in a total amount equal to approximately US$150 million from IBL Bank to the Company (the "**Loan**", and documented in the "**Loan Agreement**")) is hereby approved in the form set forth in the draft Loan Agreement submitted to the members of the Company Supervisory Committee.

All obligations and liabilities of (i) the Company as guarantor under the existing shareholder loan agreement between IH as borrower and Iraq Telecom Limited as lender, dated 27 July 2011 (the "**Shareholder Loan Agreement**"), (ii) IH as borrower under the Shareholder Loan Agreement, and (iii) the Company as borrower pursuant to the shareholder loan agreement between IH as lender and the Company as borrower dated 27 July 2011, are subordinated (pursuant to a subordination agreement, on the terms outlined to the members of the Company Supervisory Committee, the "**Subordination Agreement**") to the obligations and liabilities of the Company as borrower of the Loan on the terms and conditions set out therein and the Company is a party to the Loan Agreement and the Subordination Agreement for this purpose.

Shareholder:

_____
CS Ltd Representative

_____
IT Ltd Representative



وزارة المالية والاقتصاد          الإقليم كوردستان العراق
المديرية العامة للتجارة
سجل الشركات                    شهادة تأسيس شركة

التاريخ ٢٠٠٨/٨/١٦

استنادا الى قرارنا المرقم ١٧٧٢ في ٢٠٠٨/٨/١٦ الذي بموجبه حصلت الموافقة على تأسيس شركة كويك تليكوم المحدودة/ مديرها المفوض
السيد سيروان صابر مصطفى  بالمطبعة مع الغاية المدرجة اسمائهم ادناه و برأسمال قدره ٢٣٠،٠٠٠،٠٠٠ مليون دينار عراقي طبع سبيسري سليعادان
(٢٠،٠٠٠،٠٠٠) عشرين مليون دولار أمريكي.

أمر سجل الشركات لهذا ببيانه في التاريخ المذكور تم تسجيل عقد الشركة المذكورة بموجب
المادة ٢١ من قانون الشركات المرقم ٢١ لسنة ١٩٩٧

| ت | الاسم | عدد الأسهم |
|---|---|---|
| ١ | سيروان صابر مصطفى | ٧٥% |
| ٢ | جوتيار حسن جوتين | ٢٠% |
| ٣ | جعفر جبو مصطفى | ٥% |

تأسست في اربيل في اليوم/ ١٦ من شهر/ ثاب سنة/ ٢٠٠٠

سجل الشركات

كوردك تيليكوم  كورك تيليكوم

بەرپوەمبەرايەتى گشتى    Head Office    المديرية العامة



DATE: November 13th, 2011

IBL BANK S.A.L.
Ashrafieh Branch, Beirut, Lebanon

Dear Sir,

**Sub: Authorized Signatures**

Dear Sirs,

I, Sirwan Saber Mustafa, Chairman and Managing Director of Korek Telecom LLC, hereby authorize:

1) IBL bank to execute compensation at all times between balances of our credit accounts opened in IBL bank under ID 700716
2) The following persons to sign jointly all banking transaction with IBL as follow:
   a. Unlimited amount: Any 2 members of category A
   b. Amounts 2 million and below: As per following:

| Limit | Authorization |
|-------|---------------|
| < = 2 M$ | **2** members of Category A<br>Or<br>**2** members of  Category B<br>Or<br>**1** member of Category A AND **1** member of Category B |

| Category A | | Category B |
|---|---|---|
| **Name** | | **Name** |
| Sirwan Mustafa | | Jiqsy Mustafa |
| Ghada Gebara | | Jean-Marie Garcia |
| Issa Touma | | Helene Le Caignec |

\* Kindly find below (page 2) the original signatures

Regards,

Sirwan Mustafa
Chairman & Managing Director



**KOREK**

كورەك تيليكۆم

بەریوەبەرایەتی گشتی

Head Office

كورك تيليكوم

المديرية العامة

## SPECIMEN SIGNATURES

| Category A | Category B |
|---|---|
|  |  |
| Sirwan MUSTAFA | Jiqsy MUSTAFA |
|  |  |
| Ghada GEBARA | Jean-Marie GARCIA |
| | Issa TOUMA | Helene LE CAIGNEC |

Korek Telecom Co.                                                                              www.korektel.com
45 Kurdistan Str.                                                                             mail: info@korektel.com
Salahadeen - Erbil-IRAQ     Tel:(66) 2423400   Mob:(0750) 4460022   Fax: 0632484460693



كوردك تيليكوم                             كورك تيليكوم

بەرێوەبەرايەتى گشتى            **Head Office**             المديرية العامة

DATE: November 13th, 2011

IBL BANK S.A.L.
Dar Akl Handasa Building, Ainkawa Road
Erbil – Kurdistan - Iraq

Dear Sir,

### Sub: Authorized Signatures

Dear Sirs,

I, Sirwan Saber Mustafa, Chairman and Managing Director of Korek Telecom LLC, hereby authorize:

1) IBL bank to execute compensation at all times between balances of our credit accounts opened in IBL bank under ID 855007
2) The following persons to sign jointly all banking transaction with IBL as follow:
   a. Unlimited amount: Any 2 members of category A
   b. Amounts 2 million and below: As per following:

| Limit | Authorization |
|-------|---------------|
| < = 2 M$ | 2 members of Category A<br>Or<br>2 members of Category B<br>Or<br>1 member of Category A AND 1 member of Category B |

| Category A | | Category B |
|------------|---|------------|
| **Name** | | **Name** |
| Sirwan Mustafa | | Jiqsy Mustafa |
| Ghada Gebara | | Jean-Marie Garcia |
| Issa Touma | | Helene Le Caignec |

\* Kindly find below (page 2) the original signatures

Regards,

Sirwan Mustafa
Chairman & Managing Director

Korek Telecom Co.
45 Kurdistan Str.
Saladdien, Erbil IRAQ     Tel:00964 2413 006   Mob:0750 1 4450022   Fax:00 234 4460015

www.korekid.com
mail: info@korekztr.com



**كورەك تیلیكۆم**

بەرێوەبەرایەتی گشتی

Head Office

**كورك تيليكوم**

المديرية العامة

## SPECIMEN SIGNATURES

Category A

Category B



Sirwan MUSTAFA



Jiqsy MUSTAFA



Ghada GEBARA

Jean-Marie GARCIA

Issa TOUMA

Helene LE CAIGNEC

Korek Telecom Co
45 Kurdistan Str.
Sulaibidexa, Erbil-IRAQ

www.korektel.com
mail: info@korektel.com

Tel:(066) 243 9404   Mob:(0750) 445 0023   Fax: 00 748 44902

**THIRD SUPPLEMENTAL AGREEMENT**
dated as of June 21st, 2014


**TO THE**
**TERM LOAN AGREEMENT**
dated as of December 21, 2011


among

**IBL Bank SAL**
**as Lender,**

**Korek Telecom Company S.A.L.,**
**as Borrower**


and

**Mr. Sirwan Saber Mustafa,**
**as Guarantor**



EXECUTION VERSION

This THIRD SUPPLEMENTAL AGREEMENT to the TERM LOAN AGREEMENT dated as of December 21, 2011 (as supplemented) is made on June 21st, 2014 (the "**Third Supplemental Agreement**") among Korek Telecom Company LLC as borrower (the "**Borrower**"), IBL Bank SAL as lender (the "**Lender**"), and Mr. Sirwan Saber Mustafa as guarantor to the Borrower (the "**Guarantor**").

## WITNESSETH

WHEREAS, the Borrower, the Lender and the Guarantor (the "**Parties**") have entered into the Term Loan Agreement on December 21, 2011 (the "**Term Loan Agreement**") that was supplemented pursuant to the Supplemental Agreement to the Term Loan Agreement dated July 21, 2012 (the "**First Supplemental Agreement**") and that was further supplemented pursuant to the Second Supplemental Agreement to the Term Loan Agreement dated February 1st, 2013 (the "**Second Supplemental Agreement**") (the Term Loan Agreement, the First Supplemental Agreement and the Second Supplemental Agreement shall be referred to jointly as the "**Agreement**");

WHEREAS, pursuant to the Term Loan Agreement the Lender has extended a U.S. $150,000,000 (One Hundred Fifty Million United States Dollars) term loan to the Borrower for the purpose of paying the amounts due to the Communication and Media Commission in respect of the Borrower's mobile telecommunications license granted by CMC;

WHEREAS, the Lender has extended the Loan and entered into the Term Loan Agreement, the First Supplemental Agreement and the Second Supplemental Agreement in reliance on the guarantee of the Guarantor as set forth in the Agreement;

WHEREAS, the Borrower wishes to extend the repayment date of the Short Term Loan (*as defined under the Agreement*) amounting to U.S. $40,000,000 (Fourty Million United States Dollars) until January 31st, 2015;

WHEREAS, the Borrower wishes to extend the repayment date of the Long Term Loan (*as defined under the Agreement*) amounting to U.S. $110,000,000 (One Hundred and Ten Million United States Dollars) until June 21st, 2015;

WHEREAS, the Parties have further agreed that, except to the extent specifically amended or modified by this Third Supplemental Agreement, all other provisions, schedules and exhibits (if any) of the Agreement and all other agreements and documents entered into among the Parties in relation thereto are hereby ratified and confirmed in all respects and the Agreement, as so amended and modified, remains in full force and effect as of the date hereof.

NOW, THEREFORE, the Parties hereto agree as follows:

## Article I- Definitions

Terms not otherwise defined in this Third Supplemental Agreement shall have the same meanings ascribed to them in the Agreement.

## Article II- Extension of Repayment Date

Sections 3.1.1 and 3.1.2 of the Agreement are hereby amended and restated to read as follows:

2





EXECUTION VERSION

"3.1.1". The amount of U.S. $40,000,000 (Fourty Million United States Dollars) on January 31ˢᵗ, 2015 (the **"Short Term Loan"**);

"3.1.2." The amount of U.S. $110,000,000 (One Hundred and Ten Million United States Dollars) on June 21ˢᵗ, 2015 (the "**Long Term Loan**").

### Article III- Expenses

The Borrower shall promptly pay within 30 days of written demand the amount of all costs and expenses (including legal fees) reasonably incurred and properly documented by the Lender in connection with the negotiation, preparation, execution and delivery of the Third Supplemental Agreement and the consummation of the transactions contemplated hereby.

### Article IV- Representations and Warranties

The Borrower hereby represents, warrants and agrees with the Lender as at the date of this Third Supplemental Agreement, as follows:

i.   the execution and delivery by the Borrower of this Third Supplemental Agreement, the consummation by the Borrower of the transactions contemplated hereby and the performance by the Borrower of its obligations hereunder are within the Borrower's powers, have been duly authorized by all necessary action (corporate or otherwise) on the Borrower's behalf and require no consent, approval, authorization or order of any court or governmental body, agency or official;

ii.  the person signing this Third Supplemental Agreement on behalf of the Borrower has been duly authorized by the Borrower to sign this Third Supplemental Agreement;

iii. the execution and delivery of this Third Supplemental Agreement by the Borrower, the consummation by the Borrower of the transactions contemplated hereby and the performance by the Borrower of its obligations hereunder do not, and will not, contravene to any material extent or constitute a default under any provision of any applicable law or regulation, the Borrower's organizational documents or any agreement or instrument to which the Borrower is a party where such default would adversely affect to a material extent its ability to perform its obligations under this Third Supplemental Agreement;

iv.  this Third Supplemental Agreement constitutes, and the obligations of the Borrower hereunder constitute, the legal, valid and binding obligations of the Borrower, enforceable against the Borrower in accordance with the terms of this Third Supplemental Agreement; and

v.   the representations and warranties made by the Borrower under in section 7 of the Agreement are hereby repeated and are still true and complete in all material respects.

The Guarantor hereby represents, warrants and agrees with the Lender as at the date of this Third Supplemental Agreement, as follows:

i.   the execution and delivery by the Guarantor of this Third Supplemental Agreement, the consummation by the Guarantor of the transactions contemplated hereby and the performance by the Guarantor of his obligations hereunder are within the Guarantor's powers and require no consent, approval, authorization or order of any court or governmental body, agency or official;

EXECUTION VERSION



ii.    the obligations of the Guarantor under this Third Supplemental Agreement are legal, valid, binding and enforceable in accordance with their respective terms;

iii.    the Guarantor is not in violation of any provision of, or in default in the performance or observance of, any material obligation, covenant or condition contained in any indenture, mortgage, deed of trust, loan agreement, lease or other agreement or instrument to which the Guarantor is a party or by which the Guarantor or any of its property may be bound where in each case such violation or default would adversely affect to a material extent its ability to perform its obligations under this Third Supplemental Agreement; and

iv.    the representations and warranties made by the Guarantor under in section 7 of the Agreement are hereby repeated and are still true and complete in all material respects.

## Article V- Governing Law - Jurisdiction

This Third Supplemental Agreement shall be governed by the laws of the Republic of Lebanon.

Any dispute, claim, question or disagreement arising out of or relating to this Third Supplemental Agreement or the transactions contemplated herein (a "**Dispute**"), shall be settled by binding arbitration in accordance with the Rules of Conciliation and Arbitration of the Beirut Chamber of Commerce and Industry by one or more arbitrators, and the procedures set forth below. Judgment upon the award rendered by the arbitrator may be enforced in any court having jurisdiction over such dispute. The Arbitration is to take place in Beirut in the English language unless otherwise agreed by the parties. The award shall be final and binding and the parties waive their rights to lodge an appeal against the award. Nothing in this Third Supplemental Agreement including this Article V shall prevent a party from seeking injunctive relief including but not limited to injunctive relief before the Fast Track Judge in the case of any breach or alleged breach by another party.

**[the rest of the page is intentionally left blank]**

4

EXECUTION VERSION

IN WITNESS WHEREOF, the parties have caused this Third Supplemental Agreement to be duly executed and delivered, as of the day and year first written above, in three original copies each to be delivered to a party.

**The Borrower:**
**Korek Telecom Company LLC**
    By: _____
    Name:
    Title:


**The Lender:**
**IBL Bank SAL**
    By: _____
    Name:
    Title:


**The Guarantor:**
**Sirwan Saber Mustafa**
    By: _____
    Name:



**IBL BANK**

Korek Telecom Company LLC
45 Kurdistan Street
Pirmam
Erbil
Republic of Iraq

9 July 2015

Dear Sirs,

Notice of Event of Default

We refer to the Term Loan Agreement dated 21 December 2011 and made between IBL Bank SAL (as Lender), Korek Telecom Company LLC (as Borrower) and Mr. Sirwan Saber Mustafa (as Guarantor), as amended (the "**Agreement**").

Unless otherwise specified, terms used but not otherwise defined in this letter shall have the same meaning as in the Agreement.

Clause 3.1 of the Agreement (as amended) requires you to repay the entire principal amount of the Loan in installments as follows: (i) U.S. $40 Million on the 31st of January 2015 (the "**Short Term Loan Repayment Date**") and (ii) U.S. $110 Million on the 21st of June 2015 (together with Short Term Loan Repayment Date, the "**Repayment Dates**"). You have failed to repay the principal amount on the respective Repayment Dates and have not remedied these defaults as of the date of this letter.

Pursuant to clause 10.1 of the Agreement, breach of your obligations in clause 3.1 of the Agreement constitutes an Event of Default. This Event of Default has commenced on 5 February 2015 and is continuing.

As there is an Event of Default which is continuing, we are entitled (in addition to any other right or remedy we may have against you) to require immediate repayment of all amounts due under the Loan.

We hereby request that you repay all such amounts on or before 9 August 2015.

We further request that you immediately comply with Section 1.2 of the Subordination Agreement dated 21 December 2011 among IBL Bank SAL, Korek Telecom Company LLC, International Holdings Limited and Iraq Telecom Limited (the "**Subordination Agreement**"), including ceasing to make any payments in respect of the On-Loan Agreement and the Guarantee. We also demand that IHL and IT comply with their respective obligations under Section1.2 of the Subordination Agreement. Capitalized terms used in this paragraph are as defined in the Subordination Agreement.

This letter is without prejudice to any other rights which we may have under the Agreement and the Subordination Agreement or under applicable law.

Yours faithfully,

..............................
For and on behalf of IBL Bank SAL
Date..............................

Hassan Rayes

Dolly Merhy

CC:   **International Holdings Limited**, Suite 904, Level 9, Park Place, PO Box 506672,
Sheikh Zayed Road, Dubai International Financial Centre, Dubai, UAE

**Iraq Telecom Limited**, Office 11, Level 3, Gate Village 10, PO Box 506672,
Sheikh Zayed Road, Dubai International Financial Centre, Dubai, UAE

**Mr. Sirwan Saber Mustafa**, 45 Kurdistan Street, Erbil, Kurdistan Region, Republic of Iraq

pital LBP 150 000 000 000 fully paid
of Banks N° 52, CRB 10472

Charles Malek Avenue, Al Ittihadia Building, Ashrafieh, Beirut 2071 4703 Lebanon
P.O.Box: 11-5292 Riad El Solh 1107 2190 Beirut · Lebanon · Swift: INLELBBE ·Tax ID No. 7267
Tel: +961 1 200 350/2/3 · Fax: +961 1 204 505 · E-mail: ibl@ibl.com.lb · www.ibl.com.lb



**IBL BANK**

Beirut, September 15, 2015

Korek Telecom
Korek Building
45 Kurdistan
Erbil - Iraq

Dear Sirs,

We refer to the Term Loan Agreement dated 21 December 2011 and made between IBL Bank SAL (as Lender), Korek Telecom Company LLC (as Borrower) and Mr. Sirwan Saber Mostafa (as Guarantor), as amended from time to time (collectively, the "Agreement").

Terms used but not otherwise defined in this letter shall have the same meaning as in the Agreement.

Further to our letter dated 9 July 2015 and as advised during our subsequent meetings and discussions with representatives of the Borrower, in light of the following considerations:

- The deteriorating nature of our security package, including the current inability to convert IQD into USD and to remit the funds in USD outside the country as required under the Agreement;
- The declining financial situation of the Borrower;
- The overall adverse conditions prevailing in Iraq (including in Kurdistan); and
- The change in outlook and directions from the Lender's regulator in Lebanon regarding exposure to Iraqi risk,

We must insist on a full repayment of the Loan. In view of the good relations between IBL Bank SAL and the Borrower's shareholders, we are willing to grant you a further period for the full repayment of the Loan until 15 October 2015.

This further extension is conditional, among other things, on continued compliance with the terms of the Subordination Agreement.

We reserve the right to demand repayment of the Loan on any earlier date, at our discretion.

This letter is without prejudice to any other rights which the Lender may have under the Agreement or as a matter of general law, which are expressly reserved and are not waived or amended by the terms of this letter.



This letter and any dispute or claim arising out of or in connection with it or its subject matter or formation (including non-contractual disputes or claims) shall be governed by and construed in accordance with the laws of the Republic of Lebanon.

Yours faithfully,

IBL Bank SAL



CC:   International Holdings Limited, Suite 904, Level 9, Park Place, PO Box 506672, Sheikh Zayed Road, Dubai International Financial Centre, Dubai, UAE

Iraq Telecom Limited, Office 11, Level 3, Gate Village 10, PO Box 506672, Sheikh Zayed Road, Dubai International Financial Centre, Dubai, UAE

Mr. Sirwan Saber Mustafa, 45 Kurdistan Street, Erbil, Kurdistan Region, Republic of Iraq



**IBL BANK**

Beirut, August 30, 2017

Korek Telecom
Korek Building 45 Kurdistan
Erbil – Iraq

Dear Sirs,

We refer to the Term Loan Agreement dated 21 December 2011, made between IBL Bank SAL (as Lender), Korek Telecom Company LLC (as Borrower) and Mr. Sirwan Saber Mostafa (as Guarantor), as amended from time to time (the "**Agreement**").

Terms used but not otherwise defined in this letter shall have the same meaning as in the Agreement.

Further to our previous correspondences which remained unanswered, we hereby reiterate that the Repayment Dates of each of the Short Term Loan and the Long Term Loan have expired, and IBL Bank SAL insists on a full repayment of the loan.

In the interim, you are requested to provide, within 30 days from the date hereof, additional collateral to IBL Bank SAL to secure the Loan, in the form of a pledge of the Borrower's shares in addition to any other acceptable collateral to IBL Bank SAL.

If we do not receive any positive response from you within the aforementioned delay, we reserve our right to take any and all appropriate actions to safeguard our rights under the Agreement.

This letter is without prejudice to any other rights which the Lender may have under the Agreement or as a matter of general law, which are expressly reserved and are not waived or amended by the terms of this letter, in particular, the terms of the Subordination Agreement which must continue to be complied with by all parties.

This letter and any dispute or claim arising out of or in connection with it or its subject matter or formation (including non-contractual disputes or claims) shall be governed by and construed in accordance with the laws of the Republic of Lebanon.

Yours faithfully,

IBL Bank SAL

CC:   International Holdings Limited, Office 11, Level 3, Gate Village 10, PO Box 506672,
       Sheikh Zayed Road, Dubai International Financial Center, Dubai, UAE
       Iraq Telecom Limited, Office 11, Level 3, Gate Village 10, PO Box 506672,
       Sheikh Zayed Road, Dubai International Financial Center, Dubai, UAE
       Mr. Sirwan Saber Mustafa, 45 Kurdistan Street, Erbil, Kurdistan Region, Republic of Iraq

pital LBP 150 000 000 000 fully paid
of Banks Nº 52, CRB 10472

Charles Malek Avenue, Al Ittihadia Building, Ashrafieh, Beirut 2071 4703 Lebanon
P.O.Box: 11-5292 Riad El Solh 1107 2190 Beirut - Lebanon · Tax I.D No: 7267 · Swift: INLELBBE
Tel: +961 1 200 350/2/3 - Fax: +961 1 204 505 · E-mail: ibl@ibl.com.lb · www.ibl.com.lb

IBL Bank SAL
Charles Malek Avenue
Al Ittihadiah Building
Ashrafieh
Beirut 2071 4703 Lebanon

P.O. Box: 11-5292   ✓
Riad El Solh 1107 2190
Beirut, Lebanon

*Attention:*

Mr. Salim Y. Habib (Chairman, General Manager)
Mr. Gaby Mezher (Head of Internal Audit)
Ms. Tania Tayah (Head of Risk Management)
Mr. Ghassan El Rayess (Head of Corporate and Commercial Banking)
Mr. Joe Boustany (Head of Compliance)

25 September 2017

Dear Sirs,

**Term Loan Agreement between IBL Bank SAL ("IBL"), Korek Telecom Company LLC ("Korek") and Mr. Sirwan Saber Mustafa dated 21 December 2011 (the "Agreement")**

1.  We refer to your letter dated 30 August 2017 addressed to Korek, which was received by us on 11 September 2017. We write in our capacity as directors of International Holdings Limited ("**International Holdings**") and members of the Korek Supervisory Committee, nominated by Iraq Telecom Limited ("**IT Ltd**").

2.  You have referred in your letter to the provision of additional collateral in connection with the Short Term Loan and the Long Term Loan (as defined in the Agreement). So that we can properly consider your request in context, please address the following:

    (a)  Could you please explain on which ground IBL considers itself entitled to request additional collateral in the form of a pledge of the shares of Korek.

    (b)  Could you please describe the collateral that IBL currently holds in connection with the loans that are outstanding, together with details of the sums that you consider are currently due.

    (c)  Your letter makes reference to Mr. Mustafa as guarantor. Please also advise whether any call has been made under that guarantee provided by Mr. Mustafa and whether it

is the intention of IBL to do so. As you are aware, pursuant to Clause 6 of the Agreement, the foregoing guarantee is a primary obligation.

(d)   Is IBL taking the position that this loan is non-performing? If it is your position that the loan is non-performing, would you please explain how the provision of additional collateral would remedy this.

(e)   IBL has referred to other previous correspondence sent by it and allegedly remained unanswered. We are not aware of such correspondence and request that a copy is sent to us urgently.

3.   In the meantime, please note that a pledge of any shares of Korek as security must be approved by International Holdings (including by the International Holdings board of directors) and the shareholders of International Holdings (including IT Ltd). No such pledge has to date been approved. Unless and until any pledge is duly approved, no rights over the shares in Korek (including the grant of a pledge) can be granted to any third party, including IBL.

4.   You mention in your letter that any dispute arising out of it shall be governed by and construed in accordance with the laws of the Republic of Lebanon. For the record, we do not consider your letter to constitute any form of binding agreement and do not understand the relevance of the statement made in it.

5.   We look forward to receiving the information requested.

6.   In the meantime we also reserve our rights in connection with the Agreement and those of International Holdings and IT Ltd generally.

Yours faithfully,

_____                          _____
**Deepak Jain**                          **Ehab Aziz**

CC:

Korek Telecom Company LLC, 45 Kurdistan Street, Pirmam, Erbil, Kurdistan, Republic of Iraq

International Holdings Limited, Unit 11, Level 3, Gate Village Building 10, Dubai, International Financial Centre, Dubai 507043, United Arab Emirates

2

Iraq Telecom Limited, Unit 11, Level 3, Gate Village Building 10, Dubai International Financial Centre, Dubai 507043, United Arab Emirates

Mr. Sirwan Saber Mustafa, 45 Kurdistan Street, Pirmam, Erbil, Kurdistan, Republic of Iraq



**IBL BANK**

Beirut, October 13th, 2017

Korek Telecom
Korek Building 45 Kurdistan
Erbil – Iraq

Dear Sirs,

We were extremely surprised to receive, in response to our letter addressed to Korek Telecom Company LLC dated 30 August 2017, a letter from Mr. Deepak Jain and Mr. Ehab Aziz dated 25 September 2017, in their capacity as directors of International Holdings Limited and members of the Korek supervisory Committee, nominated by Iraq Telecom Limited.

As you may appreciate, IBL Bank SAL's relation is exclusively with the parties to the Term Loan Agreement dated 21 December 2011 made amongst IBL Bank SAL (as Lender), Korek Telecom Company LLC (as Borrower) and Mr. Sirwan Saber Mostafa (as Guarantor), as amended from time to time.

In this respect, we will only correspond with the duly authorized representative of Korek Telecom Company LLC.

We therefore kindly invite you to clarify this matter internally, as you deem appropriate, in order to make sure that all correspondence to be addressed to IBL Bank SAL (including the response to our letter dated 30 August 2017, which remains to-date unanswered) are sent through the formal channels at Korek Telecom Company LLC.

This letter is without prejudice to any other rights which the Lender may have under the Agreement or as a matter of general law, which are expressly reserved and are not waived or amended by the terms of this letter, in particular, the terms of the Subordination Agreement which must continue to be complied with by all parties.

Yours faithfully,

IBL Bank SAL

CC:    International Holdings Limited, Office 11, Level 3, Gate Village 10, PO Box 506672,
       Sheikh Zayed Road, Dubai International Financial Center, Dubai, UAE
       Iraq Telecom Limited, Office 11, Level 3, Gate Village 10, PO Box 506672,
       Sheikh Zayed Road, Dubai International Financial Center, Dubai, UAE
       Mr. Sirwan Saber Mustafa, 45 Kurdistan Street, Erbil, Kurdistan Region, Republic of Iraq

*Rec. 1. 12. 17*

IBL Bank SAL
Charles Malek Avenue
Al·Ittihadiah Building
Ashrafieh
Beirut 2071 4703 Lebanon

P.O. Box: 11-5292
Riad El Solh 1107 2190
Beirut, Lebanon

*Attention:*

Mr. Salim Y. Habib (Chairman, General Manager)
Mr. Gaby Mezher (Head of Internal Audit)
Ms. Tania Tayah (Head of Risk Management)
Mr. Ghassan El Rayess (Head of Corporate and Commercial Banking)
Mr. Joe Boustany (Head of Compliance)

25 October 2017

Dear Sirs,

**Term Loan Agreement between IBL Bank SAL ("IBL"), Korek Telecom Company LLC ("Korek") and Mr. Sirwan Saber Mustafa ("Mr. Mustafa") dated 21 December 2011 (the "Agreement")**

We write in our capacity as directors of International Holdings Limited ("**International Holdings**") and members of the Korek Supervisory Committee, nominated by Iraq Telecom Limited ("**IT Ltd**").

We refer to your letter dated 30 August 2017 addressed to Korek and to our response dated 25 September 2017, to which we have received no response.

In our letter, we requested that you please:

(a)     explain on which ground IBL considers itself entitled to request additional collateral in the form of a pledge of the shares of Korek;

(b)     describe the collateral that IBL currently holds in connection with the loans that are outstanding, together with details of the sums that you consider are currently due;

(c)     advise whether any call has been made under the guarantee provided by Mr. Mustafa and whether it is the intention of IBL to do so;

(d)     advise whether IBL is taking the position that the loan is non-performing, and if so, please explain how the provision of additional collateral would remedy this; and

1



(e)     urgently provide a copy of the previous correspondence said to be sent and unanswered.

We would appreciate your responses to the above by no later than Friday, 27 October 2017.

Additionally, please would you explain, by Friday, 27 October 2017, the specific provisions (if any) that IBL has made in respect of the Korek loan, as well as any provisions that IBL expects to make with respect to IFRS 9, which will come into force on 1 January 2018.

Yours faithfully,

Deepak Jain                                   Ehab Aziz


*copy to:*

Korek Telecom Company LLC, 45 Kurdistan Street, Pirmam, Erbil, Kurdistan, Republic of Iraq

International Holdings Limited, Unit 11, Level 3, Gate Village Building 10, Dubai, International Financial Centre, Dubai 507043, United Arab Emirates

Iraq Telecom Limited, Unit 11, Level 3, Gate Village Building 10, Dubai International Financial Centre, Dubai 507043, United Arab Emirates

Mr. Sirwan Saber Mustafa, 45 Kurdistan Street, Pirmam, Erbil, Kurdistan, Republic of Iraq

2

<u>VIA EMAIL, FAX AND COURIER</u>

IBL Bank SAL
Charles Malek Avenue
Al Ittihadiah Building
Ashrafieh
Beirut 2071 4703 Lebanon

P.O. Box: 11-5292
Riad El Solh 1107 2190
Beirut, Lebanon

Fax: 00961 1 204524

Attention:

Mr. Salim Y. Habib (Chairman, General Manager)
Mr. Gaby Mezher (Head of Internal Audit)
Ms. Tania Tayah (Head of Risk Management)
Mr. Ghassan El Rayess (Head of Corporate and Commercial Banking)
Mr. Joe Boustany (Head of Compliance)

shabib@ibl.com.lb
gmezher@ibl.com.lb
ttayah@ibl.com.lb
gelrayess@ibl.com.lb
ibl@ibl.com.lb

17 December 2017

Dear Sirs,

**Term Loan Agreement between IBL Bank SAL ("IBL"), Korek Telecom Company LLC ("Korek") and Mr. Sirwan Saber Mustafa dated 21 December 2011 (the "Agreement")**

1.   We write in our capacity as directors of International Holdings Limited ("International Holdings") and members of the Korek Supervisory Committee, nominated by Iraq Telecom Limited ("IT Ltd").

2.   We refer to your letter dated 30 August 2017 addressed to Korek and as well as our letters dated 25 September 2017 and 25 October 2017, to which we have received no response.

1

3.   We also refer to the letter sent to you by IT Ltd's legal counsel, Gibson Dunn & Crutcher LLP, dated 12 October 2017, putting you on notice of an interim injunction Order of the DIFC Court of First Instance which:

   (a)   restrains Korek, Mr Sirwan Mustafa, International Holdings and its shareholder Korek International (Management) Ltd. ("CS Ltd") from granting a pledge, or any other interest over Korek's shares, other than with IT Ltd's prior approval or written consent in accordance with the International Holdings shareholders agreement dated 10 March 2011 (the "IH SHA"); and

   (b)   compels Korek, Mr Sirwan Mustafa, International Holdings and CS Ltd to use their respective powers to ensure that no action or decision relating to a pledge, or any other interest over the shares of Korek, is taken without the prior approval or written consent of IT Ltd in accordance with the IH SHA.

4.   We previously asked that you confirm what collateral IBL currently holds in connection with the loan. In this context, we note that IBL's Annual Reports appear to reference the IBL Loan and the fact that it is cash collateralised. For example, IBL's Annual Report for 2015 states that "*Performing corporate loans to large enterprises, outstanding at year end 2015, include an amount of LBP226billion related to a non-resident customer which is covered by LBP234billion cash collateral. Related interest income and expense amounted to LBP30.7billion and LBP28.83billion respectively during 2015 and 2014.*"

5.   Korek's USD 150 million loan equates to approximately LBP 226 billion (1 USD = 1,506.6 LBP), which accords with the amount of the performing corporate loan to a "non-resident customer" referenced in IBL's accounts. We also note that the interest due on this loan for 2015 is said to be LBP 30.7 billion which is just over 13% of the principal amount said to be owing; this also appears to accord with the interest rate of the IBL Loan of 13.25%. Further, since this single loan constitutes more than 18% of IBL's total loans to customers and related parties of LBP 1,251 billion, as set out in IBL's Annual Report for 2015, we note that it is highly unlikely IBL would permit two loans to comprise more than a third of its total loan book.

6.   The existence of such cash collateral was never disclosed to IT Ltd or any of its representatives on the International Holdings board of directors or Korek Supervisory Committee. Had we been aware of the cash collateral and thus the true nature of the transaction, we would never have agreed to the terms of the Agreement (including the 13.25% interest rate), and IT Ltd would never have entered into the subordination agreement purporting to subordinate its own shareholder loan to IBL's loan.

7.   In light of the foregoing, we reiterate our previous requests that you urgently:

   (a)   confirm what collateral IBL currently holds in connection with the loans, including an explanation of the circumstances under which such collateral was obtained;

2

(b)    confirm the sums that you consider are currently due under the Agreement;

(c)    explain on which ground IBL considers itself entitled to request additional collateral in the form of a pledge of the shares of Korek;

(d)    advise whether any call has been made under the guarantee provided by Mr. Mustafa and whether it is the intention of IBL to do so;

(e)    advise whether IBL is taking the position that the loan is non-performing, and if so, please explain how the provision of additional collateral would remedy this; and

(f)    provide a copy of the previous correspondence said to be sent and unanswered.

8.    We furthermore remind you that (i) a pledge of any shares of Korek as security must be approved by International Holdings (including by the International Holdings board of directors) and the shareholders of International Holdings (including IT Ltd); (ii) no such pledge has been approved; and (iii) unless and until any pledge is duly approved, no rights over the shares in Korek (including the grant of a pledge) can be granted to any third party, including IBL.

9.    In the meantime, we reserve our rights in connection with the Agreement and those of International Holdings and IT Ltd generally.

Yours faithfully,

Deepak Jain                    Ehab Aziz

CC:

Korek Telecom Company LLC, 45 Kurdistan Street, Pirmam, Erbil, Kurdistan, Republic of Iraq

International Holdings Limited, Unit 11, Level 3, Gate Village Building 10, Dubai, International Financial Centre, Dubai 507043, United Arab Emirates

Iraq Telecom Limited, Unit 11, Level 3, Gate Village Building 10, Dubai International Financial Centre, Dubai 507043, United Arab Emirates

Mr. Sirwan Saber Mustafa, 45 Kurdistan Street, Pirmam, Erbil, Kurdistan, Republic of Iraq



29 January 2018

To:    Korek Telecom Company LLC

      *Korek building 45 Kurdistan*
      *Erbil - Iraq*

      *Attention:* Mr. Sirwan Saber Mustafa

Re:    Term Loan Agreement between IBL Bank SAL ("IBL Bank"), Korek Telecom Company LLC ("Korek") and Mr. Sirwan Saber Mustafa dated 21 December 2011 (the "Loan Agreement").

Dear Sir,

*As a follow-up on our previous correspondence and in particular our latest letter dated 13 October 2017, we were surprised to receive an additional letter from Mr. Deepak Jain and Mr. Ehab Aziz, dated 17 December 2017, with a copy to Korek, among others.*

*We would like, in this respect, to reiterate IBL Bank's position to only correspond with the duly authorized representative of Korek in accordance with the Loan Agreement.*

*All of IBL Bank's rights and remedies are reserved and this letter shall not constitute a waiver of such rights.*

Yours faithfully,

IBL Bank SAL

Ghassan Rayes

Cc:    International Holdings Limited, Office 11, Level 3, Gate Village Building 10, PO Box 507043, Sheikh Zayed Road, Dubai International Financial Center, Dubai, UAE

      Iraq Telecom Limited, Office 11, Level 3, Gate Village Building 10, PO Box 507043, Sheikh Zayed Road, Dubai International Financial Center, Dubai, UAE

      Mr. Sirwan Saber Mustafa, 45 Kurdistan Street, Erbil, Kurdistan Region, Republic of Iraq

<u>VIA EMAIL, FAX AND COURIER</u>

IBL Bank SAL
Charles Malek Avenue
Al Ittihadiah Building
Ashrafieh
Beirut 2071 4703 Lebanon

P.O. Box: 11-5292
Riad El Solh 1107 2190
Beirut, Lebanon

Fax:    00961 1 204524
        00961 1 219667

*Attention:*

Mr. Ghassan El Rayess (Head of Corporate and Commercial Banking)
Ms. Dolly Merhy (Head of Accounting & Finance)
Mr. Salim Y. Habib (Chairman, General Manager)
Mr. Gaby Mezher (Head of Internal Audit)
Ms. Tania Tayah (Head of Risk Management)
Mr. Joe Boustany (Head of Compliance)

gelrayess@ibl.com.lb
shabib@ibl.com.lb
gmezher@ibl.com.lb
ttayah@ibl.com.lb
ibl@ibl.com.lb

21 March 2018

Dear Sirs,

**Term Loan Agreement between IBL Bank SAL ("IBL"), Korek Telecom Company LLC ("Korek") and Mr. Sirwan Saber Mustafa dated 21 December 2011 (the "Agreement")**

1.    We write in our capacity as directors of International Holdings Limited ("**International Holdings**") and members of the Korek Supervisory Committee, nominated by Iraq Telecom Limited ("**IT Ltd.**").

1

2.   We refer to your letter dated 1 February 2018 addressed to Mr. Sirwan Saber Mustafa (also known as and referred to herein as "**Mr. Barzani**") as well as our letters dated 25 September 2017, 25 October 2017 and 17 December 2017, to which we have received no response.[1]

3.   In your letter of 1 February 2018 you assert that we are not duly authorised to correspond with IBL as per the terms of the Agreement. This is incorrect. In fact, Clause 11 of the Agreement makes clear that Messrs Ehab Aziz and Deepak Jain, in addition to others such as IT Ltd. and Orange S.A.'s Financing and Treasury Department, should be included in all communications with IBL (including all notices and other communications under the Agreement sent by IBL to Korek).

4.   In your letter to Mr. Barzani you state that IBL responded to our previous letters referenced above. We have not received a copy of any such reply. As you are required to do so pursuant to Clause 11 of the Agreement, we instruct that you provide us immediately with copies of any such response(s) sent by IBL, and ensure that, going forward, IBL complies with Clause 11 of the Agreement.

5.   We furthermore note the invitation extended by IBL to Mr. Barzani to discuss, in his capacity as guarantor under the Agreement, the possibility of providing IBL "additional collaterals" that would be duly authorised by appropriate corporate actions and whose transfer or pledge does not contravene agreements to which Mr. Barzani is a party.

6.   Although we have invited you on previous occasions to confirm or deny the exact nature of the collateral provided to you by Mr. Barzani, you have repeatedly failed to do so.

7.   It is apparent that:

(a)   Korek's entry into the IBL Loan was approved by Korek and its shareholders on the basis of representations made that the loan was an unsecured loan (albeit with a personal guarantee provided by Mr. Barzani). As you are aware, in the Agreement, Korek warranted that its obligations to IBL would constitute its "*direct, general, unconditional, unsubordinated, unsecured obligations*". Indeed, believing the IBL Loan to be unsecured, IT Ltd. agreed in good faith to subordinate its shareholder loan in favour of the IBL Loan.

(b)   In fact, we now understand that, unbeknownst to us, IBL and Mr. Barzani colluded to create a "sham" arrangement in that the IBL Loan is not, in fact, unsecured, but is fully cash collateralised. This fact has been carefully hidden from both Korek and its shareholders. We understand that IBL entered into an agreement with Mr. Barzani pursuant to which IBL undertook to pay to Mr. Barzani an amount equal to 12.75% of the 13.25% total interest received by IBL under Clause 2.1 of the Agreement. In short,

---

[1]   We adopt the definitions set out in our previous letters referenced above.

2

IBL has agreed to "kick back" to Mr. Barzani more than 96% of the interest expense paid by Korek.

(c)   This arrangement clearly demonstrates that IBL is not the true lender to Korek. Rather, IBL is simply a front for Mr. Barzani. As a result of your actions, we can only assume that you have conspired with Mr. Barzani to set up this sham structure in order to enable Mr. Barzani to do the following:

    (i)   to prioritise Mr. Barzani's creditor rights over those of IT Ltd. (in particular because, as noted above, one of the purported conditions of IBL granting the loan was that it should take priority over the IT Ltd. shareholder loan); and

    (ii)   to effect payments to Mr Barzani alone by having Korek mask these as interest payments to IBL.

(d)   To this day, IBL continues to maintain this deception of having an unsecured loan. In truth, you have the benefit of cash collateral from Mr. Barzani equal to 103.5% of the loan. Therefore, for what conceivable purpose would you require "*additional collaterals*" as requested by you? The fact that your net interest income on this loan is only 0.5% per annum—with the remainder "kicked back" to Mr. Barzani—should attest to the risk-free nature of this loan.

(e)   Your recent invitation extended to Mr. Barzani "*to discuss, in* [his] *capacity as guarantor under the Loan Agreement, the possibility of providing IBL Bank additional collaterals that would be duly authorized by appropriate corporate actions and whose transfer or pledge do not contravene agreements to which* [Mr. Barzani is] *a party*" is now merely another deceitful attempt by IBL to further Mr. Barzani's agenda at the expense of Korek.

8.   IBL's collusive behaviour has resulted in substantial damages to Korek and its shareholders. We estimate that the losses to Korek over the past six years alone as a result of the above described sham are in excess of USD 114 million.

9.   In view of this situation, IBL can no longer ignore our letters. We must warn you one more time that:

(a)   Pursuant to the terms of the interim injunction order of the DIFC Court of First Instance, notified to IBL by letter of 12 October 2017 and expressly acknowledged in IBL's letter of 1 February 2018, Mr. Barzani, Korek, International Holdings and CS Ltd. are restrained from granting a pledge or any other interest over Korek's shares, other than with IT Ltd.'s prior approval or written consent in accordance with Article 25 of the Articles of Association of International Holdings, acting as the sole shareholder of Korek. No such approval or consent has been, or will be, given by IT Ltd.

(b)   Under Iraqi law, Mr. Barzani does not have the authority to provide any security over Korek's assets without a general assembly resolution and such resolution cannot be validly passed without approval by International Holdings. No such approval has been given by the board of International Holdings, and pursuant to Article 25 of the Articles of Association of International Holdings, no such approval can be validly given unless approved by a director of International Holdings nominated by IT Ltd. No such approval or consent has been, or will be, given by IT Ltd.

10.  We put you on notice, therefore, that Mr. Barzani does not have authority to provide any security over Korek's assets. Not only is he not permitted to provide security over Korek's assets directly to IBL but he is not permitted to provide security over any of Korek's assets to any other entity, whether apparently related to Korek or not. Any attempt to circumvent the Order of the DIFC Court will be viewed as contempt of Court and will subject IBL to criminal sanctions in the UAE.

11.  IT Ltd. has no desire to enter into a protracted dispute with IBL. However, we will not accept IBL acting in a deceptive manner to facilitate the unlawful behaviour of Mr. Barzani, against whom a separate claim is in the process of being filed.

12.  We therefore invite IBL one more time to cooperate with us and provide a detailed explanation of the loan extended to Korek, including the exact nature and details of all the collateral granted to secure Korek's loan.

13.  Should we fail to receive an acceptable response from you by no later than 5:00 pm (Beirut) on Monday, 26 March 2018, we will assume that you have elected not to cooperate with us in disclosing the true nature of the IBL Loan. In such event, IT Ltd. (acting in its name, as well as on behalf of International Holdings and Korek) will reserve all of its rights against IBL, including, without limitation, our rights to hold IBL fully liable for damages incurred by Korek as a result of this sham loan arrangement, as well as our right to bring IBL's deceptive behaviour to the attention of the appropriate regulatory authorities.

14.  We look forward to your response.

15.  All rights are hereby reserved.

4

Yours faithfully,
on behalf of IT Ltd. and
the Directors of International Holdings and
Members of the Korek Supervisory Committee
nominated by IT Ltd.


**Ehab Aziz**                    **Deepak Jain**                    **Olivier Froissart**


CC:

**Korek Telecom Company LLC**, 45 Kurdistan Street, Pirmam, Erbil, Kurdistan, Republic of Iraq

**International Holdings Limited**, Unit 11, Level 3, Gate Village Building 10, Dubai, International
Financial Centre, Dubai 507043, United Arab Emirates

**Iraq Telecom Limited**, Unit 11, Level 3, Gate Village Building 10, Dubai International Financial
Centre, Dubai 507043, United Arab Emirates

**Mr. Sirwan Saber Mustafa**, 45 Kurdistan Street, Pirmam, Erbil, Kurdistan, Republic of Iraq

**Mr. Nawzad Junde,** English Village, Villa 203, Erbil, Kurdistan, Republic of Iraq

**Orange S.A.** FG/DFT, Financing and Treasury Department, 78 rue Olivier de Serres, Site Alleray,
75505 Paris, Cedex 15 France

Yours faithfully,
on behalf of IT Ltd. and
the Directors of International Holdings and
Members of the Korek Supervisory Committee
nominated by IT Ltd.

_____          _____          Olivier Froissart

Ehab Aziz                        Deepak Jain

CC:

**Korek Telecom Company LLC,** 45 Kurdistan Street, Pirmam, Erbil, Kurdistan, Republic of Iraq

**International Holdings Limited,** Unit 11, Level 3, Gate Village Building 10, Dubai, International Financial Centre, Dubai 507043, United Arab Emirates

**Iraq Telecom Limited,** Unit 11, Level 3, Gate Village Building 10, Dubai International Financial Centre, Dubai 507043, United Arab Emirates

**Mr. Sirwan Saber Mustafa,** 45 Kurdistan Street, Pirmam, Erbil, Kurdistan, Republic of Iraq

**Mr. Nawzad Junde,** English Village, Villa 203, Erbil, Kurdistan, Republic of Iraq

**Orange S.A.** FG/DFT, Financing and Treasury Department, 78 rue Olivier de Serres, Site Alleray, 75505 Paris, Cedex 15 France

5

KOREK TELECOM COMPANY LLC

26 March 2018

**IBL Bank SAL**
Charles Malek Avenue
Al Ittihadiah Building
Ashrafieh
Beirut – Lebanon

*To the attention of:* Mr. Salim Habib, Chairman

Dear Mr. Habib,

We take note of the various correspondence from IBL Bank SAL ("**IBL Bank**") in relation to the Term Loan Agreement dated 21 December 2011 between IBL, Korek Telecom Company LLC ("**Korek**") and Mr. Sirwan Saber Mustafa (the "**Loan Agreement**").

We agree that any correspondence should be exchanged in accordance with the Loan Agreement, and we will so inform the directors and shareholders of Korek. However, Korek is not in a position to ensure compliance by its directors and shareholders with this request.

We are sure that IBL Bank appreciates the current situation in Iraq and especially in the Kurdistan Region, which has rendered it difficult for Korek to conduct its operations, and we hope that the situation will improve in the near future. Despite these tough circumstances, Korek was and continues to be current on the payment of interest under the Loan Agreement. This stands as a strong indication of the willingness of Korek to maintain a good relation with IBL Bank, and continue to perform its obligations under the Loan Agreement. Korek will attempt to start repaying principal as soon as it is able to do so.

In addition, by way of background, Korek was channeling its business and the ones of its suppliers through IBL Bank including depositing its revenues in its account with IBL Bank – Erbil Branch, in implementation of the Loan Agreement. However, for technical and security reasons, IBL Bank was unable to receive all of Korek's revenues in its Erbil account. In order to provide IBL Bank with additional comfort, and following our recent discussions and meetings in Beirut in January 2018, this letter confirms Korek's willingness to deposit and maintain in its accounts with IBL Bank (whether in Erbil or Beirut) the quarterly interest payment on the loan (prior to its due date), assuming the principal remains outstanding.

KOREK TELECOM COMPANY LLC

We look forward to hearing from you in this respect.

Yours faithfully,

For and in the name of
**Korek Telecom Company LLC**

Cc:     **International Holdings Limited,** Office 11, Level 3, Gate Village 10, PO Box 506678, Sheikh
         Zayed Road, Dubai International Financial Center, Dubai, UAE
         **Iraq Telecom Limited,** Office 11, Level 3, Gate Village 10, PO Box 506678, Sheikh Zayed
         Road, Dubai International Financial Center, Dubai, UAE
         **Mr. Sirwan Saber Mustafa,** 45 Kurdistan Street, Erbil, Kurdistan Region, Republic of Iraq



**IBL BANK**

29 March 2018

To:   Korek Telecom Company LLC
      Korek building 45 Kurdistan
      Erbil - Iraq

      *Attention*: Mr. Sirwan Saber Moustafa

Re:   Term Loan Agreement among IBL Bank SAL ("IBL Bank"), Korek Telecom Company
      LLC ("Korek") and Mr. Sirwan Saber Mustafa dated 21 December 2011 (the "Loan
      Agreement").

Dear Sir,

As a follow-up on our letter dated February 1, 2018, and further to your latest letter dated March
26, 2018, we have received, yet again, another letter dated March 21, 2018 from Mr. Ehab Aziz,
Mr. Deepak Jain and Mr. Olivier Froissart, on behalf of IT Ltd., all of whom have no standing,
pursuant to the Loan Agreement, to communicate with our Bank.

While Clause 11 of the Agreement provides that certain persons of the addressors of the March
21, 2018, letter must be "copied" to communications addressed to the Borrower, this does not, by
any means, grant those persons, nor any of the addressors of the March 21, 2018 letter, standing
to communicate with IBL Bank regarding the Loan Agreement and its implementation.

IBL Bank's communications pursuant to the Loan Agreement shall continue, pursuant to the
provisions of the Loan Agreement to be addressed to you, with copies to the persons provided for
in the Agreement.

Moreover, we would like, in this respect, to reiterate that IBL Bank has been made aware of the
DIFC Injunction, and that it continues, as always, to act in accordance with all legal, judicial,
regulatory, and contractual obligations that it has, and it need not be reminded by the addressors
of the March 21, 2018 letter, of its obligations. The Loan was granted in full compliance with
Lebanese law, which is the law applicable to IBL Bank's operations and to the Loan Agreement.

We strongly invite Korek again to resolve the disputes amongst its shareholders, without
involving IBL Bank, which role is strictly limited to acting as a Lender. In addition, we welcome
your commitment to deposit the quarterly interest payments on the Loan, prior to their due dates,
in Korek's accounts with IBL Bank, to the extent that the principal remains outstanding. We look
forward to receiving the principal payments of the Loan. We are also keen on further discussing
resuming the channeling of Korek's business and the businesses of its suppliers through IBL
Bank.

With the persistence of groundless claims of collusive and conspiratory conduct, which are
blatantly false and do not warrant an answer by our Bank, IBL Bank will not stay idle and will
consider all appropriate actions to preserve and enforce the Bank's rights, including bringing
claims for defamation and any other similar civil or criminal claims against all parties, who are
engaging in such conduct.

1



Finally, IBL has elected, on a going-forward basis, not to respond to such letters, unless properly addressed through the right channels.

All of IBL Bank's rights and remedies are reserved and this letter shall not constitute a waiver of such rights.

Yours faithfully,

IBL Bank SAL

Cc:     **International Holdings Limited,** Office 11, Level 3, Gate Village Building 10, PO Box 507043, Sheikh Zayed Road, Dubai International Financial Center, Dubai, UAE

**Iraq Telecom Limited,** Office 11, Level 3, Gate Village Building 10, PO Box 507043, Sheikh Zayed Road, Dubai International Financial Center, Dubai, UAE

**Mr. Sirwan Saber Mustafa,** 45 Kurdistan Street, Erbil, Kurdistan Region, Republic of Iraq

2

# Exhibit E



مركــز معتمــد مــن جمعيــة غرف التجـارة والصناعة للبـحر الابيـض المتوسـط
Appointed by ASCAME (Association of Mediterranean Chambers of Commerce and Industry)

المركــز اللبنانــي للتحكيــم
**LEBANESE ARBITRATION CENTER**

**26/10/2018**

**Case number: 175/2018**

**1. Iraq Telecom Limited**
Unit 11, Level 3, Gate Village Building 10, Dubai International Financial Centre, Dubai, 507043, United Arab Emirates

<u>**Represented by:**</u>

**1.a KIRKLAND & ELLIS INTERNATIONAL LLP**

30 St. Mary Axe London EC3A 8AF, United Kingdom +44 (0)20 7469 2000

Chris Colbridge <u>chris.colbridge@kirkland.com</u>
Rajinder Bassi <u>rajinder.bassi@kirkland.com</u>
Philipp Kurek <u>philipp.kurek@kirkland.com</u>
Kartikey Mahajan <u>kartikey.mahajan@kirkland.com</u>

**1.b JONES DAY**

2 rue Saint-Florentin 75001 Paris France + 33 1 56 59 39 39

Jean-Pierre Harb <u>jpharb@jonesday.com</u>
Ileana Smeureanu <u>ismeureanu@jonesday.com</u>
Alexandre Meyniel <u>ameyniel@jonesday.com</u>

**1.c NABIL ABDEL-MALEK LAW OFFICES**

Achrafieh, Medawar, Pasteur Str., Pasteur 40 Bldg, 8th Floor- Beirut- Lebanon + 961 1 564105

Nabil Abdel-Malek <u>nabil@abdel-malek.com</u>

**2. IBL BANK SAL**
AI Itihadia Building; Charles Malek Avenue Achrafieh, Beirut Lebanon 01-200350 /01-334102

<u>**Represented by:**</u>
Randa Abousleiman <u>randab@abousleimanlaw.com</u> , <u>a.p@abousleimanlaw.com</u>
Patrick Obcid <u>p.obeid@abousleimanlaw.com</u>
Ghina El-Zibawi <u>g.elzibawi@abousleimanlaw.com</u>
Salim El Meouchi <u>salim.elmeouchi@elmeouchi.com</u>
Khalil Sarkis <u>khalil.sarkis@elmeouchi.com</u>
Chadia El Meouchi <u>chadia.elmeouchi@elmeouchi.com</u>



**The Lebanese Arbitration Center**
Chamber of Commerce, Industry and Agriculture of Beirut and Mount Lebanon

مبنى غرفـة التجارة والزراعة في بيروت وجبل لبنـان
ط.٧، شارع جوسـتينيان ا، الصنائع، ص.ب. ١٨٠١ ١١ بيروت، لبنان

CCIA-BML Bldg, 7th Fl, 1Justinien St, Sanayeh, **P.O.BOX** : 11/1801 Beirut Lebanon
**Hotline:** 1314  ext: 171  **T|F:** +961 1 349 616   **email:** arbitration@ccib.org.lb
www.ccib.org.lb




www.facebook.com/CCIAB
www.twitter.com/CCIABML

**3. KOREK Telecom Company LLC**

Next to the post office 45 Kurdistan Street Pirmam Erbil Kurdistan Republic of Iraq + 964 750 445 0022

**4. International Holdings Limited**

Unit 11, Level 3 Gate Village Building 10 Dubai International Financial Centre Dubai 507043, United Arab Emirates +971506582663

**5. Mr. Nawzad Junde**

English Village Villa 203, Erbil, Kurdistan, Republic of Iraq +964 750 445 0081

* * * *

**Dear Parties / Parties Representatives,**

Following our previous correspondence and the Claimant's written comments of 24 October 2018, this is to inform you that the Court of Arbitration, in its hearing held on 25 October 2018, has resolved to grant IBL an extension of time ending on 15 November 2018 to nominate an arbitrator.

The Court shall, thereafter, take any decision related to the formation of the arbitral Tribunal.

**Sincerely,**

**Rayan Kouatly**

**Secretary-General**

The Lebanese Arbitration Center
Chamber of Commerce, Industry and
Agriculture of Beirut and Mount Lebanon

# Exhibit F



Partner Ref: Kenneth Beale/Dominic Roughton
Our Ref: 15017.0001 / DT
Doc: 914083v1

14 November 2018

Lebanese Arbitration Centre
CCIA-BML Building, 7th Floor
1 Justinien Street, Sanayeh
PO Box – 11/1801, Beirut
Lebanon
**Attn: Mr. Rayan Kouatly, Secretary-General**

lamc@ccib.org.lb

<u>By email</u>

Dear Sirs/Mesdames

**Re:     Iraq Telecom Ltd v IBL Bank SAL and Ors, Case Number 175/2018**

We have been recently instructed to represent the Second and Third Respondents, Korek Telecom
LLC ("**Korek**") and International Holdings Ltd ("**IH Ltd**"), in the above proceedings. Our instructions
are pursuant to clause 28.4 of the Shareholders' Agreement between the Claimant, Iraq Telecom Ltd
("**IT Ltd**"), and Korek International (Management) Limited ("**CS Ltd**"), which entitles CS Ltd to
conduct the defence of any claim brought by IT Ltd against Korek and/or IH Ltd. All correspondence
intended for the Second and Third Respondents should henceforth be sent to the following address:

> **Boies Schiller Flexner (UK) LLP**
> Level 11
> 5 New Street Square
> London EC4A 3BF
> United Kingdom
>
> Attention:
> Ken Beale            kbeale@bsfllp.com
> Dominic Roughton     droughton@bsfllp.com
> David Hunt           dhunt@bsfllp.com
> David Turner         dturner@bsfllp.com
> Rosalind Axbey       raxbey@bsfllp.com

The Second and Third Respondents do not accept that they have been validly served with the
Claimant's Request for Arbitration dated 26 June 2018 (the "**Request**"). The Second and Third
Respondents have not yet had the opportunity to be heard on the question of service, and if

5 New Street Square, London EC4A 3BF | (t) +44 (0)20 3908 0800 | (f) +44 (0)20 3908 0801 | www.bsfllp.com

Boies Schiller Flexner (UK) LLP is a Limited Liability Partnership registered in England and Wales (with registered number OC385463) and is
authorised and regulated by the Solicitors Regulation Authority (with registered number 605717)
Our registered office is at 5 New Street Square, London EC4A 3BF. A list of members' names is open for inspection at our registered office.



necessary we are prepared to contest service as having been invalidly effected under Arts 3(3) and 6(2) of the Rules of Arbitration.

Notwithstanding the above, the Second and Third Respondents are prepared to accept service as having been validly and properly effected on the sole condition that they are given an extension of 45 days from the date of this letter to (a) file an Answer; and (b) confer with the First Respondent, International Bank of Lebanon SAL ("**IBL Bank**"), regarding the nomination of the Respondents' jointly-nominated arbitrator. As noted at the outset of this letter, we have only been instructed this week to appear in these proceedings on behalf of the Second and Third Respondents. Accordingly, we require a reasonable opportunity to obtain a copy of the existing record in these proceedings, review all relevant materials, confer with and advise our clients, prepare a responsive Answer on their behalf, and consider potential candidates for nomination as the Respondents' jointly-nominated arbitrator before discussing these candidates with the First Respondent. We understand that the Centre has already granted the First Respondent an extension of 45 days for the submission of its Answer, and a further extension for the nomination of the Respondents' jointly-nominated arbitrator. If the Second and Third Respondents were denied a similar extension of time to carry out these same tasks, having now had an opportunity to instruct counsel, this would constitute a serious deviation from proper standards of due process and would expose any award rendered in these proceedings to challenge on the same basis.

With respect to the nomination of the Respondents' jointly-nominated arbitrator, we understand that the Centre has currently given the Respondents until 15 November 2018 to confer on a joint nomination. We further understand that the First Respondent and the Claimant have agreed that if the Respondents are unable to jointly nominate an arbitrator, the Centre will appoint all three members of the arbitral tribunal. The Second and Third Respondents agree with and accept this approach. However, as noted above, we respectfully request a further period of 45 days from the date of this letter to confer with First Respondent regarding the nomination of the Respondents' jointly-nominated arbitrator and to prepare the Second and Third Respondents' Answer.

Finally, we respectfully request the Centre to provide us by email with a full electronic copy of the written record in these proceedings to date, so that we may better understand the progress of the case thus far and prepare the Second and Third Respondents' Answer to the Claimant's Request.

Yours faithfully

*Boies Schiller Flexner (UK) LLP*

**BOIES SCHILLER FLEXNER (UK) LLP**

cc:    **Kirkland & Ellis International LLP (by email)**
       **Jone Day (by email)**
       **Nabil Abdel-Malek Law Offices (by email)**
       **Abousleiman & Partners Law Office (by email)**
       **Badri and Salim El Meouchi Law Firm (by email)**