**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
IN RE:                                                         :
                                                               :
EX PARTE APPLICATION OF IRAQ TELECOM   : 18-MC-458 (LGS) (OTW)
LIMITED FOR AN EXPEDITED ORDER TO TAKE :
DISCOVERY PURSUANT TO 28 U.S.C. § 1782 : **OPINION & ORDER**
                                                               :
---------------------------------------------------------------x

**ONA T. WANG**, **United States Magistrate Judge:**

I. **Introduction**

Petitioner Iraq Telecom Limited ("Petitioner") submitted an application pursuant to 28 U.S.C. § 1782 for an order to conduct discovery for use in foreign proceedings. (ECF 1). Petitioner seeks permission to serve document and information subpoenas on Citibank, N.A. ("Citibank"), HSBC Bank (USA), N.A. ("HSBC"), Standard Chartered International (USA) Ltd. ("Standard Chartered"), The Bank of New York Mellon, N.A. ("The Bank of New York Mellon"), and Wells Fargo Bank, N.A. ("Wells Fargo"). *Id*. In response to the Court's November 9, 2018 Order to Show Cause, a defendant in one of the foreign proceedings—Sirwan Saber Mustafa ("Mr. Mustafa") [1]—filed an opposition to Petitioner's application on November 21, 2018. (ECF 29-34). Another of the foreign proceeding defendants, Korek Telecom Company LLC ("Korek"), filed a notice of joinder in Mr. Mustafa's opposition. (ECF 35). For the reasons set forth below, Petitioner's application is **GRANTED**.

---

[1] Mr. Mustafa is also known as, and referred to throughout Petitioner's papers as, Mr. Barzani. (ECF 2 at 1). Throughout this opinion, he will be referred to as Mr. Mustafa for ease of reference.

II. **Background**

a. **Factual History**

This application stems from claims of mismanagement and self-dealing regarding Korek Telecom Company LLC ("Korek"), an Iraqi telecommunications company. Petitioner and CS Ltd. are the two entities holding ownership interests in IHL, the holding company wholly owning Korek. *See* Decl. of Ehab Fekri Aziz Bassilios ("Bassilios Decl.") (ECF 2-5) at ¶ 11. IHL has a seven-member board of directors, three of whom were nominated by Petitioner and four of whom were nominated by CS Ltd. *Id*. ¶ 17. Korek, in turn, is managed by Mr. Mustafa, Korek's statutory manager, who is also one of IHL's seven board members. *Id*. ¶ 6.

In December 2011, Korek obtained a $150M loan from IBL Bank to help pay for a telecommunications license fee required by the Iraqi Communications and Media Commission as part of being granted a nation-wide license. *Id*. ¶ 19. Petitioner alleges that two of IHL's directors, Mr. Mustafa and Mr. Raymond Samir Zina Rahmeh, misrepresented the terms of the loan to Korek's investors, including Petitioner, to hide the fact that Korek was paying a higher-than-necessary interest rate on its loan. *Id*. Petitioner alleges that the two IHL directors also had entered into a third-party agreement with IBL Bank to divert some of Korek's interest payments on the loan to themselves in exchange for convincing Korek's shareholders to approve the loan. *Id*. ¶ 29.

Petitioner further alleges that the two directors caused Korek to enter into contracts with companies in which the two directors had a financial interest, including one of Korek's competitors. *Id*. ¶ 30; ECF 2-2 (DIFC Particulars of Claim) ¶¶ 45-46. To cover up this self-dealing, Petitioner alleges, IHL's directors have refused to share Korek's financials to its shareholders

2

and have avoided convening meetings of Korek's supervisory committee. (ECF 2-2 ¶¶ 24-25).

    b. **Procedural History**

Petitioner has brought claims in multiple forums due to various agreements' dispute resolution provisions:

(1) In the Dubai International Financial Centre ("DIFC") Courts, Petitioner has filed a claim against three of IHL's directors[2] for breach of duty in failing to investigate the alleged wrongdoings of Mr. Mustafa, as described above. (ECF 2 at 21-22). The DIFC claim also includes a self-dealing claim against Mr. Rahmeh for failing to disclose his personal interests in various companies that did business with Korek. *Id*. at 22. Although Petitioner has filed a claim in the DIFC courts, the defendants in that litigation have not yet been served. (ECF 44).

(2) Petitioner filed a request for arbitration with the Lebanese Arbitration and Mediation Centre ("LAMC") against Mr. Mustafa and IBL for fraudulently misrepresenting the IBL loan to Korek's investors, as described above. (ECF 2 at 23). As of the Petitioner's letter on April 3, 2019, the LAMC tribunal had not yet been constituted. (ECF 43).

(3) Petitioner filed a request for arbitration with the International Chamber of Commerce's Court of International Arbitration ("ICC") for claims against Mr. Mustafa and CS Ltd. for mismanagement of Korek and withholding information about Korek's finances. (ECF 2 at 23-24). The ICC arbitration, in contrast to the other two proceedings, has commenced and a scheduling order has been issued, pursuant to which Petitioner's Statement of Claim is currently due on August 28, 2019. (ECF 45).

---

[2] Petitioner did not name Mr. Mustafa as a defendant in the DIFC litigation because under the IHL shareholder's agreement, claims against him must be brought in arbitration. (ECF 2 at 21 n. 36).

III. **Discussion**

   a. **Legal Standard**

Under 28 U.S.C. § 1782, "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other things for use in a proceeding in a foreign or international tribunal."[3] Section 1782 has been read to impose three statutory requirements:

> (1) the person from whom discovery is sought must reside (*or be found*) in the district of the district court where the application is made, (2) that the discovery be for use in a proceeding before a foreign tribunal, and (3) that the application must be made by a foreign or international tribunal or "any interested person."

*See In re Edelman*, 295 F.3d 171, 175-76 (2d Cir. 2002) (quoting *In re Esses*, 101 F.3d 873, 875 (2d Cir. 1996)). "Once a district court is assured that it has jurisdiction over the petition, it 'may grant discovery under § 1782 in its discretion.'" *Kiobel v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 244 (2d Cir. 2018) (quoting *Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015)).

The Supreme Court has outlined four factors that the district court should consider when determining whether to exercise its discretion to grant §1782 discovery. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004). A court should look at (1) whether the target of discovery is a participant in the foreign proceeding, (2) the nature of the foreign tribunal and its receptiveness to U.S. federal court assistance, (3) whether the application is attempting to "circumvent foreign proof-gathering restrictions," and (4) whether the request is "unduly intrusive or burdensome." *Id*. at 264-65.

---

[3] A motion seeking discovery under §1782 is a non-dispositive motion under Federal Rule of Civil Procedure 72(b). *See In re Hulley Enterprises, Ltd*., 358 F. Supp. 3d 331, 340-41 (S.D.N.Y. 2019) (collecting cases). Nor does a §1782 discovery request fall under the excepted motions listed in 28 U.S.C. § 636(b)(1)(A).

4

b. **Statutory Requirements**

The parties do not dispute that the first and third statutory requirements of §1782 are met,[4] but Respondents Mr. Mustafa and Korek ("Respondents") argue that Petitioner has not met the second requirement: use in a proceeding in a foreign or international tribunal. Petitioner lists four ongoing or contemplated proceedings in which it proposes to use the requested discovery: (1) pending proceedings in the DIFC courts; (2) pending arbitration proceedings with the LAMC; (3) pending arbitration proceedings with the ICC; and (4) potential further ICC arbitration proceedings against CS Limited and Mr. Barzani. (ECF 2 at 21-24).

The parties do not dispute that the DIFC courts generally are considered a "foreign or international tribunal" as defined by § 1782. Respondents instead argue that the discovery cannot be "for use" in the DIFC litigation because the litigation has not formally commenced, pointing to the failure of Petitioner to yet effectuate service on the defendants. (ECF 34 at 13-14). Section 1782 can be invoked, however, once the proceeding is "within reasonable contemplation" and does not need to be "imminent" or to have commenced. *See Intel*, 542 U.S. at 253. Here, Petitioner has already filed complaints in the DIFC courts, *see* Declaration of Graham Kenneth Lovett ("Lovett Decl.") (ECF 2-2) ¶¶ 22-23, placing the judicial proceeding "in reasonable contemplation." *See Mees*, 793 F.3d at 299-300 (noting that §1782 applications are proper even where pleading is filed but discovery is not required until much later in the matter); *In re Furstenberg Finance SAS*, No. 18-MC-44 (JGK), 2018 WL 3392882, at *4 (S.D.N.Y. July 12, 2018) (finding petitioners' sworn intent to file the complaints satisfied the "reasonable

---

[4] Petitioner requests discovery from banks which conduct business in this District, ECF 2 at 26-28, and as the plaintiff in the foreign proceedings, Petitioner certainly qualifies as an "interested person. *See Intel*, 542 U.S. at 256 (agreeing that "[n]o doubt litigants are included among, and may be the most common example of, the 'interested persons' who may invoke §1782").

5

contemplation" requirement). Therefore, the fact that the DIFC litigation is still in its earliest stages does not preclude a finding that the "for use" factor has been satisfied.

Nor do the parties dispute that the requested discovery relates to the claims in the DIFC litigation. Petitioner seeks documents related to Korek's loan with IBL Bank and Korek's payments to suppliers, both of which are the subject of breach of duty and self-dealing claims in the DIFC litigation. (ECF 2-1). The DIFC claims allege that certain of IHL's directors failed to adequately investigate the IBL loan to protect Korek's interests. (ECF 2 at 21-22). Additionally, Petitioner alleges that those IHL directors failed to disclose potential conflicts of interest via their ownership in companies that either competed with or were suppliers to Korek. *Id*. at 22.

Rather, Respondents argue that Petitioner's requests cannot be for use in foreign proceedings because the documents' existence at this point is only "speculative." (ECF 34 at 15). The cases cited by Respondents are distinguishable because in those cases, the Court found that the proceedings themselves were speculative. *See In re Asia Maritime Pacific Ltd*., 253 F. Supp. 3d 701, 707-08 (S.D.N.Y. 2015) (finding proceeding speculative where petitioner was searching for any of defendants' assets for which it could bring an attachment proceeding); *In Re Harbor Victoria Inv. Holdings Ltd. Section 1782 Petitions*, No. 15-MC-127 (AJN), 2015 WL 4040420, at *8 (S.D.N.Y. June 29, 2015) (finding proceeding speculative where petitioner sought discovery of bank records to find a country where it could bring a claim); *Jiangsu Steamship Co., Ltd. v. Success Superior Ltd.*, No. 14-CV-9997 (CM), 2015 WL 3439220, at *7 (S.D.N.Y. Feb. 5, 2015) (finding proceeding speculative where petitioner failed to identify a country or tribunal where it intended to file a claim). In contrast, Petitioner here has already started foreign proceedings and is requesting discovery in support of its claims. Because the discovery requests

are all relevant to the claims raised in the DIFC litigation, Petitioner has satisfied the §1782 statutory factors.[5]

### c. <u>Intel Factors</u>

As articulated above, before a §1782 motion is granted, Petitioner must also satisfy the discretionary factors as laid out in *Intel*. The first discretionary factor evaluates whether the discovery is sought from a party within the foreign tribunal's jurisdictional reach. *See Intel*, 542 U.S. at 264 (noting that if foreign proceeding can order production, §1782 is not necessary). Here, the correspondent banks are not parties to either the DIFC litigation or any of the arbitrations. Respondents assert that because the requested documents all relate to

---

[5] Respondents dispute the application of §1782 to a private arbitral tribunal, namely the LAMC and ICC, by relying on *National Broadcasting Co., Inc. v. Bear Stearns & Co., Inc.*, 165 F.3d 184 (2d Cir. 1999) (hereinafter "*NBC*"), in which the Second Circuit denied the application of §1782 for use in an ICC arbitration. *Id*. In *NBC*, the Second Circuit acknowledged that the current version of §1782, which changed use in a "judicial proceeding" to use in a "foreign or international tribunal," was meant to broaden the statute's reach. *Id*. at 189. Previously, §1782 only applied to tribunals that were established by an agreement to which the United States was a party. *Id*. at 189-90. The Second Circuit looked to the legislative history and determined that the expansion of scope was intended to be limited to only add governmental and intergovernmental tribunals that were established by agreements to which the United States was not a party. *Id*. at 190. Pointing to the absence of mention of private arbitration in the legislative history, and because private arbitration was not contemplated by the earlier version of §1782, the Second Circuit determined that Congress must not have intended for the current version of §1782 to now include private arbitration. *Id*.

Five years later, the Supreme Court in *Intel* considered Congress' intent in changing the language in §1782 from "judicial proceeding" to "foreign or international tribunal." *See Intel*, 542 U.S. at 257-58. Agreeing that the language change demonstrated an intent by Congress to broaden the scope of §1782's prior limitation of "foreign proceedings," the Court then referenced the understanding that the new term of "tribunals" includes "quasi-judicial proceedings," such as "arbitral tribunals." *Id*. at 258.

Notwithstanding *Intel*'s language embracing arbitral tribunals, courts in this District have since disagreed on whether to accept the Supreme Court's reference to arbitral tribunals as authority to permit use of §1782 for private arbitration. *Compare In re Children's Investment Fund Foundation (UK)*, 363 F. Supp. 3d 361, 370 (S.D.N.Y. 2019) (Broderick, J.) (agreeing that post-*Intel*, the London Court of International Arbitration, a private arbitration tribunal, is covered by §1782); *In re Kleimar N.V.*, 220 F. Supp. 3d 517, 521 (S.D.N.Y. 2016) (Marrero, J.) (citing other courts' interpretations of *Intel* to hold that arbitration before the London Maritime Arbitration Association, a private arbitration tribunal, is covered by §1782) *with In re Hanwei Guo*, No. 18-MC-561 (JMF), 2019 WL 917076, at *3 (S.D.N.Y. Feb. 25, 2019) (Furman, J.) (finding *NBC* still binding after deeming *Intel*'s reference to arbitral tribunals to be dicta). Because the DIFC is a "foreign tribunal" sufficient to confer jurisdiction under §1782 and the parties do not dispute that the requested discovery is relevant to the claims presented in the DIFC litigation, I need not reach this issue of whether private arbitral tribunals were intended by Congress to fall within the ambit of §1782.

transactions involving defendants in the foreign proceedings, the defendants can be ordered to produce those same documents by their respective tribunals. (ECF 34 at 16). Although the foreign tribunals may have jurisdiction to compel the defendants to produce documents, those individuals "may not have the same records—or quality of records—as the Banks, all of which almost certainly keep account records." *In re Furstenberg*, 2018 WL 3392882, at *6. This is especially true here, as in *Furstenberg*, where the defendants are alleged to have engaged in fraud. *See id*. (noting that defendant accused of self-dealing "may not be entirely forthcoming" in his records). The first *Intel* factor thus weighs in favor of granting the discovery application.

The second discretionary factor looks at the nature of the foreign tribunal and its "receptiveness" to federal court judicial assistance. *See Intel*, 542 U.S. at 264. Respondents argue that the LAMC and ICC would not be receptive to the requested discovery because of arbitration's preference for expedited discovery and the fact that some arbitration panels do not permit any discovery. (ECF 34 at 18). This general allegation that private arbitration panels may restrict discovery does not necessarily mean that the LAMC and ICC arbitration panels themselves would reject the discovery requested by Petitioner. See *In re Esses*, 101 F.3d at 876 (warning that §1782 discovery should only be rejected if the respondent provided "authoritative proof that a foreign tribunal would *reject* evidence obtained with the aid of section 1782"). Petitioner's evidence suggests the opposite. *See In re Grupo Unidos por el Canal, S.A.*, No. 14-MC-80277-JST (DMR), 2014 WL 5456520, at *3 (N.D. Cal. Oct. 27, 2014) (the "nature of the [ICC arbitration] is such that the tribunal can be expected to be receptive to the information obtained by this request"); s*ee also* Lovett Decl. ¶ 12 (referencing DIFC Courts Rule 30.65 which expressly provides for evidence from foreign jurisdictions); Declaration of Rajinder

Bassi (ECF 2-3) ¶ 14 (noting that the ICC does not preclude use of discovery from foreign courts); Declaration of Nabil Abdel Malek (ECF 2-4) ¶ 16 (noting that the LAMC also does not preclude foreign discovery). In the absence of specific evidence that the DIFC courts, LAMC, or ICC would reject Petitioner's requested discovery, this second factor also weighs in favor of granting the application.

The third discretionary factor examines if the discovery requests are merely an "attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. As described above, Respondents have not pointed to any rule of the DIFC Courts, LAMC, or ICC that would preclude use of the requested discovery. Instead, Respondents argue that permitting this discovery would circumvent the general expectation that international arbitration does not allow broad discovery, citing to their attorney declarations.[6] (ECF 34 at 21). While international arbitration rules may differ from U.S.-style discovery, merely categorizing Petitioner's requests as "broad" does not show that Petitioner's requests exceed the scope of any specific proof-gathering restriction. *Cf. Kiobel*, 895 F.3d at 245 & n. 3 (finding circumvention where plaintiff's counsel showed that Dutch courts do not allow pre-trial discovery, as defendants' §1782 discovery sought to do).

Respondents alternatively argue that any §1782 discovery would be premature before Petitioner attempted to obtain such discovery through the foreign tribunals. As Respondents concede, however, ECF 34 at 19, §1782 imposes no exhaustion requirement. *See In re*

---

[6] Respondents submitted the Declarations of Kenneth Beale and Michael Black, in which Mr. Beale cites that in his experience, particularity is "usually" required, ECF 32 ¶ 60, and Mr. Black testifies that the DIFC Courts generally have "narrower" and more "focused" discovery than in the United States, ECF 33 ¶ 18. Again, Respondents have not shown how Petitioner's requests are outside the scope of particularity and relevance typically required in arbitration. Nor do Respondents address the fact that in its discovery requests, Petitioner identifies the exact transactions and bank accounts that are the subject of the requested documents. (*See, e.g.,* ECF 2-1, Exhs. A-E).

9

*Metallgesellschaft*, 121 F.3d 77, 79 (2d Cir. 1997) (warning that a §1782 request may not be rejected merely because "a foreign tribunal has not yet had the opportunity to consider the discovery request"). In support, Respondents cite *In re Mare Shipping, Inc*. to argue that §1782 requests are "routinely den[ied]" when discovery was not first sought in the foreign proceeding. (ECF 34 at 19). *Mare Shipping* did not create an exhaustion requirement however. The Court there held that the third *Intel* factor was not satisfied because the applicants were seeking to obtain discovery *after* they had numerous opportunities at the foreign proceeding to request such evidence, and attempts to use §1782 circumvented the Spanish court's restrictions on post-trial discovery. *See In re Mare Shipping, Inc.*, No. 13-MC-238, 2013 WL 5761104, at *5 (S.D.N.Y. Oct. 23, 2013). Here, in contrast, Respondents are not arguing that Petitioner has already engaged in discovery in the foreign proceedings or impermissibly seeking a second bite at the apple. As a result, the third discretionary factor weighs in favor of granting the application.

The fourth discretionary factor asks the court to consider whether the discovery requests are "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. Respondents argue that Petitioner's discovery requests are "incurably overbroad" because they include requests for documents related to the banks' general procedures regarding the defendants. (ECF 34 at 21). Petitioner argues that its requests are narrowly tailored to specific dates and transactions, ECF 2 at 36 n. 56, but Petitioner also seeks documents related to the "relationship" between the correspondent banks and both IBL Bank and Byblos Bank. (*See* ECF 2-1, Ex. A at 9; Ex. C at 9; Ex. D at 9; Ex. E at 9). While it is possible that documents related to use of the correspondent bank, *e.g.*, contracts for services and lists of authorized users of the accounts, may ultimately be

unnecessary to prove Petitioner's claims, issues of potential overbreadth are different from whether the process of searching for and producing the documents is unduly burdensome or intrusive. *See Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012) (cautioning district courts that discoverability and admissibility in the foreign proceeding is irrelevant to resolution of a §1782 motion). Because there is no concern that the discovery is being sought for harassment, the fourth discretionary factor also weighs in favor of granting the application. *See generally In re WinNet R CJSC*, No. 16-MC-484 (DLC), 2017 WL 1373918, at *9 (S.D.N.Y. Apr. 13, 2017) (observing that courts exercise discretion to deny §1782 applications only in "unusual cases").

IV. **Conclusion**

For the foregoing reasons, Petitioner's discovery application pursuant to 28 U.S.C. § 1782 is **GRANTED**. Petitioner is hereby authorized to serve its proposed subpoenas, attached at ECF 2-1.

The correspondent banks, Citibank, HSBC, Standard Chartered, Wells Fargo, and The Bank of New York Mellon, are directed to respond to the subpoenas within 30 days of the date of this Order, and shall meet and confer with Petitioner as necessary. Petitioner and the correspondent banks shall submit a joint status letter by **August 30, 2019**.

The Clerk of Court is respectfully requested to close ECF 1.

**SO ORDERED.**

                                                *s/ Ona T. Wang*

Dated: August 13, 2019                               **Ona T. Wang**
      New York, New York                     United States Magistrate Judge